Nos. 25-3098

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE: TELESCOPES
ANTITRUST LITIGATION

ZHEN, et al.,
*Objectors-Appellants*,

v.

INDIRECT PURCHASER PLAINTIFFS,
*Plaintiffs-Appellees,*

v.

SYNTA TECHNOLOGY CORP., ET AL.,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of California, San Jose Division
Hon. Edward J. Davila
D.C. No. 5:20-cv-03639–EJD

## EXCERPTS OF RECORD
## VOLUME 2 OF 7

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE &
McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

*Settlement Class Counsel for Indirect Purchaser Plaintiffs-Appellees*

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| | **SUGGESTION OF DEATH OF PLAINTIFF JOHN GOERGER** |
| THIS DOCUMENT RELATES TO: | |
| Indirect Purchaser Actions | |

To all parties and attorneys of record, please take notice that:

Undersigned counsel, pursuant to Federal Rule of Civil Procedure 25(a)(2), hereby informs the Court of the death of plaintiff John Goerger.

- 1 -

**2-ER-0065**

Dated: January 15, 2026                    Respectfully Submitted,

/s/ Adam J. Zapala
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Christian S. Ruano (SBN 352012)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

/s/ Kalpana Srinivasan
Kalpana Srinivasan (SBN 237460)
Marc M. Seltzer (SBN 54534)
Steven Sklaver (SBN 237612)
Michael Gervais (SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas SBN 24102452
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Tel: (713) 651-9366
Fax: (713) 654-6666
asalinas@susmangodfrey.com

/s/ Lin Y. Chan
Eric B. Fastiff (SBN 182260)
Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
efastiff@lchb.com
lchan@lchb.com

*Settlement Class Counsel
for the Indirect Purchaser Plaintiffs*

SUGGESTION OF DEATH OF PLAINTIFF JOHN GOERGER
CASE NO. 5:20-CV-03639-EJD

**2-ER-0066**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD<br><br>**ORDER GRANTING IN PART MOTION FOR APPEAL BOND; DENYING MOTION FOR PROTECTIVE ORDER**<br><br>Re: Dkt. No. 429, 432 |

Indirect Purchaser Plaintiffs ("IPPs") move for the Court to impose an appeal bond on four pro se objectors to the class action Settlement Agreement. Mot., ECF No. 429. This motion is fully briefed, including supplemental briefing requested and reviewed by the Court. Zhen Opp'n, ECF No. 438; Luna Opp'n, ECF No. 441; Barnes Opp'n, ECF No. 442; Reply, ECF No. 443; IPPs Supp. Brief, ECF No. 454; Zhen Supp. Brief, ECF No. 456.[1] The Court held a virtual hearing on August 14, 2025, and heard oral arguments from IPPs and one objector, Pat Zhen. ECF No. 451. No other objector appeared. *Id.*

Also before the Court is Zhen's related motion for a protective order regarding exhibits to IPPs' bond motion revealing his personal information. Protective Order Mot., ECF No. 432; Opp'n to Protective Order Mot., ECF No. 444; Reply to Protective Order Mot., ECF No. 448.

---

[1] The Court will not consider the following filings submitted without leave after the close of briefing: ECF Nos. 458, 459, 460, 461, 462. *See* N.D. Cal. L.R. 7-3(d) ("Once a reply is filed, no additional memoranda, papers or letters may be filed without prior Court approval . . . . ").

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.
1

For the reasons explained below, the Court **GRANTS IN PART** IPPs' motion for an appeal bond and **DENIES** Zhen's motion for a protective order.

## I.    BACKGROUND

The Court granted final approval of this $32 million class action Settlement Agreement on April 11, 2025, overruling the written objections of six objectors. Final Approval Order, ECF No. 419. Only two objectors, the plaintiffs in a related Direct Purchaser Plaintiff class action, appeared at the final approval hearing through counsel. *Id.* Soon after the Court's order, the other four pro se objectors filed a joint appeal—Pat Zhen, Mike Sussman, Karla Luna on behalf of National Woodlands Preservation, Inc., and Elman Barnes (collectively, "Objectors"). Notice of Appeal, ECF Nos. 421, 428. IPPs now move for an appeal bond of $42,818 from each Objector plus $175 in costs pursuant to Federal Rule of Appellate Procedure 7 ("Rule 7"). Mot.

IPPs' motion originally attached as exhibits unredacted documents revealing Zhen's personal information, which also prompted Zhen to file the protective order currently before the Court. Protective Order Mot. These documents have since been removed from the public docket. Order Granting Mot. to Remove Incorrectly Filed Documents, ECF No. 439.

## II.    LEGAL STANDARD

Rule 7 governs motions for appeal bonds, providing in relevant part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. Courts generally examine three factors to determine whether an appeal bond is appropriate: (1) appellants' financial ability to post a bond, (2) risk that appellants will not pay costs if the appeal loses, and (3) likelihood that appellants will lose the appeal. *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525-EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008). Regarding the amount of bond, though not defined in the rule, the Ninth Circuit has held that the term "costs on appeal" are the "costs taxable on appeal" specified in Federal Rule of Appellate Procedure 39, as well as "all expenses defined as 'costs' by an applicable fee-shifting statute, including attorneys' fees." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007). The trial court has discretion to

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.
2

United States District Court
Northern District of California

impose an appeal bond and determine the bond amount. *In re Netflix Priv. Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *2 (N.D. Cal. Nov. 25, 2013). "[T]he purpose of [an appeal bond] is to protect an appellee against the risk of nonpayment by an unsuccessful appellant." *Fleury*, 2008 WL 4680033, at *6 (quotations and citations omitted) (cleaned up).

### III.    DISCUSSION

The Court finds the three factors—financial ability, risk of nonpayment, and likelihood of success on appeal—ultimately weigh in favor of granting an appeal bond under Rule 7, but the Court declines to award a bond in the amount requested by IPPs. The Court also finds Zhen's request for a protective order unwarranted at this time.

#### A.    Bond Factors

The first factor regarding financial ability generally "weighs in favor of a bond, absent an indication that a plaintiff is financially unable to post bond." *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2013 WL 1345716, at *4 (N.D. Cal. Apr. 2, 2013) (citing *Fleury*, 2008 WL 4680033, at *7). The only Objector claiming an inability to pay is Sussman, who represents that he is on Social Security Disability Insurance, receives less than $1,000 per month, and would have to sell his condominium to make the requested bond. However, Sussman has not presented any evidence of his inability to pay and did not appear at the hearing to provide further information. Without this evidence, the Court finds the first factor neutral as to Sussman. *See Fleury*, 2008 WL 4680033, at *7 (finding factor neutral without evidence of financial inability). This factor otherwise weighs in favor of imposing a bond on the remaining Objectors.

Moving to the risk of nonpayment, courts have found that residing out of state increases the risk of nonpayment. *See, e.g., Embry v. ACER Am. Corp.*, No. C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012), *on reconsideration*, 2012 WL 13059929 (N.D. Cal. July 31, 2012). And this factor "may be weighed more heavily when an appellant lives outside the jurisdiction of the Ninth Circuit." *Netflix*, 2013 WL 6173772, at *3. Here, three of the four Objectors—Sussman (Florida), Zhen (Puerto Rico), and Woodlands (West Virginia)—reside out of California and outside of the Ninth Circuit. The Court therefore finds this factor weighs in

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.
3

United States District Court
Northern District of California

favor of issuing a bond as to these Objectors. Barnes is the only objector residing in California, and IPPs attempt to satisfy this factor with other arguments alleging fraud and frivolous claims. But the Court need not decide these highly contested issues at this time.[2] Even if this factor weighed in Barnes's favor, it would be overpowered by the weight of the other two factors.

The final factor is the likelihood that appellants will not prevail on appeal. This factor weighs heavily in favor of bond where appellants raise issues "thoroughly addressed" by the court and rejected as lacking merit. *Schulken*, 2013 WL 1345716, at *5. The Court will separately address each Objector's original objections and the reasons why the Court rejected them.

Barnes objected to the Settlement Agreement for three reasons: the claims process required those without claim numbers to submit forms via mail rather than online; Verita and Class Counsel did not diligently provide claim numbers; and the Settlement Agreement included a California Civil Code § 1542 waiver. Final Approval Order 13–14. The Court found that having to mail a claim form and receive payment by check did not prejudice class members; that Verita's system to provide claim numbers was an effective and necessary fraud-prevention tool; and that § 1542 waivers were common in class settlements and did not constitute an unreasonable or prejudicial settlement term. *Id.* Sussman objected for similar reasons regarding filing a paper claim. *Id.* at 15. He also objected because he believed the notices did not provide information on how and where to object. *Id.* The Court found this information was located in the settlement website's Frequently Asked Questions section and long-form notice. *Id.* Woodlands objected because the claim form did not have a field to enter an entity name. *Id.* at 12–13. The Court found that entities were included in the class definition and were able to file claim by putting the entity name in the "Name" field. *Id.* Regardless, the objection was moot because Verita updated the form to include an additional row titled "Name of Entity" on February 27, 2025, and the claim period was still ongoing through May 20, 2025, giving entities sufficient time to utilize the new

---

[2] Because the Court finds it unnecessary to consider arguments regarding fraud, the Court finds Angeion's declaration regarding Objectors' alleged fraud irrelevant. The Court therefore **TERMINATES** as moot IPPs' motion to consider whether to seal Angeion's declaration. ECF No. 430.

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.
4

form. *Id.*; *see also* Dizon Decl. ¶ 22, ECF No. 404-3. Zhen objected because the Settlement Agreement did not include purchases made in Puerto Rico, which according to Zhen, forces purchasers from Puerto Rico to waive their rights without any consideration. Final Approval Order 14–15. The Court found that the definition of IPP in the Settlement Agreement did not include Puerto Rico (or several other states[3]), and the release of claims is limited only to class members who made purchases in IPP states. *Id.* Therefore, Puerto Rico purchasers are not bound to the terms of the Settlement Agreement, and likewise, their rights and ability to bring claims against Defendants are not impacted by the terms of this Settlement Agreement.[4] Similarly, because Zhen did not purchase telescopes in any of the IPP states and is not bound by the Settlement Agreement, he likely lacks standing to appeal.[5] The Objectors have failed to persuade the Court that these same objections, which were thoroughly examined and rejected by the Court, will be meritorious on appeal.

Therefore, after considering each Objectors' financial ability, risk of nonpayment, and likelihood of success on appeal, the Court finds the factors ultimately weigh in favor of granting an appeal bond.

### B.    Amount of Bond

Having concluded that a bond is appropriate, the Court now must determine the amount of the bond. The Court may set the appeal bond at the "amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "Costs on appeal" are either "costs taxable on appeal" or "all expenses defined as 'costs' by an applicable fee-shifting statute, including attorney's fees."

---

[3] There are eighteen other excluded states, including Alabama, Alaska, and Colorado.
[4] The Court also notes that the Amended Judgment merely incorporates the language of the Settlement Agreement. *Compare* Settlement Agreement ¶¶ 1(w)–(y),10–14, ECF No. 390-1, *with* Amended Judgment ¶ 8. To the degree that Zhen takes issue with the Amended Judgment incorporating the Settlement Agreement's terms dismissing uncertified and unsettled claims, the Court repeats, such a dismissal only binds the members of the class.
[5] The Court did not address Zhen's standing in its Final Approval Order because regardless of standing, " it may still consider that putative objector's objections to a class settlement" if it helps the Court satisfy its fiduciary duties. *In re: Cathode Ray Tube (Crt) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 3648478, at *23 (N.D. Cal. July 7, 2016), *dismissed sub nom. In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 16-16368, 2017 WL 3468376 (9th Cir. Mar. 2, 2017).

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.
5

*Azizian*, 499 F.3d at 958. "Costs taxable on appeal" are costs for: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a bond or other security to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e). The appeal bond, however, may not include delay damages. *Azizian*, 499 F.3d at 960.

IPPs request that the bond include both $42,818 in continued class administration costs and $175 in taxable costs. Regarding the former, class administration costs are not included in Rule 39(e), and IPPs fail to identify an applicable fee-shifting statute that would allow the Court to include these costs in the Rule 7 appeal bond. *See, e.g., Low v. Trump Univ., LLC*, No. 310CV00940GPCWVG, 2017 WL 2655300, at *4 (S.D. Cal. June 19, 2017) (declining to include administrative costs in a Rule 7 bond absent a fee-shifting statute); *Schulken*, 2013 WL 1345716, at *7 (same); *Keller v. Nat'l Collegiate Athletic Ass'n*, No. C 09-1967 CW, 2015 WL 6178829, at *3 (N.D. Cal. Oct. 21, 2015) (same); *Golloher v. Todd Christopher Int'l, Inc.*, No. C 11-1726 RS, 2014 WL 12625124, at *2 (N.D. Cal. July 7, 2014) (same).[6] Absent an applicable fee-shifting statute, the Court finds no justification to include the requested $42,818 in administrative costs.[7] The Court will grant, however, IPPs' request for taxable costs. IPPs conservatively estimate that printing, copying, and mailing the briefs will total approximately $175.[8] In two other recent appeals, Class Counsel also spent $95.20 and $136 on printing and copying, as well as $60 on

---

[6] Some courts have even considered administrative costs to be impermissible delay damages. *See, e.g., Zakikhani v. Hyundai Motor Co.*, No. 8:20-CV-01584-SB-JDE, 2023 WL 9420118, at *4 (C.D. Cal. Dec. 14, 2023) (collecting cases) ("[S]ettlement administration expenses are more accurately viewed as delay damages than 'costs on appeal.' The increase in such expenses results from the delay caused by the objector's pursuit of an appeal—a potential harm, to be sure, but one inflicted by the mere passage of time required by the appellate process itself.").

[7] IPPs rely heavily on the Court's 2013 decision allowing administrative costs in a Rule 7 bond, *In re Netflix Priv. Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *4 (N.D. Cal. Nov. 25, 2013). However, in that case, the Court was not presented with the arguments Objectors raise here and did not have the benefit of the decade of Rule 7 case law that followed. The Court more recently in 2023 recognized this line of cases when it similarly excluded administrative costs from a Rule 7 appeal bond in *In re Apple Inc. Device Performance Litig.*, No. 5:18-MD-02827-EJD, 2023 WL 3510393, at *1 (N.D. Cal. May 16, 2023).

[8] Class Counsel does not provide specific calculations of the estimated costs, but Rule 7 does not require them to do so. *See Schulken*, 2013 WL 1345716, at *6.

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.

6

2-ER-0072

United States District Court
Northern District of California

Federal Express costs.  Zapala ¶ 5, ECF No. 436.  Considering this context, the Court finds $300 to be a reasonable estimate of taxable costs in this case.

Therefore, although the Court will not award administrative costs, the Court finds an appeal bond of $300 in taxable costs appropriate under these circumstances.

### C.   Motion for Protective Order

Before the Court concludes, it addresses Zhen's related motion for a protective order.  ECF No. 432.  In IPPs' motion for an appeal bond filed on July 14, 2025, Class Counsel inadvertently filed as exhibits unredacted documents containing Zhen's personal information.  *See* ECF Nos. 429-1, 429-5.  Zhen subsequently filed a motion for a protective order on July 21, 2025, arguing that IPPs violated Federal Rule of Civil Procedure 5.2(a)(1) and (a)(2).  ECF No. 432; Fed. R. Civ. P. 5.2(a)(1)–(2) (providing that electronically filed documents containing certain personal information may only include the last four digits of a SSN and the year of birth).  That same day, IPPs filed a motion to remove the incorrectly filed documents, indicating that they intended to redact the documents prior to filing.  ECF No. 433.  The Court granted IPPs' motion and the unredacted documents have been removed from the public docket.  ECF 439.  Accordingly, to the extent that Zhen's motion sought to remove these docket entries, Zhen's request is moot.[9]  Zhen also later, in response to IPPs' motion to remove the documents, specifically requested an order that Class Counsel file a declaration that they have read and reviewed Rule 5.2 and related privacy policies.  *See* ECF No. 435.  The Court finds this unnecessary.  The Court expects all attorneys appearing before it to be familiar with Rule 5.2, and the Court trusts that Class Counsel will not make this grave mistake twice.  Should this issue arise in the future, the Court will examine appropriate sanctions.

### IV.   CONCLUSION

Based on the foregoing, the Court **DENIES** Zhen's motion for a protective order and

---

[9]Any additional arguments Zhen raised regarding discovery issues between the parties on appeal have been resolved by the Ninth Circuit, which recently denied Zhen's motion for a protective order and sanctions on October 24, 2025.  Case No. 25-3039, Dkt. 34 (9th Cir. Oct. 24, 2025).

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.
7

**GRANTS IN PART** IPPs' motion for an appeal bond. The Court imposes a bond in the amount of $300 jointly and severally on Objectors.  Within 14 days of entry of this Order, Objectors shall either: (1) file with the Court and serve on Appellees proof of satisfaction of the bond requirement, or (2) file a notice of dismissal of their appeal.

**IT IS SO ORDERED.**

Dated: November 20, 2025

EDWARD J. DAVILA
United States District Judge

United States District Court
Northern District of California

Case No.: 5:20-cv-03639-EJD
ORDER GRANTING IN PART MOT. FOR APPEAL BOND; DEN. MOT. FOR P.O.

8

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD
LITIGATION

This Document Relates to:
Indirect Purchaser Actions

### RESPONSE TO NOTICE

While Class Counsel did not mention mail to Appellant Pat Zhen in their late surreply called a "notice," to put an end to continuous attacks and conspiracy theories, Zhen provides the following identification.  If this is not sufficient, Zhen would be willing to provide whatever is needed *ex parte* to the Court and in a manner that assures Class Counsel will not be able to access it considering their failure to respect any form of privacy of their clients:

I declare under the penalty for perjury that the following is a true and correct , but redacted, copy of my "Real ID" Driver's License issued by the Commonwealth of Puerto Rico (28 USC 1746).



Respectfully submitted,

_____
Pat Zhen

Elman Barnes
1401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD
LITIGATION

 This Document Relates to:
Indirect Purchaser Actions

## OBJECTOR RESPONSE TO NOTICE

Objector filing #442 shows the mailing address is 1401 21st Street, not 401.  Cut and paste error created that confusion, but Class Counsel knew at all times.  They also know that Objector received the mail to 401 21st as Objector provided copies.   In that document, Objector explained that Class Counsel mailed five to six copies of the same document despite electronic service.  But here shows the mail received even though on ECF:

August 5, 2025, mail received to 1401:



August 5, 2025, mail received to 401:

**2-ER-0076**



Please use ECF or 1401 only if a paper is absolutely necessary. Please delete 401.  Please do not mail multiple redundant copies of the same thing.  Objector will update PACER mailing address to avoid confusion.

Respectfully submitted,
/s/

Elman Barnes

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN RE: TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD

LITIGATION

This Document Relates to:

Indirect Purchaser Actions

**KARLA LUNA'S RESPONSE TO THE NOTICE**

Here in October 2025, Class Counsel vexatiously gripes about a letter they sent in July 2025 to Hinton WV which was returned to them in August 2025.  However, in July the address listed was the Beckley address, *See* ECF 441 (July filing showing Beckley address).  Here is what the docket sheet in this case shows:

| | |
|---|---|
| | Email: legal@patzhen.com<br>PRO SE |
| **Objector**<br>**Karla Luna** | represented by **Karla Luna**<br>c/o National Woodlands<br>110 James Street<br>Beckley, WV 25801<br>304-910-1223<br>Email: k.luna@wvwoodlands.com<br>PRO SE |
| **Objector** | |

Class Counsel knew this because they used the Beckley address.

2-ER-0078



Class Counsel is merely attempting to confuse this Court by citing a

prior February 2025 address which was updated months earlier.

Respectfully submitted,

/s/ Karla Luna

K. Luna

c/o   National Woodlands Preservation Inc.

110 Main Street

Beckley WV  25801

**2-ER-0079**

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

IN RE:  TELESCOPES ANTITRUST          ) 5:20-cv-03639 EJD
        ANTITRUST                     )

DECLARATION OF MICHAEL SUSSMAN IN RESPONSE TO REPORT

Michael Sussman ("Sussman") declares and states under the penalty for perjury that the following is true and correct:

1.  I am responding to the "report" of Cotchett Pitre & McCarthy:

2.  Big pieces of mail do not fit in the apartment box,  especially when they send multiple copies of the same document.  I am not going to the post office to pick it up when I am served by ECF.

3.  I should not have to do CPM's investigation for them or have to provide this information to file an objection in a $20 telescope antitrust case.

4.  Here's my Palm Beach County property tax bill available online at https://pbcpao.gov/Property/TrimDetails?parcelId=00424735120015020



5. Against my better judgment, it even has a gold star on it.



6. October 10, 2025, invoice from management company that CPM hearsay states told them they do not know who I am, but they still send me bills wanting paid their assessments.



7. Here's one fat pack from August that I received because the mailman left it.

2-ER-0081



8.   I do not know what the Post Office message "pending review" means.

9.   Thank you for your time and help in making class actions great again.

Very truly yours,

Mike Sussman

2-ER-0082

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE: TELESCOPES ANTITRUST LITIGATION** | **Case No. 5:20-cv-03639-EJD** |
| | **NOTICE REGARDING INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND (ECF NO. 429)** |
| **THIS DOCUMENT RELATES TO:** | **Date:** **August 14, 2025** |
| All Indirect Purchaser Actions | **Time:** **9:00 am** |
| | **Dept:** **Courtroom 4** |
| | **Judge:** **Hon. Edward J. Davila** |

**NOTICE RE: INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND;**
**Case No. 5:20-cv-03639-EJD**

**2-ER-0083**

The Indirect Purchaser Plaintiffs ("IPPs") respectfully submit this Notice regarding IPPs' Motion for Appeal Bond. ECF No. 429. This Notice provides additional, more recent information relevant to IPPs' Motion. Specifically, the information relates to the legitimacy of the addresses provided by objectors National Woodlands Preservation, Inc., Michael Sussman, and Elman Barnes.

IPPs served objectors National Woodlands Preservation, Inc., Michael Sussman, and Elman Barnes with documents filed in the above-captioned matter. In response, IPPs have, on several occasions, received notices from the United States Postal Service and from individuals associated with addresses allegedly connected to these objectors indicating that the mail was undeliverable or that the addressee was not known to anyone residing at the given address. Attached hereto is the Declaration of Alexandra Delavan in support of this notice, which provides additional detail regarding the dates, addresses, and nature of the issues encountered when attempting to serve certain objectors via U.S. Mail. The facts below constitute further indicia of fraud.

As that Declaration outlines:

- National Woodlands Preservation, Inc.: With respect to Objector National Woodlands Preservation, Inc., it identified its address as: 110 James St., Hinton, WV 25951 in connection with its objection. *See* Woodlands Objection, ECF No. 401. On July 14, 2025, IPPs' Motion for Appeal Bond and supporting documents (ECF No. 429) were sent via U.S. mail to Objector National Woodlands Preservation, Inc. at the address listed in their objection. A. Delavan Decl. ¶ 3. On August 6, 2025, Cotchett, Pitre & McCarthy LLP received the original mailing returned as undeliverable. The envelope was marked "Return to Sender – Not at this Address." *Id*. Similarly, on August 5, 2025, IPPs' Reply in Support of their Motion for Appeal Bond and supporting documents (ECF No. 443) was mailed to Objector National Woodlands Preservation, Inc. to the address listed in their objection. *Id*. ¶ 6. On August 21, 2025, Cotchett, Pitre & McCarthy LLP received the original mailing returned as undeliverable. The envelope was marked "Return to Sender – Not at this

**NOTICE RE: INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND  1**
**Case No. 5:20-cv-03639-EJD**

Address." *Id.*

- Michael Sussman: With respect to objector Michael Sussman, he initially sent in his objection identifying his address as: 23200 Camino del Mar, Boca Raton, FL, with an apartment number 503. *See* Sussman Objection, ECF No. 403; *see also* ECF No. 421 at 5 (Notice of Appeal, filed May 5, 2025, identifying Sussman's unit as #503). IPPs sent materials to Mr. Sussman at that address, but they were returned undeliverable. *See e.g.,* IPPs' Motion for Appeal Bond at 15–16 (ECF No. 429 at 21–22) (recounting the indicia of fraud associated with Mr. Sussman). Additionally, in June 2025, when a process server attempted to serve Mr. Sussman with a subpoena at that address, the process server was told no one by that name lived in the apartment complex. *See, e.g.*, Decl. of Reasonable Diligence, ECF No. 429-6 (discussing, *e.g.*, process server's efforts in June 2025). In July 2025, Mr. Sussman indicated that his "real" address is Apartment #502, not #503. *See* ECF Nos. 428 and 440. IPPs accordingly sent materials to that address at #502. On September 17, 2025, materials sent to Mr. Sussman's alleged correct address, #502, were returned as undeliverable. A. Delavan Decl. ¶ 4.

- Elman Barnes: On July 22, 2025, IPPs' Motion to Remove Incorrectly Filed Documents and supporting materials (ECF No. 433) was mailed to Objector Elman Barnes at the address listed in his objection to the proposed IPP settlement: 401 21st Street Ste. R, Sacramento, CA 95811. *See* ECF No. 399. A. Delavan Decl. ¶ 5. On September 26, 2025, Cotchett, Pitre & McCarthy LLP received a voicemail message from a caller named Maggie, who stated that Elman Barnes does not live at that address. *Id.*

Dated: October 13, 2025

Respectfully Submitted,

*/s/ Adam Zapala*

Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Christian S. Ruano (SBN 352012)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000

**NOTICE RE: INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND  2**
**Case No. 5:20-cv-03639-EJD**

azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

 /s/ Kalpana Srinivasan
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas SBN 24102452
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

/s/ Lin Y. Chan
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
**LIEFF CABRASER HEIMANN &**
 **BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000

*Co-Lead Counsel for the Indirect Purchaser
Plaintiffs*

**NOTICE RE: INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND  3**
**Case No. 5:20-cv-03639-EJD**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE: TELESCOPES ANTITRUST LITIGATION** | **Case No. 5:20-cv-03639-EJD** |
| | **DECLARATION OF ALEXANDRA DELAVAN** |
| **THIS DOCUMENT RELATES TO:** | |
| All Indirect Purchaser Actions | |

**DECLARATION OF ALEXANDRA DELAVAN;**
**Case No. 5:20-cv-03639-EJD**

I, Alexandra Delavan, declare as follows:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2. I am a Paralegal at Cotchett, Pitre & McCarthy, LLP, one of the three firms appointed as Settlement Class Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I have worked at Cotchett, Pitre & McCarthy, LLP ("CPM") for five years, including four years as a paralegal. As a part of my regular responsibilities, I prepare, send, receive, and inspect U.S. Mail related to court filings and service of documents in this matter.

3. On July 14, 2025, I sent via U.S. mail the IPPs' Motion for Appeal Bond and supporting documents (ECF No. 429) to Objector National Woodlands Preservation, Inc. at the address listed in their objection to the proposed IPP settlement: 110 James St., Hinton, WV 25951. ECF No. 401. On August 6, 2025, our office received the original mailing returned as undeliverable. The envelope was marked "Return to Sender – Not at this Address."

4. On July 22, 2025, I sent via U.S. mail the IPPs' Motion to Remove Incorrectly Filed Documents and supporting materials (ECF No. 433) to Objector Michael Sussman.  This package was mailed to the address listed in his Amended Notice of Appeal and his Response to IPPs' Motion for Appeal Bond. ECF Nos. 428 and 440 (in the latter, Mr. Sussman says that his "correct" address is 23200 Camino del Mar, Boca Raton, FL, with an apartment number 502, not 503). On September 17, 2025, our office received the original mailing returned as "undeliverable." The envelope was marked "Return to Sender – Unable to Forward." A true and correct copy of the envelope is attached hereto as **Exhibit A**.

5. On July 22, 2025, I sent via U.S. mail the IPPs' Motion to Remove Incorrectly Filed Documents and supporting materials (ECF No. 433) to Objector Elman Barnes at the address listed in his objection to the proposed IPP settlement: 401 21st Street Ste. R, Sacramento, CA 95811. ECF No. 399. On September 26, 2025, our office received a voicemail message from a caller named Maggie, who stated that Elman Barnes does not live at that address. A true and correct copy of the transcription of the voicemail (with the telephone number redacted) is attached hereto as **Exhibit B**.

**DECLARATION OF ALEXANDRA DELAVAN;**                                                    **1**
**Case No. 5:20-cv-03639-EJD**

6.     On August 5, 2025, I sent via U.S. mail the IPPs' Reply in Support of their Motion for Appeal Bond and supporting documents (ECF No. 443) to Objector National Woodlands Preservation, Inc.  This package was mailed to the address listed in their objection to the proposed IPP settlement: 110 James St., Hinton, WV 25951. ECF No. 401. On August 21, 2025, our office received the original mailing returned as undeliverable. The envelope was marked "Return to Sender – Not at this Address."

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 13th day of October 2025 in Burlingame, California.

/s/ *Alexandra Delavan*
Alexandra Delavan

**DECLARATION OF ALEXANDRA DELAVAN;**
**Case No. 5:20-cv-03639-EJD**

2

**2-ER-0089**

# EXHIBIT A



# EXHIBIT B

**Voicemail Transcription**

**"Yeah, you, in July, July 22nd, looks like you sent a packet to Elman Barnes at 401 21st Street, Sacramento, California. Elman Barnes does not live at that address. We have this huge packet, we can throw it out, try return to sender, I don't know if they'll... if they'll do it or not, but, anyway, my name is Maggie, and, I'm trying to help the... one of the caretakers, or the person who received the packet. Again, Elman, E-L-M-A-N-B-A-R-N-E-S, does not live Barnes. Ellman Barnes does not live at 401 21st Street, Sacramento. You can call me back and let me know if I can just recycle this, or if you want me to try to put it in the mailbox for turn to sender. My number is 916-220-7178. Thank you. That huge lawsuit thing was sent in July. Yeah, I don't know, I just turned it off. "**

2-ER-0093

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com
(787) 547-5010

Objector

### IN THE UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST         No. 5:20-cv-03639-EJD
LITIGATION

This Document Relates to:
Indirect Purchaser Actions

### <u>RESPONSE TO CLASS COUNSEL'S SUPPLEMENTAL BRIEF</u>

I.   **CONSIDERING ZHEN'S PROFFER OF A $600 APPEAL BOND, UNLESS THIS COURT FINDS ITS OWN 2023 OPINION IN *IN RE: APPLE DEVICE LITIGATION* TO BE INCORRECTLY DECIDED, THERE EXISTS NO NEED TO ANALYZE THE FACTORS RELATING TO AN APPEAL BOND**

In the case of *In re: Apple Inc. Device Litigation*, 2023 WL 3510393, 5:18-md-02827-EJD,[1] Entry 675 (Attached as Exhibit 1), this Court made it clear that a cost bond for settlement administrative expenses is not authorized, only taxable costs under F.R.A.P. 39 such as copies, briefs, and shipping.[2]

---

[1] This Court's opinion has not been flagged for any form of negative treatment which demonstrates it is the more recent and persuasive opinion than the decade-old cases Class Counsel cites.

[2] Shipping is not a taxable cost and the Ninth Circuit limits copy costs to $.10 per page.

**2-ER-0094**

In this case, Class Counsel admits that their costs are $150 for printing. There exists no dispute that the $42,000 are not Rule 39 fees. Class Counsel seems to admit that. Zhen offered $600 in case they needed to file four briefs, an unlikely event, and to avoid an appeal and need to pay a $605 filing fee to challenge what would clearly be an inappropriate bond under this Court's own *Apple Inc. Device Litigation* holding.

In *In re: Apple Inc. Device Litigation*, this Court found that copies might be around $8,500, *which is what Class Counsel in that case claimed.* Whether that was a math error by Apple's Class Counsel is not relevant in this case because here Class Counsel admits that taxable costs are only around $150.  Considering Zhen's stipulation to a $600 appeal bond, there exists no reason to analyze whether a bond is appropriate at all unless *In re: Apple Inc. Device Litigation* was wrongly decided.

II.    **AN APPEAL OF THE PUERTO RICO CARVE OUT AND AMENDED JUDGMENT IS NOT FRIVOLOUS**[3]

As explained in prior briefing, there is an inter-district split in the

---

[3] Class Counsel continues to argue that Zhen lacks standing to raise the Puerto Rico argument and that it is shielded from review.  Technically, however, Class Counsel's own secret investigative report demonstrates that Zhen owns property in Puerto Rico, where he bought the instrument, and also Rhode Island, which is listed.  Objectors Sussman and Barnes raised the issue of the language and Class Counsel certified that residence and purchase state make a person eligible.  To that extent, Zhen technically is a member of the class no matter how it is reviewed based on Class Counsel's own report that they tout as accurate.

Northern District of California as to whether Puerto Rico constitutes a repealer territory for inclusion in indirect purchaser damage-based class actions warranting appellate review.

Class Counsel, in responding to the original objections, opined that Puerto Rico was not a repealer territory. This raises a plethora of questions as to adequacy of representation, an underinclusive certified class, and the propriety of carving out the territory. Certainly, it is appropriate to carve out non-repealer locations from a settlement, but Puerto Rico is a repealer territory discriminated against. Furthermore, district courts need to perform a state by state analysis when approving a single class, *Stromberg v. Qualcomm*, 14 F.4th 1059, 1074 (9th Cir. 2021), but nothing therein suggests an exclusion because Class Counsel simply did not understand or research the law. By doing so, Class Counsel's self-dealing created a situation where there would be numerosity-based questions and cost-basis economic feasibility questions for any attorneys considering filing a class action for Puerto Rico. *See*, e.g., Nancy Morawetz, *Underinclusive Class Actions*, 71 N.Y. Law Review 402, at 421 ("Given that the New York State class was about two hundred persons, the excluded persons from the less populous states of the circuit-Vermont and Connecticut-were left with a claim for which it would have been more difficult to identify an affected named plaintiff and more difficult to establish numerosity"). In doing so,

Class Counsel prejudiced Puerto Rico residents.  Moreover, the original judgment appeared to mix the nationwide claims as being settled.

Class Counsel's unilaterally dropping the claims violates various ethical standards because they did not take "reasonable steps to avoid reasonably foreseeable prejudice to the rights of the client, such as giving the client sufficient notice to permit the client to retain other counsel." *See* California Rules of Professional Conduct 1.16 (d); *Ramirez v. Sturdevant*, 21 Cal.App.4th 904, 915 (1994).

This falls into the adequacy of Class Counsel.[4]  The prejudice to all Class Members, including Puerto Rico class members, included the Amended Judgment of which the Class received no advanced notification about.  Worse, nationwide Class Members such as Puerto Ricans were not given notice of an intent to dismiss those claims.

---

[4] It is noted that competing Class Counsel appeared better able to represent the entire class, something the Court may not have realized when it appointed Cotchett Pitre & McCarthy as lead counsel because they concealed that they were using the nationwide injunctive claims as a bargaining chip to achieve a money settlement for certain states.  When Class Counsel chose to dismiss the nationwide claims "on the merits" to achieve the settlement for certain states, a conflict of interest came into existence and this Court should have created a sub-class under Rule 23(c)(5) and appointed Class Counsel for the impaired absent class members.  One common structural protection is division of the class into "homogenous subclasses under Rule 23(c)(4)(B), with separate representation to eliminate conflicting interests of counsel."  *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 856 (1999).  This should have occurred here, but instead the nationwide claims were simply discarded and the rights of the affected persons tossed aside.

Class Counsel stated that Civil Rule 59 allows for the unilateral amendment of a judgment without notice to the Class while the appeal is pending.  This is not correct.  The Rule limits motions to amend to a 28 day period, which expired.  This Court was without jurisdiction to grant that motion at all, let alone during an appeal.  The amended judgment is *void ab initio*, presenting a jurisdictional problem that can only be cured by a remand.[5]

The Amended Judgment purported to adjudicate the nationwide claims "on the merits" and "with prejudice."  The language within ¶6 uses broad language that could be construed as binding dismissal of nationwide injunctive claims—not only for the named plaintiffs.[6]  Class Counsel's position appears to be that the inclusion of the nationwide claims automatically tolled the statute of limitations until this Court issued its final class certification.   It is notable that the Telescope Manufacturers have not joined this argument and it is they, not Class Counsel, who will be raising the issue.  The Telescope manufacturers have not conceded that a Puerto Rico class can sue without facing the statute of limitations argument.

---

[5] If anything, Class Counsel should be grateful for the appeal as they can ask for vacatur to allow for the Amended Judgment if they explain how it would be appropriate and in the best interests of the class.

[6] Since the amended judgment constitutes a nullity anyway, on appeal, Class Counsel could seek a remand to amend it so it passes muster, or they could consent to a sub-class being appointed and different Class Counsel for that sub-class.

The Ninth Circuit case cited by Class Counsel in footnote 1 of their Supplement Brief, *DeFries v. Union Pac. R.R. Co.*, 104 F4d 1091, 1100 (9th Cir. 2024), does not automatically save Puerto Rico indirect purchasers. On the contrary, it held that a case filed in California was not bound by an out of circuit class action settlement due to ambiguous terms and that the class was not notified of the narrowing of the class. The decision requires the reviewing court to perform a full analysis and is not automatically applied.

The prejudice to Puerto Ricans is that any lawsuit they file will be within the First Circuit, not the Ninth Circuit, and the case is merely persuasive rather than binding authority. There exists no similar analysis that is binding upon the Puerto Rico federal court, or the Puerto Rico local courts if Zhen proceeds on an individual basis.

