**Nos. 25-3098**

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

IN RE: TELESCOPES
ANTITRUST LITIGATION

ZHEN, et al.,
*Objectors-Appellants*,

v.

INDIRECT PURCHASER PLAINTIFFS,
*Plaintiffs-Appellees,*

v.

SYNTA TECHNOLOGY CORP., ET AL.,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of California, San Jose Division
Hon. Edward J. Davila
D.C. No. 5:20-cv-03639–EJD

**EXCERPTS OF RECORD
VOLUME 3 OF 7**

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE &**
**McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

*Settlement Class Counsel for Indirect Purchaser Plaintiffs-Appellees*

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | |
| | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR APPEAL BOND** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | **Dept.: Courtroom 4** <br> **Judge: Hon. Edward J. Davila** <br> **Date: August 14, 2025** <br> **Time: 9:00 am** |

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

**3-ER-0282**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, that on Thursday, August 14, 2025 at 9:00 AM, or as soon as the matter may be heard, the Indirect Purchaser Plaintiffs ("IPPs") will move and hereby do move the Honorable Edward J. Davila at the United States District Court for the Northern District of California, located in Courtroom 4, 280 South 1st Street, San Jose, California 95113. IPPs move this Court pursuant to Federal Rule of Appellate Procedure 7 for an Order compelling Objector-Appellants Elman Barnes, National Woodlands Preservation, Inc., Patrick Zhen, and Michael Sussman to each post an appeal bond to secure payment for costs on appeal.[1] This Motion is based upon this Notice of Motion and Motion; IPPs' accompanying Memorandum of Points and Authorities in support thereof; and all materials submitted in support thereof, including declarations and exhibits, and the record in this case, along with any oral argument that may be presented to the Court and any evidence submitted in connection therewith.

[1] Given the grave issues raised by this motion, as discussed in more detail herein, IPPs also request that the Court issue an order requiring each Objector-Appellant to either personally appear at the hearing on this motion, or to appear by video link remotely, and be required to provide government-issued identification demonstrating that these individuals are who they say they are.

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR    1 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

# TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................................ 1

II.    BACKGROUND .......................................................................................................... 3

III.    ARGUMENT................................................................................................................ 3

    A.    The Objectors Are Financially Able to Post Bonds ................................................ 4

    B.    The Objectors' Out-Of-State Residence, or Other Conduct, Increases the Risk That They Will Not Pay Appellees' Costs ................................................................. 6

    C.    The Court Already Found the Objections Meritless............................................... 7

        1.    Elman Barnes Presents a Meritless Objection, Lacks Standing, and Likely Does Not Exist........................................................................................... 8

        2.    National Woodlands Preservation, Inc. (Karla Luna) Presents a Meritless Objection and Is Associated with Indicia Fraud. ....................................... 10

        3.    Patrick Zhen Is Not a Class Member and Bears Indicia of Fraud ............. 13

        4.    Michael Sussman's Objection Lacks Merit and Is Associated with Indicia of Fraud .................................................................................................... 15

    D.    The Court Should Impose an Appeal Bond of $42,818 on Each of the Objectors ................................................................................................................................ 16

        1.    The Bond Should Include Claims Administration Costs............................ 16

        2.    The Appeal Bond Should Include Taxable Costs Under Rule 39 .............. 18

IV.    CONCLUSION .......................................................................................................... 19

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Ace Heating & Plumbing Co. v. Crane Co.*,
453 F.2d 30 (3d Cir. 1971)................................................................................. 13

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................ 8

*Azizian v. Federated Dep't Stores, Inc.*,
499 F.3d 950 (9th Cir. 2007)..................................................................... 3, 15, 16

*In re Broadcom Corp. Sec. Litig.*,
No. SACV-01-275-DT(MLGx), 2005 U.S. Dist. LEXIS 45656 (C.D. Cal.
Dec. 5, 2005) ............................................................................................... 16, 17

*Brown v. Hain Celestial Grp., Inc.*,
No. 3:11-CV-03082-LB, 2016 WL 631880 (N.D. Cal. Feb. 17, 2016) ........................... 13

*In re Cardizem CD Antitrust Litig.*,
391 F.3d 812 (6th Cir. 2004)................................................................................. 5

*In re Compact Disc Minimum Advertised Price Antitrust Litig.*,
No. 2:2000-md-01361, 2003 WL 22417252 (D. Me. Oct. 7, 2003) ................................ 16

*Dennings v. Clearwire Corp.*,
928 F. Supp. 2d 1270 (W.D. Wash. 2013) ............................................................... 1

*Dennings v. Clearwire Corp.*,
No. C10-1859JLR, 2013 WL 945267 (W.D. Wash. Mar. 11, 2013) ................................ 17

*In re Digital Music Antitrust Litig.*,
812 F. Supp. 2d 390 (S.D.N.Y. 2011) .................................................................... 13

*Embry v. ACER Am. Corp.*,
C 09-01808 JW, 2012 WL 2055030 (N.D. Cal. June 5, 2012) ................................ 3, 6, 7

*In re Equifax Inc. Customer Data Sec. Breach Litig.*,
999 F.3d 1247 (11th Cir. 2021)............................................................................ 11

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.* (*In re First Capital*),
33 F.3d 29 (9th Cir.1994).............................................................. 8, 10, 13, 14

*Fleury v. Richemont N. Am., Inc.*,
No. C-05-4525 EMC, 2008 WL 4680033 (N.D. Cal. Oct. 21, 2008) ........................ 4, 5, 6, 7

*Gendron v. Shastina Props., Inc.*,
578 F.2d 1313 (9th Cir. 1978)........................................................................... 14

*Glasser v. Volkswagen of Am., Inc.*,
645 F.3d 1084 (9th Cir. 2011)........................................................................... 13

*In re Hyundai & Kia Fuel Econ. Litig.*,
926 F.3d 539 (9th Cir. 2019).............................................................................. 8

*In re Initial Pub. Offering Sec. Litig.*,
728 F. Supp. 2d 289 (S.D.N.Y. 2010) ............................................................ 4, 6

*In re Initial Pub. Offering Sec. Litig.*,
721 F. Supp. 2d 210 (S.D.N.Y. 2010), *opinion clarified*, No. 21
MC 92 SAS, 2010 WL 5186791 (S.D.N.Y. July 20, 2010)............................... 18

*In re Ins. Brokerage Antitrust Litig.*,
MDL 1663, No. 04-5184 (GEB), 2007 ............................................................ 17

*In re MagSafe Apple Power Adapter Litig.*,
No. C 09-01911 JW, 2012 WL 2339721 (N.D. Cal. May 31, 2012) ............. 5, 18

*Miletak v. Allstate Ins. Co.*,
No. C 06- 03778 JW, 2012 WL 3686785 (N.D. Cal. Aug. 27, 2012)...........*passim*

*Miller v. Travel Guard Grp., Inc.*,
No. 21-CV-09751-TLT, 2024 WL 5341150 (N.D. Cal. Apr. 9, 2024)............... 14

*In re Netflix Privacy Litig.*,
No. 5:11-CV-00379-EJD, 2013 WL 6173772 (N.D. Cal. Aug. 27, 2012) ...............*passim*

*In re Nexium (Esomeprazole) Antitrust Litig.*,
968 F. Supp. 2d 367 (D. Mass. 2013) .............................................................. 13

*In re Opana ER Antitrust Litig.*,
162 F. Supp. 3d 704 (N.D. Ill. 2016) ............................................................... 13

*In re Pharm. Indus. Average Wholesale Price Litig.*,
520 F. Supp. 2d 274 (D. Mass. 2007) ................................................................ 4

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
No. 07-MD-01819 CW, 2010 WL 5094289 (N.D. Cal. Dec. 8, 2010)............... 13

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
599 F. Supp. 2d 1179 (N.D. Cal. 2009) ........................................................... 13

*In re Transpacific Passenger Air Transp. Antitrust Litig.*,
No. 07-cv-05634-CRB (N.D. Cal.), ECF Nos. 1356, 1378 ............................... 14

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  iii
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD**

**3-ER-0286**

*In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 23-15118, 2024 WL 810703 (9th Cir. Feb. 27, 2024), *cert. denied sub nom. Xanadu Corp v. Adlin*, 145 S. Ct. 278 (2024).........................................................................14

*United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052 (N.D. Cal. 2014) ...............................................................12

*Yingling v. eBay, Inc.*, No. C 09–01733 JW, 2011 WL 2790181 (N.D. Cal. July 5, 2011) ...................................7

**Rules**

Fed. R. App. P. 3 ...............................................................................................5

Fed. R. App. P. 7 ......................................................................................*passim*

Fed. R. App. P. 39 ....................................................................................*passim*

Fed. R. Civ. P. 23 ........................................................................................3, 13

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.   INTRODUCTION**

The Indirect Purchaser Plaintiffs ("IPPs") move this Court for an order requiring each Objector-Appellant to post an appeal bond in the amount of $42,818.[2] The Motion is warranted and should be granted because counsel for IPPs, and the class itself, will incur costs during the pendency of these putative appeals. Moreover, because the issues raised by these objectors are frivolous, the Ninth Circuit will almost certainly affirm this Court's determination that final approval was, and is, appropriate. *See Dennings v. Clearwire Corp.*, 928 F. Supp. 2d 1270, 1271 (W.D. Wash. 2013) (granting motion for a post-settlement approval appeal bond and ordering the objetors to "post a bond in the amount of $41,150.00 or dismiss their notice of appeal.") (cleaned up). Accordingly, the class will be required to await the distribution process (and thus incur costs) in order for the Ninth Circuit merely to reject these appeals. Moreover, as outlined in this Motion, an appeal bond from each Objector-Appellant is appropriate due to a substantial doubt concerning IPPs' ability to recover their costs from these Objector-Appellants and the good faith basis of these appeals. As outlined herin, these Objectors are associated with indicia of fraud, further supporting the need for a bond. *See id.*

On April 11, 2025, following over five years of contentious litigation and settlement negotiations, this Court granted final approval to the class action settlement (the "Settlement") between IPPs and the Synta Defendants[3] ("Defendants"). *See* ECF No. 397. The Settlement

---

[2] As detailed in the Notice of Motion, IPPs also request the Court issue an order requiring each Objector-Appellant to either personally appear at the hearing on this motion, or to appear by video link remotely, and be required to provide government-issued identification demonstrating that these individuals are who they say they are.

[3] Synta Defendants are: (1) Synta Technology Corp. of Taiwan (a/k/a Synta Technology Corp. and Good Advance Industries Ltd.), (2) Suzhou Synta Optical Technology Co., Ltd., (3) Nantong Schmidt Opto-Electrical Technology Co. Ltd., (4) Synta Canada International Enterprises Ltd., (5)

---

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  1
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

**3-ER-0288**

provides a substantial monetary recovery to the IPP class: $32 million to indirect purhasers for the supracompetitive prices they suffered when they purchased their telescopes due to Defendants' anticompetitive conduct.

But, as with many large and successful class action settlements, the Settlement drew a limited number of objections. After full briefing by IPPs and the opportunity for the objectors to respond and be heard at the final fairness hearing,[4] the Court overruled all of the objections, found the Settlement fair, adequate, and reasonable, and approved the Settlement in full.

However, Objectors Elman Barnes, National Woodlands Preservation, Inc. ("Woodlands"), Patrick Zhen, and Michael Sussman (collectively, the "Objectors") chose to delay distribution of the Settlement by appealing to the Ninth Circuit, a tactic all too often used—and abused—by objectors who count on the likelihood that settling parties will reluctantly pay them to withdraw their appeals rather than endure the delay and expense of continued litigation.

The appeals by the Objectors lack merit and will impose costs on counsel for IPPs and the class generally. Not only that, as outlined in this Motion, the claims of Objectors bear substantial indicia of fraud, raising questions about whether these "objectors" are fictitious entities and people. *See infra* at 9-16. Consequently, IPPs now move the Court for an appeal bond from each Objector under Rule 7, which states "[i]n a civil case, the District Court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of

Pacific Telescope Corp., (6) Olivon Manufacturing Co. Ltd., (7) SW Technology Corp., (8) Celestron Acquisition, LLC, (9) Olivon USA LLC, (10) Dar Tson "David" Shen, (11) Joseph Lupica, and (12) David Anderson (together, "Synta" or "Synta Defendants").

[4] Of the objectors from whom IPPs seek an appeal bond, none — personally or through counsel — appeared at the Court's final fairness hearing. Given their decision to skip the one opportunity to raise their concerns live to the Court, it strains credulity to believe the objectors here actually care about the merits of the settlement or their appeals, rather than merely holding up the settlement process.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR      2
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD

costs on appeal." Bonds are necessary to curb Objectors' abuse of the judicial process, to prevent harm to the Class, and to insure that, when Plaintiffs prevail on appeal, these Objectors will actually pay costs, as required by Federal Rule of Appellate Procedure 39.

## II.    BACKGROUND

This Court granted final approval of the Settlement on April 11, 2025 (*see* ECF No. 419.), and out of approximately three million Class members, only four claimants objected to the Settlement.[5] IPPs submitted their motion for final approval on February 28, 2025. *See* ECF No. 404. The Court held its final fairness hearing on April 3, 2025,[6] and on April 11, 2025, the Court overruled the objections and granted the Settlement final approval in full. *See* ECF No. 419.

On May 5, 2025, the Objectors collectively lodged their appeals to the Ninth Circuit, challenging this Court's Order granting final approval. As explained below, these "Objectors"—to the extent they are real entities (and they are not)—are simply abusing the appeal process, and each should be ordered to post an adequate bond in order to ensure the IPPs' costs on appeal.

## III.    ARGUMENT

As many other courts in this district have recognized, objectors to a class action settlement (that received final approval and provides substantial monetary relief to a class) should be required to post an appeal bond before they may use the time and expense of appeal to hold the settlement hostage. Rule 7 provides that "the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950, 954–55 (9th Cir. 2007). The purpose of a Rule 7 bond

---

[5] But, as outlined further, some of these "objectors," like Zhen, are not class members at all.  For example, Zhen is a resident of Puerto Rico and allegedly purchased a telescope there. But Puerto Rico is not one of the indirect purchaser states including in this lawsuit, nor in the settlement class definition. Accordingly, Zhen is not a settlement class member at all and does not have standing to object or appeal. Fed. R. Civ. P. 23(e)(5)(A).

[6] None of the Objectors or counsel representing them attended the Final Fairness Hearing, despite indicating otherwise in their objections on file with the Court, *see* ECF No. 245.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD

3

is to "protect an appellee against the risk of nonpayment by an unsuccessful appellant." *In re Netflix Privacy Litig.* ("*Netflix*"), No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *2 (N.D. Cal. Aug. 27, 2012) (Davila, J.); *Embry v. ACER Am. Corp.*, C 09-01808 JW, 2012 WL 2055030, at *1 (N.D. Cal. June 5, 2012) (quoting *Fleury v. Richemont N. Am., Inc.*, No. C-05-4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008)). "[T]he question of the need for a bond, as well its amount, are left to the discretion of the trial court." *Fleury*, 2008 WL 4680033, at *6. "The trial court may exercise discretion in regards to the need for a bond, as well as the bond amount." *Id.* at *2. When faced with objectors threatening a settlement with meritless appeals, district courts routinely require the objectors to post a bond. *See In re Pharm. Indus. Average Wholesale Price Litig.*, 520 F. Supp. 2d 274, 277–78 (D. Mass. 2007) ("requiring objectors to post a bond will ensure that a class litigating a frivolous appeal will not be injured or held up by spoilers"). As the court in *In re Initial Public Offering Securities Litigation* explained, appeal bonds prevent objectors from undermining our judicial system:

> I concur with the numerous courts that have recognized that professional objectors undermine the administration of justice by disrupting the settlement in hopes of extorting a greater share of the settlement for themselves and their clients . . . . Thus, the Objectors are required to file an appeal bond to secure payment of costs on appeal.

728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010) (footnote omitted) (collecting cases).

In evaluating a proposed appellate bond, a court considers "(1) the appellant's finanical ability to post a bond, (2) the risk that appellant would not pay the costs if the appeal loses, and (3) an assessment of the likelihood that appellant will lose the appeal and be subject to costs." *Netflix*, 2013 WL 6173772, at *3. As detailed below, each factor favors imposing a bond on each of the Objectors in this case.

### A.    The Objectors Are Financially Able to Post Bonds

The first factor—ability to pay—is straightforward and met where there is "no indication that [a party] is financially unable to post bond." *Fleury*, 2008 WL 4680033, at *7. Even where an appellant claims inability to pay—which no objector in this case has asserted—this factor only weighs against imposing a bond where the appellant adduces actual evidence of inability to pay and other factors do not outweigh the need for an appeal bond. *See, e.g.*, *Netflix*, 2013 WL

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  4
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD**

6173772, at *3 (objectors "do not provide any evidence indicating a financial inability to pay"); *Miletak v. Allstate Ins. Co.*, No. C 06- 03778 JW, 2012 WL 3686785, at *2 n.4 (N.D. Cal. Aug. 27, 2012) ("Thus, insofar as Objector has 'submitted no financial information to indicate that she is financially unable to post a bond, this factor weighs in favor of imposing a bond."); *In re Cardizem CD Antitrust Litig.*, 391 F.3d 812, 818 (6th Cir. 2004) (failure to propose an alternative or provide evidence that the bond was improper resulted in dismissal of appeal). Moreover, even if an objector provides some evidence of a financial hardship in posting the bond, "the significant risk of non-payment of costs and the lack of merit in Objectors' appeals" can nonetheless tip this factor in favor of requiring a bond. *See In re MagSafe Apple Power Adapter Litig.*, No. C 09-01911 JW, 2012 WL 2339721, *2 (N.D. Cal. May 31, 2012).

Here, the evidence suggests the Objectors are able to pay the bonds. First, the Objectors have paid their appeal docketing fee, suggesting they have financial resources. *See* ECF No. 424.[7] Moreover, previous declarations submitted to this Court detail Class Counsel's efforts to meet and confer with these Objectors before the fairness hearing in an attempt to resolve their purported "objections." *See, e.g.*, Decl. of Kalpana Srinivasan in Supp. of IPPs' Reply in Supp. of the Mot. for Final Approval of Settlement & Mot. for Award of Attorneys' Fees, Reimbursement of Costs, & Service Awards (N.D. Cal. Mar. 21, 2025), ECF No. 407-1. During these meet and confers, none of the Objectors raised issues about lacking financial resources. Instead, each objector appears to understand the legal system with respect to class action settlement objections: they were able to file their objections with the Court, in some cases utilizing the federal court's ECF system.[8]

---

[7] With that said, it appears that they have attempted—either intentionally or unintentionally—to circumvent the required Ninth Circuit appeal fee. *See* ECF No. 422. Instead of each objector filing their own appeal, as is required, the objectors have attempted to collectively file a "Notice of Appeal," the effect of which is to require only one payment of an appeal fee, instead of the required, separate four fees. This is improper. *See* Fed. R. App. P. 3(b).

[8] Should the Court desire a more fulsome record regarding the Objector's financial resources,

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  5 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

To date, as in *Miletak* wherein the court granted the motion for an appeal bond, the "Objector[]s . . . ha[ve] presented no evidence that [they] would be unable to pay an appeal bond." 2012 WL 3686785 at *2. "Thus, this factor weighs in favor of imposing an appeal bond." *Id.* (*citing Fleury*, 2008 WL 4680033, at *7).

**B.    The Objectors' Out-Of-State Residence, or Other Conduct, Increases the Risk That They Will Not Pay Appellees' Costs**

When an appellant resides out-of-state, the difficulty of collecting payment post-appeal increases, weighing in favor of posting a bond. *See In re Initial Pub. Offering*, 728 F. Supp. 2d at 293; *Netflix*, 2013 WL 6173772, at *3 ("Courts in the Northern District of California have recognized the difficulty and risk associated with collecting costs from out-of-state appellants."); *Fleury*, 2008 WL 84680033, at *7; *Embry*, 2012 WL 2055030,  at *1 (N.D. Cal. June 5, 2012) ("With regards to the second factor—the difficulty of collecting payment post-appeal—Objector Cannata resides outside of the jurisdiction of the Ninth Circuit, which also weighs in favor of requiring a bond.").

Three of the four objectors—Sussman (Florida), Zhen (Puerto Rico), and Woodlands (West Virginia)—purport to be located out-of-state.  *See* ECF Nos. 401, 402, 403. Enforcement of an order imposing costs originates at the district court level, *see* Rule 7, and only one of the Objectors (Elman Barnes) purportedly resides in California—placing the other three outside not only the state but the geographic boundaries of the Ninth Circuit. *See Netflix*, 2013 WL 6173772, at *3 (location "may be weighed more heavily when an appellant lives outside the jurisdiction of the Ninth Circuit.").

As such, should they refuse to pay, class counsel would be required to travel to Florida, Puerto Rico, and West Virginia to institute collection proceedings and recover costs expended on appeal. Accordingly, the Objectors' out-of-state residence "weighs in favor of requiring a bond." *Id.* at *3.

Further, while Objector "Barnes" claims that "he" lives in California, that fact does not

Class Counsel has served those objectors with discovery seeking a host of information, including their financial resources.

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  6 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

weigh against imposing a bond, but simply renders this factor neutral with regard to Barnes. *See Miletak*, 2012 WL 3686785, at *2 (discussing a California-resident objector); *see also infra* at 9-24 (discussion of indicia of fraud associated with "Elman Barnes" objection).

Moreover, IPPs suspect that collecting costs from "Barnes" may prove challenging. For starters, as outlined in a number of Declarations accompanying this Motion, Class Counsel have received information suggesting that "Elman Barnes" is not who he says he is. *See* Decl. of Adam J. Zapala in Supp. of IPPs' Mot. For Appeal Bond ("Zapala Decl."); Decl. of Nirav Engineer in Supp. of IPPs' Mot. for Appeal Bond ("Engineer Decl."); and Decl. of Brian Hedley in Supp. of IPPs' Mot. for Appeal Bond ("Hedley Decl."). In fact, Class Counsel do not believe an "Elman Barnes" actually exists. *Id.* IPPs have similar concerns regarding the other three objectors— "Patrick Zhen," "National Woodlands Preservation, Inc." (and its "CEO," a person allegedly named "Karla Luna"), and "Michael Sussman." *See infra* at 11.

The Motion should be granted.

### C.    The Court Already Found the Objections Meritless

The final factor bearing on the propriety of a bond assesses the merits of the appeals themselves, and a Court's prior consideration and rejection of an objection favors imposing a bond. *See Embry*, 2012 WL 2055030, at *1 (granting motion for appellate bond after finding that objector's arguments regarding claims process and excessive attorney fees were without merit); *Fleury*, 2008 WL 4680033, at *8 (granting bond where "the Court ha[d] considered each of [the objector's] objections and found them meritless").

Here, the Court examined (and rejected) each of the Objectors' arguments—carefully explaining why they were without merit—which further supports the requirement of an appeal bond. *See* ECF. No. 419. Courts including this one have granted appeal bonds in similar circumstances. *See, e.g.*, *Netflix*, 2013 WL 6173772, at *3 ("the Court engaged in an extensive analysis of the Settlement, including the merits of the objections, and found the Settlement to be fair, adequate and reasonable"); *Yingling v. eBay, Inc.*, No. C 09–01733 JW, 2011 WL 2790181, at *2 (N.D. Cal. July 5, 2011) ("Court has already considered Objector's objections and found them to be meritless"). As discussed further below, each of the Objector's objections and basis for

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**                                                                    7

appeal lack merit and warrant granting a bond.

### 1. Elman Barnes Presents a Meritless Objection, Lacks Standing, and Likely Does Not Exist

Objector "Elman Barnes" objected not to a term of the Settlement, but to a process that the claims administrator—in its substantial discretion and in order to weed out fraudulent claims— required of claimants to go through in order to submit a claim. Namely, the Court-appointed claims administrator required persons and entities that did not already have a claim number to request one from the claims administrator. Barnes's myopic focus on a non-burdensome claim filing procedure ignores Class Counsel's, and the Claims Administrator's, duty to try to weed out fraudulent claims. This procedure was hardly burdensome, as this Court correctly found in approving the Settlement. The Court reasoned that requiring claimants to fill out forms to establish class membership is reasonable. *See In re Hyundai & Kia Fuel Econ. Litig*., 926 F.3d 539, 568 (9th Cir. 2019). Indeed, the Ninth Circuit has held that requiring potential claimants to fill out forms to show class membership is reasonable and not unduly burdensome. *Id*. Barnes also objected to the payment methods available to claimants without claim numbers. *See* ECF No. 399. But this Court and others have approved settlements that provide for different payment methods to class members. *See* ECF. No. 419; *In re Anthem, Inc. Data Breach Litig*., 327 F.R.D. 299, 332 (N.D. Cal. 2018). Barnes's objection lacks merit.

Regardless, "Mr. Barnes" does not have standing to object. As noted in IPPs' Motion for Final Approval, "Barnes" is not aggreived by the claims filing procedure. He successfully submitted a claim on the telescope he allegedly purchased. *See* Zapala Decl., Ex. B. As a result, nothing about the claims process prevented him from submitting a claim.

Finally, as noted above, not only is an appeal bond warranted because Barnes's grounds for appeals are exceptionally weak and he is not "aggrieved," but "Barnes" is likely not a real person at all.

Below, IPPs have outlined the indicia of fraud associated with "Mr. Barnes".

*First*, Elman Barnes does not have an online presence whatsover (let alone an online presence in the Sacramento area where he purports to live), which is exceptionally rare in this day and age. Class Counsel retained an outside investigator who, utilizing methods ordinarily used in

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  8
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD

the industry, concluded that no legitimate person named "Elman Barnes" exists in relation to the claim submitted here. *See* Hedley Decl. ¶ 9. Investigators performed nationwide searches for the name "Elman Barnes" utilizing ordinary investigation techniques and returned zero results. *See* Hedley Decl. ¶ 6.

**Second**, the email address Barnes provided (elmanmethod@theacheivementcoaches.com) appears to be nonexistent. *See* Hedley Decl. ¶ 7. An online search for that email address returns no results, again, a fact that is exceptionally rare in this day and age. *Id.* Moreover, "achievementcoaches.com" does not exist as a real or active website and is registered to a person/organization only to a redacted name. *Id*. When registrants buy domain names, they typically disclose certain identifying data, like contact information. The person/organization who bought this domain name engaged in the unusual steps of going through a third party to purchase the domain name to keep their contact information private.

**Third**, Barnes's mailing address is not legitimate. Barnes provided a non-residential address (1401 21st Street, Ste. R, Sacramento, CA) in connection with his objection, again an unusual action. *See* Hedley Decl. ¶ 7. The "1401 21st Street" address is associated with the business "California Registered Agents."[9] "California Registered Agents" permits persons or entities—usually entities—to use them as an address for purposes of service of process. *See* Engineer Decl. ¶ 7. Although businesses normally designate an address for purposes of service of process, individuals rarely do. *See* Zapala Decl. ¶ 16.

**Fourth**, the addresses Barnes provided in connection with his objection and filings in Court were inconsistent.  In addition to the "1401 21st Street" address discussed above, Barnes listed an address of "401 21st Street, Ste. R, Sacramento California" on his objection.  *See, e.g.*, ECF No. 399. The "401 21st Street" address does not exist. Zapala Decl. ¶ 15.  "Mr. Barnes's" incorrect and inconsistent citation to his own address is further indicia of fraud. Instead, what appears likely is that "Mr. Barnes" established the "1401" address solely for purposes of this

---

[9] *See* https://www.californiaregisteredagent.com (listing address as 1401 21st Street, Sacramento, California).

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**   9

litigation. If, instead, this address were his regular address, it strains credulity to believe that he would have miscited it, on multiple occasions, to the Court.

*Fifth*, Barnes's signature on various documents are radically different. *Compare below,* ECF No. 399 (Barnes's purported objection where he signs the letter and signs his withdrawal of an objection) *with* ECF No. 421 (signature on notice of appeal). Again, this consistency increases the likelihood of fraud.

*Sixth*, "Barnes" has refused to confer with Class Counsel by video.  Class Counsel requested, on numerous occasions, that Barnes meet and confer with Class Counsel to discuss his objection and/or appeal. Although Barnes responded to emails and left counsel one voicemail, he avoided getting on a video link call with Class Counsel. Zapala Decl. ¶ 19.

*Seventh*, "Barnes" claims to live in Sacramento, California. *See, e.g.*, Objection at ECF No. 399.  But the envelopes to his various objections and other filings with the Court show that his correspondence to the Court were mailed from Santa Clarita, a location in Southern California. *See, e.g.,* Zapala Decl. ¶ 9; ECF No. 405-1.

The facts listed above heighten both the probability of fraud and the importance of an appeal bond. Barnes' lack of standing (both because he likely does not exist and is not otherwise aggrieved by the claims filing procedure he challenges) supports imposing an appeal bond.

**2.     National Woodlands Preservation, Inc. (Karla Luna) Presents a Meritless Objection and Is Associated with Indicia Fraud**

Woodlands' objection also lacks merit, as this Court already found. A person allegedly named "Karla Luna" objected on behalf of purported class member "National Woodlands Preservation, Inc." on the (incorrect) ground that businesses were not entitled to recover. *See* ECF No. 401. This objection fails because the settlement *includes* businesses. The class definition, published on the settlement website in the Settlement Agreement and Preliminary Approval Order, as well as in the Email and Published Notice issued to potential class members, expressly makes that clear: "all persons ***and entities*** in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023 purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured" may submit claims. *See* ECF Nos. 390-1, 391-1, 391-3 (emphasis added). This

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   10 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

**3-ER-0297**

objection lacks merit. The basis of the appeal is even more confusing: the express language of the Settlement class definition includes entities, Woodlands filed a claim, and IPPs have confirmed that business entities are eligible to participate. ECF Nos. 390-1, 391-1, 391-3. Consequently, what is it that Woodlands is appealing?

Additionally, similar to Barnes, Woodlands (and its "CEO" Karla Luna) does not appear to exist and therefore lacks standing to appeal as an "aggrieved" class member. The following information indicates fraud and supports the imposition of an appeal bond.

*First*, the address (110 James Street, Hinton, West Virginia 25952) that Woodlands provided with its objection is wrong. No entity named "National Woodlands Preservation, Inc." is associated with that address. When Class Counsel obtained the telephone number associated with that address, it turned out to be a law firm named "Ziegler and Ziegler Law PC." *See* Zapala Decl. Ex. H (attaching a copy of a picture of that address).

*Second*, Woodlands appears not to exist as a compnay. When Class Counsel spoke with a representative of the phone number associated with Woodlands' purported "110 James Street" address, the person answering the phone told Class Counsel they "just work with a service company that uses their address for a bunch of businesses." *See* Hedley Decl. ¶ 17. When Class Counsel tried calling the service company, the service company refused to provide contact information for any of their alleged clients, including "National Woodlands Preservation Inc." *See* Zapala Decl. ¶ 29.

*Third*, Woodlands refused to provide an email or phone number in connection with its objection, despite being required to do so. See Zapala Decl. ¶ 26. "Legitimate objectors do not usually omit their email addresses and phone numbers." *In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1265 (11th Cir. 2021).

*Fourth*, "National Woodlands Preservation Inc." has no online presence, and no employees associated with it. A Google search of "National Woodlands Preservation Inc." returns no website for the entity and no hits, aside from hits associated with filings in this very case. Zapala Decl. ¶¶ 25-31.

*Fifth*, IPPs' oustide investigator researched whether Woodlands is fictitious and concluded

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  11 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

**3-ER-0298**

that it does not exist. *See* Hedley Decl. ¶ 17. While the investigator found a business certificate filing for Woodlands (#480544) through West Virginia's Secretary of State dated August 16, 2019, the investigator found no further evidence that such an entity actually existed, such as a record of employees or other filings. *See* Hedley Decl. ¶ 11. For example, the investigator found that the "Certificate of Existence" does not provide any additional identifying information. *Id.* The alleged entity had no UCC filings or additional regulatory or financial documents. *Id*. The investigator also investigated the "110 James Street" address Woodlands provided. *See* Hedley Decl. ¶ 14. Based on ordinary investigative techniques and the query of multiple databases regarding residential and commercial addresses, that address maintained no association with an entity named "National Woodlands Preservation, Inc." *Id.* Instead, as Class Counsel uncovered when they called the phone number associated with that address, the address belongs to a law firm: Ziegler & Ziegler. *See* Hedley Decl. ¶ 13.

**Sixth**, "Karla Luna," the person who signed Woodlands' objection, does not appear to exist. IPPs' outside investigator found that the "110 James Street" address Woodlands provided has no association with a person named "Karla Luna." Zapala Decl. ¶¶ 25-31. The investigator also could not locate a "Karla Luna" associated with Woodlands. The investigator further found no address, employment, or public record linking a "Karla Luna" with Woodlands. *See* Hedley Decl. ¶ 16.  While individuals named "Karla Luna" exist in the United States, none of these individuals had any connection to "National Woodlands Preservation Inc." *See* Hedley Decl. ¶ 17.

**Seventh**, the name "Karla Luna" has been associated with fraudulent claims in other class action settlements. For instance, claims administrator Angeion has rejected—*forty-six times*—purported claims coming from someone allegedly named "Karla Luna" because of suspected fraud. *See, generally* Decl. of Ryan Hallman in Supp. of IPPs' Mot. For Appeal Bond ("Hallman Decl.") ¶¶ 7-21 The claimant "Karla Luna" submitted claims associated with twenty-four distinct email addresses, and the emails provided were associated with entities or persons known to be fraud actors in connection with class action settlements. *Id.*

**Eighth**, like "Elman Barnes," the informatoin submitted by "National Woodlands Preservation, Inc." is inconsistent.  It claims to exist in West Virginia and that it purchased

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  12
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD

**3-ER-0299**

telescopes there. *See* ECF No. 401. But, its objection appears to have been mailed from Providence, Rhode Island. *See* ECF No. 401-1.

Given the substantial question as to whether Woodlands exists, let alone qualifies as a legitimate class member, an appeal bond is warranted.

### 3. Patrick Zhen Is Not a Class Member and Bears Indicia of Fraud

Zhen also lacks standing to object and appeal because he is not a class member. Zhen objected based on the fact that the Settlement Class does not include Puerto Rico as an indirect purchaser state. *See* ECF No. 402. IPPs' complaint only asserts indirect purchaser damages claims from certain states. *See* ECF No. 1. That list ***never*** included Puerto Rico. And for good reason: many courts in this district, and throughout the United States, have found that Puerto Rico is not an *Illinois Brick* repealer state. *See*, *e.g., United Food & Commercial Workers Local 1776 & Participating Emp'rs Health & Welfare Fund v. Teikoku Pharma USA, Inc.*, 74 F. Supp. 3d 1052, 1085–86 (N.D. Cal. 2014); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-MD-01819 CW, 2010 WL 5094289, at *4 (N.D. Cal. Dec. 8, 2010), *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 599 F. Supp. 2d 1179, 1187 (N.D. Cal. 2009); *In re Opana ER Antitrust Litig.*, 162 F. Supp. 3d 704, 723 (N.D. Ill. 2016); *In re Nexium (Esomeprazole) Antitrust Litig.*, 968 F. Supp. 2d 367, 409–10 (D. Mass. 2013); *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d 390, 413 (S.D.N.Y. 2011). But regardless of the legal question of whether it is, or is not, an *Illinois Brick* repealer state, Puerto Rico claims were never asserted in connection with the complaint. *See* ECF No. 1. Moreover, the Settlement Class does not include consumers or entities that purchased telescopes in Puerto Rico. *See* ECF No. 389 at 6.

Zhen's objection, therefore, is baseless because he does not have standing to object, as he is not a part of the Settlement Class. The Federal Rules of Civil Procedure plainly state that only class members have the ability to object to a class settlement. *See* Fed. R. Civ. Proc. 23(e)(5)(A). Moreover, the Ninth Circuit has repeatedly (and correctly) held that "only an aggrieved class member" has standing to object to a proposed class settlement. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig.* (*In re First Capital*), 33 F.3d 29, 30 (9th Cir.1994); *Glasser v. Volkswagen of Am., Inc.*, 645 F.3d 1084, 1088 (9th Cir. 2011), *Brown v. Hain Celestial Grp., Inc.*,

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**    13

No. 3:11-CV-03082-LB, 2016 WL 631880, at *10 (N.D. Cal. Feb. 17, 2016); *Ace Heating & Plumbing Co. v. Crane Co.*, 453 F.2d 30, 32 (3d Cir. 1971). Because Zhen is indisputably not a class member and thus lacks standing to object or appeal, this Court should impose an appeal bond to ensure payment of appellate costs once the Ninth Circuirt rejects his appeal.

Moreover, like "Mr. Barnes" and "National Woodlands Preservation, Inc.," Zhen's claim bears substantial indicia of fraud.

***First,*** Zhen did not provide information requested by and customarily provided by claimants—proof of purchase and residential address. Zhen never provided any evidence that he purchased any telescope, much less that he purchased one in a state covered by the Settlement. *See* Zapala Decl. ¶ 34. Similarly, instead of listing a residential address, he provided a P.O. Box. *See* ECF No. 402.

***Second,*** the residential address that IPPs located (503 Calle Modesta, Apt. 303, San Juan, PR 00924-4501) for purposes of service is connected with an individual associated with settlement claim fraud. *See* Zapala Decl. ¶ 36; and Engineer Decl. ¶¶ 11-12. The "503 Calle Modesta" address is linked to an individual named "Karla Corea." *Id.* "Karla Corea" was connected to a suspect claim in a case on which several of IPP counsel worked— *In re Transpacific Passenger Air Transp. Antitrust Liti.*, No. 07-cv-05634-CRB (N.D. Cal.), ECF Nos. 1356 at 4 (noting that a Nicaragua-based attorney, Karla Corea, who purportedly represented Corp Xanadu, emailed Class Counsel threatening legal action). Judge Breyer, in *Transpacific*, disallowed that claim. *Id.* at ECF No. 1378 ¶¶ 2-7; *see also In re Transpacific Passenger Air Transp. Antitrust Litig.*, No. 23-15118, 2024 WL 810703, at *1 (9th Cir. Feb. 27, 2024) (affirming district court), *cert. denied sub nom. Xanadu Corp v. Adlin*, 145 S. Ct. 278 (2024).

***Finally,*** another claims administrator has rejected multiple claims submitted by claimants named "Pat" or "Patrick Zhen" for suspected fraud. Claims Administrator Angeion, which has administered a number of class action settlements, has, on a number of occassions, received such claims by Zhen. *See, generally* Hallman Decl. ¶¶ 7-21. Those claims were rejected because Zhen's claims were associated with three different distinct email addresses and were associated with fraud. *Id.* Angeion did so because, in each instance, "Mr. Zhen's" claim was associated with

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   14 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

indicia of fraud.

### 4. Michael Sussman's Objection Lacks Merit and Is Associated with Indicia of Fraud

Sussman objects on principally the same ground on which "Elman Barnes" objected—that is, that claimants without a claim number must contact the claims administrator to get a claim number and file a claim. This procedure is hardly burdensome or undue, especially since the Court-appointed claims adminsitrator, Verita, imposed this requirement to avoid the filing of fraudulent claims. *See* ECF No. 419.

As this Court found at final approval, Sussman's objection and arguments lack merit. *First*, Sussman points to no actual provision in the Settlement itself that he claims to be unfair or undeserving of final approval. His objection and appeal, therefore, are invalid on this basis alone. *Second*, Sussman focuses on a procedure implemented not by the settlement agreement itself, but by the claims administrator—an entity afforded with substantial discretion by courts to administer its charge and weed ouf fraudulant claims. *See, e.g.*, *Gendron v. Shastina Props., Inc.,* 578 F.2d 1313, 1316 (9th Cir. 1978); *Miller v. Travel Guard Grp., Inc.*, No. 21-CV-09751-TLT, 2024 WL 5341150, at *21 (N.D. Cal. Apr. 9, 2024). Requiring potential claimants to engage in a double authentication process to ensure they are not a "bot" to prevent the submission of false claims saves the class substantial claims administration costs of adjudicating fraudulent claims is not burdensome. Moreover, requiring claim numbers for online payment is neither unfair nor burdensome. The claims administrator assigned claim numbers to anyone who filled out the settlement intake form. See ECF No. 404. This form required only basic information, such as name, address, and proof of purchase. *Id.* Once the claims administrator received the form, it sent the claimant a claim number. *Id.* As such, the objections lack merit.

Finally, like the other three Objectors, Sussman is associated with indicia of fraud. The address Sussman provided (23200 Camino Del Mar, #503, Boca Raton, FL 33433), *see* ECF No. 403, does not appear to be an address for Sussman. It is not associated with anyone named "Mike" or "Michael" Sussman. In connection with IPPs' continuing effort to verify these objectors' real identity, IPPs attempted to serve Sussman with discovery and sent a process server to 23200 Camino Del Mar. The process server was unable to serve Sussman with the discovery, although he

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   15
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD

left a packet of information at the door that Sussman alleges is his address. *See* Declaration of Reasonable Diligence from A&A Legal re: Mike Sussman. The process server spoke with residents of the building *and* the property manager. Each resident and the property manager stated that they did not know anyone by the name of Mike or Michael Sussman living at the address. *Id.* It appears as though the address Sussman provided in connection with his objection is not actually his address, additional indicia of fraud that further justifies the imposition of an appeal bond.

**D.    The Court Should Impose an Appeal Bond of $42,818 on Each of the Objectors**

Once a court decides to impose an appeal bond, it must decide the appropriate amount for the bond. The Federal Rules of Appellate Procedure provide that a district court may tax costs resulting from "(1) the preparation and transmission of the record; (2) the reporter's transcript, if needed to determine the appeal; (3) premiums paid for a supersedeas bond or other bond to preserve rights pending appeal; and (4) the fee for filing the notice of appeal." Fed. R. App. P. 39(e); *see also Netflix*, 2013 WL 6173772, at *4. In addition, the Ninth Circuit has held that "costs other than those identified in FRAP 39 can qualify as 'costs' for purposes of Rule 7 if they are so defined by some positive law, such as a fee-shifting statute." *Netflix*, 2013 WL 6173772, at *4 (citing *Azizian*, 499 F.3d at 958) ("[T]he costs identified in Rule 39(e) are among, but not necessarily the only, costs available on appeal [for purposes of Rule 7]."). Additional costs, such as the claims administration costs during the pendency of the appeal, can also be included in an appeal bond, as this Court itself has held. *See Netflix*, 2013 WL 6173772, at *4; *In re Compact Disc Minimum Advertised Price Antitrust Litig.*, No. 2:2000-md-01361, 2003 WL 22417252, at *1 (D. Me. Oct. 7, 2003) ("damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond"); *In re Broadcom Corp. Sec. Litig.*, No. SACV-01-275-DT, 2005 U.S. Dist. LEXIS 45656, at *11–12 (C.D. Cal. Dec. 5, 2005).

**1.    The Bond Should Include Claims Administration Costs**

Consistent with this Court's past decisions, it should include costs associated with the claims administration process that the class will be forced to endure during the pendency of these frivolous appeals. Courts, including this one, have repeatedly imposed claims administration costs as costs associated with an appeal bond. For instance, in *Netflix*, this Court approved a privacy

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   16
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD

class action settlement over the objecton of certain objectors. *Netflix*, 2013 WL 1120801, at *13. When those objectors appealed, class counsel in that case sought an appeal bond, which included the costs of claims administration that the class and counsel would endure while the objector appeals proceeded. This Court granted the request, finding that "an appeal bond totaling $21,519 from each of the individual Objectors is proper[,]" which included claims administration costs. *See also Azizian*, 499 F.3d at 958 (the court may include such expenses in the appeal bond if an applicable rule or statute defines them as "costs"); *Miletak*, 2012 WL 3686785, at *2 (including $50,000 in "administrative costs" in the appeal bond, and defining such costs to include those incurred in order "to continue to service and respond to class members' needs pending the appeal") (internal quotations omitted); *In re Compact Disc*, 2003 WL 22417252, at *1 ("damages resulting from delay or disruption of settlement administration caused by a frivolous appeal may be included in a Rule 7 bond"). Indeed, courts have granted bonds of up to $517,000, which included the administrative costs of "updating address and other information needed to remain in contact with Class members, locating lost Class members, sending notices to Class members to apprise them of Objector's appeal and keep them informed about the status of the appeal, paying monthly fees for maintaining the website created to inform Class members, and providing phone support to answer inquiries from the Class members." *Broadcom*, 2005 U.S. Dist. LEXIS 45656, at *11–12.

As set forth in the evidence herein, Class Counsel expect that significant claims administrative costs will be incurred pending the resolution of these frivolous appeals. These costs include, but are not limited to, those necessary to: maintain and administer the Settlement Website and toll-free phone number; answer questions from class members; manage and file taxes for the settlement fund escrow account; process claims; and pay monthly storage costs. Class Counsel projects, based on estimates from the court-appointed claims administrator, that the cost of continuing such services will be approximately $2,595 per month, over a span of 16.5 months,[10]

---

[10] *UNITED STATES COURT OF APPEALS for the NINTH CIRCUIT, Office of the Clerk, FREQUENTLY ASKED QUESTIONS,* December 2023, https://www.ca9.uscourts.gov/general/faq/

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**    17

the average length of time from notice of appeal to decision in the Ninth Circuit. *See* Decl. of Angelique Dizon in Supp. of IPPs' Mot. for Appeal Bond ¶¶ 3–4 (providing a detailed breakdown of expenses associated with administration). Courts under similar circumstances have approved administrative costs by multiplying the estimated monthly increase in settlement administration costs by the median length of a Ninth Circuit appeal. *See Dennings v. Clearwire Corp.*, No. C10-1859JLR, 2013 WL 945267, at *2 (W.D. Wash. Mar. 11, 2013) (approving $39,150 in administrative costs in the amount of $39,150.00; using this "sound methodology that is supported by evidence"). Accordingly, the Court should include $42,818 in increased and necessary administrative costs (in addition to the $100 in taxable costs under Rule 39) when calculating each bond to impose against the Objectors.

### 2.     The Appeal Bond Should Include Taxable Costs Under Rule 39

Rule 7 does not expressly require Plaintiffs to make any showing of costs for a bond motion. *See* Rule 7; *In re Ins. Brokerage Antitrust Litig.*, MDL 1663, No. 04-5184 (GEB), 2007 WL 1963063, at *3 (D.N.J. July 2, 2007) (Rule 7 does not require any "showing of costs for a bond motion"). Nonetheless, where a movant can show costs, courts incorporate them when imposing appeal bonds, often to the tune of tens of thousands of dollars. *See In re Initial Pub. Offering Sec. Litig.*, 721 F. Supp. 2d 210, 216 (S.D.N.Y. 2010), *opinion clarified*, No. 21 MC 92 SAS, 2010 WL 5186791, at *1 (S.D.N.Y. July 20, 2010) (awarding $25,000 in taxable costs for copying and reproduction of the record); *Miletak*, 2012 WL 3686785, at *2 (granting $10,000 in Rule 39 appellate costs alone); *In re MagSafe*, 2012 WL 2339721, at *1 (granting $15,000 in taxable costs).

Here, the printing and administrative costs associated with responding to the appellate brief will not be insignificant. Based on recent experience filing briefs in the Ninth Circuit, and in light of the fact that the appeals have not yet—and may not ever—be consolidated, IPPs conservatively estimate that the costs of printing, copying, and mailing the briefs in each appeal will total approximately $175. Zapala Decl. ¶ 5. In two other recent Ninth Circuit appeals, counsel for IPPs incurred printing and copying costs of $95.20 and $136, respectively, in addition to $60 in Federal Express charges in each case. *Id.* A more precise estimate is not possible at this stage, as the

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR   18
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;
Case No. 5:20-cv-03639-EJD

ultimate cost will depend on the length of briefs that have yet to be written. Zapala Decl. ¶5.

**IV.    CONCLUSION**

This Court possesses ample authority and justification to require that each Objector post Rule 7 appellate bonds. As explained above, each objection and subsequent appeal lacks legal support and will delay the distribution of settlement money to the Class. The appellees should not have to bear the costs of the unjustified appeal of these Objectors. Thus, IPPs respectfully request that the Court enter an Order requiring each Objector to immediately post an appeal bond in the amount of $42,818 or any other such amount that the Court finds appropriate.

Dated: July 14, 2025                              Respectfully Submitted,

*/s/ Adam J. Zapala*

Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Christian S. Ruano (SBN 352012)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

*/s/ Kalpana Srinivasan*

Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (pro hac vice)
Texas SBN 24102452
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR    19 APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES; Case No. 5:20-cv-03639-EJD**

Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

/s/ *Lin Y. Chan*
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
**LIEFF CABRASER HEIMANN &
 BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Co-Lead Counsel for the Indirect Purchaser
Plaintiffs*

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  20
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

**3-ER-0307**

**E-FILING ATTESTATION**

I, Adam J. Zapala, am the ECF User whose ID and password are being used to e-file this document and all documents submitted therewith.  In compliance with Civil Local Rule 5-1(i)(3), I hereby attest that each of the signatories have concurred in this filing.


/s/ *Adam J. Zapala*
Adam J. Zapala

**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR  21
APPEAL BOND; MEMORANDUM OF POINTS AND AUTHORITIES;**
**Case No. 5:20-cv-03639-EJD**

**3-ER-0308**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **DECLARATION OF ADAM J. ZAPALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND** |
| THIS DOCUMENT RELATES TO: | **Dept.: Courtroom 4** |
| All Indirect Purchaser Actions | **Judge: Hon. Edward J. Davila** |
| | **Date: August 14, 2025** |
| | **Time: 9:00 a.m.** |

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;**
**Case No. 5:20-cv-03639-EJD**

**3-ER-0309**

I, Adam J. Zapala, declare as follows:

1.     I, Adam J. Zapala, am a partner at Cotchett, Pitre & McCarthy, LLP., one of the three firms appointed as Settlement Class Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

2.     I submit this Declaration in support of the IPPs' Motion for Appeal Bond.

3.     On or around the date for objections and opt-outs/exclusions that was set by the Court for final approval of the proposed IPP settlement, counsel for the IPPs received approximately five objections. Many of the objections that counsel for the IPPs received raised indicia of potential fraud, and this caused counsel for the IPPs to look further into information concerning the alleged identities of the persons or entities submitting claims or objections. In this Declaration, I have attempted to summarize our efforts to investigate these issues.

4.     As an initial matter, counsel for the IPPs initially decided to hire an outside investigator, Brian Hedley, to investigate the alleged claims and objections of two alleged class members—"Elman Barnes" and the entity "National Woodlands Preservation, Inc.," along with its alleged CEO, "Karla Luna."

5.     Based on Federal Rule of Appellate Procedure 39 and Circuit Rule 39-1, the fact that the appeals have not yet and may not ever be consolidated, and my firm's expenses printing, copying, and mailing briefs in other recent Ninth Circuit appeals, I conservatively estimate that printing, copying, and mailing the briefs in each appeal will cost $175. In two other recent cases the firm spent $95.20 and $136 on printing and copying. In both those cases the firm also spent $60 on Federal Express costs. A more accurate estimate is impossible, since the cost depends on the length, in pages, of briefs that have yet to be written.

**ELMAN BARNES**

6.     **Objection.** As noted, counsel for IPPs received an objection from a person purporting to be named "Elman Barnes." Attached as **Exhibit A** is a true and correct copy of the objection received by counsel for the IPPs. Also attached as **Exhibit A** is a true and correct copy

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;    1
Case No. 5:20-cv-03639-EJD**

of the cover letter to "Mr. Barnes's" purported objection.

7.     As the objection reveals, "Mr. Barnes" purportedly objected to the double authentication process that the Court-appointed claims administrator imposed due to fraudulent claims being submitted.

8.     Despite "Mr. Barnes" contending that the process was overly burdensome, he was undoubtedly able to submit a claim form. Verita has confirmed that a "Mr. Barnes" submitted a claim form. A true and correct copy of the claim for "Mr. Barnes" is attached hereto as **Exhibit B**.

9.     "Mr. Barnes" subsequently withdrew a portion of his objection. A true and correct copy of his notice of withdrawal is attached hereto as **Exhibit C**. Despite saying that "he" lives in the Sacramento area, and depsite claiming that his return address is the "401 21st Street" address, the envelope to his withdrawal shows that it was sent from "Santa Clarita." *See id.* Santa Clarita is in Southern California.

10.     **Investigation.**  Several aspects of "Mr. Barnes's" claim and objection appeare suspect to Class Counsel. Accordingly, Class Counsel began conducting an investigation into "Mr. Barnes" to determine who he is and whether he exists at all.

11.     First, Class Counsel performed an internet search of the name "Elman Barnes" to see if results would come back to better understand who he is. The internet search for an "Elman Barnes" revealed that "Mr. Barnes" had no online presence whatsoever. Aside from documents associated with "his" objection in this case, a search for the name "Elman Barnes" returned no hit results. In this day and age, in Class Counsel's experience, this absence of an online presence by itself is highly irregular.

12.     Next, Class Counsel looked into the address that "Mr. Barnes" utilized in connection with his objection. As this Court knows, in order to submit an objection, putative objectors were supposed to provide their residential address information.

13.     In connection with his objection, and the notice of withdrawal of his objection, "Mr. Barnes" lists his address as "401 21st Street, Ste. R, Sacramento, CA 95811." *See* ECF Nos. 399, 399-1.  Class Counsel investigated this address and determined that no such location exists in Sacramento. This lack of a real address is a further indicia of fraud in the claims process with

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;   2
Case No. 5:20-cv-03639-EJD**

respect to Mr. Barnes.

14.     Additionally, Mr. Barnes appears to have mis-cited his address information in connection with the submission of his objection and claim. As stated above, his cover letter and objection itself list his address as "401 21st Street, Ste. R, Sacramento, CA 95811," but, as noted, that address does not exist at all.  He did, however, also submit the claim form that he submitted to the Court-appointed claims administrator in connection with his objection. *See* ECF No. 399 at pg. 9 of 12. In that claim form, he informed Verita that his address was "*1*401 21st Street, Ste. R, Sacramento, CA 95811." (empahasis added) That address does exist. Thus, it appears as though "Mr. Barnes" erroneously listed his own purported address—multiple times—in the submission to the Court.

15.     Notwithstanding these errors, Class Counsel nevertheless investigated the address that "Mr. Barnes" listed in his claim form—"1401 21st Street, Ste. R, Sacramento, CA 95811." This address is not a residence. Instead, this address corresponds to the business "Registered Agents of California." A true and correct copy of a print out from "Registered Agents of California's" website demonstrating that it occupies that address is attached hereto as **Exhibit D**.

16.     Further, a true and correct copy of the webpage of "Registered Agents of California" is attached hereto as **Exhibit E**, showing the type of business in which it engages. Apparently, "Mr. Barnes" utilizes "Registered Agents of California" as a registered agent for service of process. The use of a registered agent is something an individual does when attempting to conceal their real address information. The fact that Mr. Barnes provided Class Counsel with his address through a registered agent, rather than his real address, is further indicia of fraud.

17.     Class Counsel also investigated the alleged email address that "Mr. Barnes" submitted in connection with his objection. "Mr. Barnes" listed his email address as "elmanmethod@theacheivementcoaches.com." Class Counsel conducted an online search for the email address: "elmanmethod@theacheivementcoaches.com." The online search resulted in no hits for this alleged email address, which is also exceedingly rare in this day and age. The fact that Class Counsel could not locate "Mr. Barnes's" alleged email address online was further indicia of fraud. A true and correct copy of the search for Mr. Barnes's email address is attached hereto as

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;   3
Case No. 5:20-cv-03639-EJD**

**Exhibit F**.

18.    Next, Class Counsel investigated the URL of "Mr. Barnes" email adddress to determine whether it is a legitimate webpage. The "achievementcoaches.com" URL is not a real or active website and is registered to a person/organization whose name has been redacted for privacy. When persons or entities buy a domain name, as the registrant, the purchaser must disclose certain data, like contact information. The person/organization who bought this domain name, however, took the extra step of USING a third party to purchase the domain name to keep their contact information private. This unusual step, to Class Counsel, was further indicia of fraud.

19.    After "Mr. Barnes" submitted his objection but before the hearing on Final Approval, as part of Class Counsel's investigatory process, Class Counsel sought to meet and confer with "him." In doing so, Class Counsel asked—several times—to have a video link call with "Mr. Barnes", including through web interface sites like Zoom or Microsoft Teams. On each occasion "Mr. Barnes" refused a video link call. This refusal to meet-and-confer by video is further indicia of fraud.

20.    Given Class Counsel's concerns about representations that "Mr. Barnes" made in connection with his claim and objection in this litigation, Class Counsel directed an internal investigator and an outside investigator to determine whether they could locate a legitimate person named "Elman Barnes." Both investigators, whose declarations accompany this Motion, could locate no legitimate person named "Elman Barnes" who they believed was the person submitting this claim and objection. Their inability to locate "Elman Barnes" is further indicia of fraud.

21.    Finally, as part of Class Counsel's investigatory process, we compared the various signatures that "Mr. Barnes" has purportedly affixed to various filings in this matter. For example, "Mr. Barnes" submitted his signature in connection with his objection. *See, e.g.*, ECF No. 399. "He" also submitted a signature in connection with his withdrawal of a portion of his objection. *See, e.g.*, ECF No. 405. Finally, "Mr. Barnes" submitted his signature in connection with the group "Notice of Appeal" "he" allegedly filed with three other objectors. *See, e.g.*, ECF No. 421. If one compares the signatures submitted with respect to ECF Nos. 399 and 405, with the signature submitted in connection with "his" notice of appeal, one sees that the signatures differ

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;    4
Case No. 5:20-cv-03639-EJD**

radically and likely were not executed by the same person, or at least not a person named "Elman Barnes." *Compare* ECF Nos. 399, 405 *with* ECF No. 421. The radically different signatures that "Mr. Barnes" has submitted in connection with these filings is further indicia of fraud.

22.    Moreover, even after he submitted his claim form with the registered agent as his address, he continued to mis-cite his address information in connection with filings with the Court. For example, in connection with the withdrawal of portions of his objection, he continued to erroneously list his address as "401 21st Street" in Sacramento. *See, e.g.*, ECF No. 405. He did so again with respect to the envelope he submitted to the Court. *See, e.g.*, ECF No. 405-1. As noted, that address does not exist. These facts are further indicia of fraud.

23.    Elman Barnes did not appear at the fairness hearing, nor request the ability to do so via phone or video. The fact that he did not appear (but now appeals) is further indicia of fraud.

## NATIONAL WOODLANDS PRESERVATION, INC.

24.    In addition to "Mr. Barnes's" claim and objection, Class Counsel also received the purported objection of "National Woodlands Preservation, Inc." Their objection was signed by its purported "CEO," "Karla Luna." A true and correct copy of "National Woodlands Preservation, Inc.'s" objection is attached hereto as **Exhibit G**. Despite claiming that they exist in West Virginia, the envelope accompanying "National Woodlands Preservation, Inc." shows that the objection was mailed from Providence, Rhode Island, not West Virginia. *See id.*

25.    "National Woodlands Preservation, Inc." purportedly objected on the ground that business entities were ineligible to participate. *See id.* But that objection simply misunderstands the settlement and the settlement class. As those two documents make clear, businesses are able to participate in the settlement. And notwithstanding "National Woodlands Preservation Inc.'s" objection, the Claims Administrator explained to it that businesses are eligible to participate, and it submitted a claim.

26.    In connection with "National Woodlands Preservation Inc's" objection, it was supposed to provide address information, an email, and a telephone number so that Class Counsel or the Claims Administrator could contact it. Despite these requirements, "National Woodlands

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond; 5**
**Case No. 5:20-cv-03639-EJD**

Preservation Inc." did not submit an email address or phone number. This omission, to Class Counsel, was further indicia of fraud.

27.     Although it did not submit an email address or phone number, "National Woodlands Preservation Inc's" objection did include an address: 110 James Street, Hinton, West Virginia 25951.

28.     Class Counsel conducted an investigation into the address in West Virginia and determined that the address is not associated with "National Woodlands Preservation Inc." or any entity with a similar name. Instead, the occupant of that address is a law firm: Ziegler & Ziegler LC. A true and correct copy of a picture of that address is attached hereto as **Exhibit H**. The two investigators engaged by Class Counsel also have confirmed the information relevant to this address.

29.     Class Counsel found a phone number associated with the address that "National Woodlands Preservation, Inc." provided as part of their objection. To be clear, this number is not a phone number that "National Woodlands Preservation, Inc." provided. Instead, this number is a phone number associated with the physical address "National Woodlands Preservation, Inc." provided. When Class Counsel called that number, the person that answered told Class Counsel that they "just work with a service company that uses their address for a bunch of businesses." When Class Counsel tried calling the service company, the service company refused to provide contact information for any of their alleged clients, including "National Woodlands Preservation Inc." This is further indicia of fraud.

30.     Given the above facts as they relate to "National Woodlands Preservation Inc.," Class Counsel conducted further investigation into the existence of an entity allegedly named "National Woodlands Preservation Inc." An internet search of that entity's name yielded no results, aside from filings in this very case. A true and correct copy of the internet search for "National Woodlands Preservation Inc." is attached hereto as **Exhibit I**. It is very rare in this day and age for a company or entity not to have any online presence. This lack of an online presence is further indicia of fraud.

31.     Neither "National Woodlands Preservation Inc.," or its alleged CEO Karla Luna,

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;   6
Case No. 5:20-cv-03639-EJD**

appeared at the fairness hearing, nor did they request the ability to do so via phone or video. This failure to appear (despite now appealing) is further indicia of fraud.

### PATRICK ZHEN

32.    Patrick Zhen alleges that he is a citizen of Puerto Rico. Mr. Zhen argued that the settlement should not be approved because it does not include indirect purchasers from Puerto Rico.

33.    But, as Class Counsel pointed out at the fairness hearing, IPPs' complaint never included damages claims for purchasers of Puerto Rico and never asserted Puerto Rican claims or included a Class Representative from Puerto Rico. The settlement class defined in the Settlement Agreement also does not include purchasers from Puerto Rico, and thus does not release such claims either. Accordingly, even crediting Mr. Zhen's allegation that he purchased a qualifying telescope, he lacks standing to object and appeal under longstanding black-letter law in the Ninth Circuit.

34.    Mr. Zhen purports to have purchased a telescope. He does not indicate what kind of telescope he purchased, when he purchased it, or whether it was a telescope manufactured by a Defendant. This failure to substantiate his purchase is indicia of fraud.

35.    Class Counsel investigated Mr. Zhen's residential address in Puerto Rico for purposes of serving Mr. Zhen with discovery. During that process, Class Counsel requested that an internal investigator run a search to determine Mr. Zhen's residential address in Puerto Rico. A fuller description of that process is provided in the Declaration of Nirav Engineer, accompanying this Motion. A true and correct copy of the report generated from the search for Mr. Zhen's residential address is attached hereto as **Exhibit J**.

36.    In connection with that search, it was discovered that a female by the name of "Karla Corea" is linked to Patrick Zhen. In a separate case pending before Judge Breyer, which involved some of the same law firms as Class Counsel in this case, that court found a claim linked to Ms. Corea was potentially fraudulent. Judge Breyer denied the entity's claim, finding that it was not in fact a class member. Ms. Corea—the woman linked to Mr. Zhen in the investigator's report—was associated with the claim in that case. *See In re Transpacific Passenger Air*

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;    7
Case No. 5:20-cv-03639-EJD**

*Transportation Antitrust Litig.*, No. 07-cv-05634-CRB (N.D. Cal.), ECF Nos. 1348, 1391. This is further indicia of fraud.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 14th day, July 2025 in Burlingame, California.

/s/ *Adam J. Zapala*

Adam J. Zapala

**Zapala Declaration in Support of Indirect Purchaser Plaintiffs' Motion for Appeal Bond;   8**
**Case No. 5:20-cv-03639-EJD**

3-ER-0317

# EXHIBIT A

Elman Barnes
401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

**FILED**

FEB 12 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST
LITIGATION

No. 5:20-cv-03639-EJD

This Document Relates to:
Indirect Purchaser Actions

## OBJECTIONS TO THE SETTLEMENT AND THE ADMINISTRATION THEREOF

Objector Elman Barnes (hereinafter "Objector") hereby states that he purchased an Orion telescope for approximately $250 at the Country Club Centre Walmart Supercenter in Sacramento in 2013 and is a member of the settlement class.

### I.   The Claims Process is Designed to Discourage Participation and Improperly Discriminates Against Retail Purchasers

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Objector never received a mailed notification about the settlement nor otherwise received a claim number.  The reason for this is obvious: Like many indirect purchasers shopping retail, the manufacturer would not know the name of the purchaser.  Indeed, if Objector purchased the

**3-ER-0319**

Case 5:20-cv-03639-EJD   Document 439   Filed 02/21/25   Page 12 of 165

item directly from a manufacturer, he would not be eligible for participation in the indirect settlement.[1]

Objector found out about the settlement online and visited the settlement website to find out more. Objector found that to enter a claim online he needed a **_claim number_**, which he does not possess since he is not one of the 4% of the potential class members on the Settlement Administrator's list of 166,875 purchasers. See https://veritaconnect.com/telescopesettlement/Claimant



In re Telescopes Antitrust Litigation Indirect Purchaser Actions Settlement

:uments   Important Dates & Deadlines   Frequently Asked Questions   Contact Information

What do you want to do?
'Required Fields
'Select one:

○ I have a claim number and I would like to securely file a claim online.

○ I have a claim number and I would like to download a personalized claim form, print it out, and mail it in. (You will only be asked to supply contact information.)

○ I DO NOT have a claim number, but I would like to download a personalized claim form, print it out, and mail it in. (You will only be asked to supply contact information.)

Because Objector did not have a claim number, he selected the third option to download a personalized claim form. The claim form generated is attached hereto and incorporated herein by reference as Exhibit B. The claim form is a true and correct copy of the resulting claim form downloaded from the website.

The generated claim form states on Page 2, under the "Payment Selection" heading:

_____

[1] The Settlement Administrator noted there are approximately 4,000,000 potential claimants and that 2,500,000 persons consist of Amazon.com purchasers. The Settlement Administrator stated that notice could be provided via Amazon, but it is unclear if the Amazon customers received the claims codes needed to file their claim online. Class Counsel should provide additional information in this regard. Furthermore, the Settlement Administrator maintains a class list of 166,875 records, about 4 percent of the potential claimants. Everyone else is prohibited from filing an online claim and must provide a paper claim via mail.

"If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com."

Objector *can't* submit his claim online because he does not have a claim number. Thus, the objector *can't* obtain a non-check form of payment.

This creates a situation where some class members who are contained on the small list of 166,875 class members are: (1) Provided an easy method to submit their claim; and (2) Are able to receive an easy form of payment such as electronic payment. For the other 96% of potential claimants like Objector, they must go through an onerous process.

Objector thus falls into the following subclass of class members: "Class members who purchased a telescope but do not appear on the list of 166,875 class members maintained by the settlement administrator."

Because of the favorable treatment provided to the 166,875 class members who received a claim number including an easy online form to fill out and different payment options, retail purchasers falling into Objector's sub-class are being discouraged from participation due to the onerous paper claims process and requirement to receive a paper check.

In addition, the 166,875 purchasers who received a claim number and the sub-class who did not necessarily means that the proposal does not treat "class members equitably relative to each other" in violation of Rule 23(e)(D). 96% of potential claimants fall into the paper-claim only group (unless the Amazon purchasers received actual claim numbers).

This also demonstrates that the named class members may "fairly and adequately protect the interests of the" 166,875 Class Members with claim numbers, but they clearly are not protecting the interests as to the Class Members who did not receive a claim number.

3-ER-0321

Indeed, by making onerous and difficult provisions as to persons who did not receive the claim number, Class Counsel is violating Rule 23(g)(4) by not adequately representing the interests of the class members, but only the 166,875 favored class members who received a claim number.

Certainly, forcing the normal retail buyer to submit a claim by paper and limiting them to receiving payment by paper check while other claimants received special and favored treatment, will discourage participation in this action by those forced to jump through hoops that the favored list of claimants do not have to.[2]

## II. If the Favored List is Appropriate, Class Counsel and the Settlement Administrator Must be More Diligent in Providing Claim Numbers

As explained, the list of Class Members who can be identified include 166,875 persons of a potential 4,000,000 claimants. However, only the favored persons receive claim numbers enabling an online claim and an electronic payment.

This Court should require full disclosure and determine whether Class Counsel and the Settlement Administrator can proactively obtain additional names to provide claim numbers to so that maximum reach occurs. Indeed, there will be a large disproportionate participation rate as to the select group of claimants who received a claim number and those who purchased the item retail and are not contained on any preferred claimant list.

This Court must also explore whether the 1,500,000 Amazon purchasers received claim forms or whether they were simply directed to the website and forced to download a paper form, fill it out, and mail it in. If so, why could the Settlement Administrator not provide claim numbers to these identifiable individuals?

---

[2]

Furthermore, why could the Settlement Administrator not have obtained similar lists from websites such as Walmart.com (which allows third-party vendors to sell their items and Walmart is used only as a checkout), e-Bay.com (which allows vendors to sell new products), etc.

It is clear that having a list of 166,875 potential claimants, giving them claims numbers and electronic payment choices, and then forcing all of the rest of the claimants to download a paper form, fill it out, mail it in, and then receive a paper check is not adequate to achieve a fair response and large number of claims.

### III. The Settlement Improperly Contains a Waiver of Civil Code 1542 Provisions

Paragraph 13 of the Settlement Agreement states that to participate in the settlement, Class Members must waive California Civil Code § 1542. It is unreasonable to force consumers to voluntarily waive legal provisions that the legislature has bestowed upon them. Unknown claims should be excluded from the release provided by Class Members to the defendants.

There are then listed categories of causes of action that the settlement does not resolve such as product liability and personal injury claim, but the so-called "unknown" claims encompassed in the Section 1542 waiver is undefined and without any explanation.

California Civil Code 1542 provides that, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

This statute exists to protect individuals from waiving rights they could not have known about. "Mere recital...that the protection of Civil Code, section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling." *Leaf v. City of San Mateo*, 104

Cal.App.3d 398, 411 (1980).

Neither Class Counsel nor the district court advised why the vast waiver of Section 1542 is appropriate in this case limited to antitrust matters, or even why it is needed. California courts have explained that the waiver requires analysis and is generally "not appropriate." California courts require authority and factual reasons why the case is an exception. *Israel-Curley v. California Fair Plan*, 126 Cal.App.4th 123, 129 (2005); *Salehi v. Surfside III Condominium Owners' Assn.*, 200 Cal.App.4th 1146, 1159–1161 (2011).

In this case, since the Class Action only resolves and relates to antitrust matters including unjust enrichment stemming from the antitrust claims, this Court must ask itself, "What purpose does the 1542 waiver of 'unknown' claims serve?"

For this reason, the settlement should be disallowed unless the waiver is removed.

## IV.  The Claim Form Improperly Asks for the State of Residence

The paper claim form that claimants have to fill out asks the misleading question, "State of residence at time of purchase." This is to determine if the purchase qualified as one in a repealer state.

The "State of Residence" is not relevant. The relevant question is the state where the purchase occurred. As an example, a claimant "residing" in northern Pennsylvania does not live in a repealer state; however, if he made the purchase just over the border in New York state, the antitrust tort occurred in New York and his purchase would be eligible.

On the other hand, a person who is "residing" in New York, but purchased the item in Pennsylvania, would not be eligible.

The website uses the phrase that the settlement "includes everyone who indirectly purchased one or more telescopes from January 1, 2005 to September 6, 2023, from a distributor/retailer that was manufactured by a defendant or alleged co-conspirator, while located in [the relevant states]." This language is more accurate, because a person is located in the state where they made the purchase at the time of the purchase, but it is still confusing and ambiguous language because a person might consider themselves located in New York because they have an apartment there, but they are technically ineligible if they drove to Pennsylvania to make the purchase.

The danger of the claim form is that it discourages persons who are eligible not to file because they do not "reside" in a non-repealer state. The proper language on the claim form must be: "What state did you purchase the telescope in?" Or "Did you purchase the telescope while in one of the following states:  XXXXX."

It is imperative that this Court rectify the matter and require the claim form and settlement to specify that the eligible claimants are based on the place of purchase and/or where the consumer received the product, and **not** the place of residence as the claim form so wrongly demands certification of.

## V.  This Court Should Appoint Counsel for the Sub-Classes

Lastly, it would appear that there is a reasonable possibility that, upon review of this objection, Settlement Administrator veritas might proceed to issue Objector with a claim number so that he can proceed to file his claim online, so as to moot his objection.  While Objector would certainly appreciate being made able to file his claim online, Objector respectfully requests that the Court declare that Objector is part of a similarly situated sub-class of Class Members that were never provided with any claim number, and that Class Counsel be directed to direct

Settlement Administrator Veritas to make the necessary changes to the claims process overall so as not to violate Rule 23 and thereby create subclasses that are being treated unfairly as compared to the rest of the Class. Or if current Class Counsel is unwilling or unable to direct the Settlement Administrator in this regard, then separate counsel should be appointed for the sub class.

Respectfully submitted,

Elman Barnes

# EXHIBIT B

*Telescopes Antitrust Litigation*
Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172

**CEHI**



61101012701

CEHI-61101012701

Elman Barnes

1401 21st St STE R

Sacramento, CA 95811

US

**VISIT THE SETTLEMENT WEBSITE BY SCANNING THE PROVIDED QR CODE**

*In re Telescopes Antitrust Litigation Indirect Purchaser Actions*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case No. 5:20-cv-03639-EJD
**Must Be Postmarked
No Later Than
May 20, 2025**

# Claim Form

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **May 20, 2025** AT
**www.telescopesettlement.com**, OR FILE BY MAIL POSTMARKED BY **May 20, 2025**.

Questions? Call 1-833-419-3506 or visit the website, **www.telescopesettlement.com.**

If you wish to receive any payment pursuant to the Settlement Agreement electronically,
please submit your claim online at www.telescopesettlement.com.

## CLASS MEMBER INFORMATION:

First Name     M.I.     Last Name

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City     State     ZIP Code

Email Address

Area Code     Telephone Number

*Failure to add your unique ClaimID, which can be found with your notice or by contacting the Settlement Administrator, will result in denial of your claim. If you received a notice of this Settlement by U.S. mail, your unique ClaimID is on the email or postcard. If you misplaced your notice, please contact the Settlement Administrator at 1-833-419-3506 or admin@telescopesettlement.com.*



61101012701

| FOR CLAIMS PROCESSING ONLY | OB | | CB | | ○ DOC ○ LC ○ REV | ○ RED ○ A ○ B |

1

**3-ER-0328**

## ELIGIBILITY:

1. Did you purchase one or more Telescopes branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell from a retailer or distributor from January 1, 2005 to September 6, 2023?

   ○ Yes *(Proceed to Question 2)*    ○ No *(You are not eligible to submit a claim)*

2. If you answered "Yes" to Question 1, please enter your purchase information below:

Make

Model

      /     /

Date of purchase

State of residence at time of purchase

$       .

Amount

Name of retailer or distributor where Qualifying Telescope was purchased

**If you purchased more than one telescope, please fill out all the information listed in Question 2 for each purchase on the additional page found at Appendix A or submit your claim online at www.telescopesettlement.com.**

**You do not need to submit receipts or confirming documentation at this time, but counsel for the Settlement Class may require it if an issue arises regarding the validity of your claim.**

## PAYMENT SELECTION:

How would you like to receive your payment? Choose **one** of the following:

○ **I wish to receive any payment pursuant to the Settlement Agreement by check at the address in the Class Member Information section.**

**OR**

○ **If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com.**

This information will be kept confidential by the Settlement Administrator.

## CERTIFICATION AND SIGNATURE:

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____    Dated (mm/dd/yyyy): _____

Print Name: _____


61101012701

2

**3-ER-0329**

**Appendix A**

**3-ER-0330**

**THIS PAGE INTENTIONALLY LEFT BLANK.**



# EXHIBIT C

Elman Barnes
401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

Objector

**FILED**

MAR 1 3 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST
LITIGATION

No. 5:20-cv-03639-EJD

This Document Relates to:
Indirect Purchaser Actions

RE: Entries 404 and 399

### RESPONSE TO MOTION TO APPROVE AND PARTIAL WITHDRAWAL OF OBJECTIONS TO THE SETTLEMENT AND THE ADMINISTRATION THEREOF

Objector Elman Barnes (hereinafter "Objector") respectfully requests that his objection entered onto the docket on February 12, 2025 (399) be modified in part to withdraw item IV **"The Claim Form Improperly Asks for the State of Residence."** The claim form has been modified by adding a field for state of purchase, and Objector believes that the current iteration of the form should not create any confusion among Class Members regarding this point.

Other points of objection remain a concern. Class Counsel has entered a Motion to Approve the settlement on February 28, 2025 (404). In that document Class Counsel argues that Objector's concerns are without merit.

For example, they state that "Verita Diligently Provided Claim Numbers," and refer to Objector's own case in which Objector did in fact complain about not having received a claim number, and was then issued a claim number (a week later). This is true, however it is not an adequate solution to Objector's concerns. The indisputable fact of the matter is that most class members DO NOT HAVE A CLAIM NUMBER. The

**3-ER-0333**

only mention of the possibility of obtaining a claim number was placed on the website after Objector's objections were entered. Now when one clicks the "File a Claim" button there is verbiage at the bottom of the page that says "If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one."

While everyone shares the Settlement Administrator's concern about fraudulent claims, making the claims process more onerous for legitimate Class Members is not an adequate solution because it discourages participation, and it has always been the case that only a very small percentage of eligible Class Members participate in consumer class actions by entering a claim. Fraud concerns aside, the goal should be to increase Class Member participation, not to decrease it. The vast majority of Class Members are not going to call in to get a Claim Number.

Both my objection with regards to ease of participation by Class Members as well as the Settlement Administrator's concerns with regards to fraud could easily be remedied by simply placing a button on the website that says "Class Members click here to receive your Claim Number in order to participate" and then providing a simple form with an automated email verification process to ensure that the request is being made by a real person and not by a robot, and when this process is completed successfully the claim number is emailed to the verified email address. This would eliminate fraudulent participation by bots, would eliminate the hurdle of making Class Members call the Settlement Administrator, and since it is automated would also result in potentially lower administration costs since it would reduce the need for physical staff to actually attend phone calls by the Class.

With regards to the matter of the § 1542 Waiver, Class Counsel cites In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig., No. 10-md-02151, 2013 WL 12327929, at *23 (C.D. Cal. July 24, 2013), as follows: "Class settlements often waive this protection, and such waivers are not generally viewed as an impediment to class settlement. . . . [T]he Court is dubious as to whether the class claims

could be settled absent such a waiver."

With due respect to this Court and to the Court in In re Toyota Motor Corp. Unintended Acceleration..., whether or not settlements could be reached without a § 1542 waiver should not be a factor in whether or not such waivers are routinely allowed. Rather, the intent of the California legislature in its construction of the law, and the constitutionality of that law should be the factors taken into consideration by the Court. Legislated legal protections should not be and arguably cannot legally be willy nilly waived by the courts merely for expediency's sake and the convenience of facilitating settlements.

Respectfully submitted,

Elman Barnes

# EXHIBIT D

**Registered Agents of California** | **Start a Business** | **Resources** | **About Us** | **Contact**

**Sign In** | **Hire Us**

# Contact

1401 21st Street Suite R

View larger map

## Contact Info

1401 21st Street STE R

Sacramento, CA, 95811

(530) 768-2211

## Or send us a message:

**First Name**

**Last Name**

**Email**

**Company Name (optional)**

3-ER-0337

**Phone Number (optional)**

**Message**

I'm not a robot

reCAPTCHA
Privacy · Terms

SEND MESSAGE

Questions? Call: (530) 768-2211

1401 21st Street STE R, Sacramento, CA, 95811



# R A C

Registered Agents Of California

Privacy Policy        Terms & Conditions

3-ER-0338

# EXHIBIT E



**Registered Agents of California** | **Start a Business** | **Resources** | **About Us** | **Contact**

**Sign In** | **Hire Us**

# Registered Agents of California

## The Fairest Price in California

Ready to begin your California business adventure? At Registered Agents of California, we offer comprehensive registered agent service for an affordable price. For just $50 a year, you'll get all the tools needed to thrive in the Golden State without breaking the bank.

- **Privacy protection.** Get a professional business address you can list (instead of your home address) on state forms.

- **Security & convenience.** With your free online account, you can view your documents from one secure location. And, with 24/7 access anytime, anywhere, you'll never have to worry about missing anything important.

- **California Business Presence.** Get a 90-day free trial of our web & phone services to create an online presence.

- **Compliance support.** For zero upfront fees, our expert team will file your biennial or annual Statement of Information on behalf of your company, ensuring you're never subject to state penalties.

### Our Service Includes:

- Instant Registered Agent Service

- Business Address Included

- Secure Online Account

- Compliance Service Enrollment (no upfront fees)

- Use Our Address, Not Yours

- $50 Per Year

GET A REGISTERED AGENT

Get California Registered Agent Service

3-ER-0340

# Reliable Local Expertise Since 2005

Do you want us to form your new company or register your existing company? Registered Agents of California can do that too for just $150 plus state fees.

**Start a New Business in California**

**Register an Existing Business in California**

# What is a Registered Agent in California? Everything You Need to Know

A California registered agent is simply an individual or an entity that accepts service of process—legal notice of a lawsuit —and other official documents on behalf of a business. A California registered agent is also known as a California corporate agent, a California agent for service of process, or a California statutory agent.

Basically, if your business gets sued, the State of California wants to make sure the court can reliably contact you. The law requires that the owners of a business are properly notified.

# California Business Address & Registered Agent Services – Best Solutions

Let's be honest. If you're starting a business, you need a California registered agent to fulfill your statutory requirement with the Secretary of State. A registered agent service should protect your privacy. Sadly, many companies out there simply don't.

3-ER-0341

When you hire us, we also provide a **business address** to use anywhere on your formation documents. This is a serious perk that most companies don't offer. It can help you keep your home address off the public record (and spare you from being the target of aggressive marketing campaigns or — worse yet — surprise visitors at your doorstep). Use of our business address is included at no extra cost when you hire us for registered agent service.

We charge one price. The price doesn't go up year after year. There are no add-ons or up-sells. Just one fair price for a registered agent who protects your privacy: $50.

**What do you get with Registered Agents of California's $50 California services?**

- Immediate Access to Digital Client Portal
- Use of Our Address for your California Business Address
- Compliance Service Enrollment (no upfront fees)
- All State Forms and Templates in Your Portal
- All Corporate Documents we receive are scanned to you in Real Time
- Cancel for Free Anytime

Our fees are low because we keep overhead down and operate with a small but efficient staff. Our business model is simple: excellent customer service leads to repeat business. If you stay with us year after year, then we do well. If we don't meet your needs, you go somewhere else, and our business suffers.

That's our plan in a nutshell.

**Registered Agent California + Free Business Address**

# California Registered Agent Legal Compliance – Requirements & Duties

3-ER-0342

1. **We Accept Service of Process & Legal Notices**
   When your company is sued, we accept the service of process sent by the court. We scan it and upload it to your client portal and notify you immediately. This gives you ample time to respond to the lawsuit.

2. **We Accept Business Mail & Compliance Reminders**
   We scan and upload all official business mail and state notifications, like tax documents and compliance reminders sent by the Secretary of State. Then, when the time comes, our local experts will submit your Statement of Information on your behalf for $100 plus state fees, ensuring your business remains compliant and avoids hefty late fees. You'll pay ZERO upfront fees and can easily cancel this service inside your secure account.

3. **We Prepare & Submit Additional California Business Filings**
   As our client, you will have access to our full database of California business filings. You can download these forms and file them yourself whenever you need, or you can hire us to prepare and submit them for you. These include filings like amendments to your formation documents or registering a Trade Name (DBA).

4. **We Protect Your Reputation**
   Even the most upstanding companies receive frivolous lawsuits. As your registered agent, we accept legal notices on behalf of your company, which means that such notifications are never served in front of your customers or clients.

5. **We provide a California Business Address**
   You'll have to list a business address on your formation documents, and that address will become part of the public record. To protect your privacy, we provide a California business address for you to use on your filings.

3-ER-0343

Get a California Registered Agent for Your Legal
Documents

# Hire a California Registered Agent – Legal Compliance Made Easy

Having a registered agent is necessary for businesses in California (CA Corp Code § 1700-1702). But having a *great* registered agent can make life a little easier. So, what do you get for $50 a year?

- ## The Fastest, Most Reliable Compliance Alert System

  Probably the worst thing that can happen is for your registered agent to fail to deliver your service of process in a timely manner. Believe it or not, this is common in the industry, as there are no real standards for registered agents. Late delivery can lead to a default judgment against your business and losing your legal authority to do business in California. This is why we have designed the quickest, most efficient alert system in the business.

  Your service of process is scanned and uploaded into your client portal immediately after we receive it. This instantly kicks in our alert notification system, and you will receive an update the same day: email, phone, fax, text, mail — whichever method you prefer. Want us to contact your lawyer? Business partners? Spouse? Simply add them to the list, and we will notify all of them.

- ## A Secure Client Portal for Storing & Managing Business Documents

  Your client portal is for more than viewing service of process. You can order any California business filing you

3-ER-0344

ever need from your client portal, and we will store all of these filings in your account for you to view whenever you need. All of your official documents, business mail and legal correspondence can be stored in your client portal, giving you a single secure center to manage all your business documents throughout the life of your company.

### ▪ Easy Expansion Into Other States

As your business grows, you may find yourself ready to expand into other states. This will require registration with those state's governing agencies. We can prepare and file all the necessary paperwork for every state in America, ensuring that you are fully compliant with those states' laws. In addition, we can provide the same compliance notices for additional states as we do for California.

### ▪ Total Customer Support Throughout the Year

If you ever have a question about our service, California business filings, or other related topics, you can give us a call anytime. We know every aspect of California business, and you can always get us on the phone. Customer service is our number one priority.

**Get Your Registered Agent Today – Quick, Easy, Done Right.**

## How to Change Your Registered Agent in California – Step-by-Step Guide

To change your registered agent in California, you'll have to file a Statement of Change with the California Secretary of State. Here's the process & cost breakdown for changing your registered agent in California:

3-ER-0345

1. Inform your current registered agent that you no longer need their services

2. Access your company's account with <u>bizfile Online</u>*

3. Complete and submit the Statement of Change document in your online account

Or, change your California Registered Agent in a single step:

1. <u>Hire us!</u> We'll take care of everything for you.

*If you don't have an online account and need help setting one up, you can follow the directions provided by <u>bizfile Online Account Setup and User Access Guide</u>.

### Hire Us – Change Your Registered Agent with One Easy Step

# California Registered Agent FAQ

<u>Why Hire A California Registered Agent Service?</u>

<u>Why Do I Need a Registered Agent?</u>

<u>Can I Be My Own Registered Agent?</u>

<u>What Does a Registered Agent Do?</u>

<u>How Does Service of Process Work?</u>

<u>How Are You Different From a Statutory Agent?</u>

<u>Can I Change My Registered Agent in California at Any Time?</u>

<u>What is Legally Required of a Registered Agent?</u>

<u>Can an LLC Be Its Own Registered Agent?</u>

<u>Do You Charge More for High-Volume Clients?</u>

<u>How Does the SOS Know My Registered Agent?</u>

3-ER-0346

How Do I Cancel Service?

# Why Hire A California Registered Agent Service?

**You Don't Have a Physical Office**

This is the law. You have to list a physical address in California. If you're a web-based business or someone who works from home, then hiring a registered agent solves this problem.

**You Don't Work Regular Hours**

A registered agent is required to keep regular business hours. If you work a non-government schedule, then you'll need a registered agent.

**You Desire More Privacy**

You can be your own registered agent in California, but you'll have to list your name and address in the public record. Many business owners don't want the hassle that comes with this (unsolicited phone calls, junk mail offers, etc.). Hiring a registered agent keeps your information out of the public record.

**You Don't Want the Hassle**

Your registered agent handles a wide range of business paperwork, logs these important documents and tracks your compliance deadlines. Many business owners find it simpler to hire an agent instead of doing this themselves.

# Why Do I Need a Registered Agent?

The California Corporation Code Section § 1700-1702 requires that all corporations, LLCs and other business entities appoint and maintain a registered agent. You can't start a business

3-ER-0347

without one (unless you're a sole proprietor, in which case you don't have to form an entity at all).

Additionally, a registered agent is required to have a physical address in California, and this office must be kept open throughout the year during regular business hours. This ensures that certified mail can be delivered in a reasonable time frame.

# Can I Be My Own Registered Agent?

Absolutely! Many small business owners will designate themselves as their own registered agent. There are, however, a few drawbacks to be aware of:

- Your information is entirely public. This includes your full name and address and contact information.
- You must have a physical address in the State. If you don't have a business office, you must list your home.
- You must keep regular business hours, so you may be at a disadvantage if you keep odd business hours.

# What Does a Registered Agent Do?

As a registered agent, we put our name and address on the public state record as a point of contact for your business. We accept your legal and state notices, and contact you promptly. That's our legal requirement and commitment, but here at California Registered Agent, we offer a lot more than what the state requires.

We offer a full suite of professional services to be **a one-stop-shop for your California business**. From state filing services to federal filings, like trademarks and EINs, we are here to handle what you need or just offer support and tools. We also extend beyond filing services to offer state of the art tools to manage, market and grow your business with address and virtual office services, as well as everything you need to build

3-ER-0348

your online business presence, like domains, customizable websites, professional email addresses, and business phone services.

# How Does Service of Process Work?

When a lawsuit is brought against your business, a court will issue a service of process: an official notice that your company is being sued. A process server will look up your company's state registration documents and find your registered agent. The process will then be served to your agent.

Serving your registered agent is considered legal notification of a lawsuit. Even if your agent fails to notify you, the court will assume that you are aware of lawsuit and you will be expected to respond appropriately.

# How Are You Different From a Statutory Agent?

We're the same thing. There are a number of names for registered agents:

- Agent for Service of Process
- Statutory Agent
- Commercial Agent
- Resident Agent

All of these terms refer to the same service.

# Can I Change My Registered Agent in California at Any Time?

3-ER-0349

Of course. You can change your California registered agent at any time by filing a Statement of Information with the California Secretary of State. This can be done easily online.

Corporations and LLCs have a regular filing window for submitting a Statement of Information. If the only thing you are changing is your agent and you file outside of your normal window, then the filing is free. Otherwise, the fee is $25 for corporations and $20 for LLCs.

# What is Legally Required of a Registered Agent?

California registered agents are required by law to:

- Maintain a California registered office (a physical address, not a PO box)
- Keep regular business hours all year long
- Maintain a California mailing address
- Accept service of process and legal correspondence on behalf of clients
- Contact clients when documents are accepted
- Forward documents to clients in a timely manner

# Can an LLC Be Its Own Registered Agent?

Not in California. State law specifically forbids LLCs from serving as registered agents in California.

# Do You Charge More for High-Volume Clients?

3-ER-0350

No.

No matter how much correspondence we receive on behalf of your business, we charge you the same amount each year. Our rates don't go up, and we have no per-doc fees.

We serve many high-volume clients who get dozens of services of process each year. One of the reasons they remain satisfied with our service is because we don't charge them extra for handling their correspondence.

# How Does the SOS Know My Registered Agent?

When you appoint a California registered agent, you make this designation on official formation documents which are filed with the Secretary of State. For LLCs, this document is called Articles of Organization. For corporations, it is called Articles of Incorporation.

The only other way to inform the Secretary of State is if you are changing agents, in which case you file your Statement of Information and make the change there.

# How Do I Cancel Service?

We've done everything we can to make canceling our California registered agent service a simple process. Simply log into your online account and cancel service with a one-click button. You don't have to call us or listen to a hard sell proposition. We'd love to keep your business, but we hate when canceling service is tough, so there's no way we'd do that to our own clients.

Questions? Call: (530) 768-2211

1401 21st Street STE R, Sacramento, CA, 95811

3-ER-0351

Case: 25-3098, 03/13/2026, DktEntry: 56.4, Page 73 of 252

7/11/25, 4:22 PM    Case 5:20-cv-03639-EJD    Document 436    Filed 07/21/25    Page 44 of 65
Registered Agents of California | Your Local CA Registered Agent



## Registered Agents Of California

[Privacy Policy](#)        [Terms & Conditions](#)

3-ER-0352

# EXHIBIT F

"elmanmethod@theacheivementcoa ✕  🎤  📷  🔍          ⚙️  ⋮⋮⋮   Sign in

AI Mode    All    Images    Videos    Shopping    Short videos    News    More ▾          Tools ▾

Did you mean: "*elman method*@theacheivementcoaches.com"

No results found for "**elmanmethod@theacheivementcoaches.com**".

Results for **elmanmethod@theacheivementcoaches.com** (without quotes):

🔍  ## Your search did not match any documents

**Need help?** Check out other tips for searching on Google.

You can also try these searches:

🔍  weather tomorrow

🔍  spanish to english

🔍  time in tokyo

🔍  hardware store near me

🔍  plane tickets

🔍  breaking news

🔍  persian cat

🔍  air fryer

🔍  anime backgrounds

3-ER-0354

Case 5:20-cv-03639-EJD "elmanmethod@theachelvementcoaches.com" - Google Search Document 436 Filed 07/21/25 Page 47 of 65

**Burlingame, California** - From your IP address - Update location

Help     Send feedback     Privacy     Terms

# EXHIBIT G

**FILED**

FEB 14 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD

LITIGATION

This Document Relates to:

Indirect Purchaser Actions

OBJECTIONS TO THE SETTLEMENT

National Woodlands Preservation, Inc., a West Virginia corporation, objects to proposed settlement pursuant to Federal Rule of Civil Procedure 23(e)(2)(C)(ii) because the "method of processing class-member claims" and the "proposed method of distributing relief to the class" appears defective with respect to non-individual entities.

Specifically, corporations, business entities, colleges, universities, educational institutions, government agencies, and similar

non-individuals purchased telescopes during the class period.[1] However, neither the physical claim form nor the online claim form provides the ability of an entity to lodge a claim. The form only allows individuals to file a claim. There is no place to lodge a business name.

In addition, the settlement website uses verbiage that infers the settlement is open only to individuals. It states, "Did **you** purchase a telescope from January 1, 2005 to September 6, 2023?" "**You** need to make a desicion [sic] about the settlement. To make the best decision for **yourself**, read on." This infers the settlement is open only to individuals.

Finally, no form of advertising was targeted to the types of institutions and businesses – primarily education and research entities – to provide them notice of the class action or allow them to understand that the class action is open to them and not just individuals.

Therefore, this Court must: (1) Direct modification of the claim form to allow business claims; (2) Direct modification of the website to make it clear that entities can file claims; (3) Direct advertisement and media to businesses such as schools, astrology research centers, planetariums, etc.,

---

[1] During 2019 and 2020, National Woodlands Preservation Inc. purchased two telescopes that are subject to this class action. The purchases were made from distributors of telescopes in West Virginia and not directly from a manufacturer.

and make it clear that institutional and entity claims are allowed; and (4)

Expand the deadline for businesses to file claims to provide the same

opportunities that businesses had.

Respectfully submitted,

K. Luna
Chief Executive Officer
National Woodlands Preservation Inc.
110 James Street
Hinton WV  25951



*Telescopes Antitrust Litigation*
Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172

## CEHI



61102158701

CEHI-61102158701

k luna

110 james street

hinton, WV 25951

US



VISIT THE SETTLEMENT WEBSITE BY
SCANNING THE PROVIDED QR CODE

*In re Telescopes Antitrust Litigation Indirect
Purchaser Actions*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case No. 5:20-cv-03639-EJD

**Must Be Postmarked
No Later Than
May 20, 2025**

## Claim Form

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **May 20, 2025** AT
**www.telescopesettlement.com**, OR FILE BY MAIL POSTMARKED BY **May 20, 2025**.

Questions? Call 1-833-419-3506 or visit the website, **www.telescopesettlement.com.**

If you wish to receive any payment pursuant to the Settlement Agreement electronically,
please submit your claim online at www.telescopesettlement.com.

### CLASS MEMBER INFORMATION:

First Name                                    M.I.        Last Name

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City                                                                State        ZIP Code

Email Address

——        ——

Area Code        Telephone Number

*Failure to add your unique ClaimID, which can be found with your notice or by contacting the Settlement Administrator,
will result in denial of your claim. If you received a notice of this Settlement by U.S. mail, your unique ClaimID is on
the email or postcard. If you misplaced your notice, please contact the Settlement Administrator at* 1-833-419-3506 *or*
admin@telescopesettlement.com.





| FOR CLAIMS PROCESSING ONLY | OB | CB | DOC | RED |
|---|---|---|---|---|
| | | | LC | A |
| | | | REV | B |

1

**3-ER-0361**

## ELIGIBILITY:

1. Did you purchase one or more Telescopes branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell from a retailer or distributor from January 1, 2005 to September 6, 2023?

   Yes *(Proceed to Question 2)*      No *(You are not eligible to submit a claim)*

2. If you answered "Yes" to Question 1. please enter your purchase information below:

Make

Model

_____/_____/_____
Date of purchase

State of residence at time of purchase

$ _____ .
Amount

Name of retailer or distributor where Qualifying Telescope was purchased

**If you purchased more than one telescope, please fill out all the information listed in Question 2 for each purchase on the additional page found at Appendix A or submit your claim online at www.telescopesettlement.com.**

**You do not need to submit receipts or confirming documentation at this time, but counsel for the Settlement Class may require it if an issue arises regarding the validity of your claim.**

## PAYMENT SELECTION:

How would you like to receive your payment? Choose **one** of the following:

   **I wish to receive any payment pursuant to the Settlement Agreement by check at the address in the Class Member Information section.**

## OR

   **If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com.**

This information will be kept confidential by the Settlement Administrator.

## CERTIFICATION AND SIGNATURE:

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____     Dated (mm/dd/yyyy): _____

Print Name: _____



2

**3-ER-0362**

# EXHIBIT H



*Figure 1*: *104 James Street, Hinton, Virginia* (Google Maps)[1]

---

[1] https://www.google.com/maps/@37.6717279,-
80.8907679,3a,47.3y,124.25h,93.4t/data=!3m7!1e1!3m5!1sdA3gdyjdV1wSOjKSTJoONA!2e0!6shttps:%2F%2Fstreetviewpixels-
pa.googleapis.com%2Fv1%2Fthumbnail%3Fcb_client%3Dmaps_sv.tactile%26w%3D900%26h%3D600%26pitch%3D-
3.397672402822792%26panoid%3DdA3gdyjdV1wSOjKSTJoONA%26yaw%3D124.24673607567848!7i16384!8i8192?entry=ttu&g
_ep=EgoyMDI1MDcwOS4wIKXMDSoASAFQAw%3D%3D

# EXHIBIT I

"National Woodlands Preservation    ✕   🎤   📷   🔍     ⚙️   ⠿    Sign in

**AI Mode**    **All**    Images    News    Maps    Shopping    Short videos    More ▾      Tools ▾

---



telescopesettlement.com
https://www.telescopesettlement.com › media › n...

## Case 5:20-cv-03639-EJD Document 407-1 Filed 03/21/25 ...

Mar 21, 2025 — Objector **National Woodlands Preservation, Inc**. never responded to the two certified letters requesting to meet and confer that Settlement ...



telescopesettlement.com
https://www.telescopesettlement.com › media › n...

## Case 5:20-cv-03639-EJD Document 407 Filed 03/21/25 Page 1 of 7

Id. **National Woodlands Preservation, Inc**. ("Woodlands"). Woodlands failed to provide a phone number, current address, or email at which to contact it ...



CaseMine
https://www.casemine.com › ... › 2025 › April

## Hightower v. Celestron Acquisition, LLC et al | 5:2020cv03639

... **National Woodlands Preservation, Inc**. ("Woodlands"), Elman Barnes, Pat Zhen, and Mike Sussman. a. DPPs. Counsel for two of the DPPs in Spectrum Scientifics ...

*In order to show you the most relevant results, we have omitted some entries very similar to the 3 already displayed.*
*If you like, you can repeat the search with the omitted results included.*

**Burlingame, California** - From your IP address - Update location

Help     Send feedback     Privacy     Terms

# EXHIBIT J

# (REDACTED)

## Table of Contents

Person Summary .................................................................................................................2
At a Glance .......................................................................................................................2
Name Variations, SSN Summary and DOBs...................................................................2
Physical Description .........................................................................................................2
Address Summary (1 current, 4 prior) .............................................................................2
Phone Summary (1 phones) ............................................................................................3
Licenses/Voter (0 licenses).............................................................................................3
Driver Licenses - 0 licenses.............................................................................................3
Other Licenses - 0 licenses..............................................................................................3
Real Property (2 current, 0 prior).....................................................................................3
Personal Property (0 current, 0 prior) .............................................................................5
Possible Education (0 records found) ..............................................................................5
Possible Criminal/Arrest (0 filings)..................................................................................5
Bankruptcy (0 active, 0 closed)........................................................................................5
Judgment / Liens (0 active, 0 closed)...............................................................................5
UCC Filings (0 debtor, 0 creditor)....................................................................................5
Associates (1 records) .....................................................................................................5
Possible Relatives - 1st Degree: 0, 2nd Degree: 0, 3rd Degree: 0 .................................5
Person Associates - 1 records found...............................................................................5
Neighbors - 0 records found.............................................................................................6
Business Connections - 0 records found .........................................................................6
Possible Employers - 0 records found. ............................................................................6
Business Associates - 0 records found. ..........................................................................6
Sources (37 sources).......................................................................................................6

 LexisNexis

**1 OF 1 RECORD(S)**

## SmartLinx®Person Report

Report Created: 6-23-2025 6:37 PM EST | FOR INFORMATIONAL PURPOSES ONLY | Copyright © 2025 LexisNexis, All rights reserved.

Report created for:Cotchett Pitre & McCarthy LLP

### Person Summary

| Name | Address | County | Phone |
|---|---|---|---|
| Zhen, Pat | 503 Calle Modesta Apt 303 San Juan, PR 00924-4511 | | 904-729-6256 |
| **LexID** | **SSN** | **DOB** | **Email** |
| 1925-9531-9192 | ▮-XXXX ⁷⁷ (SSN potentially randomly issued by the SSA) | ▮ (Age: 54) (Male) | |

### At a Glance

| | | | |
|---|---|---|---|
| Real Property | 2 | Criminal/Arrest | 0 |
| Personal Property | 0 | Bankruptcy | 0 |
| Professional Licenses | 0 | Judgments/Liens | 0 |
| Business Connections | 0 | Foreclosure/Notice of Default | 0 |

### Name Variations, SSN Summary and DOBs

| Name Variations | SSN Summary | Reported DOBs |
|---|---|---|
| Zen, Pat Zhen, Pat Zhen, Patrick | ▮-XXXX ⁷⁷ (SSN potentially randomly issued by the SSA) | ▮ |

### Physical Description

### Address Summary (1 current, 4 prior)

| No. | Address | Status | To-From | Phone |
|---|---|---|---|---|
| 1. | 503 Calle Modesta Apt 303 San Juan, PR 00924-4511 | Current | 06/2021 - 04/2025 (Current Residence) | |
| 2. | 395 Eaton St Providence, RI 02908-2153 Providence County (Residential) | Prior | 06/2020 - 04/2025 | |

**Neighborhood Profile**
Average Age: 44
Median Household Income: $53,026

Page 3 of 6

pat_zhen

| | | | | |
|---|---|---|---|---|
| Median Home Value: $238,824<br>Average Years of Education: 14 | | | | |
| 3. | 503 Calle Modesta 303<br>Green Cove Springs, FL 32043 | Prior | 10/2022 | |
| **Neighborhood Profile**<br>Average Age: 44<br>Median Household Income: $69,853<br>Median Home Value: $233,036<br>Average Years of Education: 13 | | | | |
| 4. | 411 Walnut St Unit 7353<br>Green Cove Springs, FL 32043-3443<br>Clay County<br><br>(Business) 7 (Hotel or motel)<br>7 (Addressing or letter service)<br>7 (Packaging service)<br>7 (Hunting, trapping, & game service)<br>7 (Newspaper facility)<br>7 (Library)<br>7 (Home Health Care Facility) | Prior | 09/2014 - 06/2022 | |
| **Neighborhood Profile**<br>Average Age: 38<br>Median Household Income: $61,530<br>Median Home Value: $171,649<br>Average Years of Education: 13 | | | | |
| 5. | 500 Calle Modesta Ste LC3<br>San Juan, PR 00924-4483 | Prior | 07/2024 - 10/2024 | |

**Phone Summary (1 phones)**

| No. | Phone | To-From | Line Type | Listing Name | Carrier |
|---|---|---|---|---|---|
| 1. | 904-729-6256. | 10/2018 - 3/2025. | Possible Wireless. | ECUADOR IMPORT EXPORT CONSULTANTS INC. | . |

**Licenses/Voter (0 licenses)**
**Driver Licenses - 0 licenses**
**Other Licenses - 0 licenses**

**Real Property (2 current, 0 prior)**

| No. | Address | Status | Purchase Price | Sale Price | State |
|---|---|---|---|---|---|
| 1. | 395 Eaton St<br>Providence, RI 02908-2153<br>County/FIPS: PROVIDENCE/44007<br>Source: A | Current | $270,500.00 | | RI |

3-ER-0370

Page 4 of 6

pat_zhen

**Owner Info**

**Zhen, Patrick**

**Legal Info**

Parcel Number: PROV-000118-000000-000131
Sale Date: 06/18/2020
Assessment Year: 2024
Sale Price: $270,500.00
Recording Date: 06/26/2020
Document Type: Assessor
Assessed Value: $296,100.00
Type of Address: Sfr
Book/Page: 12755/320

**Mortgage Info 1**

Loan Amount: $210,000.00
Description: Deed Of Trust
Lender Name: CITIZENS BK CITIZENS BK
Loan Type: Conventional
Recording Date: 10/16/2020
Contract Date: 09/23/2020
Transaction Type: Refinance

**Mortgage Info 2**

Recording Date: 06/26/2020
Contract Date: 06/18/2020
Transaction Type: Resale

**Mortgage Info 3**

Description: Grant Deed
Recording Date: 06/26/2020
Contract Date: 06/18/2020
Transaction Type: Resale

| 2. | 395 Eaton St<br>Providence, RI 02908-2153<br>County/FIPS: PROVIDENCE/44007<br>Source: B | Current | $270,500.00 | | RI |

**Owner Info**

**Zhen, Patrick**

395 Eaton St
Providence, RI 02908-2153

**Legal Info**

Parcel Number: PROV M:118 L:131

3-ER-0371

Page 5 of 6

pat_zhen

Assessment Year: 2024
Sale Price: $270,500.00
Recording Date: 06/26/2020
Document Type: Assessor
Assessed Value: $296,100.00
Type of Address: Single Family Residential
Mortgage Lender Name: CITIZENS BANK
Book/Page: 12755/320

**Mortgage Info 1**

Loan Amount: $210,000.00
Lender Name: CITIZENS BANK
Loan Type: Credit Line (Revolving)
Recording Date: 10/16/2020
Contract Date: 09/23/2020

**Mortgage Info 2**

Recording Date: 06/26/2020
Contract Date: 06/18/2020

**Personal Property (0 current, 0 prior)**

**Possible Education (0 records found)**

**Possible Criminal/Arrest (0 filings)**

**Bankruptcy (0 active, 0 closed)**

**Judgment / Liens (0 active, 0 closed)**

**UCC Filings (0 debtor, 0 creditor)**

**Associates (1 records)**
**Possible Relatives - 1st Degree: 0, 2nd Degree: 0, 3rd Degree: 0**
**Person Associates - 1 records found**

| No. | Full Name | Address | Role |
|---|---|---|---|
| 1. | Corea, Karla E<br>SSN: ██████-XXXX<br>LexID: 1952-2476-7335<br>DOB: ████ | 116 Calle Manuel Domenech Apt 2013<br>San Juan, PR 00918-3503 | Associate |

3-ER-0372

Page 6 of 6

pat_zhen

**Neighbors - 0 records found**

**Business Connections - 0 records found**

**Possible Employers - 0 records found.**

**Business Associates - 0 records found.**

**Sources (37 sources)**

| All Sources | 37 Source Documents |
|---|---|
| Deed Transfers | 5 Source Documents |
| Historical Person Locator | 2 Source Documents |
| Person Locator 1 | 1 Source Documents |
| Person Locator 5 | 13 Source Documents |
| Tax Assessor Records | 16 Source Documents |

Key

⚠ High Risk Indicator. These symbols may prompt you to investigate further.

☞ Moderate Risk Indicator. These symbols may prompt you to investigate further.

☞ General Information Indicator. These symbols inform you that additional information is provided.

✔ The most recent telephone listing as reported by Electronic Directory Assistance.

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Your DPPA Permissible Use: Litigation
Your Secondary DPPA Permissible Use: None
Your GLBA Permissible Use: Legal Compliance

Copyright © 2025 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**End of Document**

3-ER-0373

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **DECLARATION OF ANGELIQUE DIZON IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND** |
| THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | |

**DECLARATION OF ANGELIQUE DIZON IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

**3-ER-0374**

Pursuant to 28 U.S.C. §1746, I hereby declare and state as follows:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge unless otherwise indicated.

2. I am the Senior Project Administrator at Verita Global, LLC ("Verita"). Verita is the settlement administrator for the above-captioned litigation.

3. Based on Verita's experience, assuming the appeal duration is 16.5 months, Verita reasonably estimates that it will cost an additional $2,595 per month in settlement administration costs while the appeal is pending, for a total of $42,818 over 16.5 months.

4. That figure includes estimated costs necessary to maintain and administer the class website ($313 monthly), call support ($304 monthly), email handling ($455 monthly), overall case management ($1506 per month) as well as one-time data and form set up costs ($269) and estimated postage ($21).

5. Verita's administration costs are estimated for the purposes of the Indirect Purchaser Plaintiffs' Motion and the estimate is not meant to limit the actual amount of fees and/or costs owed to Verita.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on July 10, 2025 in San Rafael, California.

_____
Angelique Dizon

**DECLARATION OF ANGELIQUE DIZON IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**          **1**

# DECLARATION OF RYAN HALLMAN IN SUPPORT OF INDIRECT PURHCASER PLAINTIFFS' MOTION FOR APPEAL BOND

# (PUBLICALY REDACTED VERSION)

3-ER-0376

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | |

**DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

**3-ER-0377**

I, Brian Hedley, declare as follows:

1.      I am the principal of Hedley and Associates Investigations Inc., a licensed private investigations firm based in Tracy, California. I am a retired law enforcement detective with more than twenty years of experience, including substantial work in complex civil and criminal investigations. I hold California Private Investigator License No. 26268.

2.      I am routinely retained by legal counsel to conduct background investigations, verify identities, and evaluate the legitimacy of businesses and individuals purporting to participate in legal actions. I have personal knowledge of the facts set forth below and, if called to testify, could and would competently testify to their truth.

3.      I submit this Declaration in support of the Indirect Purchaser Plaintiffs ("IPPs")'s Motion for Appeal Bond.

4.      I have extensive experience as a private investigator and a retired law enforcement detective who worked with the San Mateo Police Department for approximately 12 years. In performing investigations, I employ techniques and approaches commonly employed in the industry for such investigations.

5.      I was retained by counsel for IPPs to investigate and verify the identities and legitimacy of certain individuals and entities who submitted objections and ultimately appeals to the proposed class action settlement in the above-captioned matter. Specifically, I was asked to determine whether:

- **Elman Barnes** is a real and verifiable person;
- **National Woodlands Preservation Inc.,** is a bona fide business or nonprofit entity; and
- **Karla Luna**, who purports to act as a representative of "National Woodlands Preservation, Inc.," is a real and verifiable individual.

6.      To perform this investigation, I utilized a combination of proprietary databases, open source intelligence (OSINT), and publicly accessible records, including but not limited to:

- CLEAR (Thomson Reuters);

**DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER    1
PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

- TLOxp ( TransUnion);

- LexisNexis Accurint;

- IRBsearch;

- PACER (Public Access to Court Electronic Records);

- West Virginia Secretary of State;

- TitlePro247 (First American);

- IRS Exempt Organizations Master File;

- West Virginia public court dockets;

- Archival and OSINT (Open Source Intelligence) resources, including social media, nonprofit directories, and archived websites;

- Social media searches, domain registry, WHOIS data, Wayback Machine (internet archive); and

- Additional tools for forensics and telephonic data attribution.

5.    As part of my investigation, I utilized multiple licensed proprietary databases, including TLOxp (TransUnion), CLEAR (Thomson Reuters), and TitlePro247, to verify the subject's address history, property ownership, and possible associates. These databases aggregate billions of public and non-public records from credit headers, utility connections, motor vehicle records, and deed filings. The search was conducted in accordance with all applicable privacy laws, including the DPPA and FCRA.

6.    **Elman Barnes.**  I first researched and investigated a person purporting to be "Elman Barnes." In connection with his objection, "Mr. Barnes" provided a phone number of (916) 234-0780. I conducted a forensic and historical investigation into this number using CLEAR, IRBsearch, and other telephone intelligence tools. I found that:

- No records associate this number with an individual named "Elman Barnes";

- The number is not tied to any residential or business subscriber by that name;

- No utility, voter registration, or directory history connects this number to any person known as "Elman Barnes";

**DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER     2
PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

- These databases collectively include millions of verified public records such as address histories, dates of birth, social security numbers, professional licenses, voter registration, utility connections, litigation history, and known associates; and

- A thorough search of federal and state court dockets, including PACER and California Civil Records, revealed no findings, pleadings, or appearances involving an individual named "Elman Barnes."

7. "Elman Barnes" also provided his alleged email address in connection with his objection and appeals in the above-captioned matter. That email address is: "elmanmethod@theachievementcoaches.com." I have also been informed that in connection with other class action settlements, a person purporting to be named "Elman Barnes" has submitted claims that have been flagged as fraudulent by other claims administrators using the alleged email address of "elmanmethod@phreakmail.com." To ensure a full and robust investigation, I investigated both email addresses, despite "Mr. Barnes" only providing the "theachievementcoaches.com" email address in connection with the above-captioned matter. My findings are as follows:

- Neither email address is connected to any verifiable individual in the public or proprietary databases I searched, much less connected to a person named "Elman Barnes";

- Domain registration records for both domains lack any identifying or traceable registrant data tied to someone named "Elman Barnes";

- No person by the alleged name of "Elman Barnes" appears affiliated with any organization or business under either domain nor does such an organization maintain any professional, nonprofit, or legal footprint that I could locate; and

- There is no publicly verifiable evidence that an individual named Elman Barnes exits or resides at the provided Sacramento address of **401 21st St, Suite R, Sacramento, CA.** The other address that the person purporting to be "Elman Barnes" provided was **1401 21st St, Suite R, Sacramento, CA.** That address comes

**DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER    3
PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

back registered to a business, "Registered Agents of California," a third-party registrant service and agent for service of process.

9. Despite extensive investigation, there is no evidence that "Elman Barnes" is a real, identifiable person. His claimed phone number, email addresses, and residence are either untraceable, unverifiable, or contradicted by available records. The name appears to be fictitious or used as a pseudonym. Based on my investigation, informed by my years of experience as an investigator employing standards typically employed in my industry, I conclude that there is no verifiable evidence confirming the existence of an "Elman Barnes" or any legitimate connection to the objection asserted on behalf of "Elman Barnes." All investigative avenues have been exhausted.

10. **National Woodlands Preservation Inc.** I researched and investigated a purported entity named "National Woodlands Preservation Inc." During the course of my investigation, I initially located a "Certificate of Existence" for the entity from the West Virginia Secretary of State. A true and correct copy of that "Certificate of Existence" is attached hereto as **Exhibit A**. The "Certificate of Existence" is not proof that such an entity actually exists or is legitimately doing business.

11. Notwithstanding this pro forma "Certificate of Interest," I nevertheless investigated the entity further to determine whether it, in fact, exists or is merely fictitious. Aside from the Certificate of Existence that was filed in 2019, I could find no evidence that this is, or was, a legitimate entity. I could find, for instance, no actual evidence of operational, charitable, legal, or other commercial activity. For example, I could find:

- No listing in the IRS Exempt Organizations database;
- No corporate filings, court appearances, contracts, grants, or registered employees;
- No telephone number, website, media mentions, or online presence; and
- No physical presence at its stated address, 110 James Street, Hinton, WV 25951, which appears to be a shared or noncommercial building with no known business

**DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER**    **4**
**PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

**3-ER-0381**

signage. Instead, that address is associated with a law firm named Ziegler & Ziegler Law Firm. That law firm appears to have no association with "National Woodlands Preservation, Inc." or a Karla Luna. Although National Woodlands Preservation Inc. exists on paper, it shows no signs of actual activity or functional operations consistent with a real organization.

12.    The Certificate of Existence lists a "K. Luna" as an officer of the entity.

13.    To ensure a robust and full investigation, I also investigated the two addresses listed in the entity's Certificate of Existence: 110 James Street, Hinton, WV; and 110 Main Street, Beckley, WV. I conclude that there is no real association between the "110 James Street" address and "National Woodlands Preservation, Inc." Instead, that address is associated with a law firm named Ziegler & Ziegler. That law firm appears to have no association with "National Woodlands Preservation, Inc." or a Karla Luna.

14.    With respect to the "110 Main Street" address, I have also concluded that there is no real association between that address and "National Woodlands Preservation, Inc." That address is instead the location of a number of law firms and also the location of "West Virginia Registered Agent LLC"—a third-party registered agent service. Aside from the foregoing, the address has no known affiliation with this address and "National Woodlands Preservation Inc." or Karla Luna.

16.    To ensure I conducted a full and robust investigation, I also conducted a full investigation into the person alleging they are CEO of "National Woodlands Preservation, Inc."—a person purporting to be named "Karla Luna." I outline the results of that investigation below:

- The registration lists "K. Luna" as the registered agent through West Virginia Registered Agent LLC., a commercial statutory agent service;
- No person named Karla Luna is connected to the address or entity in any official or operational capacity;
- I find no employee listed with National Woodlands Preservation Inc., beyond a registered agent for service; and

**DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER    5**
**PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

- Searches through CLEAR, Accurint, TLOxp, court records, business directories, nonprofit databases, and social medial failed to identify any Karla Luna linked to any public-facing role, business, or legitimate organization in West Virginia or elsewhere; let alone associated with a fictitious entity named "National Woodlands Preservation, Inc."

17. Moreover, after my investigation, I have concluded that there is no publicly identifiable person named "Karla Luna" with a legitimate or known connection to an entity named "National Woodlands Preservation Inc.," nor any discernible nonprofit or advocacy presence whatsoever.

18. Based on the totality of the evidence and based on my years of experience conducting investigations into similar matters, I make the following conclusions:

- "Elman Barnes" is not a real, verifiable person and has provided multiple pieces of fabricated untraceable contact information;
- National Woodlands Preservation Inc. is a non-operational shell entity, with no meaningful existence beyond its state registration; and
- Karla Luna is not identifiable and appears to be a placeholder name used through a commercial agent service with no actual affiliation to the entity she claims to be CEO. Although people named "Karla Luna" exist in the United States, I conclude that "Karla Luna" as a purported CEO of "National Woodlands Preservation, Inc." is not a real, verifiable person.

19. It is my professional opinion that these individuals and entities' objections are made in bad faith or under false identities and pretenses.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 10th day, July 2025 in Burlingame, California.

/s/ *Brian Hedley*
Brian Hedley

**DECLARATION OF BRIAN HEDLEY IN SUPPORT OF INDIRECT PURCHASER    6 PLAINTIFFS' MOTION FOR APPEAL BOND; Case No. 5:20-cv-03639-EJD**

# EXHIBIT A

6/3/25, 3:21 PM                                WV Secretary of State Business Entity Search

 west virginia

# Business Entity Details

## Main

| Name: NATIONAL WOODLANDS PRESERVATION INC. | | | Organization Number: 480544 | |
|---|---|---|---|---|
| Type: C | Sec Type: | City: HINTON | Class: P | Ch Type: D |
| Eff Date: 8/16/2019 | Fil Date: 8/16/2019 | Term Date: | Term Reason: | AW/Term: |
| CH County: Lewis | Ch State: WV | Bus Purp: 1153 | Ex Acres: | Term Yrs: |
| Auth Shrs: 500 | Cap Stck: 500.0000 | Status: Active | Par Val: 1.0000 | MGMT: |
| In Compliance: Yes | | | | |

## Addresses

| Principal Office Address: | Name: | Addr1: 110 JAMES ST. | Addr2: | City: HINTON | State: WV | Zip: 25951 |
|---|---|---|---|---|---|---|
| Notice of Process Address: | Name: REGISTERED AGENTS, INC. | Addr1: 110 MAIN ST | Addr2: | City: BECKLEY | State: WV | Zip: 25801 |
| Mailing Address: | Name: | Addr1: 110 JAMES ST. | Addr2: | City: HINTON | State: WV | Zip: 25951 |

## Officers

| Incorporator: | Name: RILEY PARK | Addr1: 110 JAMES ST. | Addr2: | City: HINTON | State: WV | Zip: 25951 |
|---|---|---|---|---|---|---|
| President: | Name: K LUNA | Addr1: 110 JAMES ST. | Addr2: | City: HINTON | State: WV | Zip: 25951 |

## DBAs

No Records Found.

## Names

No Records Found.

## Mergers

Privacy - Terms

https://apps.wv.gov/SOS/BusinessEntitySearch/Details.aspx?Id=F0EuxEWNxVK5m+eZPa4Jzw==&Search=fPyYjWK6rwS4tZWfTCNCE49Cbh9lo8FW...    1/2

3-ER-0385

6/3/25, 3:21 PM                                                    WV Secretary of State Business Entity Search

No Records Found.

## Subsidiaries

No Records Found.

## Amendments

No Records Found.

## Dissolutions

No Records Found.

## Annual Reports

| Filing For | Date Filed |
|------------|------------|
| 2024 | 4/19/2024 |
| 2023 | 5/16/2023 |
| 2022 | 10/20/2022 |
| 2021 | 2/13/2021 |
| 2020 | 5/3/2020 |

## With this information, you can...

**Purchase Certificate of Existence**

If you would like to purchase a Certificate of Existence for this business entity, select the button to the left to add the certificate to your shopping cart. You will be assessed a $10.00 fee for each certificate. Click the Shopping Cart link in the upper right corner to complete your order.

**Back To Search Results**                                                    **Search Again**

3-ER-0386

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **DECLARATION OF NIRAV ENGINEER IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | |

**DECLARATION OF NIRAV ENGINEER IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR APPEAL BOND;**
**Case No. 5:20-cv-03639-EJD**

3-ER-0387

I, Nirav Engineer, declare as follows:

1. I, Nirav Engineer, am the Chief Technology Officer and Chief Investigative Analyst at Cotchett, Pitre & McCarthy, LLP, one of the three firms appointed as Settlement Class Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I have worked at Cotchett, Pitre & McCarthy, LLP, ("CPM") for 26 years, including four years as the Chief Technology Officer and 17 years as the Chief Investigative Analyst.

2. I submit this Declaration in support of the IPPs' Motion for Appeal Bond pursuant to 28 U.S.C. § 1746.

3. In my role at CPM, I have investigated a number of litigation matters for 17 years. In doing so, I employ the same standards, techniques, and approaches that are common in the industry for investigations. I am, for example, familiar with databases often used by investigators like me to search for persons and properties, including the LexisNexis Public Records search.

3. **Elman Barnes.** During the final approval process in the above-captioned litigation, Class Counsel initially asked me to look into the address that an "Elman Barnes" submitted in connection with "his" objection.

4. Initially, Class Counsel asked me to look into the address "401 21st Street, Ste. R, Sacramento, CA 95811" because that was the address that "Mr. Barnes" utilized in connection with his objection and appeal. I employed standard investigative techniques to determine the associations with this address, including the LexisNexis Public Records search.

5. After reviewing the sources of my investigation, which included the LexisNexis Public Records search, I concluded *first*, that the address "401 21st Street, Ste. R, Sacramento, CA 95811" is not an address that exists at all, let alone one associated with someone named "Elman Barnes." Attached hereto as **Exhibit A** is a true and correct copy of the report I generated based on my search. As that report reveals, there is no "Suite R" associated with the address 401 21st Street in Sacramento.

6. Class Counsel also instructed me to investigate whether an "Elman Barnes" is, or has been, associated with the 401 21st Street address, even if there is no "Suite R." In conducting this search, I employed standard investigative techniques that investigators regularly employ,

**DECLARATION OF NIRAV ENGINEER IN SUPPORT OF INDIRECT PURCHASER    1
PLAINTIFFS' MOTION FOR APPEAL BOND;**
Case No. 5:20-cv-03639-EJD

including the LexisNexis Public Records search. After investigating this issue, I concluded that a person named "Elman Barnes" is not now, nor has ever been, associated with that address. Attached hereto as **Exhibit B** is a true and correct copy of the report I generated for this search.

7.     Class Counsel instructed me to investigate the other address that "Mr. Barnes" provided in connection with his objection: 1401 21st Street, Ste. R, Sacramento CA, 95811. I performed a similar search of this property. Based on similar investigative techniques, I concluded that Elman Barnes is also not personally associated with this property. This property is instead associated with a business named "Registered Agents of California."

8.     Utilizing standard investigative techniques common in the industry, I conducted a nationwide search for a person named "Elman Barnes." My search returned no results indicating that a person by that name exists anywhere in the United States, including in the Sacramento area.

9.     **Pat or Patrick Zhen.** Moreover, Class Counsel asked me to conduct a person search into a "Pat Zhen", who submitted an objection and appeal in connection with this litigation. That search also included persons purportedly named "Patrick Zhen." "Mr. Zhen" had listed a P.O. Box in Puerto Rico as his address. Class Counsel informed me they were aiming to acquire a mailing or residential address for him to select an appropriate deposition location in Puerto Rico for his subpoena.

10.     As part of my investigation, I employed standard investigative techniques to identify other possible addresses associated with the name "Pat Zhen" or "Patrick Zhen" in Puerto Rico or otherwise, including the LexisNexis Public Records search.

11.     After reviewing the sources of my investigation, which included the LexisNexis Public Records search, I concluded first that a "Pat Zhen" was associated with the address "503 Calle Modesta Apt 303 San Juan, PR 00924-4511." Attached hereto as **Exhibit C** is a true and correct copy of the report I generated based on my search.

12.     Second, as part of my investigation into "Pat Zhen," I also discovered that an individual named "Karla E. Corea" was listed as an associate of "Pat Zhen." As shown in **Exhibit C**, she is likewise associated with an address in Puerto Rico.

**DECLARATION OF NIRAV ENGINEER IN SUPPORT OF INDIRECT PURCHASER     2
PLAINTIFFS' MOTION FOR APPEAL BOND;**
**Case No. 5:20-cv-03639-EJD**

I declare under the penalty of perjury that the foregoing is true and correct. Executed on this 11th day, July 2025 in Burlingame, California.

/s/ *Nirav Engineer*
Nirav Engineer

**DECLARATION OF NIRAV ENGINEER IN SUPPORT OF INDIRECT PURCHASER   3
PLAINTIFFS' MOTION FOR APPEAL BOND;**
Case No. 5:20-cv-03639-EJD

# EXHIBIT A

## Table of Contents

**Location Information - 1 record found** ...................................................................................2
**Address Variations - 2 records found** .................................................................................2
**APN(s) - 3 records found** ...................................................................................................2
**Property Information - 2 records found** .............................................................................2
**Neighbors - 6 records found** ..............................................................................................3
**Associated Entities - 80 records found** .............................................................................3
**Source Information - 447 records found** ...........................................................................4

3-ER-0392

 LexisNexis®

**1 OF 1 RECORD(S)**

FOR INFORMATIONAL PURPOSES ONLY

Copyright 2025 LexisNexis

a division of Reed Elsevier Inc. All Rights Reserved.

**Location Information - 1 record found**

401 21ST ST, SACRAMENTO, CA 95811-1116
| | |
|---|---|
| **Latitude:** | 38.582660 |
| **Longitude:** | -121.475500 |
| **MSA Number:** | 6920 |
| **MSA Description:** | Sacramento, CA |

**Address Variations - 2 records found**

| No. | Address |
|---|---|
| 1. | 401 ST |
| | SACRAMENTO, CA 95811-1116 |
| 2. | 401 21ST ST |
| | SACRAMENTO, CA 95811-1116 |

**APN(s) - 3 records found**

| No. | Number |
|---|---|
| 1. | 003-0131-004-0 |
| 2. | 003-0131-004-0000 |
| 3. | 301310040000 |

**Property Information - 2 records found**

No. 1

| | |
|---|---|
| **Legal Description:** | BOULEVARD PARK, LOT 201 |
| **Land Usage:** | DUPLEX |
| **Tax Year:** | 2024 |
| **Data Source:** | A |

Property Sale Information
| | |
|---|---|
| **Sale Date:** | 11/23/2015 |
| **Sale Price:** | $214,500.00 |

Assessment Information
| | |
|---|---|
| **Assessed Land Value:** | $86,665.00 |
| **Assessed Improvement Value:** | $289,335.00 |
| **Assessed Total Value:** | $376,000.00 |

No. 2

| | |
|---|---|
| **Legal Description:** | BOULEVARD PARK, LOT 201 |
| **Tax Year:** | 2024 |
| **Data Source:** | B |

Page 3 of 5

401_21st_street

Property Sale Information
Sale Date: 11/23/2015

Assessment Information
Assessed Land Value: $86,665.00
Assessed Improvement Value: $289,335.00
Assessed Total Value: $376,000.00

**Neighbors - 6 records found**

| Neighbor Name | Neighbor Address | Neighbor Phone |
|---|---|---|
| CHANDLER, LISA | 400 21ST ST, SACRAMENTO, CA 95811-1117 | None Listed |
| RAHEEL, AHMED | 401 21ST ST STE 5004, SACRAMENTO, CA 95811-1116 | None Listed |
| WATSON, BRITTNEY L | 402 21ST ST, SACRAMENTO, CA 95811-1117 | None Listed |
| KELTNER, JEAN E | 403 21ST ST, SACRAMENTO, CA 95811-1116 | 916-444-3203 |
| PEEPLES, KRIS P | 404 21ST ST, SACRAMENTO, CA 95811-1117 | 916-448-5102 |
| DAVIDENKO, EGOR | 405 21ST ST, SACRAMENTO, CA 95811-1157 | None Listed |

**Associated Entities - 80 records found**

| No. | Current Owner(s)/Resident(s) | |
|---|---|---|
| | | Current Owner(s): |
| 1. | KELTNER, DACHER | |
| | | Current Owner(s): |
| 2. | KELTNER, ROLF | |
| | | Current Resident(s): |
| 3. | WIGLEY, DIANA C | |
| 4. | BURNAT, KAREN A | |
| 5. | MONYOYA, TOMAS | |
| 6. | BURZINSKI, CAROLYN E | |
| 7. | CATHER, FRANK A | |
| 8. | GILBERD, ROBIN | |
| | | Previous Owner(s): |
| 9. | BURZINSKI, ROBERT MARTIN SR | |
| 10. | DANGLER, SYLVIA C | |
| 11. | KELTNER, JEANIE E | |
| 12. | BURZINSKI, CAROLYN E | |
| | | Previous Residents(s): |
| 13. | MCELHENY, STACEY CAROL JR. | |
| 14. | BAUTISTA, VANESSA MICHELLE | |
| 15. | BOOTES, KELLY M | |
| 16. | BURZINSKI, ROBERT MARTIN SR | |
| 17. | CHRIST, RENEE JEAN | |
| 18. | COLEMAN, GARY V | |
| 19. | ELYKO, KATHLEEN ELLEN | |
| 20. | COLEMAN, PHILIP N | |
| 21. | SCHNETZ, TERI CHARLENE | |
| 22. | TEAFATILLER, LYDIA SUE | |
| 23. | JIMENEZ, CIBONAY MICAELA | |
| 24. | ZIMMERMAN, ZELLA M | |
| 25. | WIGLEY, DIANA CONSTANCE | |
| 26. | DANGLER, RICHARD H SR | |
| 27. | DANGLER, SYLVIA C | |
| 28. | CAROLLO, SARAH ANN | |
| 29. | BERSON, ROBIN GAY | |
| 30. | ALTHOUSE, JENNIFER K | |
| 31. | MICHEL-EVLETH, WILLIAM HENRY | |
| 32. | MICHEL-EVLETH, PATRICIA ANN | |
| 33. | FERNANDEZ, SARAH JEAN | |

3-ER-0394

Page 4 of 5

401_21st_street

| No. | Current Owner(s)/Resident(s) |
|-----|------------------------------|
| 34. | MCGAVIN, CHARLES HAROLD JR. |
| 35. | GILBERT, ROBIN ANNETTE |
| 36. | KELTNER, JEANIE E |
| 37. | LABINGER, JASON S |
| 38. | LEHMAN, CRAIG H |
| 39. | MCELHENY, JOHN TAYLOR |
| 40. | MCGAVIN, JASON CHARLES |
| 41. | MONTOYA, JOSE ERNESTO SR |
| 42. | MONTOYA, TOMAS YIN |
| 43. | MOORHOUSE, JEFFREY ALLEN |
| 44. | ROBERTS, CAELUM G |
| 45. | BOYLE, JENNIFER LYNNE |
| 46. | THOMAS, WILLIAM A |
| 47. | ZUMKELLER, TODD LOUIS |
| 48. | HITE, CAMERON J |
| 49. | MICHEL-EVLETH, HAILEY ROSE |
| 50. | WALKER, ROXANA E |
| 51. | MONTOYA, NADJA C |
| 52. | LAARIDHI, KAMEL |
| 53. | GHARIANI, FATEN GHARRIANI |

**Other(s):**

| No. | |
|-----|------------------------------|
| 54. | CORDOVA CIBONAY |
| 55. | TLJ COMFORT HOME STAYS LLC |
| 56. | BLACK BARN RANCH LLC |
| 57. | HM ONLINE VENTURES LLC |
| 58. | REMINGTON ENTERPRISES LLC |
| 59. | SECONDKEY PROPERTIES LLC |
| 60. | MOONLIGHTER LLC |
| 61. | CERTIFIED LOVER GIRL LLC |
| 62. | YVANES HOMESHARES LLC |
| 63. | QUALITY LIFE ENTERPRISE LLC |
| 64. | CASA BONITA HOMES LLC |
| 65. | MARKET MAGIC LLC |
| 66. | GOGENDER,LLC |
| 67. | PHNX WING ENTERTAINMENT LLC |
| 68. | ROCKSAGE CC INC |
| 69. | FINISH CANTIERI CARPENTRY CORP |
| 70. | DESIGNER FLOOR SERVICES LLC |
| 71. | MINX INTL, LLC |
| 72. | GOLDEN WEALTH PROPERTIES |
| 73. | ASLAN PROPERY PARTNERS LLC |
| 74. | FIRST STEP HOME BUYERS |
| 75. | FUNGUY FUNGTIONAL, LLC |
| 76. | YDJB 417 SERVICES LLC |
| 77. | MJ NATIONAL PARTNERS |
| 78. | KARL WINE AND FOODS LLC |
| 79. | ALM COLLECTIVE SOLUTIONS LLC |
| 80. | PENULT PROJECTS, INC. |

**Source Information - 447 records found**

| | |
|---|---|
| **All Sources** | **447 Source Document(s)** |
| **Bankruptcy Records** | 2 Source Document(s) |
| **Deed Transfers** | 8 Source Document(s) |
| **Historical Person Locator** | 111 Source Document(s) |
| **Person Locator 1** | 26 Source Document(s) |
| **Person Locator 2** | 23 Source Document(s) |
| **Person Locator 5** | 97 Source Document(s) |
| **Person Locator 6** | 124 Source Document(s) |
| **Professional Licenses** | 2 Source Document(s) |
| **Tax Assessor Records** | 54 Source Document(s) |

Page 5 of 5

401_21st_street

Key

⚠ High Risk Indicator. These symbols may prompt you to investigate further

▌ Moderate Risk Indicator. These symbols may prompt you to investigate further

⚑ General Information Indicator. These symbols inform you that additional information is provided

✓ The most recent telephone listing as reported by Electronic Directory Assistance

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Your DPPA Permissible Use: Litigation
Your Secondary DPPA Permissible Use: None
Your GLBA Permissible Use: Legal Compliance

Copyright © 2025 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

---

**End of Document**

# EXHIBIT B

 **LexisNexis®**

| Search: | Public Records : SmartLinx® Comprehensive Location Report |
| Terms: | street address(401 21st street) city(sacramento) radius(30) state(CA) |

| No. | Address |
| --- | --- |
| 1 | 401 21ST ST |
| | SACRAMENTO, CA 94299-0001 |
| 2 | 401 21ST ST |
| | SACRAMENTO, CA 95811-1116 |
| 3 | 401 21ST ST APT 403 |
| | SACRAMENTO, CA 95811-1116 |
| 4 | 401 21ST ST STE 5004 |
| | SACRAMENTO, CA 95811-1116 |

Key
▲ High Risk Indicator. These symbols may prompt you to investigate further
⊠ Moderate Risk Indicator. These symbols may prompt you to investigate further
⚑ General Information Indicator. These symbols inform you that additional information is provided
✓ The most recent telephone listing as reported by Electronic Directory Assistance

| Terms: | street address(401 21st street) city(sacramento) radius(30) state(CA) |
| Date/Time: | Wednesday, March 12, 2025 8:43 PM |
| Permissible Use: | Your DPPA Permissible Use: Litigation |
| | Your Secondary DPPA Permissible Use: None |
| | Your GLBA Permissible Use: Legal Compliance |

Copyright © 2025 LexisNexis, a division of Reed Elsevier Inc. All Rights Reserved.

**End of Document**

3-ER-0398

# EXHIBIT C

# (REDACTED)

3-ER-0399

## Table of Contents

Person Summary ...............................................................................................2
At a Glance .....................................................................................................2
Name Variations, SSN Summary and DOBs.................................................2
Physical Description ........................................................................................2
Address Summary (1 current, 4 prior) ...........................................................2
Phone Summary (1 phones) ...........................................................................3
Licenses/Voter (0 licenses)............................................................................3
Driver Licenses - 0 licenses...........................................................................3
Other Licenses - 0 licenses............................................................................3
Real Property (2 current, 0 prior)...................................................................3
Personal Property (0 current, 0 prior) ...........................................................5
Possible Education (0 records found) .............................................................5
Possible Criminal/Arrest (0 filings) ...............................................................5
Bankruptcy (0 active, 0 closed).....................................................................5
Judgment / Liens (0 active, 0 closed)............................................................5
UCC Filings (0 debtor, 0 creditor).................................................................5
Associates (1 records) ....................................................................................5
Possible Relatives - 1st Degree: 0, 2nd Degree: 0, 3rd Degree: 0 ...............5
Person Associates - 1 records found..............................................................5
Neighbors - 0 records found...........................................................................6
Business Connections - 0 records found ........................................................6
Possible Employers - 0 records found. ..........................................................6
Business Associates - 0 records found. .........................................................6
Sources (37 sources).......................................................................................6

 **LexisNexis**

**1 OF 1 RECORD(S)**

## SmartLinx®Person Report

Report Created: 6-23-2025 6:37 PM EST | FOR INFORMATIONAL PURPOSES ONLY | Copyright © 2025 LexisNexis, All rights reserved.

**Report created for:** Cotchett Pitre & McCarthy LLP

### Person Summary

| Name | Address | County | Phone |
|---|---|---|---|
| Zhen, Pat | 503 Calle Modesta Apt 303<br>San Juan, PR 00924-4511 | | 904-729-6256 |
| **LexID** | **SSN** | **DOB** | **Email** |
| 1925-9531-9192 | ▆▆-XXXX ⁷⁷ (SSN potentially randomly issued by the SSA) | ▆▆ (Age: 54)<br>(Male) | |

### At a Glance

| | | | |
|---|---|---|---|
| Real Property | 2 | Criminal/Arrest | 0 |
| Personal Property | 0 | Bankruptcy | 0 |
| Professional Licenses | 0 | Judgments/Liens | 0 |
| Business Connections | 0 | Foreclosure/Notice of Default | 0 |

### Name Variations, SSN Summary and DOBs

| Name Variations | SSN Summary | Reported DOBs |
|---|---|---|
| Zen, Pat<br>Zhen, Pat<br>Zhen, Patrick | ▆▆-XXXX<br>⁷⁷ (SSN potentially randomly issued by the SSA) | ▆▆ |

### Physical Description

### Address Summary (1 current, 4 prior)

| No. | Address | Status | To-From | Phone |
|---|---|---|---|---|
| 1. | 503 Calle Modesta Apt 303<br>San Juan, PR 00924-4511 | Current | 06/2021 - 04/2025<br>(Current Residence) | |
| 2. | 395 Eaton St<br>Providence, RI 02908-2153<br>Providence County<br>(Residential) | Prior | 06/2020 - 04/2025 | |
| **Neighborhood Profile**<br>Average Age: 44<br>Median Household Income: $53,026 | | | | |

**3-ER-0401**

Page 3 of 6

pat_zhen

| | | | | |
|---|---|---|---|---|
| Median Home Value: $238,824<br>Average Years of Education: 14 | | | | |
| 3. | 503 Calle Modesta 303<br>Green Cove Springs, FL 32043 | Prior | 10/2022 | |
| **Neighborhood Profile**<br>Average Age: 44<br>Median Household Income: $69,853<br>Median Home Value: $233,036<br>Average Years of Education: 13 | | | | |
| 4. | 411 Walnut St Unit 7353<br>Green Cove Springs, FL 32043-3443<br>Clay County<br><br>(Business) *7* (Hotel or motel)<br>*7* (Addressing or letter service)<br>*7* (Packaging service)<br>*7* (Hunting, trapping, & game service)<br>*7* (Newspaper facility)<br>*7* (Library)<br>*7* (Home Health Care Facility) | Prior | 09/2014 - 06/2022 | |
| **Neighborhood Profile**<br>Average Age: 38<br>Median Household Income: $61,530<br>Median Home Value: $171,649<br>Average Years of Education: 13 | | | | |
| 5. | 500 Calle Modesta Ste LC3<br>San Juan, PR 00924-4483 | Prior | 07/2024 - 10/2024 | |

**Phone Summary (1 phones)**

| No. | Phone | To-From | Line Type | Listing Name | Carrier |
|---|---|---|---|---|---|
| 1. | 904-729-6256. | 10/2018 - 3/2025. | Possible Wireless. | ECUADOR IMPORT EXPORT CONSULTANTS INC. | . |

**Licenses/Voter (0 licenses)**
**Driver Licenses - 0 licenses**
**Other Licenses - 0 licenses**

**Real Property (2 current, 0 prior)**

| No. | Address | Status | Purchase Price | Sale Price | State |
|---|---|---|---|---|---|
| 1. | 395 Eaton St<br>Providence, RI 02908-2153<br>County/FIPS: PROVIDENCE/44007<br>Source: A | Current | $270,500.00 | | RI |

3-ER-0402

Page 4 of 6

pat_zhen

**Owner Info**

**Zhen, Patrick**

**Legal Info**

Parcel Number: PROV-000118-000000-000131
Sale Date: 06/18/2020
Assessment Year: 2024
Sale Price: $270,500.00
Recording Date: 06/26/2020
Document Type: Assessor
Assessed Value: $296,100.00
Type of Address: Sfr
Book/Page: 12755/320

**Mortgage Info 1**

Loan Amount: $210,000.00
Description: Deed Of Trust
Lender Name: CITIZENS BK CITIZENS BK
Loan Type: Conventional
Recording Date: 10/16/2020
Contract Date: 09/23/2020
Transaction Type: Refinance

**Mortgage Info 2**

Recording Date: 06/26/2020
Contract Date: 06/18/2020
Transaction Type: Resale

**Mortgage Info 3**

Description: Grant Deed
Recording Date: 06/26/2020
Contract Date: 06/18/2020
Transaction Type: Resale

| 2. | 395 Eaton St Providence, RI 02908-2153 County/FIPS: PROVIDENCE/44007 Source: B | Current | $270,500.00 | | RI |

**Owner Info**

**Zhen, Patrick**

395 Eaton St
Providence, RI 02908-2153

**Legal Info**

Parcel Number: PROV M:118 L:131

3-ER-0403

Page 5 of 6

pat_zhen

Assessment Year: 2024
Sale Price: $270,500.00
Recording Date: 06/26/2020
Document Type: Assessor
Assessed Value: $296,100.00
Type of Address: Single Family Residential
Mortgage Lender Name: CITIZENS BANK
Book/Page: 12755/320

**Mortgage Info 1**

Loan Amount: $210,000.00
Lender Name: CITIZENS BANK
Loan Type: Credit Line (Revolving)
Recording Date: 10/16/2020
Contract Date: 09/23/2020

**Mortgage Info 2**

Recording Date: 06/26/2020
Contract Date: 06/18/2020

**Personal Property (0 current, 0 prior)**

**Possible Education (0 records found)**

**Possible Criminal/Arrest (0 filings)**

**Bankruptcy (0 active, 0 closed)**

**Judgment / Liens (0 active, 0 closed)**

**UCC Filings (0 debtor, 0 creditor)**

**Associates (1 records)**
**Possible Relatives - 1st Degree: 0, 2nd Degree: 0, 3rd Degree: 0**
**Person Associates - 1 records found**

| No. | Full Name | Address | Role |
|---|---|---|---|
| 1. | Corea, Karla E<br>SSN ███-XXXX<br>LexID: 1952-2476-7335<br>DOB: █████ | 116 Calle Manuel Domenech Apt 2013<br>San Juan, PR 00918-3503 | Associate |

**3-ER-0404**

Page 6 of 6

pat_zhen

**Neighbors - 0 records found**

**Business Connections - 0 records found**

**Possible Employers - 0 records found.**

**Business Associates - 0 records found.**

## Sources (37 sources)

| All Sources | 37 Source Documents |
|---|---|
| Deed Transfers | 5 Source Documents |
| Historical Person Locator | 2 Source Documents |
| Person Locator 1 | 1 Source Documents |
| Person Locator 5 | 13 Source Documents |
| Tax Assessor Records | 16 Source Documents |

Key

⚠ High Risk Indicator. These symbols may prompt you to investigate further.

⚟ Moderate Risk Indicator. These symbols may prompt you to investigate further.

⚟ General Information Indicator. These symbols inform you that additional information is provided.

✔ The most recent telephone listing as reported by Electronic Directory Assistance.

**Important:** The Public Records and commercially available data sources used on reports have errors. Data is sometimes entered poorly, processed incorrectly and is generally not free from defect. This system should not be relied upon as definitively accurate. Before relying on any data this system supplies, it should be independently verified. For Secretary of State documents, the following data is for information purposes only and is not an official record. Certified copies may be obtained from that individual state's Department of State.

Your DPPA Permissible Use: Litigation
Your Secondary DPPA Permissible Use: None
Your GLBA Permissible Use: Legal Compliance

Copyright © 2025 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**End of Document**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **DECLARATION OF REASONABLE DILIGENCE FROM A & A LEGAL SERVICE, INC. TO MIKE SUSSMAN** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | |

**DECLARATION OF REASONABLE DILIGENCE FROM A & A LEGAL SERVICE, INC. TO MIKE SUSSMAN; Case No. 5:20-cv-03639-EJD**

**3-ER-0406**

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| COTCHETT, PITRE & MCCARTHY, LLP<br>840 MALCOLM ROAD, STE. 200<br>BURLINGAME, CA 94010<br><br>Telephone No: 650-697-6000    FAX: No: 650-697-0577 | |
| Attorney for: Plaintiff | Ref. No or File No.:<br>2975 TELESCOPE A/T |

| Insert name of Court, and Judicial District and Branch Court: |
|---|
| United States District Court For The Northern District Of California |

Plaintiff: IN re TELESCOPES ANTITRUST LITIGATION

Defendant: --

| DECLARATION OF REASONABLE DILIGENCE | Hearing Date:<br>Mon, Jul. 28, 2025 | Time:<br>9:00am | Dept/Div: | Case Number:<br>5:20-cv-03639-EJD |
|---|---|---|---|---|

1. I, WAYNE POLLICK, and any employee or independent contractors retained by A & A LEGAL SERVICE, Inc. are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on Witness MIKE SUSSMAN as follows:

2. Documents:   SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION.

| Day | Date | Time | Location | Results |
|---|---|---|---|---|
| Fri | 06/27/25 | 9:15am | Home | THE GIVEN ADDRESS IS A CONDO WITH A CALL BOX. GAINED ACCESS INTO THE BUILDING BUT NO RESPONSE AT UNIT DOOR. LEFT CONTACT LETTER. "EISENBAND" ON DIRECTORY AT THE RESIDENCE. CONTACTED THE PROPERTY MANAGER AND SPOKE WITH JARED BOOKMAN. PER THE COMPUTER SYSTEM, THE SUBJECT, MIKE SUSSMAN, IS NOT LISTED AS OWNER OR AS LEASING. Attempt made by: WAYNE POLLICK, Registration #856. Attempt at: 23200 CAMINO DEL MAR, #503  BOCA RATON, FL 33433. |
| Fri | 06/27/25 | 10:45am | Home | I RECEIVED A CALL FROM THE OWNER OF CONDO UNIT AT THE GIVEN ADDRESS. SHE IDENTIFIED HERSELF AS JILL EISENBAND. THE SUBJECT IS UNKNOWN TO HER. Attempt made by: WAYNE POLLICK. Attempt at: 23200 CAMINO DEL MAR, #503  BOCA RATON, FL 33433. |

3. Person Executing
   a. WAYNE POLLICK
   b. A & A LEGAL SERVICE, Inc.
      880 MITTEN ROAD, SUITE 102
      BURLINGAME, CA 94010
   c. (650) 697-9431, FAX (650) 697-4640

Recoverable Costs Per CCP 1033.5(a)(4)(B)
d. The Fee for service was:
e. I am:
   (i)   Independent Contractor
   (ii)  Registration No.:    856

4. I declare under penalty of perjury
   Date: Wed, Jul. 02, 2025

_____
(WAYNE POLLICK)

6976000.146495

DECLARATION OF REASONABLE DILIGENCE

**3-ER-0407**

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **DECLARATION OF REASONABLE DILIGENCE FROM A & A LEGAL SERVICE, INC. TO PAT ZHEN** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | |

**DECLARATION OF REASONABLE DILIGENCE FROM A & A LEGAL SERVICE, INC. TO PAT ZHEN; Case No. 5:20-cv-03639-EJD**

**3-ER-0408**

| Attorney or Party without Attorney: COTCHETT, PITRE & MCCARTHY, LLP 840 MALCOLM ROAD, STE. 200 BURLINGAME, CA 94010 | For Court Use Only |
|---|---|
| Telephone No: 650-697-6000    FAX: No: 650-697-0577 | |
| Attorney for: Plaintiff | Ref. No or File No.: 2975 TELESCOPE A/T |
| Insert name of Court, and Judicial District and Branch Court: United States District Court For The Northern District Of California | |
| Plaintiff: IN re TELESCOPES ANTITRUST LITIGATION | |
| Defendant: -- | |

| DECLARATION OF REASONABLE DILIGENCE | Hearing Date: Mon, Jul. 28, 2025 | Time: 9:00am | Dept/Div: | Case Number: 5:20-cv-03639-EJD |
|---|---|---|---|---|

1. I, JEAN M. MERCADO, and any employee or independent contractors retained by A & A LEGAL SERVICE, Inc. are and were on the dates mentioned herein over the age of eighteen years and not a party to this action. Personal service was attempted on Witness PAT ZHEN as follows:

2. Documents:    SUBPOENA TO TESTIFY AT A DEPOSITION IN A CIVIL ACTION.

| Day | Date | Time | Location | Results |
|---|---|---|---|---|
| Sat | 06/28/25 | 11:50am | Home | THIS LOCATION IS A GATED CONDOMINIUM COMPLEX KNOWN AS GOLGEN VIEW PLAZA. THERE IS NO SECURITY GUARD. MUST USE INTERCOM SYSTEM TO CONTACT THE DESIRED APARTMENT, AFTER WHICH THE RESIDENT MUST EITHER UNLOCK THE GATE REMOTELY OR COME DOWN TO OPEN IT IN PERSON. GAINED ACCESS INTO COMPLEX BY ANOTHER TENANT OPENING THE GATE. PROCEEDED TO THE ELEVATOR, HOWEVER, ACCESS TO OPERATE THE ELEVATOR REQUIRES A KEY. WAS ABLE TO ACCESS THE ELEVATOR. GOT TO APT. 303 AND KNOCKED BUT GOT NO ANSWER AFTER KNOCKING A COUPLES TIMES. ATTEMPTED TO LOCATE NEARBY NEIGHBORS FOR ADDITIONAL INFORMATION BUT NO ONE WAS PRESENT IN THE VICINITY. Attempt made by: JEAN M. MERCADO. Attempt at: 503 CALLE MODESTA, APT. 303  SAN JUAN, PR 00924. |

Page Number 1
Date: Thu, Jul. 03, 2025

DECLARATION OF REASONABLE DILIGENCE

6976000.146509

| Attorney or Party without Attorney: | For Court Use Only |
|---|---|
| COTCHETT, PITRE & MCCARTHY, LLP<br>840 MALCOLM ROAD, STE. 200<br>BURLINGAME, CA 94010 | |

| | |
|---|---|
| Telephone No: 650-697-6000     FAX: No: 650-697-0577 | |
| Attorney for: Plaintiff | Ref. No or File No.:<br>2975 TELESCOPE A/T |

Insert name of Court, and Judicial District and Branch Court:
United States District Court For The Northern District Of California

Plaintiff: IN re TELESCOPES ANTITRUST LITIGATION

Defendant: --

| DECLARATION OF REASONABLE DILIGENCE | Hearing Date:<br>Mon, Jul. 28, 2025 | Time:<br>9:00am | Dept/Div: | Case Number:<br>5:20-cv-03639-EJD |
|---|---|---|---|---|

| Day | Date | Time | Location | Results |
|---|---|---|---|---|
| Wed | 07/02/25 | 5:49pm | Home | WAS UNABLE TO GAIN ACCESS INTO THE APARTMENT COMPLEX DUE TO ACCESS RESTRICTIONS. SPOKE WITH THE SECURITY GUARD WHO WAS IN THE BOOTH. ASKED ABOUT THE SUBJECT AND SHE SAID THE NAME OF THE SUBJECT APPEARED ON THE REGISTER, BUT THERE WAS NO PHONE NUMBER TO CALL, AND APARTMENT 303 WAS EMPTY, SO NOBODY LIVED THERE. SHE SAID THAT IT HAS BEEN LIKE THAT SINCE SHE STARTED WORKING THERE 3-1/2 YEARS AGO. Attempt made by: JEAN M. MERCADO. Attempt at: 503 CALLE MODESTA, APT. 303 SAN JUAN, PR 00924. |

3. Person Executing
   a. JEAN M. MERCADO
   b. A & A LEGAL SERVICE, Inc.
      880 MITTEN ROAD, SUITE 102
      BURLINGAME, CA 94010
   c. (650) 697-9431, FAX (650) 697-4640

Recoverable Costs Per CCP 1033.5(a)(4)(B)
d. The Fee for service was:
e. I am:
   (i)   Independent Contractor

4. I declare under penalty of perjury under the laws
   Date: Thu, Jul. 03, 2025

Page Number 2

that the foregoing is true and correct.

_____
(JEAN M. MERCADO)

6976000.146509

DECLARATION OF REASONABLE DILIGENCE

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA, SAN JOSE DIVISION

IN RE: TELESCOPE ANTITRUST
LITIGATION

Case No. 5:20-cv-03639-EJD

**[PROPOSED] ORDER GRANTING
INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR APPEAL BOND**

**[PROPOSED] ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR APPEAL BOND;
Case No. 5:20-cv-03639-EJD**

**3-ER-0411**

## ORDER

After full consideration of Indirect Purchaser Plaintiffs ("Plaintiffs-Appellees")'s Motion for an Appeal Bond, Plaintiffs-Appellees' Motion is **GRANTED.**

The Court finds that the factors relevant to the propriety of imposing appeal bonds under Federal Rule of Appellate Procedure 7 have been satisfied. Rule 7 reads, in relevant part, "[i]n a civil case, the district court may require an appellant to file a bond or provide other security in any form and amount necessary to ensure payment of costs on appeal." Fed. R. App. P. 7. "[T]he purpose of [an appeal bond] is to protect an appellee against the risk of nonpayment by an unsuccessful appellant." *In re Netflix Priv. Litig.*, No. 5:11-CV-00379-EJD, 2013 WL 6173772, at *2 (N.D. Cal. Nov. 25, 2013) (citation omitted). The trial court may exercise discretion regarding the need for a bond and the bond amount. *Id.*

District courts have articulated three relevant factors a court should consider in determining whether to require an appeal bond: (1) appellant's financial ability to post a bond, (2) the risk that appellant would not pay the costs if the appeal loses, and (3) an assessment of the likelihood that appellant will lose the appeal and be subject to costs. *Id.* at *3 (citing *Fleury v. Richemont N. Am., Inc.*, No. 05–CV–4525 EMC, 2008 WL 4680033, at *6 (N.D. Cal. Oct. 21, 2008) and *Azizian v. Federated Dep't Stores, Inc.*, 499 F.3d 950 (9th Cir.2007)). Here, the Court finds that: (1) each Objector-Appellant is financially able to post a bond; (2) the nature of the Objectors-Appellants' residence, including some of their out-of-state residences, presents increased risk of not paying Plaintiffs-Appellees' costs if they lose on appeal; and (3) the issues raised in the Objectors-Appellants' appeals have already been considered and rejected by the Court, further supporting the posting of bonds. The Court also finds that Plaintiffs-Appellees' arguments regarding the potential illegitimacy of the Objectors-Appellants' identities to be valid and thus supports the posting of the bonds.

Accordingly, each Objector-Appellant (Elman Barnes, National Woodlands Preservation, Inc., Patrick Zhen, and Michael Sussman) is ordered to post a bond in the amount of $42,818 or file a notice of dismissal of his or its appeal. The amount of the bond is reasonable when compared to

**[PROPOSED] ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS'**
**MOTION FOR APPEAL BOND;**
**Case No. 5:20-cv-03639-EJD**                                                           **1**

Plaintiffs-Appellees' potentially taxable costs under Federal Rule of Appellate Procedure 39 and other recoverable costs, including the cost of continued settlement administration through the appeal. The bond shall be posted within fifteen days of the date of this Order.

**IT IS SO ORDERED**.

Dated: _____, 2025

_____
HON. EDWARD J. DAVILA
United States District Court

**[PROPOSED] ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS'
MOTION FOR APPEAL BOND;
Case No. 5:20-cv-03639-EJD**                                                           2

**3-ER-0413**

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| IN RE TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
|---|---|
| | **JOINT STIPULATION AND [PROPOSED] AMENDED JUDGMENT OF DISMISSAL WITH PREJUDICE** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | |

WHEREAS, on April 11, 2025, this Court entered an Order Granting Motion for Final Approval; Granting Motion for Attorneys' Fees, Expenses, and Service Awards (ECF No. 419).

WHEREAS, on April 11, 2025, this Court entered a Judgment that closed the file in this matter (ECF No. 420).

WHEREAS, Indirect Purchaser Plaintiffs and Defendants[1] jointly submit the following [Proposed] Amended Judgment of Dismissal with Prejudice that constitutes a final judgment pursuant to Federal Rule of Civil Procedure 54(b).

Now therefore, Indirect Purchaser Plaintiffs and Defendants hereby stipulate and request that the Court modify the final judgment and enter the following [Proposed] Amended Judgment of Dismissal with Prejudice.

**IT IS SO STIPULATED.**

DATED:  June 23, 2025

*/s/ Christopher Frost*
Christopher Frost (SBN 200336)
chris@frostllp.com
JOHN MAATTA (SBN 83683)
john@frostllp.com
JOSHUA STAMBAUGH (SBN 233834)
josh@frostllp.com
LAWRENCE J.H. LIU (SBN 312115)
lawrence@frostllp.com
**FROST LLP**
10960 Wilshire Boulevard, Suite 2100
Los Angeles, California 90024
Telephone: (424) 254-0441

*/s/ Lin Y. Chan*
Lin Y. Chan (SBN 255027)
lchan@lchb.com
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

---

[1] Celestron Acquisition, LLC; Nantong Schmidt Opto-Electrical Technology Co. Ltd; Olivon Manufacturing Co. Ltd.; Olivon USA, LLC; Pacific Telescope Corp.; Suzhou Synta Optical Technology Co., Ltd.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Synta Technology Corp. of Taiwan; Dave Anderson; Joseph Lupica; and Dar Tson ("David") Shen (collectively, "Defendants").

2
JOINT STIPULATION AND [PROPOSED] AMENDED JUDGMENT OF DISMISSAL WITH PREJUDICE

/s/ Shauna Z. Izadi
SHAUNA A. IZADI (Admitted Pro Hac Vice)
sizadi@izadilegal.com
**IZADI LEGAL GROUP, PLLC**
13155 Noel Rd, Suite 900
Dallas, Texas 75240

*Attorneys for Defendants Celestron Acquisition, LLC; Nantong Schmidt Optoelectrical Technology Co. Ltd.; Olivon Manufacturing Co. Ltd.; Olivon USA, LLC; Pacific Telescope Corp.; Suzhou Synta Optical Technology Co., Ltd.; SW Technology Corp.; Synta Canada International Enterprises Ltd.; Synta Technology Corp.; and David Shen*

/s/ Eric P. Enson
Eric P. Enson (State Bar No. 204447)
eenson@crowell.com
**CROWELL & MORING LLP**
515 South Flower Street, 40th Floor
Los Angeles, CA  90071
Telephone:  213.622.4750
Facsimile:  213.622.2690

*Attorney for Defendants Dave Anderson and Joseph Lupica*

/s/ Adam J. Zapala
Adam J. Zapala
**COTCHETT PITRE
& McCARTHY, LLP**
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Tel: (650) 697-6000
Fax: (650) 697-0577
azapala@cpmlegal.com

/s/ Kalpana Srinivasan
Kalpana Srinivasan (Bar No. 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com

*Interim Co-Lead Counsel for Indirect Purchaser Plaintiffs*

3
JOINT STIPULATION AND [PROPOSED] AMENDED JUDGMENT OF DISMISSAL WITH PREJUDICE

**ATTORNEY ATTESTATION**

I, Lin Chan, am the ECF User whose ID and password are being used to file this document.  In compliance with Civil L.R. 5-1(i)(3), I hereby attest that all counsel have concurred in this filing.

DATED:  June 23, 2025, 2025

*/s/ Lin Y. Chan*
Lin Y. Chan (SBN 255027)
lchan@lchb.com
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

4
JOINT STIPULATION AND [PROPOSED] AMENDED JUDGMENT OF DISMISSAL WITH PREJUDICE

**3-ER-0417**

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **[PROPOSED] AMENDED JUDGMENT OF DISMISSAL WITH PREJUDICE** |
| THIS DOCUMENT RELATES TO: | **Dept.: Courtroom 4** <br> **Judge: Hon. Edward J. Davila** |
| All Indirect Purchaser Actions | |

Indirect Purchaser Plaintiffs ("IPPs") have presented this matter before the Court to determine whether there is any cause why this Court should not enter an Amended Final Judgment ("Final Judgment") as to Defendants Celestron Acquisition, LLC; Nantong Schmidt Opto-Electrical Technology Co. Ltd; Olivon Manufacturing Co. Ltd.; Pacific Telescope Corp.; Olivon USA, LLC; Suzhou Synta Optical Technology Co., Ltd.; SW Technology Corporation; Synta Canada International Enterprises Ltd.; Synta Technology Corp. of Taiwan; Dave Anderson; Joseph Lupica; and Dar Tson ("David") Shen; (collectively, "Defendants").

The Court, having carefully considered all papers filed and proceedings held herein, including IPPs' Motions for Preliminary and Final Approval of Settlement; the objections filed by DPP Conditional Objectors Pioneer Cycling & Fitness LLP and Jason Steele, Elman Barnes, National Woodlands Preservation, Inc., Mike Sussman, and Pat Zhen; IPPs' responses to those objections; and the statements of counsel and the parties, and otherwise being fully informed, has already determined as follows: (a) IPPs' Motion for Final Approval of Settlement should be granted; (b) IPPs' claims against Defendants should be dismissed with prejudice; and (c) IPPs' plan of distribution should be approved. This Court further finds that that there is no just reason for delaying the entry of Final Judgment.

Accordingly, the Court directs entry of Final Judgment, which shall constitute a final adjudication of this case on the merits as to the parties to the Settlement.

Good cause appearing therefore, it is:

**ORDERED, ADJUDGED, AND DECREED THAT**:

1.      The Court has jurisdiction over the subject matter of this litigation, the Actions within this litigation, and the parties to the Settlement, including all members of the Settlement Class and Defendants.

2.      For purposes of this Judgment, except as otherwise set forth herein, the Court adopts and incorporates the definitions contained in the Settlement, attached hereto as Exhibit 1.

3.      The Court has already granted IPPs' Motion for Final Approval of the Settlement, and found that the Settlement is, in all respects, fair, reasonable, and adequate to the Settlement Class pursuant to Rule 23 of the Federal Rules of Civil Procedure ("FRCP").

4.      The Settlement Class is defined as

> all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

5.      Similarly, the Court has already found that IPPs' Motion for Attorneys' Fees and Costs is appropriate and fair and granted that motion. *See, e.g.*, ECF Nos. 398 (Motion); 419 (Order granting motion).

6.      The Court dismisses on the merits and with prejudice IPPs' claims against Defendants, with each party to bear their own costs and attorneys' fees, except as provided in the Settlement.

7.      The Court had similarly already approved IPPs' plan of distribution.

8.      All persons and entities who are Releasors under the terms of the Settlement are hereby barred and enjoined from commencing, prosecuting, or continuing, either directly or indirectly, any claim against the Releasees in this or any other jurisdiction arising out of, or related to, any of the Released Claims provided, however, nothing herein shall be deemed to release any of the executory obligations of the parties to the Settlement, nor release any and all rights of the IPPs, on behalf of themselves and the members of the Settlement Class, against the Defendants to enforce the terms and provisions of the Settlement, including, but not limited to having judgment entered on motion before the Court against the Defendants in the event that the full Settlement Amount is not timely paid. *See* <u>Exhibit 1</u> at ¶ 1.(w), (x), and (y).

9.      The Releasees are hereby and forever released from all Released Claims as defined in the Settlement. *Id.*

10.     Without affecting the finality of this Judgment in any way, this Court hereby retains continuing jurisdiction over: (a) implementation of, and compliance with, the Settlement

3
[PROPOSED] AMENDED FINAL JUDGMENT

**3-ER-0420**

and any distribution to the Settlement Class pursuant to further orders of this Court; (b) disposition of the Gross Settlement Fund; (c) hearing and determining applications by IPPs for attorneys' fees, costs, expenses, and interest; (d) the Actions, until the Final Judgment has become effective and each and every act agreed to be performed by the parties under the terms of the Settlement have been performed; (e) hearing and ruling on any matters relating to the plan of allocation of Settlement proceeds; and (f) the parties to the Settlement for the purpose of enforcing and administering the Settlement, and the mutual releases contemplated by, or executed in connection with, the Settlement.

11.    The persons and entities identified in <u>Exhibit 2</u> are validly excluded from the Class. Such persons and entities are not included in or bound by this Judgment. Such persons and entities are not entitled to any recovery of the Settlement proceeds obtained in connection with the Settlement Agreement.

12.    The Court finds, pursuant to FRCP Rules 54(a) and (b), that Final Judgment should be entered, and further finds that there is no just reason for delay in the entry of Final Judgment, as to the parties to the Settlement. Accordingly, the Clerk is hereby directed to enter Final Judgment forthwith.

Dated: _____ ___, 2025

_____
Hon. Edward J. Davila
United States District Judge

# EXHIBIT 1

Docusign Envelope ID: C4680BB8-1144-4161-A095-742BDFF855C1

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| **IN RE TELESCOPES ANTITRUST LITIGATION** | **Case No. 5:20-cv-03639-EJD** |
| **This Document Relates to:** | **SETTLEMENT AGREEMENT** |
| **Indirect Purchaser Actions** | |

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**

2987155.2

3-ER-0423

This Settlement Agreement (defined below) is made and entered into this <u>31st</u> day of August, 2024 (the "Execution Date"), by and among the Synta Defendants and the Indirect Purchaser Plaintiffs, both individually and on behalf of the proposed Settlement Class (defined below) in the above-captioned action ("Action"). This Settlement Agreement is intended by the Synta Defendants and the Indirect Purchaser Plaintiffs ("the Settling Parties" as further defined below) to fully, finally, and forever resolve, discharge and settle the Released Claims (defined below), upon and subject to the terms and conditions hereof.

## RECITALS

WHEREAS, Indirect Purchaser Plaintiffs are prosecuting the Action on their own behalf and on behalf of the proposed Settlement Class against the Synta Defendants and other Defendants and alleged co-conspirators;

WHEREAS, Indirect Purchaser Plaintiffs allege, among other things, that the Synta Defendants violated the antitrust and consumer protection laws by conspiring amongst themselves and with the other Defendants and alleged co-conspirators to fix, raise, maintain, or stabilize the prices of Telescopes, and these acts caused the Class to incur damages;

WHEREAS, the Synta Defendants have denied and continue to deny each and all of Indirect Purchaser Plaintiffs' claims and allegations of wrongdoing; have not conceded or admitted any liability, or that they violated or breached any law, regulation, or duty owed to the Indirect Purchaser Plaintiffs; have denied and continue to deny all charges of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged in the Action; and further deny the allegations that the Indirect Purchaser Plaintiffs or any member of the Class were harmed by any conduct by the Synta Defendants alleged in the Action or otherwise;

WHEREAS, Indirect Purchaser Plaintiffs and the Synta Defendants have engaged in extensive discovery regarding the facts pertaining to Indirect Purchaser Plaintiffs' claims and the Synta Defendants' defenses;

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**     1
2987155.2

**3-ER-0424**

Docusign Envelope ID: C4680BB8-4144-4161-A095-742BDFF855C1

WHEREAS, Indirect Purchaser Plaintiffs and the Synta Defendants agree that neither this Settlement Agreement nor any statement made in the negotiation thereof shall be deemed or construed to be an admission or evidence of any violation of any statute or law or of any liability or wrongdoing by the Synta Defendants or of the truth of any of the claims or allegations alleged in the Action;

WHEREAS, Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs ("Co-Lead Counsel") have concluded, after due investigation and after carefully considering the relevant circumstances, including, without limitation, the claims asserted in the Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Complaint, the legal and factual defenses thereto, and the applicable law, that it is in the best interests of the Indirect Purchaser Plaintiffs and the proposed Settlement Class to enter into this Settlement Agreement to avoid the uncertainties of litigation and to assure that the benefits reflected herein are obtained for the Indirect Purchaser Plaintiffs and the Class, and, further, that Co-Lead Counsel consider the Settlement set forth herein to be fair, reasonable and adequate and in the best interests of the Indirect Purchaser Plaintiffs and the Class;

WHEREAS, the Synta Defendants have concluded, despite their belief that they are not liable for the claims asserted against them in the Action and that they have good defenses thereto, that they will enter into this Settlement Agreement in order to avoid the further expense, inconvenience, and distraction of burdensome and protracted litigation, and thereby put to rest this controversy with respect to the Indirect Purchaser Plaintiffs and the Class and avoid the risks inherent in complex litigation; and

WHEREAS, arm's length settlement negotiations have taken place between counsel for Indirect Purchaser Plaintiffs and the Synta Defendants over many months, including in multiple mediations before Judge Suzanne Segal (Ret.), and this Settlement Agreement, which embodies all of the terms and conditions of the Settlement between the Settling Parties, both individually and on behalf of the Class, has been reached as a result of the Settling Parties' negotiations

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                          2
2987155.2

**3-ER-0425**

(subject to the approval of the Court) as provided herein and is intended to supersede any prior agreements or understandings between the Settling Parties.

## AGREEMENT

NOW, THEREFORE, IT IS HEREBY STIPULATED AND AGREED by and among the Settling Parties, by and through their undersigned attorneys of record, in consideration of the covenants, agreements, and releases set forth herein and for other good and valuable consideration, that the Action and the Released Claims as against the Synta Defendants shall be finally and fully settled, compromised and dismissed on the merits and with prejudice, without costs as to Indirect Purchaser Plaintiffs, the Class, or the Synta Defendants, upon and subject to the approval of the Court, following notice to the Class, on the following terms and conditions:

## DEFINITIONS

1. As used in this Settlement Agreement, the following terms shall have the meanings specified below:

(a) "Action" means *In re Telescopes Antitrust Litigation* – All Indirect Purchaser Actions, Case No. 5:20-cv-03639-EJD, and each of the cases brought on behalf of indirect purchasers previously consolidated and/or included as part of Docket No. 5:20-cv-03639-EJD.

(b) "Affiliates" means entities controlling, controlled by or under common control with a Releasee or Releasor.

(c) "Authorized Claimant" means any Indirect Plaintiff Purchaser who, in accordance with the terms of this Settlement Agreement, is entitled to a distribution consistent with any Distribution Plan or order of the Court ordering distribution to the Class.

(d) "Claims Administrator" means the claims administrator(s) to be selected by Co-Lead Counsel.

(e) The "Class" or "Settlement Class" is defined as all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD                    3
2987155.2

3-ER-0426

than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

(f)    "Class Member" or "Settlement Class Member" means a Person who falls within the definition of the Settlement Class and who does not timely and validly elect to be excluded from the Class in accordance with the procedure to be established by the Court.

(g)    "Co-Lead Counsel" means the law firms of Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein LLP; and Susman Godfrey LLP.

(h)    "Court" means the United States District Court for the Northern District of California.

(i)    "Distribution Plan" means any plan or formula of allocation, to be approved by the Court, whereby the Net Settlement Fund shall in the future be distributed to Authorized Claimants.

(j)    "Document" is synonymous in meaning and equal in scope to the usage of this term in Fed. R. Civ. P. 34(a), including, without limitation, electronic or computerized data compilations. A draft of non-identical copy is a separate document within the meaning of this term.

(k)    "Effective Date" means the first date by which all of the following events and conditions have been met or have occurred:

(1)    All parties have executed this Settlement Agreement;

(2)    The Court has preliminarily approved the Settlement Agreement, certified the Settlement Class for purposes of effectuating this Settlement, and approved the Settlement after providing notice to the Settlement Class as defined herein;

(3)    The Court has entered a Final Judgment; and

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD                4
2987155.2

3-ER-0427

Docusign Envelope ID: C4680BB8-1144-4161-A095-742BDFF855C1

(4)   The Final Judgment (as more fully described in ¶ 7 of this Settlement Agreement) has become final, with the occurrence of the following: (A) the entry by the Court of a final order approving the Settlement Agreement under Rule 23(e) of the Federal Rules of Civil Procedure together with entry of a final judgment dismissing the Action and all claims therein by the Class against the Synta Defendants with prejudice as to all Class Members (the "Final Judgment"), and (B) the expiration of the time for appeal or to seek permission to appeal from the Court's approval of the Settlement Agreement and entry of the Final Judgment or, if an appeal from an approval and Final Judgment is taken, the affirmance of such Final Judgment in its entirety, without modification, by the court of last resort to which an appeal of such Final Judgment may be taken, provided, however, a modification or reversal on appeal of any amount of Co-Lead Counsel's fees and expenses awarded by the Court from the Settlement Fund or any plan of allocation or distribution of the Settlement Fund shall not be deemed a modification of all or part of the terms of this Settlement Agreement or the Final Judgment. It is agreed that neither the provisions of Rule 60 of the Federal Rules of Civil Procedure nor the All Writs Act, 28 U.S.C. § 1651, shall be taken into account in determining the above-stated times.

(l)   "Escrow Agent" means the agent jointly designated by Co-Lead Counsel and the Synta Defendants, and any successor agent.

(m)   "Execution Date" means the first date set forth above in this Settlement Agreement, which is August 31, 2024.

(n)   "Final" means, with respect to any order of court, including, without limitation, the Judgment, that such order represents a final and binding determination of all issues within its scope and is not subject to further review on appeal or otherwise. Without limitation, an order becomes "Final" when: (a) no appeal has been filed and the prescribed time for commencing any appeal has expired; or (b) an appeal has been filed and either (i) the appeal has been dismissed and the prescribed time, if any, for commencing any further appeal has expired, or (ii) the order has been affirmed in its entirety and the prescribed time, if any, for commencing

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                        5
2987155.2

**3-ER-0428**

Docusign Envelope ID: C4680BB8-1144-4161-A895-742BDFF855C1

Case 5:20-cv-03639-EJD    Document 425-1    Filed 06/23/25    Page 8 of 33

any further appeal has expired. For purposes of this Settlement Agreement, an "appeal" includes appeals as of right, discretionary appeals, interlocutory appeals, proceedings involving writs of certiorari or mandamus, and any other proceedings of like kind. Any appeal or other proceeding pertaining solely to any order adopting or approving a Distribution Plan, and/or to any order issued in respect of an application for attorneys' fees and expenses consistent with this Settlement Agreement, shall not in any way delay or preclude the Judgment from becoming Final.

(o)    "Gross Settlement Fund" or "Settlement Fund" means the Settlement Amount plus any interest that may accrue.

(p)    "Indirect Purchaser Plaintiffs" means John Goerger, Scott Plummer, Donnie Houston, Ronald Troillet, Sigurd Murphy, Thien Ngo, Arthur Sines, Jesse Smith, Greg Kendall, Austin Griffith, Keith Uehara, Madeline Bekielewski,[1] Michael Price, Brian Murphy, Timothy McQuaid, Sara Day Brewer, Robert Welsh, Bentaro Huset, Jason Glydewell, Deborah Lemar, James Riley, David Dick, Leon Greenberg, Anthony Di Mambro, Steven Zellers, Michael Liskow, Philip Moore, Doug Lundy, John Maurice, David Kerber, Thomas Berta, Greg Ross, Vincent Catanzaro, David Quaglietta, and Herbert Nelson, as well as any other Person added as an Indirect Purchaser Plaintiff in the Action.

(q)    "Indirect Purchaser States" means Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

(r)    "Judgment" means the order of judgment and dismissal of the Action with prejudice.

(s)    "Net Settlement Fund" means the Gross Settlement Fund, less the

---

[1] Richard Bekielewski was an original class representative, but he passed away during the pendency of the litigation. His wife, Madeline Bekielewski, has taken over his estate and claims.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    6
2987155.2

payments set forth in ¶ 17.

(t)    "Notice, Administrative and Claims Administration Costs" means the reasonable sum of nonrefundable settlement money to be paid out of the Gross Settlement Fund to pay for notice to the Class and related administrative and claims administration costs.

(u)    "Person(s)" means an individual, corporation, limited liability corporation, professional corporation, limited liability partnership, partnership, limited partnership, association, joint stock company, estate, legal representative, trust, unincorporated association, government or any political subdivision or agency thereof, and any business or legal entity and any spouses, heirs, predecessors, successors, representatives or assignees of any of the foregoing.

(v)    "Proof of Claim and Release" means the form to be sent to the Class, upon further order(s) of the Court, by which any member of the Class may make claims against the Gross Settlement Fund.

(w)    "Released Claims" means any and all manner of claims, demands, rights, actions, suits, causes of action, whether class, individual or otherwise in nature, fees, costs, penalties, injuries, damages whenever incurred, liabilities of any nature whatsoever, known or unknown (including, but not limited to, "Unknown Claims"), foreseen or unforeseen, suspected or unsuspected, asserted or unasserted, contingent or non-contingent, in law or in equity, under the laws of any jurisdiction, which Releasors or any of them, whether directly, representatively, derivatively, or in any other capacity, ever had, now have or hereafter can, shall or may have, relating in any way to any conduct on or before the Effective Date and arising out of or related in any way in whole or in part to any facts, circumstances, acts, or omissions by Releasees which were alleged or which could have been alleged in the Action, including but not limited to any conduct by Releasees regardless of where it occurred at any time on or before the Effective Date concerning, arising out of or related to (1) the purchase, pricing, selling, discounting, marketing, manufacturing and/or distributing of Telescopes; (2) any agreement, combination or conspiracy to raise, fix, maintain or stabilize the prices of Telescopes or restrict, reduce, alter or allocate the supply, quantity or quality of Telescopes or concerning the development, manufacture, supply,

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD                    7
2987155.2

3-ER-0430

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BBFF855C1

distribution, transfer, marketing, sale or pricing of Telescopes, or any other restraint of competition alleged in the Action or that could have been or hereafter could be alleged against the Releasees relating to Telescopes, or (3) any other restraint of competition relating to Telescopes that could have been or hereafter could be alleged against the Releasees as a violation of the Sherman Act or any other antitrust, unjust enrichment, unfair competition, unfair practices, trade practices, price discrimination, unitary pricing, racketeering, civil conspiracy or consumer protection law, whether under federal, state, local or foreign law provided however, that nothing herein shall release: (i) claims involving any negligence, personal injury, breach of contract, bailment, failure to deliver lost goods, damaged or delayed goods, product defect, securities or similar claim relating to any Telescopes; and (ii) claims for damages under the state or local laws of any jurisdiction other than an Indirect Purchaser State, as defined herein in this Settlement Agreement. For the avoidance of doubt, this Settlement Agreement does not release any claims for direct purchases of Telescopes.

(x)    "Releasees" refers jointly and severally, individually and collectively to the Synta Defendants (as defined in ¶ 1(ee) below) and each of their respective past and/or present direct and indirect parents, members, subsidiaries, Affiliates, predecessors, joint ventures, heirs, executors, administrators, successors and assigns, and their respective past, present and/or future officers, directors, employees, agents, attorneys and legal representatives, servants, and representatives, and the predecessors, successors, heirs, executors, administrators and assigns of each of the foregoing. For the avoidance of doubt, "Releasees" does not refer to, or mean, alleged co-conspirator and named Defendant Ningbo Sunny or any of its officers, affiliates or related entities in their capacity on behalf of Ningbo Sunny.

(y)    "Releasors" refers jointly and severally, individually and collectively to the Indirect Purchaser Plaintiffs and each and every member of the Class on their own behalf and on behalf of their respective past, present, and/or future direct and indirect parents, members, subsidiaries and Affiliates, and their past, present and/or future officers, directors, employees, agents, attorneys and legal representatives, servants, and representatives, and the predecessors,

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

Case 5:20-cv-03639-EJD   Document 425-1   Filed 06/23/25   Page 11 of 33

successors, heirs, executors, administrators and assigns of each of the foregoing.

(z)   "Settlement" means the settlement of the Released Claims set forth herein.

(aa)   "Settlement Agreement" means this settlement agreement dated ~~June~~ August 31 , 2024.

(bb)   "Settlement Amount" means Thirty-Two Million U.S. Dollars ($32,000,000.00).

(cc)   "Settling Parties" means, collectively, the Indirect Purchaser Plaintiffs (on behalf of themselves and the Class) and the Synta Defendants.

(dd)   "Synta Co-Conspirators" means Jean Shen, Sylvia Shen, Jack Chen, Laurence Huen, and Corey Lee.

(ee)   "Synta Defendants" means Synta Technology Corp. of Taiwan; Suzhou Synta Optical Technology Co. Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Canada International Enterprises Ltd.; Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.; SW Technology Corporation; Celestron Acquisition, LLC; Olivon, USA LLC; Dar Tson ("David") Shen; Joseph Lupica; and Dave Anderson.

(ff)   "Telescopes" refers to optical instruments that magnify and enhance the view of faraway objects, as further described in paragraphs 96 through 99 of the Indirect Purchaser Plaintiffs' Fourth Amended Consolidated Complaint, and does not include other optical instruments not marketed as telescopes, such as binoculars, siting scopes, microscopes, etc.

(gg)   "Unknown Claims" means any Released Claim that an Indirect Purchaser Plaintiff and/or Class Member does not know or suspect to exist in his, her or its favor at the time of the release of the Releasees that if known by him, her or it, might have affected his, her or its settlement with and release of the Releasees, or might have affected his, her or its decision not to object to this Settlement. Such Unknown Claims include claims that are the subject of California Civil Code § 1542 and equivalent, similar or comparable laws or principles of law. California Civil Code § 1542 provides:

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**   9
2987155.2

**3-ER-0432**

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.

**Preliminary Approval Order, Notice Order and Settlement Hearing**

2. ***Reasonable Best Efforts to Effectuate this Settlement.*** The Settling Parties: (a) acknowledge that it is their intent to consummate this Settlement Agreement; and (b) agree to cooperate to the extent reasonably necessary to effectuate and implement the terms and conditions of this Settlement Agreement and to exercise their reasonable best efforts to accomplish the terms and conditions of this Settlement Agreement. The Synta Defendants agree to provide data reasonably necessary and available to them for Plaintiffs to effectuate Class Notice, allocation, and payments to the Settlement Class.

3. ***Motion for Preliminary Approval.*** At a time to be determined by Co-Lead Counsel, Co-Lead Counsel shall submit this Settlement Agreement to the Court and shall apply for entry of a Preliminary Approval Order, requesting, *inter alia,* preliminary approval of the Settlement. The motion shall include (a) the proposed Preliminary Approval Order, and (b) a request for certification of the Class for settlement purposes pursuant to Federal Rule of Civil Procedure 23.

4. ***Proposed Notice.*** At a time to be determined in their sole discretion, Co-Lead Counsel shall submit to the Court for approval a proposed form of, method for and schedule for dissemination of notice to the Class. This motion shall recite and ask the Court to find that the proposed form of and method for dissemination of the notice to the Class constitutes valid, due and sufficient notice to the Class, constitutes the best notice practicable under the circumstances, and complies fully with the requirements of Federal Rule of Civil Procedure 23.

5. ***Claims Administrator.*** Indirect Purchaser Plaintiffs shall retain a Claims

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    10
2987155.2

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BBFF855C1

Administrator, which shall be responsible for the claims administration process including distribution to Class Members pursuant to a court-approved plan of distribution. The fees and expenses of the Claims Administrator shall be paid exclusively out of the Settlement Fund. In no event shall the Synta Defendants be separately responsible for any fees or expenses of the Claims Administrator.

6. **_Requests for Exclusion (Opt Outs)._** Any Class Member that wishes to seek exclusion from the Settlement Class by "opting out" must timely submit a written request for exclusion to the Claims Administrator (a "Request for Exclusion"). To be effective, each such Request for Exclusion must state: the Settlement Class Member's full legal name, address and telephone number; that the Class Member purchased one or more Telescopes from a Distributor (or from an entity other than a defendant) who in turn purchased from one of the Defendants during the Class Period; and that the Class Member (1) wants to be excluded from the _In re Telescopes Antitrust Litigation_ – Indirect Purchaser Actions class action settlement with the Synta Defendants and (2) understands that by so doing, the Class Member will not be able to get any money or benefits from the Settlement with the Synta Defendants under the Settlement Agreement. All Requests for Exclusion must be signed and dated by the Class Member or its officer or legal representative, and be (1) mailed to the Claims Administrator via First Class United States Mail (or United States Mail for overnight delivery) and postmarked by a date certain to be specified on the Notice, or (2) received by the Claims Administrator by that date, Persons who opt out are not entitled to any monetary award from the Settlement Fund.

7. **_Motion for Final Approval and Entry of Final Judgment._** Prior to the date set by the Court to consider whether this Settlement should be finally approved, Co-Lead Counsel shall submit a motion for final approval of the Settlement by the Court. The Settling Parties shall jointly seek entry of the Final Approval Order and Judgment:

(a)    certifying the Settlement Class, as defined in this Settlement Agreement, pursuant to Federal Rule of Civil Procedure 23, solely for purposes of this Settlement;

(b)    fully and finally approving the Settlement contemplated by this Settlement

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                                    11
2987155.2

**3-ER-0434**

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

Agreement and its terms as being fair, reasonable and adequate within the meaning of Federal Rule of Civil Procedure 23 and directing its consummation pursuant to its terms and conditions.

(c)    finding that the notice given to the Class Members constituted the best notice practicable under the circumstances and complies in all respects with the requirements of Federal Rule of Civil Procedure 23 and due process;

(d)    directing that the Action be dismissed with prejudice as to the Synta Defendants and, except as provided for herein, without costs;

(e)    discharging and releasing the Releasees from all Released Claims;

(f)    permanently barring and enjoining the institution and prosecution, by Indirect Purchaser Plaintiffs and Class Members, of any other action against the Releasees in any court asserting any claims related in any way to the Released Claims;

(g)    reserving continuing and exclusive jurisdiction over the Settlement, including all future proceedings concerning the administration, consummation and enforcement of this Settlement Agreement;

(h)    determining pursuant to Federal Rule of Civil Procedure 54(b) that there is no just reason for delay and directing entry of a final judgment as to the Synta Defendants; and

(i)    containing such other and further provisions consistent with the terms of this Settlement Agreement to which the parties expressly consent in writing.

8.    *Stay Order.* Upon the Execution Date, the Action shall be stayed, and any existing stay shall remain in place, as against the Synta Defendants only. Should the Action be tried against any Defendants other than the Synta Defendants, the parties specifically agree that any findings therein shall not be binding on or admissible in evidence against the Synta Defendants or prejudice the Synta Defendants in any way in any future proceeding involving the Synta Defendants.

9.    Upon the date that the Court enters an order preliminarily approving the Settlement, Indirect Purchaser Plaintiffs and members of the Class shall be barred and enjoined from commencing, instituting or continuing to prosecute any action or any proceeding in any

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD                    12

2987155.2

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

court of law or equity, arbitration tribunal, administrative forum or other forum of any kind worldwide based on the Released Claims.

**Releases**

10.    *Released Claims.* Upon the Effective Date, the Releasors (regardless of whether any such Releasor ever seeks or obtains any recovery by any means, including, without limitation, by submitting a Proof of Claim and Release, any distribution from the Gross Settlement Fund) by virtue of this Settlement Agreement shall be deemed to have, and by operation of the Judgment shall have fully, finally and forever released, relinquished and discharged all Released Claims against the Releasees.

11.    *No Future Actions Following Release.* The Releasors shall not, after the Effective Date, seek (directly or indirectly) to commence, institute, maintain or prosecute any suit, action or complaint or collect from or proceed against the Synta Defendants or any other Releasee (including pursuant to the Action) based on the Released Claims in any forum worldwide, whether on his, her, or its own behalf or as part of any putative, purported or certified class of purchasers or consumers.

12.    *Covenant Not to Sue.* Releasors hereby covenant not to sue the Releasees with respect to any such Released Claims. Releasors shall be permanently barred and enjoined from instituting, commencing or prosecuting against the Releasees any claims based in whole or in part on the Released Claims. The Settling Parties contemplate and agree that this Settlement Agreement may be pleaded as a bar to a lawsuit, and an injunction may be obtained, preventing any action from being initiated or maintained in any case sought to be prosecuted by or on behalf of Indirect Purchaser Plaintiffs or Class Members with respect to the Released Claims.

13.    *Waiver of California Civil Code § 1542 and Similar Laws.* The Releasors acknowledge that, by virtue of the execution of this Settlement Agreement, and for the consideration received hereunder, it is their intention to release, and they are releasing, all Released Claims, even Unknown Claims. In furtherance of this intention, the Releasors expressly waive and relinquish, to the fullest extent permitted by law, any rights or benefits conferred by

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    13
2987155.2

**3-ER-0436**

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

Case 5:20-cv-03639-EJD    Document 425-1    Filed 06/23/25    Page 16 of 33

the provisions of California Civil Code § 1542, as set forth in ¶ 1(gg), or equivalent, similar or comparable laws or principles of law. The Releasors acknowledge that they have been advised by Co-Lead Counsel of the contents and effects of California Civil Code § 1542, and hereby expressly waive and release with respect to the Released Claims any and all provisions, rights and benefits conferred by California Civil Code § 1542 or by any equivalent, similar or comparable law or principle of law in any jurisdiction. The Releasors may hereafter discover facts other than or different from those which they know or believe to be true with respect to the subject matter of the Released Claims, but the Releasors hereby expressly waive and fully, finally and forever settle and release any known or unknown, suspected or unsuspected, foreseen or unforeseen, asserted or unasserted, contingent or non-contingent, and accrued or unaccrued claim, loss or damage with respect to the Released Claims, whether or not concealed or hidden, without regard to the subsequent discovery or existence of such additional or different facts. The release of unknown, unanticipated, unsuspected, unforeseen, and unaccrued losses or claims in this paragraph is not a mere recital.

14. ***Claims Excluded from Release.*** Notwithstanding the foregoing, the releases provided herein shall not release claims against the Synta Defendants for product liability, breach of contract, breach of warranty or personal injury, claims for direct purchases of Telescopes or any other claim unrelated to the allegations in the Action of restraint of competition or unfair competition with respect to Telescopes. Additionally, the releases provided herein shall not release any claims to enforce the terms of this Settlement Agreement.

**Settlement Consideration and Settlement Fund**

15. ***Settlement Payments.*** The Synta Defendants shall pay by wire transfer the Settlement Amount ($32,000,000) to the Escrow Agent pursuant to escrow instructions as follows: (i) a $1 million non-reimbursable amount within 10 days of preliminary approval; (ii) a further $1 million within 12 months of preliminary approval, which latter amount shall be refunded to the Synta Defendants if the Settlement is not approved; and (iii) the entire remaining portion of the Settlement Amount according to the terms of the parties' Confidential Supplemental Agreement

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**          14

2987155.2

but not to exceed 18 months from preliminary approval. This Settlement Amount constitutes the total amount of payment that the Synta Defendants are required to make in connection with this Settlement Agreement. This amount shall not be subject to reduction, and upon the occurrence of the Effective Date, no funds shall revert to the Synta Defendants except as provided herein. The Escrow Agent shall only act in accordance with the mutually agreed escrow instructions.

16.    ***Stipulated Judgment.*** Synta Technology Corp. of Taiwan; Suzhou Synta Optical Technology Co. Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Canada International Enterprises Ltd.; Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.; SW Technology Corporation; Celestron Acquisition, LLC;  Olivon, USA LLC; and Dar Tson ("David") Shen will execute a stipulated judgment for $32 million (less any amounts paid toward the Settlement Fund) concurrently with the execution of the Settlement Agreement. The stipulated judgment will be held in escrow, and not filed or entered, unless there is an uncured default of the Settlement Agreement following 30 days' written notice to the defaulting party or parties.

17.    ***Disbursements Prior to Effective Date.*** No amount may be disbursed from the Gross Settlement Fund unless and until the Effective Date, except that: (a) Notice, Administrative and Claims Administration Costs may be paid from the Gross Settlement Fund as they become due; (b) Taxes and Tax Expenses (as defined in ¶ 21(b) below) may be paid from the Gross Settlement Fund as they become due; and (c) attorneys' fees and reimbursement of litigation costs may be paid as ordered by the Court, which may be disbursed during the pendency of any appeals, which may be taken from the judgment to be entered by the Court finally approving this Settlement.

18.    ***Refund by Escrow Agent.*** If the Settlement as described herein is not finally approved by any court, or it is terminated as provided herein, or the Judgment as described herein is not approved or entered or is overturned on appeal or by writ, the Gross Settlement Fund, including the Settlement Amount and all interest earned on the Settlement Amount while held in

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

escrow, excluding only Notice, Administrative and Claims Administration Costs and Taxes and/or Tax Expenses, shall be refunded, reimbursed and repaid by the Escrow Agent to the Synta Defendants within five (5) business days after receiving notice pursuant to ¶ 38 below.

19.    *Refund by Co-Lead Counsel.* If the Settlement as described herein is not finally approved by any court, or it is terminated as provided herein, or the Judgment as described herein is not approved or entered or is overturned on appeal or by writ, any attorneys' fees and costs previously paid pursuant to this Settlement Agreement (as well as interest on such amounts) shall be refunded, reimbursed and repaid by Co-Lead Counsel within thirty (30) business days after receiving notice pursuant to ¶ 38 below.

20.    *No Additional Payments by the Synta Defendants.* Under no circumstances will the Synta Defendants be required to pay more or less than the Settlement Amount pursuant to this Settlement Agreement and the Settlement set forth herein. For purposes of clarification, the payment of any Fee and Expense Award (as defined in ¶ 30 below), the Notice, Administrative and Claims Administrative Costs, and any other costs associated with the implementation of this Settlement Agreement shall be exclusively paid from the Settlement Amount.

21.    *Taxes.* The Settling Parties and the Escrow Agent agree to treat the Gross Settlement Fund as being at all times a "qualified settlement fund" within the meaning of Treas. Reg. § 1.468B-1. The Escrow Agent shall timely make such elections as necessary or advisable to carry out the provisions of this paragraph, including the "relation-back election" (as defined in Treas. Reg. § 1.468B-1) back to the earliest permitted date. Such elections shall be made in compliance with the procedures and requirements contained in such regulations. It shall be the responsibility of the Escrow Agent to prepare and deliver timely and properly the necessary documentation for signature by all necessary parties, and thereafter to cause the appropriate filing to occur.

(a)    For the purpose of § 1.468B of the Internal Revenue Code of 1986, as amended, and the regulations promulgated thereunder, the "administrator" shall be the Escrow Agent. The Escrow Agent shall satisfy the administrative requirements imposed by Treas. Reg. § 1.468B-2

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    16
2987155.2

**3-ER-0439**

by, e.g., (i) obtaining a taxpayer identification number, (ii) satisfying any information reporting or withholding requirements imposed on distributions from the Gross Settlement Fund, and (iii) timely and properly filing applicable federal, state and local tax returns necessary or advisable with respect to the Gross Settlement Fund (including, without limitation, the returns described in Treas. Reg. § 1.468B-2(k)) and paying any taxes reported thereon. Such returns (as well as the election described in this paragraph) shall be consistent with the provisions of this paragraph and in all events shall reflect that all Taxes as defined in ¶ 21(b) below on the income earned by the Gross Settlement Fund shall be paid out of the Gross Settlement Fund as provided in ¶ 21(b) hereof;

(b)   The following shall be paid out of the Gross Settlement Fund: (i) all taxes (including any estimated taxes, interest or penalties) arising with respect to the income earned by the Gross Settlement Fund, including, without limitation, any taxes or tax detriments that may be imposed upon the Synta Defendants or their counsel with respect to any income earned by the Gross Settlement Fund for any period during which the Gross Settlement Fund does not qualify as a "qualified settlement fund" for federal or state income tax purposes (collectively, "Taxes"); and (ii) all expenses and costs incurred in connection with the operation and implementation of this paragraph, including, without limitation, expenses of tax attorneys and/or accountants and mailing and distribution costs and expenses relating to filing (or failing to file) the returns described in this paragraph (collectively, "Tax Expenses"). In all events neither any of the Synta Defendants nor their counsel shall have any liability or responsibility for the Taxes or the Tax Expenses. With funds from the Gross Settlement Fund, the Escrow Agent shall indemnify and hold harmless the Synta Defendants and their counsel for Taxes and Tax Expenses (including, without limitation, Taxes payable by reason of any such indemnification). Further, Taxes and Tax Expenses shall be treated as, and considered to be, a cost of administration of the Gross Settlement Fund and shall timely be paid by the Escrow Agent out of the Gross Settlement Fund without prior order from the Court and the Escrow Agent shall be obligated (notwithstanding anything herein to the contrary) to withhold from distribution to Authorized Claimants any funds

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

necessary to pay such amounts, including the establishment of adequate reserves for any Taxes and Tax Expenses (as well as any amounts that may be required to be withheld under Treas. Reg. §1.468B-2(1)(2)); neither any of the Synta Defendants nor their counsel is responsible therefor, nor shall they have any liability therefor. The Settling Parties agree to cooperate with the Escrow Agent, each other, their tax attorneys and their accountants to the extent reasonably necessary to carry out the provisions of this paragraph.

**Administration and Distribution of Gross Settlement Fund**

22. *Time to Appeal.* The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether or not either the Distribution Plan or an application for attorneys' fees and expenses has been submitted to the Court or resolved.

23. *Distribution of Gross Settlement Fund.* Upon further orders of the Court, the Claims Administrator, subject to such supervision and direction of the Court and/or Co-Lead Counsel as may be necessary or as circumstances may require, shall administer the claims submitted by members of the Class and shall oversee distribution of the Gross Settlement Fund to Authorized Claimants pursuant to the Distribution Plan. Subject to the terms of this Settlement Agreement and any order(s) of the Court, the Gross Settlement Fund shall be applied as follows:

(a) To pay all costs and expenses reasonably and actually incurred in providing notice to the Class in connection with administering and distributing the Net Settlement Fund to Authorized Claimants, and in connection with paying escrow fees and costs, if any;

(b) To pay all costs and expenses, if any, reasonably and actually incurred in claims administration and assisting with the filing and processing of such claims;

(c) To pay the Taxes and Tax Expenses as defined herein;

(d) To pay any Fee and Expense Award along with proportional interest earned on the Settlement Fund that is allowed by the Court, subject to and in accordance with the Agreement; and

(e) To distribute the balance of the "Net Settlement Fund" to Authorized

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    18
2987155.2

**3-ER-0441**

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

Claimants as allowed by the Agreement, any Distribution Plan or order of the Court along with proportional interest earned on the Settlement Fund.

24.   *Distribution of Net Settlement Fund.* The Net Settlement Fund shall be distributed in accordance with the Distribution Plan that is approved by the Court.

25.   All Persons who fall within the definition of the Class who do not timely and validly request to be excluded from the Class shall be subject to and bound by the provisions of this Settlement Agreement, the releases contained herein, and the Judgment with respect to all Released Claims, regardless of whether such Persons seek or obtain by any means, including, without limitation, by submitting a Proof of Claim and Release or any similar document, any distribution from the Gross Settlement Fund or the Net Settlement Fund.

26.   *No Liability for Distribution of Settlement Funds.* Neither the Releasees nor their counsel shall have any responsibility for, interest in or liability whatsoever with respect to the distribution of the Gross Settlement Fund; the Distribution Plan; the determination, administration, or calculation of claims; the Settlement Fund's qualification as a "qualified settlement fund"; the payment or withholding of Taxes or Tax Expenses; the distribution of the Net Settlement Fund; or any losses incurred in connection with any such matters. The Releasors hereby fully, finally and forever release, relinquish and discharge the Releasees and their counsel from any and all such liability. No Person shall have any claim against Co-Lead Counsel or the Claims Administrator based on the distributions made substantially in accordance with the Agreement and the Settlement contained herein, the Distribution Plan or further orders of the Court.

27.   *Balance Remaining in Net Settlement Fund.* If there is any balance remaining in the Net Settlement Fund (whether by reason of tax refunds, uncashed checks or otherwise), Co-Lead Counsel may reallocate such balance among Authorized Claimants in an equitable and economic fashion, distribute the remaining funds through *cy pres*, or allow the money to escheat to federal or state governments, subject to Court approval. In no event shall the Net Settlement Fund revert to the Synta Defendants.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**          19
2987155.2

**3-ER-0442**

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

28.    ***Distribution Plan Not Part of Settlement.*** It is understood and agreed by the Settling Parties that any Distribution Plan, including any adjustments to any Authorized Claimant's claim, is not a part of this Settlement Agreement and is to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Settlement Agreement, and any order or proceedings relating to the Distribution Plan shall not operate to terminate or cancel this Settlement Agreement or affect the finality of the Judgment, the Final Approval Order, or any other orders entered pursuant to this Settlement Agreement. The time to appeal from an approval of the Settlement shall commence upon the Court's entry of the Judgment regardless of whether either the Distribution Plan or an application for attorneys' fees and expenses has been submitted to the Court or approved.

**Attorneys' Fees and Reimbursement of Expenses**

29.    ***Fee and Expense Application.*** Co-Lead Counsel may submit an application or applications (the "Fee and Expense Application") for distributions from the Gross Settlement Fund, for: (a) an award of attorneys' fees; plus (b) reimbursement of expenses incurred in connection with prosecuting the Action; plus (c) any interest on such attorneys' fees and expenses (until paid) at the same rate and for the same periods as earned by the Settlement Fund, as appropriate, and as may be awarded by the Court.

30.    ***Payment of Fee and Expense Award.*** Any amounts that are awarded by the Court pursuant to the above paragraph (the "Fee and Expense Award") shall be paid from the Gross Settlement Fund consistent with the provisions of this Settlement Agreement.

31. ***Award of Fees and Expenses Not Part of Settlement.*** The procedure for, and the allowance or disallowance by the Court of, the Fee and Expense Application are not part of the Settlement set forth in this Settlement Agreement, and are to be considered by the Court separately from the Court's consideration of the fairness, reasonableness and adequacy of the Settlement set forth in this Settlement Agreement. Any order or proceeding relating to the Fee and Expense Application, or any appeal from any Fee and Expense Award or any other order relating thereto or reversal or modification thereof, shall not operate to terminate or cancel this

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    20
2987155.2

**3-ER-0443**

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

Settlement Agreement, or affect or delay the finality of the Judgment and the Settlement of the Action as set forth herein. No order of the Court or modification or reversal on appeal of any order of the Court concerning any Fee and Expense Award or Distribution Plan shall constitute grounds for cancellation or termination of this Settlement Agreement.

32. ***No Liability for Fees and Expenses of Co-Lead Counsel.*** The Synta Defendants shall have no responsibility for, and no liability whatsoever with respect to, any payment(s) to Co-Lead Counsel pursuant to this Settlement Agreement and/or to any other Person who may assert some claim thereto or any Fee and Expense Award that the Court may make in the Action, other than as set forth in this Settlement Agreement.

**Conditions of Settlement, Effect of Disapproval, Cancellation or Termination**

33. ***Occurrence of Effective Date.*** Upon the occurrence of all of the events required in order to trigger the Effective Date as defined in ¶ 1(k), any and all remaining interest or right of the Synta Defendants in or to the Gross Settlement Fund, if any, shall be absolutely and forever extinguished, and the Gross Settlement Fund (less any Notice and Administrative Costs, Taxes or Tax Expenses or any Fee and Expense Award paid) shall be transferred from the Escrow Agent to the Claims Administrator as successor Escrow Agent within ten (10) days after the Effective Date.

34. ***Failure of Effective Date to Occur.*** If, for whatever reason, the Effective Date does not occur or is not met, then this Settlement Agreement shall be cancelled and terminated, subject to and in accordance with ¶¶ 37-38, below, unless the Settling Parties mutually agree in writing to proceed with this Settlement Agreement.

35. ***Exclusions.*** Co-Lead Counsel shall cause copies of requests for exclusion from the Class to be provided to counsel for the Synta Defendants. No later than 14 days after the final date for mailing requests for exclusion, Co-Lead Counsel shall provide counsel for the Synta Defendants with a complete and final list of Requests for Exclusion from the Class. With the motion for final approval of the Settlement, Co-Lead Counsel will file with the Court a complete list of Requests for Exclusion from the Class, including only the name, city and state of the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                                    21
2987155.2

**3-ER-0444**

person or entity requesting exclusion.

36. **Objections.** Settlement Class members who wish to object to any aspect of the Settlement must file with the Court a written statement containing their objection by the end of the period to object to the Settlement. Any award or payment of attorneys' fees made to counsel to an objector to the Settlement shall only be made by order of the Court order pursuant to the provisions of Federal Rule of Civil Procedure 23(e)(5)(B).

37. **Failure to Enter Proposed Preliminary Approval Order, Final Approval Order or Judgment.** If the Court does not enter the Preliminary Approval Order, the Final Approval Order or the Judgment, or if the Court enters the Final Approval Order and the Judgment and appellate review is sought and, on such review, the Final Approval Order or the Judgment is finally vacated, modified or reversed, then this Settlement Agreement and the Settlement incorporated therein shall be cancelled and terminated; provided, however, the Settling Parties agree to act in good faith to secure Final Approval of this Settlement and to attempt to address in good faith concerns regarding the Settlement identified by the Court and any court of appeal. No Settling Party shall have any obligation whatsoever to proceed under any terms other than substantially in the form provided and agreed to herein; provided, however, that no order of the Court concerning any Fee and Expense Application or Distribution Plan, or any modification or reversal on appeal of such order, shall constitute grounds for cancellation or termination of this Settlement Agreement by any Settling Party. Without limiting the foregoing, the Synta Defendants shall have, in their sole and absolute discretion, the option to terminate the Settlement in its entirety in the event that the Judgment, upon becoming Final, does not provide for the dismissal with prejudice of the Action against all of them.

38. **Termination.** Unless otherwise ordered by the Court, in the event that the Effective Date does not occur or this Settlement Agreement should terminate, or be cancelled or otherwise fail to become effective for any reason or the Settlement as described herein is not finally approved by the Court, or the Judgment is reversed or vacated following any appeal taken therefrom, then:

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

(a)     within five (5) business days after written notification of such event is sent by counsel for the Synta Defendants to the Escrow Agent, the Gross Settlement Fund, including the Settlement Amount and all interest earned on the Settlement Fund while held in escrow excluding only Notice Administrative and Claims Administration Costs that have either been properly disbursed or are due and owing, Taxes and Tax Expenses that have been paid or that have accrued and will be payable at some later date, and attorneys' fees and costs that have been disbursed pursuant to Court order will be refunded, reimbursed and repaid by the Escrow Agent to the Synta Defendants; if said amount or any portion thereof is not returned within such five (5) business day period, then interest shall accrue thereon at the rate of ten percent (10%) per annum until the date that said amount is returned;

(b)     within thirty (30) business days after written notification of such event is sent by Counsel for the Synta Defendants to Co-Lead Counsel, all attorneys' fees and costs which have been disbursed to Co-Lead Counsel pursuant to Court order shall be refunded, reimbursed and repaid by Co-Lead Counsel to the Synta Defendants;

(c)     the Escrow Agent or its designee shall apply for any tax refund owed to the Gross Settlement Fund and pay the proceeds to the Synta Defendants, after deduction of any fees or expenses reasonably incurred in connection with such application(s) for refund, pursuant to such written request;

(d)     the Settling Parties shall be restored to their respective positions in the Action as of the Execution Date, with all of their respective claims and defenses, preserved as they existed on that date;

(e)     the terms and provisions of this Settlement Agreement, with the exception of ¶¶ 39-44 (which shall continue in full force and effect), shall be null and void and shall have no further force or effect with respect to the Settling Parties, and neither the existence nor the terms of this Settlement Agreement (nor any negotiations preceding this Settlement Agreement nor any acts performed pursuant to, or in furtherance of, this Settlement Agreement) shall be used in the Action or in any other action or proceeding for any purpose (other than to enforce

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD                                    23
2987155.2

3-ER-0446

the terms remaining in effect); and

(f)    any judgment or order entered by the Court in accordance with the terms of this Settlement Agreement shall be treated as vacated, nunc pro tunc.

**No Admission of Liability**

39.    ***Final and Complete Resolution.*** The Settling Parties intend the Settlement as described herein to be a final and complete resolution of all disputes between them with respect to the Action and Released Claims and to compromise claims that are contested, and it shall not be deemed an admission by any Settling Party as to the merits of any claim or defense or any allegation made in the Action.

40.    ***Federal Rule of Evidence 408.*** The Settling Parties agree that this Settlement Agreement, its terms and the negotiations surrounding this Settlement Agreement shall be governed by Federal Rule of Evidence 408 and shall not be admissible or offered or received into evidence in any suit, action or other proceeding, except upon the written agreement of the Settling Parties hereto, pursuant to an order of a court of competent jurisdiction, or as shall be necessary to give effect to, declare or enforce the rights of the Settling Parties with respect to any provision of this Settlement Agreement.

41.    ***Use of Agreement as Evidence.*** Neither this Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement: (a) is or may be deemed to be or may be used as an admission of, or evidence of, the validity of any Released Claims, of any allegation made in the Action, or of any wrongdoing or liability of any of the Synta Defendants; or (b) is or may be deemed to be or may be used as an admission of, or evidence of, any liability, fault or omission of the Releasees in any civil, criminal or administrative proceeding in any court, administrative agency or other tribunal. Neither this Settlement Agreement nor the Settlement, nor any act performed or document executed pursuant to or in furtherance of this Settlement Agreement or the Settlement shall be admissible in any proceeding for any purpose, except to enforce the terms of the Settlement, and except that the Releasees may file this Settlement Agreement and/or the

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                      24
2987155.2

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

Judgment in any action for any purpose, including, but not limited to, in order to support a defense or counterclaim based on principles of res judicata, collateral estoppel, release, good faith settlement, judgment bar or reduction or any other theory of claim preclusion or issue preclusion or similar defense or counterclaim. The limitations described in this paragraph apply whether or not the Court enters the Preliminary Approval Order, the Final Approval Order, or the Judgment, or if the Settlement Agreement is terminated or rescinded.

**Miscellaneous Provisions**

42.    ***Voluntary Settlement.*** The Settling Parties agree that the Settlement Amount and the other terms of the Settlement as described herein were negotiated in good faith by the Settling Parties, and reflect a settlement that was reached voluntarily and after consultation with competent legal counsel.

43.    ***Consent to Jurisdiction.*** All of the Synta Defendants and each Class Member hereby irrevocably submit to the exclusive jurisdiction of the Court only for the specific purpose of any suit, action, proceeding or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement. Solely for purposes of such suit, action, or proceeding, to the fullest extent that they may effectively do so under applicable law, the Synta Defendants and the Class Members irrevocably waive and agree not to assert, by way of motion, as a defense or otherwise, any claim or objection that they are not subject to the jurisdiction of the Court or that the Court is in any way an improper venue or an inconvenient forum. Nothing herein shall be construed as a submission to jurisdiction for any purpose other than any suit, action, proceeding, or dispute arising out of or relating to this Settlement Agreement or the applicability of this Settlement Agreement.

44.    ***Resolution of Disputes; Retention of Exclusive Jurisdiction.*** Any disputes between or among the Synta Defendants and any Class Members concerning matters contained in this Settlement Agreement shall, if they cannot be resolved by negotiation and agreement, be submitted to the Court. The Court shall retain exclusive jurisdiction over the implementation and enforcement of this Settlement Agreement.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                25
2987155.2

3-ER-0448

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

45. ***Binding Effect.*** This Settlement Agreement shall be binding upon, and inure to the benefit of, the successors and assigns of the parties hereto. Without limiting the generality of the foregoing, each and every covenant and agreement herein by Indirect Purchaser Plaintiffs and Co-Lead Counsel shall be binding upon all Class Members.

46. ***Authorization to Enter Settlement Agreement.*** The undersigned representatives of the Synta Defendants represent that they are fully authorized to enter into and to execute this Settlement Agreement on behalf of all of the Synta Defendants. Co-Lead Counsel, on behalf of Indirect Purchaser Plaintiffs and the Class, represent that they are, subject to Court approval, expressly authorized to take all action required or permitted to be taken by or on behalf of the Indirect Purchaser Plaintiffs and the Class pursuant to this Settlement Agreement to effectuate its terms and to enter into and execute this Settlement Agreement and any modifications or amendments to the Settlement Agreement on behalf of the Class that they deem appropriate.

47. ***Notices.*** All notices under this Settlement Agreement shall be in writing. Each such notice shall be given either by (a) email; (b) hand delivery; (c) registered or certified mail, return receipt requested, postage pre-paid; (d) Federal Express or similar overnight courier; or (e) facsimile and first class mail, postage pre-paid and, if directed to any Class Member, shall be addressed to Co-Lead Counsel at their addresses set forth below, and if directed to the Synta Defendants, shall be addressed to their attorneys at the addresses set forth below or such other addresses as Co-Lead Counsel or counsel for the Synta Defendants may designate, from time to time, by giving notice to all parties hereto in the manner described in this paragraph.

If directed to the Indirect Purchaser Plaintiffs, address notice to:

COTCHETT, PITRE & MCCARTHY, LLP
Adam J. Zapala (azapala@cpmlegal.com)
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577

LIEFF CABRASER HEIMANN & BERNSTEIN LLP
Lin Chan (lchan@lchb.com)
275 Battery Street, 29th Floor
San Francisco, CA 94111

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    26
2987155.2

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BBFF855C1

Telephone: (415) 956-1000
Facsimile: (415) 956-1008

SUSMAN GODFREY LLP
Kalpana Srinivasan (ksrinivasan@susmangodfrey.com)
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100

If directed to the Synta Defendants, address notice to:

FROST LLP
Christopher Frost (chris@frostllp.com)
10960 Wilshire Blvd., Suite 1260
Los Angeles, CA 90024
Telephone: (424) 254-0441

48.    ***Confidentiality of Settlement Negotiations.*** Co-Lead Counsel shall keep strictly confidential and not disclose to any third party, including specifically any counsel representing any other current or former party to the Action, any non-public information regarding the Settling Parties' negotiation of this Settlement and/or the Settlement Agreement. For the sake of clarity, information contained within this Settlement Agreement shall be considered public, and the Synta Defendants may issue a press release regarding execution of the Settlement Agreement and the amount paid in connection with the Settlement Agreement.

49.    ***Headings.*** The headings used in this Settlement Agreement are intended for the convenience of the reader only and shall not affect the meaning or interpretation of this Settlement Agreement.

50.    ***No Party Deemed to Be the Drafter.*** None of the parties hereto shall be deemed to be the drafter of this Settlement Agreement or any provision hereof for the purpose of any statute, case law or rule of interpretation or construction that would or might cause any provision to be construed against the drafter hereof.

51.    ***Choice of Law.*** This Settlement Agreement shall be considered to have been negotiated, executed, and delivered, and to be wholly performed, in the State of California, and the rights and obligations of the parties to this Settlement Agreement shall be construed and enforced in accordance with, and governed by, the substantive laws of the State of California without giving effect to that State's choice of law principles.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    27
2987155.2

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BBFF855C1

52.    *Amendment; Waiver.* This Settlement Agreement shall not be modified in any respect except by a writing executed by all the parties hereto, and the waiver of any rights conferred hereunder shall be effective only if made by written instrument of the waiving party. The waiver by any party of any breach of this Settlement Agreement shall not be deemed or construed as a waiver of any other breach, whether prior, subsequent or contemporaneous, of this Settlement Agreement.

53.    *Execution in Counterparts.* This Settlement Agreement may be executed in one or more counterparts. All executed counterparts and each of them shall be deemed to be one and the same instrument. Counsel for the parties to this Settlement Agreement shall exchange among themselves original signed counterparts and a complete set of executed counterparts shall be filed with the Court.

54.    *Notification of State Officials.* The Synta Defendants shall be responsible for providing all notices required by the Class Action Fairness Act, 28 U.S.C. § 1715, to be provided to state attorneys general or to the Attorney General of the United States.

55.    *Integrated Agreement.* This Settlement Agreement, along with the Confidential Supplemental Agreement, constitutes the entire agreement between the Settling Parties and no representations, warranties or inducements have been made to any party concerning this Settlement Agreement other than the representations, warranties and covenants contained and memorialized herein and in the Confidential Supplemental Agreement. It is understood by the Settling Parties that, except for the matters expressly represented herein and in the Confidential Supplemental Agreement, the facts or law with respect to which this Settlement Agreement is entered into may turn out to be other than or different from the facts now known to each party or believed by such party to be true; each party therefore expressly assumes the risk of the facts or law turning out to be so different, and agrees that this Settlement Agreement shall be in all respects effective and not subject to termination by reason of any such different facts or law. Except as otherwise provided herein, each party shall bear its own costs and attorneys' fees.

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD                    28
2987155.2

3-ER-0451

Docusign Envelope ID: C4680BB8-1144-4161-A095-742BDFF855C1

IN WITNESS WHEREOF, the parties hereto, through their fully authorized representatives, have executed this Settlement Agreement as of the Execution Date.

INTERIM CO-LEAD COUNSEL FOR THE INDIRECT PURCHASER PLAINTIFFS, on behalf of Indirect Purchaser Plaintiffs individually and on behalf of the Settlement Class.

By: _____

Adam J. Zapala
COTCHETT, PITRE & MCCARTHY
San Francisco Airport Office Center
840 Malcolm Road, Suite 200
Burlingame, CA 94010
Telephone: 650-697-6000
Fax: 650-697-0577
azapala@cpmlegal.com

Lin Chan
LIEFF CABRASER HEIMANN & BERNSTEIN LLP
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
lchan@lchb.com

Kalpana Srinivasan
SUSMAN GODFREY LLP
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

SYNTA DEFENDANTS' COUNSEL, on behalf of Synta Technology Corp. Of Taiwan; Suzhou Synta Optical Technology Co. Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Canada International Enterprises Ltd.; Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.; SW Technology Corporation; Celestron Acquisition, LLC; Olivon, Usa LLC; Dar Tson ("David") Shen; Joseph Lupica; and Dave Anderson.

By: _____

Christopher Frost
10960 Wilshire Blvd., Suite 1260
Los Angeles, CA 90024
Telephone: (424) 254-0441
chris@frostllp.com

Synta Technology Corp. of Taiwan

By: _____

Docusign Envelope ID: C4680BB9-1144-4161-A095-742BDFF855C1

Ta Kung Shen

/ / /

Suzhou Synta Optical Technology Co. Ltd.

By:_____

David Shen

Synta Canada International Enterprises Ltd.;

By:_____

Sylvia Shen

Pacific Telescope Corp.

By:_____

Sylvia Shen

Olivon Manufacturing Co. Ltd.

By:_____

Jean Shen

SW Technology Corporation;

By:_____

Sylvia Shen

Celestron Acquisition, LLC

By:_____

Corey Lee

LAW OFFICES
COTCHETT, PITRE &
MCCARTHY, LLP

**SETTLEMENT AGREEMENT; Case No. 5:20-cv-03639-EJD**                    30
2987155.2

**3-ER-0453**

Olivon, USA LLC

By: _____

    Jean Shen

Nantong Schmidt Opto-Electrical Technology Co. Ltd.

By: _____

    Sheng Rong Zhu

David Shen

By: _____

    David Shen

Joseph Lupica

By: _____

    Joseph Lupica

Dave Anderson

By: _____

    Dave Anderson

# EXHIBIT 2

### Opt-Out List for *In re Telescopes Antitrust Litigation*, No. 5:20-cv-03639-EJD

1. Linda Billingsley
2. William Borges IV
3. Linda Davis
4. Ian Kenneth Egland
5. Peter G. Hummer
6. Jared Tyler Jones
7. Gianina L. Nicolette
8. Barbara Prince
9. Trevor Reitsma
10. David Solimano
11. Stuart Tentoni
12. Michelle Zamberry

3224810.1

**3-ER-0456**

1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION


IN RE TELESCOPES ANTITRUST
LITIGATION                          CASE NO.  CV-20-03639 EJD

_____   SAN JOSE, CALIFORNIA
THIS DOCUMENT RELATES TO:
ALL INDIRECT PURCHASER ACTIONS    APRIL 3, 2025

                                  PAGES 1 - 40


                    TRANSCRIPT OF PROCEEDINGS
            BEFORE THE HONORABLE EDWARD J. DAVILA
                 UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

  FOR THE PLAINTIFFS:    COTCHETT PITRE & MCCARTHY LLP
                         BY:  ADAM J. ZAPALA
                              ELIZABETH T. CASTILLO
                         840 MALCOLM ROAD, SUITE 200
                         BURLINGAME, CALIFORNIA 94010

                         SUSMAN GODFREY LLP
                         BY:  KALPANA SRINIVASAN
                         1900 AVENUE OF THE STARS, SUITE 1400
                         LOS ANGELES, CALIFORNIA 90067

                         FROST LLP
                         BY:  JOHN DESMOND MAATTA, JR.
                              LAWRENCE J.H. LIU
                         10960 WILSHIRE BLVD., SUITE 2100
                         LOS ANGELES, CALIFORNIA 90024

            (APPEARANCES CONTINUED ON THE NEXT PAGE.)


  OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                              CERTIFICATE NUMBER 8074

       PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
   TRANSCRIPT PRODUCED WITH COMPUTER.

2

A P P E A R A N C E S:  (CONT'D)

ALSO PRESENT:                    BRAUNHAGEY & BORDEN LLP
                                 BY:  MATTHEW B. BORDEN
                                 747 FRONT STREET, 4TH FLOOR
                                 SAN FRANCISCO, CALIFORNIA 94111

3

SAN JOSE, CALIFORNIA                          APRIL 3, 2025

P R O C E E D I N G S

(COURT CONVENED AT 9:04 A.M.)

THE COURT:  LET'S CALL OUR MORNING MATTER.  THIS IS 20-3639, HIGHTOWER VERSUS CELESTRON.

LET ME FIRST CAPTURE THE APPEARANCE OF THE PARTIES, PLEASE.

MR. ZAPALA:  GOOD MORNING, YOUR HONOR.

ADAM ZAPALA FROM COTCHETT, PITRE & MCCARTHY FOR THE INDIRECT PURCHASER PLAINTIFFS.

THE COURT:  THANK YOU.

MS. SRINIVASAN:  KALPANA SRINIVASAN OF SUSMAN GODFREY ALSO ON BEHALF OF THE INDIRECT PURCHASER PLAINTIFFS.

THE COURT:  THANK YOU.

MS. CASTILLO:  GOOD MORNING, YOUR HONOR.

ELIZABETH CASTILLO WITH COTCHETT, PITRE & MCCARTHY FOR THE INDIRECT PURCHASER GROUP.

THE COURT:  THANK YOU.  GOOD MORNING.

MR. MAATA:  GOOD MORNING, YOUR HONOR.

JOHN MAATA ON BEHALF OF THE DEFENDANTS.

MR. LIU:  LAWRENCE LIU ON BEHALF OF THE DEFENDANTS, YOUR HONOR.

THE COURT:  THANK YOU.  GOOD MORNING.

UNITED STATES COURT REPORTERS

**3-ER-0459**

4

LET ME JUST ASK, THIS WAS A MATTER ON FOR FINAL APPROVAL OF SETTLEMENT, ATTORNEYS' FEES AND COSTS AND AWARDS.

I'VE RECEIVED ALL OF THE PLEADINGS IN THE MATTER. I'VE REVIEWED THOSE. THANK YOU VERY MUCH FOR THOSE.

LET ME FIRST ASK PLAINTIFFS TO COME FORWARD AND YOU CAN INFORM US AS TO YOUR OPINIONS AS TO WHAT THE COURT SHOULD DO ABOUT THIS SETTLEMENT.

MR. ZAPALA: THANK YOU, YOUR HONOR.

AGAIN, ADAM ZAPALA FOR COTCHETT, PITRE & MCCARTHY.

AS YOU JUST POINTED OUT, WE'RE HERE ON FINAL APPROVAL. WE'RE EXTREMELY PLEASED TO BE HERE TODAY TO PRESENT WHAT WE BELIEVE TO BE AN EXCELLENT SETTLEMENT ON BEHALF OF OUR CLIENT, A $32 MILLION SETTLEMENT THAT WILL PUT TO REST THIS LITIGATION AGAINST THE SYNTA DEFENDANTS, A NUMBER OF THE DEFENDANTS.

NOT MUCH HAS CHANGED, FRANKLY, SINCE PRELIMINARY APPROVAL, AND SINCE YOU DIRECTED NOTICE TO THE CLASS.

YOU CERTIFIED A SETTLEMENT CLASS IN CONNECTION WITH PRELIMINARY APPROVAL. NO ONE HAS OBJECTED TO CERTIFICATION OF THE SETTLEMENT CLASS, SO THAT IS APPROPRIATE.

THE COURT: THAT WAS IN DOCKET 397 I THINK, NOVEMBER 4TH OF LAST YEAR.

MR. ZAPALA: CORRECT. CORRECT, YOUR HONOR.

SO WITH RESPECT TO THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT, I'LL TALK ABOUT IT SORT OF AT LARGE AND THEN I'LL ADDRESS SOME OF THE OBJECTIONS.

THE OBJECTIONS ARE ACTUALLY QUITE NARROW WHEN YOU THINK ABOUT IT. NONE OF THEM GO TO THE FAIRNESS OF THE SETTLEMENT AMOUNT. NO ONE IS OBJECTING THAT WE GOT TOO LITTLE OR ANYTHING THAT IS REALLY INFIRM ABOUT THE SETTLEMENT ITSELF. THERE ARE SOME OBJECTIONS AND SOME MISUNDERSTANDINGS, FRANKLY, ABOUT THE CLAIMS PROCESS, BUT IT HAS NOTHING REALLY TO DO WITH THE SETTLEMENT ITSELF.

I'LL ADDRESS THE DPP OBJECTION IN A MOMENT.

BUT JUST WITH RESPECT TO THE PROCEDURAL FAIRNESS AND THE SUBSTANTIVE FAIRNESS OF THE PROPOSED SETTLEMENT, WHICH IS, OF COURSE, WHAT COURTS LOOK AT IN CONNECTION WITH THE APPROVAL OF CLASS ACTION SETTLEMENTS.

FIRST, WITH RESPECT TO PROCEDURAL FAIRNESS, I KNOW YOU KNOW FROM THE MULTITUDE OF DOCKET ENTRIES IN THIS MATTER THAT THERE WAS EXTENSIVE LITIGATION PRIOR TO ENTERING INTO THE SETTLEMENT AGREEMENT. THAT'S ONE THING THAT COURTS LOOK AT. THIS WAS NOT A SORT OF FILE AND SETTLE CASE. THERE WAS EXTENSIVE LITIGATION THAT OCCURRED PRIOR TO ENTRY OF THE SETTLEMENT, WHICH MEANS THERE WAS EXTENSIVE DISCOVERY AND A VETTING OF THE CLAIMS SO THAT THE PARTIES HAD A GOOD UNDERSTANDING OF THE RISKS OF THE LITIGATION, THE STRENGTHS OF THE LITIGATION AT THE TIME THAT THEY ENTERED INTO THE SETTLEMENT.

THE COURT: YOU SPENT A SUBSTANTIAL AMOUNT OF TIME AND PROBABLY MORE TIME WITH JUDGE DEMARCHI THAN YOU DID WITH

THIS COURT.

MR. ZAPALA: THAT'S RIGHT, YOUR HONOR. AND JUDGE DEMARCHI KNOWS THE NUMBER OF DISCOVERY DISPUTES THAT WE'VE HAD AND WERE ABLE TO GET THROUGH, FRANKLY. I THINK YOU SAID WE SPENT A SUBSTANTIAL AMOUNT OF TIME, SOMETHING LIKE OVER 20,000 ATTORNEY HOURS, A LODESTAR OF I THINK IT IS AROUND 15 MILLION OR 17 MILLION.

SO THERE WAS EXTENSIVE LITIGATION THAT OCCURRED AT THE TIME OF THE SETTLEMENT. THAT'S ONE FACTOR WEIGHING IN FAVOR OF APPROVAL, BECAUSE, AGAIN, THE PARTIES WERE WELL INFORMED ABOUT STRENGTHS AND WEAKNESSES.

THERE WERE ALSO PROTRACTED NEGOTIATIONS OVER THE SETTLEMENT AMOUNT AND THE SETTLEMENT TERMS ITSELF AS YOU SAW FROM THE DECLARATIONS.

NEGOTIATIONS TOOK PLACE OVER YEARS. THERE WERE A COUPLE OF MEDIATION SESSIONS. ONE WAS A FAILURE, THE SECOND ONE WAS A SUCCESS. THE ENTIRE SETTLEMENT PROCESS WAS OVERSEEN BY A COLLEAGUE OF YOURS FROM THE CENTRAL DISTRICT, RETIRED JUDGE SEGAL, WHO IS NOW A MEDIATOR IN LOS ANGELES.

THAT'S -- SO AGAIN, THAT ENTIRE PROCESS WAS OVERSEEN BY HER, ANOTHER FACTOR MILITATING IN FAVOR OF THE FAIRNESS AND REASONABLENESS OF THE SETTLEMENT.

SO THAT'S THE PROCEDURAL FAIRNESS. THERE ARE OTHER FACTORS THAT AGAIN MILITATE IN FAVOR OF THE PROCEDURAL FAIRNESS. THERE'S NO PREFERENTIAL TREATMENT, FOR EXAMPLE, IN

THE SETTLEMENT, THERE'S NO CLEAR SAILING PROVISION, ALL OF THAT KIND OF STUFF THAT THE NINTH CIRCUIT LOOKS FOR IN TERMS OF COLLUSION OR WHAT YOU WOULD CALL COLLUSION IN A CLASS ACTION SETTLEMENT CONTEXT.

WITH RESPECT TO THE SUBSTANTIVE FAIRNESS OF THE SETTLEMENT, AGAIN, I WANT TO POINT OUT THERE ARE VERY LIMITED AND NARROW OBJECTIONS.  NONE OF THEM GO TO THE SETTLEMENT ITSELF OR THE SETTLEMENT AMOUNT.

WITH RESPECT TO THE AMOUNT, THE 32 MILLION IS SQUARE IN RANGE OF THE DAMAGES ASSESSMENT BY OUR EXPERT, WHICH, OF COURSE, IS WHAT WE REFERRED TO AND IS PART OF OUR PAPERS, BUT COURTS HAVE APPROVED SETTLEMENTS OF SMALL -- FAR SMALLER PERCENTAGES OF POTENTIAL RECOVERY.  I'M SORRY.

COURTS HAVE APPROVED SETTLEMENTS THAT CONSTITUTE A FAR SMALLER PERCENTAGE OF THE POTENTIAL RECOVERY THAN IN THIS CASE, AND WE VIEW THIS AS A REALLY EXCELLENT RECOVERY.

WE'RE EAGER TO PUT MONEY IN THE POCKETS OF OUR CLIENTS, AND THEY'VE BEEN WAITING A LONG TIME, AND, OF COURSE, AS THE LAW RECOGNIZES, INDIRECT PURCHASERS ARE THE REAL VICTIMS OF A PRICE FIXING CONSPIRACY BECAUSE THE HARM IS PASSED ALONG DOWN THE CHAIN TO THE ULTIMATE END CONSUMER WHICH IS --

THE COURT:  PARDON ME FOR INTERRUPTING YOU.  BUT WHAT ABOUT ANY DISPROPORTION OF DISTRIBUTIONS AT ALL AS TO -- SINCE WE'RE TALKING ABOUT THAT, IN RELATION TO ATTORNEYS' FEES VIS-A-VIS WHAT THE CLIENTS WILL RECEIVE OR TALK TO ME ALSO

ABOUT -- US ABOUT THE DISTRIBUTION AND HOW THAT WILL BE PARSED.

MR. ZAPALA: YES. THE DISTRIBUTION AS WE SET FORTH IN THE PRELIMINARY APPROVAL PAPERS AND IN THE FINAL APPROVAL PAPERS WILL BE DONE ON A PRO RATA BASIS TO THE EXTENT THE TELESCOPE WAS PURCHASED IN AN INDIRECT PURCHASER STATE.

OBVIOUSLY, AS YOU KNOW, THERE ARE ONLY CERTAIN STATES THAT PERMIT INDIRECT PURCHASER LAWSUITS. SO, NUMBER ONE, YOU HAVE TO BE IN -- YOU HAVE TO HAVE BEEN IN A LISTED STATE, THAT THOSE STATES ARE LISTED IN OUR COMPLAINT, BUT ALSO IN THE SETTLEMENT AGREEMENT ITSELF.

THE COURT: AND THAT'S THE TONE OF ONE OBJECTOR, I THINK.

MR. ZAPALA: WELL, THAT OBJECTION IS JUST, IS JUST INCORRECT. THAT I THINK YOU'RE REFERRING TO THE OBJECTOR WHO WANTED PUERTO RICO TO BE PART OF IT.

THE COURT: YES.

MR. ZAPALA: AGAIN, SO IF YOU LOOK AT OUR COMPLAINT, WE NEVER ASSERTED CLAIMS UNDER PUERTO RICAN LAW. THERE IS NO PUERTO RICAN INDIRECT PURCHASER CLAIM THAT IS ASSERTED IN CONNECTION WITH OUR COMPLAINT.

MANY COURTS HAVE FOUND THAT INDIRECT PURCHASERS DON'T HAVE CLAIMS UNDER PUERTO RICO LAW, BUT YOU DON'T HAVE TO GET TO THAT ISSUE, FRANKLY, YOUR HONOR. WE NEVER BROUGHT A CLAIM, SO IT'S NOT PART OF THE CLASS. HE'S NOT RELEASING A CLAIM FROM PUERTO RICO BECAUSE HE'S NOT IN THE SETTLEMENT CLASS.

9

THE COURT: HE CAN SUE ON HIS OWN.

MR. ZAPALA: HE CAN SUE ON HIS OWN, RIGHT. AND SO HE WILL NOT GET COMPENSATED FROM THE SETTLEMENT, BUT HE'LL ALSO NOT RELEASE CLAIMS.

MOREOVER, HE DOES NOT HAVE STANDING TO OBJECT BECAUSE HE'S NOT A MEMBER OF THE SETTLEMENT CLASS. SO THAT'S THAT ISSUE, YOUR HONOR, YES.

BUT IN TERMS OF THE PRO RATA DISTRIBUTION, THAT IS THE TYPICAL WAY THAT DISTRIBUTIONS WORK IN PRICE FIXING ANTITRUST CASES AND IT JUST MEANS -- SO, FOR EXAMPLE, IF YOU SUBMIT A CLAIM -- I'M GOING TO MAKE THIS EASY. IMAGINE A SCENARIO WHERE THERE WAS A HUNDRED DOLLAR SETTLEMENT, A NET SETTLEMENT FUND, A HUNDRED MILLION WOULD BE DISTRIBUTED TO THE CLASS.

IF I SUBMIT A CLAIM THAT SHOWS THAT I HAVE 1 PERCENT, THAT MY PURCHASES CONSTITUTE 1 PERCENT OF ALL OF THE PEOPLE CLAIMING, I WOULD GET A MILLION DOLLARS FROM THE DISTRIBUTION, RIGHT, BECAUSE THAT'S HOW THE PRO RATA DISTRIBUTION WORKS.

SO EVERY COURT THAT HAS LOOKED AT PRO RATA DISTRIBUTIONS IN CONNECTION WITH PRICE FIXING CLAIMS HAVE FOUND THAT THEY'RE FAIR AND REASONABLE, AND THAT'S EXACTLY HOW THEY'LL PROCEED HERE.

SO THE AMOUNT OF YOUR RECOVERY WILL DEPEND ON HOW MANY TELESCOPES YOU PURCHASED AND THE AMOUNTS OF THAT AND WHAT THAT CONSTITUTES AS THE OVERALL AMOUNT OF EVERYONE CLAIMING.

AND AGAIN, THE NINTH CIRCUIT HAS FOUND THOSE PRO RATA

DISTRIBUTIONS FAIR AND REASONABLE.

THE COURT: THANK YOU.

MR. ZAPALA: SO, AGAIN, I THINK WHERE I WAS TALKING ABOUT THE SETTLEMENT AMOUNT BEING FIRMLY WITHIN THE RANGE OF APPROVAL. WE CONTINUE TO BELIEVE THAT TO BE TRUE, AND SO THAT AGAIN MILITATES IN FAVOR OF APPROVAL.

THE LAST SUBSTANTIVE FAIRNESS PRONG IS OF COURSE THE REACTION OF THE CLASS, WHICH WE DEEM TO BE TOTALLY FAVORABLE. THERE ARE ONLY 12 OPT-OUTS FROM THE CLASS, AND THERE ARE ONLY 5 OBJECTORS, PUTTING ASIDE THAT A NUMBER OF THE OBJECTORS DON'T ACTUALLY HAVE STANDING, BUT WE'LL JUST SAY THERE ARE 5 PERSONS OR ENTITIES SUBMITTING OBJECTIONS.

SO I THINK IN TERMS OF A MACRO SORT OF OVERVIEW OF THE SETTLEMENT AND WHY IT SHOULD BE APPROVED, THAT'S SORT OF MY MACRO OVERVIEW. I'M HAPPY TO GET INTO, AND I THINK IT MAKES SENSE, TO SORT OF GET INTO THE OBJECTIONS, IF THAT'S OKAY WITH YOUR HONOR.

THE COURT: YES. I DO --

MR. ZAPALA: OR I CAN ADDRESS.

THE COURT: PARDON ME. AT SOME POINT, AND MAYBE IT'S AT THE TIME OF THE OBJECTORS, BUT I'M CURIOUS ABOUT ONE ASPECT THAT I'VE BEEN GIVING SOME NOTICE TO AND THINKING ABOUT IS FRAUD.

MR. ZAPALA: YES.

THE COURT: AND FRAUD DETECTION. AND I'M CURIOUS

11

ABOUT VERITA AND WHAT TECHNIQUES, WHAT THEY USED.  DID THEY USE A SOFTWARE OR SOMETHING?  WE KNOW THAT SOME OTHER ADMINISTRATORS HAVE NOW BECOME MORE AGGRESSIVE ABOUT LOOKING AT FRAUD.

AND IT MAY BE THAT I AND MY COLLEAGUES, I MIGHT BE JOINED BY MY COLLEAGUES, WILL LOOK TO ASK WHAT FRAUD DETECTION WAS IN PLACE, WHAT WAS THE CACHE RATE BOTH UP-FRONT --

MR. ZAPALA:  YEAH.

THE COURT:  AND AS YOU KNOW, THE NORTHERN DISTRICT HAS A FINAL REPORT THAT HAS TO BE PROVIDED.  I MAY ASK FOR THAT, TOO, WHAT WAS THE FINAL FRAUD CACHE JUST SO WE KNOW HOW THAT LOOKS.  AND I THINK THAT OVERALL IT'S IMPORTANT FOR ALL OF US TO KNOW, AND I THINK IT'S ALSO A GOOD STATEMENT TO THE PUBLIC THAT FORTIFIES THE INTEGRITY OF OUR SYSTEM, THE WORK THAT YOU AND YOUR COLLEAGUES DO ON BOTH SIDES, TO ENSURE THAT THE INTEGRITY OF OUR SYSTEM IS IN PLACE FOR THE PUBLIC TO KNOW.

MR. ZAPALA:  I CAN'T ENCOURAGE YOU ENOUGH TO CONTINUE TO CARRY THAT MANTLE.  IT IS SUCH A CRITICAL ISSUE, YOUR HONOR.

GETTING A LITTLE SIDE-TRACKED, BUT JUST TO LET YOU KNOW, I MEAN, WE DO THIS EVERY DAY.  I MEAN, I'VE BEEN DOING THIS FOR 20 YEARS.  I TRAVEL AROUND THE COUNTRY.  I DO THESE BIG CASES. YOU'RE ABSOLUTELY RIGHT, WE WANT TO GET MONEY TO OUR CLIENTS.

FRAUD AND CLASS ACTION SETTLEMENTS HAVE BECOME IN THE LAST FIVE YEARS MUCH MORE OF AN ISSUE THAN IT WAS TEN YEARS

12

AGO. PART OF THAT IS BECAUSE OF THE ONLINE NATURE OF THINGS, BUT I THINK IT IS SOMETHING THAT BOTH LAWYERS AND THE BENCH NEED TO BE REALLY ATTUNED TO.

YOU'RE ABSOLUTELY RIGHT THAT CLAIMS ADMINISTRATORS ARE INVESTING A LOT OF MONEY NOW IN FRAUD DETECTION, AND THIS RELATES TO SOME OF THE ISSUES IN THIS CASE BECAUSE SOME OF THE -- A FEW OF THE OBJECTIONS WERE ABOUT THE STEPS THAT CERTAIN PEOPLE HAD TO GO THROUGH TO SUBMIT A CLAIM.

THE COURT: RIGHT.

MR. ZAPALA: IN THIS CASE, BECAUSE WE DIDN'T HAVE DATA, AND WE'RE AN INDIRECT PURCHASER CLASS, SO WE DON'T HAVE DATA FOR THE ENTIRE CLASS. WHAT HAPPENED WHEN WE OPENED UP THE CLAIMS PROCESS INITIALLY WAS THAT WE GOT HUNDREDS OF FALSE SUBMISSIONS FROM WHAT OUR CLAIMS ADMINISTRATOR COULD TELL WERE BOTS IN CHINA.

THE COURT: RIGHT.

MR. ZAPALA: SO WHAT THEY DID IS WHAT YOU WOULD EXPECT ANY CLAIMS ADMINISTRATOR TO DO, IS TO IMPLEMENT PROTOCOLS TO EFFECTIVELY DEINCENTIVIZE THE SUBMISSION OF FRAUDULENT CLAIMS, EFFECTIVELY A DOUBLE AUTHENTICATION PROCESS.

SO IF YOU DIDN'T HAVE A CLAIM NUMBER, AND THERE WERE A NUMBER OF POTENTIAL CLASS MEMBERS WHO DON'T, YOU WOULD HAVE TO CALL OR DOWNLOAD A CLAIM FORM. YOU COULD EITHER DO IT BY HAND AND SEND IT IN, RIGHT, TOTALLY EASY. THAT'S HOW MOST CLASS ACTION SETTLEMENTS WORK, AND SO WE DON'T SEE ANYTHING

13

BURDENSOME WITH DOING THAT, OR YOU COULD CALL IN, A CLAIM NUMBER WOULD BE GENERATED FOR YOU.

NOW, THE REASON THAT WAS SIGNIFICANT IS OBVIOUSLY A BOT CAN'T PICK UP A PHONE AND CALL IN AND ASK FOR A CLAIM NUMBER. SO THAT WAS HOW THEY PUT A STOP TO THE BOTS SUBMITTING FALSE CLAIMS. THAT'S EXACTLY WHY THAT PROCESS WAS IMPLEMENTED.

WE UNDERSTAND THAT CERTAIN CLASS MEMBERS HAD TO JUMP THROUGH ANOTHER HOOP TO SUBMIT A CLAIM. THAT DOESN'T MAKE THE CLAIMS PROCESS UNFAIR. THAT'S A TOTALLY APPROPRIATE FRAUD PROTOCOL.

AS YOU KNOW, AND THE COURT ACTS IN A FIDUCIARY CAPACITY AS WELL AND CLASS COUNSEL ACTS IN A FIDUCIARY CAPACITY, IT'S CRITICAL THAT WE DON'T PAY OUT CLAIMS TO FRAUDULENT ENTITIES. WE WANT TO MAKE SURE THESE GET TO REAL PEOPLE WHO ARE REALLY HARMED.

SO AGAIN, THE EXPECTATION OF THE COURT AND OF THE JUDICIARY GENERALLY IS THAT WE WILL IMPLEMENT REASONABLE PROCEDURES TO PREVENT THAT FROM HAPPENING. THAT'S EXACTLY WHAT OCCURRED HERE. WE FEEL VERY COMFORTABLE WITH THAT PROCESS.

THE COURT: AND THAT'S IMPORTANT TO THE SPIRIT OF WHAT I WAS TALKING ABOUT EARLIER, AND IS THAT I THINK WE ARE ALL AWARE, IT'S COMMON KNOWLEDGE THAT CLASS ACTION PLAINTIFFS, SOMETIMES THEIR ACTIONS, YOU KNOW, THEY'RE FROWNED UPON IN THE GENERAL PUBLIC. THERE'S THIS FEELING THAT, OH, IT'S JUST THE LAWYERS OUT FOR MONEY AND THE CONSUMERS RARELY, IF ANY, GET

14

ANYTHING AND THE LAWYERS WALK AWAY WITH ALL OF THE MONEY IN THE CASE AND THIS AND THAT.

SO THAT IS A -- A CLASS ACTION LITIGATION IS IMPORTANT FOR CONSUMERS.

MR. ZAPALA: RIGHT.

THE COURT: IT'S IMPORTANT TO ALSO -- THE BALANCE THERE ALSO TO ALLOW FOR COMPANIES TO CONTINUE TO PRODUCE, TO INNOVATE, AND TO -- GIVEN THE OPPORTUNITY TO CONTINUE IN COMMERCE UNABATED WHEN APPROPRIATE.

SO ALL OF THAT AUGURS IN MY OPINION, AND I'M NOT ON MY SOAPBOX HERE, BUT I DO HAVE CONCERNS ABOUT THE PUBLIC VIEW OF OUR JUSTICE SYSTEM AND ANYTHING THAT WE CAN DO TO ENHANCE OR TO SHOW, TO REVEAL THAT THE SYSTEM IS THE BEST SYSTEM IN THE WORLD AND DESERVING OF ALL OF THE RESPECTED INTEGRITY THAT WE CAN.

THESE TYPES OF SAFETY MEASURES, I'LL CALL THEM, ARE IMPORTANT TO PROTECT THE INTEGRITY SO THAT AS JUDGES, WHEN WE LOOK AT AND WE APPROVE THESE SETTLEMENTS, AND WE CAN SAY, YES, MONEY IS NOT GOING TO FRAUDSTERS, WHEREVER THEY ARE IN THE WORLD, CONSUMERS ARE ACTUALLY RECEIVING THE BENEFIT OF WHAT THEY SHOULD RECEIVE AS EITHER VICTIMS OR AGGRIEVED PERSONS, WHATEVER THAT IS.

SO I'D APPRECIATE THAT.

IN THIS CASE, THE PHONE NUMBER CHANGE, THAT WAS DONE SOMEHOW -- WAS THAT DONE A LITTLE LATER IN THE PROCESS?

MR. ZAPALA: WE IMPLEMENTED AN ADDITIONAL PHONE

NUMBER SO THAT THEY COULD CALL A PARTICULAR PHONE NUMBER TO GET THE CLAIM NUMBER.

THE COURT:  I SEE.

MR. ZAPALA:  SO THAT THEY DIDN'T HAVE TO BE CUED UP, TO THE EXTENT THAT OTHER PEOPLE WERE CALLING IN ABOUT OTHER QUESTIONS ABOUT THE SETTLEMENT, WE WANTED TO ENSURE THE PROCESS WAS STREAMLINED FOR THOSE PEOPLE WHO NEEDED A CLAIM NUMBER.

AGAIN, JUST TO BE CLEAR, YOU DON'T NEED A CLAIM NUMBER TO SUBMIT A CLAIM.

THE COURT:  RIGHT.

MR. ZAPALA:  YOU COULD DOWNLOAD IT, DO IT BY HAND OR YOU CAN TYPE IT IN OR WHATEVER AND SUBMIT IT.

BUT IF YOU WANT TO SUBMIT IT ONLINE, YOU NEED A CLAIM NUMBER AND YOU HAD TO CALL IN TO GET THAT.  SO WE HAD A DEDICATED LINE FOR THAT.

THE COURT:  OKAY.  AND VERITA, THE ADMINISTRATOR, THIS WAS GOOD EXPERIENCE FOR THEM AND FOR US TO KNOW THAT MAYBE IN THE FUTURE WE NEED TO PUT A SEPARATE CLAIM NUMBER AND PHONE NUMBER.

MR. ZAPALA:  THAT'S RIGHT, AND MAYBE A DOUBLE AUTHENTICATION PROCESS TO BEGIN WITH.  WE WERE HOPEFUL WE WOULDN'T GET THESE BOTS, RIGHT, BUT THAT'S WHAT HAPPENED.

AGAIN, NOT TO GET ON MY SOAPBOX.  I'M SO PLEASED TO SEE THAT YOU'RE ATTUNED TO THESE ISSUES BECAUSE I THINK THE REALITY IS THE WORD IS OUT AND INTERNATIONAL ORGANIZED CRIME ARE TAKING

SHOTS AT THESE POTS OF MONEY. THEY SEE POTS OF MONEY FROM CLASS ACTION LITIGATION AS OPEN SEASON, AND THERE'S ALMOST NO DISINCENTIVE IF YOU'RE IN A FOREIGN COUNTRY TO TAKE A SHOT AT THAT, AND SO WE NEED TO FIGURE OUT WAYS TO, A, PREVENT IT, AND, B, DISSUADE IT IN THE FIRST INSTANCE.

THE COURT: YOU KNOW, I SAW RECENTLY A VIDEO CLIP OF -- IT LOOKED LIKE IT WAS FROM A CELL PHONE BECAUSE THE MARGINS WERE NARROW. IT WAS SMALL. IT WAS A CLIP THAT WAS REPRESENTED TO ONE OF THESE BOT CENTERS AND WHAT IT SHOWED IS THERE WERE THREE YOUNG MEN SITTING AT TABLES AND IT LOOKED LIKE A CALL CENTER TYPE SETTING.

MR. ZAPALA: RIGHT.

THE COURT: AND THERE WAS A RACK, MAYBE FIVE BARS HIGH, WITH CELL PHONES. THERE MUST HAVE BEEN 100 CELL PHONES.

AND IT WAS REPRESENTED THAT EACH OF THESE CELL PHONES WAS CONNECTED TO A CLASS ACTION LAWSUIT OF SOME SORT, AND THEY WERE AT LAPTOPS AND THEY WERE OSTENSIBLY IT WAS REPRESENTED THAT THEY WERE FILING CLAIMS.

IT WAS -- AT LEAST THAT'S WHAT THEY SAID IT WAS. I DON'T KNOW. BUT I EXPECT THAT'S HOW IT'S DONE.

MR. ZAPALA: WELL, AND, AND, AND -- YOU KNOW, TO ADDRESS WHAT SOME OF THE OBJECTORS TALK ABOUT AS WELL, WE'RE BEING TREATED DIFFERENTLY, THAT HAPPENS IN EVERY CLASS ACTION SETTLEMENT.

I MEAN, I'LL JUST TELL YOU, THE ONES THAT I'M INVOLVED IN

NOW, WE DO A LOT OF AUDITING OF CLAIMS. THERE ARE CERTAIN CLAIMS THAT APPEAR TO US TO BE FRAUDULENT.

THOSE -- THE CLAIMS ADMINISTRATOR DEALS WITH THOSE CLAIMANTS BY ASKING THEM FOR MORE INFORMATION. GUESS WHAT? THAT'S MORE BURDENSOME THAN THE OTHER PEOPLE, RIGHT? BUT THAT'S AN APPROPRIATE MEASURE TO TAKE AND THAT'S WITHIN THE CLAIMS ADMINISTRATOR DISCRETION, AND THAT'S WHY WE APPOINT CLAIMS ADMINISTRATORS, THAT'S WHY YOUR HONOR APPOINTS CLAIMS ADMINISTRATORS, THAT'S THE WORK THAT THEY SHOULD BE DOING.

BUT, OF COURSE, I GUESS THAT CLASS MEMBER COULD CLAIM, WELL, THE PROCESS WAS MORE BURDENSOME FOR ME BECAUSE I WAS ASKED TO GIVE MORE INFORMATION. THAT'S JUST GRIST FOR THE MILL I GUESS IN CLASS ACTION SETTLEMENTS BECAUSE, AGAIN, WE HAVE THIS FIDUCIARY DUTY THAT WE WANT TO UPHOLD.

SO I THINK THAT ADDRESSES THE OBJECTIONS INSOFAR AS THE CLAIMS PROCESS GOES.

THE COURT: RIGHT. RIGHT.

MR. ZAPALA: AN ENTITY NAMED NATIONAL WOODLANDS PRESERVATION, INC., SUBMITTED AN OBJECTION SAYING BUSINESSES -- THEY THOUGHT THAT SETTLEMENT WAS UNFAIR BECAUSE BUSINESSES COULDN'T SUBMIT CLAIMS. THEY'RE JUST MISUNDERSTOOD ABOUT THAT.

HAD THEY READ THE CLASS DEFINITION, IT'S EXPRESSLY IN THE CLASS DEFINITIONS, IT'S INDIVIDUALS AND ENTITIES, AND THEY'VE BEEN TOLD THEY CAN SUBMIT A CLAIM. OTHER ENTITIES HAVE SUBMITTED CLAIMS. WE EVEN MADE IT CLEAR ON OUR WEBSITE THAT

18

ENTITIES WHO ARE ALWAYS ELIGIBLE TO PARTICIPATE IN THE SETTLEMENT CAN PARTICIPATE.

SO, AGAIN, I THINK THAT'S NOT REALLY AN OBJECTION, IT'S JUST, FRANKLY, A MISUNDERSTANDING OF BOTH THE SETTLEMENT ITSELF AND THE CLAIMS PROCESS.

THE COURT: AND THIS RELATED TO INSERTING YOUR NAME?

MR. ZAPALA: CORRECT, CORRECT.

THE COURT: AND IT SAID NAME.

MR. ZAPALA: AND MOST ENTITIES PUT IN THEIR BUSINESS NAME. WE'RE NOT REALLY SURE WHY THIS ENTITY DIDN'T, BUT WE NOW PUT IN A NEWS SPACE THAT MAKES IT CLEAR ENTITY NAME CAN BE PUT IN HERE. BUT AGAIN, ALL OF THE FAQ'S, THE NOTICES MAKE CLEAR THAT ENTITIES ARE PART OF THE SETTLEMENT.

SO NATIONAL WOODLANDS HAS BEEN INFORMED OF THAT. WHETHER THEY'LL SUBMIT A CLAIM OR NOT IS UP TO THEM.

THE COURT: AND TO THAT POINT, THE CLAIMS PERIOD IS OPEN UNTIL MAY 20TH?

MR. ZAPALA: CORRECT, IT'S NOT FINISHED YET. SO THERE'S MORE ADDITIONAL TIME AND WE INTEND TO HAVE OUR CLAIMS ADMINISTRATOR STIMULATE AS MANY CLAIMS AS POSSIBLE DURING THIS TIME PERIOD.

IN OUR EXPERIENCE, A LOT OF CLAIMS COME IN AT THE END OF THE CLAIMS PROCESS. I'M NOT SURE WHY THAT IS. YOU WOULD THINK IF YOU GOT A NOTICE, YOU MIGHT JUST DO IT RIGHT THEN BECAUSE YOU MIGHT FORGET, BUT OUR EXPERIENCE WITH CLASS LITIGATION IS

THAT MOST OF THE MAJORITY OF THE CLAIMS COME IN TOWARDS THE END OF THE CLAIM PERIOD. SO THAT'S STILL OPEN, AND WE'RE HAPPY TO REPORT TO THE COURT WHEN IT CLOSES AND WHAT, YOU KNOW, THE NUMBER OF CLAIMS THAT WE HAVE AT THAT TIME.

THE COURT: THAT COULD CHANGE THE NUMBERS, TOO.

MR. ZAPALA: MOST DEFINITELY IT WILL, YEAH.

THE COURT: RIGHT.

MR. ZAPALA: SO, AGAIN, I THINK THAT THAT ADDRESSES SORT OF THIS ONLINE CLAIM VERSUS PAPER CLAIM VERSUS OBTAINING A CLAIM NUMBER.

I WAS GOING TO JUMP -- I TALKED ABOUT NATIONAL WOODLANDS. I WAS GOING TO TALK ABOUT MR. BARNES'S OBJECTION, WHICH IS LARGELY THE ISSUE THAT WE ALREADY TALKED ABOUT. HE DOES IDENTIFY THIS 1542 WAIVER UNDER CALIFORNIA LAW. THE ONLY THING I WILL SAY ABOUT THAT, YOUR HONOR, IS THAT IS A NORMAL AND ORDINARY CLAUSE IN CLASS ACTION SETTLEMENTS.

YOUR HONOR, I WENT BACK THROUGH YOUR HONOR'S CASES, AND, FRANKLY, YOUR HONOR HAS APPROVED A NUMBER OF CLASS ACTION SETTLEMENTS WITH 1542 WAIVERS, INCLUDING THE APPLE BATTERY SETTLEMENT THAT MY FIRM WAS INVOLVED IN. SO THAT'S JUST AN ORDINARY PART OF CLASS SETTLEMENTS. I THINK MR. BARNES IS JUST INCORRECT ABOUT THAT.

HE ALSO HAD A STATE OF RESIDENCE ISSUE THAT HE WITHDREW BECAUSE HE THEN UNDERSTOOD HOW THE SETTLEMENT WORKED.

WE'VE ALREADY TALKED ABOUT MR. ZHEN'S OBJECTION. THIS IS

20

THE INDIVIDUAL WHO THOUGHT PUERTO RICO SHOULD BE INCLUDED.

AND THEN THERE'S A MR. SUSSMAN'S OBJECTION. THE FIRST THING I'LL SAY -- WELL, MR. SUSSMAN RAISES LARGELY THE SAME THING AS MR. BARNES DOES WITH RESPECT TO THIS ONLINE CLAIM FORM VERSUS PAPER CLAIM FORM. I DO THINK MR. SUSSMAN'S OBJECTION IS TARDY AND UNTIMELY AND COULD BE REJECTED ON THAT BASIS ALONE, BUT I THINK HIS OBJECTION HAS BEEN ADDRESSED AND IT'S CLEAR, AGAIN, WE'RE ATTEMPTING TO ROOT OUT FRAUD. SO THOSE ARE REASONABLE PROCEDURES.

I CAN ALSO ADDRESS THE DPP OBJECTION.

THE COURT: WELL, LET ME STOP YOU. BEFORE WE GO THERE, LET ME ASK, ARE THERE ANY OBJECTORS PRESENT THAT WISH TO BE HEARD?

I'LL JUST CALL OUT SPECIFICALLY MR. BARNES?

ANY REPRESENTATIVE FROM WOODLANDS, NATIONAL WOODLANDS PRESERVATION?

PAT ZHEN?

MIKE SUSSMAN?

ANY OF THOSE INDIVIDUALS PRESENT THIS MORNING?

I SEE OR HEAR NO RESPONSE. THE RECORD SHOULD REFLECT IT'S 9:25 PACIFIC STANDARD TIME. THEY FAILED TO APPEAR.

LET'S TURN TO THE DPP ISSUE.

MR. ZAPALA: YOUR HONOR, IT'S BEEN LONG SETTLED NINTH CIRCUIT LAW. I THINK IT'S THE LAW IN EVERY CIRCUIT, FRANKLY, SO THE NINTH CIRCUIT IS NOT UNIQUE IN THAT REGARD.

IT'S THE LAW OF EVERY DISTRICT THAT I'VE LOOKED AT. YOU HAVE TO BE A SETTLEMENT CLASS MEMBER TO OBJECT. SO THE FIRST POINT IS THAT THEY DO NOT HAVE STANDING TO OBJECT.

THE SECOND POINT, AND THEY POINT TO ONE OF THEIR CLIENTS WHO I THINK WAS ORIGINALLY A CLASS REP WHO MAY HAVE PURCHASED INDIRECTLY, BUT THE SECOND POINT IS THEY DON'T HAVE STANDING NOT ONLY BECAUSE THEY'RE NOT MEMBERS OF THE SETTLEMENT CLASS, BUT ALSO BECAUSE THEY HAVEN'T IDENTIFIED AN ACTUAL INFIRMITY WITH THE IPP SETTLEMENT.

THERE'S NOTHING THAT THEY'VE SAID ABOUT THE SETTLEMENT. WHAT THEY'VE SAID IS IT MAY BE UNFAIR TO US BECAUSE THERE MAY NOT BE ENOUGH MONEY LEFT OVER FOR US. THAT'S NOT AN OBJECTION TO THE IPP SETTLEMENT. THE RELEVANT INQUIRY UNDER RULE 23 IN THIS PROCEEDING IS IS THE SETTLEMENT FAIR AND REASONABLE TO THE IPP CLASS?

IF ANYTHING -- IT'S THE FIRST TIME I'VE EVER SEEN AN OBJECTION LIKE THIS. IF ANYTHING, IT SOUNDS TO ME LIKE THE DPP'S ARE SAYING YOU'VE GOT TOO MUCH. I DON'T THINK YOU WANT TO BE THE FIRST DISTRICT COURT JUDGE TO REJECT A SETTLEMENT FOR GETTING TOO MUCH MONEY. BUT IF YOU ARE READING BETWEEN THE LINES, THAT'S ALMOST WHAT THE DPP'S ARE SAYING, BUT THAT'S NOT AN OBJECTION, OF COURSE, TO THE FAIRNESS AND REASONABLENESS OF THE IPP SETTLEMENT.

BUT THEY'VE IDENTIFIED NO ISSUE. AND, IN FACT, IN THEIR OBJECTION THEY SAY THAT THE COURT HAS TO ENSURE THAT THE

22

SETTLEMENT IS FAIR TO THE DPP'S.  THAT'S NOT THE RELEVANT INQUIRY.

AND AGAIN, I CAN TELL YOU, I DO THESE CASES ALL OVER THE COUNTRY.  I'M IN 20-SOMETHING CASES LIKE THIS WHERE THERE ARE MULTIPLE CLASSES, DIRECT, INDIRECT, SOMETIMES A THIRD CLASS, AN INTERMEDIARY COMMERCIAL INDIRECT CLASS.  THESE CASES HAVE BEEN GOING ON FOR A LONG TIME IN THE HISTORY OF OUR COURT SYSTEM.

I THINK THERE'S A REASON WHY THEY COULDN'T CITE TO YOU A SINGLE CASE WHERE A DPP OR IPP OBJECTED TO SOMEONE ELSE'S SETTLEMENT.  THEIR OBJECTION IS COMPLETELY VOID OF ANY CASE LAW THAT WOULD JUSTIFY THIS KIND OF OBJECTION HERE.

THEY CITE TO THE CORDONA CASE, WHICH I ACTUALLY THINK IS DISPOSITIVE AND DEMONSTRATES EXACTLY WHY THEY DON'T HAVE STANDING.  I THINK YOUR HONOR AND YOUR HONOR'S CLERKS ARE OBVIOUSLY BRIGHT ENOUGH TO READ THAT CASE AND UNDERSTAND WHY IT DOESN'T SUPPORT THEM.

BUT THE CRITICAL ISSUE IN THAT CASE WAS THE NINTH CIRCUIT FOUND THAT THAT NON-PARTY DIDN'T HAVE TO -- THE NINTH CIRCUIT SAID THAT THAT NON-PARTY HAD ARTICLE III STANDING BUT NOT PRUDENTIAL STANDING PRECISELY BECAUSE THE SETTLEMENT DIDN'T STRIP THEM OF ANY CAUSE OF ACTION.  SAME HERE.

SO I ACTUALLY THINK THAT THAT CASE VERY MUCH SUPPORTS OUR POSITION THAT THERE IS NO STANDING.

BUT EVEN IF THERE WERE STANDING, AGAIN, THEY HAVEN'T IDENTIFIED ANY INFIRMITY WITH OUR SETTLEMENT.

THERE'S A SORT OF STRAIN GOING THROUGH THEIR OBJECTION OF A LOGIC OF IT SOUNDS LIKE THEY THINK THAT THEY'RE ENTITLED TO A SETTLEMENT, BUT OF COURSE THE DEFENDANT GETS TO DECIDE WHO THEY WANT TO SETTLE WITH AND ON WHAT TERMS, AND IT'S THE DEFENDANT THAT IS ASSESSING THE RISK TO IT, AND IT'S PERFECTLY ACCEPTABLE FOR A DEFENDANT TO SAY WE'RE GOING TO SETTLE WITH THIS CLASS BECAUSE WE THINK THERE'S MORE EXPOSURE THERE, WE THINK THERE'S GREATER LIKELIHOOD OF CERTIFICATION OR OF SUCCESS AT TRIAL AND WE MAY LEAVE THIS OTHER PARTY OUT THERE BECAUSE WE WANT TO CONTEST THOSE CLAIMS. THAT'S PERFECTLY APPROPRIATE FOR A DEFENDANT TO DO.

JUST BECAUSE A DEFENDANT SETTLES WITH AN INDIRECT CLASS DOESN'T THEN CREATE A PRESUMPTION THAT IT NOW HAS TO SETTLE THE DPP CLASS. IT CAN TAKE THIS CASE ALL OF THE WAY TO APPEALS.

THE COURT: AND THAT CASE IS THRIVING?

MR. ZAPALA: THAT CASE IS GOING, YES. AND, OF COURSE, IF THE DPP'S WOULD LIKE TO RESOLVE IT AND THE DEFENDANTS WOULD LIKE TO RESOLVE IT, THEY SHOULD GET TOGETHER AND TRY TO DO THAT, BUT THAT HAS NOTHING TO DO WITH US AND NOTHING TO DO WITH OUR SETTLEMENT. IT'S JUST NOT HOW THE LAW RECOGNIZES HOW CREDITOR CLAIMS WORK.

IMAGINE A SCENARIO WHERE AT EVERY FAIRNESS HEARING THE COURT HAD TO INQUIRE, WELL, IS THIS FAIR TO EVERY OTHER POTENTIAL CREDITOR THAT THE DEFENDANT HAS? THAT'S NOT THE INQUIRY.

24

SO, AGAIN, THAT'S WHY THE DPP OBJECTION MUST BE REJECTED AND ALSO WHY THE DPP'S DON'T HAVE STANDING TO MAKE THE OBJECTION THAT THEY HAVE.

I'M HAPPY TO NOW ADDRESS THE ATTORNEYS' FEE MOTION OR ANY QUESTION THAT YOU HAVE.

THE COURT: LET'S STICK WITH THE OBJECTIONS HERE. AND LET ME ASK, IS THERE ANYBODY PRESENT IN REGARDS TO THE DPP OBJECTIONS?

MR. BORDEN: YES, YOUR HONOR. MATTHEW BORDEN ON BEHALF OF THE --

THE COURT: SURE. COME FORWARD, MR. BARNES.

MR. BORDEN: THANK YOU, YOUR HONOR.

THE COURT: WOULD YOU LIKE TO BE HEARD AS TO THE OBJECTION -- I THINK IS THIS ON THE APPLICATION OF JASON STEELE AND PIONEER CYCLING?

MR. BORDEN: THAT'S CORRECT, YOUR HONOR.

THE COURT: YES. WHAT SHOULD I KNOW ABOUT THAT?

MR. BORDEN: WELL, THANK YOU FOR THE OPPORTUNITY TO BE HEARD ON THIS. I THINK -- WE GOT THE COURT'S ORDER LAST NIGHT IN THE DPP CASE. I'M NOT GOING TO REHASH ANY OF THAT. I UNDERSTAND.

THE COURT: NO.

MR. BORDEN: THE OBJECTION THAT WE HAVE IS THAT WE'VE BEEN TOLD BY DEFENDANTS THAT THIS SETTLEMENT WILL WIPE OUT THE ABILITY OF OUR CLASS TO RECOVER.

MR. ZAPALA TALKED ABOUT THE FIDUCIARY OBLIGATIONS THAT COUNSEL HAVE TO REPRESENT THE PEOPLE IN THEIR CLASS.

WE THINK THAT WHAT DEFENDANTS HAVE SAID IS INCORRECT AND THAT THERE IS ABSOLUTELY GOING TO BE ASSETS OUT THERE TO SATISFY THE JUDGMENT, BUT WE DON'T WANT TO GAMBLE ON THAT FOR OUR CLASS MEMBERS AND THE PEOPLE THAT WE OWE A FIDUCIARY DUTY AND THAT'S WHY WE ASKED FOR ASSISTANCE.

I NOTICED THAT THE IPP'S IN THEIR PAPERS HAVE TALKED ABOUT COLLECTABILITY AS AN ISSUE AS TO THE SETTLEMENT AMOUNT. SO I THINK THE ISSUE IS BEFORE THE COURT. IN THE COURT'S ORDER OF YESTERDAY IT EXPRESSLY SAID THAT IT WASN'T CONSIDERING THE STATEMENTS MADE BY IPP'S ABOUT COLLECTABILITY, BUT I THINK IT WOULD BE APPROPRIATE IN THIS CASE IF THE COURT DID SOME INQUIRY INTO THAT WITH THE DEFENDANTS.

I DON'T HAVE MUCH TO ADD.

THE COURT: SURE.

MR. BORDEN: SUBSTANTIVELY, I CAN ADDRESS A FEW POINTS THAT MY COLLEAGUE, MR. ZAPALA, MADE.

WE HAVEN'T SAID THAT DEFENDANTS ARE GETTING -- THAT PLAINTIFFS ARE GETTING TOO MUCH. WE'VE JUST SAID, WE WANT IPP'S TO GET EVERY CENT THAT THEY'VE BARGAINED FOR. THIS IS A CONDITIONAL OBJECTION UNTIL WE CAN BE SURE THAT OUR CLASS IS PROTECTED, TOO.

AND I THINK WHAT THEY'RE ASKING FOR IS FUNDAMENTALLY INEQUITABLE. IF WHAT DEFENDANTS ARE SAYING IS TRUE, IT WOULD

26

NOT BE FAIR TO PAY VICTIMS OF THE SAME CONDUCT AND TO DEPRIVE ONE SET OF THEIR CLAIMS WHILE PAYING THE OTHERS.

AND THAT'S -- THERE ARE CASES THAT SAY THAT.  AND FARRINGTON, FOR EXAMPLE, THAT WAS A DECISION BY JUDGE KOH.

AND I THINK THERE'S A LOT OF DECISIONS WHERE --

THE COURT:  THOSE DEALT WITH SUBCLASSES, THOUGH.

MR. BORDEN:  THAT'S CORRECT.

THE COURT:  THAT'S A LITTLE DIFFERENT.

MR. ZAPALA:  IT'S VERY DIFFERENT, YOUR HONOR.

MR. BORDEN:  AND THEY DON'T HAVE ANY CASES THAT SUPPORT WHAT THEY'RE SAYING, EITHER.

YOU KNOW, ALL OF MY FRIEND'S EXPERIENCE, HE CAN'T CITE A SINGLE DECISION WHERE THERE'S BEEN A SEPARATE IPP SETTLEMENT THAT COULD POTENTIALLY DO WHAT DEFENDANTS ARE SAYING HERE.

SO I THINK THE PLAIN LANGUAGE OF 23(E)(2)(D), YOU KNOW, TALKS ABOUT FAIRNESS TO CLASS MEMBERS, AND I THINK THAT, YOU KNOW, WE HAVE TO CONSIDER THE RIGHTS OF ALL OF THE VICTIMS OF THE SAME COURSE OF CONDUCT.

IF ANYTHING, THEIR CLAIMS ARE DERIVATIVE OF OURS.

THE COURT:  OKAY.

MR. BORDEN:  IN TERMS OF THE STANDING, MR. STEELE IS AN INDIRECT PURCHASER, AND THAT'S DOCUMENTED IN HIS DECLARATION.

THE COURT:  HAS HE FILED A CLAIM IN THIS CASE?

MR. ZAPALA:  NO, YOUR HONOR.

UNITED STATES COURT REPORTERS

**3-ER-0482**

MR. BORDEN: HE HAS NOT FILED A CLAIM.

THE COURT: OKAY.

MR. BORDEN: HE'S FILED AN OBJECTION THOUGH.

THE COURT: OKAY.

MR. BORDEN: AND OUR DIRECT PURCHASER PLAINTIFF, PIONEER, THEY ALSO HAVE STANDING UNDER THE SWEET VERSUS CARDONA CASE. IF IT'S TRUE THAT WHAT DEFENDANTS ARE SAYING IS TRUE, THAT THIS WOULD EFFECTIVELY DEPRIVE THEM OF ANY LEGAL REMEDY, THEN THEY WOULD HAVE STANDING AS A FORMAL LEGAL PREJUDICE. AND THAT'S THE EXCEPTION TO THE RULE THAT NON-CLASS MEMBERS GENERALLY DO NOT HAVE STANDING TO OBJECT, WHICH WE RECOGNIZE.

THE COURT: OKAY. THANK YOU. THANK YOU.

MR. BORDEN: THANK YOU, YOUR HONOR.

MR. ZAPALA: THAT'S JUST NOT HOW CLASS SETTLEMENTS WORK. IT'S NOT HOW CREDITOR CLAIMS WORK IN BANKRUPTCY, FOR EXAMPLE. IT'S A RACE TO JUDGMENT, YOUR HONOR. THAT'S -- YOU KNOW, THAT'S HOW BANKRUPTCY WORKS, FOR EXAMPLE. THERE -- YOU LINE UP IN TERMS OF WHERE YOU'RE -- WHERE YOU ARE IN THE ORDER, RIGHT?

SO IT IS NOT THE CASE AND IT'S NOT THE INQUIRY UNDER RULE 23 TO SAY, ARE THERE SOME OTHER CLASSES OUT THERE THAT MAY BE ENTITLED TO MONEY? AND WE NEED TO ASSESS WHETHER THIS IS FAIR TO THEM. THAT'S NOT HOW IT WORKS. THERE ARE A BUNCH OF OPIOID CASES RIGHT NOW GOING, MASS TORT CLASS CASES, BANKRUPTCIES INVOLVED THERE. IF YOU GET TO JUDGMENT FIRST,

THAT'S THE WAY IT WORKS.

IF THE DPP'S ARE WORRIED ABOUT SECURING MONEY, THEY SHOULD ENGAGE IN SETTLEMENT DISCUSSIONS WITH THE DEFENDANT LIKE WE DID. SO THAT'S THE ASSESSMENT OF LITIGATION RISK. YOU KNOW, LITIGATION IS BUYER BEWARE. THERE'S NO FOR SURE OUTCOME IN LITIGATION.

IF IN EVERY CASE YOU FILE, IT MAY BE THE CASE THAT BY THE TIME YOU GET TO JUDGMENT, THE DEFENDANT DOESN'T HAVE ASSETS SUFFICIENT TO PAY THE JUDGMENT. THAT'S THE NATURE OF LITIGATION.

SO ALL WE SEE HERE IS THAT THE DPP'S ARE COMPLAINING ABOUT WHAT IS AN ORDINARY AND USUAL FACT OF LITIGATION LIFE, AND THE FACT THAT WE SETTLED BEFORE THEY DID, DOESN'T MEAN OUR SETTLEMENT IS UNFAIR OR EVEN UNFAIR TO THEM.

SO I THINK YOUR HONOR UNDERSTANDS THESE ISSUES. I'M HAPPY TO ADDRESS THE MOTION FOR ATTORNEYS' FEES AND EXPENSES IF YOU WOULD LIKE TO MOVE TO THAT.

THE COURT: ANYTHING ELSE, MR. BORDEN?

MR. BORDEN: JUST TO ADDRESS MY FRIEND'S RACE TO JUDGMENT POINT. A RACE TO JUDGMENT IS DIFFERENT THAN ASKING TO IMPOSE THE JUDICIAL IMPRIMATUR ON A SETTLEMENT OF A CLASS CASE WHERE THERE ARE A LOT OF UNNAMED PEOPLE WITH RIGHTS OUT THERE, AND THAT'S WHAT WE'RE ASKING THE COURT TO DO.

THE COURT: I APPRECIATE THAT. THANK YOU. AND WE DO HAVE FIDUCIARY DUTIES.

29

THESE CASES WITH IPP'S AND DPP'S, SAME SET OF FACTS, DIFFERENT CIRCUMSTANCES, DIFFERENT PARTIES INVOLVED, HOWEVER.

YOU ASKED TO HAVE PERMISSION TO COME AND ADDRESS THE COURT, MR. BORDEN, ON THESE ISSUES.  I'M ALWAYS HAPPY TO HAVE YOU IN THE COURTROOM.

PARDON ME.  I GRANTED THAT REQUEST, BECAUSE, CANDIDLY, IT'S IMPORTANT THAT THAT GET FLESHED OUT AND YOU MAKE THAT STATEMENT FOR YOUR CLIENTS, BUT PERHAPS AS IMPORTANT IS TO LET THE DEFENDANTS KNOW YOUR CONCERNS IN FRONT OF THE COURT.  AND IT'S SOMETHING THAT, OF COURSE, WE'LL BE COGNIZANT OF WHEN WE GET TO ANY RESOLUTION OF YOUR CASE AND WHETHER OR NOT THE DEFENDANTS IN THE CASE ARE GOING TO INFORM US WHETHER THEY'RE IMPECUNIOUS OR WHAT THEIR STATE OR WHAT THEIR SITUATION IS. THAT REMAINS TO BE SEEN.

THE FIDUCIARY DUTY THAT IS BEFORE ME TODAY AS TO THIS CASE AND AS TO THESE IPP PLAINTIFFS, AND I NEED TO EXERCISE THAT FIDUCIARY DUTY TO ENSURE THAT THIS SETTLEMENT THAT HAS BEEN REACHED IS FAIR, ADEQUATE, AND REASONABLE AS TO THAT CLASS.

AND I'M NOT SAYING THAT I'M IGNORING YOUR CASE.  THAT'S ALWAYS GOING TO BE THERE.

BUT I AM RESPECTFULLY GOING TO OVERRULE THE OBJECTION.  I DON'T FIND THAT IT IS APPROPRIATE FOR THE COURT TO GRANT THE OBJECTION BASED ON THE REASONS THAT YOU'VE SAID.  IT'S COUNTERVAILED BY THE FIDUCIARY DUTY AND THE RESPONSIBILITY OF THIS PARTICULAR SETTLEMENT.

SO I APPRECIATE THAT.  THANK YOU FOR BEING HERE.  I APPRECIATE IT.

MR. BORDEN:  THANK YOU, YOUR HONOR.

THE COURT:  YOU'RE WELCOME.

LET'S TURN TO THE ATTORNEYS' FEES, IF YOU WISH TO BE HEARD ON THAT.

MR. ZAPALA:  THANK YOU, YOUR HONOR.  YES.

AS IS ORDINARY IN CLASS LITIGATION, WE ARE SEEKING FEES AS A PERCENTAGE OF THE FUND, WHICH, AGAIN, IS THE ORDINARY WAY TO GRANT FEES IN AN ANTITRUST CASE.  THE AMOUNT THAT WE'RE REQUESTING IS ROUGHLY $10.6 MILLION.

WHEN YOU ENGAGE IN A LODESTAR CROSSCHECK, WHICH OF COURSE IS ENCOURAGED BY THE NINTH CIRCUIT, YOU'LL SEE THAT WE SPENT, AGAIN, OVER 20,000 HOURS ON THE CASE WHICH CAME OUT TO ABOUT 14.5 MILLION IN ATTORNEY TIME.

SO IF YOU WERE TO GRANT THE FEE REQUEST, IT WOULD ACTUALLY CONSTITUTE A NEGATIVE MULTIPLIER.  WE WOULD ONLY RECOVER UNDER 75 PERCENT OF THE TIME THAT WE EXPENDED ON THE CASE.  AND ACTUALLY, CANDIDLY, IT'S GETTING NEGATIVE AS WE SPEAK, RIGHT, MORE NEGATIVE AS WE SPEAK.  BUT THAT AMOUNT, THE NEGATIVE MULTIPLIER THAT WAS SUBMITTED AT THE TIME OF OUR ATTORNEY FEE MOTION, OBVIOUSLY WE'VE HAD MORE WORK SINCE THEN, BOTH RESPONDING TO OBJECTIONS AND FILING THE MOTION FOR FINAL APPROVAL.

SO MY POINT ONLY BEING IS THAT IT COMPARES FAVORABLY WITH

THE LODESTAR CROSSCHECK. WE THINK THE AMOUNT THAT WE HAVE COVERED IN OUR WORK IN THE CASE, BOTH BEFORE YOUR HONOR AND BEFORE JUDGE DEMARCHI, FULLY JUSTIFY THE FEE REQUEST. WE THINK WE'VE DONE GREAT WORK IN THE CASE, AND WE THINK THE SETTLEMENT IS FAIR AND REASONABLE AND A GOOD SETTLEMENT FOR OUR CLASS.

SO, AGAIN, WE THINK THAT THE ATTORNEY FEE REQUEST IS REASONABLE. WE RECOGNIZE YOUR HONOR HAS A TON OF DISCRETION WHEN IT COMES TO THIS.

THE ONLY GUIDELINE THAT REALLY THE NINTH CIRCUIT GIVES, OTHER THAN LOOKING AT THE LODESTAR CROSSCHECK AND THE QUALITY OF THE WORK AND THE OUTCOME, IS REALLY A REASONABLENESS INQUIRY. THEY DON'T PUT ANY FORMULA ON HOW YOU'RE SUPPOSED TO DO IT, WHETHER -- SO IT'S REALLY JUST A QUESTION OF IS THE FEE REQUEST REASONABLE IN LIGHT OF ALL OF THE FACTORS IN THE CASE, AND WE SUBMIT THAT IT IS.

WE HAVE ALSO ASKED FOR $3,000 IN CLASS REP INCENTIVE AWARDS FOR OUR CLASS REPS. THEY ALL SAT FOR DEPOSITIONS, THEY ALL PRODUCED DOCUMENTS, THEY WERE ALL INVOLVED IN THE LITIGATION AND, OF COURSE, CRITICAL TO THE RECOVERY OF THE IPP CLASS.

SO WE WOULD ASK THAT YOUR HONOR GRANT THAT REQUEST AS WELL.

FINALLY, WE ALSO ARE REQUESTING REIMBURSEMENT OF LITIGATION EXPENSES IN THE AMOUNT OF A LITTLE OVER $700,000. WE THINK THAT AMOUNT IS REASONABLE AND JUSTIFIED BASED ON THE

WORK PERFORMED IN THIS CASE. WE HAD OBVIOUSLY OVER 3 MILLION DOCUMENTS WERE PRODUCED IN THIS CASE, AND SO WE HAD TO STORE THOSE DOCUMENTS, AND WE HAD EXTENSIVE EXPERT WORK IN THE CASE.

I WILL SAY IN MY EXPERIENCE, IF YOU CAN GET COSTS UNDER A MILLION DOLLARS IN THESE CASES, YOU ARE DOING PRETTY WELL. I JUST HAD A FEE PETITION THAT I SUBMITTED IN ANOTHER CASE WHERE WE HAD 6 MILLION IN COSTS.

SO, AGAIN, WE FIND THAT THAT AMOUNT IS VERY REASONABLE UNDER THE RELEVANT NINTH CIRCUIT CASE LAW, REASONABLY EXPENDED LITIGATION EXPENSES SHOULD ALSO BE REIMBURSED. AND SO WE WOULD ASK OBVIOUSLY THAT THE ATTORNEYS' FEES AND THE LITIGATION EXPENSES, AND THE SERVICE AWARDS BE GRANTED.

I'M HAPPY TO ADDRESS ANY QUESTIONS THAT THE COURT MAY HAVE.

OH, ONE THING I SHOULD MENTION, SORRY. THERE HAVE BEEN NO OBJECTION TO OUR ATTORNEYS' FEES MOTION. SO NO ONE IS CHALLENGING THE AMOUNT OR ANYTHING THAT WE ARE REQUESTING WITH RESPECT TO OUR FEE MOTION.

THE COURT: BUT THERE WAS NO CLEAR SAILING.

MR. ZAPALA: NO, NO CLEAR SAILING.

THE COURT: OKAY.

MR. ZAPALA: AND IN ANY EVENT, I OFTEN FIND -- I DON'T KNOW WHY ANYONE WOULD PUT THOSE IN THE AGREEMENTS BECAUSE AT THE END OF THE DAY IT'S THE JUDGE THAT HAS TO GRANT YOUR FEES ANYWAY, SO IT DOESN'T REALLY MATTER WHAT THE DEFENDANT HAS

SAID ABOUT IT ANYWAY, BUT I REALLY NEVER UNDERSTOOD THOSE PROVISIONS.

THE COURT: WELL, THANK YOU. I DID -- AND I'VE LOOKED AT DOCUMENT 398 THAT WAS SUBMITTED, PAGE 25 OF 29, 27 OF 29. THESE WERE THE GRAPHS, EXHIBIT A, B, C -- A. DO YOU KNOW THIS GENTLEMAN?

MR. ZAPALA: MR. SELTZER?

THE COURT: YES.

MR. ZAPALA: MARK SELTZER. I KNOW HIM WELL, AND I'VE DONE A LOT OF CASES WITH HIM.

THE COURT: YES, I UNDERSTAND. WERE YOU AWARE THAT HE BILLS 2,200 AMERICAN DOLLARS AN HOUR?

MR. ZAPALA: WELL, IT DOESN'T SURPRISE ME BECAUSE I DO REFER TO HIM AS THE DEAN OF THE PLAINTIFF ANTITRUST BAR.

THE COURT: IS THAT IN REGARDS TO HIS BILLING HOURS?

MR. ZAPALA: NO. IT'S IN REGARD TO HIS SKILL. I MEAN, YES, HE'S BEEN DOING THIS FOR A WHILE.

THE COURT: YES. I SAW THAT. IT RAISED EYEBROWS, AT LEAST MINE, BUT WE KNOW FROM -- HE SPENT 118.70 CUMULATIVE HOURS. 19.4 OF THOSE WERE IN RELATION TO LITIGATION STRATEGY ANALYSIS AND CASE MANAGEMENT.

MS. SRINIVASAN WAS ALSO -- SHE SPENT 125.5 HOURS IN THAT CATEGORY. AND SHE HAD I THINK 362.8 CUMULATIVE HOURS. THAT'S WHAT THIS TELLS US. SO SHE WAS VERY MUCH INVOLVED IN THE CASE.

IT LOOKS LIKE MS. SALINAS HAD 1600 -- ALMOST 1700 HOURS

INVESTED IN THE CASE AND NEITHER OF THOSE TWO, ALTHOUGH THERE WERE -- HE'S NOT HERE. I WOULD SAY HER WORK IS PROBABLY COMPARABLE TO HIS. HE'S NOT HERE, SO I CAN SAY THAT, RIGHT.

MR. ZAPALA: YEAH.

THE COURT: THEY DON'T BILL AT 2200 HOURS AN HOUR, THOUGH.

SO I DO NOTE THAT.

AND I JUST WANT TO POINT OUT, TOO, IN LOOKING AT THESE BILLINGS, I'M GRATEFUL AND I THINK YOUR COLLEAGUES WILL -- YOUR COLLEAGUE OPPOSITES WOULD ALSO AGREE, I'M GRATEFUL THAT THE FIRMS ARE HAVING WOMEN REPRESENT AT HIGH LEVELS OF PARTNERSHIP AND HIGH ASSOCIATE LEVEL PARTICIPATE AND GARNER INCREASED HOURS AND BILLINGS ON THESE IMPORTANT CASES.

I JUST THINK THAT'S IMPORTANT.

MR. ZAPALA: WELL, IF I MAY, YOUR HONOR? MS. SALINAS WAS REALLY -- SPEARHEADED THE OFFENSIVE LITIGATION IN THIS CASE, DID A LOT OF ARGUMENT BEFORE JUDGE DEMARCHI, AS DID MS. CASTILLO WHO IS WITH ME HERE TODAY. SO SHE WAS CRITICAL TO THE SUCCESS OF THE CASE.

I DON'T KNOW IF YOU KNOW THIS, AGAIN, A LITTLE BIT OF A SHOUT OUT TO MY CO-COUNSEL, BUT MS. SRINIVASAN IS ACTUALLY THE MANAGING ATTORNEY OF SUSMAN GODFREY. SO SUSMAN GODFREY IS DEDICATED ALSO TO OBVIOUSLY PROMOTING ITS FEMALES.

THE COURT: WELL, I JUST NOTE THAT. I THINK IT'S APPROPRIATE TO NOTE THAT.

35

AND MR. SUSMAN SHOULD BE PLEASED THAT HIS OFFICE IS DOING ALL OF THE GOOD THINGS THAT THEY'RE DOING ACROSS THE BOARD.

AND I SUPPOSE -- IS THAT THE LEVEL OF BILLING, 2200 AMERICAN DOLLARS, IS THAT --

MR. ZAPALA: IT'S NOT MY RATE, YOUR HONOR, BUT I'M ALSO NOT THE DEAN OF THE PLAINTIFF ANTITRUST BAR AND I HAVEN'T BEEN DOING IT FOR AS LONG AS MR. SELTZER. BUT THOSE RATES HAVE BEEN APPROVED BY OTHER COURTS. IT IS HIS ORDINARY RATE. INFLATION HAS HIT THE UNITED STATES, BUT THAT'S WHERE WE'RE AT.

BUT OF COURSE THAT'S ONE OF THE ADVANTAGES, YOUR HONOR, OF SEEKING A PERCENTAGE OF THE FUND, IS THE CLASS ISN'T REALLY PAYING THE HOURLY RATE. IT'S REALLY PAYING THE ATTORNEYS BASED ON THE OUTCOME OF THE CASE.

THE COURT: SURE.

MR. ZAPALA: OF COURSE, THE LODESTAR CROSSCHECK IS A REASONABLENESS CROSSCHECK, BUT WE WON'T BE GETTING COMPENSATED OBVIOUSLY AT OUR FULL HOURLY RATE GIVEN THE NEGATIVE MULTIPLIER. AND THAT IS JUST THE RISK YOU TAKE IN CLASS LITIGATION.

THE COURT: NO. AND HE'S A DEAN. IS THAT THE SELF-APPOINTED TITLE OR IS THAT -- YOU DON'T HAVE TO ANSWER THAT.

LET ME TURN TO YOUR COLLEAGUE OPPOSITES AND SEE IF THEY HAVE ANY COMMENTS THAT THEY WISH TO MAKE ON ANYTHING THAT WE'VE TALKED ABOUT THIS MORNING.

MS. SRINIVASAN IS GOING TO TAKE BACK MY COMMENTS TO HER PARTNER.

MS. SRINIVASAN: MAYBE SOME REVISIONS.

MR. LIU: YOUR HONOR, THE DEFENDANT HAS NOTHING TO ADD. MR. ZAPALA DID A VERY GOOD JOB BRIEFING THE ISSUES, AND WE AGREE THAT THE MOTION SHOULD BE GRANTED.

THANK YOU.

THE COURT: THANK YOU VERY MUCH FOR BEING HERE.

ANYTHING FURTHER FROM ANY OF YOUR COLLEAGUES? ANYONE WISH TO BE HEARD?

MS. SRINIVASAN: NO, YOUR HONOR.

MS. CASTILLO: NO, YOUR HONOR.

THE COURT: THANK YOU.

MR. ZAPALA: THANK YOU, YOUR HONOR. IT'S ALWAYS A PLEASURE BEING HERE.

THE COURT: THANK YOU FOR BEING HERE AND HAVING THIS ROBUST DISCUSSION ABOUT WHETHER OR NOT THE COURT SHOULD GRANT FINAL APPROVAL OF THIS SETTLEMENT.

LET ME SAY, AS I INDICATED EARLIER, THE COURT GRANTED PRELIMINARY APPROVAL IN NOVEMBER OF LAST YEAR, AND THAT WAS IN DOCKET 397, AND THE COURT CAN LOOK BACK TO THAT PRELIMINARY APPROVAL FOR GUIDANCE ALSO AS TO THE FINAL APPROVAL.

AND I DO FIND THAT IT WAS APPROPRIATE THEN AND INCORPORATING BY REFERENCE THE COMMENTS THAT I MADE THERE, I DO FIND THAT IT IS APPROPRIATE TO APPROVE AND GRANT APPROVAL OF

THE FINAL SETTLEMENT.

LOOKING THROUGH THE FACTORS IN THIS CASE, THE 23(A) FACTORS ARE SATISFIED, NUMEROSITY, COMMONALITY OF THE SETTLEMENT CLASS MEMBERS IS ALL FAVORABLE. THERE'S TYPICALITY AND ADEQUACY CERTAINLY, CERTAINLY RELEVANT AND APPROVABLE HERE. THE PREDOMINANCE FACTORS ARE HERE. ALL OF THESE ISSUES RELATE TO THE COMMON INTEREST OF THESE PARTIES AND THE COURT FINDS THAT, OF COURSE, THE CLASS ACTION UNDER 23(B)(3) IS THE SUPERIOR METHOD TO ENGAGE THIS LAWSUIT.

EXCUSE ME. THERE ARE NO -- THE BLUETOOTH CONSIDERATIONS HAVE BEEN TALKED ABOUT. WE'VE LOOKED AT THOSE. THIS IS A NON-REVISIONARY SETTLEMENT, AS I UNDERSTAND IT. AND I'VE TALKED ABOUT THE DISTRIBUTION. THERE DOES NOT APPEAR TO BE ANY DISPROPORTIONATE DISTRIBUTION. THE OFFERED AMOUNT IS $32 MILLION. THERE WAS EXTENSIVE DISCOVERY IN THIS CASE, 14 DISCOVERY DISPUTES, 3 ROUNDS OF MOTIONS TO DISMISS. IT WAS A HEAVY LITIGATED CASE.

AND WE TALKED A LITTLE BIT ABOUT THE STRENGTHS AND WEAKNESSES OF THE CASE AS WELL AS THE CLAIMS AMOUNT. THE CLAIM PERIOD STILL EXTENDS TO MAY 20. SO THAT COULD CHANGE AS WELL, AND THERE COULD BE ADDITIONAL DATA THAT WILL SUPPORT THAT.

IN REGARDS TO THE OBJECTIONS, THE COURT HAS READ AND CONSIDERED THOSE OBJECTIONS. I'M GOING TO OVERRULE THE OBJECTIONS OF MR. BARNES IN REGARDS TO THE -- HIS OBJECTIONS ABOUT THE CLAIM NUMBERS. I THINK THAT VERITA HAS SATISFIED

THOSE. THERE IS NO 1542 WAIVER ISSUE THAT THE COURT IS CONCERNED ABOUT.

NATIONAL WOODLANDS, WE TALKED ABOUT THEM ALSO AND ABOUT AN ENTITY LOCATION. THE FORM, IT ASKS FOR NAME, AND I BELIEVE THEY COULD HAVE JUST PUT THEIR NAME DOWN AND THAT WOULD HAVE SATISFIED. IN ANY EVENT, THAT'S BEEN RESOLVED.

PAT ZHEN WAS THE OBJECTOR. THIS IS ON ECF 402. HE WAS COMPLAINING ABOUT PUERTO RICO, BUT AS WE'VE DISCUSSED, PUERTO RICO IS NOT PART OF THIS LAWSUIT AND SO HIS RIGHTS ARE NOT DISTURBED IN ANY WAY.

AND MR. SUSSMAN TALKED ABOUT OBJECTIONS IN REGARDS TO CLAIM NUMBERS, AND I THINK THAT'S BEEN RESOLVED. SO THE COURT WILL OVERRULE THE OBJECTIONS.

I'VE ALREADY TALKED ABOUT THE DPP'S OBJECTIONS IN THIS MATTER.

THE COURT FINDS THAT IN CONSIDERING ALL OF THE RULE 23 FACTORS, THEY HAVE BEEN SATISFIED, AND THE COURT WILL GRANT THE RELIEF REQUESTED AND WILL GRANT FINAL APPROVAL OF THE SETTLEMENT.

I WILL ALSO AWARD THE $3,000 CLASS FEES TO THOSE IDENTIFIED PARTIES. I THINK THAT'S APPROPRIATE. THEY DID SIT FOR DEPOSITIONS.

I WILL -- AND I WILL APPOINT THEM AS CLASS REPRESENTATIVES AND NOTICE THEM AS THE APPROPRIATE CLASS REPRESENTATIVES. THAT'S $3,000 TO EACH OF THE 35 CLASS REPRESENTATIVES AS

SERVICE AWARDS.

I'LL ALSO APPROVE THE ADMINISTRATOR'S FEES IN THIS MATTER.

AS TO THE ATTORNEYS' FEES, WE'VE REVIEWED THE LODESTAR. THE 33.33 PERCENT IS ABOVE THE 25 PERCENT BENCHMARK. IT IS NOT OFFENSIVE AT ALL GIVEN THE WORK AND THE RESULT ACHIEVED IN THIS CASE, SO I WILL GRANT APPROVAL OF THE ATTORNEYS' FEES AS REQUESTED. I FIND THAT THIS WAS A HARD FOUGHT CASE, AND IT WAS THE RESULT OF MEDIATION, AT LEAST TWICE, PERHAPS MORE BETWEEN THE PARTIES, AND I FIND THAT THE SETTLEMENT IS FAIR, ADEQUATE, AND REASONABLE. THE ATTORNEYS' FEES ARE THE SAME.

SO I'LL GRANT FINAL APPROVAL OF THE SETTLEMENT AS WELL AS THE ATTORNEYS' FEES AND COSTS.

AND I BELIEVE YOU FILED AN APPROVAL FORM. I BELIEVE YOU HAD AN APPROVAL ORDER WITH THE COURT?

MR. ZAPALA: I BELIEVE WE LODGED ONE. IF WE DIDN'T, I'LL GO CHECK THAT WHEN WE GET BACK TO MY OFFICE. IF WE DIDN'T, WE'LL SUBMIT IT VIA YOUR EMAIL PORTAL.

THE COURT: THAT WOULD BE GREAT.

MR. ZAPALA: BUT WE'LL JUST SUBMIT IT AGAIN SO YOU HAVE IT.

THE COURT: LET'S DO THAT.

ANYTHING FURTHER FROM ANY OF THE PARTIES?

MR. BORDEN: NOTHING FURTHER, YOUR HONOR.

THE COURT: GREAT. GOOD SEEING YOU.

MR. ZAPALA: THANK YOU, YOUR HONOR. THANK YOU FOR

40

YOUR TIME AND THANK YOU FOR YOUR STAFF'S TIME AS WELL.

THE CLERK:  COURT IS CONCLUDED.

(COURT CONCLUDED AT 9:50 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE
UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF
CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO
HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS
A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE
ABOVE-ENTITLED MATTER.

_____
IRENE RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074


DATED: APRIL 9, 2025

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com
(787) 523-8040

Objector

**FILED**

**MAR 26 2025**

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST
LITIGATION

No. 5:20-cv-03639-EJD

This Document Relates to:
Indirect Purchaser Actions

### REPLY IN SUPPORT OF OBJECTIONS TO THE SETTLEMENT

Objector Pat Zhen filed objections at Entry 402 explaining that under

precedent, Puerto Rico is a repealer state.  Without any discussion of the cases,

Class Counsel baldly asserted in a motion for approval at Entry 404 that Zhen

has no standing because Puerto Rico is not a repealer territory.  This response

makes no sense whatsoever.  Zhen's objection provided a detailed analysis and

Class Counsel provides no analysis.

Class Counsel failed to serve the motion at 404 upon Zhen.  The website

operated by the claims administrator did not list any due date for responses to

this motion at Entry 404 on the "Important Dates & Deadlines" of the website at

https://www.telescopesettlement.com/important-dates-deadlines.aspx .

A copy of the motion at Entry 404 was not provided on the website on the Case

Documents page.  https://www.telescopesettlement.com/case-documents.aspx

**3-ER-0498**

Zhen stands by the objection because Class Counsel unfairly excluded

Repealer Territory Puerto Rico purchasers, which is a repealer territory.

Respectfully submitted,

Pat Zhen

PRESORTED
FIRST-CLASS MAIL
US POSTAGE PAID
MADISON WI
PERMIT NO 1480

ZHEN
BOX 366047
SAN JUAN PR 00936

SP 02    32945664

CLERK, US DISTRICT COURT
280 South 1st Street, RM 2112
San Jose CA 95113

RECEIVED -nmc

MAR 26 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

**3-ER-0500**

11860814⁊ 58 1.1 CMFCNF



Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF CALIFORNIA
### SAN JOSE DIVISION

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case Nos. 5:20-cv-03639-EJD** |
| | **INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | **Dept.: Courtroom 4**<br>**Judge: Hon. Edward J. Davila**<br>**Date: April 3, 2025**<br>**Time: 9:00 AM** |

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

**3-ER-0504**

Settlement Class Counsel for the Indirect Purchaser Plaintiffs ("IPPs") write to update the Court regarding the status of the claims process and communications with objectors. No formal opposition to the Motion for Final Approval of Settlement ("Final Approval Motion") or Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Services Awards ("Attorneys' Fees Motion") was filed.[1] Settlement Class Counsel offer the below in further support of those motions.

## I.    ADDITIONAL CLAIMS

Since IPPs filed the Final Approval Motion on February 28, 2025, an additional 4,274 claims were submitted, bringing the total thus far to 81,158. *See* Declaration of Kalpana Srinivasan ¶1 ("Srinivasan Decl."). This represents 2% of the approximately 4 million potential class members and weighs in favor of approval. *See* ECF No. 404 at 13-14.

## II.    COMMUNICATIONS WITH OBJECTORS

**Elman Barnes.** On March 11, 2025, Settlement Class Counsel sent a follow up email to Barnes, again requesting a time to discuss his objections by phone or Zoom. Srinivasan Decl. ¶2. On March 12, 2025, Barnes responded that had "been very busy and have not had the time and opportunity to arrange a phone call" and informed Settlement Class Counsel that he had mailed a response to the Court regarding his objection. *Id*. On March 13, 2025, Barnes's response was posted to the docket. *See* ECF No. 405. On the same day, Settlement Class Counsel responded to Barnes, telling him they would like to discuss the Response and again asking him to "[p]lease let us know a few times next week when you are available for a phone call or Zoom" and that they were "happy to work around your schedule." Srinivasan Decl. ¶2. On March 14, 2025, without responding to counsel's email, Barnes left a voicemail for Settlement Class Counsel and provided a number at which to call him back. *Id*. Despite multiple attempts to call him back, Settlement Class Counsel have been unable to connect with Barnes.[2] *Id*.

---

[1]    As noted in the Final Approval Motion, no objections were filed to the Attorneys' Fees Motion, which weighs heavily in favor of its approval. See ECF No. 404 at 12.

[2]    There are also irregularities with Barnes' mailing address. Based on Settlement Class Counsel investigation, the address listed on his objection and response, 401 21st St, STE R,

- 1 -
INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

In his response, Barnes affirmatively withdraws his objection regarding the claim form asking for a state of residence. ECF No. 405 at 1.

Barnes reiterates his objections regarding the claim number requirement to make an online claim. *Id*. Barnes fails to offer any argument to show how his proposed email verification protocol is less burdensome than simply calling a toll-free phone number. As stated in the Final Approval Motion, counsel and the Court-approved Claims Administrator implemented the claim number protocol because claim fraud is rampant online, and having potential claimants call a toll-free number to receive a claim number is the most efficient way to protect against it. *See* ECF No. 404 at 21-22. Barnes' suggested email protocol would be vulnerable to exactly the kind of computer bot attacks that are common in class actions today. Adding a human element (the phone call) is the most effective way to prevent automated bot attacks on the claims process.

Barnes also continues to object to the Settlement, including a California Civil Code § 1542 Waiver but raises no new arguments. For all the reasons already stated in the Final Approval Motion, this objection is without merit and should be rejected. *See* ECF No. 404 at 22.

**Direct Purchaser Plaintiff Counsel ("DPP Counsel").** Settlement Class Counsel have not had contact with DPP Counsel since their meet and confer on February 27, 2025. *Id*. at ¶6. After the meet and confer, the parties exchanged emails. Srinivasan Decl. ¶4. On February 28, 2025, Settlement Class Counsel emailed DPP Counsel, requesting they confirm "in which state Mr. Steele was living when he made the purchases you claim grant him standing in the IPP Settlement Class and whether he will attest to the same under penalty of perjury" and to "also confirm the date on which Mr. Steele first contacted you to express concerns about IPPs' settlement" or "[i]f DPP counsel made first contact, please provide that date." *Id.* DPP Counsel never responded. *Id*.

**National Woodlands Preservation, Inc. ("Woodlands").** Woodlands failed to provide a phone number, current address, or email at which to contact it regarding its objection, in violation

---

Sacramento, CA, does not exist. 1401 21st St, STE R, Sacramento, CA, the address Barnes entered for his claim form does exist, but the only entity listed there is California Registered Agent, a process agent.

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

of the Court's Preliminary Approval Order. *See* ECF No. 397 at ¶16 (requiring objectors to include "your full name, current address, email address, and telephone number"). Its objection included no phone number, no email address, and the only mailing address was for a service agent. Despite these failings, Settlement Class Counsel attempted to contact Woodlands by mailing letters via certified mail to two separate service agents. *See* ECF No. 404-1 at ¶7. Woodlands never responded to Settlement Class Counsel's request. Srinivasan Decl. ¶6.

On March 20, 2025, Woodland filed an untimely response to the Final Approval Motion.[3] Because it was filed nearly a week after the deadline for oppositions it need not be considered at all. Should the Court wish to engage with its arguments, Woodlands has the facts wrong on all of them. First, the class and public had free access to the Final Approval Motion on the settlement website, where it and the supporting declarations were posted under the "Case Documents" tab.[4] Second, as stated in the Final Approval Motion, Woodlands is mistaken that the Settlement was ever "consumer only." The class definition, published on the settlement website in the Settlement Agreement and Preliminary Approval Order, and in the Email and Published Notice issued to potential class members expressly makes that clear: "all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023 purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged coconspirator manufactured" may submit claims. *See* ECF Nos. 404 at 19, 390-1, 391-1, 391-3 (emphasis added). Woodlands fails to address the fact that over 60 entities have made claims before any changes to the claim form were implemented.

**Pat Zhen.** Zhen never responded to Settlement Class Counsel's February 24, 2024, email requesting to meet and confer. *See* Srinivasan Decl. ¶8.; ECF No. 404-1 at ¶8.

---

[3]   Local Rule 7-3 requires that any "opposition must be filed and served not more than 14 days after the motion was filed." Woodlands' response was filed 20 days after the Final Approval Motion.

[4]   See https://www.telescopesettlement.com/case-documents.aspx (last visited March 21, 2025).

- 3 -

INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

**Mike Sussman.** Sussman never responded to Settlement Class Counsel's March 11, 2025, email requesting to meet and confer. Srinivasan Decl. ¶9.

Settlement Class Counsel also notes that none of the objectors have complied with the Court's requirement that they include "a statement indicating whether you or your attorney intend to appear at the fairness hearing . . . ." ECF No. 397 at ¶16. Because the majority of objectors have failed to respond to counsel's requests to meet and confer (Sussman, Zhen, and Woodlands), two of them (Barnes and Woodlands) list only service agents as their mailing address and have virtually zero online presence (Srinivasan Decl. ¶¶3,7), and DPP Counsel has failed to answer whether their clients brought their objections to them or vice versa, knowing whether these objectors will appear at the fairness hearing is of heightened importance.

### III.    <u>CONCLUSION</u>

For the reasons stated above and in the Final Approval Motion, the Settlement is fair and adequate, meets all the Ninth Circuits' standards for approval, and none of the objections have merit. The Court should dismiss all the objections and grant final approval.

- 4 -
INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

3-ER-0508

Dated:  March 21, 2025

Respectfully Submitted,

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan (SBN 237460)
Marc M. Seltzer (SBN 54534)
Steven Sklaver (SBN 237612)
Michael Gervais (SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

Thomas K. Boardman (SBN 276313)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, New York 10001
Phone: 212-336-8330
tboardman@susmangodfrey.com

/s/ *Lin Y. Chan*
Lin Y. Chan (SBN 255027)
Eric B. Fastiff (SBN 182260)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
lchan@lchb.com
efastiff@lchb.com
rstoler@lchb.com

- 5 -
INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND
SERVICE AWARDS

**3-ER-0509**

*/s/ Adam J. Zapala*
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
James G. Dallal (SBN 277826)
**COTCHETT, PITRE &**
**McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

*Settlement Class Counsel for the*
*Indirect Purchaser Plaintiffs*

- 6 -
INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF
SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND
SERVICE AWARDS

**3-ER-0510**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION<br><br>THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **Case Nos. 5:20-cv-03639-EJD**<br><br>**DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**<br><br>**Dept.: Courtroom 4**<br>**Judge: Hon. Edward J. Davila**<br>**Date: April 3, 2025**<br>**Time: 9:00 AM** |

DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

**3-ER-0511**

I, Kalpana Srinivasan, declare as follows:

I, Kalpana Srinivasan, am an attorney at Susman Godfrey L.L.P., one of the three firms appointed as Settlement Class Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

I submit this declaration in further support of IPPs' Reply in Support of the Motion for Final Approval of Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Service Awards in the above-captioned matter.

1. Since IPPs filed the Final Approval Motion on February 28, 2025, an additional 4,274 claims were submitted, bringing the total thus far to 81,158.

2. On March 11, 2025, Settlement Class Counsel from Susman Godfrey sent a follow up email to objector Elman Barnes, again requesting a time to discuss his objections by phone or Zoom. On March 12, 2025, Barnes indicated that he had not had time to arrange a phone call and informing Settlement Class Counsel that he had mailed a response to the Court regarding his objection. On March 13, 2025, Mr. Barnes's response was posted to the docket. *See* ECF No. 405. On the same day, Settlement Class Counsel responded to Barnes, telling him they would like to discuss the Response and again asking him to "[p]lease let us know a few times next week when you are available for a phone call or Zoom" and that they were "happy to work around your schedule." On March 14, 2025, Mr. Barnes left a voicemail for Settlement Class Counsel and provided a number at which to call him back. Despite multiple attempts to call him back, Settlement Class Counsel have been unable to connect with Mr. Barnes.

3. A Google search by Settlement Class Counsel for "'Elman Barnes' Sacramento" on March 21, 2025, returned zero results.

4. Settlement Class Counsel have not had contact with Direct Purchaser Plaintiff Counsel ("DPP Counsel") since their meet and confer on February 27, 2025. After the meet and confer, the parties exchanged emails. On February 28, 2025, Settlement Class Counsel emailed

DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

DPP Counsel, requesting they confirm "in which state Mr. Steele was living when he made the purchases you claim grant him standing in the IPP Settlement Class and whether he will attest to the same under penalty of perjury" and to "also confirm the date on which Mr. Steele first contacted you to express concerns about IPPs' settlement" or "[i]f DPP counsel made first contact, please provide that date." To date, DPP Counsel has not responded.

5.    A true and correct copy of the post-meet and confer email exchange with DPP Counsel is attached as Exhibit A.

6.    Objector National Woodlands Preservation, Inc. never responded to the two certified letters requesting to meet and confer that Settlement Class Counsel mailed to the two separate addresses associated with its registered service agents, as described in my original declaration in support of the Final Approval Motion. *See* ECF No. 404-1 at ¶7. A true and correct copy of Settlement Class Counsel's letters are attached as Exhibit B.

7.    A Google search by Settlement Class Counsel on March 21, 2025, for "'National Woodlands Preservation' Luna" returned zero results. A Google search for "National Woodlands Preservation" results in only two links: the Settlement website and what appears to be a spam website titled "b2bhint.com."

8.    Objector Pat Zhen never responded to Settlement Class Counsel's February 24, 2024, email requesting to meet and confer. A true and correct copy of Settlement Class Counsel's email is attached as Exhibit C.

9.    Objector Mike Sussman never responded to Settlement Class Counsel's March 11, 2025, email requesting to meet and confer. A true and correct copy of Settlement Class Counsel's email is attached as Exhibit D.

DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

**3-ER-0513**

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 21st day of March, 2025 in Los Angeles, California.


/s/Kalpana Srinivasan
Kalpana Srinivasan
**SUSMAN GODFREY L.L.P.**

*Settlement Class Counsel for the*
*Indirect Purchaser Plaintiffs*

DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS'
REPLY IN SUPPORT OF THE MOTION FOR FINAL APPROVAL OF SETTLEMENT AND MOTION FOR
AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

**3-ER-0514**

# Exhibit A

3-ER-0515

## Tom Boardman

| | |
|---|---|
| **From:** | Tom Boardman |
| **Sent:** | Friday, February 28, 2025 12:54 PM |
| **To:** | Andrew Levine; Noah Hagey; Matt Borden; Katie Kushnir; Garrett Biedermann |
| **Cc:** | Kalpana Srinivasan; Alejandra Salinas; Steven Sklaver; Marc Seltzer; Michael Gervais; Adam Zapala; Elizabeth Castillo; Christian Ruano; Lin Chan |
| **Subject:** | RE: Telescopes - Conditional Objection to IPPs' Proposed Settlement |

Andrew,

We disagree with your inaccurate characterization of our conversation. IPPs expressly declined to engage in several of the topics you describe below because doing so would reveal confidential settlement discussions with the Defendants. Our express refusal to discuss those topics with you is not confirmation of anything and your assertions of what DPPs do or do not understand is not based on anything conveyed by IPP counsel.

Please confirm in which state Mr. Steele was living when he made the purchases you claim grant him standing in the IPP Settlement Class and whether he will attest to the same under penalty of perjury.

Please also confirm the date on which Mr. Steele first contacted you to express concerns about IPPs' settlement. If DPP counsel made first contact, please provide that date.

Tom

Tom Boardman | Susman Godfrey LLP
O: (212) 729-2069  C: (415) 298-4627

---

**From:** Andrew Levine <levine@braunhagey.com>
**Sent:** Thursday, February 27, 2025 8:52 PM
**To:** Tom Boardman <TBoardman@susmangodfrey.com>; Noah Hagey <hagey@braunhagey.com>; Matt Borden <borden@braunhagey.com>; Katie Kushnir <kushnir@braunhagey.com>; Garrett Biedermann <Biedermann@braunhagey.com>
**Cc:** Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>; Alejandra Salinas <ASalinas@susmangodfrey.com>; Steven Sklaver <ssklaver@SusmanGodfrey.com>; Marc Seltzer <MSeltzer@SusmanGodfrey.com>; Michael Gervais <MGervais@susmangodfrey.com>; Adam Zapala <AZapala@cpmlegal.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>; Christian Ruano <CRuano@cpmlegal.com>; Lin Chan <lchan@lchb.com>
**Subject:** Telescopes - Conditional Objection to IPPs' Proposed Settlement

EXTERNAL Email
Tom –

**3-ER-0516**

To follow up on our call from earlier this afternoon, we understand that IPPs did not seek or obtain any asset discovery from Defendants during settlement discussions, including regarding Defendants' US assets. IPPs also did not request any assurances from Defendants regarding Defendants' ability to pay the settlement amount or whether Defendants have sufficient assets in the US to satisfy both the settlement payment to IPPs and a judgment or settlement in favor of the DPPs.

We also asked whether IPPs would disclose the Confidential Supplemental Agreement or its terms. IPPs refused, but did reveal that the supplemental agreement does address Defendants' assets or provide any assurances concerning Defendants' ability to satisfy the settlement.

Attached is one of the order confirmations for Conditional Objector Jason Steele, which was cited in the Conditional Objection. This document record was produced in discovery at DPP0589956.

We had hoped to address some of the concerns raised in the Conditional Objection through a discussion with IPPs that would provide sufficient assurances that the proposed settlement does compensate the IPP Class at the expense of the DPP Class. As noted in the objection, IPPs would have no claim but for Defendants' overcharge to DPPs. A settlement that compensates one but not the other is not consistent with Rule 23 or the Court's duty to protect the interests of class members.

Regards,
Andrew

Andrew Levine
**B R A U N** H A G E Y **& B O R D E N** LLP
Direct: (415) 599-0207

**San Francisco**
747 Front Street, 4th Floor
San Francisco, CA 94111
Tel. & Fax: (415) 599-0210

**New York**
118 W 22nd Street, 12th Floor
New York, NY 10011
Tel: (646) 829-9403

This message is intended only for the confidential use of the intended recipient(s) and may contain protected information that is subject to attorney-client, work product, joint defense and/or other legal privileges.  If you are not the intended recipient, please contact me immediately at the phone number listed above and permanently delete the original message and any copies thereof from your email system.  Thank you.

2

**3-ER-0517**

# Exhibit B

3-ER-0518

# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP

ONE MANHATTAN WEST

NEW YORK, NEW YORK 10001-8602

(212) 336-8330

FAX (212) 336-8340

WWW.SUSMANGODFREY.COM

_____

| | | |
|---|---|---|
| SUITE 5100 | SUITE 1400 | SUITE 3000 |
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE AMERICAS | 401 UNION STREET |
| HOUSTON, TX 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-2683 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

TOM BOARDMAN

DIRECT DIAL (212) 729-2069

E-MAIL TBOARDMAN@SUSMANGODFREY.COM

February 25, 2025

**<u>VIA CERTIFIED MAIL AND RETURN RECEIPT REQUESTED</u>**

National Woodlands Preservation, Inc.
110 Main St.
Beckley, WV 25801

Re:     Telescopes Antitrust Litigation, No. 20-cv-3639

Dear National Woodlands Preservation:

We are in receipt of your objection to the settlement in *In re Telescopes Antitrust Litigation*, No. 20-cv-3639 (N.D. Cal.). Please contact me at the email or direct line above at your soonest convenience to discuss.

We also write to encourage you to submit a claim. Although entities were always welcome to submit claims using the first or last name fields, the claim forms now include an additional field for "Name of Entity."

Sincerely,



Tom Boardman

Case 5:20-cv-03639-EJD    Document 407-1    Filed 03/21/25    Page 10 of 14

# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
ONE MANHATTAN WEST
NEW YORK, NEW YORK 10001-8602
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 1400 | SUITE 3000 |
|---|---|---|
| 1000 LOUISIANA STREET | 1900 AVENUE OF THE AMERICAS | 401 UNION STREET |
| HOUSTON, TX 77002-5096 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-2683 |
| (713) 651-9366 | (310) 789-3100 | (206) 516-3880 |

TOM BOARDMAN
DIRECT DIAL (212) 729-2069

E-MAIL TBOARDMAN@SUSMANGODFREY.COM

February 25, 2025

## VIA CERTIFIED MAIL AND RETURN RECEIPT REQUESTED

National Woodlands Preservation, Inc.
110 James Street
Hinton, WV 25951

Re:    Telescopes Antitrust Litigation, No. 20-cv-3639

Dear National Woodlands Preservation:

We are in receipt of your objection to the settlement in *In re Telescopes Antitrust Litigation*, No. 20-cv-3639 (N.D. Cal.). Please contact me at the email or direct line above at your soonest convenience to discuss.

We also write to encourage you to submit a claim. Although entities were always welcome to submit claims using the first or last name fields, the claim forms now include an additional field for "Name of Entity."

Sincerely,



Tom Boardman

**3-ER-0520**

# Exhibit C

**Tom Boardman**

| | |
|---|---|
| **From:** | Tom Boardman |
| **Sent:** | Monday, February 24, 2025 11:50 AM |
| **To:** | legal@patzhen.com |
| **Cc:** | Kalpana Srinivasan; Alejandra Salinas; Marc Seltzer; Steven Sklaver; Michael Gervais; Chan, Lin Y.; Adam Zapala; Elizabeth Castillo; Christian Ruano |
| **Subject:** | In re Telescopes Antitrust Litig. - Objection |

Mr. Zhen,

We are in receipt of your objection to the settlement in *In re Telescopes Antitrust Litig*. As counsel for the settlement class, we would like to discuss your objections as soon as possible. Please let us know times you are available to meet by phone/Zoom today (2/24) through this Thursday (2/27).


Best,
Tom Boardman


<u>Tom Boardman</u> | Susman Godfrey LLP
O: (212) 729-2069  C: (415) 298-4627

**3-ER-0522**

Case 5:20-cv-03639-EJD    Document 407-1    Filed 03/21/25    Page 13 of 14

# Exhibit D

**Tom Boardman**

| | |
|---|---|
| **From:** | Tom Boardman |
| **Sent:** | Tuesday, March 11, 2025 11:22 AM |
| **To:** | mike.sussman@pm.me |
| **Cc:** | Kalpana Srinivasan; Alejandra Salinas; Marc Seltzer; Steven Sklaver; Michael Gervais; Adam Zapala; Elizabeth Castillo; Christian Ruano; Chan, Lin Y. |
| **Subject:** | In re Telescopes Antitrust Litig., Case No. 20-cv-03639 - Objection |

Mr. Sussman,

We are in receipt of your objection to the settlement in *In re Telescopes Antitrust Litig*. As counsel for the settlement class, we would like to discuss your objections as soon as possible. Please let us know times this week when you are available to meet by phone/Zoom.

Best,
Tom Boardman

Tom Boardman | Susman Godfrey LLP
O: (212) 729-2069  C: (415) 298-4627

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST

LITIGATION

No. 5:20-cv-03639-EJD

This Document Relates to:

Indirect Purchaser Actions



FILED

MAR 20 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA

## RESPONSE TO MOTION AT ECF ENTRY 404

Objector K. Luna objects to the motion at ECF Entry 404, which

the class received no notice of and the public could only receive via

www.courtlistener.com or PACER.

While it's fantastic that Class Counsel now allow corporate claims

and repaired the claim form, this did not occur until recently with no

notice provided to businesses that they were eligible, and the short time

between the form modification and the claims requires judicial

**3-ER-0525**

intervention. The website has no banner or instructions as to the change from consumer-only eligibility to a business-eligible litigation.

The claims deadline must be extended, the website updated and made more clear, with advertising done so businesses know they can file.

Respec\tfully submitted,


/s/ K. Luna

K. Luna
Chief Executive Officer
National Woodlands Preservation Inc.
110 James Street
Hinton WV  25951

3-ER-0526

840141X482X451XPRI
K Luna
National Woodlands Preservation
110 JAMES ST
Hinton, WV 25951

2***************************SNGLP 480

Clerk of Court
United States District Court
450 Golden Gate Ave
San Francisco, CA 94102

3-ER-0527

Elman Barnes
401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

**FILED**

MAR 1 3 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

Objector

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD
LITIGATION

This Document Relates to:
Indirect Purchaser Actions                    RE:  Entries 404 and 399

## RESPONSE TO MOTION TO APPROVE AND PARTIAL WITHDRAWAL OF OBJECTIONS TO THE SETTLEMENT AND THE ADMINISTRATION THEREOF

Objector Elman Barnes (hereinafter "Objector") respectfully requests that his objection entered onto the docket on February 12, 2025 (399) be modified in part to withdraw item IV **"The Claim Form Improperly Asks for the State of Residence."** The claim form has been modified by adding a field for state of purchase, and Objector believes that the current iteration of the form should not create any confusion among Class Members regarding this point.

Other points of objection remain a concern. Class Counsel has entered a Motion to Approve the settlement on February 28, 2025 (404). In that document Class Counsel argues that Objector's concerns are without merit.

For example, they state that "Verita Diligently Provided Claim Numbers," and refer to Objector's own case in which Objector did in fact complain about not having received a claim number, and was then issued a claim number (a week later). This is true, however it is not an adequate solution to Objector's concerns. The indisputable fact of the matter is that most class members DO NOT HAVE A CLAIM NUMBER. The

**3-ER-0528**

only mention of the possibility of obtaining a claim number was placed on the website after Objector's objections were entered. Now when one clicks the "File a Claim" button there is verbiage at the bottom of the page that says "If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one."

While everyone shares the Settlement Administrator's concern about fraudulent claims, making the claims process more onerous for legitimate Class Members is not an adequate solution because it discourages participation, and it has always been the case that only a very small percentage of eligible Class Members participate in consumer class actions by entering a claim. Fraud concerns aside, the goal should be to increase Class Member participation, not to decrease it. The vast majority of Class Members are not going to call in to get a Claim Number.

Both my objection with regards to ease of participation by Class Members as well as the Settlement Administrator's concerns with regards to fraud could easily be remedied by simply placing a button on the website that says "Class Members click here to receive your Claim Number in order to participate" and then providing a simple form with an automated email verification process to ensure that the request is being made by a real person and not by a robot, and when this process is completed successfully the claim number is emailed to the verified email address. This would eliminate fraudulent participation by bots, would eliminate the hurdle of making Class Members call the Settlement Administrator, and since it is automated would also result in potentially lower administration costs since it would reduce the need for physical staff to actually attend phone calls by the Class.

With regards to the matter of the § 1542 Waiver, Class Counsel cites In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig., No. 10-md-02151, 2013 WL 12327929, at *23 (C.D. Cal. July 24, 2013), as follows: "Class settlements often waive this protection, and such waivers are not generally viewed as an impediment to class settlement. . . . [T]he Court is dubious as to whether the class claims

could be settled absent such a waiver."

With due respect to this Court and to the Court in In re Toyota Motor Corp. Unintended Acceleration…, whether or not settlements could be reached without a § 1542 waiver should not be a factor in whether or not such waivers are routinely allowed. Rather, the intent of the California legislature in its construction of the law, and the constitutionality of that law should be the factors taken into consideration by the Court. Legislated legal protections should not be and arguably cannot legally be willy nilly waived by the courts merely for expediency's sake and the convenience of facilitating settlements.

Respectfully submitted,

Elman Barnes

3-ER-0530



Elman Barnes
401 21st Street
Suite R
Sacramento CA 95811

Clerk Of Court
United States District Court
280 1st Street
Room 2112
San Jose CA 95113

SANTA CLARITA CA   913

11 MAR 2025 PM 3  L

RECEIVED

MAR 13 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

MAILED

MAR 10 2025

95113-300837

3-ER-0531