III.   **ZHEN DID NOT WAIVE ANY OBJECTION**

Class Counsel caused the entry of the Amended Judgment without notice or an opportunity to object. The Class never received any form of notice that the nationwide claims were being compromised to their detriment, making them an impaired subclass. No notice to the class was made that these claims would be waived or that the statute of limitations started again.

However, Zhen did clearly object that the settlement was unfair and inadequate where Puerto Rico was not included simply because Class Counsel did not believe that it constituted a repealer territory.  The issue relating to Class Counsel's allowing the nationwide claims to be ruled upon "on the merits" and "with prejudice" demonstrates the confusion and damage caused by the Amended Judgment for the class members, including those from Puerto Rico.

## IV.   THE IMAGINARY FRAUD LACKS FACTUAL FOUNDATION

Considering objectors did not file claims, but merely outlined obstructions preventing them from doing so, Class Counsel's continued personal attacks and insinuations of some vague fraud make little sense. Class Counsel's own investigative reports demonstrate that Zhen, for instance, owns property in Puerto Rico confirming his position that purchases were made there.  In addition, it demonstrates property in Rhode Island, evidencing he is also a member of the class through that state.

Regardless, objectors suggested that Class Counsel participate in the Ninth Circuit's mediation program where identity documents could be provided to the mediator confidentially.[7]  Nobody is going to provide Class

---

[7] As the Ninth Circuit mediation instructions explain, "Once [the form] has been submitted, all parties will receive an NDA that has a link that will enable parties to submit relevant confidential information directly to the Circuit Mediators."  *See*

Counsel with documents that they will, obviously, abuse considering their callous disregard for the privacy rights of those they purport to represent.

Respectfully submitted,

_____

Pat Zhen

_____

*https://www.ca9.uscourts.gov/mediation/frequently-asked-questions/* (retrieved August 24, 2024).  This would have allowed appellants to submit their identification to the arbitrator who would, most likely, explain to Cotchett Pitre & McCarthy that they are diving into conspiracy theories.

**2-ER-0101**

United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| IN RE: APPLE INC. DEVICE PERFORMANCE LITIGATION | Case No. 5:18-md-02827-EJD **ORDER GRANTING IN PART MOTION FOR APPEAL BOND** Re: ECF No. 664 |

**I.     BACKGROUND**

Plaintiffs move for an appeal bond pursuant to Federal Rules of Appellate Procedure 7 to ensure payment of the expenses the settlement class will accrue during appeal.  ECF No. 664. Objectors Kendrick Jan and Sarah Feldman oppose Plaintiffs' request.  For the reasons explained below, the Court **GRANTS in part** Plaintiffs' motion for appeal bond.

This Court granted final approval of class action settlement and awarded attorneys' fees on March 23, 2021.  ECF Nos. 608, 609.  Several objectors, including Objectors Feldman and Jan, appealed both Orders.  The Ninth Circuit vacated the Orders and remanded with directions on appeal. *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 784–85 (9th Cir. 2022).  The parties jointly moved for final approval and Class Counsel renewed their motion for attorneys' fees, expenses, and incentive awards.  ECF Nos. 631, 632.  The Court heard oral arguments on January 11, 2023, and approved final settlement and granted Class Counsel's renewed fee request on February 17, 2023.  ECF No. 653.  Objectors Feldman and Jan again appealed this Court's Order granting the renewed motions.  ECF No. 661.  Feldman and Jan were not joined by any of the previous appellants on the second appeal.

Case No.: 5:18-md-02827-EJD
ORDER GRANTING IN PART MOTION FOR APPEAL BOND

1

AUTHENTICATED
U.S. GOVERNMENT
INFORMATION
GPO

United States District Court
Northern District of California

Plaintiffs now move for an appeal bond pursuant to Fed. R. App. P. 7 to ensure payment of the expenses the settlement class will accrue during appeal. ECF No. 664. Class Counsel requests an appeal bond in the amount of $122,100, apportioned $8,500 in taxable costs and $113,600 in administrative costs. *Id.*

## II.    LEGAL STANDARD

Federal Rule of Appellate Procedure 7 ("Rule 7") governs motions for appeal bonds, providing in relevant part that, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "[T]he purpose of [an appeal bond] is to protect an appellee against the risk of nonpayment by an unsuccessful appellant." *Fleury v. Richemont N. Am.*, Inc., No. C–05–4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008) (quotations and citations omitted). Rule 7 does not define "costs on appeal," but the Ninth Circuit has held that, as used in Rule 7, the term includes those costs specified in Federal Rule of Appellate Procedure 39 for "costs taxable on appeal" and "all expenses defined as 'costs' by an applicable fee-shifting statute, including attorneys' fees." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 958 (9th Cir. 2007). The trial court has discretion to impose an appeal bond and determine the bond amount. *In re Netflix Priv. Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *2 (N.D. Cal. Nov. 25, 2013).

## III.    DISCUSSION

District courts have articulated three relevant factors a court should consider in determining whether to require an appeal bond: (1) appellant's financial ability to post a bond, (2) the risk that appellant would not pay the costs if the appeal loses, and (3) an assessment of the likelihood that appellant will lose the appeal and be subject to costs. *Fleury*, 2008 WL 4680033, at *7. Upon review, the Court finds that the posting of an appellate bond is warranted in this case.

Regarding financial ability, "[d]istrict courts have found this factor weighs in favor of a bond, absent an indication that a plaintiff is financially unable to post bond." *Schulken v. Washington Mut. Bank*, No. 09-CV-02708-LHK, 2013 WL 1345716, at *4 (N.D. Cal. Apr. 2,

Case No.: 5:18-md-02827-EJD
ORDER GRANTING IN PART MOTION FOR APPEAL BOND
2

2013) (citing *Fleury*, 2008 WL 4680033, at *7); *see also Embry v. ACER Am. Corp.*, No. 09–CV-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012) ("In the absence of evidence that posting a bond will pose a substantial hardship, this factor weighs in favor of requiring a bond."). Feldman and Jan have not contended that they are unable to post bond or provided any evidence indicating a financial inability to pay. Accordingly, this factor weighs in favor of a bond.

Turning to the second factor, courts in this district have imposed appeal bonds when appellants reside out-of-state. *See, e.g.*, *Embry*, 2012 WL 2055030, at *1; *Schulken*, 2013 WL 1345716, at *5 (N.D. Cal. Apr. 2, 2013) ("[C]ourts in the Northern District have recognized that collecting costs from out of state appellants may be difficult."). Indeed, this factor "may be weighed more heavily when an appellant lives outside the jurisdiction of the Ninth Circuit." *Netflix*, 2013 WL 6173772, at *3. In this case, Feldman and Jan both reside in this state. However, at least one court in this district nevertheless held that an appeal bond was warranted where it found that "the merits of Objector[s'] [] appeal weigh[s] heavily in favor of requiring a bond." *Miletak v. Allstate Ins. Co.*, No. 06-CV-03778-JW, 2012 WL 3686785, at *2 (N.D. Cal. Aug. 27, 2012). In *Miletak*, although the second factor weighed neutral, the other two factors weighed in favor of imposing a bond, particularly the merits of the appeal which included objections the court had previously considered and overruled. *Id.* at *2. Here, too, the Court finds that the merits of Feldman and Jan's appeal heavily favors granting a bond.

This is Feldman and Jan's second appeal of final approval. The Court previously overruled Feldman and Jan's objections to final approval and award of fees. ECF No. 653 at 18–21. Feldman and Jan state that their second appeal will, in part, "pursue issues not decided on earlier appeal, including matters on which the Panel expressly deferred ruling in the first appeal," such as whether awarding service awards are an abuse of discretion. ECF No. 667 at 4 (citing *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 785 n.12 (9th Cir. 2022)). In their first appeal, the Objectors argued that the district court lacked discretion to award service and/or incentive awards, alternatively arguing that the awards were an abuse of discretion. *Id.* at 785. The Ninth Circuit held that service and/or incentive awards to class representatives are permissible

Case No.: 5:18-md-02827-EJD
ORDER GRANTING IN PART MOTION FOR APPEAL BOND

3

United States District Court
Northern District of California

and declined to address the Objectors' argument that the Court abused its discretion in granting service awards. *Id.* On remand, this Court considered and overruled Feldman and Jan's arguments with respect to service awards. ECF No. 653 at 37–39.

Feldman and Jan also contend the Court "abused its discretion in applying the Vizcaino factors." ECF No. 667 at 5. On appeal, the Ninth Circuit directed the Court to "more thoroughly explain how the Vizcaino factors support an upward adjustment." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 783–84 (9th Cir. 2022). This Court thoroughly addressed the Vizcaino considerations on remand. Nevertheless, Feldman and Jan now argue that, with respect to the Vizcaino factors, "the contingent nature of the representation is a meaningless factor that does not support an upward adjustment of the benchmark." ECF No. 667 at 5. When using the percentage-of-recovery method, the Ninth Circuit has articulated a number of factors to guide courts, including "whether the case was handled on a contingency basis." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 954–55 (9th Cir. 2015). To the extent Feldman and Jan's argument on appeal disagrees with the factors established by the Ninth Circuit, this argument lacks merit. Feldman and Jan also disagree with the Court's conclusion that awards in similar cases favor an upward adjustment from the benchmark. ECF No. 667 at 4. This contention largely reiterates those made in their first appeal. *See* ECF No. 641-2 at 45. The Court therefore finds that there is a high likelihood that appellants will not prevail on appeal, particularly given that this is their second attempt at raising arguments addressed by the Ninth Circuit or this Court. *See Schulken*, 2013 WL 1345716, at *5 (third factor weighs heavily in favor of bond where appellant raises issues "thoroughly addressed" by the court).

Having concluded that a bond is appropriate, the Court must determine the amount of the bond. Rule 7 "costs" include the costs identified in Rule 39(e). Rule 39(e) provides that the following costs may be taxed: "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid of a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e). Under *Azizian*, the Ninth Circuit held that costs, even if not identified by

Case No.: 5:18-md-02827-EJD
ORDER GRANTING IN PART MOTION FOR APPEAL BOND
4

Case 5:18-cv-03692-EJD   Document 675   Filed 08/24/23   Page 5 of 6

Rule 39(e), can qualify as "costs" if they are so defined by a rule or statute, such as an applicable fee-shifting statute. *Azizian*, 499 F.3d at 958. The Court may set the appeal bond at the "amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. The appeal bond, however, may not include delay damages. *Id.* at 960; *Fleury*, 2008 WL 4680033, at *8. Delay damages fall within the purview of 28 U.S.C. § 1912 and are outside the scope of Rule 7. *Fleury*, 2008 WL 4680033, at *8. Attorneys' fees that could be imposed under Fed. R. App. P. 38, which addresses damages and costs for frivolous appeals, are also not included under Rule 7. *Id.*

Plaintiffs' requested bond includes taxable costs and administrative costs. ECF No. 664 at 8. They do not request attorneys' fees. By Class Counsel's conservative calculations, Plaintiffs expect to incur taxable expenses of at least $8,500 relating to printing, photocopying, preparing and serving the appeal record, and responding to the appellate brief. *Id.*; 664-1 ¶ 3. Class Counsel also requests the bond include $113,600 in administrative costs incurred by Plaintiffs and the Class from the ongoing settlement administration during the second appeal period. The Class Administrator estimates that the cost to maintain and administer the settlement website, the toll-free number, claimant support, communications from Class Members, document storage, and to manage bank account and taxes, will be approximately $4,000 per month. ECF No. 664-2 ¶ 3. Since postage costs will increase starting July 9, 2023, the Class Administrator also anticipates an additional $60,000 in postage fees. *Id.*

Feldman and Jan contend that seven copies of a 100-page brief at 10 cents per page should not exceed $70, and that "Plaintiffs recoverable Rule 39 costs are unlikely to exceed the $505 filing fee already paid by Objectors." ECF No. 667 at 4. Feldman and Jan also argue that the appeal bond should not include administrative costs because Plaintiffs have not identified an applicable fee-shifting statute that gives them a right to recover administrative costs. The Court agrees that in the absence of a statutory right to recover administrative costs, costs recoverable in the appeal of this case are limited those set forth in Fed. R. App. P. 39(e). *See, e.g.*, *Schulken*, 2013 WL 1345716, at *7 (declining to include $10,000 in administrative costs and awarding $5,000 in taxable costs); *Keller v. Nat'l Collegiate Athletic Ass'n*, No. 09-CV-1967 CW, 2015 WL

Case No.: 5:18-md-02827-EJD
ORDER GRANTING IN PART MOTION FOR APPEAL BOND
5

Case 5:18-cv-03682-EED Document 4575 Filed 05/16/23 Page 6 of 6

6178829, at *3 (N.D. Cal. Oct. 21, 2015) (bond awarded consisted of $5,000 in taxable costs and no administrative costs); *Golloher v. Todd Christopher Int'l, Inc.*, No. 11-CV-1726 RS, 2014 WL 12625124, at *2 (N.D. Cal. July 7, 2014) ("[T]here is no basis to require objectors to post a bond for [] [administrative] costs."). Accordingly, the Court declines to include $113,600 in administrative costs in the appeal bond.

Plaintiffs request $8,500 in Rule 39 costs for "preparing the record, and printing, copying, and mailing the briefs," which they contend is a "conservative" estimate. ECF No. 664-1 ¶ 3. The Court finds this estimate to be reasonable.[1] *See Keller*, 2015 WL 6178829, at *2 (finding that $5,000 in taxable costs are a reasonable estimate where the moving papers states the amount is a "conservative estimate" for the amount plaintiffs will spend on printing, photocopying, and preparing and serving the appeal record).

**IV.    CONCLUSION**

Accordingly, the Court **GRANTS in part** Plaintiffs' Motion for Appeal Bond. The Court hereby imposes, pursuant to Appellate Rule 7, a bond requirement in the amount of $8,500 jointly and severally on Objectors Feldman and Jan. Within 14 days of entry of this Order, Feldman and Jan shall either: (1) file with the Court and serve on Appellees proof of satisfaction of the bond requirement, or (2) file a notice of dismissal of their appeal.

**IT IS SO ORDERED.**

Dated: May 16, 2023

EDWARD J. DAVILA
United States District Judge

---

[1] Class Counsel does not provide specific calculations of the estimated costs, and Rule 7 does not require them to do so. *See Schulken*, 2013 WL 1345716, at *6.

Case No.: 5:18-md-02827-EJD
ORDER GRANTING IN PART MOTION FOR APPEAL BOND
6

United States District Court
Northern District of California

**2-ER-0107**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR APPEAL BOND** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | |

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN**
**SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

**2-ER-0108**

Pursuant to the Court's request during the August 14, 2025 hearing on Indirect Purchaser Plaintiffs' Motion for Appeal Bond, Indirect Purchaser Plaintiffs ("IPPs") respectfully provide the following submission regarding the potential impact of the Settlement Agreement (ECF No. 390-1), the Order Granting Motion for Final Approval (ECF No. 419) ("Final Approval Order"), and the Amended Judgment of Dismissal with Prejudice (ECF No. 426) ("Amended Judgment") on Objector-Appellant Pat Zhen's ("Mr. Zhen") standing to object. *First*, to the degree that the Amended Judgment dismissed uncertified and unsettled claims—including a nationwide Sherman Act injunctive relief claim—such a dismissal only binds the class representatives and therefore does not grant standing to Mr. Zhen to object. *Second*, Mr. Zhen further lacks standing to object because, as the Court previously found in dismissing his objections to final approval of the settlement in this action, Mr. Zhen is not an aggrieved member of the Settlement Class because the finally approved settlement ("Settlement") does not release *any* of his potential claims. In a Rule 23(b)(3) class action like this one, a settlement or final judgment only binds members of a certified class who did not opt out. All these principles are long-standing black letter law, and there is no merit to Mr. Zhen's newfound argument.

## I.     The Court's Dismissal of the Uncertified Nationwide Injunctive Class Does Not Bind Mr. Zhen

The existence of a once-pled nationwide claim does not grant Mr. Zhen standing because it was never certified and therefore never bound absent class members—let alone, non-class members. Consequently, as Mr. Zhen is not a member of a certified Settlement Class (defined *infra*), he has not released any claims related to the Settlement or Amended Judgment and has no standing to object.

Standing is not established because Mr. Zhen believes he once belonged to a *proposed* class in IPPs' complaint. Fourth Amended Consol. Class Action Compl. ¶ 197 (ECF No. 300) ("Compl."). If this were true, it would raise the specter of conferring standing to object on even those who exclude themselves from class action settlements, allowing them to both opt out and object. The fact that the Court "dismiss[ed] on the merits and with prejudice IPPs' claims against Defendants" does not impact any claim for damages or injunctive relief that Mr. Zhen has. Amended Judgment ¶ 6. As stated *supra*, this Court never certified a nationwide class. The Settlement Class that the Court certified for purposes of the Settlement includes only purchasers in "Indirect Purchaser States," which does not

include Puerto Rico. Settlement Agreement ¶ 1(q); Final Approval Order at 2; Amended Judgment ¶ 4. The Amended Judgment's reference to dismissal of IPPs' claims "with prejudice" applies only to claims by members of the Settlement Class and does not adjudicate or extinguish any potential claim of non-class members like Mr. Zhen. Amended Judgment ¶ 6.[1] *See Mpoyo v. Litton Electro-Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005) ("Res judicata applies when the earlier suit . . . (1) involved the same 'claim' or cause of action as the later suit, (2) reached a final judgment on the merits, and (3) involved identical parties or privies.") (quoting *Sidhu v. Flecto Co.*, 279 F.3d 896, 900 (9th Cir.2002); *see also Asghari v. Volkswagen Grp. of Am., Inc.*, No. CV1302529MMMVBKX, 2015 WL 12732462, at *38 (C.D. Cal. May 29, 2015) ("Non-class members are not bound by the settlement; their rights and interests are not impacted by the release of claims.") (citing *Hofstetter v. Chase Home Fin., LLC*, No. C 10-01313 WHA, 2011 WL 5415073, at *3 (N.D. Cal. Nov. 8, 2011)).

To the degree the Amended Judgment dismissed the nationwide injunctive claim, it only did so on behalf of the class representatives in their individual capacity because, for an uncertified class, class representatives are the only parties properly before the court. *See, e.g.*, *Smith v. Bayer Corp.*, 564 U.S. 299, 312, 315 (2011) (holding that "[a] court's judgment binds only the parties to a suit" and, specifically, "in the absence of a certification under [Rule 23], the precondition for binding [an unnamed member of a putative class] was not met."); *Aguilera v. Pirelli Armstrong Tire Corp.*, 223 F.3d 1010, 1013 n.1 (9th Cir. 2000) (affirming a grant of summary judgment against an uncertified class and holding that "[w]hen a motion is maintained against an uncertified class, only the named

[1] Although IPPs originally included a nationwide injunctive relief class, *see* Compl. ¶ 197, that class is no longer part of the case (*i.e.*, the Court did not certify that class in the Final Approval Order or Amended Judgment). Under *American Pipe & Construction Co. v. Utah*, Mr. Zhen's inclusion in the nationwide injunctive relief class pled in the Complaint tolled his statute of limitations. 414 U.S. 538, 554 (1974). That tolling of Mr. Zhen's statute of limitations ended only when the Court's approval of the settlement agreement unambiguously narrowed the Settlement Class definition to include only members of the defined Indirect Purchaser States. *DeFries v. Union Pac. R.R. Co.*, 104 F.4th 1091, 1100 (9th Cir. 2024).

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**   **2**

**2-ER-0110**

plaintiffs are affected by the ruling. There is no *res judicata* effect as to unnamed members of the purported class."); *Dolan v. FedEx Ground Package Sys., Inc.*, No. 18-CV-06934-BLF, 2021 WL 4846776, at *2 (N.D. Cal. Oct. 18, 2021) (holding that "because no class has been certified, Plaintiff's individual settlement has no *res judicata* effect on the claims of other class members or on the ability of another member of the class to bring a lawsuit and seek class certification."); *Bontrager v. Showmark Media LLC*, No. CV 14-01144 MMM (EX), 2014 WL 12600201, at *11 n. 8 (C.D. Cal. June 20, 2014) ("The dismissal of these and other claims with prejudice does not affect the rights of putative class members to bring a claim under these same statutes in the future."); *Antoninetti v. Chipotle Mexican Grill, Inc.*, No. 06CV2671-J WMC, 2007 WL 2669531, at *3 (S.D. Cal. Sept. 7, 2007) ("A court's order does not bind members of a putative class if no class action has been certified."); *O'Connor v. Starbucks Corp.*, No. C 06-3706-VRW, 2007 WL 9734594, at *2 (N.D. Cal. July 30, 2007) ("The disadvantage of dealing with the merits before certification is that dismissal is res judicata only as to the class representative, not class members.")

Because Mr. Zhen was never a member of any class certified before the entry of the Amended Judgment, the dismissal of claims pursuant to the Amended Judgment had no impact on him or his potential claims, and he therefore lacks standing to object.

## II. Only Aggrieved Settlement Class Members Have Standing to Object

As this Court has recognized, it has long been black letter law that only class members can object to a proposed settlement. *See* Fed. R. Civ. P. 23(e)(5)(A). Specifically, only aggrieved class members have standing to object to a proposed settlement. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*, 33 F.3d 29, 30 (9th Cir. 1994) (holding that "[o]ne must be an aggrieved class member" to have the right to object to a class settlement and that "[t]he word 'aggrieved' is a necessary, not merely a descriptive, term" because "[i]t is necessary to make the statement compatible with Article III requirements.") This is why courts hold that non-class members do not have standing to object to class settlements. *See Sweet v. Cardona*, 121 F.4th 32, 44 (9th Cir. 2024) (noting non-class members lack standing to object to a settlement or to appeal a district court's approval of a settlement because they do not "sustain some formal legal prejudice as a result of the settlement.")

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN    3
SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

(quoting *Waller v. Fin. Corp. of Am.*, 828 F.2d 579, 583 (9th Cir. 1987).[2]

Here, Mr. Zhen is not a member of the settlement class that this Court certified. Only settlement class members have released claims in connection with the Settlement Agreement. The settlement class only includes persons and entities who purchased telescopes in "Indirect Purchaser States," which does not include Puerto Rico:

> The Settlement Class is defined as all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

Amended Judgment at 3; *see also* Final Approval Order at 2 (citing Settlement Agreement ¶ 1(e)). "Indirect Purchaser States" is a defined term that includes the following states and *omits Puerto Rico*: "Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin."

---

[2] *See, e.g., In re PFA Ins. Mktg. Litig.*, No. 4:18-cv-03771 YGR, 2024 WL 1145209, at *25 (N.D. Cal. Feb. 5, 2024) ("*PFA Insurance*") (objector who "ha[d] not established that he [wa]s a member of the settlement class" "d[id] not have standing to object"); *Zepeda v. PayPal, Inc.*, No. C 10-2500 SBA, 2017 WL 1113293, at *18 (N.D. Cal. Mar. 24, 2017) (non-class member had no standing to object); Order, *Lee v. Kron v. Global Tellink Corp.*, No. 18-56275 (9th Cir. Jan. 24, 2019), ECF No. 13 (dismissing appeal of non-class member for lack of standing); Order, *Vargas v. Debose v. Ford Motor Co.*, No. 17-56764 (9th Cir. May 22, 2018), ECF No. 14 (dismissing appeal where appellants opted out of settlement class and therefore were not class members); *In re Equity Funding Corp. of Am. Sec. Litig.*, 603 F.2d 1353, 1360-61 (9th Cir. 1979) (ruling that a non-member of the class "lacks standing to object to, or to appeal" from the settlement).

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**     **4**

Final Approval Order at 2 n.1 (citing Settlement Agreement ¶ 1(q)).

Mr. Zhen does not belong in the Settlement Class because he claims to have purchased his telescope in Puerto Rico, *not* in one of the Indirect Purchaser States. His objection states he is "a retail purchaser of a telescope covered by the class action and a Citizen of Puerto Rico." Pat Zhen's Objections to Settlement (ECF Nos. 402, 408) ("Zhen Obj."). As this Court found:

> Z[h]en objects to the Settlement Agreement on the grounds that it does not provide payment for purchases made in Puerto Rico, and therefore those who made purchases in Puerto Rico are forced to waive their rights without any consideration. ECF No. 402.

> The Court overrules this objection. The definition of "Indirect Purchaser States" in the Settlement Agreement does not include Puerto Rico, or several other states within the United States. Further, the release of claims is limited to class members who made purchases in Indirect Purchaser States only, so there is no possibility of harm to those who indirectly purchased subject telescopes in Puerto Rico. Those indirect purchasers are still free to bring their own claims.

Final Approval Order at 14-15. In short, Mr. Zhen is not a member of the Settlement Class, did not release *any* claims as part of the Settlement Agreement, and therefore has no standing to object to or appeal the final approval of the Settlement.

### III.    Mr. Zhen Waived His Right to Object Based on Uncertified Nationwide Claims

IPPs note that Mr. Zhen never raised the issue of the nationwide injunctive claim in his original objection and the Court therefore need not consider it. *See generally* Zhen Obj. at ECF Nos. 402, 408. Arguments "not presented or developed before the district court" are waived. *See In re Facebook Biometric Info. Priv. Litig.*, No. 21-15553, 2022 WL 822923, at *2 (9th Cir. Mar. 17, 2022) ("*Facebook*") (citing *In re Mercury Interactive Corp. Sec. Litig.*, 618 F.3d 988, 992 (9th Cir. 2010)). "Although no bright line rule exists to determine whether a matter has been properly raised below, an issue will generally be deemed waived on appeal if the argument was not raised sufficiently for the trial court to rule on it." *Id.* (cleaned up). Mr. Zhen only raised the alleged adverse impact of the Settlement *on his claim for damages* under Puerto Rico law. Final Approval Order at 14-15; *see generally* Zhen Obj. He now realizes that argument is a sure loser and has pivoted to another losing argument. He raised the potential release of his injunctive relief claim under the Sherman Antitrust Act for the first time in connection with IPPs' Motion for Appeal Bond. His failure to raise this issue

earlier prevents him from raising this new argument "sufficiently for the trial court to rule on it." *Facebook*, 2022 WL 822923, at *2. In any event, the argument is simply incorrect. Additionally, Mr. Zhen's new and waived argument is irrelevant to the issue of whether the Court should impose appeal bonds as to the Objectors, including Mr. Zhen. *See In re Netflix Priv. Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, *3 (N.D. Cal. Nov. 25, 2013) (listing three relevant factors in determining whether to impose an appeal bond). Mr. Zhen therefore waived and forfeited this new argument by not raising it in the Zhen Objection.

**IV.    Zhen Has Not Refuted the Indicia of Fraud IPPs Have Presented**

As outlined in IPPs' Motion for an Appeal Bond, Zhen's pleadings and conduct in this case raise serious red flags. IPPs' Motion for Appeal Bond and Reply in support thereof detail his substantial indicia of fraud. Mot. at 13-15 (ECF No. 429); Reply at 6-7 (ECF No. 443). Mr. Zhen's conduct at the hearing raises further indicia of fraud. He did not appear on video during the hearing, claiming that his internet bandwidth in the Dominican Republic precluded him from doing so. Indeed, there may not be a "Mr. Zhen." Instead, it appears that someone in the United States or elsewhere has assumed a fictitious identity may be pursuing this objection which is, on its face, meritless.

***

Mr. Zhen is, at best, an absent member of an uncertified class and, based on the facts before the Court, not a member of the certified Settlement Class at all. Having never released any claims in this matter, he lacks standing to object or appeal, as he is not aggrieved. The Court should grant IPPs' Motion for Appeal Bond.

Dated: August 21, 2025

Respectfully Submitted,

*/s/ Adam Zapala*
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Christian S. Ruano (SBN 352012)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas SBN 24102452
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

*/s/ Lin Y. Chan*
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
**LIEFF CABRASER HEIMANN &
 BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN
SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**          7

Facsimile: (415) 956-1008

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**INDIRECT PURCHASER PLAINTIFFS' SUPPLEMENTAL SUBMISSION IN SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

**8**

1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE TELESCOPES ANTITRUST
LITIGATION                              CASE NO.  CV-20-03639 EJD

_____      SAN JOSE, CALIFORNIA
THIS DOCUMENT RELATES TO:
ALL INDIRECT PURCHASER ACTIONS      AUGUST 14, 2025

PAGES 1 - 32


TRANSCRIPT OF ZOOM PROCEEDINGS
BEFORE THE HONORABLE EDWARD J. DAVILA
UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

 FOR THE PLAINTIFFS:    COTCHETT PITRE & MCCARTHY LLP
                        BY:  CHRISTIAN RUANO
                             ELIZABETH T. CASTILLO
                        840 MALCOLM ROAD, SUITE 200
                        BURLINGAME, CALIFORNIA 94010

                        LIEFF CABRASER HEIMANN & BERNSTEIN, LLP
                        BY: LIN YEE CHAN
                        275 BATTERY STREET, 29TH FLOOR
                        SAN FRANCISCO, CALIFORNIA 94111

                        SUSMAN GODFREY LLP
                        BY:  TOM BOARDMAN
                        1900 AVENUE OF THE STARS, SUITE 1400
                        LOS ANGELES, CALIFORNIA 90067


            (APPEARANCES CONTINUED ON THE NEXT PAGE.)

 OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                             CERTIFICATE NUMBER 8074

        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
     TRANSCRIPT PRODUCED WITH COMPUTER.

A P P E A R A N C E S:  (CONT'D)


OBJECTOR ZHEN:                    PAT Z. ZHEN
                                 BOX 366047
                                 SAN JUAN, PUERTO RICO 00936

3

SAN JOSE, CALIFORNIA                          AUGUST 14, 2025

P R O C E E D I N G S

(COURT CONVENED AT 9:08 A.M.)

THE COURT:  THANK YOU.  GOOD MORNING.

THIS IS 20-3639, TELESCOPES LITIGATION.  AND THIS MATTER IS ON THIS MORNING FOR APPEAL BOND, MOTION FOR APPEAL BOND.

LET ME FIRST CAPTURE THE APPEARANCE OF THE PARTIES.

WHO APPEARS FOR THE PLAINTIFFS, PLEASE?

MS. CASTILLO:  GOOD MORNING, YOUR HONOR.

ELIZABETH CASTILLO OF COTCHETT, PITRE & MCCARTHY FOR THE INDIRECT PURCHASER PLAINTIFFS.

THE COURT:  THANK YOU.  GOOD MORNING.

MS. CHAN:  GOOD MORNING, YOUR HONOR.

LIN CHAN, LIEFF, CABRASER, HEIMANN & BERNSTEIN, FOR INDIRECT PURCHASER PLAINTIFFS.

THE COURT:  THANK YOU.  GOOD MORNING.

MR. BOARDMAN:  TECHNICAL DIFFICULTIES FROM MY CAMERA.

BUT THIS IS TOM BOARDMAN FROM SUSMAN GODFREY ALSO FOR THE INDIRECT PURCHASER PLAINTIFFS.

THE COURT:  THANK YOU.

MR. RUANO:  GOOD MORNING, YOUR HONOR.

THIS IS CHRISTIAN RUANO WITH COTCHETT PITRE & MCCARTHY ALSO FOR THE INDIRECT PURCHASER PLAINTIFFS.

UNITED STATES COURT REPORTERS

**2-ER-0119**

4

THE COURT: THANK YOU. GOOD MORNING.

ANYONE ELSE? ANY OTHER COUNSEL OR REPRESENTATIVES FOR THE PLAINTIFFS PRESENT?

OKAY. I HEAR NONE.

ANY OF THE DEFENDANTS PRESENT?

ANY PRO SE DEFENDANTS PRESENT?

MR. ZHEN: THIS IS PAT ZHEN. I'M THE OBJECTOR.

THE COURT: OKAY. THANK YOU, MR. ZHEN. YOU'RE APPEARING TELEPHONICALLY.

MR. ZHEN: THAT'S CORRECT. I'M PRESENTLY IN THE DOMINICAN REPUBLIC, AND THE BANDWIDTH IS NOT ALLOWING ME TO USE ZOOM.

THE COURT: ALL RIGHT. THANK YOU.

ARE THERE ANY OTHER OBJECTORS WHO HAVE JOINED?

I SEE OR HEAR NO RESPONSE.

LET ME ASK OUR COURTROOM DEPUTY, MS. ROBINSON, HAVE YOU HAD ANY CONTACT FROM ANY OTHER OBJECTOR WHO HAS -- ATTACHED TO THIS CASE WHO MAY HAVE FILED AN OBJECTION OR OTHERWISE REPRESENTED THEMSELVES AS A PRO SE OBJECTOR IN THE CASE?

THE CLERK: NO, YOUR HONOR.

THE COURT: ALL RIGHT. THANK YOU.

WELL, LET'S SEE. THE RECORD SHOULD REFLECT IT'S 9:10 A.M. PACIFIC STANDARD TIME. THIS IS THE DATE AND TIME SET FOR THE MOTION FOR APPEAL BOND. THE ONLY OBJECTOR THAT IS PRESENT TODAY BY TELEPHONE IS PAT ZHEN.

LET ME ASK THE MOVING PARTIES IF THEY WISH TO BE HEARD.

MS. CASTILLO: YES, YOUR HONOR.

THE COURT: YES, GO AHEAD, MS. CASTILLO.

MS. CASTILLO: GOOD MORNING AGAIN, YOUR HONOR.

MAY IT PLEASE THE COURT, MY NAME IS ELIZABETH CASTILLO, ONE OF THE SETTLEMENT CLASS COUNSEL IN THIS CASE FOR INDIRECT PURCHASER PLAINTIFFS IN THE TELESCOPE ANTITRUST MATTER.

I'LL REFER TO THE INDIRECT PURCHASER PLAINTIFFS TODAY AS IPP'S.

IPP'S RESPECTFULLY REQUEST THE COURT GRANT THEIR MOTION SEEKING THE COURT TO IMPOSE GRANT APPEAL BONDS IN THE AMOUNT OF $42,818 AS TO EACH OF THE FOUR OBJECTORS: MR. ZHEN, NATIONAL WOODLANDS PRESERVATION INC., ELMAN BARNES AND MIKE SUSSMAN.

THE AMOUNT OF THE REQUESTED APPEAL BONDS IS BASED ON (1) ESTIMATED SETTLEMENT ADMINISTRATION COSTS OF AROUND $2500 A MONTH DURING THE ESTIMATED APPEAL DURATION OF 16 AND A HALF MONTHS FOR A TOTAL OF $42,818, AND (2) ESTIMATED TAXABLE COSTS ON APPEAL.

THE COURT SHOULD GRANT IPP'S MOTION BECAUSE EACH OF THE THREE RELEVANT FACTORS IN DETERMINING WHETHER TO IMPOSE AN APPEAL BONDS: (1) OBJECTORS' FINANCIAL ABILITY TO PAY FOR THE BOND; (2) THE RISK THAT THE OBJECTORS WOULD NOT PAY THE COSTS IF THEY LOSE THE APPEAL; AND (3) THE LIKELIHOOD THAT OBJECTORS WILL LOSE THE APPEAL AND BE SUBJECT TO COSTS. EACH OF THESE FACTORS HEAVILY WEIGHS IN FAVOR OF IMPOSING APPEAL BONDS AS TO

OBJECTORS.

FURTHERMORE, ADDITIONAL FACTS LIKEWISE SUPPORT THIS COURT REQUIRING OBJECTORS TO POST APPEAL BONDS, INCLUDING:

OBJECTORS' IDENTITIES BEAR SUBSTANTIAL INDICIA OF FRAUD;

OBJECTORS' CLAIMS BEAR SUBSTANTIAL INDICIA OF FRAUD;

OBJECTORS' APPEAL WILL IMPOSE SIGNIFICANT DELAY AND COSTS ON SETTLEMENT ADMINISTRATION;

IT IS LIKELY THAT THE NINTH CIRCUIT WILL DISMISS OBJECTORS' APPEAL OR AFFIRM THIS COURT'S FINAL APPROVAL ORDER AND AMENDED JUDGMENT AND TAX COSTS AGAINST OBJECTORS; AND,

IT IS ALSO LIKELY THAT OBJECTORS WILL NOT PAY COSTS ON APPEAL GIVEN THE SUBSTANTIAL INDICIA OF FRAUD.

THE COURT SHOULD IMPOSE APPEAL BONDS AS TO OBJECTORS WHO FILED A NOTICE OF APPEAL TO PROTECT IPP'S WHO MUST FIGHT THE APPEAL FROM THE RISK OF NON-PAYMENT BY OBJECTORS WHO ARE LIKELY TO BE UNSUCCESSFUL IN THEIR APPEAL.

TURNING TO MY FIRST POINT, THIS COURT HAS THE AUTHORITY TO IMPOSE APPEAL BONDS.

FEDERAL RULE OF APPELLATE PROCEDURE (F.R.A.P.) 7 PROVIDES, "IN A CIVIL CASE, THE DISTRICT COURT MAY REQUIRE AN APPELLANT TO FILE A BOND AND PROVIDE OTHER SECURITY IN ANY FORM AND AMOUNT NECESSARY TO ENSURE PAYMENT OF COSTS ON APPEAL," CLOSED QUOTE.

THIS COURT HAS IMPOSED APPEAL BONDS ON OBJECTORS TO A SETTLEMENT IN A CLASS ACTION PURSUANT TO F.R.A.P. 7. AND IT DID SO IN THE IN RE NEXFLIX PRIVACY LITIGATION, WHICH WE CITED TO IN OUR MOTION AND OUR REPLY.

THERE, THERE WERE 7 -- I'M SORRY. THERE WERE 11 OBJECTORS WHO FILED AN APPEAL, AND THE PLAINTIFFS THERE ARGUED THAT THE APPEAL WOULD DELAY SETTLEMENT DISTRIBUTION AND INCREASE SETTLEMENT DISTRIBUTION, INCREASE SETTLEMENT ADMINISTRATION COSTS.

THIS COURT ORDERED EACH OBJECTOR TO POST AN APPEAL BOND OF $21,519 WHICH WAS BASED ON SETTLEMENT ADMINISTRATION COSTS AND TAXABLE COSTS ON APPEAL.

IN THE ALTERNATIVE, THIS COURT ALLOWED THE OBJECTORS TO FILE A NOTICE OF DISMISSAL OF HIS OR HER APPEAL.

NEXFLIX AND THIS CASE ARE VERY SIMILAR IN THAT THE PLAINTIFFS IN BOTH CASES SEEK THIS COURT TO IMPOSE APPEAL BONDS AS TO OBJECTORS WHILE THEIR APPEAL IS PENDING. THE NEED FOR AN APPEAL BOND IS EVEN STRONGER HERE, THOUGH, DUE TO THE SUBSTANTIAL INDICIA OF FRAUD WITH RESPECT TO OBJECTORS. THIS FRAUD ONLY INCREASES THE LIKELIHOOD THAT THEY WILL LOSE THE APPEAL AND BE SUBJECT TO COSTS. AND THIS FRAUD ONLY INCREASES THE RISK THAT THEY WILL PAY COSTS IF THEY LOSE.

AS I HAVE PREVIEWED, THE RELEVANT FACTORS SUPPORT THE COURT IMPOSING APPEAL BONDS AS TO OBJECTORS.

REGARDING THE FIRST FACTOR, APPELLANT'S FINANCIAL ABILITY

TO POST A BOND, OBJECTORS HERE DO NOT DENY THAT THEY ARE FINANCIALLY ABLE TO POST BONDS. THE FACTS LARGELY SHOW THAT OBJECTORS HAVE THE FINANCIAL ABILITY TO DO SO. THEY PAID A DOCKETING FEE FILING AN APPEAL. OBJECTORS ZHEN, BARNES, AND WOODLANDS DID NOT RAISE ANY FINANCIAL HARDSHIP IN CONNECTION WITH POSTING BONDS.

THE COURT: AND MAY I ASK, MS. CASTILLO, PARDON ME FOR INTERRUPTING YOU, THE APPEAL, IS THIS A JOINT APPEAL BY ALL OBJECTORS OR FOUR OR FIVE SEPARATE APPEALS?

MS. CASTILLO: IT'S A JOINT APPEAL BY MR. ZHEN AND THE OTHER THREE OBJECTORS.

THE COURT: THANK YOU.

MS. CASTILLO: CONTINUING ON. OBJECTORS ZHEN AND BARNES BOTH OFFERED TO POST BONDS THOUGH OF INADEQUATE AMOUNTS.

WHILE OBJECTOR SUSSMAN CLAIMS FINANCIAL HARDSHIP, HE DOES NOT PROVIDE ANY EVIDENCE ILLUSTRATING SUCH FINANCIAL HARDSHIP. HE ALSO APPEARS TO MISUNDERSTAND THAT THE COSTS FOR AN APPEAL BOND IS ONLY A SMALL PERCENTAGE OF THE BOND AMOUNT, TYPICALLY 2 PERCENT, AND NOT THE ACTUAL TOTAL BOND AMOUNT.

REQUIRING EACH OBJECTOR, INCLUDING OBJECTOR SUSSMAN, TO POST A BOND IS IMPORTANT GIVEN THE INDICIA OF FRAUD ASSOCIATED WITH EACH OF THEM.

REGARDING THE SECOND FACTOR, OBJECTORS ARE UNLIKELY TO PAY COSTS IF THEY LOSE THEIR APPEAL FOR NUMEROUS REASONS.

FIRST, COURTS IN THIS DISTRICT RECOGNIZE THE DIFFICULTY

AND RISK ASSOCIATED WITH COLLECTING COSTS FROM OUT-OF-STATE APPELLANTS. NEXFLIX, SEE NEXFLIX, SEE EMBRY VERSUS ACER, AMERICAN CORP., FLEURY VERSUS RICHEMONT, NORTH AMERICA INC.

HERE OBJECTORS ZHEN, SUSSMAN, AND WOODLANDS ARE OUT OF STATE. THEY ARE PURPORTEDLY IN PUERTO RICO, FLORIDA, AND WEST VIRGINIA, RESPECTIVELY. COLLECTING COSTS FROM THEM WOULD BE DIFFICULT BECAUSE IF THIS COURT DOES NOT IMPOSE APPEAL BONDS, ENFORCING AN ORDER IMPOSING APPEAL COSTS ON OBJECTORS WOULD REQUIRE IPP'S TO SEEK RELIEF IN FOUR DIFFERENT DISTRICT COURTS, THREE OF WHICH ARE OUT OF STATE.

ALTHOUGH OBJECTOR BARNES PURPORTEDLY RESIDES IN CALIFORNIA, CLASS COUNSEL HAD SERIOUS CONCERNS ABOUT HIS REAL IDENTITY.

NEXT, IT IS HIGHLY UNLIKELY THAT IPP'S WILL BE ABLE TO COLLECT FROM OBJECTORS GIVEN THEIR SUBSTANTIAL INDICIA OF FRAUD, WHICH IPP'S DETAIL IN THEIR MOTIONS, SUPPORTING DECLARATIONS, AND REPLY. NO OBJECTOR HAS REFUTED THE SUBSTANTIAL INDICIA OF FRAUD IN THEIR RESPONSES.

FOR EXAMPLE, AS TO OBJECTORS ZHEN, HE PROVIDED A P.O. BOX ON HIS PLEADINGS INSTEAD OF A RESIDENTIAL OR MAILING ADDRESS;

HIS FILINGS DO NOT DENY ANY AFFILIATION WITH KARLA COREA, WHO WAS CONNECTED TO A FRAUDULENT CLAIMANT IN ANOTHER CLASS ACTION IN WHICH I SERVE AS SETTLEMENT CLASS COUNSEL;

MR. ZHEN DOES NOT REFUTE THAT HE SUBMITTED MULTIPLE CLAIMS TO OTHER CLASS SETTLEMENTS THAT WERE REJECTED FOR INDICIA OF

FRAUD;

HE FILED A NOTICE OF APPEAL IN THIS CASE ON BEHALF OF ALL OBJECTORS BUT DOES NOT -- IT DOES NOT EXPLAIN HOW HE WAS ABLE TO COORDINATE WITH WOODLANDS, WHO DID NOT PROVIDE A PHONE NUMBER OR EMAIL ADDRESS;

WE ALSO PUT THIS IN OUR REPLY BRIEF, RECENTLY OBJECTED TO ANOTHER CONSUMER CLASS ACTION, THE QUAKER OATS CLASS ACTION, AND PLAINTIFFS IN THAT CASE RESPONDED TO THE OBJECTION AND DESCRIBED HIS LACK OF STANDING, HIS REFUSAL TO VALIDATE HIS IDENTITY AND THE RED FLAGS RAISED BY HIS CLAIM, VERY SIMILAR TO WHAT IS HAPPENING HERE.

AS TO OBJECTOR WOODLANDS, IT FAILED TO EXPLAIN ITS LACK OF PHYSICAL PRESENCE, ONLINE PRESENCE, PHONE NUMBER, EMAIL ADDRESS;

IT FAILED TO EXPLAIN ITS LACK OF NON-PROFIT OR ADVOCACY PRESENT;

IT FAILED TO EXPLAIN ITS LACK OF EMPLOYEES;

IT FAILED TO EXPLAIN WHY AN ENTITY WITH NO PHYSICAL OR ONLINE PRESENCE OR EMPLOYEES WOULD HAVE PURCHASED TELESCOPES; AND,

IT DOES NOT REFUTE THAT ITS PURPORTED CEO, KARLA LUNA, SUBMITTED MULTIPLE CLAIMS TO OTHER CLASS SETTLEMENTS THAT WERE REJECTED FOR INDICIA OF FRAUD.

AS TO OBJECTOR BARNES, HE LISTED INCONSISTENT MAILING ADDRESSES ON HIS PLEADINGS;

HE FAILED TO EXPLAIN HIS INCONSISTENT SIGNATURES ON HIS PLEADINGS;

HE FAILED TO EXPLAIN THE DISCREPANCY BETWEEN HIS PURPORTED SACRAMENTO MAILING ADDRESSES AND THE SANTA CLARITA POST OFFICE FROM WHERE HIS PLEADINGS WERE MAILED; AND,

HE FAILED TO EXPLAIN WHY NO PERSON NAMED ELMAN BARNES APPEARS TO EXIST AT ALL BASED ON IPP'S INVESTIGATION.

FINALLY, AS TO OBJECTOR SUSSMAN, HE LIKELY PROVIDED A FAKE RESIDENTIAL ADDRESS;

ALTHOUGH HE CONTENDS THAT HE MISTYPED HIS APARTMENT NUMBER, HE FAILS TO EXPLAIN WHY HIS APARTMENT BUILDING'S PROPERTY MANAGER AND OTHER RESIDENTS, INCLUDING HIS NEIGHBOR, PURPORTED NEIGHBOR, DID NOT KNOW ANYONE BY THE NAME OF MIKE OR MICHAEL SUSSMAN LIVING IN THE APARTMENT BUILDING WHEN A PROCESS SERVER SPOKE TO HIM IN CONNECTION WITH ATTEMPTING SERVICE OF A DISCOVERY SUBPOENA ON HIM.

ALL OF THE INDICIA OF FRAUD SUGGEST OBJECTORS ARE NOT WHO THEY CLAIM TO BE. IN FACT, IPP'S HAVE NEVER BEEN ABLE TO PHYSICALLY SERVE SUBPOENAS ON OBJECTORS ZHEN, SUSSMAN, OR BARNES AT THE ADDRESSES THAT THEY PROVIDED ON THEIR PLEADINGS OR AT ANY OTHER ADDRESSES ASSOCIATED WITH THEM IN OUR INVESTIGATION.

AND ADDITIONALLY, WHILE WOODLANDS SAYS ON PAPER, IT APPEARS TO BE A SHELL OPERATION AND MAIL SENT TO ITS PURPORTED HINTON, WEST VIRGINIA ADDRESS HAS BEEN REPEATEDLY RETURNED.

FINALLY, OTHER FACTS SUGGEST COLLECTING COSTS FROM OBJECTORS WILL BE IMPOSSIBLE.

ONLY MR. ZHEN APPEARS TODAY.

NO OTHER OBJECTOR HAS APPEARED TODAY OR AT THE FAIRNESS HEARING;

NO OBJECTOR PERSONALLY HAS PROVIDED PROOF OF IDENTITY IN THE FORM OF GOVERNMENT-ISSUED I.D.;

NO OBJECTOR HAS PROVIDED PROOF OF PURCHASE TO ESTABLISH STANDING;

NO OBJECTOR HAS MET AND CONFERRED WITH IPP'S BY VIDEOCONFERENCE OR PHONE DESPITE OUR REPEATED REQUESTS; AND,

NO OBJECTOR HAS REPRESENTED THAT IT WILL PAY THE ESTIMATED $42,818 COSTS ON APPEAL.

TAKEN TOGETHER, ALL OF THESE FACTS INDICATE OBJECTORS WILL NOT PAY COSTS IF THEY LOSE THEIR APPEAL AND WARRANT THE COURT'S IMPOSITION OF AN APPEAL BONDS.

FINALLY, REGARDING THE THIRD FACTOR, THE OBJECTORS WILL LIKELY LOSE THE APPEAL AND BE SUBJECT TO COSTS FOR VARIOUS REASONS.

THE COURT OVERRULED EACH OBJECTOR'S OBJECTIONS, FINDING THEM MERITLESS, IN ITS APPROVAL ORDER.

NO OBJECTOR HAS ESTABLISHED STANDING; EACH HAVE FAILED TO PROVIDE PROOF OF PURCHASE, LET ALONE PROOF OF IDENTITY.

EVEN IF MR. ZHEN COULD PROVIDE PROOF OF PURCHASE IN PUERTO RICO, HE'S NOT A SETTLEMENT CLASS MEMBER BECAUSE THE

SETTLEMENT CLASS DOES NOT INCLUDE PUERTO RICO PURCHASERS.

OBJECTORS DO NOT EVEN ATTEMPT TO REBUT IPP'S ARGUMENT THAT OBJECTORS WILL LIKELY LOSE THE APPEAL.

OBJECTORS ZHEN AND BARNES DO NOT ADDRESS THE MERITS OF THEIR OBJECTIONS IN THEIR RESPONSES;

OBJECTOR WOODLANDS MERELY REITERATES ITS OBJECTIONS THAT ENTITIES COULD NOT SUBMIT CLAIMS TO THE SETTLEMENT, WHICH IS FALSE.  OVER 100 ENTITLES HAVE SUBMITTED CLAIMS TO THE SETTLEMENT.

OBJECTOR SUSSMAN FOCUSES ON THE COURT'S LACK OF JURISDICTION TO ENTER THE AMENDED JUDGMENT, WHICH IS WRONG. F.R.C.P. 59(E) EXPRESSLY CONTEMPLATES AMENDED JUDGMENTS. OBJECTORS FILED AN AMENDED NOTICE OF APPEAL IN CONNECTION WITH THE AMENDED JUDGMENT.  OBJECTORS HAVE NOT FILED THEIR OPENING BRIEF WITH THE NINTH CIRCUIT AND DID NOT SUFFER ANY PREJUDICE BY THIS COURT'S ENTRY OF THE AMENDED JUDGMENT.

AND OBJECTORS WILL LIKELY LOSE THEIR APPEAL ON THE MERITS.

OBJECTOR WOODLANDS' OBJECTION IS BASED ON AN ERRONEOUS ARGUMENT THAT ENTITIES CANNOT SUBMIT CLAIMS, WHICH IS INACCURATE AND MOOT.

OBJECTOR BARNES'S OBJECTION TO THE CALIFORNIA CIVIL CODE SECTION 1542 WAIVER IN THE SETTLEMENT AGREEMENT WAS OVERRULED BY THIS COURT GIVEN ITS UNCONTROVERSIAL NATURE IN THE CLASS ACTION CONTEXT.

OBJECTOR SUSSMAN'S OBJECTION TO THE SETTLEMENT NOTICE OF

THE SETTLEMENT NOTICE DID NOT CONTAIN ADEQUATE INFORMATION ON SUBMITTING AN OBJECTION WAS CLEARLY INACCURATE, PARTICULARLY BECAUSE HE WAS ABLE TO SUBMIT AN OBJECTION.

FINALLY, OBJECTORS BARNES AND SUSSMAN'S OBJECTIONS TO THE SETTLEMENT ADMINISTRATION PROCESS WAS OVERRULED BY THIS COURT BECAUSE THE SAME PROCESS HAS BEEN IMPLEMENTED IN OTHER CLASS ACTIONS. PLUS, THE SETTLEMENT ADMINISTRATOR HERE HAD GOOD REASON TO DO A TWO-FACTOR AUTHENTICATION PROCESS BECAUSE IT WAS EFFECTIVE AND IT WAS A NECESSARY TOOL TO PREVENT FRAUD.

EACH OF THE RELEVANT FACTORS HERE SUPPORT THIS COURT IMPOSING AN APPEAL BONDS ON OBJECTORS.

THE COURT HAS AUTHORITY TO SET AN APPEAL BOND AT $42,818.

UNDER F.R.A.P. 7, THE COURT MAY SET THE APPEAL BOND AT ANY AMOUNT NECESSARY TO ENSURE PAYMENT OF COSTS ON APPEAL. THESE INCLUDE TAXABLE COSTS UNDER F.R.A.P. 39(E), WHICH IPP'S ESTIMATE AT $175.

THESE COSTS CAN ALSO INCLUDE ADMINISTRATION COSTS INCURRED DURING THE PENDENCY OF THE APPEAL AS THIS COURT DETERMINED IN NEXFLIX.

OTHER DISTRICT COURTS AGREED, SUCH AS THE COURTS IN MILETAK, EMBRY, AND DENNINGS, WHICH ARE CITED TO IN OUR MOTION AND REPLY. OBJECTORS ARE THEREFORE WRONG THAT AN APPEAL BOND MUST BE LIMITED TO TAXABLE COSTS FOR THE PURPORTED MAXIMUM VALUE OF THEIR CLAIM. HERE, IPP'S REQUEST EACH OBJECTOR POST AN APPEAL BOND OF 42,828, WHICH I MENTIONED IS BASED ON

15

REASONABLE SETTLEMENT ADMINISTRATION COSTS AND ESTIMATED TAXABLE COSTS. CONSISTENT WITH NEXFLIX, THESE COSTS DO NOT INCLUDE ATTORNEYS' FEES.

APPEAL BONDS ARE NOT EXCESSIVE MERELY BECAUSE THE APPELLANT MUST POST THEM, FIND THEM SUBJECTIVELY TOO HIGH. COURTS HAVE IMPOSED APPEAL BONDS AS TO OBJECTORS IN AMOUNTS HIGHER THAN WHAT IPP'S ARE SEEKING HERE. IN THE MILETAK CASE, THE COURT IMPOSED THE APPEAL BOND OF 60,000; IN EMBRY IT WAS 70,000; AND BROADCOM IT WAS HALF A MILLION DOLLARS.

FOR ALL OF THESE REASONS, THE COURT SHOULD ORDER EACH OBJECTOR TO POST AN APPEAL BOND OF 42,818 OR ANY OTHER SUCH AMOUNT THAT THE COURT FINDS IS APPROPRIATE OR FILE A NOTICE OF DISMISSAL OF ITS APPEAL.

ALL OF THE RELEVANT FACTORS PLUS OBJECTORS' SUBSTANTIAL INDICIA OF FRAUD SUGGESTS IT'S UNLIKELY THAT THEY WILL PAY COSTS IN THE LIKELY EVENT THAT THEY LOSE THEIR APPEAL.

THANK YOU.

THE COURT: THANK YOU. I DO HAVE THE ESTIMATE OF THE COSTS, I HAD SOME QUESTIONS, AND BEFORE I ASK MR. ZHEN IF HE WISHES TO BE HEARD.

I WAS CURIOUS ABOUT A COUPLE OF THE FIGURES OF THE COSTS. THE EMAIL IS $455 A MONTH ESTIMATED AND OVERALL CASE MANAGEMENT OF $1500 A MONTH.

I'M JUST NOT CERTAIN WHAT THE ADMINISTRATOR DOES WHILE THE CASE IS ON APPEAL. I DON'T KNOW IF THERE'S A NEED TO PROCESS

CLAIMS JUST BECAUSE THE CASE IS ON APPEAL OR OTHER WORK.

YES, PLEASE.

MS. CASTILLO: ALLOW ME TO ANSWER. BASED ON OUR DISCUSSIONS WITH VERITA, THE SETTLEMENT ADMINISTRATOR IN THE CASE, THE SETTLEMENT WEBSITE WILL REMAIN ONLINE. THE PHONE LINES WILL REMAIN OPEN. THE EMAIL ADDRESS FOR QUESTIONS WILL REMAIN ACTIVE.

AND DURING THIS APPEAL PROCESS, POTENTIAL CLASS MEMBERS, CLASS MEMBERS ARE COMMUNICATING WITH VERITA, ASKING VERITA FOR CASE STATUS UPDATES, DISTRIBUTION UPDATES, AND VERITA IS RESPONSIBLE FOR RESPONDING TO SUCH COMMUNICATIONS AND QUESTIONS AND KEEPING THE WEBSITE ACTIVE, THE PHONE LINE ACTIVE, RESPONDING TO EMAILS AS I'VE MENTIONED.

SO ALL OF THESE COSTS, ALL OF THESE ITEMS HAVE COSTS AND THE MONTHLY COSTS, AS I MENTIONED, IS $2,595. IT'S PRETTY REASONABLE, AND IT'S CONSISTENT WITH HOW MUCH WE PAY FOR A SETTLEMENT ADMINISTRATION IN OTHER ANTITRUST CLASS ACTIONS. AND SO IT'S ACTUALLY ON THE LOW SIDE, BUT IT'S JUST THE COSTS OF MAINTAINING WHAT WE HAVE OUT THERE TO KEEP IN TOUCH WITH CLASS MEMBERS.

THE COURT: SURE. AND MY SENSE IS KEEPING THE ACTIVE, THE EXPENSE, THE UP-FRONT COSTS OF CREATING THE WEBSITE OR A ONE-TIME EVENT AND THEN THE MAINTENANCE OF THAT WEBSITE, THAT IS, ADDING MORE CURRENT INFORMATION IS PROBABLY AN ADDITIONAL TASK THAT CERTAINLY WOULD BE BILLED.

17

BUT TO YOUR POINT, CLASS MEMBERS WHO SEEK INFORMATION, MY SENSE IS THAT THEY'RE -- THE FIRST THING THEY'LL DO IS GO TO THE WEBSITE AND GET THAT INFORMATION THAT'S POSTED. IT SOUNDS LIKE IT WOULD BE MORE EFFICIENT FOR THE ADMINISTRATOR TO POST INFORMATION FULSOME RATHER THAN HAVE TO ANSWER PHONE CALLS AND PROVIDE THE SAME INFORMATION THAT THEY COULD POST. SO THERE'S SOME EFFICIENCIES CAPTURED THERE.

I WAS JUST QUESTIONING THAT TOTAL AMOUNT FOR THE BOND. BUT LET ME HEAR FROM MR. ZHEN IF HE WISHES TO BE HEARD.

SIR, IS THERE ANYTHING YOU WOULD LIKE TO SAY?

MR. ZHEN: THERE IS. FIRST, I DON'T WANT TO REGURGITATE ALL OF MY BRIEFS, SO I ASSUME THE COURT IS FAMILIAR WITH THEM OR HAS READ THEM, OR DO YOU WANT ME TO GO OVER THEM?

THE COURT: I'VE READ THEM.

MR. ZHEN: I WILL STAND ON THAT. THERE ARE A COUPLE OF QUICK COMMENTS THAT I WANT TO MAKE. THE FIRST ONE IS THAT THEY'RE CITING THIS CASE FROM 2011, NETFLIX. YOUR HONOR WROTE AN OPINION TWO YEARS AGO, 2023, IN THE APPLE INC. DEVICE PERFORMANCE LITIGATION, WHICH IS CASE 18 MD 2827, AND IN THAT CASE YOU RECOGNIZED THAT THEY CANNOT CHARGE FOR THESE ADMINISTRATIVE EXPENSES, THE WEBSITE, ET CETERA. THEY CAN ONLY BILL TAXABLE COSTS.

OKAY. SO IN THAT CASE YOU GOT THE LAW RIGHT. UNFORTUNATELY, YOU GAVE AN $8500 APPEAL BOND FOR COPIES. UNFORTUNATELY, YOUR MATH WAS A LITTLE WRONG BECAUSE THE

NINTH CIRCUIT LIMITS TAXABLE COSTS AT $0.10 A PAGE.  YOU GAVE THEM BOND FOR MAILING COSTS.  THE NINTH CIRCUIT DOES NOT ALLOW MAILING TO BE TAXED, AND I CITE THAT IN MY BRIEF.

SO THE ONLY THING THAT THEY CAN RECEIVE TAXABLE COSTS ON BOND IS $0.10 PER PAGE, WHICH THEY ARE PERMITTED TO BE $150 IS PROBABLY THE ONLY HONEST THING THAT THEY SUBMITTED, AND $60 IN FEDERAL EXPRESS FEES, WHICH ARE NOT TAXABLE.  THE REST IS THIS WEBSITE AND THE ADMINISTRATION.  AND IT'S JUST NOT TAXABLE UNDER YOUR OWN OPINION IN THE APPLE INC. DEVICE PERFORMANCE LITIGATION CASE.

SO I REALLY DON'T WANT TO NITPICK ON THE AMOUNT. OBVIOUSLY, IF THERE'S SOME $40,000 OR $10,000 BOND, IT'S GOING TO BE APPEALED BECAUSE THAT'S WHAT HAS TO HAPPEN, THE NINTH CIRCUIT NEEDS TO STEP IN BECAUSE ALL OF THE LOWER COURTS, NOT JUST YOUR HONOR, BUT MANY OF THE LOWER COURTS HAVE AN OUTRAGEOUS APPEAL BOND, AND THE APPEALS -- THE TAXABLE COSTS ARE NEVER SET IN THESE AMOUNTS.  THEY'RE ALWAYS $200, $300, $500.

SO THAT'S -- YOU DON'T REALLY NEED TO GO TO THE OTHER FACTORS.  I PROFFERED A $250,000 APPEAL BOND.  I WILL INCREASE THAT PROFFER TO $600, AND THE REASON I WILL INCREASE THAT PROFFER TO $600 IS THEY CLAIM THEY MAY HAVE TO FILE FOUR BRIEFS AT $150 EACH.  I EXPECT THEY WILL, BUT LET'S ASSUME THEY'RE BEING MODEST AND THEY MAY HAVE TO SEPARATE THEIR BRIEFS EVEN THOUGH A NORMAL PERSON WOULD COMBINE $600.  AND THAT IS ALSO

19

COSTS I WOULD HAVE TO PAY TO APPEAL YOUR APPEAL BOND DECISION IF SOME OUTRAGEOUS APPEAL BOND IS GIVEN.

THE SECOND THING THAT CLASS COUNSEL MISUNDERSTANDS IS A RECENT CASE CAME OUT OF THE ELEVENTH CIRCUIT WHICH IS BRAZEN V. PIPP/POE AND THE CITATION IS 106 FED. 4TH 1302. THAT CASE IS GOING TO BE ASKING THE NINTH CIRCUIT TO ADOPT, REQUIRES AN APPELLATE COURT TO PERFORM THE SAME FIDUCIARY DUTY, REVIEW OF THE SETTLEMENT IN ITS ENTIRETY WITHOUT REGARD TO WHETHER AN OBJECTION WAS WAIVED, NOT RAISED. SO THE APPEALS COURT IN THAT, IN THE ELEVENTH CIRCUIT CASE HAS TO ACTUALLY NOT DE NOVO BUT HAS TO MAKE SURE THAT COUNSEL FEES ARE APPROPRIATE AND ALL OF THESE OTHER ISSUES THAT WEREN'T NECESSARILY RAISED WELL BY THE PRO SE OBJECTORS.

SO WHILE THIS NON-NINTH CIRCUIT CASE IS CASE CITING A LOT OF NINTH CIRCUIT CASES. SO I WILL BE ASKING THEM TO DO THAT FOR REVIEW SO IT'S NOT AS NARROW AS CLASS COUNSEL MAKES IT TO BE.

AS FAR AS THIS FRAUD NONSENSE, I CAN'T EVEN RESPOND TO THE DECLARATION. I'VE READ IT. IT'S SO VAGUE. IT CITES NO CASES. IT DOESN'T SAY ANYTHING.

NOW -- SO YOU UNDERSTAND THE HISTORY HERE, THIS ANGEION CORPORATION MADE THESE ACCUSATIONS, IS THE CLAIMS ADMINISTRATOR IN THE QUAKER OATS CASE, WHERE I HAD FILED OBJECTIONS SPECIFICALLY ATTACKING THEIR RECEIVERS. THEY'RE NOT THE CLAIMS ADMINISTRATOR HERE. THEY CITE NO CASES WHERE THERE'S BEEN A

DENIAL OF FRAUD. I'M AWARE OF NO CASES THAT HAVE BEEN CITED FOR FRAUD -- THEY CITE NO CASES. THERE'S NO DATES, THERE'S NO TIMES, THERE'S NO INFORMATION -- AND THEN EXPLAIN THAT THEIR BASIS OF FRAUD IS THAT CLAIMS WERE FILED IN DIFFERENT LITIGATIONS IN MY NAME WITH DIFFERENT EMAIL ADDRESSES.

OKAY. THAT'S NOT FRAUD. THAT'S ME HAVING MY OWN DOMAIN AT ZHEN.COM. AND IF IT'S A TELESCOPES CASE, YOU'LL SEE MY EMAIL TELESCOPES@ZHEN.COM. AND IF IT'S A QUAKER OATS CASE, YOU WILL SEE QUAKEROATS@ZHEN.COM.

SO THEY'VE NEVER NOTIFIED ME OF ANY FRAUD. IF SOMEONE ACCUSED ME OF FRAUD, I WOULD BE RESPONDING -- AS YOU CAN SEE, I'M ABLE TO RESPOND. I JUST CAN'T RESPOND TO SOMETHING THAT PROVIDES ME NO INFORMATION.

AND THEY MISREPRESENT THIS AFFILIATION WITH THIS ATTORNEY, KARLA COREA. THEY SAY THAT SHE WROTE A LETTER TO THEM IN ANOTHER CASE AND THEN THAT CLAIMANT, SHE WAS THEIR ATTORNEY, I GUESS. AND THAT CLAIMANT TOOK AN APPEAL AND LOST THEIR APPEAL. AND IT WAS JUDGE BREYER, I BELIEVE. HE ACTUALLY WROTE THAT HE DID NOT PERFORM ANY REVIEW OF THE CLAIM. HE JUST COPIED WHAT CLASS COUNSEL AND THE CLAIMS ADMINISTRATOR SAID TO DENY THIS CLAIMANT'S CLAIM, BUT HE PERFORMED NO REVIEW OF IT OTHER THAN TO SAY, OKAY, THAT'S WHAT THEY DID, AND THAT'S THE REASONING FOR IT, AND, THEREFORE, I'M NOT GOING TO TOUCH IT.

AND THE APPEALS COURT IN AFFIRMING THAT DID NOT FIND ANY FRAUD AND DID NOT USE THAT WORD. IT'S A HARSH WORD TO USE.

RULE 9 REQUIRES SPECIFICITY AND RULE 404(A) AND (B) SUGGESTS THAT YOU'RE NOT SUPPOSED TO ATTACK SOMEONE'S CHARACTER IN THESE CASES.

AS FAR AS MY I.D., I'VE OFFERED THEM TO PARTICIPATE IN A NINTH CIRCUIT MEDIATION PROCEDURE. THEY DIDN'T TAKE ME UP ON THAT. THAT WOULD HAVE ALLOWED US TO TALK ABOUT THESE THINGS, TALK ABOUT THE OBJECTIONS.

THEY CLAIM THEY WANT A ZOOM CALL, THEY WANT AN I.D., THEY WANT TO SERVE SUBPOENAS. I'M NOT GOING TO HELP THEM WITH THAT. THE SUBPOENAS ARE UNLAWFUL. YOUR HONOR DID NOT GRANT THEM LEAVE. THEY DID NOT FILE A MOTION UNDER RULE 27(B) I THINK IT IS. THEY DID NOT ASK THE APPEALS COURT FOR PERMISSION TO -- THESE ARE APPELLATE SUBPOENAS ASKING ABOUT THE MERITS OF THE APPEAL. THEY DID NOT ASK THEM FOR PERMISSION. NO JURISDICTION TO BE CHASING ME AROUND THE COUNTRY TRYING TO FIND ME TO SERVE THE SUBPOENAS.

I'M NOT GOING TO HELP THEM WITH THAT. I'M NOT GOING TO GIVE THEM MY IDENTIFICATION WHEREAS YOUR HONOR SAW THEY HAVE NO PROBLEMS WITH PUBLISHING INFORMATION. IT'S A PUBLIC DOMAIN ABOUT PEOPLE WITHOUT REGARDS TO THE ROLES OR THE ECF PROCEDURES AND EVEN JUST COMMON SENSE. THERE'S NO REASON TO ATTACK CONSUMER REPORTS, AND IT'S A COPYRIGHTED REPORT, BUT THEY HAVE NO RIGHT TO DO IT, BUT IT'S A WHOLE ANOTHER STORY.

SO I WOULD ASK YOU TO TAKE ME UP ON MY OFFER. THEY SAY IT'S $150. I'M MULTIPLYING IT BY 4, WHICH IS UNCONSTITUTIONAL

AS YOU SAW IN MY BRIEF, BUT I'M MULTIPLYING IT BY 4, AND THERE'S NO BASIS UNDER YOUR OWN OPINION IN THE APPLE CASE TO ISSUE THESE EXCESSIVE APPEAL BONDS.  AND YOU SAID IT AND YOU SAID IT BEST IN THAT CASE, AND I REFER YOU TO YOUR OWN CASE, AND THAT'S WHAT I WOULD SAY.

THE COURT:  THANK YOU.  MS. CASTILLO.

MS. CASTILLO:  THANK YOU, YOUR HONOR.

FIRST, I WOULD LIKE TO SAY THAT THE NINTH CIRCUIT HAS NOT DECIDED THE EXTENT TO WHICH AN APPEAL BOND CAN INCLUDE ADMINISTRATIVE COSTS.  AND IN OUR MOTION AND IN OUR REPLY, WE'VE POINTED TO A DOZEN OR SO CASES, INCLUDING NEXFLIX, WHERE THE COURT HAS IMPOSED APPEAL BONDS THAT ARE BASED ON SETTLEMENT ADMINISTRATION COSTS.  NEXFLIX; MILETAK WHERE THERE WAS A $60,000 APPEAL BOND; EMBRY WHERE THERE WAS A $70,000 APPEAL BOND; DENNINGS, THERE WAS A $39,000 APPEAL BOND.

I DON'T THINK WE CITED THIS TO THIS CASE BUT REDWIND V. CINO CLEAN ENERGY, INC., NUMBER CV 11-6936 PA, 2003, WL 12128684 C.D. CAL, DECEMBER 2013, THERE WAS ALSO AN APPEAL BOND OF 17,000; BROADCOM, AN APPEAL BOND OF ACTUALLY $1.2 MILLION.  HALF OF THAT WAS FOR SETTLEMENT ADMINISTRATION COSTS; AND, FINALLY, IN RE COMPACT DISC MINIMUM ADVERTISED PRICE ANTITRUST LITIGATION, THERE WAS AN APPEAL BOND, $35,000. ALL OF THESE CASES INVOLVED AN APPEAL BOND IMPOSED AS TO OBJECTORS AND ALL OF THEM WERE BASED ON SETTLEMENT ADMINISTRATION COSTS.

I WILL SAY THE COURT HERE HAS WIDE DISCRETION TO IMPOSE APPEAL BONDS AND ALSO THE AMOUNT OF THE APPEAL BONDS UNDER F.R.A.P. 7.

I WANT TO BRIEFLY ADDRESS TWO THINGS THAT MR. ZHEN MENTIONED. HE ACCUSES US OF SEEKING EXCESSIVE APPEAL BONDS, AND THIS IS SIMPLY FALSE. WE'RE NOT SEEKING EXCESSIVE APPEAL BONDS. THEY'RE REASONABLY BASED, AS I MENTIONED, AND WE'RE NOT SEEKING THEM TO PUNISH THE OBJECTORS.

WE'RE MERELY TRYING TO ENSURE THAT WE RECEIVE PAYMENT OF SUBSTANTIAL COSTS ON APPEAL AND IN THE LIKELY EVENT THAT OBJECTORS ARE UNSUCCESSFUL.

AND HERE MR. ZHEN DOES NOT HAVE STANDING BECAUSE PUERTO RICO PURCHASERS ARE NOT PART OF THE SETTLEMENT CLASS, AND HIS APPEAL WILL CERTAINLY BE DISMISSED BY THE NINTH CIRCUIT.

ALSO, MR. ZHEN SEEMS TO MISUNDERSTAND, AGAIN, THAT THE COST FOR AN APPEAL BOND IS A FRACTION OF THE TOTAL AMOUNT OF THE APPEAL BOND, TYPICALLY 2 PERCENT OF THE APPEAL BOND AMOUNT.

I MENTIONED A BUNCH OF CASES WHERE OTHER DISTRICT COURTS HAVE IMPOSED APPEAL BONDS BASED ON SETTLEMENT ADMINISTRATION COSTS IN EXCESS OF WHAT WE ARE SEEKING HERE.

THE BOND THAT MR. ZHEN HAS OFFERED TO POST, AND MR. BARNES HAS ALSO POSTED, A $50 BOND. THESE AMOUNTS ARE SIMPLY INADEQUATE TO ENSURE OUR COSTS ON APPEAL. THEY FAIL TO ACCOUNT FOR THE DIFFICULTY AND RISKS ASSOCIATED WITH COLLECTING FROM

24

OBJECTORS WHO HAVE AVOIDED PROVIDING PROOF OF IDENTITY OR PURCHASE OR EVEN MEETING AND CONFERRING WITH PLAINTIFFS.

THE OTHER ISSUE THAT MR. ZHEN MENTIONED IS THE PURPORTED IMPROPER DISCOVERY SUBPOENAS THAT WE SERVED ON HIM AND OTHER OBJECTORS. THESE SUBPOENAS ARE PROPER AND NEEDED. WE SERVED THESE SUBPOENAS IN LATE JULY TO ESTABLISH OBJECTORS' PURCHASES, THEIR IDENTITIES, WHICH APPEAR TO BE FRAUDULENT, THE BASIS FOR THEIR OBJECTION, THEIR MOTIVE FOR THE OBJECTION, THEIR RELATIONSHIP WITH EACH OTHER, AND THEIR OBJECTIONS TO OTHER CLASS SETTLEMENTS.

THESE SUBPOENAS ARE RELEVANT TO (1) THE COURT'S DETERMINATION OF WHETHER TO IMPOSE APPEAL BONDS ON OBJECTORS, AND (2) THE COURT'S CONTINUING DUTY TO OVERSEE ADMINISTRATION OF THE SETTLEMENT AND ITS JUDGMENT PURSUANT TO THE FINAL APPROVAL ORDER AND THE AMENDED JUDGMENT.

IF THE SUBPOENAS ARE BURDENSOME, OBJECTORS HAVE NOT RAISED THE ISSUE AT ALL IN THEIR RESPONSES. ALL OF THEM HAVE ADMITTED RECEIVING THE SUBPOENAS AND ATTEMPTED TO MEET AND CONFER WITH EACH OF THEM, BUT OBJECTORS, INCLUDING MR. ZHEN HERE, HAS REFUSED TO ENGAGE.

AND CONTRARY TO MR. ZHEN'S ARGUMENT, I THINK IPP'S MAY SEEK INFORMATION FROM OBJECTORS WHO OBTAIN NARROWLY TAILORED INFORMATION REGARDING EACH OBJECTORS' STANDING AS A SETTLEMENT CLASS MEMBER TO ASSERT OBJECTIONS, THE UNDERLYING BASES FOR THEIR OBJECTIONS, AND THEIR RELATIONSHIP WITH COUNSEL THAT MAY

BE PERTINENT TO INFORMING THE COURT ABOUT THE NATURE AND MERITS OF THE APPEAL. THIS IS SUPPORTED BY THE NEXFLIX CASE AND ALSO THE CATHODE RAY TUBE ANTITRUST LITIGATION WHERE DISCOVERY WAS ALSO SERVED ON OBJECTORS OF THE SETTLEMENT WHILE THEIR APPEAL WAS PENDING.

CONTRARY TO MR. ZHEN'S ARGUMENT, IPP'S DO NOT SEEK LEAVE TO SERVE SUBPOENAS ON OBJECTORS, THE OBJECTOR WHO VOLUNTARILY APPEARS IN LITIGATION IS PROPERLY SUBJECT TO DISCOVERY, SEE NEXFLIX, CRT.

PLAINTIFFS FURTHER DISCUSS THE APPROPRIATENESS, RELEVANCE, AND BURDEN, EXPENSE OF COMPLYING WITH THESE SUBPOENAS IN OUR RESPONSE TO MR. ZHEN'S EMERGENCY MOTION FOR A PROTECTIVE ORDER THAT HE FILED WITH THIS COURT.

THE COURT: THANK YOU.

MR. ZHEN, THESE OBJECTIONS WERE LOOKED AT, MANY OF THE OBJECTIONS, IF NOT ALL OF THEM WERE LOOKED AT BY THE COURT, AND THE COURT MADE RULINGS ON THE OBJECTIONS IN ITS ORDER.

AS TO YOU, SIR, THE MOST SIGNIFICANT OBJECTION IS -- IT APPEARS THAT YOU LACK STANDING IN THIS CASE. YOU'RE NOT A CLASS MEMBER IN THIS CASE. YOUR OBJECTION WAS REGARDING PUERTO RICO PURCHASES, BUT PUERTO RICO PURCHASES, AS I UNDERSTAND IT, ARE NOT PART OF THIS LAWSUIT.

IS THAT RIGHT, MS. CASTILLO?

MS. CASTILLO: THAT'S CORRECT, WE DID NOT ASSERT ANY PUERTO RICO CLAIMS IN OUR COMPLAINT, AND THE SETTLEMENT

AGREEMENT DOES NOT INCLUDE PUERTO RICO PURCHASERS AS CLASS MEMBERS.

THE COURT: SO IN YOUR VIEW, I'M NOT ASKING YOU FOR A LEGAL OPINION, BUT MR. ZHEN STILL HAS A LEGAL RIGHT TO PURSUE ANY LEGAL ACTION THAT HE SEES FIT IN REGARDS TO PURCHASES THAT HE MAY HAVE MADE IN PUERTO RICO?

MS. CASTILLO: THAT IS CORRECT.

THE COURT: ALL RIGHT. SO, MR. ZHEN, THAT'S SOMETHING -- THAT'S A THRESHOLD ISSUE THAT I SEE HERE, SIR, IS THAT YOU'RE NOT A MEMBER OF THE CLASS HERE. AND I THINK I'VE TALKED ABOUT THAT PREVIOUSLY. AND, THEREFORE, YOU PERHAPS LACK STANDING TO PARTICIPATE IN THIS LAWSUIT AND PARTICULARLY AS AN OBJECTOR.

MR. ZHEN: YES, JUDGE. I READ YOUR OPINION, AND OBVIOUSLY I HAVE APPEALED YOUR OPINION, AND THAT'S WHY THE APPEALS COURT IS GOING TO REVIEW THAT. AND THEIR REMEDY IS TO FILE A MOTION TO DISMISS WITH THE NINTH CIRCUIT COURT OF APPEAL, WHICH THEY HAVE NOT DONE.

IT'S VERY SIMPLE FOR THEM TO RAISE THAT ARGUMENT. THAT ARGUMENT IS QUITE EASY TO RAISE. THEY HAVE NOT RAISED IT. THEY DON'T NEED TO DO ALL OF THIS TO RAISE THAT. THEY COULD HAVE FILED IT -- HOW LONG HAS THE APPEAL BEEN PENDING? FIVE MONTHS. THEY COULD HAVE FILED THAT ON DAY ONE AND POSSIBLY THE NINTH CIRCUIT WOULD HAVE AGREED WITH THEM.

AS FAR AS ALL OF THE OTHER THINGS, REQUESTING DISCOVERY,

CHASING DOWN THE IDENTITIES OF THE OBJECTORS, THAT'S SOMETHING UNDER THE PURVIEW OF THE NINTH CIRCUIT AT THIS TIME BECAUSE THEY'VE NOT RECEIVED LEAVE OF COURT FROM ANYBODY. THEY COULD HAVE ASKED THEM TO. THEY DID NOT. THEY'RE TRYING TO USURP THE NINTH CIRCUIT'S AUTHORITY ONCE THE NOTICE OF APPEAL IS FILED.

AS FAR AS MY STANDING, IF YOU WANT ME TO ADDRESS IT, I WILL REAL QUICK. YOU FILE AN AMENDED JUDGMENT. THAT AMENDED JUDGMENT CHANGES THE LANGUAGE OF THE DISMISSAL IN THIS CASE. IT DISMISSES ALL CLAIMS, QUOTE, "ON THE MERITS."

UNFORTUNATELY, ONE OF THE COUNTS IN THE FIFTH AMENDED LAWSUIT, I BELIEVE IT IS, IS A NATIONWIDE CLAIM FOR INJUNCTIVE RELIEF THAT AFFECTS ANYBODY IN THE UNITED STATES. PUERTO RICO IS A TERRITORY OF THE UNITED STATES. IT FALLS UNDER THE FIRST CIRCUIT COURT OF APPEALS. THE UNITED STATES DISTRICT COURT OF THE DISTRICT OF PUERTO RICO IS A REPEALER TERRITORY. WE HAVE SOME ARGUMENT ABOUT THAT. THERE'S ACTUALLY A SPLIT IN THE DECISION OF THE NORTHERN DISTRICT OF CALIFORNIA WHERE ONE OF YOUR COURTS SAY IT IS A REPEALER TERRITORY AND THE OTHER ONE SAYS IT IS NOT. IT'S A QUESTION FOR THE NINTH CIRCUIT OBVIOUSLY.

HOWEVER, THE FACT THAT YOU'VE DISMISSED THE NATIONWIDE CLAIMS WITH PREJUDICE, QUOTE, "ON THE MERITS," AFFECTS PUERTO RICO. THAT'S THE BASIS. IF THEY WOULD HAVE SAID WE DISMISS IT WITHOUT PREJUDICE AND WE -- IN THE STATUTE OF LIMITATIONS FOR THE NATIONWIDE CLAIMS, WHICH ARE BEING

DISMISSED WITHOUT PREJUDICE ARE TOLLED, THEN THERE WOULD BE NO HARM, THEN I WOULD HAVE NO STANDING.

BUT YOU DIDN'T DO THAT. YOU ASSIGNED THE AMENDED JUDGMENT. WITH ALL DUE RESPECT, THERE WAS NO RULE 59 MOTION. RULE 59 GIVES YOU 28 DAYS TO DO THAT. IT WAS MONTHS AFTER THE FINAL JUDGMENT OF THIS COURT AND IT AFFECTS ME, AND I BELIEVE I WOULD PREVAIL ON A MOTION TO DISMISS FOR LACK OF STANDING IF THEY RAISE IT WITH THE NINTH CIRCUIT, WHICH THEY HAVE NOT DONE, WHICH THEY SHOULD HAVE DONE, AND THEY INSTEAD CHOOSE TO DO ALL OF THIS TO TRY TO DEFEAT THE APPEAL BY GIVING SOME OUTRAGEOUS APPEAL.

BUT I HAVE NO PROBLEM, YOUR HONOR, YOU STATING THAT YOUR OPINION, YOUR INITIAL OPINION STANDS, THAT'S WHAT IS BEING APPEALED, YOU FIND THE APPEAL NOT TO BE MERITAL BECAUSE OF YOUR OPINION, AND I RESPECT THAT. AND I'M NOT REALLY MAKING A LOT OF ISSUES ABOUT THAT.

I'M MAKING AN ISSUE ON THE AMOUNT OF THE APPEAL BOND, WHICH IS, I BELIEVE, OUTRAGEOUS, I BELIEVE IT'S ABUSIVE, AND IT VIOLATES YOUR OWN DECISION WHICH STATES THAT THESE KIND OF CLASS ACTIONS CANNOT BE TAXED, ONLY BRIEFS AND PHOTOCOPIES, WHICH THEY ADMIT IS $150.

THE COURT: THANK YOU.

MR. ZHEN: I DO AGREE WITH THAT. I DO AGREE THAT THE NINTH CIRCUIT NEEDS TO ADDRESS AND THEY NEED TO NARROW IT. I DON'T THINK IT'S A GOOD CASE FOR IT BECAUSE THEY'RE

ADMITTING.  I KNOW THERE'S A PENDING APPEAL ON THAT ISSUE RIGHT NOW BECAUSE I TRIED TO INTERVENE IN IT.  SO THAT'S WHERE I STAND.

THE COURT:  OKAY.  THANK YOU.  MS. CASTILLO.

MS. CASTILLO:  I WILL JUST SAY THAT THIS COURT DOES HAVE JURISDICTION.  MR. ZHEN SAYS THIS COURT LACKS IT BECAUSE OF THE COURT'S ENTRY OF JUDGMENT AND THEN THE AMENDED JUDGMENT.

THIS IS INCORRECT.  F.R.A.P. EXPRESSLY CONTEMPLATES A DISTRICT COURT REQUIRING AN APPELLANT TO FILE A BOND AND PROVIDE OTHER SECURITY.

AND, MOREOVER, VARIOUS COURTS, INCLUDING THIS ONE, MILETAK, BROADCOM HAVE FOUND APPEAL BONDS APPROPRIATE AND IMPOSED THEM ON OBJECTORS DURING THE PENDENCY OF THEIR APPEALS.

AS TO THE PUERTO RICO CLAIM, MR. ZHEN, AS, JUDGE, YOU JUST MENTIONED, HE IS FREE TO PURSUE A DAMAGES CLAIM UNDER PUERTO RICO ANTITRUST AND UNFAIR COMPETITION LAW.  NOTHING PREVENTS HIM FROM DOING SO.

THE COURT:  DO YOU WISH TO COMMENT ON MR. ZHEN'S SUGGESTION THAT BECAUSE SOME OF THE RELIEF YOU REQUEST IS A NATIONAL INJUNCTION, THAT THAT THEN ALLOWS HIM JURISDICTION?

MS. CASTILLO:  I'M NOT PREPARED TO COMMENT ON THAT RIGHT NOW, YOUR HONOR, BECAUSE I DON'T HAVE THE AMENDED JUDGMENT BEFORE ME RIGHT NOW TO REVIEW.

I'M HAPPY TO SUBMIT SOMETHING IF YOUR HONOR WOULD LIKE ONCE I'VE HAD A CHANCE TO DIGEST MR. ZHEN'S ARGUMENTS AND

REVIEW THE AMENDED JUDGMENT.

THE COURT: OKAY. WELL, THANK YOU.

ANYTHING FURTHER, MR. ZHEN?

MR. ZHEN: I JUST WANT TO STATE THAT I NEVER SUGGESTED THIS COURT HAD NO JURISDICTION OVER THE APPEAL BOND MOTION. SO THAT IS NOT ONE OF MY POINTS.

MY SUGGESTION IS THAT THE COURT HAS NO JURISDICTION BEYOND THE APPEAL BOND MOTION, HAS NO JURISDICTION ISSUE OF DISCOVERY, NO JURISDICTION FOR ALL OF THE THINGS THAT THEY'RE USING AS THE BASIS FOR THEIR CLAIMS OF FRAUD.

BUT I'VE NEVER STATED THAT YOU DON'T HAVE JURISDICTION OVER THIS MOTION. YOU ABSOLUTELY DO, AND IT WOULD BE FRIVOLOUS FOR ME TO SUGGEST OTHERWISE. I DON'T HAVE ANYTHING ELSE. I REST ON MY PAPERS.

THE COURT: THANK YOU VERY MUCH.

SO, MS. CASTILLO, I WILL GIVE YOU SEVEN DAYS TO FILE A BRIEF. I THINK YOU CAN DO IT IN TEN PAGES OR LESS, PERHAPS EIGHT PAGES, AND THIS IS JUST RESPONDING, IF YOU WISH, TO MR. ZHEN'S COMMENT ABOUT -- YOUR RELIEF THAT YOU'VE REQUESTED AND THE NATIONAL INJUNCTION AND WHAT EFFECT THAT HAS ON HIS PARTICIPATION IN THIS LITIGATION. YOU CAN FILE THAT IN I THINK I SAID SEVEN DAYS, BY THE 21ST, CLOSE OF BUSINESS.

MS. CASTILLO: THAT WON'T BE A PROBLEM, YOUR HONOR.

THE COURT: EIGHT PAGES. AND I WILL LOOK AT THAT AND THEN ISSUE AN ORDER IN REGARDS TO YOUR REQUEST FOR A BOND.

31

LET ME SEE.  THE RECORD SHOULD REFLECT THAT IT'S 9:50 A.M. PACIFIC STANDARD TIME.

LET ME SEE.  IS MS. LUNDA, MR. BARNES, OR MR. SUSSMAN ON THE LINE OR HAVE THEY JOINED?

I SEE OR HEAR NO RESPONSE.

MS. ROBINSON, HAVE WE HEARD ANY COMMUNICATION FROM EITHER OF THESE INDIVIDUALS?

THE CLERK:  NO, YOUR HONOR.

THE COURT:  ALL RIGHT.  THANK YOU.

IT APPEARS THAT THEY HAVE FAILED TO APPEAR TO PRESENT ANY FURTHER ARGUMENTS AS TO THEIR POSITIONS, SO WE'LL NOTE THAT.

AND I'LL JUST AWAIT RECEIPT OF YOUR DOCUMENT, MS. CASTILLO.  AND THE MATTER IS OTHERWISE UNDER SUBMISSION.

MS. CASTILLO:  THANK YOU, YOUR HONOR.

MR. ZHEN:  JUDGE, I'M SORRY, BEFORE YOU GO OFF THE RECORD?

THE COURT:  MR. ZHEN.

MR. ZHEN:  YES.  ARE WE STILL ON THE RECORD?

THE COURT:  WHAT WOULD YOU LIKE TO SAY, SIR?

MR. ZHEN:  I JUST WANT TO REPLY TO THEIR BRIEF.  I JUST NEED THREE DAYS TO DO IT.

THE COURT:  OKAY.  YOU CAN HAVE THREE DAYS, AND YOU CAN REPLY BY 5:00 P.M. AUGUST 24TH.

MR. ZHEN:  PERFECT.  THANK YOU.

THE COURT:  OKAY.  THANK YOU.

32

MS. CASTILLO:  THANK YOU.

(COURT CONCLUDED AT 9:51 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

ABOVE-ENTITLED MATTER.

_____

IRENE RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074


DATED: AUGUST 21, 2025

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **CERTIFICATE OF SERVICE** |
| | **Dept.:  Courtroom 4** |
| THIS DOCUMENT RELATES TO: | **Judge:  Hon. Edward J. Davila** |
| | **Date:  August 14, 2025** |
| All Indirect Purchaser Actions | **Time:  9:00 a.m.** |

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0150**

## CERTIFICATE OF SERVICE

I am employed in San Mateo County where service of the document(s) referred to below occurred. I am over the age of 18 and not a party to the within action. My business address is Cotchett, Pitre, & McCarthy, LLP, San Francisco Airport Center, 840 Malcolm Road, Suite 200, Burlingame CA 94010.  On August 5, 2025, I served or caused to be served a true copy of the following documents in the manner described below:

1. INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND;

2. DECLARATION OF ELIZABETH T. CASTILLO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND AND EXHIBIT 1 ATTACHED THERETO;

3. INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO OBJECTOR PAT ZHEN'S EMERGENCY MOTION PURSUANT TO FRCP 5.2(e) FOR A PROTECTIVE ORDER;

4. DECLARATION OF CHRISTIAN S. RUANO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' RESPONSE TO OBJECTOR PAT ZHEN'S EMERGENCY MOTION PURSUANT TO FRCP 5.2(e) FOR A PROTECTIVE ORDER AND EXHIBITS A-D ATTACHED THERETO; and

5. CERTIFICATE OF SERVICE.

**X**    **BY ELECTRONIC MAIL**: My e-mail address is azapala@cpmlegal.com and service of the above referenced documents occurred on the date shown below by a member of my firm, Cotchett, Pitre, & McCarthy, LLP, at my direction.

[SEE ATTACHED SERVICE LIST]

**X**    **BY U.S. MAIL**:  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing.  Following that practice, at my direction, a member of my firm, Cotchett, Pitre, & McCarthy, LLP, placed a true copy of the aforementioned documents in a sealed envelope, addressed to each addressee, respectively, as specified below.  The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service in the ordinary course of business.

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0151**

[SEE ATTACHED SERVICE LIST]

    I declare under the penalty of perjury, under the laws of the United States, that the foregoing is true and correct. Executed on this 5th day, August 2025 in Burlingame, California.

/s/ *Adam J. Zapala*
Adam J. Zapala

---

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0152**

**SERVICE LIST**

**BY ELECTRONIC MAIL**:

***Objectors***

Elman Barnes
elmanmethod@theachievementcoaches.com
**(Email as appears on letter to the Clerk of the Court – ECF Dkt. No. 405-1)**

Elman Barnes
elmanmethod@phreakmail.com

Karla Luna, Chief Executive Officer
National Woodlands Preservation, Inc.
k.luna@wvwoodlands.com

Mike Sussman
mike.sussman@pm.me
**(Email as appears on letter to the Clerk of the Court – ECF Dkt. No. 403)**

Pat Zhen
legal@patzhen.com
**(Email as appears on letter to the Clerk of the Court – ECF Dkt. No. 402)**

Pat Zhen
bank@patzhen.com; telescope@patzhen.com

**BY U.S. MAIL**:

***Objectors***

Elman Barnes
401 21st St STE R
Sacramento, CA 95811
**(Address as appears on envelope and letter to the Clerk of the Court – ECF Dkt. No. 405-1)**

Elman Barnes
401 21st Street
Sacramento, CA 95811

Elman Barnes
1401 21st Street, Suite R
Sacramento, CA 95811

Elman Barnes
1401 21st Street
Sacramento, CA 95811

Elman Barnes
6333 Canoga Ave
Woodlands Hills, CA 91367

Mike Sussman
23200 Camino del Mar #503

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0153**

Boca Raton, FL 33433
**(Address as appears on envelope and letter to the Clerk of the Court – ECF Dkt. No. 403)**

Mike Sussman
23200 Camino del Mar #502
Boca Raton, FL 33433

K.Luna
Chief Executive Officer
National Woodlands Preservation Inc.
110 James Street
Hinton, WV 25951
**(Address as appears on envelope and letter to the Clerk of the Court – ECF Dkt. No. 401)**

K.Luna
Chief Executive Officer
National Woodlands Preservation Inc.
110 Main Street
Beckley, WV 25801

Pat Zhen
PO Box 366047
San Juan PR 00936
**(Address as appears on envelope and letter to the Clerk of the Court – ECF Dkt. No. 402)**

Pat Zhen
503 Calle Modesta
Apartment 303
San Juan PR 00924-4511

Pat Zhen
395 Eaton St.,
Providence, RI 02908

Pat Zhen
411 Walnut St.,
Suite 7353
Green Cove Springs, FL 32043

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0154**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND** |
| THIS DOCUMENT RELATES TO: | **Dept.: Courtroom 4** |
| All Indirect Purchaser Actions | **Judge: Hon. Edward J. Davila** |
| | **Date: August 14, 2025** |
| | **Time: 9:00 a.m.** |

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

## TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION ................................................................................................ 1

II. ARGUMENT....................................................................................................... 2

    A. It is Well-Settled that this Court Has Jurisdiction Over IPPs' Motion for an Appeal Bond.................................................................................................. 2

    B. Objectors Do Not Deny That They Are Financially Able to Post Bonds ........... 3

    C. Objectors Are Unlikely to Pay Costs If They Lose Their Appeal....................... 3

    D. The Objectors Will Likely Lose the Appeal and Be Subject to Costs ................ 4

    E. Objectors Do Not Refute the Indicia of Fraud Regarding Their Identities and Claim Submissions ...................................................................................... 6

    F. The Imposition of Appeal Bonds in the Amount of $42,818 Are Appropriate... 8

        1. IPPs' Request for the Imposition of Appeal Bonds Is Timely................. 8

        2. The Appeal Bonds Are Reasonable ............................................................. 8

        3. The Appeal Bonds Are Not Excessive ........................................................ 9

        4. Objectors' Proposed Appeal Bonds Are Inadequate........................... 10

        5. Interest Earned on the Settlement Fund Is Irrelevant.......................... 11

    G. IPPs Have Been Measured and Reasonable in Communicating with Objectors ............................................................................................................... 11

    H. The Subpoenas Served on Objectors Are Appropriate ..................................... 11

III. CONCLUSION .............................................................................................. 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re: Am. President Lines, Inc.*,
    779 F.3d 714 (D.C. Cir. 1985) ....................................................................... 10

*Boddie v. Connecticut*,
    401 U.S. 371 (1971) ....................................................................................... 10

*In re Broadcom Corp. Secs. Litig.*,
    No. SACV 01-275, LEXIS 45656 (C.D. Cal. Dec. 5, 2005). ........................ 2, 9

*Bros. Keeper Ministries v. United States*,
    No. 25-1864, 2025 WL 1723174 (9th Cir. May 23, 2025) ............................... 1

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
    281 F.R.D. 531 (N.D. Cal. 2012) .................................................................. 12

*Clark v. Universal Builders, Inc.*,
    501 F.2d 324 (7th Cir.), *cert. denied,* 419 U.S. 1070 (1974) ......................... 10

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
    No. 2:2000-md-01361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) ................... 9

*D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*,
    366 F.3d 972 (9th Cir. 2004) ........................................................................... 1

*Embry v. ACER Am. Corp.*,
    C 09-01808 JW, 2012 WL 2055030 (N.D. Cal. June 5, 2012) ...................... 3, 5

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.*,
    33 F.3d 29 (9th Cir. 1994) ............................................................................... 6

*Fleury v. Richemont N. Am., Inc.*,
    No. C-05-4525 EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ............ 3, 5

*Glasser v. Volkswagen of Am., Inc.*,
    645 F.3d 1084 (9th Cir. 2011) ......................................................................... 6

*Griggs v. Provident Consumer Discount Co.*,
    459 U.S. 56 (1982) ........................................................................................... 5

*In re Itel Secs. Litig.*,
    596 F. Supp. 226 (N.D. Cal. 1984), *aff'd* 791 F.2d 672 (9th Cir.1986) .......... 12

*Lindsey v. Normet*,
    405 U.S. 56 (1972) ......................................................................................... 10

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**    ii

**2-ER-0157**

*Miletak v. Allstate Ins. Co.*,
No. C 06-03778 JW, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012*)*.............................. 2, 9

*In re Netflix Priv. Litig.*,
No. 5:11-CV-00379-EJD, 2013 WL 6173772 (N.D. Cal. Nov. 25, 2013) ................*passim*

*O'Day v. George Arakelian Farms, Inc.*,
536 F.2d 856 (9th Cir. 1976)..................................................................... 10

*United States v. Jacques*,
6 F.4th 337 (2d Cir. 2021).................................................................... 5

**Statutes**

California Civil Code § 1542 ............................................................... 5

**Rules**

Fed. R. App. P. 4 ............................................................................. 3

Fed. R. App. P. 7 ......................................................................... 4, 8, 9

Fed. R. App. P. 39 ............................................................................ 9

Fed. R. Civ. P. 5 ............................................................................ 13

Fed. R. Civ. P. 7 ............................................................................. 9

Fed. R. Civ. P. 23 ........................................................................... 6

Fed. R. Civ. P. 26 .......................................................................... 12

Fed. R. Civ. P. 27 .......................................................................... 13

Fed. R. Civ. P. 30 .......................................................................... 12

Fed. R. Civ. P. 45 .......................................................................... 12

Fed. R. Civ. P. 59 ........................................................................... 3

Fed. R. Evidence 702 ....................................................................... 6

Ninth Cir. Rule 27 ......................................................................... 13

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR**    iii
**APPEAL BOND; Case No. 5:20-cv-03639-EJD**

## I.   INTRODUCTION

Indirect Purchaser Plaintiffs' ("IPPs") Motion for Appeal Bond should be granted in its entirety.  IPPs filed a motion seeking for the Court to impose appeal bonds as to four objectors—Pat Zhen, National Woodlands Preservation, Inc. ("Woodlands"), Elman Barnes, and Mike Sussman (collectively, "Objectors")—in the amount of $42,818 for each objector ("Motion") (ECF No. 429). In the above-captioned action, Objectors filed a joint Notice of Appeal (ECF No. 421) and an Amended Notice of Appeal (ECF No. 428) in connection with the Order Granting Motion for Final Approval; Granting Motion for Attorneys' Fees, Expenses, and Service Awards ("Final Approval Order") (ECF No. 419), Judgment (ECF No. 420), and Amended Judgment (ECF No. 426). Each Objector filed a separate "opposition" to the Motion (collectively, "Opps."). Zhen Opp. (ECF No. 438); Sussman Opp. (ECF No. 440); Woodlands Opp. (ECF No. 441);[1] Barnes Opp. (ECF No. 442).

Objectors argue that IPPs seek appeal bonds to "punish" Objectors for their appeal. *See*, *e.g.*, Zhen Opp. at 1, 23; Sussman Opp. at 3.[2] Objectors are wrong. IPPs seek only an appeal bond based

---

[1] The Court should strike Woodlands' Opposition for attempting to proceed in *pro per*. Black letter law requires that, as a business entity, Woodlands must be represented in Court by counsel. Woodlands continues to file pleadings in this Court, and in the Ninth Circuit, on its own behalf and has failed to retain counsel. It cannot appear *in propria persona*. *See Bros. Keeper Ministries v. United States*, No. 25-1864, 2025 WL 1723174, at *1 (9th Cir. May 23, 2025) (citing *D-Beam Ltd. P'ship v. Roller Derby Skates, Inc.*, 366 F.3d 972, 973-74 (9th Cir. 2004)) ("[C]orporations and other unincorporated associations must appear in court through an attorney.").

[2] The Woodlands' Opposition incorporates Zhen's arguments. Woodlands Opp. at 1. The Woodlands' Opposition does not otherwise address imposition of the appeal bonds. Instead, it (1) objects to the subpoena that it received from IPPs; (2) addresses its business organization status without explaining the indicia of fraud associated with its conduct supporting the imposition of an appeal bond; and (3) objects to the Hallman Declaration, which states someone named "Karla Luna" (*i.e.,* the same name as its purported CEO) has filed claims in connection with other class actions settlements that Angeion

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   1
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

on estimated claims administration costs during the pendency of the appeal (*i.e.*, approximately 16.5 months) and estimated taxable costs on appeal. The Court should grant IPPs' Motion because (1) the grounds for Objectors' appeals are meritless and unlikely to succeed (Final Approval Order § II.B.5.b-e; Mot. § III.C), (2) their claims bear substantial indicia of fraud (Mot. § III.C), (3) their appeal will impose significant delay and costs on settlement administration and distribution (*id.* at 2, § III.D), and (4) due to the appellants' evasive tactics regarding their identities, it is unlikely that they will pay their costs on appeal, should the Ninth Circuit overrule their objections.

## II.    ARGUMENT

### A.    It Is Well-Settled that this Court Has Jurisdiction Over IPPs' Motion for an Appeal Bond

Zhen asserts that the Judgment terminated this Court's jurisdiction and thus precludes the trial court from ruling on a motion for an appeal bond. Zhen Opp. § I, n. 2. To the extent Zhen argues the Court lacks jurisdiction over the Motion because Objectors filed a Notice of Appeal, the Court should reject this argument.

Federal Rule of Appellate Procedure ("FRAP") 7 provides, "In a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Various courts, including this one, have found appeal bonds appropriate and imposed them on objectors during the pendency of their appeals. *In re Netflix Priv. Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *1, *5 (N.D. Cal. Nov. 25, 2013) (Davila, J.) ("*Netflix*"); *Miletak v. Allstate Ins. Co.*, No. C 06-03778 JW, 2012 WL 3686785, at *1-2 (N.D. Cal. Aug. 27, 2012*); In re Broadcom Corp. Secs. Litig.*, No. SACV 01-275 DT (MLGx), 2005 U.S. Dist. LEXIS 45656, *3-4, *18 (C.D. Cal. Dec. 5, 2005). This Court therefore has jurisdiction over the Motion.

Relatedly, Sussman suggests the Court lacked jurisdiction to enter the Amended Judgment on

---

Group rejected for indicia of fraud. Mot., Hallman Decl. ¶¶ 13-14. Similarly, the Barnes Opposition does not address the imposition of the appeal bonds and merely objects to the Hallman Declaration. *See generally* Barnes Opp.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   2 FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

June 23, 2025 after Objectors filed a Notice of Appeal on May 5, 2025 in connection with the Judgment on April 11, 2025. Sussman Opp. at 2. But Federal Rule of Civil Procedure ("FRCP") 59(e) expressly contemplates amended judgments, and FRAP 4(a)(4) extends the time for filing a notice of appeal when a court enters an amended judgment. This Court therefore had the authority to enter the Amended Judgment even after Objectors filed their Notice of Appeal under FRCP 59(e). Furthermore, Sussman and Zhen did not suffer prejudice by entry of the Amended Judgment because they filed an Amended Notice of Appeal in connection with the Amended Judgment on July 5, 2025, and their opening brief before the Ninth Circuit is not due until September 2, 2025. *Zhen, et al.*, No. 25-3098 (9th Cir. July 21, 2025), ECF No. 16.

### B.   Objectors Do Not Deny That They Are Financially Able to Post Bonds

In determining whether to impose an appeal bond, this Court first considers an appellant's financial ability to post a bond. Mot. § III.A (citing *Netflix*, 2013 WL 6173772, at *3). Zhen and Barnes and the entity, Woodlands, do not represent that they are financially unable to post bonds. *See generally* Zhen Opp.; Woodlands Opp; Barnes Opp. While Sussman claims financial inability to post a bond of $42,818, he misunderstands that the premium for a *surety bond amount* constitutes only a small *percentage* of the bond amount, not the total bond amount. Sussman Opp. at 1. Requiring Sussman to post a bond is even more important given the indicia of fraud associated with him. Mot. § III.C.4. The facts largely show the Objectors have the financial ability to post bonds: They paid a docketing fee for filing an appeal (Mot. at 5); all but one Objector did not raise any financial hardship in connection with posting bonds (*id.*); and both Zhen and Barnes offered to post bonds (Zhen Opp. § I; Barnes Opp. at 1). This first factor weighs in favor of imposing appeal bonds.

### C.   Objectors Are Unlikely to Pay Costs If They Lose Their Appeal

The second factor assesses the risk that an appellant would not pay the costs if the appeal were unsuccessful. Mot. § III.B (citing *Netflix*, 2013 WL 6173772, at *3). Courts in this District recognize the difficulty and risk associated with collecting costs from out-of-state appellants; and with appellants engaged in potential fraud, as the indicia suggests in this case. *Id.* (citing *Netflix*, 2013 WL 6173772, at *3; *Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012); *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, *7 (N.D.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   3 FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

Cal. Oct. 21, 2008)). Because enforcing an order imposing appeal costs would require seeking relief in out-of-state district courts, collecting costs from purportedly out-of-state appellants like Zhen, allegedly in Puerto Rico, Sussman in Florida, and Woodlands in West Virginia would be difficult. Mot. § III.B (citing FRAP 7). Although Barnes purportedly resides in California, Class Counsel have substantial concerns about his true identity and he has done nothing in his Opposition to rebut the indicia of fraud raised as to his claims. *Id.* § III.C.1. IPPs have neither been able to physically serve subpoenas on Zhen, Sussman, or Barnes at the addresses they provided nor at other addresses associated with them through IPPs' investigation. Castillo Decl. ¶ 3. While Woodlands exists on paper, it appears to be a shell operation with no physical or online presence, phone number, or email, and its alleged CEO "Karla Luna" has submitted claims other class action settlement administrators have rejected for indicia of fraud. Mot. § III.C.2.

Moreover, several other facts indicate that collecting costs from Objectors will be impossible. No Objector personally appeared at the Fairness Hearing (nor, given the substantial doubt about their true identities, do IPPs believe they will *ever* appear in person, even if ordered by this Court to do so). Tr. of Proceedings 20:11-21 (Apr. 3, 2025). No Objector has provided proof of identity in the form of government-issued identification or even proof of standing in the form of proof of purchase. Castillo Decl. ¶¶ 4-5. No Objector has met-and-conferred with IPPs by videoconference or telephone despite IPPs' repeated requests to do so. Mot. § III.A (citing Decl. of Kalpana Srinivasan in Supp. of IPPs' Reply in Supp. of the Mot. for Final Approval of Settlement & Mot. for Award of Attorneys' Fees, Reimbursement of Costs, & Service Awards (N.D. Cal. Mar. 21, 2025), ECF No. 407-1); Castillo Decl. ¶ 6. Although someone claiming to be Barnes once called the cellphone of one of IPPs' attorneys at a random time and left a voicemail, he failed to answer his phone when the attorney returned his call. *Id.* ¶ 7. Barnes also never agreed to a set date and time to meet with IPPs and refused to appear on video. *Id.* No Objector has represented that it will pay costs on appeal. *Id.* ¶ 8. Given three Objectors' purported out-of-state residence and all Objectors' substantial indicia of fraud, this second factor supports imposing appeal bonds.

### D.    The Objectors Will Likely Lose the Appeal and Be Subject to Costs

The third factor assesses the likelihood that an appellant will lose the appeal and be subject to

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   4
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD

costs. Mot. § III.C (citing *Netflix*, 2013 WL 6173772, at \*3). Courts in this District have imposed appeal bonds on objectors in class actions after finding their objections meritless. *Id.* (citing *Embry*, 2012 WL 2055030, at \*1; *Fleury*, 2008 WL 4680033, at \*8). Here, this Court overruled each Objector's objections, finding them meritless. Final Approval Order § II.B.5.b-e. Neither the Zhen Opposition nor the Barnes Opposition addresses the merits of their objections. *See generally* Zhen Opp.; Barnes Opp. The Woodlands Opposition merely reiterates its objection that entities could not submit claims to the settlement, which is verifiably false. Woodlands Opp. at 2; Final Approval Order § II.B.5.b. The Sussman Opposition focuses on the Court's lack of jurisdiction, which IPPs address *supra* § II.A. Moreover, Sussman's Opposition relies on cases involving criminal procedure and arbitrability—two issues far removed from the situation here. *United States v. Jacques*, 6 F.4th 337 (2d Cir. 2021) analyzes criminal procedure and *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56 (1982), is a case concerning whether a district court must stay its proceedings during an interlocutory appeal on arbitrability. *See* Sussman Opp. at 2-3.

The Objectors will most likely lose their appeals because none of them have provided proof of purchase to establish standing—let alone, proof of their identity. Castillo Decl. ¶¶ 4-5. Consequently, none of the Objectors have standing to object or appeal. *Id.* Zhen, even if he could provide proof of purchase in Puerto Rico, is not a member of the Settlement Class because the Settlement Class *does not include* Puerto Rico purchasers. Mot. § III.C.3.

Furthermore, Objectors would also likely lose the appeal on the merits for the following reasons: (1) Woodlands' objection is based on the (mistaken) argument that entities could not submit claims, which is inaccurate and moot (Final Approval Order § II.B.5.b); (2) Barnes' objection to the California Civil Code § 1542 waiver in the Settlement Agreement was overruled given its uncontroversial nature in the class action context (*id.* § II.B.5.c); (3) Sussman's objection that the settlement notice did not contain adequate information on submitting an objection was inaccurate (*id.* § II.B.5.e), particularly because he *filed* an objection; and (4) finally, Barnes and Sussman's objections to the claims administration process were overruled because courts have routinely approved similar such processes in other cases and the settlement administrator, Verita Global, LLC, in this case used an effective and necessary tool to prevent fraud (*id.* § II.B.5.c, e). Given each

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   5 FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

Objector's lack of standing and meritless objections, the third factor supports imposing appeal bonds.

### E.    Objectors Do Not Refute the Indicia of Fraud Regarding Their Identities and Claim Submissions

It is uncontroverted that only class members can object to a proposed settlement. *See* FRCP 23(e)(5)(A). The Ninth Circuit has repeatedly held that "only an aggrieved class member" has standing to object to a proposed settlement. Mot. § III.C.3 (citing *In re First Capital Holdings Corp. Fin. Prods. Sec. Litig. (In re First Capital)*, 33 F.3d 29, 30 (9th Cir. 1994)). The Ninth Circuit also regularly dismisses appeals for lack of standing. *Id.* (citing *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1089 (9th Cir. 2011)). As discussed *supra* § II.D, no Objector has agreed to validate their identity with government-issued identification. Castillo Decl. ¶ 4. No Objector has provided any proof of purchase to establish standing. *Id.* ¶ 5. Further, no Objector has met-and-conferred with IPPs by phone or by videoconference despite IPPs' repeated requests. *Id.* ¶ 6. Indeed, the Objectors have repeatedly avoided engaging in any contact that would facilitate verification of their identity. The Objectors' persistent avoidance was the first indication of fraud.

As to each Objector, IPPs have presented other, substantial indicia of fraud, which none have refuted in their Oppositions:

- "Patrick Zhen" Instead of providing a residential or mailing address, Zhen provided a P.O. Box on his pleadings; his filings do not deny an affiliation with "Karla Corea," who is connected to a fraudulent claimant in another class action; and he does not refute that he submitted multiple claims to other class settlements that were rejected for indicia of fraud. Mot. § III.C.3.[3] Additionally, Zhen filed a group notice of appeal on behalf of the other purported Objectors. *See* ECF No. 421 (obtaining signatures of other purported objectors).

---

[3] Zhen attempts to discredit the Hallman Declaration by arguing that it lacks the "scientific rigor necessary for admissibility as an expert opinion under Federal Rule of Evidence 702." Zhen Opp. § III. But IPPs attach the Hallman Declaration to illustrate a history of claims rejected based on indicia of fraud, which is based on the organization's personal knowledge—not as an expert opinion under Rule 702. Even so, Zhen points to nothing in the Declaration that purportedly lacks "scientific rigor."

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION    6
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

And yet Zhen does not explain how he was able to confer with the other three Objectors *and* obtain their signatures for purposes of filing the Notice of Appeal on behalf of all of them. Zhen's silence on this issue is notable: Woodlands failed to provide a phone number, email address, or a physical address associated with it on its pleadings. *Id.* § III.C.2. Thus, the information provided by Woodlands in connection with its objection made it impossible to contact it because the address it provided was not its own, but an address for a West Virginia registered agent service. Mot., Hedley Decl. ¶ 14. Indeed, Class Counsel were not even able to contact Woodlands and its purported CEO "Karla Luna" during attempted meet and confers at the final approval stage. Mot., Zapala Decl. ¶¶ 24-27, 31. Nonetheless, Zhen (an alleged arms' length objector who apparently had no prior connection to Woodlands) was able to procure "Ms. Luna's" signature on the Notice of Appeal. Zhen does not explain how this occurred. Moreover, the indicia of fraud associated with Zhen is not limited to this action: in another recent consumer class action, the plaintiffs submitted a response to Zhen's objection to a settlement which describes his lack of standing, his refusal to validate his identity, and the red flags raised by his claim. *See* Castillo Decl., Ex. 1 (Class Counsel's Response to the Objection of Pat Zhen, *Kessler, et al. v. The Quaker Oats Co.*, No. 7:24-cv-00526-KMK (July 21, 2025), ECF No. 57). Zhen's conduct there mirrors his conduct here.

- <u>Sussman</u> Sussman likely provided a fake residential address. Although he contends that he "accidentally" provided the wrong apartment number on his pleadings, he fails to explain why his apartment building's property manager and other residents did not know anyone by the name of Mike or Michael Sussman living in the apartment building when a process server spoke to them in connection with attempting service of a subpoena on him. Mot. § III.C.4.

- <u>Woodlands</u> Woodlands' Certificate of Existence and Business Entity Details by itself does not legitimize its business operations or confer standing to object or appeal. Woodlands Opp., Exs. 3-4. Moreover, Woodlands' Opposition to the Motion fails to rebut the indicia of fraud associated with it in connection with the Motion. It omits any explanation for its lack of physical presence, online presence, phone number, or email address. It does not explain why it has no record of ever having employed any individuals or explanation of why an entity with

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION  7 FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

no employees and no physical or online presence would have purchased telescopes. It does not explain the total lack of a connection with a legitimate individual named "Karla Luna," much less an individual purporting to have that name who is its CEO. Nor does it refute the evidence that its claimed CEO is the same Karla Luna who submitted multiple claims rejected for indicia of fraud in connection with other class action settlements. Mot. § III.C.2.

- <u>Barnes</u> Barnes fails to refute the facts IPPs present showing that his claimed identity is likely a sham. *Id.* § III.C.1. Additionally, he fails to address, much less rebut, his inconsistent mailing address, his inconsistent signature, and the discrepancy between the Sacramento mailing address he provided and the Santa Clarita post office from where the letter was mailed. *Id.* Nor does he explain why no person named "Elman Barnes" appears to exist at all based on Class Counsel's investigation. *Id.* And, consistent with the other Objectors, he fails to explain why he continues to avoid getting on any video calls with Class Counsel to verify his identity.

The above facts regarding the specter of fraud further support the likelihood that Objectors will lose the appeal and be subject to costs (and likely sanctions), and warrant the imposition of appeal bonds.

### F. The Imposition of Appeal Bonds in the Amount of $42,818 Are Appropriate

#### 1. IPPs' Request for the Imposition of Appeal Bonds Is Timely

Zhen argues the Motion, which IPPs filed on July 14, 2025, is untimely, noting that they should have filed it "three months ago when [Objectors'] Notice of Appeal was filed." Zhen Opp. at 1-2. FRAP 7 does not impose a deadline for an appellee to move for an appeal bond or for a district court to impose an appeal bond. Here, as in *Netflix*, IPPs moved the Court to impose appeal bonds on Objectors after the Court held a Fairness Hearing and Objectors filed their Notice of Appeal. *Netflix*, 2013 WL 6173772, at *1–2. This Court granted the motion for appeal bond in *Netflix*, requiring each Objector to either post a $21,519 bond or file a notice of dismissal of his or her appeal. *Id.* at *5. The Motion is therefore timely.

#### 2. The Appeal Bonds are Reasonable

Zhen and Barnes contend the appeal bonds are excessive. Barnes improperly claims the appeal

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   8
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

bond should be limited to $50, the purported maximum value of his recovery. Barnes Opp. at 1. Pursuant to FRAP 7, the Court may set the appeal bond at the "amount necessary to ensure payment of costs on appeal." These costs include taxable costs under FRAP 39(e). The Ninth Circuit has held that other costs qualify for purposes of FRCP 7. Mot. § III.D.

In *Netflix*, this Court identified claims administration costs during the pendency of the appeal as one such cost that qualifies FRCP 7's purposes. *Netflix*, 2013 WL 6173772, at *4. Other district courts agree.[4] Zhen and Barnes are therefore wrong that an appeal bond must be limited to taxable costs (Zhen Opp. § V) or the purported maximum value of his claim (Barnes Opp. at 1).

Here, IPPs request that each Objector post an appeal bond of $42,818 based on claims administration costs and taxable costs under Rule 39. Mot. § III.D. Consistent with *Netflix*, these costs do not include attorneys' fees. *Netflix*, 2013 WL 6173772, at *4 n. 2. Appeal bonds are not excessive merely because the appellants who must post them find them subjectively too high. Courts have imposed appeal bonds higher than IPPs seek here under similar circumstances. Mot. § III.D.1 (citing *Miletak*, 2012 WL 3686785, at *2 (appeal bond of $50,000); *Broadcom*, 2005 U.S. Dist. LEXIS 45656, at *11-12 (appeal bond of $517,700)). The Court should impose an appeal bond of $42,818 on each Objector. To the extent the Court credits Sussman's claim of financial hardship, it should nevertheless impose an appeal bond for a reduced but nonetheless robust amount. Imposing an appeal bond as to Sussman is important given that he is out-of-state, his objection is meritless, and the indicia of fraud. *See supra* § II.C-E.

### 3. The Appeal Bonds Are Not Excessive

Zhen claims the appeal bonds are "excessive" and therefore unconstitutional. Zhen Opp. § VI. The cases on which Zhen relies grapple with circumstances not present here—situations in which the

---

[4] *See* Mot. § III.D (citing *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. 2:2000-md-01361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003); *Broadcom*, 2005 U.S. Dist. LEXIS 45656, at *11–12).

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   9 FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

appeal bond did not relate to permissible appeal costs or state law due process issues.[5] As discussed *supra* § II.F.2, courts have imposed appeal bonds in amounts *exceeding* the amount sought here. Furthermore, Zhen's reference to "Class Counsel's demand for $42,000" suggests that, like Sussman, he misunderstands that the premium for a surety bond amount is calculated as a small percentage of the bond amount (*i.e.*, he would not have to pay $42,818 to post a bond of $42,818). Zhen Opp. § VI; *see supra* § II.B.[6]

### 4.    Objectors' Proposed Appeal Bonds Are Inadequate

Zhen and Barnes offer to post bonds of $250 and $50, respectively. Zhen Opp. § I; Barnes Opp. at 1. But those proposed amounts are inadequate to ensure payment of IPPs' costs on appeal, estimated at $42,818. Mot. § III.D. Additionally, the amount of $42,818 had assumed an appeal duration of 16.5 months (*id.* § III.D.1) and has only increased since Zhen recently moved for and received a 30-day extension for all Objectors to file the opening brief with the Ninth Circuit.[7] Zhen and Barnes' proposed amounts also fail to account for the difficulty and risk associated with

---

[5] Zhen Opp. § VI (citing *Lindsey v. Normet,* 405 U.S. 56, 77 (1972) (double-bond requirement for appealing an Oregon Forcible Entry and Wrongful Detainer Statute action unconstitutional because appeal was unrelated to actual rent accrued or specific damage sustained by the landlord)); *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856, 860 (9th Cir. 1976) (holding double-bond requirement had no rational relationship to the payment of interest on the award and costs of appeal); *Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341–42 (7th Cir.), *cert. denied,* 419 U.S. 1070 (1974) (this case briefly discusses assessment of costs, not bonds); *In re: Am. President Lines, Inc.,* 779 F.3d 714, 716, 718-19 (D.C. Cir. 1985) (remanding case to district court where appeal bond was excessive because it was based on attorneys' fees); *Boddie v. Connecticut*, 401 U.S. 371, 380 (1971) (discussing how due process of law prohibits a state from denying access to its courts to indigents who seek judicial dissolution of their marriages).

[6] To the extent Objectors fail to find a surety company to extend an appeal bond to them because they will not verify their identities, this failure corroborates the indicia of fraud present here.

[7] *Zhen, et al.*, No. 25-3098 (9th Cir. July 21, 2025), ECF No. 16.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   10 FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

collecting costs from them. *See supra* § II.C.

### 5. Interest Earned on the Settlement Fund Is Irrelevant

Zhen maintains the Court need not impose appeal bonds given that the settlement is accruing interest, which will likely offset claims administration costs during the pendency of Objectors' appeal. Zhen Opp. § V.d. However, any interest earned on the settlement fund does not relate to the amount of an appeal bond. *See Netflix*, 2013 WL 6173772, at *3 (listing three relevant factors in determining whether to impose an appeal bond, none of which are interest earned on the settlement fund).

### G. IPPs Have Been Measured and Reasonable in Communicating with Objectors

Zhen accuses IPPs of abusing, intimidating, harassing, and punishing Objectors in this matter. Zhen Opp. §§ I-V. Other Objectors suggest the same. Sussman Opp. at 3; Woodlands Opp. at 1-2; *see generally* Barnes Opp. These accusations are baseless. Indeed, the correspondence between IPPs and Objectors, some of which are attached to the Oppositions,[8] only show that IPPs have been reasonable and accommodating in their ongoing efforts to meet-and-confer with Objectors since they filed objections to final approval of the settlement. *See* Mot. § III.A (detailing Class Counsel's efforts to meet and confer with these Objectors before the fairness hearing in an attempt to resolve their purported "objections."). As the correspondence confirms, it is the Objectors that have avoided IPPs' repeated efforts to discuss their objections and appeal. Each Objector could have quickly dispelled the indicia of fraud by verifying their identities, proof of purchase, and contact information, but have repeatedly refused to do so.

### H. The Subpoenas Served on Objectors Are Appropriate

Finally, although not relevant to the Motion, Zhen, Sussman, and Woodlands challenge the discovery subpoenas they received in connection with their objections and appeal. Zhen Opp. at 5-6; Sussman Opp. at 2; Woodlands Opp. at 1. But, as discussed above, the subpoenas are relevant both to the Court's determination of whether to impose appeal bonds on Objectors and its continuing duty to oversee administration of the Settlement and its judgment. *See supra* §§ II.B-D.

---

[8] Zhen Opp., Exs. 1-8; Susmann Opp., Ex. 1; Woodlands Opp., Ex. 1.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION  11 FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

Contrary to Zhen's contention (Zhen Opp. § II), IPPs do not need to seek leave to serve subpoenas on Objectors. The subpoenas are proper because Objectors voluntarily appeared in litigation and are therefore subject to discovery. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. 531, 533 (N.D. Cal. 2012) (finding post-judgment discovery served on objectors appropriate under FRCP 26 regardless of whether styled as FRCP 30 (party) or FRCP 45 (non-party) so long as it seeks non-privileged material "relevant to the claim or defense of any party"). IPPs may seek information from objectors to obtain relevant, needed, and narrowly tailored information regarding each objector's standing as a settlement class member to assert objections, the underlying basis for its objections, and its relationship with counsel that may be pertinent to informing the court about the nature and merits of the appeal. *Netflix*, 2013 WL 6173772, at *5 (citing *CRT*, 281 F.R.D. at 533-34). Here, IPPs served subpoenas on Objectors to establish their purchase(s), their identities (which appear fraudulent), relationships with each other, and objections to other class settlements. Zhen Opp., Ex. 6; Sussman Opp., Ex. 1; Woodlands Opp., Ex. 1. The subpoenas constitute needed and narrowly tailored discovery seeking information regarding Objectors' standing, true identities, motivations, relationships, and history of objections in other cases.

Finally, this Court retains jurisdiction to preserve the integrity of its judgments in general and, specifically, to protect the Court's final judgment. *Netflix*, 2013 WL 6173772, at *4; *In re Cathode Ray Tube (CRT) Antitrust Litig.*, 281 F.R.D. at 533-34; *In re Itel Secs. Litig.*, 596 F. Supp. 226, 233 (N.D. Cal. 1984), *aff'd* 791 F.2d 672 (9th Cir.1986). The Final Approval Order and Amended Judgment confirm this fact. *See* Final Approval Order at 20 ("Without affecting the finality of this Order in any way, the Court retains jurisdiction of all matters relating to the interpretation, administration, implementation, effectuation, and enforcement of this Order and the Settlement Agreement."); Amended Judgment ¶ 1 ("The Court has jurisdiction over the subject matter of this litigation, the Actions within this litigation, and the parties to the Settlement, including all members of the Settlement Class and Defendants."). Discovery from Objectors therefore also falls under the Court's continuing jurisdiction under the Final Approval Order and Final Judgment. This Court

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   12
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

should disregard Objectors' challenges regarding the propriety of the timing of the subpoenas.[9]

## III.    CONCLUSION

For the foregoing reasons, the Court should order each Objector to post a bond of $42,818 (or any other such amount that the Court finds appropriate) or file a notice of dismissal of its appeal. IPPs have demonstrated that multiple factors indicate it is unlikely that any Objector will pay court-mandated costs in the likely event they lose their appeal.

Dated: August 4, 2025                    Respectfully Submitted,

/s/ Elizabeth T. Castillo
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Christian S. Ruano (SBN 352012)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

/s/ Kalpana Srinivasan
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100

[9] Plaintiffs further discuss the appropriateness, relevance, and burden and expense of complying with these subpoenas in (1) Plaintiffs' Response to Pat Zhen's Emergency Motion Pursuant to Federal Rule of Civil Procedure 5.2(e) for a Protective Order filed concurrently herewith and (2) Plaintiffs' Response to Appellant Pat Zhen's Emergency Motion Under Circuit Rule 27-3 for a Protective Order and for Sanctions filed before the Ninth Circuit. *Zhen, et al. v. Synta Technology Corp., et al.*, No. 25-3098 (9th Cir. July 30, 2025), ECF No. 15.1.

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   13
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas SBN 24102452
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

/s/ *Lin Y. Chan*
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
**LIEFF CABRASER HEIMANN &
  BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Counsel for the Indirect Purchaser Plaintiff*

**INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION   14
FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **Case No. 5:20-cv-03639-EJD**<br><br>**DECLARATION OF ELIZABETH T. CASTILLO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND** |

**DECLARATION OF ELIZABETH T. CASTILLO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND;**
**Case No. 5:20-cv-03639-EJD**

**2-ER-0173**

1. I, Elizabeth T. Castillo, am a partner at Cotchett, Pitre & McCarthy, LLP, one of the three firms appointed as Settlement Class Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2. I submit this Declaration in support of the IPPs' Reply in Support of Motion for Appeal Bond pursuant to 28 U.S.C. § 1746.

3. IPPs have neither been able to physically serve subpoenas on Zhen, Sussman, or Barnes at the addresses they provided on their pleadings nor at other addresses associated with them through IPPs' own searches.

4. No Objector has provided proof of identity in the form of government-issued identification.

5. No Objector has provided proof of standing in the form of a proof of purchase in one of the indirect purchaser states included in the settlement.

6. No Objector has met-and-conferred with IPPs by videoconference despite IPPs' repeated requests.

7. Although "Barnes" once called the cellphone of one of IPPs' attorneys at a random time and left a voicemail, he failed to answer his phone when the attorney returned his call. Additionally, Mr. Barnes has never agreed to a set date and time to meet with IPPs and has refused to appear on video.

8. No Objector has represented that it will pay costs on appeal.

9. Attached hereto is as Exhibit 1 is a true and correct copy of Class Counsel's Response to the Objection of Pat Zhen, *Kessler, et al. v. The Quaker Oats Co.*, No. 24-cv-00526-KMK (July 21, 2025), ECF No. 57.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 30th day of July 2025 in Burlingame, California.

*/s/ Elizabeth T. Castillo*
Elizabeth T. Castillo

**DECLARATION OF ELIZABETH T. CASTILLO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**                    1

# EXHIBIT 1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
Raymond Kessler, Hartence Hill, Lazaro
Rodriguez, Teresa Herendeen, and Barbara Abreu
individually and on behalf of all
others similarly situated,

                    **Plaintiffs,**

v.                                         **Case No.: 7:24-cv-00526**

The Quaker Oats Company,

                    **Defendant.**

-------------------------------------------------------------x

## CLASS COUNSELS' RESPONSE TO THE OBJECTION OF PAT ZHEN

## I.     Preliminary Statement

As set forth in Plaintiffs' Motion for Final Approval of Class Action Settlement (Dkt. 42) the reaction of the Settlement Class to the proposed Settlement has overwhelmingly been positive. As of July 10, 2025, Angeion received approximately 140,712 (140,273 online, 439 paper) Claim Form submissions. Yet, as discussed below only one objection to the settlement, an extraordinarily infinitesimal percentage of the Class, was filed.

Following dissemination of the Court-approved notice to Class Members in this case, on July 8, 2025, Class Counsel became aware of a single objection to the Settlement made by an individual identifying himself as and purporting to be "Pat Zhen." Mr. Zhen's objection, as well as his July 11, 2025 "Supplemental Objection"[1] are annexed to the accompanying Declaration of Jason Sultzer as **Exhibits 1 and 2**, respectively**.**

Class action objectors "may serve an important role in protecting class interests." *In re Petrobras Secs. Litig.*, 2018 U.S. Dist. LEXIS 161898, *15 (S.D.N.Y. Sep. 19, 2018).  Some objectors, however, seek to pervert the process by filing frivolous objections and appeals, not for the purpose of improving the settlement for the class, but to obtain personal payments in exchange for voluntarily dismissing their appeals. *See id.* (noting that "objector blackmail" has "increasingly interfered with the prompt and fair resolution of class litigation at a direct cost to class members, who may thereby be prevented from collecting the settlement funds owed to them for months and even years.").[2]  Other objectors have an animus against class action attorneys, filing objections,

---

[1] On July 11, 2025, Mr. Zhen emailed to class counsel a "Supplemental Objection" related to the process for filing objections.  This objection was received beyond the objection deadline of June 27, 2025, and as such is untimely and should not be considered by the Court.  However, without waiving the objection to its untimeliness, Class Counsel addresses this objection and will demonstrate that it is baseless.

[2] *See also In re Ivan F. Boesky Sec.*, 948 F.2d 1358, 1368 (2d Cir. 1991)(discussing how objectors "constituting...an infinitesimal fraction of the classes as a whole, and pursuing weak claims, have injured all classes by this appeal"); *In re Initial Public Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) ("concur[ring] with numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients").

1

like those here, that do not materially improve the settlement. Both are bad and disrupt the process of settling class action lawsuits.

Mr. Zhen's objection is not a genuine attempt to improve the Settlement. Indeed. Mr. Zhen has objected to a number of other settlements and those objection have been denied by federal courts.[3] Moreover, the objections he asserts in this matter are based on harmless technical issues, rather than the adequacy of the relief provided to the Class or Class Counsel's requested fee award. *See Grayson v. GE*, 2020 U.S. Dist. LEXIS 134657, *11 (D. Conn. Jul. 27, 2020) (approving class action settlement where "the one objection from a Class Member did not challenge the fairness of the terms of the Settlement to the Class.") Specifically, Mr. Zhen's objection principally attacks the Claims Administrator's (Angeion's) fraud detection process and this Court's procedures for filing objections. As set forth herein and in the supporting declaration of Derek Burrows of Angeion (Sultzer Decl. Ex. 6), however, Angeion employs necessary and reliable procedural safeguards (that have been lauded by courts) designed to prevent fraudulent claims from depleting the Settlement Fund at the expense of Class Members with genuine claims. Mr. Zhen's reasons for objecting to these fraud-prevention measures are suspect given that his claim was rejected, among other reasons, for exhibiting indicia of fraud, and given that Mr. Zhen refused to validate his identity after multiple requests from Angeion and Class Counsel. Finally, and most importantly, Mr. Zhen lacks standing to assert his objection inasmuch as he did not even purchase a product covered by the Settlement. Regardless, even setting aside the indicia of fraud and Mr. Zhen's lack of standing, his objections to technical procedural aspects of the claims process are meritless and should be rejected.

---

[3] *See e.g. In re Telescopes Antitrust Litig* (N.D. Cal.) (5:20-cv-03639-EJD) (Dkt 402); *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143 (Dkt. 3108).

2

2-ER-0178

## II.    Mr. Zhen Refuses to Validate his Identity

As an initial matter, Mr. Zhen's objection should be denied because there are strong indications that Mr. Zhen may not be who he purports to be. Indeed, an investigation by Angeion and Class Counsel's independent investigation regarding Mr. Zhen's claim denial revealed that Mr. Zhen is associated with multiple spellings of his name, physical addresses, emails, and phone numbers.

Notably, Angeion rejected Mr. Zhen's claim because it had multiple indicia for fraud. Burrows Decl. ¶ 17. First, the contact information that Mr. Zhen provided in conjunction with his claim submission differed from information he had provided in various other settlements administered by Angeion. Second, the phone number Mr. Zhen provided is different from that provided with claims submissions made by Mr. Zhen in other settlements and is not associated with a Pat Zhen but to another individual, according to Lexis and other third-party data sources. *See* Burrows Decl. ¶¶ 18-21.

Additional red flags regarding Mr. Zhen's claim submission arose during interaction with Class Counsel. When Class Counsel reached out to Mr. Zhen to discuss his objections and see if they could be resolved, he declined to meet and confer by Zoom (or any other platform where, from Class Counsel's perspective, his identity could potentially be verified), and demanded that he not be recorded in any way. Sultzer Decl. ¶ 14. Mr. Zhen did speak to Class Counsel by phone on July 10, 2025, and a second meet-and-confer was scheduled for July 14, 2025. *Id*. at ¶ 15. Following the July 10th call, Class Counsel received a phone call from an unknown individual demanding $100,000 in exchange for withdrawing Mr. Zhen's objection. *Id*. at ¶ 23. When Class Counsel informed Mr. Zhen of the phone call and again requested that the July 14th meet-and-

3

Case 5:24-cv-00632-EKL Document 437-1 Filed 00/20/25 Page 58 of 147

confer be held using Zoom, and that Mr. Zhen provide his identification, Mr. Zhen refused. *Id*. at ¶¶ 24 & 25. *See also* Sultzer Decl. Ex. 3.[4]

Both Class Counsel and Angeion subsequently conducted investigations into Mr. Zhen that appeared to reveal additional indicia of fraud.[5] First, a Lexis Search reflects that Mr. Zhen is associated with a number of different names, including "Pat Zhen," "Patrick Zhen," and "Pat Zen" as well as at least two physical addresses, which did not include the P.O Box referenced in Mr. Zhen's objection. *See* Declaration of Michael ("Charles Decl."), annexed to the Sultzer Declaration as Exhibit 7, ¶ 4.

Second, the phone number Mr. Zhen provided in his claim submission is connected with *Individual 1* at a different address from that provided by Mr. Zhen in this matter or any other submissions to Angeion ("Address 1"). *See* Charles Decl. ¶ 5; Burrows Decl. ¶¶ 23-24.

Third, Address 1 is listed as being owned by a deceased individual who was survived by his son *Individual 2*, who has been involved in multiple legal proceedings alleging various fraudulent or deceptive activities. Burrows Decl. ¶¶ 25-28; Charles Decl. ¶¶ 6-7.

Fourth, Pat Zhen appeared in *In re: Optical Disk Drive Products Antitrust Litigation*, 3:10-md-2143. *See* Burrows Decl. ¶ 29. In that matter, Mr. Zhen filed a motion with contact information that included a telephone number registered to *Individual 2*. *Id*. The phone number Mr. Zhen provided with his claim in that matter (a different number than that provided in his motion), however, is associated with another address within the continental United States ("Address 2"). Address 2 is linked to a Pat Zhen with yet another distinct Puerto Rico address ("Address 3"),

---

[4] Class Counsel also afforded Mr. Zhen an opportunity to verify his identity in any way with which he was comfortable. Mr. Zhen responded by sending an email to all Class Counsel and defense counsel threatening to sue them. *See* Sultzer Decl. **Exhibit 4.**

[5] In order to protect Mr. Zhen's privacy, Class Counsel and Angeion are not disclosing the specific phone numbers, email addresses, physical addresses, or identities of the individuals associated with those phone numbers or addresses that were uncovered by their investigations. Should the Court deem it necessary, Class Counsel can provide additional details regarding the investigations to the Court *in camera*.

which in turn is associated with a corporation which lists *Individual 1* as its president and treasurer. Burrows Decl. ¶¶ 30-32.

Mr. Zhen also recently filed an objection in *In re Telescopes Antitrust Litig.*, which was denied. 2025 U.S. Dist. LEXIS 70066, at *30 (N.D. Cal. Apr. 11, 2025). Counsel for the class in that matter also conducted an investigation into Mr. Zhen that found indicia of fraud, the results of which are set forth in the Declaration annexed as **Exhibit 5** to the Sultzer Declaration.

Based on the investigations and findings described above, both Angeion and Class Counsel's own investigator have concluded that there is substantial information reasonably indicating that the objection filed under the name Pat Zhen is highly suspicious and was correctly rejected, especially since Mr. Zhen was unwilling to further engage in the process of validating his identity. *See* Charles Decl. ¶ 9 & Burrows Decl. ¶¶ 33 & 36. Mr. Zhen's refusal to verify his identity is, by itself, a sufficient reason to question the veracity of his claims and to deny his objections.

## III. Mr. Zhen Does not Have Standing to Make His Objection

Regardless of whether Mr. Zhen is who he claims to be, he does not have standing to pursue his objections because he did not purchase a Covered Product and therefore is not a member of the Class. The Federal Rules of Civil Procedure unequivocally state that only class members have the ability to object to a class settlement. *See* Fed. R. Civ. Proc. 23(e)(5)(A).[6]

Mr. Zhen's claim submission claimed that he purchased two of Defendant's products: 1) the Quaker Chewy Yogurt Yogurt Variety Pack Chewy (14 Ct) (17.2 Oz) and; 2) the Quaker Assorted Chewy (48 Ct) (48.32 Oz). Sultzer Decl. ¶ 32. Crucially, neither of those products are

---

[6] *See also In re Drexel Burnham Lambert Grp., Inc.*, 130 B.R. 910, 923 (S.D.N.Y. 1991), aff'd, 960 F.2d 285 (2d Cir. 1992) ("Only Class members have standing to object to the Settlement of a class action" because "[o]bjectors who are non-Class members lack standing to object to the fairness, reasonableness and adequacy of the Settlement.").

5

Covered Products under the Settlement Agreement, and accordingly, Mr. Zhen is not a Class Member and does not have standing to lodge his objections. *See* Dkt. 13-1, Exhibit D. Moreover, when Class Counsel questioned Mr. Zhen about the products he purchased during the July 10th call, he was confused and unable to do so with any clarity or specificity. Sultzer Decl. ¶ 16.

## IV. Mr. Zhen's Objections Are Meritless

Even if Mr. Zhen did have standing to raise his objections (which he does not), they should nevertheless be rejected by the Court because they attack necessary fraud prevention processes or complain about technical procedural issues that are largely moot.

### 1. Angeion's Fraud Detection Processes

Mr. Zhen asserts that the claims process violates due process because Angeion has unfettered discretion in denying claims and Class Members have no means to challenge claim denials. But this is plainly incorrect. The Settlement Agreement is clear that Class Counsel, Defendant, and the Court all retain oversight regarding fraud detection and the denial of claims. *See* Dkt. 13-1, § 4.8.[7] Contrary to Mr. Zhen's complaint, Angeion's fraud detection system is a necessary tool to prevent fraud and preserve funds for Class Members making genuine claims. Indeed, in recent years there has been a significant increase in the volume of attempted fraud in class action settlements, accompanied by rapidly evolving and increasingly sophisticated tactics. *See* Burrows Decl. ¶¶ 6-8.[8]

---

[7] If any fraud is detected or reasonably suspected, the Claim Administrator and Parties can require further information from the Settlement Class Member (including by cross-examination) or deny claims, *subject to the supervision of the Parties and ultimate oversight by the Court . . .* The Claims Administrator's decision as to the validity of claims shall be final and binding, *except that Class Counsel and Defendant shall retain the right to audit claims and to challenge the Claim Administrator's decision by their mutual agreement or by motion to the Court.*" Settlement Agreement Section 4.8. (emphasis added).

[8] *See also In re Telescopes Antitrust Litig.*, 2025 U.S. Dist. LEXIS 70066, *28-29 (N.D. Cal. Apr. 11, 2025) ("the presence of fraudulent class action settlement claims is a growing and serious concern that could jeopardies the integrity of class action settlements.")

2-ER-0182

Angeion has responded by implementing state-of-the-art fraud detection software creating comprehensive solutions to identifying fraud based on both state-of-the-art technology and analysis of over a decade of historical claims data. *Id*. at ¶¶ 9-13. Indeed, a recent case in this District found "Angeion's fraud detection system is robust and appropriately designed to weed out fraudulent claims." *In re Novartis*, 2024 U.S. Dist. LEXIS 132677, *15 (S.D.N.Y. Jul. 26, 2024). Moreover, during a Fairness Hearing in April of this year, the Honorable Vincent L. Briccetti recognized "the extensive work and sophisticated technology that Angeion utilized in addressing the unprecedented programmatic fraud issues in connection with this settlement"…further stating that "absent Angeion's work in this rather extraordinary case, it's likely that the settlement would never have been approved and the class members would never have been paid."[9] Class Counsel has reviewed Angeion's fraud detection process and has been in constant contact with Angeion throughout the claims process regarding claim denials, and is fully confident that Angeion's process is thoughtfully designed to reduce false positives and is necessary to protect the Class. *See* Sultzer Decl. ¶ 28.

Further, Mr. Zhen undermines his own objection. As set forth in his objection, when his claim was denied, Angeion notified him that there were inconsistencies with his submission and instructed him to try again or contact Angeion or Class Counsel. Angeion's records reflect that Mr. Zhen did not attempt to resubmit his claim or to contact Angeion. Burrows Decl. ¶ 21. Indeed, Mr. Zhen confirmed to Class Counsel that he did not make a second attempt to submit his claim and did not reach out to Angeion or Class Counsel to find out why his claim had been rejected. Sultzer Decl. ¶ 17. And, when Class Counsel offered to assist Mr. Zhen in processing his claim, he refused. *Id*. at ¶ 18. Moreover, Class Members whose claims are rejected have the opportunity

---

[9]*Jimenez v. Artsana USA, Inc.*, No. 7:21-cv-07933-VB (S.D.N.Y.)

to opt-out of the Settlement to preserve their claims or object to the Settlement (as Mr. Zhen has done here). *See* Dkt. 13-1, § 6.

Nor, as Mr. Zhen claims, does Class Counsel have any conflict of interest regarding fraud detection or the acceptance or denial of claims. Rather, Class Counsel has a fiduciary duty to ensure that valid claims are processed *and* that invalid claims are rejected in order to protect the Class and the integrity of the claims process. Moreover, Class Counsel does not have any financial interest in the number of claims that are deemed valid or invalid, and given that the Settlement ensures there is no reversion to the Defendant, the number of rejected claims is of no moment to the Defendant.

### 2. *Distribution of Unclaimed Funds*

Mr. Zhen objects to the provisions of the Settlement Agreement (Section 4.10) that distribute the funds from unclaimed checks to a *cy pres* recipient on the grounds that such funds should escheat to the state by law. As an initial matter, this objection is moot because only approximately ten claimants requested checks as a method of payment. *See* Sultzer Decl. ¶ 20. When Mr. Zhen learned of the low number of checks that were issued during his meet-and-confer with Class Counsel, he agreed to withdraw this objection. *Id*.

Even if that were not the case, the Second Circuit Court of Appeals has made it clear that distribution of settlement funds to a *cy pres* recipient is permissible and indirectly benefits class members. *See Hyland v. Navient Corp.,* 48 F.4th 110, 121 (2d Cir. 2022) (approving settlement where the *entire* settlement fund was distributed to a *cy pres* recipient).[10] Moreover, both the

---

[10] *See also* In re Remicade Antitrust Litig., No. 17-CV-04326, 2023 WL 2530418, at *20 (E.D. Pa. Mar. 15, 2023) (rejecting similar objection as "baseless"); *Hesse v. Godiva Chocolatier, Inc*., No. 1:19-CV-0972-LAP, 2022 WL 22895466, at *7 (S.D.N.Y. Apr. 20, 2022) (finding cy pres to be an "appropriate manner" to dispose of uncashed checks and paypal provisions and rejecting objection that asked for uncashed checks to be re-distributed, not sent to unclaimed property funds).

NACA Class Action Guidelines and the ALI Principles of the Law of Aggregate Litigation disfavor escheating to the state because it fails to provide an indirect benefit to the class in the way that *cy pres* distribution does.[11]

### 3. Debit Card Terms and Conditions

Mr. Zhen further complains that the Settlement permits Class Member to receive reimbursement on prepaid debit cards, but does not disclose the terms of those cards, which he alleges are issued by companies that engage in schemes to defraud card holders.[12]  As an initial matter, Mr. Zhen selected Venmo as his preferred payment method when he attempted to make a claim, and he does not purport to be aware of any Class Members who experienced any freezes, fees, or any other issues with the debit cards they received.  Accordingly, while Mr. Zhen may be personally unhappy with the companies that manage the debit cards, any injury to the Class Members is purely hypothetical.  Moreover, contrary to Mr. Zhen's claims, as part of the claim submission process, the terms and conditions of the debit cards are made available at the time of payment election for each of the payment options available for the administration, and the terms are extremely simple and straightforward.  *See* Dkt. 44 Ex. L.

---

[11] *See* The NACA Guidelines, Guideline 6 & discussion; ALI Principles § 3.07 cmt. b ("*A cy pres* award to a recipient whose interests closely approximate those of the class is preferable to either [escheat to the state or reversion to the defendant].").   *See also First Albany Corp. v. Am. Integrity Corp.,* 2015 U.S. Dist. LEXIS 164559, *4 (E.D. Pa. Dec. 8, 2015) (declining to order unclaimed funds in class action settlement to escheat to the state even though it was potentially mandated by Pennsylvania law because it would be impracticable); *Highland Homes Ltd. v. State*, 448 S.W.3d 403, 414 (Tex. Aug. 29, 2014) (holding that Texas law did not require unclaimed class action settlement funds to escheat to the estate).

[12] As one judge in this Circuit has noted, the ease of receiving payment electronically or by card is a benefit to the Class. *Goldstein v. Henkel Corporation et al*., No. 3:22-cv-00164-AWT (D. Conn.) (ECF No. 98)  ("[w]ith respect to 23(e)(2)(C), I was struck by the fact that to submit -- the class members only need to submit a simple form and that they had a variety of options for the way in which they receive the settlement payment. I thought that was a very good feature of how things were structured.")

#### 4. Waiver of Unknown Claims

Mr. Zhen also objects to the Settlement on the grounds that it contains a waiver of unknown claims, including waiver of rights under California Civil Code section 1542. *See* Dkt. 13-1; § 8.3. The Agreement, however, makes it clear that Class Members' potential personal injury claims related to consuming Defendant's contaminated food products are not waived. *See id.* § 8.1 ("The Released Claims exclude claims for bodily injury."). Moreover, as one court recently noted in another case in which Mr. Zhen filed an objection, "California Civil Code § 1542 waivers are commonplace in class action settlements. Such waivers are uncontroversial in the class action context because, like all class settlements, the extent of any release is constrained by the identical factual predicate doctrine." *In re Telescopes Antitrust Litig.*, 2025 U.S. Dist. LEXIS 70066, at *29.[13] Indeed, courts in this Circuit regularly approve class action settlement with similar releases of unknown claims.[14] Regardless, when Class Counsel explained the scope of the waivers to Mr. Zhen during their meet-and-confer, Mr. Zhen agreed to withdraw this objection as well. Sultzer Decl. ¶ 21.

#### 5. Supplemental Objection to the Objection Process

Finally, Mr. Zhen's "Supplemental Objection," which is untimely, complains that the claim notice instructs Class Members that they can object by filing an objection on the ECF system, but

---

[13] *See also In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 243, 260 (D. Del. 2002) (rejecting objection to release of unknown claims and waiver of Cal. Civ. Code § 1542 in class action where plaintiffs released all claims "that relate to the marketing, promotion or sale of Coumadin during the Class Period that were or could have been asserted" because "the release language clearly limits it to the subject matter of this litigation") , *aff'd*, 391 F.3d 516 (3d Cir. 2004); *Varacallo v. Massachusetts Mut. Life Ins. Co.*, 226 F.R.D. 207, 244 (D.N.J. 2005) ("To the extent objectors argue that the Settlement is not fair because the scope of the release is too broad, including claims not pled in the Complaint or unknown to the Class Member, the Court finds these objections without merit. The Court recognizes that in class action settlements, releases may include all claims that arise out of the same course of conduct alleged in the Complaint.").

[14] *See, e.g., Delcid v. TCP Hot Acquisition LLC,* No. 1:21-CV-09569-DLC, 2023 WL 3159598, at *3 (S.D.N.Y. Apr. 28, 2023) (approving release with nearly identical language in consumer class action alleging benzene contamination in deodorant products); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 107 (2d Cir. 2005) ("class action releases may include claims not presented and even those which could not have been presented as long as the released conduct arises out of the identical factual predicate as the settled conduct.") (internal citations omitted).

that non-parties are prevented from filing on ECF in the White Plains Division of the Southern District of New York.  As Mr. Zhen notes, however, the notice also informs Class Members that they can lodge objections by mailing them to the Court, which is exactly what Mr. Zhen did in this case.  Accordingly, Class Members are given ample opportunity to object to the Settlement, just as Mr. Zhen did.  Moreover, to the extent Mr. Zhen complains that mailing his objection to the Court is inadequate because it will not be publicly filed on the docket, that objection is directed at the procedure of the Court clerk rather than the Settlement. Nor is there any specific rule Class Counsel is aware of requiring that objections be placed on the public docket, or that requires class action notice to explain the Court's local rules or ECF procedures.  In any event, Mr. Zhen's objection has been placed on the public docket where it can be reviewed by the Class, so this complaint is moot.

## V.     Conclusion

For the reasons set forth herein, Mr. Zhen's objections should be denied in their entirety and the Settlement Agreement should be granted final approval.

Dated: July 21, 2025                                    Respectfully submitted,

By: */s/ Jason P. Sultzer*
Jason P. Sultzer

**SULTZER & LIPARI, PLLC**
Jason P. Sultzer, Esq.
Jeremy Francis, Esq.
85 Civic Center Plaza, Suite 200
Poughkeepsie, NY 12061
Tel: (845) 483-7100
Fax: (888) 749-7747
sultzerj@thesultzerlawgroup.com
francisj@thesultzerlawgroup.com

11

**REESE LLP**

Michael R. Reese
100 West 93rd Street, 16th Floor
New York, New York 10025
Tel: (212) 643-0500
*mreese@reesellp.com*

**MILBERG COLEMAN BRYSON PHILLIPS
GROSSMAN, PLLC**

Nick Suciu III, Esq.
6905 Telegraph Road, Suite 115
Bloomfield Hills, Michigan 48301
Tel: (313) 303-3472
*nsuciu@milberg.com*

**POULIN WILLEY ANASTAPOULO**

Paul Doolittle
32 Ann St,
Charleston, SC 29403
Telephone: (800) 313-2546
Email: *pauld@akimlawfirm.com*

**LEVIN SEDRIN & BERMAN**

Charles E. Schaffer
510 Walnut Street, Suite 500
Philadelphia, Pa. 19106
Telephone: (215) 592-1500
Email: *cschaffer@lfsblaw.com*

**BURSOR & FISHER, P.A.**

Joshua Arisohn
1330 A venue of the Americas, 32 Floor
New York, NY 10019
Telephone: 646-837-7103
*jarisohn@bursor.com*

**GOLDENBERG SCHNEIDER, L.P.A.**

Jeffrey S. Goldenberg
4445 Lake Forest Drive, Suite 490
Cincinnati, Ohio 45242
Telephone: 513-345-8297
*jgoldenberg*@gs-legal.com

**LEEDS BROWN LAW, P.C.**

Jeffrey K. Brown
One Old Country Road, Suite 347

12

2-ER-0188

Carle Place, NY 11514
Telephone: (516) 873-9550
*jbrown@leedsbrownlaw.com*

*Attorneys for Plaintiffs and the Settlement Class*

13

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **CERTIFICATE OF SERVICE** |
| | **Dept.: Courtroom 4** |
| THIS DOCUMENT RELATES TO: | **Judge: Hon. Edward J. Davila** |
| | **Date: August 14, 2025** |
| All Indirect Purchaser Actions | **Time: 9:00 a.m.** |

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0190**

## CERTIFICATE OF SERVICE

I am employed in San Mateo County where service of the document(s) referred to below occurred. I am over the age of 18 and not a party to the within action. My business address is Cotchett, Pitre, & McCarthy, LLP, San Francisco Airport Center, 840 Malcolm Road, Suite 200, Burlingame CA 94010.  On August 4, 2025, I served or caused to be served a true copy of the following documents in the manner described below:

1.  INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND; and

2.  DECLARATION OF ELIZABETH T. CASTILLO IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR APPEAL BOND AND EXHIBIT 1 ATTACHED THERETO.

**X** **BY ELECTRONIC MAIL**: My e-mail address is ecastillo@cpmlegal.com and service of the above referenced documents occurred on the date shown below by a member of my firm, Cotchett, Pitre, & McCarthy, LLP, at my direction.

**X** **BY U.S. MAIL**:  I am readily familiar with this firm's practice for collection and processing of correspondence for mailing.  Following that practice, at my direction, a member of my firm, Cotchett, Pitre, & McCarthy, LLP, placed a true copy of the aforementioned documents in a sealed envelope, addressed to each addressee, respectively, as specified below.  The envelope was placed in the mail at my business address, with postage thereon fully prepaid, for deposit with the United States Postal Service in the ordinary course of business.

Elman Barnes

401 21st Street, Suite R

Sacramento, CA 95811

Email(s): elmanmethod@theachievementcoaches.com;

elmanmethod@phreakmail.com

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0191**

I declare under the penalty of perjury, under the laws of the United States, that the foregoing is true and correct. Executed on this 4th day, August 2025 in Burlingame, California.

/s/ *Elizabeth T. Castillo*
Elizabeth T. Castillo

**CERTIFICATE OF SERVICE; Case No. 5:20-cv-03639-EJD**

**2-ER-0192**

Elman Barnes
1401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST LITIGATION

No. 5:20-cv-03639-EJD

This Document Relates to:
Indirect Purchaser Actions

## OBJECTOR OPPOSITION TO MOTION FOR BOND AND INVESTIGATIVE CONSUMER REPORT DISCLOSURES

Objector respectfully requests that the motion for bond be denied or limited to the $250 that Mr. Zhen offered and an additional $50 from Barnes, the maximum value of Objector's claim, for a total of $300 which is double the expenses. Class Counsel said the address is not valid, but its worked as shown even tho they left off the 1. The bigger problem is Class Counsel keeps sending about four copies of each packet of materials, spending a lot of the money belonging to the class. On some they add the R and others they don't, but its the same papers inside. Objector would understand if it was returned to Class Counsel and they remailed, a lot of clutter to deal with.

2-ER-0193



Objector reviewed the Privacy Policy on the telescopesettlement.com website.  It implies that privacy laws and rules are complied with.  "Verita Global, LLC (together with its affiliates, KCC Class Action Services, LLC, Kurtzman Carson Consultants, LLC, Gilardi & Co., LLC, RicePoint Administration Inc., and Verita Global, Ltd., "Verita") wants to make your online and mobile experience satisfying and safe. <u>Our aim is to safeguard the privacy and security of your personal information</u> while providing a personalized service that meets your individual preferences and needs<u>. At all times we comply with applicable laws and regulations governing the confidentiality and security of information we receive and maintain.</u>"

The above obviously is not true as the fact Objector made a claim and objections was turned over to the Angeion investigative consumer reporting agency.  Objector cannot address the information from Angeion investigative consumer reporting agency because the investigative consumer report containing the data discussed was not attached. Pursuant to the Fair Credit Reporting Act and state laws, Objector disputes the information contained in the Angeion 2.0  report, requests a list of the courts where claims data was extracted from, and requests verification.  Objector requests a copy of the relevant Angeion 2.0 report in full, identifying all cases that had data reported, so that an explanation can be submitted.

Objector objects to the claims administrator in this case disclosing his claim and case information to Angeion.  Objector objects to Angeion not providing a dispute process for the consumer report, disclosures that court claims in one case are used in other cases, resulting in the denial of claims without notice or an opportunity to be heard.  There exists no disclosure that Class Counsel or Verita would release information to  Angeion and vice versa.

This Angeion declaration leads to a lot of questions about compliance with privacy laws and consumer reporting laws, compliance with the implied privacy policy on the website.  Perhaps a class action for privacy violations against these administrators is in line based on the shocking revelation that Angeion reports are pulled when an Objector files complaints with the court about the class actions.  While the Court is immune from civil suits due to absolute immunity, it should oversee the privacy violations that are occurring by Verita/Angeion Group in this class action and Class Counsel's involvement in it.  Is Class Counsel selling/giving information to Angeion Group?  How did Angeion Group come into this action to talk about Objector claims in totally different lawsuits?  Is there a data sharing agreement between Verita and Angeion Group?

This Court has a duty to direct Angeion Group to notify the courts that it extracted claims data from so that consumers can be informed about the breach of their claims data and the commercial misuse by Angeion Group. Objector did not read anything that would put a person on notice that filing an objection would result in the Angeion investigative consumer report or the spyware AngionAffirm 2.0 being used in the claims process in this case.

Objector reviewed the settlement procedures in many cases and nothing approved by the courts allowed the gathering, compiling, and usage of information in the AngionAffirm 2.0  system

**2-ER-0195**

that apparently aggregates class action claims data into an investigative consumer report.  The courts are not aware how claimant data is being sold, used, accessed, and manipulated.

Therefore, the motion should be denied or limited to $300.

Respectfully submitted,

/s/

Elman Barnes

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

IN RE: TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD

LITIGATION

This Document Relates to:

Indirect Purchaser Actions

**OBJECTIONS TO MOTION TO REQUIRE APPEAL BOND**

I incorporate the legal arguments of Objector Zhen.    I too was subjected to improper subpoenas not authorized and falsely issued using this case as the basis even though it was terminated.  The subpoena is attached as Ex 1.  I served objections to the subpoena at Ex. 2.  Class Counsel has not petitioned the Southern District of West Virginia to overrule my objections.

The subpoenas and this motion are quite stressful.  My goal is to continue my appeal in the federal appeals court and address my issue

about the change to the claim form coming too late and the failure to target business, universities, and schools with advertising about the class action.

I filed objections as an entrepreneur involved with businesses. I cited National Woodlands Preservation Inc. as a purchaser that had no way to file a claim because the form did not have space for a business. Class Counsel modified the form, but did so near the end of the claims period and did not correct their website so many businesses missed the deadline. Hence I joined the appeal.

Class Counsel's motion contains a bunch of hyperbole that my objections were somehow fraudulent, but what is fraudulent about the legal position is not identified.

As shown by the attached Ex 3, National Woodlands Preservation Inc. is a West Virginia corporation formed in 2019. This lawsuit was not filed until 2020. The public record shows I am an officer of the company.

At no time did I represent that the address used for correspondence was a physical home address. The company having a registered agent is proper in West Virginia for receipt of documents. See WV Code §31D-5-501.

NWP is in good standing and exists.

I also read the declaration of Ryan Hallman from the company Angeion. I cannot find any reference in this case to Angeion and their role is not clear. I did not file a claim in this case because by the time the form was modified to allow business-based claims, the time expired for me to do so based on my purchases for various businesses.

I did not authorize this Angeion company to access claims I made in other lawsuits and then release information about my claims to Class Counsel in this case. I do not believe the courts with jurisdiction over those cases allow this type of behavior. This Court should direct Class Counsel to reveal what other cases they accessed records from and for the judges in those cases to be made aware of the privacy violations by this Angeion.

I would like the name of the cases so I can file a motion with the judges to stop them from selling or giving my private claims information to CPM from cases where CPM did not act as the attorney. I am concerned that this Angeion company and Class Counsel here exhibits a complete disregard for the privacy laws of the 50 states and the policies of the individual courts that had jurisdiction over the claims that they discuss.

**2-ER-0199**

I cannot respond to the assertion that claims in other cases were "denied due to multiple indicators suggesting potential fraudulent activity" because it appears to be technical jargon meant to sound plausible without providing a single fact or piece of support information. I never received a claim denial from Angeion. I believe that Angeion denies claims in class actions without providing any actual denial to the claimant. If I received a denial in another case, I would either correct the claim or file an objection.

Respectfully submitted,

/s/ Karla Luna

K. Luna
c/o   National Woodlands Preservation Inc.
110 Main Street
Beckley WV  25801

**2-ER-0200**

LAW OFFICES

SAN FRANCISCO
LOS ANGELES

**COTCHETT, PITRE & McCARTHY, LLP**
SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577

SEATTLE
NEW YORK

July 1, 2025

## PRIVILEGED ATTORNEY-CLIENT COMMUNICATION

**VIA ELECTRONIC MAIL:**

Karla Luna, Chief Executive Officer
National Woodlands Preservation, Inc.
k.luna@wvwoodlands.com

> RE: *In re Telescopes Antitrust Litigation* (*Indirect Purchaser Actions*),
> Case No. 20-cv-03639 (N.D. Cal.)

**Dear Ms. Luna:**

Enclosed please find a Subpoena to Testify at a Deposition in a Civil Action and the attached Schedule A seeking your deposition and documents in the above-referenced matter on July 31, 2025, 9:00 AM ET at the offices of Bailey & Glasser, LLP, 209 Capitol St., Charleston, WV 25301. If you are represented by an attorney, please forward this letter and its enclosures to them.

Please note that, given case deadlines, we have limited flexibility with regard to the date of your deposition, but are willing to discuss scheduling with you. Regarding the requested documents, if possible, we would like to receive those in advance of the deposition, so that we may get through your deposition more quickly.

We are in the process of attempting to serve you formally with the enclosed subpoena. In an effort to streamline the process, please advise us as soon as possible if you will accept service of this subpoena via this letter request. Accepting service electronically will avoid the need for personal service and ensure the deposition proceeds efficiently. If you accept service, we will discontinue efforts to personally serve you and will forward the appropriate witness fees via overnight courier.

Should you have any questions about this process, please respond to this letter. I look forward to hearing from you regarding the service of the subpoena.

Sincerely,

ADAM J. ZAPALA

**2-ER-0201**

**COTCHETT, PITRE & McCARTHY, LLP**     *Letter to National Woodlands Preservation, Inc.*

*July 1, 2025*

cc:     Elizabeth T. Castillo                          *Page 2*
        Christian S. Ruano

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
Northern District of California

| | | |
|---|---|---|
| In Re Telescopes Antitrust Litigation | ) | |
| | ) | |
| | ) | Civil Action No.   5:20-cv-03639-EJD |
| This Document Relates To: All Indirect Purchaser Actions | ) | |
| | ) | |
| | ) | |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:         Karla Luna, Chief Executive Officer, c/o National Woodlands Preservation, Inc.,
110 James Street, Hinton, WV 25951

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: Bailey & Glasser, LLP | Date and Time: |
|---|---|
| 209 Capitol St., Charleston WV 25301 | July 31, 2025 9:00 AM ET |

The deposition will be recorded by this method: _____

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Schedule A.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    07/01/2025

         *CLERK OF COURT*
                                          OR
                                                    /s/ Adam J. Zapala
_____           _____
*Signature of Clerk or Deputy Clerk*              *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)*
Indirect Purchaser Plaintiffs _____, who issues or requests this subpoena, are:

Adam J. Zapala, Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Rd., Burlingame, CA 94010, 650-697-6000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**2-ER-0203**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  5:20-cv-03639-EJD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $    0.00    .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

2-ER-0204

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

SCHEDULE A

**DEFINITIONS**

1. The term "ACTION" means the above-captioned litigation.

2. The terms "COMMUNICATION" and "COMMUNICATIONS" include but are not limited to emails, texts, faxes, letters, memos, and notes, and also refer to any DOCUMENT that comprises, embodies, reflects, or refers to any transmission of information from one person to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile, electronic mail, instant messaging, text messaging, or development notes. Each request that encompasses information relating in any way to COMMUNICATIONS to, from, or within a business or corporate entity is hereby designated to mean, and should be construed to include, all COMMUNICATIONS by and between representatives, employees, agents, or servants of the business or corporate entity. Any request for "COMMUNICATIONS" includes all DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS.

3. As used herein, the term "DEFENDANTS" means and refers to Synta Technology Corp. of Taiwan (a/k/a Synta Technology Corp. and Good Advance Industries Ltd.), Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corp., Celestron Acquisition, LLC, Olivon USA LLC, Ningbo Sunny Electronic Co. Ltd., Sunny Optical Technology Co., Ltd., Meade Instruments Corp., and Sunny Optics Inc. TELESCOPES manufactured by DEFENDANTS are branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell.

4. The term "DOCUMENT" or "DOCUMENTS" means and includes writings in the broadest sense, and includes all "writings" as defined in Federal Rule of Civil Procedure 34, including, but not limited to, all written printed, typed, recorded, or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft version) in the actual constructive possession, custody, care or control of the responding party, and including, without limitation, all writings, communications, correspondence, e-mails, text

LAW OFFICES
TCHETT, PITRE &
cCARTHY, LLP

| SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION | 1 |

**2-ER-0206**

messages, letters, telegrams, notes, mailgrams, agenda, memoranda, inter-office communications, agreements, contracts, summaries, reports, interviews, forecasts, projects, analyses, working papers, charts, requests for authorization, expense account reports, charge or credit account vouchers, calendars, appointment books, diaries, brochures, pamphlets, circulars, press releases, drawings, graphs, photographs, sound reproduction tapes, data compilations from which information can be obtained or can be translated through detection devices into reasonably usable form, computer inputs or outputs, or any other tangible thing. The term "DOCUMENT" or "DOCUMENTS" shall include not only originals but also copies or reproductions of all such written, printed, typed, recorded, or graphic matter upon which notations in writing, print or otherwise have been made which do not appear in the originals.

In addition to the foregoing items, any comment, notation, strike-out, interlineation, or other alterations appearing on any DOCUMENT or any copy of any DOCUMENT, and not a part of the original text of such DOCUMENT, is considered a separate DOCUMENT, as is any draft or preliminary form of any DOCUMENT.

DOCUMENT(S) shall not be limited in any way as to the form of storage (such as paper, microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, or other electronic-storage device).

5.    "INDIRECT PURCHASER STATES" means and refers to Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

6.    The term "OBJECTION" shall mean any legal filing opposing. the Order Granting Motion for Final Approval; Granting Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 419).

7.    The term "PERSON" means and refers to any natural person, or any company,

LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

2

corporation, partnership, union, joint venture, sole proprietorship, association, government agency, organization or any other similar type of group through which business is conducted, or any officer, director, employee or agent thereof.

8.    The terms "RELATE(S) TO," "RELATED TO" and "RELATING TO" mean to refer to, concern, summarize, reflect, constitute, comprise, state, contain, explain, embody, pertain to, identify, be involved with, mention, discuss, consist of, show, analyze, comment upon, evidence, support, respond to, deal with, describe, refute, contradict, or in any way be pertinent to the subject in question, directly or indirectly, in whole or in part.

9.    The term "SETTLEMENT" means and refers to the Settlement Agreement made and entered into on August 31, 2024 by and among the Synta Defendants ("SYNTA DEFENDANTS") and Indirect Purchaser Plaintiffs in the above-captioned action ("ACTION").

10.    The term "SETTLEMENT CLASS" means and refers to all persons and entities in the INDIRECT PURCHASER STATES (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

11.    The term "TELESCOPES" refers to optical instruments that magnify and enhance the view of faraway objects, as further described in paragraphs 96 through 99 of the Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Complaint, and does not include other optical instruments not marketed as telescopes, such as binoculars, siting scopes, microscopes, etc.

12.    The term "YOU" and/or "YOUR" means responding party National Woodlands Preservation Inc. and anyone else acting, or who has so acted, on its behalf including, but not limited to, any of its agents, representatives, principals, and each and every person acting on

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION                    3

its behalf or at its direction or on whose behalf they were acting with respect to the matters referred to herein.

**INSTRUCTIONS**

1.    All documents are to be produced whether in your possession, custody or control, or the possession, custody or control of your attorneys, investigators, agents or representatives.

2.    All documents are to be segregated and referenced to the request to which they respond in accordance with Federal Rule of Civil Procedure 34.

3.    If any of the requested documents cannot be produced in full, then produce them to the extent possible, and specify the reasons for your inability to produce the remainder, stating whatever information, knowledge or belief you have concerning the unproduced portion.

4.    In the event that any document called for by these requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that document is to be identified by stating (a) any addressor and addressee; (b) any indicated or blind copy; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown or explained; (e) the document's present custodian; and (f) the nature of the privilege or immunity asserted.

5.    If any responsive document was at one time in your possession, custody or control but has been disposed of, lost, discarded, destroyed, or is no longer in your possession, custody or control for any other reason, then do the following with respect to each and every such document: (a) describe the nature of the document; (b) state the date of the document; (c) identify the persons who sent and received the original and copies of the document, specifying its author, addressee, and all persons to whom copies were furnished, or who otherwise saw the document; (d) state in as much detail as possible the subject matter and contents of the document; (e) state the last known location of the disposed document and the last known location of any alternative copies of the lost, discarded or destroyed document; (f) state the identity and location of other documents from which information contained in the discarded or otherwise disposed of document may be obtained; (g) state the date or approximate time of the disposition, loss, destruction, or discarding; (h) state the

LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION                                                                4

manner and date of the disposition of the document; (i) state the reason for the disposition, loss, destruction or discarding; (j) state the identity of all persons who are likely to be responsible therefor; and (k) describe in detail the efforts you made to locate the document.

6.     Reference to the singular in any of these Requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

7.     Unless otherwise stated, the relevant time period for these Requests is from January 1, 2005 through the date of the written responses to the Requests.

**DOCUMENTS REQUESTED**

**REQUEST NO. 1:**

DOCUMENTS sufficient to show YOUR purchase of one or more TELESCOPES from a distributor or an entity other than DEFENDANTS.

**REQUEST NO. 2:**

DOCUMENTS sufficient to establish YOUR inclusion in the SETTLEMENT CLASS, such as principal place of business in an INDIRECT PURCHASER STATE at time of purchase and/or INDIRECT PURCHASER STATE in which purchase was made.

**REQUEST NO. 3:**

DOCUMENTS RELATING TO YOUR corporate structure, including, but not limited to, articles of incorporation, articles of organization, number of employees, organizational charts, bylaws, shareholder agreements, board meeting minutes, and committee charters, demonstrating that YOU are a bona fide company.

**REQUEST NO. 4:**

DOCUMENTS sufficient to show the nature of YOUR business, why it purchased TELESCOPES, and where it purchased TELESCOPES.

**REQUEST NO. 5:**

All DOCUMENTS and COMMUNICATIONS between YOU and any PERSON RELATING TO this ACTION, SETTLEMENT, or the administration of the SETTLEMENT.

**REQUEST NO. 6:**



AW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

5

All DOCUMENTS and COMMUNICATIONS between YOU and any of the other objectors in this action: Pat Zhen, Elman Barnes, and Mike Sussman.

**REQUEST NO. 7:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR OBJECTION to the SETTLEMENT or the basis or grounds for YOUR OBJECTION to the SETTLEMENT.

**REQUEST NO. 8:**

All DOCUMENTS RELATING TO any agreement or understanding between YOU and any PERSON involving this ACTION.

**REQUEST NO. 9:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any compensation, reimbursement, or consideration YOU have received or expect to receive in connection with YOUR OBJECTION or involvement in this ACTION.

**REQUEST NO. 10:**

All DOCUMENTS RELATING TO any OBJECTION YOU have submitted in any class action in the past ten (10) years, including the name and case number of each class action.

**REQUEST NO. 11:**

All DOCUMENTS sufficient to show any PERSON who represented YOU in connection with any OBJECTION YOU submitted in any class action in the past ten (10) years.

**REQUEST NO. 12:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO YOUR OBJECTIONS in class action settlements over the past ten (10) years.

**REQUEST NO. 13:**

All DOCUMENTS RELATING TO changes made to any class action or class action settlements as a result of any OBJECTION made within the last ten (10) years by YOU, or by any PERSON involved or associated with representing YOU in connection with the OBJECTION.



LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA


In re:
TELESCOPES ANTITRUST LITIGATION
Subpoena dated July 1, 2025, issued by
Adam J. Zapala to Karla Luna.


OBJECTIONS TO SUBPOENA

1.  Subpoena in violation of Rule 45 as the court that the matter is pending in is the Ninth Circuit, not the Northern District of California.  The Northern District of California lacks jurisdiction to render a subpoena because the case in question is not pending and is on appeal, divesting said court of jurisdiction.  No jurisdiction for subpoena and no action pending.
2. In limited and narrow circumstances, with leave, a subpoena pending appeal can be issued.  Leave was not granted by any court.
3. In violation of Rule 45, the subpoena, addressed to a specific individual, was served upon a corporation.  The subpoena was not addressed to the corporation, but to an individual, and not served on said individual.
4. In violation of Rule 45, the subpoena does not state the method of recording.
5. In violation of Rule 45, the subpoena was not served on the parties and parties to the appeal as is required prior to service when documents are requested.
6. In violation of Rule 26 and 45, the subpoena is unduly burdensome as the underlying litigation involves a potential claim that will result in payment of an estimated $20 to $40.
7. In violation of Rule 26 and 45, the subpoena was issued for an improper purpose and constitutes an abuse of process as its sole reason for issuance was to harass the deponent into submission so the appeal is dropped.
8. The subpoena was improperly issued for appellate issues which is not a proper topic.

**2-ER-0212**

9. The subpoena improperly seeks communications about a pending legal proceeding, an appeal, which is not a proper scope of inquiry.

10. The subpoena requests documents that are available to the public and, as such, the cost of compliance would exceed the costs for the subpoena issuer to simply purchase the documents.

Dated this 18th day of July, 2025.


/s/ K.Luna



# State of West Virginia

## Certificate

### *I, Kris Warner, Secretary of State of the State of West Virginia, hereby certify that*

**NATIONAL WOODLANDS PRESERVATION INC.**

was incorporated under the laws of West Virginia and a Certificate of Incorporation was issued by the West Virginia Secretary of State's Office on August 16, 2019.

I further certify that the corporation has not been revoked or administratively dissolved by the State of West Virginia nor has the West Virginia Secretary of State issued a Certificate of Dissolution to the corporation.

Accordingly, I hereby issue this Certificate of Existence

## CERTIFICATE OF EXISTENCE

**Validation ID:3WV0W_JCE5W**



*Given under my hand and the Great Seal of the State of West Virginia on this day of*

*July 27, 2025*

_____

*Secretary of State*

Notice: A certificate issued electronically from the West Virginia Secretary of State's Web site is fully and immediately valid and effective. However, as an option, the issuance and validity of a certificate obtained electronically may be established by visiting the Certificate Validation Page of the Secretary of State's Web site, https://apps.wv.gov/sos/businessentitysearch/validate.aspx entering the validation ID displayed on the certificate, and following the instructions displayed. Confirming the issuance of a certificate is merely optional and is not necessary to the valid and effective issuance of a certificate.

**2-ER-0214**

 

# Business Entity Details

## Main

| Name: NATIONAL WOODLANDS PRESERVATION INC. | | | Organization Number: 480544 | |
|---|---|---|---|---|
| Type: C | Sec Type: | City: BECKLEY | Class: P | Ch Type: D |
| Eff Date: 8/16/2019 | Fil Date: 8/16/2019 | Term Date: | Term Reason: | AW/Term: |
| CH County: Lewis | Ch State: WV | Bus Purp: 1132 | Ex Acres: | Term Yrs: |
| Auth Shrs: 500 | Cap Stck: 500.0000 | Status: Active | Par Val: 1.0000 | MGMT: |
| In Compliance: Yes | | | | |

## Addresses

| Principal Office Address: | Name: | Addr1: 110 MAIN STREET | Addr2: | City: BECKLEY | State: WV | Zip: 25801 |
|---|---|---|---|---|---|---|
| Notice of Process Address: | Name: REGISTERED AGENTS, INC. | Addr1: 110 MAIN ST | Addr2: | City: BECKLEY | State: WV | Zip: 25801 |
| Mailing Address: | Name: | Addr1: 110 MAIN STREET | Addr2: | City: BECKLEY | State: WV | Zip: 25801 |

## Officers

| Incorporator: | Name: RILEY PARK | Addr1: 110 JAMES ST. | Addr2: | City: HINTON | State: WV | Zip: 25951 |
|---|---|---|---|---|---|---|
| President: | Name: K LUNA | Addr1: 110 JAMES ST. | Addr2: | City: HINTON | State: WV | Zip: 25951 |

## DBAs

| No Records Found. |
|---|

## Names

| No Records Found. |
|---|

2-ER-0215

## Mergers

| No Records Found. |
| --- |

## Subsidiaries

| No Records Found. |
| --- |

## Amendments

| No Records Found. |
| --- |

## Dissolutions

| No Records Found. |
| --- |

## Annual Reports

| Filing For | Date Filed |
| --- | --- |
| 2025 | 7/23/2025 |
| 2024 | 4/19/2024 |
| 2023 | 5/16/2023 |
| 2022 | 10/20/2022 |
| 2021 | 2/13/2021 |
| 2020 | 5/3/2020 |

## With this information, you can...

Purchase Certificate of Existence

If you would like to purchase a Certificate of Existence for this business entity, select the button to the left to add the certificate to your shopping cart. You will be assessed a $10.00 fee for each certificate. Click the Shopping Cart link in the upper right corner to complete your order.

Back To Search Results                                                     Search Again

2-ER-0216

Mike Sussman
23200 Camino del Mar #502
Boca Raton, FL  33433
mike.sussman@pm.me

July 27, 2025

United States District Court
280 South 1st Street, Room 2112
San Jose, CA 95113

In re:  Telescopes Antitrust  5:20-cv-03639 EJD

To the Honorable Judge:

This is my response to all these papers that were sent to me by my attorneys[1] asking for $42,000 for my appeal to protect their costs of $150 actual costs for brief copies.  The Class Action notice did not say anything about an objector having to pay, and it said that these were my attorneys.  A bond would be a financial hardship for me because presently, I am on Social Security Disability[2] and my cash benefit is less than $1,000 per month. I do have this condo, but I would actually have to sell it to post this type of bond. It might be a good idea because the condo makes my expenses high with maintenance costs of over $500 per month, and they just hit us with a special assessment that exceeds my income and could place me into bankruptcy. Electricity is about $90 a month.  I am a hardware engineer, so the income could change if I can find a new employer who will accommodate my being partially disabled as recognized by the State of Florida and the federal Social Security Administration.  I will notify the court promptly if this changes.  I am not sure why Class Counsel wrote that I had sufficient assets to post the $42,000 bond without asking me first, but whatever information they had to make that statement violates California Disciplinary Rule 1.8.2 and Florida Rules of Professional Conduct 4-1.6.  I don't think that they understand that by telling Class Action claimants that they are our attorneys, and we believe that and provide information in confidence, and then they use it against their clients.  They should change the notice to claimants to make their conflicted attorney relationship clear as there seem to be some major ethical problems as I would never expect someone who said they were my lawyer to release personal information.  An appeal bond will be burdensome as the present telescope claim is only worth about $20.

---

[1] The Class Action Notice advised me, FAQ Question 16, "Do I have a lawyer in this case?  Yes. The Court appointed Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey L.L.P. to represent you and other settlement class members."

[2] I am trying to find employment that provides health insurance so I can be removed from disability.  While I have several business ventures as well, none are providing me with any income at this time due to a lack of profitability.

2-ER-0217

July 27, 2025
Mike Sussman's Objections to Appeal Bond
Page 2

It's true that I accidentally put #503 on my address on my pleadings when it was #502. This does not make my purchase of a telescope (actually two) in Florida any less valid. It is not an indication of fraud, but an indication of not being able to type well. When I cut and pasted into other documents, I didn't notice. When my attorneys decided to harass me with the illegal subpoena (I've attached it as an Exhibit), attempted to be served without permission from this court, they bothered my neighbor instead of me. My neighbor declined to accept the subpoena[3] on my behalf and my condo administration chose not to violate my privacy and release information to some guy claiming to be an investigator working for my own attorneys. Obviously, my condo administration's privacy policies are more adept than my attorneys in this case. As far as the subpoena, it asked for all kinds of documents about other cases, attorneys who helped me in those cases, and my communications with the other appellants.

I was very pleased that the Chief Technology Officer Ryan Hallman of Angeion Group did not release information about my claims in other class actions without permission from those courts like they did to the other objectors. It was very enlightening to see that they have created a master database of claimants in class actions and the way they access and use that information to their detriment. The Class Counsel never warn their clients, the claimants, that claims information is data mined for other class actions in the future and that filing a claim in one case could affect the outcome of a claim in another. This should be disclosed to claimants by their attorneys, and Class Counsel is clearly complicit in this creation of an investigative consumer report database, apparently even more serious when someone objects because Mr. Hallman admits he conducts a "more extensive investigation" of persons who tell the court they do not like the settlement. The thing I am perplexed about is what they have to do with this case. Did the claims administrator in this case merge with them? I cannot find anything in the documents where this Court gave permission for information about my claim to be given to Angeion Group for their database and I believe the privacy policies governing this class action need to be updated to tell claimants exactly what is done with their personal information gathered during the claims process.

I do not believe that my appeal is frivolous. We know one non-frivolous issue that will definitely result in reversal: This Court entered an Amended Judgment while the case was on appeal. That can't happen. Class Counsel needed to obtain a limited remand from the court of appeals and, instead, usurped their authority (the same way they issued appeal-based subpoenas without permission from anyone). I believe the Ninth Circuit will adopt the reasoning of the Second Circuit in *United States v. Jacques*, 6 F.4th 337

_____

[3] Had my attorneys served me, I would have petitioned the Southern District of Florida to quash the appeal. Since nothing was pending in this Court and as leave to serve the subpoena was not authorized, I would have appealed any enforcement to the Eleventh Circuit Court of Appeals. I am perplexed how my attorneys think the appeal will move along faster by doing all this stuff to make me drop the case. I am not going to drop it.

July 27, 2025
Mike Sussman's Objections to Appeal Bond
Page 3

(2nd Cir. 2021).  The Second Circuit explained that not even a clerical error can be corrected by a district court while the case is on appeal and cited *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 584 (1982).  Perhaps Class Counsel can tell us how, considering that, there will not be a reversal.  As to the other issues, the Court of Appeals will review them for abuse of discretion.  It is hard for a district court to analyze whether the appeals court will find that discretion was abused; regardless, it does not rise to the level of frivolity or bad faith.

Therefore, premises considered above, there is no basis for an appeal bond except to punish and further intimidate the people who objected to this settlement.  None of the elements are present.  Sussman cannot afford to pay a bond, the appeal is not frivolous and will definitely result in reversal, Class Counsel acted in bad faith harassing the objectors, and the costs will be $150 not $42,000.

Thank you for your time and help in making class actions great again.

I declare under the penalty for perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge, information and belief (28 U.S.C. 1746).

Very truly yours,

Mike Sussman

LAW OFFICES

SAN FRANCISCO
LOS ANGELES

**COTCHETT, PITRE & McCARTHY, LLP**
SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CA  94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577

SEATTLE
NEW YORK

June 26, 2025

## PRIVILEGED ATTORNEY-CLIENT COMMUNICATION

<u>VIA ELECTRONIC MAIL:</u>

Mike Sussman
mike.sussman@pm.me

> RE: *In re Telescopes Antitrust Litigation (Indirect Purchaser Actions)*,
> Case No. 20-cv-03639 (N.D. Cal.)

**Dear Mr. Sussman:**

Enclosed please find a Subpoena to Testify at a Deposition in a Civil Action and the attached Schedule A seeking your deposition and documents in the above-referenced matter on July 28, 2025, 9:00 AM ET at the offices of Weiss Serota Helfman Cole + Bierman P.L., 2255 Glades Road, Suite 200E, Boca Raton, FL 33431. If you are represented by an attorney, please forward this letter and its enclosures to them.

Please note that, given case deadlines, we have limited flexibility with regard to the date of your deposition, but are willing to discuss scheduling with you. Regarding the requested documents, if possible, we would like to receive those in advance of the deposition, so that we may get through your deposition more quickly.

We are in the process of attempting to serve you formally with the enclosed subpoena. In an effort to streamline the process, please advise us as soon as possible if you will accept service of this subpoena via this letter request. Accepting service electronically will avoid the need for personal service and ensure the deposition proceeds efficiently. If you accept service, we will discontinue efforts to personally serve you and will forward the appropriate witness fees via overnight courier.

Should you have any questions about this process, please respond to this letter. I look forward to hearing from you regarding the service of the subpoena.

Sincerely,

ADAM J. ZAPALA

**COTCHETT, PITRE & McCARTHY, LLP**

*Letter to Mike Sussman*
*June 26 2025*
*Page 2*

cc:    Elizabeth T. Castillo
       Christian S. Ruano

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
## for the
### Northern District of California

| | |
|---|---|
| In Re Telescopes Antitrust Litigation | ) |
| *Plaintiff* | ) |
| v. | )    Civil Action No.    5:20-cv-03639-EJD |
| This Document Relates To: All Indirect Purchaser Actions | ) |
| *Defendant* | ) |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                                     Mike Sussman
                    23200 Camino del Mar #503, Boca Raton, FL 33433
                    *(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:   Weiss Serota Helfman Cole + Bierman P.L., 2255 Glades Road, Suite 200E, Boca Raton, FL 33431 | Date and Time:    July 28, 2025 9:00 AM ET |
|---|---|

The deposition will be recorded by this method: _____

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule A.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    06/26/2025

            *CLERK OF COURT*
                                                    OR

                                                            /s/ Adam J. Zapala
_____        _____
    *Signature of Clerk or Deputy Clerk*                *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Indirect Purchaser Plaintiffs _____, who issues or requests this subpoena, are:

Adam J. Zapala, Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Rd., Burlingame, CA 94010, 650-697-6000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**2-ER-0222**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   5:20-cv-03639-EJD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

2-ER-0223

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

### Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
  **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
  **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
    **(i)** is a party or a party's officer; or
    **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
  **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
  **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
  **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
  **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
    **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
    **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

  **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

    **(i)** fails to allow a reasonable time to comply;
    **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
    **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
    **(iv)** subjects a person to undue burden.
  **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

    **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
    **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
  **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
    **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
    **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
  **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
  **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
  **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
  **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
    **(i)** expressly make the claim; and
    **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**2-ER-0224**

SCHEDULE A

**DEFINITIONS**

1.    The term "ACTION" means the above-captioned litigation.

2.    The terms "COMMUNICATION" and "COMMUNICATIONS" include but are not limited to emails, texts, faxes, letters, memos, and notes, and also refer to any DOCUMENT that comprises, embodies, reflects, or refers to any transmission of information from one person to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile, electronic mail, instant messaging, text messaging, or development notes. Each request that encompasses information relating in any way to COMMUNICATIONS to, from, or within a business or corporate entity is hereby designated to mean, and should be construed to include, all COMMUNICATIONS by and between representatives, employees, agents, or servants of the business or corporate entity. Any request for "COMMUNICATIONS" includes all DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS.

3.    As used herein, the term "DEFENDANTS" means and refers to Synta Technology Corp. of Taiwan (a/k/a Synta Technology Corp. and Good Advance Industries Ltd.), Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corp., Celestron Acquisition, LLC, Olivon USA LLC, Ningbo Sunny Electronic Co. Ltd., Sunny Optical Technology Co., Ltd., Meade Instruments Corp., and Sunny Optics Inc. TELESCOPES manufactured by DEFENDANTS are branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell.

4.    The term "DOCUMENT" or "DOCUMENTS" means and includes writings in the broadest sense, and includes all "writings" as defined in Federal Rule of Civil Procedure 34, including, but not limited to, all written printed, typed, recorded, or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft version) in the actual constructive possession, custody, care or control of the responding party, and including, without limitation, all writings, communications, correspondence, e-mails, text

LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

1

messages, letters, telegrams, notes, mailgrams, agenda, memoranda, inter-office communications, agreements, contracts, summaries, reports, interviews, forecasts, projects, analyses, working papers, charts, requests for authorization, expense account reports, charge or credit account vouchers, calendars, appointment books, diaries, brochures, pamphlets, circulars, press releases, drawings, graphs, photographs, sound reproduction tapes, data compilations from which information can be obtained or can be translated through detection devices into reasonably usable form, computer inputs or outputs, or any other tangible thing. The term "DOCUMENT" or "DOCUMENTS" shall include not only originals but also copies or reproductions of all such written, printed, typed, recorded, or graphic matter upon which notations in writing, print or otherwise have been made which do not appear in the originals.

In addition to the foregoing items, any comment, notation, strike-out, interlineation, or other alterations appearing on any DOCUMENT or any copy of any DOCUMENT, and not a part of the original text of such DOCUMENT, is considered a separate DOCUMENT, as is any draft or preliminary form of any DOCUMENT.

DOCUMENT(S) shall not be limited in any way as to the form of storage (such as paper, microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, or other electronic-storage device).

5.    "INDIRECT PURCHASER STATES" means and refers to Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

6.    The term "OBJECTION" shall mean any legal filing opposing. the Order Granting Motion for Final Approval; Granting Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 419).

7.    The term "PERSON" means and refers to any natural person, or any company,

LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

2

corporation, partnership, union, joint venture, sole proprietorship, association, government agency, organization or any other similar type of group through which business is conducted, or any officer, director, employee or agent thereof.

8.    The terms "RELATE(S) TO," "RELATED TO" and "RELATING TO" mean to refer to, concern, summarize, reflect, constitute, comprise, state, contain, explain, embody, pertain to, identify, be involved with, mention, discuss, consist of, show, analyze, comment upon, evidence, support, respond to, deal with, describe, refute, contradict, or in any way be pertinent to the subject in question, directly or indirectly, in whole or in part.

9.    The term "SETTLEMENT" means and refers to the Settlement Agreement made and entered into on August 31, 2024 by and among the Synta Defendants ("SYNTA DEFENDANTS") and Indirect Purchaser Plaintiffs in the above-captioned action ("ACTION").

10.    The term "SETTLEMENT CLASS" means and refers to all persons and entities in the INDIRECT PURCHASER STATES (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

11.    The term "TELESCOPES" refers to optical instruments that magnify and enhance the view of faraway objects, as further described in paragraphs 96 through 99 of the Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Complaint, and does not include other optical instruments not marketed as telescopes, such as binoculars, siting scopes, microscopes, etc.

12.    The term "YOU" and/or "YOUR" means responding party Elman Barnes and anyone else acting, or who has so acted, on his behalf including, but not limited to, any of his

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

3

agents, representatives, principals, and each and every person acting on his behalf or at his direction or on whose behalf they were acting with respect to the matters referred to herein.

**INSTRUCTIONS**

1.      All documents are to be produced whether in your possession, custody or control, or the possession, custody or control of your attorneys, investigators, agents or representatives.

2.      All documents are to be segregated and referenced to the request to which they respond in accordance with Federal Rule of Civil Procedure 34.

3.      If any of the requested documents cannot be produced in full, then produce them to the extent possible, and specify the reasons for your inability to produce the remainder, stating whatever information, knowledge or belief you have concerning the unproduced portion.

4.      In the event that any document called for by these requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that document is to be identified by stating (a) any addressor and addressee; (b) any indicated or blind copy; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown or explained; (e) the document's present custodian; and (f) the nature of the privilege or immunity asserted.

5.      If any responsive document was at one time in your possession, custody or control but has been disposed of, lost, discarded, destroyed, or is no longer in your possession, custody or control for any other reason, then do the following with respect to each and every such document: (a) describe the nature of the document; (b) state the date of the document; (c) identify the persons who sent and received the original and copies of the document, specifying its author, addressee, and all persons to whom copies were furnished, or who otherwise saw the document; (d) state in as much detail as possible the subject matter and contents of the document; (e) state the last known location of the disposed document and the last known location of any alternative copies of the lost, discarded or destroyed document; (f) state the identity and location of other documents from which information contained in the discarded or otherwise disposed of document may be obtained; (g) state the date or approximate time of the disposition, loss, destruction, or discarding; (h) state the

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION                                                                                        4

manner and date of the disposition of the document; (i) state the reason for the disposition, loss, destruction or discarding; (j) state the identity of all persons who are likely to be responsible therefor; and (k) describe in detail the efforts you made to locate the document.

6.    Reference to the singular in any of these Requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

7.    Unless otherwise stated, the relevant time period for these Requests is from January 1, 2005 through the date of the written responses to the Requests.

**DOCUMENTS REQUESTED**

**REQUEST NO. 1:**

DOCUMENTS sufficient to show YOUR purchase of one or more TELESCOPES from a distributor or an entity other than DEFENDANTS.

**REQUEST NO. 2:**

DOCUMENTS sufficient to establish YOUR inclusion in the SETTLEMENT CLASS, such as YOUR INDIRECT PURCHASER STATE residence at time of purchase and/or INDIRECT PURCHASER STATE in which purchase was made.

**REQUEST NO. 3:**

DOCUMENTS sufficient to verify YOUR identity, including but not limited to, government-issued identification (*e.g.*, passport, driver's license, birth certificate, etc.).

**REQUEST NO. 4:**

All DOCUMENTS and COMMUNICATIONS between YOU and any PERSON RELATING TO this ACTION, SETTLEMENT, or the administration of the SETTLEMENT.

**REQUEST NO. 5:**

All DOCUMENTS and COMMUNICATIONS between YOU and any of the other objectors in this action: Pat Zhen, Karla Luna c/o National Woodlands, and Elman Barnes.

**REQUEST NO. 6:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR OBJECTION to the SETTLEMENT or the basis or grounds for YOUR OBJECTION to the SETTLEMENT.



AW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

5

**REQUEST NO. 7:**

All DOCUMENTS RELATING TO any agreement or understanding between YOU and any PERSON involving this ACTION.

**REQUEST NO. 8:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any compensation, reimbursement, or consideration YOU have received or expect to receive in connection with YOUR OBJECTION or involvement in this ACTION.

**REQUEST NO. 9:**

All DOCUMENTS RELATING TO any OBJECTION YOU have submitted in any class action in the past ten (10) years, including the name and case number of each class action.

**REQUEST NO. 10:**

All DOCUMENTS sufficient to show any PERSON who represented YOU in connection with any OBJECTION YOU submitted in any class action in the past ten (10) years.

**REQUEST NO. 11:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO YOUR OBJECTIONS in class action settlements over the past ten (10) years.

**REQUEST NO. 12:**

All DOCUMENTS RELATING TO changes made to any class action or class action settlements as a result of any OBJECTION made within the last ten (10) years by YOU, or by any PERSON involved or associated with representing YOU in connection with the OBJECTION.



LAW OFFICES
PRITCHETT, PITRE &
McCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

6

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com
787-547-5010

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD
LITIGATION

This Document Relates to:
Indirect Purchaser Actions

## OPPOSITION TO MOTION FOR APPEAL BOND

Objector Pat Zhen ("Zhen") objects to the motion for an appeal bond because, as explained below, it forms a part of a pattern of punishment by Class Counsel, is excessive, and would render Fed. R. App. Proc. 7, as applied, unconstitutional:

### I.   The Background of Class Counsel's Objector Intimidation

Before the Court is one of many distractions that Class Counsel have engaged in to interfere with the briefing before the Ninth Circuit.  If Class Counsel truly wanted an appeal bond, they would have requested it three months ago when the Notice of

**2-ER-0231**

Appeal was filed.  In fact, Zhen offered a $250 appeal bond, s*ee* Ex.

4, which Class Counsel never addressed.

Zhen filed a straightforward objection to the underlying

settlement and a reply to the opposition of Class Counsel.  *See*

Entries 402 and 408.  The settlement involves the dismissal, with

prejudice and on the merits, of a nationwide class action,[1] but the

certified class only consisted of certain repealer states and excluded

repealer territory Puerto Rico.

This Court entered final judgment on April 11, 2025,

terminating its jurisdiction.  ECF 419, 420.   On June 23, 2025, the

district court entered an Amended Judgment.[2]  ECF 426.

On May 5, 2025, Zhen joined a Notice of Appeal.  F.R.Ap.P.

3(b).  ECF 421.  Zhen amended his notice.  ECF 428.

---

[1] To be clear, Class Counsel's settlement only involved repealer
states, but in exchange for that settlement, the nationwide claims
were dismissed on the merits and with prejudice.  They should have
been dismissed without prejudice and included statute of
limitations tolling provisions.

[2] The amended judgment appears *void ab initio.*  As a general
matter, the filing of a notice of appeal "confers jurisdiction  on the
court of appeals and divests the district court of its control over
those aspects of the  case involved in the appeal." *Griggs v.
Provident Consumer Discount Co.,* 459 U.S. 56, 58 (1982). It is not
"tolerable" to have "a district court and a court of appeals . . .
simultaneously analyzing the same judgment," *id.* at 59, *i.e.,* to
have "situations . . . in which district courts and courts of appeals
would both have  . . . the power to modify the same judgment," *id.*
at 59-60.

On May 14, 2025, the Ninth Circuit issued a briefing schedule, setting the opening brief as due July 31, 2025.[3]

Despite knowing that the case was on appeal, on May 28, 2025, Class Counsel Thomas Boardman emailed Zhen requesting to "discuss" the objections—but with unusual and improper requirements. Forgetting that it was not the objectors that wanted the discussion, Class Counsel required the meeting occur by video call and insisted, "Because standing is a requirement to object and appeal, please provide us with proof of both purchase and that you are who you claim to be in advance of our meeting." *See* Exhibit 1.

Zhen immediately replied to Class Counsel Boardman and stated, "The proper way to discuss would be through the Ninth Circuit's mediation program, not the procedure you request/demand. I recommend you tread carefully in implying pro se litigants such as myself are required to join Zoom calls to prove standing or address your concerns. I refer you to California Rule of Attorney Conduct 4.3 (communication with unrepresented persons) and also possibly 4.1. If the matter cannot be resolved through mediation supervised by the Ninth Circuit, your recourse if you believe the appeal involves standing issues is to file a motion to

---

[3] Due to the harassment that chilled communications necessary to effectuate the creation of the brief, Zhen sought and received a streamlined extension.

dismiss with the Ninth Circuit and/or to raise it in the jurisdictional section of your brief. Either way, I would be willing to participate in mediation and/or respond to your motions/arguments." *See* Exhibit 2.

On June 18, 2025, Class Counsel Boardman wrote to Zhen stating why he believed the appeal lacked merit, but he included subtle threats within the email, "In preparation to oppose your appeal, settlement class counsel reserve all rights, including filing a motion to dismiss the appeal with the Ninth Circuit's motions panel and requesting that the district court require all objectors to post an appeal bond, respond to appropriate discovery, including sitting for a deposition, and issue any sanctions that the court may deem appropriate to compensate counsel for their time and effort." *See* Exhibit 3.

Zhen replied and offered a $250 appeal bond. As to the threat of discovery, Zhen noted that he would object to it *if leave* was granted for them to conduct it. *See* Exhibit 4.

On June 25, 2025, Class Counsel Boardman wrote to Zhen to ask about setting up a discussion. *See* Exhibit 5. This time there was no mention of a video call or identification requirement.

However, before Zhen could respond, on June 26, 2025, just one day after requesting a discussion, and without any form of leave to conduct appellate discovery, Class Counsel Adam Zapala issued a subpoena to Zhen for a deposition to take place on July 28, 2025, in Puerto Rico – just three days before the appellate brief was due. *See* Exhibit 6.

On June 30, 2025, Class Counsel Christian Ruana sent an email to Zhen complaining that they received no answer when they attempted to serve the subpoena at an address in Puerto Rico. Ruana stated that they planned formal service at "an additional address associated with you: 395 Eaton St., Providence, RI 02908. Attached is a subpoena reflecting this Rhode Island address, in addition to a corrected subpoena associated with your Puerto Rico address."  Ruana threatened, "At this time, the information available to us raises serious concerns about the accuracy of the contact information you provided.[4] We hope this is a misunderstanding and would appreciate your prompt clarification. We intend to raise this matter with the Court if we do not hear from you."  *See* Exhibit 7.

---

[4] Zhen neither provided Class Counsel with the address in Puerto Rico nor Rhode Island that they had investigators visit.  Of course, Zhen had no intention of assisting Class Counsel to violate nearly every provision of Rule 45 and Rule 27(b) because to do so would only encourage additional objector intimidation.

Ruana attached a second subpoena to the email that directed Zhen's attendance in Boston, Massachusetts, on July 28, 2025. *See* Exhibit 8.

Based on information, Class Counsel issued many other subpoenas for the purpose of obtaining personal information about the appellants, including Zhen, and falsely listed this action as the one pending despite the fact that this case terminated with final judgment and jurisdiction resting exclusively with the appeals court.

Finally, Class Counsel filed this motion for an appeal bond exceeding $40,000. Class Counsel included in the public PACER filings consumer credit reports they pulled on Zhen that expose the first five digits[5] of his social security number and his date of birth. ECF 429-1, pages 61-65.   Class Counsel filed another report showing the same personal data with the first five digits of the Social Security Number and the month of birth.  ECF 429-5, pages 15-19.  This violates the CM/ECF Administrative Procedures adopted in 2006, which require personal identifiers to "only use the last four digits of Social Security" and "reference dates of birth

---

[5] Most services list the last four digits of a Social Security number and it is easy to obtain. This is why Civil Rule 5.2(a) requires the first five digits to be redacted.   By exposing the first five digits, Class Counsel exposed Zhen to the risk of identity fraud.

using only the year" and Federal Rule of Civil Procedure 5.2(a) and (b).

After Zhen complained, Counsel did file a motion an unapologetic motion to allow the filing of redacted copies; however, by then the reports matriculated throughout the internet on sites such as www.courtlistener.com, www.docketalarm.com, www.vlex.com, and others.

## II.   The Brazen Abuse of Unauthorized Discovery

The subpoenas requested documents containing the content of all of the communications between the Appellant-Objectors, with depositions in multiple states set for late July 2025.  Class Counsel knew the objectors had a joint brief due on July 31, 2025 at the Ninth Circuit.

Clearly meant to interrupt the briefing of the appeal, the harassing subpoenas were facially invalid, violating multiple rules and procedures.

First, subpoenas cannot be issued to objectors without leave of court.  Absent class members are not parties and separate discovery of individual class members not representatives is "ordinarily not permitted." *McPhail v. First Command Fin. Planning, Inc.*, 251 F.R.D. 514, 517 (S.D. Cal.2008). To request an exception

to this rule, the proponents of such discovery *must seek leave of court* and show not only that the discovery is (1) necessary, and (2) seeks information that they do not already know, but also that (3) "the discovery is not designed to take undue advantage of class members or to reduce the size of the class," and (4) that response "would not require the assistance of counsel." *Id. (citing Clark v. Universal Builders*, 501 F.2d 324, 340-42 (7th Cir.1974); *see also In re Worlds of Wonder Securities Litigation*, No. C–87–5491 SC (FSL), 1992 WL 330411, at *2 (N.D. Cal. July 9, 1992)(discovery of absent class members "normally not permitted").

Even if the subpoenas were not prohibited for this reason, the subpoenas violated Fed. Rule of Civ. Proc. 45(a)(2) because the subpoenas purport to have been issued by the United States District Court for the Northern District of California, but said subpoenas relate to the Ninth Circuit appeal and final judgment terminated this Court's proceedings in April 2025.  Therefore, the subpoena does not comply with Rule 45(a)(2)'s requirement that the subpoena "**must** issue from the court where the action is pending," which would be the Ninth Circuit, not this court. At the time, nothing was pending in this Court.

The only exception to this would be Rule 27(b).  Under that rule, no subpoenas can be issued while a case is on appeal without a motion.  Rule 27(b) permits a party to seek leave of the district court to perpetuate testimony "for use in the event of further proceedings *in that court.*" See *Campbell v. Blodgett*, 982 F.2d 1356, 1357 (9th Cir. 1993). Class Counsel neither filed a motion for such leave nor made the required showing that "perpetuating the testimony may prevent a failure or delay of justice." Fed. R. Civ. P. 27(b)(3).

In any event, since this case is currently on appeal, any such discovery has no ongoing evidentiary relevance. In *Golloher v. Todd Christopher International, Inc.*, 2014 WL 12625124 (N.D. Cal. July 7, 2014), as here, Class Counsel sought discovery of objectors after the objectors appealed the district court's final approval of a settlement. The court held that although such discovery might be available during the pendency of settlement approval proceedings, it would not be appropriate during the pendency of an appeal, noting that "[i]t is unclear what relevance any such discovery would have to the issues on appeal, or even if or how it would become part of the appellate record." 2014 WL 12625124, at *2; *citing Khoday v. Symantec Corp.,* 2016 WL 6902710, at *3 (D. Minn. Aug. 4, 2016)

2-ER-0239

("Since the final approval/fairness hearing has passed, so has Plaintiffs' chance to use discovery to probe the merits and motives of the objections").

Not only were the subpoenas unauthorized, Class Counsel violated practically every other section of Rule 45. They violated Rule 45(a)(1)(B) by not listing the method that the deposition would be recorded despite the rule requiring that, "A subpoena commanding attendance at a deposition must state the method for recording the testimony."

Class Counsel violated Fed. Rule of Civ. Proc. 45(a)(4) by demanding the production of documents, but they failed to notify the parties. Rule 45(a)(4) explains that, "if the subpoena commands the production of documents, . . . , then *before* it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party."

Of course the subpoenas generally violated Fed. Rule of Civ. Proc. 45(d)(1) which explains that, "A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." In this class action where objectors would obtain

payment of between $20 and $40, the nationwide subpoenas clearly constituted an "undue burden."

The content of the subpoenas are beyond the pale. Considering Fed. Rule of Civ. Proc. 26(g)(2)(A), (B), and (C), Class Counsel failed to determine, prior to serving the subpoenas and document demands, that they complied with the rules and existing law (as shown above, they did not), that they were not imposed for an improper purpose such as to harass, and that the response would not be unduly burdensome.

Class Counsel demanded identity documents, all communications between the appellants, all communications with anyone about the case, contact with attorneys in other class actions over the past ten years, and all objections filed in any case over the past ten years.

The information requested relates so the appeal issues and was meant to chill communications between the appellants who were required to file a brief with the appellate court.

III.    **Class Counsel Chases Shadows to Find a Conspiracy**

If Zhen reads Class Counsel's motion correctly, they opine that a "fraud" conspiracy exists because four people each filed an

objection. Zhen ponders why go through the trouble as a single person could have just included all the objections.[6]

Apparently, in another case five years ago, a foreign attorney sent them an email about an international class action and then the client in that case hired local counsel and appealed the determination of their claim.[7]  ECF 429, p. 20 ("noting that a Nicaragua-based attorney who purportedly represented Corp. Xanadu emailed Class counsel threatening legal action").

Class Counsel then provides an affidavit from Angeion Group, which is a class action claims administrator not affiliated with this case.  ECF 430-2.  Angeion Group suggests that the telephone

---

[6] As Class Counsel knows through their extensive objector investigation, Zhen makes purchases in Puerto Rico and other repealer states as well.  Zhen could have just filed all of the objections himself instead of allegedly going to the post-office wearing dark sunglasses, using courier pigeons to communicate with the other appellants, and invoking clandestine methods to preserve issues for appeal.

[7] Although not relevant to this case, Class Counsel mischaracterizes the decision they cite to support their conspiracy claim by saying that the judge "disallowed" the claim.  On the contrary, the judge made it clear that he did not make any decision.  *See* footnote 10, *In re: Transpacific Air Transportation Antitrust Litigation,* 2023 WL1428564(N.D. Cal. 2023)("Xanadu repeatedly states that 'this Court's Order made findings of fact and conclusions of law,' and that it appears 'as if a full evidentiary hearing occurred and that this Court is making findings,' Not so. The Court held that 'Rust determined 'there is $0 due in settlement benefits' to Corp Xanadu,' and it listed 'numerous factors' upon which Rust based its decision").

number Zhen listed belongs to a person with the name of this attorney. *Id*, par. 18.   Despite Angeion's affiant being "responsible for building accountable, accurate, and efficient processes through the smart application of technology," *id* at par. 2, he had to use www.whitepages.com to determine this alleged information. *Id* at par. 18.   www.whitepages.com makes it clear, "Whitepages does not verify Public Information, Breach Content or any other Content." *See https://www.whitepages.com/terms-of-service* .

Angeion Group claims that, in undisclosed class actions, on unspecified dates, someone using Zhen's name filed "claims… denied on multiple occasions due to indications of fraudulent activity."  Zhen cannot meaningfully respond to these specious allegations as they are devoid of any identifying information.

Moreover, the affidavit's sweeping conclusions lack both the specificity required to comply with Federal Rule of Civil Procedure 9(b) as well as the scientific rigor necessary for admissibility as an expert opinion under Federal Rule of Evidence 702.  The affidavit instead raises broader concerns about how claims administrators improperly conduct retaliatory investigations into individuals who file objections.  ECF 430-2, par. 16 (when individuals engage with Class Counsel or "appeal to the Court," Angeion performs a more

detailed review of the individual involved, utilizing public records, reputable third-party data sources, and proprietary resources"). Rather than reviewing objections on their merits, Angeion appears to be engaged in improper profiling of objectors. That practice is troubling in its own right—but it is even more so here, where Angeion is not even the claims administrator for this case, raising serious questions about how and why it became involved at all.

While Zhen has so far not consulted with any attorney regarding this case, Class Counsel's fixation on whether he may have received legal advice is misplaced. Indeed, in an appeal by an objector to a class action settlement, the Ninth Circuit found that whether an argument was "attorney-manufactured" is irrelevant, noting that "our court would have little work to do without creative arguments 'manufactured' by zealous attorney advocates." *Low v. Trump University, LLC*, 881 F.3d 1111, 1120 n.4 (9th Cir. 2018). Moreover, most jurisdictions—including California—permit attorney ghostwriting without requiring disclosure. See Cal. Civ. Proc. Code § 3.37 (no obligation to disclose limited-scope representation). To be clear, Zhen has received no such assistance here, but he is under no obligation to disclose privileged communications or attorney work product to Class Counsel if he had.

Therefore, not only is Class Counsel's conspiracy theory not relevant, it is also unsupported by any specific facts that would allow for a meaningful response..

## IV. The Purpose of this Motion and the Improper Acts of Class Counsel is to Discourage the Appeal, Intimidate, and Penalize the Appellants

"Toll-booths cannot be placed across the courthouse doors in a haphazard fashion." *Simulnet East v. Ramada Hotel,* 37 F.3d 573, 576 (9th Cir. 1994)*, quoting Aggarwal v. Ponce Sch. of Med.,* 745 F.2d 723, 727-28 (1st Cir. 1984).

"[T]he Rule 7 bond is designed to protect 'the amount the appellee stands to have reimbursed,' not to impose an independent penalty on the appellant." *Adsani v. Miller,* 139 F.3d 67, 75 (2d Cir.1998); *Erickson Productions v. Kast,* 2016 WL 9115979 at *2 (N. D. Cal. July 22, 2016); *Fleury v. Richemont N. Am., Inc.*, 2008 WL 4680033, at *6 (N.D. Cal., Oct. 21 2008); *Capizzi v. States Resources Corp.*, 2005 WL 958400, at *1 (D.Mass. Apr.26, 2005).

Rule 7 bonds are not intended to be used as a means of discouraging appeals, even appeals which lack merit. *See, e.g., Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341 (7th Cir.1974) ("[A]ny attempt [...] at preventing an appeal is unwarranted and

cannot be tolerated."); *In re Diet Drugs,* 2000 WL 1665134, at *6 (E.D. Pa. 2000)[8] (reducing bond to estimated amount of actual costs of Class Counsel on appeal because an excessive bond "would effectively squelch the right to appeal for many if not all of [the objectors]"); *cf. Lindsey v. Normet,* 405 U.S. 56, 77–79 (1972) (holding that bonds are not to be used as a barrier to appeal).

Appeal bonds must not create "an impermissible barrier to appeal." *Adsani v Miller,* 139 F.3d 67, 79 (2nd Cir. 1998). A bond cannot be imposed for the purpose of discouraging exercise of the right to appeal. *See Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341 (7 th Cir.1974) (stating that "any attempt by a court at preventing an appeal is unwarranted and cannot be tolerated"); *Azizian v. Federated Dept. Stores, Inc.,* 499 F3d 950, 961 (9th Cir. 2007)(*citing Clark's* language with approval).

Rule 7 was not intended to be used as a means of discouraging appeals, even if perceived to be frivolous. *See In re American President Lines, Inc.,* 779 F.2d 714, 717 (DC Cir.1985).

Therefore, the excessive $40,000 plus appeals bond requested

---

[8] In *In re: Diet Drugs*, the district court ordered a $25,000 cost bond but explained that Class Counsel would have to serve two copies of the brief on 84 parties, pay for transcripts, and prepare an appendix.  In the present case, Appellants paid for the transcription of every hearing, filed a complete Record, and briefs will be served on the parties through the ECF/ACMS system.  $15,000 in potential costs to Class Counsel are not present in this case.

by Class Counsel is unwarranted.

## V.    An Appeals Bond Must be Limited to Taxable Costs

The law of this Circuit is that costs can only be what is taxable. *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir. 2007). In *In re: American President Lines, Inc.*, 779 F3d 714 (D.C. Cir. 1985), the D.C. Circuit explained that a district court exceeded its authority in requiring a $10,000 cost bond under Rule 7 alone without sufficient justification. 779 F.2d at 718–19. The Court held, "Excessive bond, however, is not an acceptable control" for reducing litigation expenses. The Court noted that the district court's bonding authority was limited to security for payment of costs on appeal, and that such costs expectably will not exceed $450, so any bond would be in that amount.

The proposed $42,000 cost bond in this case would "impose[] too great a burden on an objector's right to appeal and may discourage meritorious appeals or tend to insulate a district court's judgment in approving a class settlement from appellate review." *Vaughn v. American Honda Motor Co., Inc.*, 507 F.3d 295, 300 (5th Cir. 2007). In *Vaughn*, the Fifth Circuit reduced a $150,000 cost bond in a class action to $1,000. In the present case, even $1,000

would be excessive because there is no plausibility for more than $200 in costs.

### a. **The real costs of this appeal will be less than $250**

In the Ninth Circuit, taxable costs are ordinarily photocopies at no more than ten cents ($.10) per page or less. *See* Ninth Circuit Local Rule 39-1.3 Costs of Reproduction.

According to the Federal Judicial Center's *Comparative Study of the Taxation of Costs in the Circuit Courts of Appeals Under Rule 39 of the Federal Rules of Appellate Procedure*, published in 2011, "the data show that across all circuits average costs awarded to appellees under subsection 39(a)(1) ranged from $84.15 to $198.08 ($153.68 median average award); under subsection 39(a)(2) average costs awarded to appellees ranged from $18.20 to $345.04 ($219.06 median average costs)."

Even the declaration of Adam Zapala implies the brief costs will be under $200. ECF 429-1, par. 5 ("I conservatively estimate that printing, copying, and mailing the briefs in each appeal will cost $175").[9]  That should be the basis of the appeals bond.

---

[9] There is only one appeal.

### b. **Shipping costs cannot be included.**

Class Counsel mentions $60 in shipping fees as part of their demand for over $42,000. However, as explained by the *Comparative Study, supra,* at page 13:

> Clerks in all circuits have denied requests for, among other things, reimbursement for transcripts, postage, courier, UPS, and FedEx fees, attorney fees, travel expenses, online research fees, paralegal fees, bond costs, copying of documents/motions other than briefs, appendices or excerpts (e.g., costs for petitions for panel or en banc rehearings, or for initial en banc hearings), and the costs of research or preparing the record. Although the items mentioned above are clearly not permitted to be recovered as costs under Fed. R. App. P. 39 and were denied recovery in the majority of cases, the examination of numerous costs awards showed that these nonpermissable costs are sometimes mistakenly reimbursed as part of actual costs incurred when included in a long listing of charges on commercial printing receipts.

There is no basis to try to trick the appellate clerk into mistakenly taxing these nonpermissable costs.

### c. **There is one appeal, so there will be only one brief.**

Class Counsel infers they do not know if they will have to file one brief or four separate briefs. This speculation does not provide a basis to quadruple the bond. There exists one appeal. If the appellants file separate briefs, counsel can still file a single responsive brief.

If Class Counsel chooses to file four separate briefs, those briefs would be shorter in length unless Class Counsel burdens the Ninth Circuit with repetitive text.

### d. The administrative costs are inflated, do not take into consideration the interest being earned on the fund, and are not taxable costs,

Settlement Fund costs due to maintaining a website during an appeal are not taxable costs.  Even assuming they were, Class Counsel declaration states the appeal will cause the fund to incur expenses of several thousand dollars per month, ECF 429-2, but conceals the fact that the settlement fund earns interest.  *See* Entry 390-1, page 8 ("(o) 'Gross Settlement Fund' or 'Settlement Fund' means the Settlement Amount plus any interest that may accrue"). Throughout the agreement, references to interest earned are made.

Obviously, a fund consisting of $32,000,000, earning four percent (4%) per year, will make more in interest than the few thousand dollars in expenses referenced.  Indeed, if the appeal takes a year, the fund should increase by over $1,000,000, not decrease by $42,000.  Class Counsel's lack of candor should not be rewarded with an inappropriate, punishing appeals bond.

**2-ER-0250**

## VI.    The Excessive Appeal Bond Proposed is Unconstitutional

Overtaxing costs constitutes a serious matter that could rise to the level of a constitutional violation. The power to "close its courts" by imposing fees upon appeals is not unlimited, and may be invalid facially, *see Lindsey v. Normet,* 405 US 56, 77-79 (1972); *O'Day v. George Arakelian Farms, Inc.*, 536 F.2d 856, 861  (9th Cir. 1976), or invalid as applied. *See Clark v. Universal Builders, Inc.,* 501 F.2d 324, 341–42 (7th Cir.), *cert. denied,* 419 U.S. 1070 (1974); *In re: American President Lines, Inc,* 779 F3d 714, 718-719 (D.C. Cir. 1985).

In *Lindsey,* the United States Supreme Court held that the constitution was violated by a state statute requiring a lessee who wished to appeal to file a bond in the amount of twice the rental value of the premises involved. 405 U.S. at 77. The Court based its ruling on the fact that "the double-bond requirement heavily burdens the statutory right ... to appeal." *Id.* While the Court found it reasonable to require adequate security to preserve an award already made and protect appellees from loss during appeal, the double-bond failed to effectuate these purposes. *Id.* at 77–78. The Court noted that the double-bond requirement did not serve to screen out frivolous appeals because the double-bond "allows

meritless appeals by others who can afford the bond." *Id.* at 78. The requirements of security for appeal to protect appellees are valid if "reasonably tailored to achieve these ends and uniformly and nondiscriminatorily applied." *Id.* at 79. *See also O'Day,* 536 F.2d at 859.

Objectors do not suggest Rule 7 itself violates equal protection and due process, but, as applied in this case, Class Counsel's demand for $42,000, if granted, on an appeal that will realistically cost Class Counsel only a few hundred dollars in expenses constitutes the unconstitutional multiplier of the actual costs. "A cost requirement valid on its face may offend the Constitution *as applied* to a particular case." *Boddie v. Connecticut,* 401 U.S. 371, 380 (1971). A $42,000 bond would offend the Constitution in this case.

Aggravating the constitutional infirmity of a $42,000 cost bond is the clear indication that the request for an appellate bond – asked for three months after the notice of appeal was filed – has retaliatory overtones.

## VII.    Conclusion

Class Counsel's motion for a cost bond of $42,000 is clearly part of a pattern of objector harassment meant to punish the appellants and defeat the appeal rather than a device to provide security for actual, taxable costs.  Allowing an excessive cost bond to punish the objectors that exceeds actual, taxable costs would render F.R.App.P. 7 unconstitutional as applied.

WHEREFORE, Objector Pat Zhen respectfully requests that this Court deny the motion for a costs bond or, in the alternative, limit said bond to $250.00 which reflects actual, taxable costs.



_____
Pat Zhen

| | |
|---|---|
| Subject | **In re Telescopes Antitrust Litigation - Objection Appeal** |
| From | Tom Boardman <TBoardman@susmangodfrey.com> |
| To | legal@patzhen.com <legal@patzhen.com> |
| Cc | Adam Zapala <AZapala@cpmlegal.com>, Lin Chan <lchan@lchb.com>, Alejandra Salinas <ASalinas@susmangodfrey.com> |
| Date | 2025-05-28 13:09 |

Mr. Zhen,

As you are aware from our prior communications, we are counsel for the Settlement Class in *In re Telescopes Antitrust Litigation*. We are in receipt of your notice of appeal of the Court's Final Approval Order and Judgment.

It would be beneficial for all if we could meet via Zoom to discuss your planned objections and whether any issues can be resolved without an appeal that will delay payments to the class and come at the cost of everyone's time and effort.

We also note that because some of the objectors only provided physical addresses of process servers, we have questions about whether purchases were made by actual consumers in a relevant state and believe it is crucial that we meet face-to-face (virtually) to discuss. Because standing is a requirement to object and appeal, please provide us with proof of both purchase and that you are who you claim to be in advance of our meeting.

Please let us know times the weeks of June 2nd and 9th when you are available.

Best,

Tom

Tom Boardman | Susman Godfrey LLP

**2-ER-0254**

| | |
|---|---|
| Subject | **Re: In re Telescopes Antitrust Litigation - Objection Appeal** |
| From | P Zhen <bank@patzhen.com> |
| To | Tom Boardman <TBoardman@susmangodfrey.com> |
| | 2025-05-28 15:42 |

Dear Mr. Boardman:

As should be clear, my objections are based on the failure to include Puerto Rico, a repealer territory of the United States of America, as eligible purchases. Those objections could be resolved by including Puerto Rico purchases, advertising targeted to Puerto Rico, and an extended claims period for Puerto Rico.

The proper way to discuss would be through the Ninth Circuit's mediation program, not the procedure you request/demand.  I recommend you tread carefully in implying pro se litigants such as myself are required to join Zoom calls to prove standing or address your concerns.  I refer you to California Rule of Attorney Conduct 4.3 (communication with unrepresented persons) and also possibly 4.1.

If the matter cannot be resolved through mediation supervised by the Ninth Circuit, your recourse if you believe the appeal involves standing issues is to file a motion to dismiss with the Ninth Circuit and/or to raise it in the jurisdictional section of your brief.  Either way, I would be willing to participate in mediation and/or respond to your motions/arguments.

The address I provided is not a process server.

PZZhen

2-ER-0255

Subject    **RE: In re Telescopes Antitrust Litigation - Objection Appeal**

From       Tom Boardman <TBoardman@susmangodfrey.com>

To         P Zhen <bank@patzhen.com>

Cc         Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>, Alejandra
           Salinas <ASalinas@susmangodfrey.com>, Marc Seltzer
           <MSeltzer@SusmanGodfrey.com>, Michael Gervais
           <MGervais@susmangodfrey.com>, Steven Sklaver
           <ssklaver@SusmanGodfrey.com>, Adam Zapala
           <AZapala@cpmlegal.com>, Elizabeth Castillo
           <ecastillo@cpmlegal.com>, Christian Ruano <cruano@cpmlegal.com>,
           Lin Chan <lchan@lchb.com>

Date       2025-06-18 17:55

- In re Telescopes - dckt 000419.pdf(~307 KB)

Mr. Zhen,

We appreciate your response but disagree with the suggestion that court appointed settlement counsel reaching out to confer with a pro se objector appealing approval of the settlement at all implicates that rules of professional conduct you cite.

As you confirmed in the below email, your only argument on appeal regards purchases made in Puerto Rico. Because Puerto Rico based purchases are categorically not included in the settlement class (along with numerous other states and territories), you have no standing to objector or appeal. As the Court held in granting final approval, states and territories like Puerto Rico "are still free to bring their own claims." Dkt. 419 at 15 (attached). To be clear, we are merely stating settlement class counsel's position about which we hope to discuss and not offering you legal advice. If you need legal advice, you should obtain your own counsel.

In preparation to oppose your appeal, settlement class counsel reserve all rights, including filing a motion to dismiss the appeal with the Ninth Circuit's motions panel and requesting that the district court require all objectors to post an appeal bond, respond to appropriate discovery, including sitting for a deposition, and issue any sanctions that the court may deem appropriate to compensate counsel for their time and effort.

We remain open to further discussion, at your convenience.


Tom Boardman | Susman Godfrey LLP
O: (212) 729 2069  C: (415) 298 4627

Subject    **Re: In re Telescopes Antitrust Litigation - Objection Appeal**
From       <bank@patzhen.com>
To         Tom Boardman <TBoardman@susmangodfrey.com>
Date       2025-06-18 22:57

Dear Mr. Boardman:

The problem is you sued with a nationwide class, but then as part of the settlement dismissed the nationwide claims.  In addition, you waived Puerto Rico's repealer claims without protecting them.  By dismissing the nationwide class, and not including a waiver of the statute of limitations from the defendants, you caused damage to persons who purchased the telescope in Puerto Rico and states that have repealer rights but not included by you.  If you secure a waiver from the defendants as to statute of limitations for one year to cure this, I would drop my appeal.

You can seek an appeal bond, I will gladly proffer the $250 in costs you will incur.  Anything beyond that I will appeal as constitutionally excessive, oppressive, and meant to harass and discourage the appeal.  As far as discovery, again, you are clearly abusing the process.  It's June 18, 2025, you should have asked for it during the objections period or right when the appeal was filed.  You showed no interest, which demonstrates your improper motivation (to intimidate and harass).  Again, if you manipulate the court into providing you some form of leave to conduct your late desire for harassing discovery, and you go through the process of issuing a subpoena to me, I will petition the District of Puerto Rico to quash it. If and only if said abusive discovery process is granted, I will appeal to the United States Court of Appeals for the First Circuit.  In the unlikely event that the discovery order is affirmed by the First Circuit, I will participate in your requested deposition within the District of Puerto Rico.

Like you, I reserve my right to exhaust appropriate and lawful remedies, including an abuse of process civil suit or sanctions, if you engage in abusive, manipulative, and intimidating behavior. I also reserve my right to bring your abusive tactics to the attention of future courts considering whether to appoint your firm and your co counsel's firm as class attorneys. Indeed, I understand that these threatened tactics are indeed the modus operandi of your colleagues.

If you had good faith intentions, you neither would have waited 20 days to send this email following up and you certainly wouldn't make passive aggressive threats of all the nasty, costly litigation tactics you referred to in an effort to scare me to waive my rights.

The only plausible non abusive thing that you might do is file a motion for summary affirmance if you are so sure of your position, not prolong matters through further district court proceedings all of which will result in even more appeals and litigation.  However, before you do, I would research the prudence of that because if the court delays briefing then denies your motion, you could tack on another several months to the appeal.

What perplexes me is that if the position of the various objectors are so simple, frivolous and non meritorious, you wouldn't try to distract.  On the contrary, you would want the quickest possible briefing and decision on the merits without forcing the courts to entertain your side issues.

I trust you understand my position.

PZhen

2-ER-0257

| | |
|---|---|
| Subject | **RE: In re Telescopes Antitrust Litigation - Objection Appeal** |
| From | Tom Boardman <TBoardman@susmangodfrey.com> |
| To | bank@patzhen.com <bank@patzhen.com> |
| Cc | Adam Zapala <AZapala@cpmlegal.com>, Elizabeth Castillo <ecastillo@cpmlegal.com>, Alejandra Salinas <ASalinas@susmangodfrey.com>, Lin Chan <lchan@lchb.com> |
| Date | 2025-06-25 12:32 |

Mr. Zhen,

Please let us know a few times when you are available to discuss the below issues, including a statute of limitations waiver.


 Best,
Tom


Tom Boardman | Susman Godfrey LLP
O: (212) 729-2069  C: (415) 298-4627

2-ER-0258

LAW OFFICES

SAN FRANCISCO
LOS ANGELES

**COTCHETT, PITRE & McCARTHY, LLP**
SAN FRANCISCO AIRPORT OFFICE CENTER
840 MALCOLM ROAD
BURLINGAME, CA 94010
TELEPHONE (650) 697-6000
FAX (650) 697-0577

SEATTLE
NEW YORK

June 26, 2025

## PRIVILEGED ATTORNEY-CLIENT COMMUNICATION

**VIA ELECTRONIC MAIL:**

Pat Zhen
bank@patzhen.com; legal@patzhen.com

      **RE:** *In re Telescopes Antitrust Litigation* (*Indirect Purchaser Actions*),
      **Case No. 20-cv-03639 (N.D. Cal.)**

**Dear Mr. Zhen:**

Enclosed please find a Subpoena to Testify at a Deposition in a Civil Action and the attached Schedule A seeking your deposition and documents in the above-referenced matter on July 28, 2025, 9:00 AM AST at the Verbatim Reporting Puerto Rico, El Telegrafo Building, 3rd Floor, San Juan, PR 00908. If you are represented by an attorney, please forward this letter and its enclosures to them.

Please note that, given case deadlines, we have limited flexibility with regard to the date of your deposition, but are willing to discuss scheduling with you. Regarding the requested documents, if possible, we would like to receive those in advance of the deposition, so that we may get through your deposition more quickly.

We are in the process of attempting to serve you formally with the enclosed subpoena. In an effort to streamline the process, please advise us as soon as possible if you will accept service of this subpoena via this letter request. Accepting service electronically will avoid the need for personal service and ensure the deposition proceeds efficiently. If you accept service, we will discontinue efforts to personally serve you and will forward the appropriate witness fees via overnight courier.

Should you have any questions about this process, please respond to this letter. I look forward to hearing from you regarding the service of the subpoena.

Sincerely,

ADAM J. ZAPALA

**2-ER-0259**

**COTCHETT, PITRE & McCARTHY, LLP**

*Letter to Pat Zhen*
*June 26, 2025*
*Page 2*

cc:    Elizabeth T. Castillo
       Christian S. Ruano

AO 88A  (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | | |
|---|---|---|
| In Re Telescopes Antitrust Litigation | ) | |
| | ) | |
| | ) | Civil Action No.  5:20-cv-03639-EJD |
| This Document Relates To: All Indirect Purchaser Actions | ) | |
| | ) | |
| | ) | |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:          Pat Zhen, 503 Calle Modesta Apt 303, San Juan, PR 00924

*(Name of person to whom this subpoena is directed)*

☑ Testimony:  YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place:   Verbatim Reporting Puerto Rico, El Telegrafo Building, 3rd Floor, San Juan, PR 00908 | Date and Time: July 28, 2025 9:00 AM AST |
|---|---|

The deposition will be recorded by this method: _____

☑ *Production:*  You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material:  See Schedule A.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:    06/26/2025

CLERK OF COURT

                          OR

_____          /s/ Adam J. Zapala
*Signature of Clerk or Deputy Clerk*          _____
                          *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____ Indirect Purchaser Plaintiffs _____ , who issues or requests this subpoena, are:

Adam J. Zapala, Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Rd., Burlingame, CA 94010, 650-697-6000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**2-ER-0261**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.   5:20-cv-03639-EJD

### PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❐ I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❐ I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

**2-ER-0262**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

 **(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

 **(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

 **(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

 **(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

 **(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

 **(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

 **(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

**2-ER-0263**

SCHEDULE A

**DEFINITIONS**

1.    The term "ACTION" means the above-captioned litigation.

2.    The terms "COMMUNICATION" and "COMMUNICATIONS" include but are not limited to emails, texts, faxes, letters, memos, and notes, and also refer to any DOCUMENT that comprises, embodies, reflects, or refers to any transmission of information from one person to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile, electronic mail, instant messaging, text messaging, or development notes. Each request that encompasses information relating in any way to COMMUNICATIONS to, from, or within a business or corporate entity is hereby designated to mean, and should be construed to include, all COMMUNICATIONS by and between representatives, employees, agents, or servants of the business or corporate entity. Any request for "COMMUNICATIONS" includes all DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS.

3.    As used herein, the term "DEFENDANTS" means and refers to Synta Technology Corp. of Taiwan (a/k/a Synta Technology Corp. and Good Advance Industries Ltd.), Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corp., Celestron Acquisition, LLC, Olivon USA LLC, Ningbo Sunny Electronic Co. Ltd., Sunny Optical Technology Co., Ltd., Meade Instruments Corp., and Sunny Optics Inc. TELESCOPES manufactured by DEFENDANTS are branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell.

4.    The term "DOCUMENT" or "DOCUMENTS" means and includes writings in the broadest sense, and includes all "writings" as defined in Federal Rule of Civil Procedure 34, including, but not limited to, all written printed, typed, recorded, or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft version) in the actual constructive possession, custody, care or control of the responding party, and including, without limitation, all writings, communications, correspondence, e-mails, text

LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

1

messages, letters, telegrams, notes, mailgrams, agenda, memoranda, inter-office communications, agreements, contracts, summaries, reports, interviews, forecasts, projects, analyses, working papers, charts, requests for authorization, expense account reports, charge or credit account vouchers, calendars, appointment books, diaries, brochures, pamphlets, circulars, press releases, drawings, graphs, photographs, sound reproduction tapes, data compilations from which information can be obtained or can be translated through detection devices into reasonably usable form, computer inputs or outputs, or any other tangible thing. The term "DOCUMENT" or "DOCUMENTS" shall include not only originals but also copies or reproductions of all such written, printed, typed, recorded, or graphic matter upon which notations in writing, print or otherwise have been made which do not appear in the originals.

In addition to the foregoing items, any comment, notation, strike-out, interlineation, or other alterations appearing on any DOCUMENT or any copy of any DOCUMENT, and not a part of the original text of such DOCUMENT, is considered a separate DOCUMENT, as is any draft or preliminary form of any DOCUMENT.

DOCUMENT(S) shall not be limited in any way as to the form of storage (such as paper, microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, or other electronic-storage device).

5.    "INDIRECT PURCHASER STATES" means and refers to Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

6.    The term "OBJECTION" shall mean any legal filing opposing. the Order Granting Motion for Final Approval; Granting Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 419).

7.    The term "PERSON" means and refers to any natural person, or any company,

AW OFFICES
TCHETT, PITRE &
cCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

2

corporation, partnership, union, joint venture, sole proprietorship, association, government agency, organization or any other similar type of group through which business is conducted, or any officer, director, employee or agent thereof.

8. The terms "RELATE(S) TO," "RELATED TO" and "RELATING TO" mean to refer to, concern, summarize, reflect, constitute, comprise, state, contain, explain, embody, pertain to, identify, be involved with, mention, discuss, consist of, show, analyze, comment upon, evidence, support, respond to, deal with, describe, refute, contradict, or in any way be pertinent to the subject in question, directly or indirectly, in whole or in part.

9. The term "SETTLEMENT" means and refers to the Settlement Agreement made and entered into on August 31, 2024 by and among the Synta Defendants ("SYNTA DEFENDANTS") and Indirect Purchaser Plaintiffs in the above-captioned action ("ACTION").

10. The term "SETTLEMENT CLASS" means and refers to all persons and entities in the INDIRECT PURCHASER STATES (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

11. The term "TELESCOPES" refers to optical instruments that magnify and enhance the view of faraway objects, as further described in paragraphs 96 through 99 of the Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Complaint, and does not include other optical instruments not marketed as telescopes, such as binoculars, siting scopes, microscopes, etc.

12. The term "YOU" and/or "YOUR" means responding party Elman Barnes and anyone else acting, or who has so acted, on his behalf including, but not limited to, any of his

LAW OFFICES
TCHETT, PITRE &
cCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

3

agents, representatives, principals, and each and every person acting on his behalf or at his direction or on whose behalf they were acting with respect to the matters referred to herein.

**INSTRUCTIONS**

1.     All documents are to be produced whether in your possession, custody or control, or the possession, custody or control of your attorneys, investigators, agents or representatives.

2.     All documents are to be segregated and referenced to the request to which they respond in accordance with Federal Rule of Civil Procedure 34.

3.     If any of the requested documents cannot be produced in full, then produce them to the extent possible, and specify the reasons for your inability to produce the remainder, stating whatever information, knowledge or belief you have concerning the unproduced portion.

4.     In the event that any document called for by these requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that document is to be identified by stating (a) any addressor and addressee; (b) any indicated or blind copy; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown or explained; (e) the document's present custodian; and (f) the nature of the privilege or immunity asserted.

5.     If any responsive document was at one time in your possession, custody or control but has been disposed of, lost, discarded, destroyed, or is no longer in your possession, custody or control for any other reason, then do the following with respect to each and every such document: (a) describe the nature of the document; (b) state the date of the document; (c) identify the persons who sent and received the original and copies of the document, specifying its author, addressee, and all persons to whom copies were furnished, or who otherwise saw the document; (d) state in as much detail as possible the subject matter and contents of the document; (e) state the last known location of the disposed document and the last known location of any alternative copies of the lost, discarded or destroyed document; (f) state the identity and location of other documents from which information contained in the discarded or otherwise disposed of document may be obtained; (g) state the date or approximate time of the disposition, loss, destruction, or discarding; (h) state the

manner and date of the disposition of the document; (i) state the reason for the disposition, loss, destruction or discarding; (j) state the identity of all persons who are likely to be responsible therefor; and (k) describe in detail the efforts you made to locate the document.

6.    Reference to the singular in any of these Requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

7.    Unless otherwise stated, the relevant time period for these Requests is from January 1, 2005 through the date of the written responses to the Requests.

**DOCUMENTS REQUESTED**

**REQUEST NO. 1:**

DOCUMENTS sufficient to show YOUR purchase of one or more TELESCOPES from a distributor or an entity other than DEFENDANTS.

**REQUEST NO. 2:**

DOCUMENTS sufficient to establish YOUR inclusion in the SETTLEMENT CLASS, such as YOUR INDIRECT PURCHASER STATE residence at time of purchase and/or INDIRECT PURCHASER STATE in which purchase was made.

**REQUEST NO. 3:**

DOCUMENTS sufficient to verify YOUR identity, including but not limited to, government-issued identification (*e.g.*, passport, driver's license, birth certificate, etc.).

**REQUEST NO. 4:**

All DOCUMENTS and COMMUNICATIONS between YOU and any PERSON RELATING TO this ACTION, SETTLEMENT, or the administration of the SETTLEMENT.

**REQUEST NO. 5:**

All DOCUMENTS and COMMUNICATIONS between YOU and any of the other objectors in this action: Mike Sussman, Karla Luna c/o National Woodlands, and Elman Barnes.

**REQUEST NO. 6:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR OBJECTION to the SETTLEMENT or the basis or grounds for YOUR OBJECTION to the SETTLEMENT.



LAW OFFICES
TCHETT, PITRE &
MCCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

5

**REQUEST NO. 7:**

All DOCUMENTS RELATING TO any agreement or understanding between YOU and any PERSON involving this ACTION.

**REQUEST NO. 8:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any compensation, reimbursement, or consideration YOU have received or expect to receive in connection with YOUR OBJECTION or involvement in this ACTION.

**REQUEST NO. 9:**

All DOCUMENTS RELATING TO any OBJECTION YOU have submitted in any class action in the past ten (10) years, including the name and case number of each class action.

**REQUEST NO. 10:**

All DOCUMENTS sufficient to show any PERSON who represented YOU in connection with any OBJECTION YOU submitted in any class action in the past ten (10) years.

**REQUEST NO. 11:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO YOUR OBJECTIONS in class action settlements over the past ten (10) years.

**REQUEST NO. 12:**

All DOCUMENTS RELATING TO changes made to any class action or class action settlements as a result of any OBJECTION made within the last ten (10) years by YOU, or by any PERSON involved or associated with representing YOU in connection with the OBJECTION.

LAW OFFICES
TRICHETT, PITRE &
MCCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

6

**2-ER-0269**

| Subject | **Re: In re Telescopes Antitrust Litigation (Indirect Purchaser Actions), Case No. 20-cv-03639** |
|---|---|
| From | Christian Ruano <CRuano@cpmlegal.com> |
| To | 'bank@patzhen.com' <bank@patzhen.com>, 'legal@patzhen.com' <legal@patzhen.com> |
| Cc | Adam Zapala <AZapala@cpmlegal.com>, Elizabeth Castillo <ecastillo@cpmlegal.com>, Alexandra Delavan <ADelavan@cpmlegal.com> |
| Date | 2025-06-30 21:02 |

- Zhen Subpoena - PR Address.pdf(~441 KB)
- Zhen Subpoena - RI Address.pdf(~443 KB)

Mr. Zhen,

My name is Christian Ruano, and I am an attorney with the law firm Cotchett Pitre & McCarthy LLP. I am following up on the email below and, specifically, our efforts to serve you with a subpoena in connection with your objection concerning *In re Telescopes Antitrust Litigation* (Indirect Purchaser Actions), Case No. 20-cv-03639, and appeal of the district court's denial of that objection.

On June 26, 2025, our paralegal Alexandra Delavan emailed you a copy of the subpoena in addition to a letter requesting you streamline this process by voluntarily accepting service via email. We have not received a response from you.

On June 30, 2025, we attempted personal service at your address: 503 Calle Modesta, Apt. 303, San Juan, PR 00924. The process server both verbally announced their intention to serve you and knocked on the apartment door, but did not receive a response. Moreover, we are preparing formal service at an additional address associated with you: 395 Eaton St., Providence, RI 02908. Attached is a subpoena reflecting this Rhode Island address, in addition to a corrected subpoena associated with your Puerto Rico address.

We ask that you please confirm whether you are willing to accept service of the subpoena via this email, or alternatively, provide correct contact information so we may effect formal service. At this time, the information available to us raises serious concerns about the accuracy of the contact information you provided. We hope this is a misunderstanding and would appreciate your prompt clarification. We intend to raise this matter with the Court if we do not hear from you.

Christian S. Ruano (Bio)
**COTCHETT PITRE & McCARTHY LLP**
**A LITIGATION LAW FIRM – SAN FRANCISCO, LOS ANGELES, NEW YORK, SEATTLE**
840 Malcolm Road, Suite 200  |  Burlingame, CA 94010
Tel: (650) 697-6000  |  Fax:  (650) 697-0577  |  Email: cruano@cpmlegal.com

CONFIDENTIALITY NOTICE:  This email is covered by the Electronic Communications Privacy Act, 18 U.S.C. Sections 2510-2521.  This email and any documents accompanying this email contain legally privileged and confidential information belonging to the sender. The information is intended only for the use of the individual or entity named above.   If you are not the intended recipient, you are hereby notified that any disclosure, copying, distribution, or the taking of any action in reliance on the contents of this email communication is strictly prohibited.  If you have received this email in error, please notify us immediately by telephone or email and permanently delete the email, any attachments, and all copies thereof from any networks, drives, cloud, or other storage media and please destroy any printed copies of the email or attachments.  Neither this email nor the contents thereof are intended to nor shall create an attorney client relationship between Cotchett, Pitre & McCarthy, LLP and the recipient(s), and no such attorney client relationship shall be created unless established in a separate, written retainer agreement or by court order.

AO 88A (Rev. 12/20) Subpoena to Testify at a Deposition in a Civil Action

# UNITED STATES DISTRICT COURT
### for the
### Northern District of California

| | |
|---|---|
| In Re Telescopes Antitrust Litigation <br><br><br> This Document Relates To: All Indirect Purchaser Actions | ) <br> ) <br> ) <br> ) <br> ) <br> )     Civil Action No.    5:20-cv-03639-EJD |

### SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION

To:                              Pat Zhen, 395 Eaton St., Providence, RI 02908

*(Name of person to whom this subpoena is directed)*

☑ Testimony: YOU ARE COMMANDED to appear at the time, date, and place set forth below to testify at a deposition to be taken in this civil action. If you are an organization, you must promptly confer in good faith with the party serving this subpoena about the following matters, or those set forth in an attachment, and you must designate one or more officers, directors, or managing agents, or designate other persons who consent to testify on your behalf about these matters:

| Place: | Berman Tabacco <br> One Liberty Square <br> Boston, MA 02109 | Date and Time: <br><br> July 28, 2025 9:00 AM ET |
|---|---|---|

The deposition will be recorded by this method: _____

☑ *Production:* You, or your representatives, must also bring with you to the deposition the following documents, electronically stored information, or objects, and must permit inspection, copying, testing, or sampling of the material: See Schedule A.

The following provisions of Fed. R. Civ. P. 45 are attached – Rule 45(c), relating to the place of compliance; Rule 45(d), relating to your protection as a person subject to a subpoena; and Rule 45(e) and (g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

Date:      06/30/2025

CLERK OF COURT

OR

_____          /s/ Adam J. Zapala
*Signature of Clerk or Deputy Clerk*              _____
                                                    *Attorney's signature*

The name, address, e-mail address, and telephone number of the attorney representing *(name of party)* _____
Indirect Purchaser Plaintiffs _____ , who issues or requests this subpoena, are:

Adam J. Zapala, Cotchett, Pitre & McCarthy, LLP, 840 Malcolm Rd., Burlingame, CA 94010, 650-697-6000

### Notice to the person who issues or requests this subpoena
If this subpoena commands the production of documents, electronically stored information, or tangible things before trial, a notice and a copy of the subpoena must be served on each party in this case before it is served on the person to whom it is directed. Fed. R. Civ. P. 45(a)(4).

**2-ER-0271**

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 2)

Civil Action No.  5:20-cv-03639-EJD

## PROOF OF SERVICE
### *(This section should not be filed with the court unless required by Fed. R. Civ. P. 45.)*

I received this subpoena for *(name of individual and title, if any)* _____

on *(date)* _____ .

❒  I served the subpoena by delivering a copy to the named individual as follows: _____

_____ on *(date)* _____ ; or

❒  I returned the subpoena unexecuted because: _____

_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also
tendered to the witness the fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $ ___0.00___ .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

2-ER-0272

AO 88A  (Rev.  12/20) Subpoena to Testify at a Deposition in a Civil Action (Page 3)

## Federal Rule of Civil Procedure 45 (c), (d), (e), and (g) (Effective 12/1/13)

**(c) Place of Compliance.**

**(1)** *For a Trial, Hearing, or Deposition.* A subpoena may command a person to attend a trial, hearing, or deposition only as follows:
   **(A)** within 100 miles of where the person resides, is employed, or regularly transacts business in person; or
   **(B)** within the state where the person resides, is employed, or regularly transacts business in person, if the person
      **(i)** is a party or a party's officer; or
      **(ii)** is commanded to attend a trial and would not incur substantial expense.

**(2)** *For Other Discovery.* A subpoena may command:
   **(A)** production of documents, electronically stored information, or tangible things at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person; and
   **(B)** inspection of premises at the premises to be inspected.

**(d) Protecting a Person Subject to a Subpoena; Enforcement.**

**(1)** *Avoiding Undue Burden or Expense; Sanctions.* A party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. The court for the district where compliance is required must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply.

**(2)** *Command to Produce Materials or Permit Inspection.*
   **(A)** *Appearance Not Required.* A person commanded to produce documents, electronically stored information, or tangible things, or to permit the inspection of premises, need not appear in person at the place of production or inspection unless also commanded to appear for a deposition, hearing, or trial.
   **(B)** *Objections.* A person commanded to produce documents or tangible things or to permit inspection may serve on the party or attorney designated in the subpoena a written objection to inspecting, copying, testing, or sampling any or all of the materials or to inspecting the premises—or to producing electronically stored information in the form or forms requested. The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served. If an objection is made, the following rules apply:
      **(i)** At any time, on notice to the commanded person, the serving party may move the court for the district where compliance is required for an order compelling production or inspection.
      **(ii)** These acts may be required only as directed in the order, and the order must protect a person who is neither a party nor a party's officer from significant expense resulting from compliance.

**(3)** *Quashing or Modifying a Subpoena.*

   **(A)** *When Required.* On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:

      **(i)** fails to allow a reasonable time to comply;
      **(ii)** requires a person to comply beyond the geographical limits specified in Rule 45(c);
      **(iii)** requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
      **(iv)** subjects a person to undue burden.
   **(B)** *When Permitted.* To protect a person subject to or affected by a subpoena, the court for the district where compliance is required may, on motion, quash or modify the subpoena if it requires:

      **(i)** disclosing a trade secret or other confidential research, development, or commercial information; or
      **(ii)** disclosing an unretained expert's opinion or information that does not describe specific occurrences in dispute and results from the expert's study that was not requested by a party.
   **(C)** *Specifying Conditions as an Alternative.* In the circumstances described in Rule 45(d)(3)(B), the court may, instead of quashing or modifying a subpoena, order appearance or production under specified conditions if the serving party:
      **(i)** shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship; and
      **(ii)** ensures that the subpoenaed person will be reasonably compensated.

**(e) Duties in Responding to a Subpoena.**

**(1)** *Producing Documents or Electronically Stored Information.* These procedures apply to producing documents or electronically stored information:
   **(A)** *Documents.* A person responding to a subpoena to produce documents must produce them as they are kept in the ordinary course of business or must organize and label them to correspond to the categories in the demand.
   **(B)** *Form for Producing Electronically Stored Information Not Specified.* If a subpoena does not specify a form for producing electronically stored information, the person responding must produce it in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms.
   **(C)** *Electronically Stored Information Produced in Only One Form.* The person responding need not produce the same electronically stored information in more than one form.
   **(D)** *Inaccessible Electronically Stored Information.* The person responding need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the person responding must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

**(2)** *Claiming Privilege or Protection.*
  **(A)** *Information Withheld.* A person withholding subpoenaed information under a claim that it is privileged or subject to protection as trial-preparation material must:
      **(i)** expressly make the claim; and
      **(ii)** describe the nature of the withheld documents, communications, or tangible things in a manner that, without revealing information itself privileged or protected, will enable the parties to assess the claim.
  **(B)** *Information Produced.* If information produced in response to a subpoena is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it. After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has; must not use or disclose the information until the claim is resolved; must take reasonable steps to retrieve the information if the party disclosed it before being notified; and may promptly present the information under seal to the court for the district where compliance is required for a determination of the claim. The person who produced the information must preserve the information until the claim is resolved.

**(g) Contempt.**
The court for the district where compliance is required—and also, after a motion is transferred, the issuing court—may hold in contempt a person who, having been served, fails without adequate excuse to obey the subpoena or an order related to it.

For access to subpoena materials, see Fed. R. Civ. P. 45(a) Committee Note (2013).

SCHEDULE A

**DEFINITIONS**

1.      The term "ACTION" means the above-captioned litigation.

2.      The terms "COMMUNICATION" and "COMMUNICATIONS" include but are not limited to emails, texts, faxes, letters, memos, and notes, and also refer to any DOCUMENT that comprises, embodies, reflects, or refers to any transmission of information from one person to another, including, without limitation, by personal meeting, conversation, letter, telephone, facsimile, electronic mail, instant messaging, text messaging, or development notes. Each request that encompasses information relating in any way to COMMUNICATIONS to, from, or within a business or corporate entity is hereby designated to mean, and should be construed to include, all COMMUNICATIONS by and between representatives, employees, agents, or servants of the business or corporate entity. Any request for "COMMUNICATIONS" includes all DOCUMENTS that REFER OR RELATE TO COMMUNICATIONS.

3.      As used herein, the term "DEFENDANTS" means and refers to Synta Technology Corp. of Taiwan (a/k/a Synta Technology Corp. and Good Advance Industries Ltd.), Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corp., Celestron Acquisition, LLC, Olivon USA LLC, Ningbo Sunny Electronic Co. Ltd., Sunny Optical Technology Co., Ltd., Meade Instruments Corp., and Sunny Optics Inc. TELESCOPES manufactured by DEFENDANTS are branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell.

4.      The term "DOCUMENT" or "DOCUMENTS" means and includes writings in the broadest sense, and includes all "writings" as defined in Federal Rule of Civil Procedure 34, including, but not limited to, all written printed, typed, recorded, or graphic matter, however produced or reproduced, of every kind and description, in whatever form (e.g., final and draft version) in the actual constructive possession, custody, care or control of the responding party, and including, without limitation, all writings, communications, correspondence, e-mails, text

LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

1

messages, letters, telegrams, notes, mailgrams, agenda, memoranda, inter-office communications, agreements, contracts, summaries, reports, interviews, forecasts, projects, analyses, working papers, charts, requests for authorization, expense account reports, charge or credit account vouchers, calendars, appointment books, diaries, brochures, pamphlets, circulars, press releases, drawings, graphs, photographs, sound reproduction tapes, data compilations from which information can be obtained or can be translated through detection devices into reasonably usable form, computer inputs or outputs, or any other tangible thing. The term "DOCUMENT" or "DOCUMENTS" shall include not only originals but also copies or reproductions of all such written, printed, typed, recorded, or graphic matter upon which notations in writing, print or otherwise have been made which do not appear in the originals.

In addition to the foregoing items, any comment, notation, strike-out, interlineation, or other alterations appearing on any DOCUMENT or any copy of any DOCUMENT, and not a part of the original text of such DOCUMENT, is considered a separate DOCUMENT, as is any draft or preliminary form of any DOCUMENT.

DOCUMENT(S) shall not be limited in any way as to the form of storage (such as paper, microfiche, magnetic tape, magnetic disk, CD-ROM, DVD, optical disk, or other electronic-storage device).

5.     "INDIRECT PURCHASER STATES" means and refers to Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

6.     The term "OBJECTION" shall mean any legal filing opposing. the Order Granting Motion for Final Approval; Granting Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 419).

7.     The term "PERSON" means and refers to any natural person, or any company,

LAW OFFICES
TCHETT, PITRE &
CCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

2

corporation, partnership, union, joint venture, sole proprietorship, association, government agency, organization or any other similar type of group through which business is conducted, or any officer, director, employee or agent thereof.

8.    The terms "RELATE(S) TO," "RELATED TO" and "RELATING TO" mean to refer to, concern, summarize, reflect, constitute, comprise, state, contain, explain, embody, pertain to, identify, be involved with, mention, discuss, consist of, show, analyze, comment upon, evidence, support, respond to, deal with, describe, refute, contradict, or in any way be pertinent to the subject in question, directly or indirectly, in whole or in part.

9.    The term "SETTLEMENT" means and refers to the Settlement Agreement made and entered into on August 31, 2024 by and among the Synta Defendants ("SYNTA DEFENDANTS") and Indirect Purchaser Plaintiffs in the above-captioned action ("ACTION").

10.    The term "SETTLEMENT CLASS" means and refers to all persons and entities in the INDIRECT PURCHASER STATES (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

11.    The term "TELESCOPES" refers to optical instruments that magnify and enhance the view of faraway objects, as further described in paragraphs 96 through 99 of the Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Complaint, and does not include other optical instruments not marketed as telescopes, such as binoculars, siting scopes, microscopes, etc.

12.    The term "YOU" and/or "YOUR" means responding party Pat Zhen and anyone else acting, or who has so acted, on his behalf including, but not limited to, any of his

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

3

agents, representatives, principals, and each and every person acting on his behalf or at his direction or on whose behalf they were acting with respect to the matters referred to herein.

**INSTRUCTIONS**

1.      All documents are to be produced whether in your possession, custody or control, or the possession, custody or control of your attorneys, investigators, agents or representatives.

2.      All documents are to be segregated and referenced to the request to which they respond in accordance with Federal Rule of Civil Procedure 34.

3.      If any of the requested documents cannot be produced in full, then produce them to the extent possible, and specify the reasons for your inability to produce the remainder, stating whatever information, knowledge or belief you have concerning the unproduced portion.

4.      In the event that any document called for by these requests is to be withheld on the basis of a claim of privilege or immunity from discovery, that document is to be identified by stating (a) any addressor and addressee; (b) any indicated or blind copy; (c) the document's date, subject matter, number of pages, and attachments or appendices; (d) all persons to whom the document was distributed, shown or explained; (e) the document's present custodian; and (f) the nature of the privilege or immunity asserted.

5.      If any responsive document was at one time in your possession, custody or control but has been disposed of, lost, discarded, destroyed, or is no longer in your possession, custody or control for any other reason, then do the following with respect to each and every such document: (a) describe the nature of the document; (b) state the date of the document; (c) identify the persons who sent and received the original and copies of the document, specifying its author, addressee, and all persons to whom copies were furnished, or who otherwise saw the document; (d) state in as much detail as possible the subject matter and contents of the document; (e) state the last known location of the disposed document and the last known location of any alternative copies of the lost, discarded or destroyed document; (f) state the identity and location of other documents from which information contained in the discarded or otherwise disposed of document may be obtained; (g) state the date or approximate time of the disposition, loss, destruction, or discarding; (h) state the

manner and date of the disposition of the document; (i) state the reason for the disposition, loss, destruction or discarding; (j) state the identity of all persons who are likely to be responsible therefor; and (k) describe in detail the efforts you made to locate the document.

6.    Reference to the singular in any of these Requests shall also include a reference to the plural, and reference to the plural also shall include a reference to the singular.

7.    Unless otherwise stated, the relevant time period for these Requests is from January 1, 2005 through the date of the written responses to the Requests.

**DOCUMENTS REQUESTED**

**REQUEST NO. 1:**

DOCUMENTS sufficient to show YOUR purchase of one or more TELESCOPES from a distributor or an entity other than DEFENDANTS.

**REQUEST NO. 2:**

DOCUMENTS sufficient to establish YOUR inclusion in the SETTLEMENT CLASS, such as YOUR INDIRECT PURCHASER STATE residence at time of purchase and/or INDIRECT PURCHASER STATE in which purchase was made.

**REQUEST NO. 3:**

DOCUMENTS sufficient to verify YOUR identity, including but not limited to, government-issued identification (*e.g.*, passport, driver's license, birth certificate, etc.).

**REQUEST NO. 4:**

All DOCUMENTS and COMMUNICATIONS between YOU and any PERSON RELATING TO this ACTION, SETTLEMENT, or the administration of the SETTLEMENT.

**REQUEST NO. 5:**

All DOCUMENTS and COMMUNICATIONS between YOU and any of the other objectors in this action: Mike Sussman, Karla Luna c/o National Woodlands, and Elman Barnes.

**REQUEST NO. 6:**

All DOCUMENTS and COMMUNICATIONS RELATING TO YOUR OBJECTION to the SETTLEMENT or the basis or grounds for YOUR OBJECTION to the SETTLEMENT.



LAW OFFICES
PRITCHETT, PITRE &
MCCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

5

**REQUEST NO. 7:**

All DOCUMENTS RELATING TO any agreement or understanding between YOU and any PERSON involving this ACTION.

**REQUEST NO. 8:**

All DOCUMENTS and COMMUNICATIONS RELATING TO any compensation, reimbursement, or consideration YOU have received or expect to receive in connection with YOUR OBJECTION or involvement in this ACTION.

**REQUEST NO. 9:**

All DOCUMENTS RELATING TO any OBJECTION YOU have submitted in any class action in the past ten (10) years, including the name and case number of each class action.

**REQUEST NO. 10:**

All DOCUMENTS sufficient to show any PERSON who represented YOU in connection with any OBJECTION YOU submitted in any class action in the past ten (10) years.

**REQUEST NO. 11:**

All COMMUNICATIONS between YOU and any PERSON RELATING TO YOUR OBJECTIONS in class action settlements over the past ten (10) years.

**REQUEST NO. 12:**

All DOCUMENTS RELATING TO changes made to any class action or class action settlements as a result of any OBJECTION made within the last ten (10) years by YOU, or by any PERSON involved or associated with representing YOU in connection with the OBJECTION.



LAW OFFICES
COTCHETT, PITRE &
McCARTHY, LLP

SCHEDULE A TO INDIRECT PURCHASER PLAINTIFFS' SUBPOENA FOR DEPOSITION

6