Nos. 25-3098

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

IN RE: TELESCOPES
ANTITRUST LITIGATION

ZHEN, et al.,
*Objectors-Appellants*,

v.

INDIRECT PURCHASER PLAINTIFFS,
*Plaintiffs-Appellees,*

v.

SYNTA TECHNOLOGY CORP., ET AL.,
*Defendants-Appellees*.

Appeal from the United States District Court
for the Northern District of California, San Jose Division
Hon. Edward J. Davila
D.C. No. 5:20-cv-03639–EJD

## EXCERPTS OF RECORD
## VOLUME 4 OF 7

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE &
McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

*Settlement Class Counsel for Indirect Purchaser Plaintiffs-Appellees*

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY LLP**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION<br><br><br>THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **Case Nos. 5:20-cv-03639-EJD**<br><br>**INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>**Dept.: Courtroom 4**<br>**Judge: Hon. Edward J. Davila**<br>**Date: April 3, 2025**<br>**Time: 9:00 AM** |

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0534**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that the Honorable Edward J. Davila will hear this Motion at the United States District Court of the Northern District of California, located in Courtroom 4, 280 South 1st Street, San Jose, California on April 3, 2025 at 9:00 AM. Indirect Purchaser Plaintiffs ("IPPs") move the Court, pursuant to Federal Rule of Civil Procedure 23 and in accordance with the Northern District's Procedural Guidance for Class Action Settlements, for an order: (1) granting final approval of the proposed class action settlements with Defendants[1] under Rule 23(e)(2); (2) confirming certification of the settlement class, appointment the proposed Class Representatives[2] as representatives for the settlement class, and appointment Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey LLP as class counsel for the settlement class; (3) dismissing with prejudice IPPs' claims against the Settling Defendants; and (4) granting final approval of IPPs' plan of allocation of the Settlement ("Plan of Allocation") among confirmed settlement class members ("Class Members").

---

[1] Synta Technology Corp. of Taiwan, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corporation, Celestron Acquisition, LLC, Olivon USA, LLC, Dar Tson ("David") Shen, Joseph Lupica, and Dave Anderson (collectively, "Defendants").

[2] Madeline Bekielewski, Thomas Berta, Carey Briggs, Vincent Catanzaro, David Dick, Austin Griffith, Donnie Houston, Bentaro Huset, Greg Kendall, David Kerber, Deborah Lemar, Doug Lundy, John Maurice, Timothy McQuaid, Philip Moore, Brian Murphy, Herbert Nelson, Scott Plummer, Michael Price, David Quaglietta, Greg Ross, Ronald Troillett, Robert Welsh, Tony DiMambro, Jason Glydewell, Leon Greenberg, Michael Liskow, Sigurd Murphy, Jim Riley, Keith Uehara, Steven Zellers, Sarah Day Brewer, Thien Ngo, Jesse Smith, and Arthur Sines (the "Named Representatives"). Richard Bekielewski was an original Class Representative, but he passed away during the pendency of the litigation.  His wife, Madeline Bekielewski, has taken over his estate and claims.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

This motion is based on this Notice of Motion and Motion for Final Approval of Settlement; the following Memorandum of Points and Authorities; the Declaration of Kalpana Srinivasan ("Srinivasan Decl."); the Declaration of Angelique Dizon ("Verita Decl."); the pleadings, briefs, declarations, and orders on file in this action; and such other matters as the Court may consider.

## **STATEMENT OF ISSUES TO BE DECIDED**

1.    Whether the Settlement is fair, reasonable, and adequate and should be approved under Rule 23(e);

2.    Whether the Settlement Class should be affirmed as certifiable for settlement purposes under Rules 23(a) and 23(b)(3);

3.    Whether the appointment of Cotchett, Pitre & McCarthy, LLP, Lieff Cabraser Heimann & Bernstein, LLP, and Susman Godfrey, LLP as Settlement Class Counsel should be affirmed;

4.    Whether the appointment of the Named Representatives as Settlement Class Representatives should be affirmed; and

5.    Whether the Plan of Allocation should be approved.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0536**

**TABLE OF CONTENTS**

I.    INTRODUCTION ................................................................................................ 1

II.   STATEMENT OF FACTS .................................................................................. 1

III.  THE SETTLEMENT AGREEMENT................................................................. 2

IV.   CLASS NOTICE AND CAFA NOTICE............................................................ 3

V.    ARGUMENT ...................................................................................................... 5

    A.    The Court Should Certify the Class for Settlement Purposes ............................... 5

        a.    The Settlement Class Satisfies the Requirements of Rule 23(a)................ 6

        b.    Rule 23(b)(3) Predominance and Superiority Are Satisfied ...................... 7

        c.    The Court Should Confirm Settlement Class Counsel and Representatives ......................................................................................... 8

    B.    The Settlement is Fair, Reasonable, and Adequate................................................ 8

        a.    The Class Was Adequately Represented..................................................... 9

        b.    The Settlement Agreement Is a Fair and Adequate Result for the Class   10

            1)    The Costs, Risks, and Delays of Further Litigation..................... 10

            2)    Distribution ................................................................................. 11

            3)    Attorneys' Fees ........................................................................... 12

            4)    Other Agreements ........................................................................ 12

        c.    The Plan of Allocation Treats Class Members Equitably.......................... 13

        d.    Class Members' Positive Reaction to the Settlement Further Supports Approval. ................................................................................ 13

    C.    The Objections Are Procedurally Improper, Meritless, or Both........................... 14

        a.    Direct Purchaser "Conditional Objectors"............................................... 15

        b.    National Woodlands Preservation, Inc. ("Woodlands") ........................... 18

        c.    Elman Barnes ............................................................................................ 19

            1)    The Claims Process Treats All Potential Class Members Fairly ......................................................................................... 20

**4-ER-0537**

2)    Verita Diligently Provided Claim Numbers ................................. 21

i)    The Claim Number Protocol Protects Against
Fraud and Was Recommended by the Claims
Administrator ....................................................................... 21

3)    Courts Routinely Approve Settlements with § 1542
Waivers ................................................................................ 22

4)    Barnes' State of Residence Objections Are Misplaced
and Mooted .......................................................................... 22

d.    Pat Zhen ............................................................................................. 23

e.    Mike Sussman ..................................................................................... 24

D.    Reversions and *Cy Pres* ...................................................................... 25

VI.    CONCLUSION ..................................................................................................... 25

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

4-ER-0538

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Acosta v. Trans Union, LLC*,
243 F.R.D. 377 (C.D. Cal. 2007) ........................................................................................ 18

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) ................................................................................................... 5, 7, 8

*Bostick v. Herbalife Int'l of Am., Inc.*,
No. 13-cv-2488, 2015 WL 12731932 (C.D. Cal. May 14, 2015) ......................................... 13

*Briseno v. ConAgra Foods, Inc.*,
844 F.3d 1121 (9th Cir. 2017)............................................................................................. 3

*Briseno v. Henderson*,
998 F.3d 1014 (9th Cir. 2021)............................................................................................. 9

*Churchill Vill., L.L.C. v. Gen. Elec.*,
361 F.3d 566 (9th Cir. 2004)............................................................................................... 3

*Cmty. Res. for Indep. Living v. Mobility Works of California*,
LLC, 533 F. Supp. 3d 881 (N.D. Cal. 2020)........................................................................ 14

*Estorga v. Santa Clara Valley Transp. Auth.*,
No. 16-cv-02668, 2020 WL 7319356 (N.D. Cal. Dec. 11, 2020)......................................... 23

*Ferrington v. McAfee, Inc.*,
No. 10–cv–01455, 2012 WL 1156399 (N.D. Cal. 2012)...................................................... 17

*Fleming v. Impax Lab'ys Inc.*,
No. 16-CV-06557, 2021 WL 5447008 (N.D. Cal. Nov. 22, 2021) ....................................... 11

*Harbour v. Cal. Health & Wellness Plan*,
No. 21-cv-03322, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024).............................................. 5

*In re 3DS Sys. Secs. Litig.*,
No. 21-cv-1920, 2023 U.S. Dist. LEXIS 98683 (E.D.N.Y. June 5, 2023) ............................ 12

*In re Anthem, Inc. Data Breach Litig.*,
327 F.R.D. ....................................................................................................................... 21

*In re Apple Inc. Device Performance Litig.*,
50 F.4th 769 (9th Cir. 2022)............................................................................................... 3

*In re Apple Inc. Device Performance Litig.*,
No. 18-md-02827, 2021 WL 1022867 (N.D. Cal., 2021)..................................................... 17

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0539**

*In re Apple Inc. Smartphone Antitrust Litig.*,
  No. 24-md-03113, 2024 WL 4512016 (D.N.J. Oct. 17, 2024) ................................................ 18

*In re Auto. Refinishing Paint Antitrust Litig.*,
  617 F. Supp. 2d 336 (E.D. Pa. 2007) ...................................................................................... 11

*In re Bluetooth Headset Prods. Liab. Litig.*,
  654 F.3d 935 (9th Cir. 2011).................................................................................................. 10

*In re: Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 07-cv-5944, 2016 WL 721680 (N.D. Cal. Jan. 28, 2016)................................................ 20

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
  No. 14-cv-2058, 2017 WL 2481782 (N.D. Cal. June 8, 2017)............................................... 13

*In re First Capital Holdings Corp. Fin. Prods. Sec. Litig. (In re First Capital)*,
  33 F.3d 29 (9th Cir. 1994)................................................................................................. 5, 16

*In re Google Location Hist. Litig.*,
  No. 18-cv-05062, 2024 WL 1975462 (N.D. Cal. May 3, 2024).............................................. 25

*In re Google Plus Profile Litig.*,
  No. 18-cv-06164, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021).............................................. 20

*In re Heritage Bond Litig.*,
  No. 02-md-1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005)............................................ 12

*In re Hydroxycut Mktg. and Sales Practices Litig.*,
  No. 09-cv-1088, 2013 WL 5275618 (S.D. Cal. Sep. 17, 2013).............................................. 16

*In re Hyundai & Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019)............................................................................................... 5, 9

*In re LinkedIn ERISA Litig.*,
  No. 20-cv-05704, 2023 WL 8631678 (N.D. Cal. Dec. 13, 2023)........................................... 12

*In re Linkedin User Privacy Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ........................................................................................... 14

*In re Lithium Ion Batteries Antitrust Litig.*,
  No. 13-md-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd,* No. 21-
  15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022)................................................. 7, 13, 23

*In re Loestrin 24 FE Antitrust Litig.*,
  410 F. Supp. 3d 352 (D.R.I. 2019)......................................................................................... 24

*In re MacBook Keyboard Litig.*,
  No. 18-cv-02813, 2023 WL 3688452 (N.D. Cal. May 25, 2023).................................... 10, 11

*In re Magsafe Apple Power Adapter Litig.*,
  No. 5:09–cv–01911, 2015 WL 428105 (N.D. Cal. Jan. 30, 2015) ........................................ 20

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

*In re MyFord Touch Consumer Litig.*,
No. 13-cv-03072, 2019 WL 1411510 (N.D. Cal. Mar. 28, 2019)........................................... 10

*In re Nexus 6P Prod. Liab. Litig.*,
No. 17-cv-02185, 2019 WL 6622842 (N.D. Cal. Nov. 12, 2019) ......................................... 14

*In re Online DVD-Rental Antitrust Litig.*,
779 F.3d 934 (9th Cir. 2015)...................................................................................... 1, 20

*In re Rubber Chems. Antitrust Litig.*,
232 F.R.D. 346 (N.D. Cal. 2005) .................................................................................. 6, 7

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008)........................................................................................ 9

*In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods.
Liab. Litig.*,
No. 10-md-02151, 2013 WL 12327929 (C.D. Cal. July 24, 2013) ...................................... 22

*In re TracFone Unlimited Serv. Plan Litig.*,
112 F. Supp. 3d 993 (N.D. Cal. 2015) ........................................................................... 16

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
229 F. Supp. 3d 1052 (N.D. Cal. 2017), *enforcement granted*, 2017 WL
914066 (N.D. Cal. Mar. 6, 2017) .................................................................................. 15

*In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
No. 2672, 2017 WL 672727 (N.D. Cal. Feb. 16, 2017)........................................................ 3

*Linney v. Cellular Alaska P'ship*,
151 F.3d 1234 (9th Cir. 1998)........................................................................................ 9

*Meijer, Inc. v. Abbott Lab'ys*,
No. 07-cv-5985, 2011 WL 13392313 (N.D. Cal. Aug. 11, 2011) ........................................ 12

*Miller v. Wellpoint Companies, Inc.*,
No. 09-cv-5666, 2010 WL 11520703 (C.D. Cal. May 17, 2010) ......................................... 22

*Mirfashi v. Fleet Mortg. Corp.*,
356 F.3d 781 (7th Cir. 2004)........................................................................................ 17

*Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*,
No. 5:16-cv-06370 (N.D. Cal.) ..................................................................................... 10

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*,
442 F.3d 741 (9th Cir. 2006)........................................................................................ 22

*San Francisco NAACP v. San Francisco Unified Sch. Dist.*,
59 F. Supp. 2d 1021 (N.D. Cal. 1999) ...................................................................... 15, 24

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0541**

*Schneider v. Chipotle Mexican Grill, Inc.*,
  336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................................... 13

*Staley v. Gilead Scis., Inc.*,
  446 F. Supp. 3d 578 (N.D. Cal. 2020) ............................................................................... 24

*Steel Co. v. Citizens for a Better Environment*,
  523 U.S. 83 (1998) ............................................................................................................. 16

*Sweet v. Cardona*,
  121 F.4th 32 (9th Cir. 2024) .............................................................................................. 15

*Theodore Broomfield v. Craft Brew Alliance, Inc.*,
  No. 17-cv-01027, 2020 WL 1972505 (N.D. Cal. Feb. 5, 2020) ........................................ 13

*True v. Am. Honda Motor Co.*,
  749 F. Supp. 2d 1052 (C.D. Cal. 2010) ....................................................................... 17, 18

*Vataj v. Johnson*,
  No. 19-cv-06996, 2021 U.S. Dist. LEXIS 75879 (N.D. Cal. Apr. 20, 2021) ........................ 12

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) ................................................................................................. 11

*Wolin v. Jaguar Land Rover N. Am., LLC*,
  617 F.3d 1168 (9th Cir. 2010) ............................................................................................. 8

**Statutes**

California Civil Code § 1542 ....................................................................................... 19, 22, 23

**Rules**

Fed. R. Civ. P. 23 .................................................................................................... 1, 3, 5, 6

Fed. R. Civ. P. 23(a) ...................................................................................................... 6, 7, 8

Fed. R. Civ. P. 23(b) ......................................................................................................... 7, 8

Fed. R. Civ. P. 23(e) ......................................................................................................... 9, 10

**Other Authorities**

https://www.telescopesettlement.com/frequently-asked-questions.aspx ..................................... 25

https://www.thesciencehaven.org/stellardreams .................................................................. 25

*Newberg on Class Actions § 20:23 (5th ed.)* ...................................................................... 6

www.telescopesettlement.com ............................................................................................. 4

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0542**

## I.    INTRODUCTION

Indirect Purchaser Plaintiffs ("IPPs") respectfully move the Court for final approval of the Settlement, which will end IPPs' litigation and put money directly into the pockets of tens of thousands of consumers harmed by Defendants' anticompetitive conduct. The settlement amount—$32 million—falls within the range of *full damages* as estimated by IPPs' damages expert.  The Court should approve the Settlement because it provides meaningful relief for the Class, satisfies all of Rule 23's standards for certification, and is "fair, reasonable and adequate." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 945 (9th Cir. 2015). The class members' overwhelmingly positive response to the settlement, notice plan, and claims process further supports approval of the Settlement. The handful of objections are all without merit. Several entirely lack standing to object and one is from counsel from the Direct Purchaser Plaintiffs ("DPPs") improperly seeking to use IPPs' Settlement to gain leverage during a pending dispute in their wholly separate litigation.

IPPs respectfully request that this Court: (1) grant final approval of the Settlement; (2) confirm certification of the Settlement Class; (3) confirm Class Representatives as representatives for the certified Settlement Class; (4) confirm Settlement Class Counsel as counsel for the certified Settlement Class; (5) dismiss with prejudice all claims against the Settling Defendants[3]; and (6) approve the proposed Plan of Allocation.

## II.    STATEMENT OF FACTS

As per the district's Procedural Guidance for Class Action Settlements and the Court's general familiarity with the factual details and procedural history of the case as detailed in IPPs' Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards ("Attorneys' Fees Motion," ECF No. 398), the accompanying Joint Declaration (ECF No. 398-1), and the briefs and declarations previously filed Motion for Preliminary Approval and accompanying declaration (ECF Nos. 389 & 390), IPPs incorporate those facts by reference.

---

[3] Another Defendant—Ningbo Sunny Electronic Co. Ltd., a China-based Defendant—has not appeared in this action.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

Since the Court granted preliminary approval, Verita implemented the Court-ordered notice plan. Verita has received 76,884 claims after thoroughly vetting all claims for fraud and misuse. *Id.*

The Court-ordered deadline to opt-out or object passed on February 13, 2025, but the claims deadline does not run until May 20, 2025. The claims submitted thus far represent 2% of the estimated 4 million potential class members. Verita Decl. ¶19. The twelve opt-outs and five objections represent a *de minimis* portion of the class,[4] less than a fraction of one percent. *Id.*

## III.    THE SETTLEMENT AGREEMENT

The Settlement Agreement grants a release on behalf of a class of indirect purchasers of telescopes manufactured by Defendants, defined as follows:

> All persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

ECF No. 390-1, ¶1(e). The Indirect Purchaser States are defined as:

> Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

*Id*. ¶1(q). The Settlement Class definition is coterminous with Class IPPs' seek to certify in conjunction with this motion.

The Settlement Agreement provides that upon final approval and entry of judgment, class members will release their claims against the Settling Defendants. *Id.* In return for the release and other terms in the Settlement Agreement, the Settling Defendants agree to pay $32 million.

---

[4] As detailed further *infra*, a number of these objections are demonstrably ***not*** from class members.

2

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

## IV.    CLASS NOTICE AND CAFA NOTICE

Pursuant to the Court's preliminary approval order, the approved claims administrator, Verita, implemented the proposed notice plan, which "provide[d] a summary of the Settlement and clearly explain[ed] how Class Members may object to or opt out of the Settlement, as well as how Class Members may address the Court at the final approval hearing." *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 2672, 2017 WL 672727, at *20 (N.D. Cal. Feb. 16, 2017); *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard."). The notice plan was "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Apple Inc. Device Performance Litig.*, 50 F.4th 769, 779 (9th Cir. 2022); *see also Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017) ("neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member").

On December 13, 2024, Verita began the Court-approved notice plan. First, it caused the postcard notice to be printed and mailed to the 84,661 names and mailing addresses it had on file. Verita Decl. ¶6. After mailing the Postcard Notices to the Class Members, as of the date of this declaration, Verita received 8,439 Postcard Notices returned by the USPS with undeliverable addresses. *Id.* ¶7. Through credit bureau and/or other public source databases, Verita performed address searches for these undeliverable Postcard Notices and found updated addresses for 3,326 potential Class Members. *Id.* Verita promptly re-mailed Postcard Notices to the new-found addresses. *Id.* Verita successfully mailed 76,222 of the 84,661 Postcard Notices to possible Class Members. *Id.* ¶8.

On December 13, 2024, Verita also e-mailed the Notice to the 55,675 names where a valid e-mail address was available. *Id.* ¶9. Verita successfully delivered the E-mail Notice to 47,026 Class Members. *Id.*  In addition, Amazon facilitated direct notice to its customers that purchased class Telescopes using Amazon's own messaging service, issuing over 50,000 direct email notices.

3
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

4-ER-0545

Second, Verita implemented an extensive and effective publication notice program to supplement direct notice. Verita Decl. ¶¶10-13. Verita distributed a press release via PR Newswire's US1 National Newsline on December 13, 2024, which included syndicated distribution via AP News. Verita Decl. ¶10. Verita also purchased a sponsored post to be published on December 13, 2024, via Sky & Telescope Facebook, a banner ad to appear in December 13, 2024 Sky & Telescope weekly newsletter, and 100,000 impressions to be distributed on Sky & Telescope Website (skyandtelescope.org). *Id.* Verita caused a total of 190,048 impressions to be delivered, resulting in an additional 90,048 impressions at no extra charge. *Id.*

In addition, Verita purchased 23,850,000 impressions to be distributed programmatically via various websites and mobile apps, as well as on Facebook, Instagram, Reddit and Google Search, from December 13, 2024, through February 10, 2025. *Id.* ¶11. The impressions targeted adults 18 years of age or older who have likely purchased telescopes, demonstrated an online interest in Celestron, telescopes, astronomy, stargazing, sky/star maps, astrophotography, astroimaging, telescope accessories, astronomical accessories, and/or used stargazing apps and sky guides, where available. *Id.* Verita caused 25,534,471 impressions to be delivered, resulting in an additional 1,684,471 impressions at no extra charge. *Id.*

Third, Plaintiffs launched a case-specific settlement website. *Id.* ¶14. On December 11, 2024, Verita established a website (www.telescopesettlement.com) dedicated to this proposed settlement to provide information to Class Members and to answer frequently asked questions. *Id.* The Postcard Notice, Email Notice, Long-Form Notice, and Claim Form set forth the website URL. *Id.* Visitors to the website can download copies of the Long-Form Notice, Claim Form, Settlement Agreement and other case-related documents. *Id.* Visitors can also submit claims online and/or download a copy of the claim form. *Id.* As of February 21, 2025, the website received 2,182,469 visits. *Id.*

Fourth, Verita also supported a dedicated toll-free phone number, which appeared in the notice documents and ads. *Id.* ¶15. The number provides an interactive voice response system that presents callers with a series of choices to hear pre-recorded information about the Settlements. *Id.* If callers need further help, they can speak with a live operator during business hours. *Id.*

Representatives from Verita and Settlement Counsel continue to respond to inquiries via phone and email from potential Class Members and help them file claims.

The toll-free telephone number (1-833-419-3506) and an email address (admin@telescopesettlement.com) for potential Class Members to contact the Settlement Administrator to obtain information about the Settlement, and/or request a Long Form Notice and Claim Form. Verita Decl. ¶15. The telephone hotline became operational on December 11, 2024, and is accessible 24 hours a day, 7 days a week. *Id.* On February 19, 2025, Verita also established an additional telephone hotline (1-866-568-7713) for potential class members to contact the Settlement Administrator to request a claim number in the event that they want to file a claim online and need to have a claim number generated. *Id.* ¶16.

The notice experts at Verita calculate that the proposed notice plan reached over 80% of the possible 4 million class members. *Id.* ¶13.

The appropriate state and federal officials were provided notice of this Settlement as required under CAFA.

**V.    ARGUMENT**

In assessing a motion for final approval of a class action settlement, courts utilize a three-step approach to determine whether approval should be granted. *See Harbour v. Cal. Health & Wellness Plan*, No. 21-cv-03322, 2024 WL 171192, at *3 (N.D. Cal. Jan. 16, 2024) ("A court may approve a proposed class action settlement of a certified class only 'after a hearing and on finding that it is fair, reasonable, and adequate,' and that it meets the requirements for class certification."). *First*, the Court analyzes if the settlement class merits certification under Rule 23. *Second*, the Court assess whether the settlement is fair, reasonable, and adequate under the prevailing case law. *Third*, and finally, the Court determines if the notice provided was adequate.

**A.    The Court Should Certify the Class for Settlement Purposes**

To be granted final approval, a settlement must meet Rule 23's numerosity, commonality, typicality, adequacy, predominance and superiority requirements. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997); *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). In its Preliminary Approval Order, the Court already determined that, for

5

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0547**

settlement purposes only, the "Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority" when granting preliminary approval. ECF No. 397 at 2. Nothing in the interim occurred that should change the Court's previous determination. Indeed, none of the objections regarding the settlement address issues with settlement class certification.

### a. The Settlement Class Satisfies the Requirements of Rule 23(a)

**Numerosity:** The first requirement for certification is met because the settlement class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). IPPs seek to certify a class of millions of class members, such that joinder of all members would be inefficient and impractical. *See* Srinivasan Decl. ¶1.

**Commonality:** The second prerequisite for certifying a class is that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Here, IPPs allege that Defendants engaged in a conspiracy to fix, raise, maintain and/or stabilize the price of telescopes. In horizontal price-fixing antitrust cases, such as this one, common questions of law and fact, and their predominance, are presumed because the core issue in such a case is whether or not there was a conspiracy amongst conspirators to fix, raise, maintain, and/or stabilize prices and whether such price-fixing occurred. *Newberg on Class Actions § 20:23 (5th ed.)*. "Because the gravamen of a price-fixing claim is that the price in a given market is artificially high, there is a presumption that an illegal price-fixing scheme impacts upon all purchasers of a price-fixed product in a conspiratorially affected market." *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 352 (N.D. Cal. 2005) (internal quotation marks and citation omitted).

**Typicality:** The Class Representatives' claims that Defendants illegally fixed, raised, maintained, and/or stabilized the prices and allocated the market for consumer telescopes, which resulted in artificially inflated market-wide prices charged by Defendants and paid by indirect purchasers are typical of the members of the class. Therefore, the typicality prerequisite of Rule 23(a) is met. *See* Fed. R. Civ. P. 23(a)(3) (Courts should consider whether "the claims or defenses of the representative parties are typical of the claims or defenses of the class.").

**4-ER-0548**

**Adequacy:** The interests of the Class Representatives and Settlement Counsel are perfectly aligned with the interests of the absent class members. *See* Fed. R. Civ. P. 23(a)(4) (A proposed class should be certified if "the representative parties will fairly and adequately protect the interest of the class."). The Class Representatives suffered the same injury as the absent class members in that they paid artificially inflated prices for telescopes manufactured by Defendants. Settlement Counsel shares that interest in that it sought to prove that Defendants engaged in alleged conduct. The Attorneys' Fee Motion and accompanying Joint Declaration details the vigor with which the Class Representatives and Settlement Counsel have litigated this case.

**b.      Rule 23(b)(3) Predominance and Superiority Are Satisfied**

IPPs seek certification under Rule 23(b)(3), which requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

**Predominance:** In horizontal price-fixing cases, questions as to the existence of the alleged conspiracy and as to the occurrence of price-fixing are readily found to predominate. *See Rubber Chems.*, 232 F.R.D. at 352; *see also Amchem*, 521 U.S. at 625 ("Predominance is a test readily met in certain cases alleging consumer or securities fraud or violations of the antitrust laws."). IPPs' claims depend principally on whether Defendants participated in an anticompetitive conspiracy, and whether that conspiracy caused an artificial increase to the market price of telescopes. Thus, if IPPs were to prove these elements, based on common evidence, a jury could reasonably find that class members suffered injury as a result. *See In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2020 WL 7264559, at *9 (N.D. Cal. Dec. 10, 2020), *aff'd,* No. 21-15120, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (granting final approval; "[i]n horizontal price-fixing cases, questions as to the existence of the alleged conspiracy and as to the occurrence of price-fixing are readily found to predominate."). Rule 23(b)(3) does not require all elements of a claim to be susceptible to class-wide proof; rather, it only requires that common questions "predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3) (emphasis added).

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**Superiority:** Class treatment is superior to other methods for the resolution of this case, including from a judicial efficiency perspective and given the relatively small amounts of alleged damages for each individual consumer. Indeed, litigating every class member's claims separately would result in a waste of judicial and party resources, given that the vast majority of evidence of liability would be identical. Rule 23(b)(3)'s superiority inquiry calls for a comparative analysis of whether a class action is "superior to other available methods for the fair and efficient adjudication of the controversy." *Amchem Prods*., 521 U.S. at 615; *see also Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) ("[T]he purpose of the superiority requirement is to assure that the class action is the most efficient and effective means of resolving the controversy."). Moreover, Settlement Class Members were free to exclude themselves if they wished to do so, as only twelve did.

**c.**    **The Court Should Confirm Settlement Class Counsel and Representatives**

For the reasons set forth in the Court's orders appointing Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey L.L.P. as counsel for the IPP class, the Court should confirm and appoint IPP Settlement Class Counsel. ECF Nos. 95 & 397; *see* Rule 23(a)(4).

For the reasons set forth in the Court's previous orders, the Court should also confirm its appointment of Madeline Bekielewski, Thomas Berta, Carey Briggs, Vincent Catanzaro, David Dick, Austin Griffith, Donnie Houston, Bentaro Huset, Greg Kendall, David Kerber, Deborah Lemar, Doug Lundy, John Maurice, Timothy McQuaid, Philip Moore, Brian Murphy, Herbert Nelson, Scott Plummer, Michael Price, David Quaglietta, Greg Ross, Ronald Troillett, Robert Welsh, Tony DiMambro, Jason Glydewell, Leon Greenberg, Michael Liskow, Sigurd Murphy, Jim Riley, Keith Uehara, Steven Zellers, Sarah Day Brewer, Thien Ngo, Jesse Smith, and Arthur Sines ("Plaintiffs") as Settlement Class Representatives ("Class Representatives"). *Id*.

**B.**    **The Settlement is Fair, Reasonable, and Adequate**

The Ninth Circuit adopts a "strong judicial policy that favors settlements" in class actions, because they "promote the amicable resolution of disputes and lighten the increasing load of

8

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0550**

litigation faced by the federal courts." *In re Hyundai & Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019). This policy operates with greater force where, as here, "complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008).

To assess the fairness of a class action settlement, Rule 23(e)(2) directs courts to evaluate whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>> (i) the costs, risks, and delay of trial and appeal;
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>> (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (holding that the Ninth Circuit's eight-factors "fall within the ambit of the revised Rule 23(e).").

### a.    The Class Was Adequately Represented

Under Rule 23(e)(2), courts determine whether the class was adequately represented by analyzing whether the settlement was negotiated at arm's length. To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

After years of litigation and extensive discovery, counsel for IPPs and Defendants convened multiple times over several months to arrive at settlement terms. Srinivasan Decl. ¶2. This included two full-day mediations with respected mediator, the Honorable Suzanne Segal, a former Magistrate Judge of the Central District of California. *Id.* The parties agreed to settle only after both sides accepted Judge Segal's mediator's proposal following protracted negotiations. *Id.*

Moreover, the Settlement Agreement bears no signs of collusion among the parties. The Ninth Circuit has identified three indicators of potential collusion in the settlement negotiation process: (i) when class counsel receives a disproportionate distribution of the settlement proceeds;

9

(ii) when the parties negotiate a "clear sailing" arrangement providing for the independent payment of attorney's fees; and (iii) when the parties arrange for a reversion of unused funds to defendants. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–48 (9th Cir. 2011). Here, none of those hallmarks of collusion are present.

Indeed, Judge Segal's extensive involvement and oversight weighs heavily in favor of finding fairness and that there was no collusion between the parties. *See Bluetooth*, 654 F.3d at 948 (participation of mediator not dispositive but is "a factor weighing in favor of a finding of non-collusiveness."); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) ("[T]he Settlement Agreement is based on Judge Kim's Mediator's Proposal. Thus, the settlement proposal is the product of arm's-length bargaining.").

> **b.      The Settlement Agreement Is a Fair and Adequate Result for the Class**

The relief provided to the class is far more than "adequate," considering (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C).

> **1)      The Costs, Risks, and Delays of Further Litigation**

The Settlement Agreement provides substantial monetary relief—a $32 million non-reversionary fund. That amount represents an excellent result given the potential recovery and the substantial risks and delay of ongoing litigation in this case, along with potential collection and ability to pay problems with foreign defendants, as evidenced in the *Orion* litigation. *See docket generally, Optronic Techs., Inc. v. Ningbo Sunny Electronic Co., Ltd. et al.*, No. 5:16-cv-06370 (N.D. Cal.). The parties reached this settlement while Defendants' renewed motion to dismiss was still pending and IPPs were preparing to serve expert reports. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, No. 18-cv-02813, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023).

The IPPs' damages expert calculated that class damages in the range of $29 million to $165 million. Srinivasan Decl. ¶2. The $32 million settlement fund lies within the IPPs' expert's damages

10
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0552**

estimate and represents between approximately 19% to 110% of the preliminary total estimate of damages at trial. *Id.* Thus, this recovery is consistent with recoveries in this District. *See MacBook Keyboard*, 2023 WL 3688452, at *9 (finding settlement amount satisfactory because it represented "approximately 9% to 28% of the total estimated damages *at trial*"); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions").

Given the procedural posture of the litigation, many significant risks remain should the Settlement not be approved that would result in no or significantly less relief for the class, including: no class is certified or the class is certified for a shorter temporal duration; Defendants become insolvent; IPPs fail to withstand a motion for total or partial summary judgment; and IPPs fail to persuade a jury that Defendants engaged in the alleged conduct and that IPPs suffered damages as a result, among myriad other risks. Even if IPPs were successful at each stage of the litigation, relief for the class could then be delayed for years by appeals and potentially overturned. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

This Settlement reflects a fair result considering the potential trial recovery, the numerous dispositive risks, the costs of continuing litigation, and the delay in payment to the class. Here, further litigation poses particular risks and challenges given the complex and international nature of IPPs' claims. Courts recognize that such antitrust cases are riskier because they are "arguably the most complex action to prosecute." *In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007).

2)   <u>Distribution</u>

Subject to the Court's approval, IPPs intend to distribute the proceeds of the settlement fund on a *pro rata* basis to class members from the enumerated Indirect Purchaser Sates with valid claims, which are subject to vetting by Verita for misuse and fraud. During the claims process, claimants elected whether to receive their portion of the settlement via electronic transfer (e.g.,

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

Venmo, PayPal, etc.) or physical check. Funds will be paid after calculating class members' *pro rata* share of the settlement fund based on the aggregate valid claims submitted.

### 3) Attorneys' Fees

As detailed in IPPs' Attorneys' Fees Motion, Settlement Counsel requested a total award of $10,666,667 in attorneys' fees, plus interest, representing a third of the total recovery. ECF No. 398. As per the Court's order, IPPs filed the Attorneys' Fees Motion 35 days in advance of the objection deadline and Verita immediately posted on the settlement website for class members to review. Of the millions of potential Class Members who received notice, **none** objected to the Attorneys' Fees Motion. Srinivasan Decl. ¶4. The absence of objections by Class Members weighs greatly in favor of the reasonableness of the request. *See, e.g.*, *In re LinkedIn ERISA Litig.*, No. 20-cv-05704, 2023 WL 8631678, at *10 (N.D. Cal. Dec. 13, 2023) ("And significantly, the lack of any objections to the fee request also supports Class Counsels' fee request."); *Meijer, Inc. v. Abbott Lab'ys*, No. 07-cv-5985, 2011 WL 13392313, at *2 (N.D. Cal. Aug. 11, 2011) (noting no objections and awarding attorneys' fees "in the amount of one-third of the gross settlement amount – i.e., one-third of $52 million, or $17,333,333.33"); *In re Heritage Bond Litig.*, No. 02-md-1475, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005) (approving a third of the gross settlement fund as attorneys' fees; "[t]he absence of objections or disapproval by class members to Class Counsel's fee request further supports finding the fee request reasonable.")

As detailed in the Attorneys' Fees Motion, the amounts requested are within the range granted in cases of similar complexity and effort and should be approved. ECF No. 298 at 19-21.

### 4) Other Agreements

As discussed in the Preliminary Approval Motion, IPPs entered into a Confidential Supplemental Agreement with Defendants, available to the Court upon request for *in camera* and under seal review. The Confidential Supplemental Agreement is in the class's interest. IPPs will make this Confidential Supplemental Agreement available for the Court's inspection, should it so request. Confidential supplemental agreements in class action litigation are normal and permissible. *See, e.g.*, *In re 3DS Sys. Secs. Litig.*, No. 21-cv-1920, 2023 U.S. Dist. LEXIS 98683 (E.D.N.Y. June 5, 2023) (describing such agreement as "standard"); *Vataj v. Johnson*, No. 19-cv-06996, 2021 U.S.

12
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0554**

Dist. LEXIS 75879 (N.D. Cal. Apr. 20, 2021) (approving class action settlement with side, supplemental agreement).

### c.   The Plan of Allocation Treats Class Members Equitably

As mentioned above, IPPs propose a *pro rata* plan of allocation to class members that file valid claims. The recovery to individual class members is therefore tied to the volume and type of their purchases, the number of other qualified class members making claims against the settlement fund, and the size of the overall fund.

Courts have repeatedly found *pro rata* distribution a reasonable and fair way to compensate classes, especially in antitrust class actions. *See Lithium Ion Batteries,* 2020 WL 7264559, at *7 (approving *pro rata* plan of distribution); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "fairly treats class members by awarding a pro rata share to the class members based on the extent of their injuries.") (quotation omitted).

The proposed plan of allocation is thus "fair, adequate, and reasonable" and merits approval.

### d.   Class Members' Positive Reaction to the Settlement Further Supports Approval.

As of filing, 76,884 potential class members have filed claims presumed to be non-fraudulent and the claims period is still ongoing. Verita Decl. ¶19. This 2% claims rate represents an appropriate result in the context of consumer class action claims. *See, e.g.*, *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) (issuing final approval for a settlement with a 0.83% claims rate and describing it as "on par with other consumer cases"); *Theodore Broomfield v. Craft Brew Alliance, Inc.*, No. 17-cv-01027, 2020 WL 1972505, at *7 (N.D. Cal. Feb. 5, 2020) (class settlement with claims rate of "about two percent"); *Bostick v. Herbalife Int'l of Am., Inc.*, No. 13-cv-2488, 2015 WL 12731932, at *27 (C.D. Cal. May 14, 2015) (class settlement with "response rate of less than 1%"). The 2% claims rate, which will increase by the time the claims deadline runs in May, also lies directly within the range predicted by Verita and Settlement Counsel in the Motion for Preliminary Approval in describing the Court-approved notice and claims process. *See* ECF No. 389 at 9 ("Plaintiffs and Verita estimate the total number

13
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

4-ER-0555

of claimants to range from 40,000 to 300,000, resulting in a claims rate between 1% and 7.5% percent of the approximately 4 million class members."). Settlement Counsel will file an update on the claims process before the April 3, 2025 Fairness Hearing.

The *de minimis* number of opt-outs and objections further supports approval of the Settlement. The Court-ordered deadline for class members to object or opt-out of the Settlement passed on February 13, 2025. Only twelve proposed Class Members elected to opt-out and only five (many of whom are not actual settlement class members, as further detailed herein) objected to the Settlement. Verita Decl. ¶¶29-30. Such a result signals an enthusiastic endorsement by the Class and weighs in favor of approval. *See Cmty. Res. for Indep. Living v. Mobility Works of California*, LLC, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("The absence of a negative reaction weighs in favor of approval.") (quotation omitted); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-02185, 2019 WL 6622842, at *10 (N.D. Cal. Nov. 12, 2019) (granting approval and holding that zero objections and 31 opt-outs in a class of approximately 511,000 "confirms that the settlement is fair and reasonable."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

Class Members' positive reaction to the Settlement evinces the success of the notice plan and weighs in favor of approval.

### C.    The Objections Are Procedurally Improper, Meritless, or Both

Notice reached millions of potential Class Members and of those, only five chose to object. Each objection is meritless and should not factor into the Court's decision to finally approve the Settlement. The Objectors are either not members of the Settlement Class or have failed to carry their burden to show that any purported deficiencies render the Settlement or Notice Plan unreasonable. *See In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015). (approving settlement over objections and stating that "objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.") (citations omitted).

IPPs discuss each objection below.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0556**

### a.      Direct Purchaser "Conditional Objectors"

DPPs improperly object to IPPs' Settlement, attempting to gain leverage regarding a dispute in their wholly separate litigation against Defendants. But the Court should not allow itself to be mired in DPPs' fishing expedition into impermissible discovery regarding IPPs' settlement.

DPPs put forth two "Conditional Objectors": Jason Steele and Pioneer Cycling & Fitness LLP ("Pioneer"). ECF No. 400 at 3. For **Pioneer**, DPPs do not attempt to argue, much less meet their burden to demonstrate, that Pioneer is a member of the IPP Settlement Class, claiming only that it made "approximately $15,000 worth of telescopes and telescope accessories ***directly*** from Celestron." *Id*. (emphasis added). Because Pioneer only made purchases directly from one of the Defendants, Celestron, it is not a member of the IPP Settlement Class for indirect purchasers and does not have standing to object. It has long been settled black letter law that only settlement class members have the ability to object at a fairness hearing to a proposed class action settlement. *See, e.g.*, *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1071 (N.D. Cal. 2017), *enforcement granted*, 2017 WL 914066 (N.D. Cal. Mar. 6, 2017) ("[Objector] is not a Class Member, and the Court need not consider its objection."); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("[N]onclass members have no standing to object to the settlement of a class action.").[5]

---

[5] DPPs attempt to cite *Sweet v. Cardona*, 121 F.4th 32, 44 (9th Cir. 2024) for the proposition that they may object to IPPs' settlement. But that case repeats long-settled Ninth Circuit—that only settlement class members may object at a class action fairness hearing, *id.* at 44— and demonstrates why the Court cannot consider their objection. In any event, the fact that a Defendant chose to settle with one class and not another, with a separate group of attorneys asserting separate claims on behalf of separate plaintiffs, cannot constitute "legal prejudice" and DPPs cite no case so holding because no such case exists.

15
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

4-ER-0557

DPPs claim that **Jason Steele** made various direct and indirect purchases of telescopes[6] between 2009 and 2012. ECF No. 400 at 3. But Steele lacks standing to object because he fails to argue that he is aggrieved as a member of the IPP Settlement Class. *See In re First Capital Holdings Corp. Fin. Prods. Sec. Litig. (In re First Capital),* 33 F.3d 29, 30 (9th Cir. 1994) (holding that only "an aggrieved class member" has standing to object to a proposed class settlement); *In re TracFone Unlimited Serv. Plan Litig.*, 112 F. Supp. 3d 993, 1008 (N.D. Cal. 2015) (same). The burden is on Steele to prove that he has standing to object (*i.e.,* that he is an aggrieved class member). *See In re Hydroxycut Mktg. and Sales Practices Litig.,* No. 09-cv-1088, 2013 WL 5275618, at *2 (S.D. Cal. Sep. 17, 2013) ("The party seeking to invoke the Court's jurisdiction—in this case, the Objectors— has the burden of establishing standing.") (citing *Steel Co. v. Citizens for a Better Environment,* 523 U.S. 83, 103–04 (1998)). All of Steele's objections are based on the interests of the DPP class, a class this Court expressly found him to be unfit to represent. *See* DPP Docket, ECF No. 596 at 2 (order stating that "Steele is an individual astronomy enthusiast residing in Texas" and finding "that Steele's interests are misaligned with the class, and his ultimate concern with functionality makes him an inadequate class representative."). At the very best, Steele is a Trojan horse, sent to by the DPPs in an attempt to disrupt the IPPs' Settlement. Because Steele seeks to only advocate from the rights of the DPP class, a class he was affirmatively ruled inadequate to represent, his objections carry no weight as to the fairness of the IPPs' Settlement, and should not be considered by the Court.

Even if the Court entertains DPPs' objections, they are meritless and improper. DPPs do not argue that the Settlement is unfair or unreasonable to its class members, that Settlement Counsel did anything less than zealously represent the Settlement Class, or that there was anything infirm

---

[6] DPPs also include purchases of telescope accessories, but accessories are not included in the IPP Settlement Class. *See* ECF No. 397 at 3 (preliminarily certifying the Settlement Class as "all persons and entities in the Indirect Purchaser States who, during the period from January 1, 2005 to September 6, 2023, purchased one or more **Telescopes** from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured.") (emphasis added).

about the Notice Plan or claims administration. Instead, counsel for DPPs, representing a wholly separate class and case, demand that the Court "not approve the proposed settlement unless and until Defendants disclose information sufficient to prove that they have and will maintain sufficient assets in the United States to both pay the proposed settlement amount to the IPPs and to satisfy an eventual judgment or settlement with the DPPs." ECF No. 5. But such an extraordinary demand for effectively a discovery request by "Conditional Objectors" claiming to be members of an uncertified class in separate litigation does not relate to whether IPPs' Settlement should be approved.[7] DPPs' gripe appears to be that they view the IPP settlement as too large. But that is not a flaw in the settlement. DPPs own statements are telling: concluding that absent their requested relief "it is impossible to determine whether the settlement is fair and reasonable **to the DPP Class**." *Id.* (emphasis added). Of course, that is not the analysis on this motion.

None of the cases DPPs cite suggest that an appropriate basis to object to a class action settlement and deny final approval is the possibility a class settlement may impair a defendant's financial viability in wholly separate litigation. Indeed, such a rule would make no sense and would impair the ability of class counsel to zealously represent their class. Instead, each case on which DPPs rely details objections raised in the context of imbalances between subclasses or settlements treating members *of the same class* unfairly; neither applies here. *See True v. Am. Honda Motor Co.*, 749 F. Supp. 2d 1052, 1067 (C.D. Cal. 2010) (courts are "generally are wary of settlement agreements where some **class members** are treated differently than others."); *Ferrington v. McAfee, Inc.*, No. 10–cv–01455, 2012 WL 1156399, at *8 (N.D. Cal. 2012) (rejecting a settlement did not adequately compensate a **subclass** of the settlement); *Mirfashi v. Fleet Mortg. Corp.*, 356 F.3d 781

---

[7] As the Court is well aware, the very issues DPPs raise as an objection here have been fully briefed and taken under submission before the Court on the DPPs own docket. *See* Mot. for Financial Assurance & Asset Information, DPP Docket ECF Nos. 656. 658, 651, 668, 696, 701, 702, 703, 704. That docket is the proper venue for resolving DPPs' issues. *See In re Apple Inc. Device Performance Litig.*, No. 18-md-02827, 2021 WL 1022867, at *20 (N.D. Cal., 2021) (ruling that "to the extent that [the objector] seeks something more akin to discovery, he is not entitled to it.")

17

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

4-ER-0559

(7th Cir. 2004) (overturning approval of a settlement because a *subclass* did not have counsel); *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 388 (C.D. Cal. 2007) (rejecting a settlement because the distinction between two *subclasses* was arbitrary); *Am. Honda*, 749 F. Supp. 2d at 1068 ("draws an arbitrary distinction among *class members* with identical legal claims"). That Defendants decided to continue to pursue their litigation while IPPs resolved their claims is a matter for their discretion. But there is no rule of law—and DPPs do not cite one—that says once a Defendant decides to settle with indirect purchasers, they may only do so *if they also* decide to settle with separate classes, asserting separate claims on equitable terms.  History is replete with examples in antitrust class actions where this did not occur.

DPPs are demonstrably not objecting regarding the fairness or adequacy of the IPP Settlement. They are represented by separate, Court-appointed, counsel who have litigated their legally distinct claims for five years and are currently locked in a discovery dispute with the Defendants in their own case. Here, direct and indirect purchasers had appointed separate counsel, so that each can zealously pursue their own class's interests. *See In re Apple Inc. Smartphone Antitrust Litig.*, No. 24-md-03113, 2024 WL 4512016, at *3 (D.N.J. Oct. 17, 2024) ("counsel is necessary for the direct and indirect iPhone purchaser plaintiffs to ensure that their interests are being fairly and adequately represented throughout litigation.") (quotation omitted). By objecting to IPPs' Settlement on the grounds that it may impact "the DPP Class's ability to recover" in their own litigation, DPPs seek to blur and undermine that crucial demarcation.[8]

**b.    National Woodlands Preservation, Inc. ("Woodlands")**

---

[8] DPPs also argue they have a right to be privy to the terms of the Confidential Supplemental Agreement IPPs disclosed in their Preliminary Approval Motion because it "may treat the IPP Class preferentially." ECF No. 400 at 10-11. DPPs cite no case in which a court permitted parties outside of the class to evaluate confidential aspects of a class's settlement because that settlement may impact an entirely separate litigation. As stated in the Preliminary Approval Motion, IPPs stand ready to submit the Confidential Supplemental Agreement to the court for *in camera* review to confirm that it weighs in favor of the Settlement's approval. ECF No. 389 at 10.

**4-ER-0560**

Next, Woodlands objects to the Settlement on the grounds that it believes the claims and distribution process is "defective with respect to non-individual entities" because "[t]here is no place to lodge a business name." ECF No. 401 at 2. But Woodlands is simply mistaken. The class definition, published on the settlement website in the Settlement Agreement and Preliminary Approval Order, and in the Email and Published Notice issued to potential class members expressly makes that clear: "all persons *and entities* in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023 purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured" may submit claims. *See* ECF Nos. 390-1, 391-1, 391-3 (emphasis added). Had Woodlands contacted Verita or Settlement Counsel, it would have been instructed to file a claim by putting its corporate name into the "First Name" or "Last Name" field, as many other entities have done throughout this claims process. Verita Decl. ¶20.

The notice documents and settlement website have been successful with driving claims from entities. To date, 67 claims have been submitted by a variety of entities. *Id*. ¶21. Although many entity claimants have clearly understood that they could utilize either the paper or online claim forms by simply putting their name in either the "First Name" or "Last Name" rows, at Settlement Counsel's instruction, Verita updated the claim forms to include an additional row for "Name of Entity." *Id*. ¶20. Woodlands' objections are all now moot.

> ### c.   **Elman Barnes**

Barnes objects on the grounds that: (1) the claims process discriminates against retail purchasers not issued claim numbers; (2) Verita and Settlement Counsel were not diligent enough in providing claim numbers; (3) the Settlement improperly includes a California Civil Code § 1542 waiver; and (4) the claim form improperly asks for state of residence. All of Barnes' objections should be overruled because they lack merit or have been mooted. Barnes, after contacting Verita on February 7, 2025, was issued a claim number and made an online claim on February 15, 2025. Verita Decl. ¶31. All class members without claim numbers can utilize this same process to make a claim online.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0561**

1)    The Claims Process Treats All Potential Class Members Fairly

Barnes objects because he mistakenly believes that claimants without a claim number were prejudiced because they could only submit claims by mail and receive payment by check. Barnes is wrong on the facts and the law. Any person or entity that believed they purchased a covered telescope can submit a claim, whether or not they have a claim number. Any claimant without a claim number can contact Verita to have one generated, allowing them to make an online claim. Still, Barnes objects because he and others that submit paper claims purportedly "must go through an onerous process" of filling out the form by hand and electing to receive a physical check. ECF No. 399 at 2-3. As this Court weighed in approving IPPs' Notice Plan, courts routinely approve and order claims administration protocols that utilize physical claims and checks. For instance, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015), the Ninth Circuit affirmed approval of a settlement where claimants "could submit a claim for a gift card via e-mail, the class action website, or regular mail" but could "submit a claim for cash by regular mail only, and had to include the last four digits of his or her Social Security Number." *See also In re Google Plus Profile Litig.*, No. 18-cv-06164, 2021 WL 242887, at *4 (N.D. Cal. Jan. 25, 2021) (approving settlement over objections regarding method of payment); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09–cv–01911, 2015 WL 428105, at *9 (N.D. Cal. Jan. 30, 2015) (approving settlement over objections regarding issues with online versus paper claim forms). This makes sense because all claims, regardless of how they are submitted, are treated the equally by the claims administrator and subject to a *pro rata* distribution, which is typical in antitrust class action settlements. It does not relate to whether a claimant will receive payment or the amount they will get. Verita Decl. ¶23. It was not long ago that *all* claims for class action settlements were submitted physically and payments sent via check. *See, e.g., In re: Cathode Ray Tube (CRT) Antitrust Litig.*, No. 07-cv-5944, 2016 WL 721680, at *13 (N.D. Cal. Jan. 28, 2016) (approving settlement utilizing only paper claim forms and checks). That Barnes or any other claimant had to fill out and mail a standard claim form and receive payment by check does not prejudice them or treat them unfairly.

2)   Verita Diligently Provided Claim Numbers

Verita promptly issued claim numbers to potential class members who inquire. *Id*. ¶24. Barnes himself contacted Verita and received and claim number that he used to submit an online claim. [9] Throughout the claims process, Verita responded to 115 inquiries about claim numbers and provided them, promptly responding within a week. Verita Decl. ¶24. Barnes himself received a claim number within a week by utilizing this simple process. *Id*. The claim form and settlement website clearly list the toll-free hotline to call for general claims inquires. *Id*. ¶15. Although this service was available to all since the beginning of the claims process, at counsel's direction, Verita made it more streamlined, adding a new dedicated toll-free hotline specific to claim number requests. *Id*. ¶25. Language directing claimants to the hotline features prominently on the settlement website.[10] *Id*. The mere fact that certain potential class members had to communicate with the claims administrator to receive a claim number, is not valid grounds for an objection because it does not prejudice any class members. *See, e.g., In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 329–30 (approving settlement and overruling objections based on difficulties communicating with the settlement administrator and utilizing the claims website).

*i)*   ***The Claim Number Protocol Protects Against Fraud and Was Recommended by the Claims Administrator***

Potential Settlement Class Members who submit claims online are required to have a claim number to protect against the well-known risks of fraudulent claims. Verita Decl. ¶18. Verita

[9] On Friday, February 7, 2025 at 4:01PM, Barnes submitted an inquiry to Verita regarding his "dissatisfaction with the way that the settlement website does not allow claimants that do not have a claim ID to file a claim online." Verita Decl. ¶31. Within eight minutes, Verita responded that it has received his complaint and forwarded to the relevant parties. *Id*. Just one week later, on February 14, 2025, Verita issued Barnes a claim number, encouraged him to submit a claim, and provided a link to the settlement website. *Id*. On February 15, 2025, Barnes filed a claim online. *Id.*

[10] The language reads: "If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one." It is featured on both the website's homepage and in the FAQs regarding how to make a claim. Verita Decl. ¶25.

21
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

specifically instated the claim number protocol for online claims because, in their experience, it is the most efficient way to protect against fraudulent claims in this environment. *Id*.

### 3) Courts Routinely Approve Settlements with § 1542 Waivers

Barnes also objects to the Settlement's inclusion of a waiver under California Civil Code § 1542. ECF No. 399 at 5. But § 1542 waivers are not only commonplace in class action settlements, they are often a necessity. For instance, the court in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 10-md-02151, 2013 WL 12327929, at *23 (C.D. Cal. July 24, 2013), discussed this issue in rejecting an objection to the 1542 waiver, citing a string of class cases approving settlements that include them. It reasoned, "Class settlements often waive this protection, and such waivers are not generally viewed as an impediment to class settlement. . . . ***[T]he Court is dubious as to whether the class claims could be settled absent such a waiver***." *Id.* (emphasis added) (collecting cases). Such waivers are uncontroversial in the class action context because like all class settlements, the extent of any release is constrained by the identical factual predicate doctrine. *See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (applying the identical factual predicate doctrine to a class action settlement release); *Miller v. Wellpoint Companies, Inc.*, No. 09-cv-5666, 2010 WL 11520703, at *3 (C.D. Cal. May 17, 2010) ("The release is not so broad as to extend beyond the "identical factual predicate" of this case, which the Ninth Circuit has held to be the appropriate outer scope of a class action release. Although there is an extended discussion in the Settlement Agreement itself regarding a waiver of Cal. Civ. Code § 1542, the release language itself—even its reference to unknown claims—does not suggest that class members are releasing more claims than would be permissible, and therefore does not seem to be problematic.").

Because § 1542 waivers are routinely approved in class settlements, and like all class action releases, are limited by to the facts alleged, Barnes' objections should be overruled. *See Estorga v. Santa Clara Valley Transp. Auth.*, No. 16-cv-02668, 2020 WL 7319356, at *5 (N.D. Cal. Dec. 11, 2020) (approving settlement and holding that "waiving rights under Section 1542 of the California Civil Code is a common and accepted practice in this District").

### 4) Barnes' State of Residence Objections Are Misplaced and Mooted

22
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

4-ER-0564

Barnes also objects because he mistakenly believes that eligibility to participate in the settlement is based solely on legal residency and that requesting a claimants' "'State of Residence' is not relevant." ECF No. 399 at 6. The Settlement does not limit claims to residents of *Illinois Brick* repealer states because it is defined as "all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured." ECF No. 390-1 at 3-4. The language "in the Indirect Purchaser States" means at the time of purchase. As Barnes acknowledged, the settlement website makes this clear, stating that the Settlement "includes everyone who indirectly purchased one or more telescopes from January 1, 2005 to September 6, 2023, from a distributor/retailer that was manufactured by a defendant or alleged co-conspirator, while located in" an Indirect Purchaser State. ECF No. 399 at 7. Moreover, indirect purchaser settlements regularly collect this information. *See Lithium Ion Batteries*, 2020 WL 7264559, at *12 (granting final approval of settlement that requested state of residence information). Here, all individuals and entities that indirectly purchased one of the Defendants' telescopes are encouraged to submit a claim. Whether that claim will be valid depends on several factors, including the place of purchase, as analyzed by Verita and Settlement Counsel during the claims process.

Regardless, Barnes himself is not even affected by this this objection in any event. As he details, he is both a resident of California and purchased his telescope in state. He has been encouraged to make a claim. ECF No. 399 at 1. While processing claims, none will be denied solely because a claimant lists a non-repeater state as the state of residence. Verita Decl. ¶27. If a non-repeater state is listed, Verita will follow up with the claimant to determine the state in which a purchase was made. *Id*. To more efficiently gather this information, Verita, at counsel's direction, has added a "State in which purchase was made" line to the claim forms. *Id*. Barnes' objections should be overruled or disregarded as moot.

d.    **Pat Zhen**

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0565**

Zhen is not a class member because he purchased a telescope in Puerto Rico, a non-*Illinois Brick* repealer state explicitly excluded from the settlement class.[11] *See* ECF No. 390-1 at 6. Further, the release of claims is limited to class members who made purchases in Indirect Purchaser States only, so there is no possibility of harm to those who indirectly purchased subject telescopes in Puerto Rico because they are still free to bring their own claims, to the extent any court actually recognizes such a claim. Zhen is therefore not a class member (and therefore lacks standing), none of his claims are being released by the settlement, and his arguments should not be considered. *See San Francisco NAACP*, 59 F. Supp. 2d at 1032 ("[N]onclass members have no standing to object to the settlement of a class action.").[12]

### e. Mike Sussman

Susman objects for similar reasons to Barnes regarding having to file a paper claim and that objection should be overruled for the reasons detailed above. Sussman also objects because he believes that the Court-approved notice plan did not provide adequate information regarding how and where to object. Sussman is wrong. All the information he demands can be found in the Settlement website's FAQs. *See* "12. How do I submit an objection to the Settlement?" available at https://www.telescopesettlement.com/frequently-asked-questions.aspx (last visited February 27,

---

[11] IPPs note that courts throughout the Ninth Circuit, this district, and the country, have held that Puerto Rico is not an *Illinois Brick* repealer jurisdiction. *See, e.g., Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 626 (N.D. Cal. 2020) (dismissing the claims and holding that "Puerto Rico does not have an *Illinois Brick* repealer statute.); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 373 (D.R.I. 2019) ("join[ing] the majority of courts in concluding that the [indirect purchasers] do not have standing to bring antitrust claims under Puerto Rico law").

[12] Zhen's objection also may be untimely. The objection was received by the Court on February 19, 2025, more than three business days after the deadline. The docketed scan of the objection's envelope is cut in half, so counsel cannot review the postmark date to make a determination. *See* Preliminary Approval Order, ECF No. 397 at 7 ("In the event a postmark is illegible, the date of mailing shall be deemed to be three (3) days prior to the date" received.)

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

2025). The FAQ answer provides detailed instructions of the who, what, when, and where of objecting to the Settlement. *Id*. Sussman's objection lacks any merit and should be overruled.[13]

### D.    Reversions and *Cy Pres*

There is no reversion of unused funds to the Defendants. Should a balance remain after distribution to the class (whether by reason of tax refunds, uncashed checks, or otherwise), Settlement Counsel will seek to reallocate such settlement funds to class members that did cash their checks, if economically feasible to do so. *See In re Google Location Hist. Litig*., No. 18-cv-05062, 2024 WL 1975462, at *7 (N.D. Cal. May 3, 2024) (approving *cy pres* settlement and stating that "[t]he Ninth Circuit permits a *cy pres* distribution in circumstances where the settlement fund is 'non-distributable'"). If unused settlement funds are not economically feasible to redistribute, Interim Co-Lead Class Counsel proposes to donate the funds to Stellar Dreams, a program directed by Science Haven, a 501(c)(3) non-profit, subject to the Court's approval.  Stellar Dreams seeks "to close the equity gap in science, particularly astronomy, by giving 100 telescopes, astronomy education, and citizen science opportunities to students in grades 5-12, who come from underrepresented         backgrounds        in        science         and        astronomy."         *See* https://www.thesciencehaven.org/stellardreams (last visited February 27, 2025).

### VI.    CONCLUSION

For all the reasons set forth above, IPPs respectfully request that this Court: (1) grant final approval of the Settlement; (2) confirm certification of the Settlement Class; (3) confirm Class Representatives as representatives for the certified Settlement Class; (4) confirm Settlement Class Counsel as counsel for the certified Settlement Class; (5) dismiss with prejudice all claims against Defendants; and (6) approve the proposed Plan of Allocation.

---

[13] Sussman's objection is also likely untimely. The objection was received by the Court on February 26, 2025, nearly two weeks after the deadline. The docketed scan of the objection's envelope does not contain a postmark for counsel to review. *See* Preliminary Approval Order, ECF No. 397 at 7.

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0567**

Dated:  February 28, 2025

Respectfully Submitted,


 */s/ Kalpana Srinivasan*
Kalpana Srinivasan (SBN 237460)
Marc M. Seltzer (SBN 54534)
Steven Sklaver (SBN 237612)
Michael Gervais (SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

Thomas K. Boardman (SBN 276313)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, New York 10001
Phone: 212-336-8330
tboardman@susmangodfrey.com

*/s/ Lin Y. Chan*
Lin Y. Chan (SBN 255027)
Eric B. Fastiff (SBN 182260)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
lchan@lchb.com
efastiff@lchb.com
rstoler@lchb.com

26
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0568**

*/s/ Adam J. Zapala*
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
James G. Dallal (SBN 277826)
**COTCHETT, PITRE &
McCARTHY LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
jdallal@cpmlegal.com

*Settlement Class Counsel for the Indirect
Purchaser Plaintiffs*

27
INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION FOR FINAL APPROVAL OF
SETTLEMENT; AND MEMORANDUM OF POINTS AND AUTHORITIES

**4-ER-0569**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**<br><br>**Dept.:    Courtroom 4**<br>**Judge:    Hon. Edward J. Davila**<br>**Date:     April 3, 2025**<br>**Time:      9:00 AM** |

**4-ER-0570**

I, Kalpana Srinivasan, declare as follows:

I, Kalpana Srinivasan, am an attorney at Susman Godfrey L.L.P., one of the three firms appointed as Settlement Class Counsel for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

I submit this declaration in support of IPPs' Motion to for Final Approval of Settlement ("Motion") in the above-captioned matter.

1.    IPPs experts and the Court-appointed claims administrator, Verita, estimate the IPP Settlement Class to incudes approximately 4 million members.

2.    Settlement negotiations occurred multiple times over several months and concluded with a two-day mediation with the Honorable Suzanne Segal, a former Magistrate Judge of the Central District of California. The parties agreed to settle only after both sides accepted Judge Segal's mediator's proposal following protracted negotiations.

3.    IPPs' damages expert calculates class damages in the range of $29 million to $165 million. The $32 million settlement fund lies within the IPPs' expert's damages estimate and represents between approximately 19% to 110% of the preliminary total estimate of single damages at trial.

4.    Settlement Class Counsel did not receive any objections to the Attorneys' Fees and Costs Motion.

5.    Settlement Class Counsel received five separately-filed objections to the proposed settlement and attempted to meet and confer with all objectors.

6.    On February 19, 2025, Settlement Class Counsel emailed counsel for the Direct Purchaser Plaintiffs, who represent the "Conditional Objectors," to request confirmation of objector Jason Steele's purchase locations. On February 27, 2025, counsel met and conferred via Zoom regarding their objections, but were unable to resolve them.

7.    Objector National Woodlands Preservation, Inc. ("Woodlands") did not provide an email or phone number. Settlement Class Counsel searched the internet, but Woodlands has no

1
**DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER**
**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

internet presence at all. Contact information for "K. Luna," who signed the objection as Woodlands' CEO, could also not be found after conducting a thorough internet search. A search of the West Virginia Secretary of State's business directory returned only the physical address listed in the objection, 110 James Street, Hinton, West Virginia. The sole business at that address is Ziegler & Ziegler, L.C. When contacted by Settlement Class Counsel, Ziegler & Ziegler informed them that they only service as a mailing address for Woodlands and were unable, or unwilling, to provide any further contact information or relay a message. Settlement Class Counsel also contacted Woodlands' Notice of Process agent listed on the West Virginia Secretary of State's business directory, Registered Agents, Inc. Registered Agents were unwilling to provide a phone number more email, and instructed Settlement Class Counsel to send a letter to Woodlands by certified mail, which counsel did on February 25, 2025. The letter urged Woodlands to contact Settlement Class Counsel regarding its objection at its "soonest convenience," encouraged it to submit a claim, and informed it that "[a]lthough entities were always welcome to submit claims using the first or last name fields, the claim forms now include an additional field for 'Name of Entity.'" As of signing this declaration, Woodlands has not responded or filed a claim.

8.    On February 24, 2025, Settlement Class Counsel attempted to contact Objector Zhen via email, informing him that counsel was "in receipt of your objection to the settlement in *In re Telescopes Antitrust Litig*." and that "we would like to discuss your objections as soon as possible." Counsel suggested that the parties meet and confer by phone or Zoom before the deadline to file the Motion, February 28, 2025. As of filing this declaration, Mr. Zhen has not responded.

9.    On February 24, 2025, Settlement Class Counsel attempted to contact Objector Barnes via email, informing him that counsel was "in receipt of your objection to the settlement in *In re Telescopes Antitrust Litig*." and that "we would like to discuss your objections as soon as possible." Counsel suggested that the parties meet and confer by phone or Zoom before the deadline to file the Motion, February 28, 2025. On February 26, 2025, Mr. Barnes responded that he was unable to pick a specific time, but "maybe if you provide me with your direct number I can try to give you a call when I have a minute." Settlement Class Counsel responded later the same day, provided direct lines of contact, and urging Mr. Barnes to call directly anytime he was able.

2
**DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**4-ER-0572**

Settlement Class Counsel also provided Mr. Barnes with its positions on his objections in writing to help focus any future discussion. On February 27, 2025, Mr. Barnes responded, indicating that the addition of the "State of purchase" field to the claim form "may sufficiently address my objection" if he could have a chance to review, but standing on his objections regarding the need to attain a claim number to file online and the Settlement's California Civil Code § 1542 waiver. Settlement Class Counsel responded later that day, attaching a copy of the current claim form and requesting a time to walk through the remaining objections with Mr. Barnes on February 28, 2025. A true and correct copy of the above email correspondence is attached as Exhibit A to this declaration.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this 28th day of February, 2025 in Los Angeles, California.

 /s/ Kalpana Srinivasan
Kalpana Srinivasan
SUSMAN GODFREY L.L.P.

*Settlement Class Counsel for the*
*Indirect Purchaser Plaintiffs*

3
**DECLARATION OF KALPANA SRINIVASAN IN SUPPORT OF INDIRECT PURCHASER
PLAINTIFFS' MOTION FOR FINAL APPROVAL OF SETTLEMENT**

**4-ER-0573**

# EXHIBIT A

| | |
|---|---|
| **From:** | Tom Boardman |
| **To:** | elmanmethod@theachievementcoaches.com |
| **Cc:** | Kalpana Srinivasan; Marc Seltzer; Alejandra Salinas; Steven Sklaver; Michael Gervais; Lin Chan; Adam Zapala; Elizabeth Castillo; Christian Ruano |
| **Subject:** | RE: In re Telescopes Antitrust Litig. - Objection |
| **Date:** | Thursday, February 27, 2025 7:08:24 PM |
| **Attachments:** | Telescopes - Claim Form.pdf |

Thank you for the response, Mr. Barnes.

We would be happy to walk through all of this with you and discuss the remaining objections. Please let us know a time tomorrow (2/28) when you are available for a short Zoom meeting or if you prefer, a phone call. We can work around your schedule.

Attached for your review is the current claim form. Let us know if plan to continue pursuing the related objection.


 Best,
Tom

Tom Boardman | Susman Godfrey LLP
O: (212) 729-2069  C: (415) 298-4627

-----Original Message-----
From: Tom Boardman
Sent: Wednesday, February 26, 2025 4:24 PM
To: elmanmethod@theachievementcoaches.com
Cc: Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>; Marc Seltzer <MSeltzer@SusmanGodfrey.com>; Alejandra Salinas <ASalinas@susmangodfrey.com>; Steven Sklaver <ssklaver@SusmanGodfrey.com>; Michael Gervais <MGervais@susmangodfrey.com>; Lin Chan <lchan@lchb.com>; Adam Zapala <AZapala@cpmlegal.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>; Christian Ruano <CRuano@cpmlegal.com>
Subject: RE: In re Telescopes Antitrust Litig. - Objection

Thank you for the reply, Mr. Barnes.

Please call me on my cellphone at your convenience before this Friday (2/28). (415) 298-4627.

A few points below to focus our discussion.

First, an explanation about the need to have a claim number to file online. The Court-appointed Claims Administrator implemented this safeguard measure to protect against bots and spammers attempting to make fraudulent claims.  We believe that this was an entirely appropriate measure in an effort to prevent fraud and protect the interests of class members. Additionally, you will note that the settlement website homepage and FAQ now have clear messaging and a dedicated toll-free line potential class members can call to have a claim number generated. See https://www.telescopesettlement.com/frequently-asked-questions.aspx ("If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one."). We note that you were able to contact Verita, the Court-appointed Claims Administrator, have a claim number generated via email, and file your claim on February 15, 2025.

Second, with respect to your contention regarding eligibility and the relevant state of purchase, we wish to clarify a few matters. As the notice makes clear, indirect purchasers are eligible to make claims to share in the settlement if they purchased the relevant product while they were in an indirect purchaser state. See, e.g., Long Form Notice at p. 3 ("The group of people whom Synta has agreed to pay is called the settlement class, and it includes everyone who indirectly purchased one or more telescopes from January 1, 2005 to September 6, 2023, from a distributor/retailer that was manufactured by a defendant or alleged co-conspirator, while located in" an indirect purchaser state),

**4-ER-0575**

available at: www.telescopesettlement.com/media/5232066/cehi_not_online_241213_v2.pdf; Settlement Agreement ¶ 1(e) (defining the settlement class as "all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to 27 September 6, 2023, purchased one or more Telescopes . . . ."); Short Form Notice at p. 1 ("The settlement includes all persons and entities in the Indirect Purchaser States who, from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from any entity other than a defendant) that any defendant or alleged co-conspirator manufactured . . . ."). It is not the case that eligibility to participate in the settlement is based on the legal requirements of "residency" alone. Although we think that this matter was previously made clear, we added a field for "State of Purchase" to the claim form for claimants to include additional information.

Finally, as to the § 1542 waiver in the Settlement's release provisions, such waivers have long been approved by the courts in class action settlements. For example, in In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig., the court rejected an objection to a § 1542 waiver and held that "Class settlements often waive this protection, and such waivers are not generally viewed as an impediment to class settlement. . . . the Court is dubious as to whether the class claims could be settled absent such a waiver." 2013 WL 12327929, at *23 (C.D. Cal. July 24, 2013).

I look forward to discussing the above with you.


 Best,
Tom



Tom Boardman | Susman Godfrey LLP
O: (212) 729-2069  C: (415) 298-4627

-----Original Message-----
From: elmanmethod@theachievementcoaches.com <elmanmethod@theachievementcoaches.com>
Sent: Wednesday, February 26, 2025 6:56 AM
To: Tom Boardman <TBoardman@susmangodfrey.com>
Cc: Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>; Marc Seltzer <MSeltzer@SusmanGodfrey.com>; Alejandra Salinas <ASalinas@susmangodfrey.com>; Steven Sklaver <ssklaver@SusmanGodfrey.com>; Michael Gervais <MGervais@susmangodfrey.com>; Lin Chan <lchan@lchb.com>; Adam Zapala <AZapala@cpmlegal.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>; Christian Ruano <CRuano@cpmlegal.com>
Subject: Re: In re Telescopes Antitrust Litig. - Objection

EXTERNAL Email

Dear Mr. Boardman,

Thanks for reaching out.

I'm sorry for not replying earlier but my work obligations keep me rather busy and I haven't had time to get back to you until now.

I can't say when I can be available over the coming days but I guess maybe if you provide me with your direct number I can try to give you a call when I have a minute.

Or better yet maybe respond and let me know what you have in mind and whether you think some of my concerns are reasonable and can be addressed or not and we can narrow the focus of a conversation, hopefully.

Elman Barnes

On 2025-02-24 10:47, Tom Boardman wrote:
> Mr. Barnes,
>
> We are in receipt of your objection to the settlement in _In__ re
> Telescopes Antitrust Litig_. As counsel for the settlement class, we
> would like to discuss your objections as soon as possible. Please let
> us know times you are available to meet by phone/Zoom today (2/24)
> through this Thursday (2/27).
>
> Best,
>
> Tom Boardman
>
> Tom Boardman [1] | Susman Godfrey LLP
>
> O: (212) 729-2069  C: (415) 298-4627
>
>
>
> Links:
> ------
> [1] https://www.susmangodfrey.com/attorneys/tom-boardman/

4-ER-0577

*Telescopes Antitrust Litigation*
Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172

## CEHI

«Barcode»
Postal Service: Please do not mark barcode

CEHI: ClaimID: «ClaimID»
«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «St»  «Zip»
«Country»



**VISIT THE SETTLEMENT WEBSITE BY SCANNING THE PROVIDED QR CODE**

*In re Telescopes Antitrust Litigation Indirect Purchaser Actions*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case No. 5:20-cv-03639-EJD

**Must Be Postmarked
No Later Than
May 20, 2025**

Claim ID: <<ClaimID>>

# Claim Form

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **May 20, 2025** AT
**www.telescopesettlement.com**, OR FILE BY MAIL POSTMARKED BY **May 20, 2025**.

Questions? Call 1-833-419-3506 or visit the website, **www.telescopesettlement.com.**

If you wish to receive any payment pursuant to the Settlement Agreement electronically,
please submit your claim online at www.telescopesettlement.com.

## CLASS MEMBER INFORMATION:

First Name          M.I.    Last Name

OR

Name of Entity

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City                                     State    ZIP Code

Email Address

Area Code   Telephone Number

*Failure to add your unique ClaimID, which can be found with your notice or by contacting the Settlement Administrator, will result in denial of your claim. If you received a notice of this Settlement by U.S. mail, your unique ClaimID is on the email or postcard. If you misplaced your notice, please contact the Settlement Administrator at 1-833-419-3506 or admin@telescopesettlement.com.*



| FOR CLAIMS PROCESSING ONLY | OB | CB | DOC | RED |
|---|---|---|---|---|
| | | | LC | A |
| | | | REV | B |

1

**4-ER-0578**

## ELIGIBILITY:

1. Did you purchase one or more Telescopes branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell from a retailer or distributor from January 1, 2005 to September 6, 2023?

◯ Yes *(Proceed to Question 2)*   ◯ No *(You are not eligible to submit a claim)*

2. If you answered "Yes" to Question 1, please enter your purchase information below:

Make

Model

☐☐☐ / ☐☐☐ / ☐☐☐☐
Date of purchase

State of residence at time of purchase

State in which purchase was made

$ ☐☐☐☐☐ . ☐☐
Amount

Name of retailer or distributor where Qualifying Telescope was purchased

**If you purchased more than one telescope, please fill out all the information listed in Question 2 for each purchase on the additional page found at Appendix A or submit your claim online at www.telescopesettlement.com.**

**You do not need to submit receipts or confirming documentation at this time, but counsel for the Settlement Class may require it if an issue arises regarding the validity of your claim.**

## PAYMENT SELECTION:

How would you like to receive your payment? Choose **one** of the following:

◯ **I wish to receive any payment pursuant to the Settlement Agreement by check at the address in the Class Member Information section.**

## OR

◯ **If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com**.

This information will be kept confidential by the Settlement Administrator.

## CERTIFICATION AND SIGNATURE:

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____    Dated (mm/dd/yyyy): _____

Print Name: _____



2

**4-ER-0579**

**Appendix A**

Appendix A

**THIS PAGE INTENTIONALLY LEFT BLANK.**

**Tom Boardman**

| | |
|---|---|
| **From:** | elmanmethod@theachievementcoaches.com |
| **Sent:** | Thursday, February 27, 2025 2:51 PM |
| **To:** | Tom Boardman |
| **Cc:** | Kalpana Srinivasan; Marc Seltzer; Alejandra Salinas; Steven Sklaver; Michael Gervais; Lin Chan; Adam Zapala; Elizabeth Castillo; Christian Ruano |
| **Subject:** | Re: In re Telescopes Antitrust Litig. - Objection |

EXTERNAL Email

Dear Mr. Boardman,

Thank you for taking the time to send me this email.  I apologize that I have not yet had opportunity to connect by phone, but wanted to get back to you in writing with my initial thoughts regarding the issues that you mentioned.  I do appreciate you taking the time to consider the matters that I raised in my objection.

1)  With regards to the claim numbers issue:  While I most certainly appreciate the Claims Administrator's concern with fraud, this concern has to be balanced with the reality of Class Member participation rates.
  The percentage of eligible Class Members that participate in consumer settlements like this have historically been pretty low, and that's when it's been possible to just fill out a simple online form.  Asking Class Members to mail in physical forms or call in to get a claim number before filling out the claim form are just not satisfactory solutions and will wreak havoc on already low participation rates.  Class Members will not bother themselves to jump through these hoops.

I'm not saying that I have an appropriate solution to suggest, only that the solutions offered are not adequate and trading fraud reduction for what I believe will be significantly less participation by the actual parties/consumers that have sustained a damage just doesn't cut it.

If the main concern is automated bot submissions, why not create an email verification system where a Claimant's email must be verified, or the Claimant must receive their claim number by email prior to being able to go back and file their claim form?  That should stop claims by bots as I don't think a bot would be able to monitor the email address, scrape out a claim number or verification link, and then go on to submit a claim.

Furthermore, for Class Members that do actually bother to submit their claims by mail, why not let them request electronic payments just like Class Members that fill out the online form do?  This doesn't make sense and is not equal treatment of Class Members.

1

**4-ER-0583**

2)  With regards to the State of purchase eligibility matter:  I think adding a question to the claim form to specify the State of purchase is excellent and may sufficiently address my objection.  The claim form is not in the Documents section of the website, and since I have already filed a claim online using the claim number provided to me by the settlement administrator, I can't access the online claim form.  If you could send me a copy of the amended claim form so that I can review it and determine that the matter is now made sufficiently clear to Class Members, then I would be willing to withdraw at least this portion of my objection.

3)  Lastly, with regards to the § 1542 waiver, I am aware that courts have accepted this in various settlements, however I also note that this has occurred at the District level.  Even in the case you site, the court's reasoning regarding allowance of the waiver is questionable at best.  The law is the law and the intent of the legislators was what it was.  If the consequence of that law and the intent of the legislature behind that law is that companies become less willing or unwilling to make settlements, then legislators can consider that and decide if it makes sense to repeal or amend the law as it is written.  But legislated provisions should not be willy nilly waived by the courts for the expediency and mere convenience of facilitating settlements.  As such I believe that the issue of § 1542 waiver is ripe for consideration by the 9th Circuit.

I hope that the above helps clarify my position with regards to the objections raised.

Elman Barnes

On 2025-02-26 15:23, Tom Boardman wrote:
> Thank you for the reply, Mr. Barnes.
>
> Please call me on my cellphone at your convenience before this Friday
> (2/28). (415) 298-4627.
>
> A few points below to focus our discussion.
>
> First, an explanation about the need to have a claim number to file
> online. The Court-appointed Claims Administrator implemented this
> safeguard measure to protect against bots and spammers attempting to
> make fraudulent claims.  We believe that this was an entirely
> appropriate measure in an effort to prevent fraud and protect the
> interests of class members. Additionally, you will note that the
> settlement website homepage and FAQ now have clear messaging and a

2

> dedicated toll-free line potential class members can call to have a
> claim number generated. See
> https://www.telescopesettlement.com/frequently-asked-questions.aspx
> ("If you wish to file a claim online but have not received a claim
> code, please call 866 568 7713 to speak to the Settlement
> Administrator about generating one."). We note that you were able to
> contact Verita, the Court-appointed Claims Administrator, have a claim
> number generated via email, and file your claim on February 15, 2025.
>
> Second, with respect to your contention regarding eligibility and the
> relevant state of purchase, we wish to clarify a few matters. As the
> notice makes clear, indirect purchasers are eligible to make claims to
> share in the settlement if they purchased the relevant product while
> they were in an indirect purchaser state. See, e.g., Long Form Notice
> at p. 3 ("The group of people whom Synta has agreed to pay is called
> the settlement class, and it includes everyone who indirectly
> purchased one or more telescopes from January 1, 2005 to September 6,
> 2023, from a distributor/retailer that was manufactured by a defendant
> or alleged co-conspirator, while located in" an indirect purchaser
> state), available at:
> www.telescopesettlement.com/media/5232066/cehi_not_online_241213_v2.pd
> f; Settlement Agreement ¶ 1(e) (defining the settlement class as "all
> persons and entities in the Indirect Purchaser States (as defined
> herein) who, during the period from January 1, 2005 to 27 September 6,
> 2023, purchased one or more Telescopes . . . ."); Short Form Notice at
> p. 1 ("The settlement includes all persons and entities in the
> Indirect Purchaser States who, from January 1, 2005 to September 6,
> 2023, purchased one or more Telescopes from a distributor (or from any
> entity other than a defendant) that any defendant or alleged
> co-conspirator manufactured . . . ."). It is not the case that
> eligibility to participate in the settlement is based on the legal
> requirements of "residency" alone. Although we think that this matter
> was previously made clear, we added a field for "State of Purchase" to
> the claim form for claimants to include additional information.
>
> Finally, as to the § 1542 waiver in the Settlement's release
> provisions, such waivers have long been approved by the courts in
> class action settlements. For example, in In re Toyota Motor Corp.
> Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.,
> the court rejected an objection to a § 1542 waiver and held that
> "Class settlements often waive this protection, and such waivers are

3

**4-ER-0585**

> not generally viewed as an impediment to class settlement. . . . the
> Court is dubious as to whether the class claims could be settled
> absent such a waiver." 2013 WL 12327929, at *23 (C.D. Cal. July 24,
> 2013).
>
> I look forward to discussing the above with you.
>
>
>  Best,
> Tom
>
>
>
>
> Tom Boardman | Susman Godfrey LLP
> O: (212) 729-2069  C: (415) 298-4627
>
> -----Original Message-----
> From: elmanmethod@theachievementcoaches.com
> <elmanmethod@theachievementcoaches.com>
> Sent: Wednesday, February 26, 2025 6:56 AM
> To: Tom Boardman <TBoardman@susmangodfrey.com>
> Cc: Kalpana Srinivasan <ksrinivasan@SusmanGodfrey.com>; Marc Seltzer
> <MSeltzer@SusmanGodfrey.com>; Alejandra Salinas
> <ASalinas@susmangodfrey.com>; Steven Sklaver
> <ssklaver@SusmanGodfrey.com>; Michael Gervais
> <MGervais@susmangodfrey.com>; Lin Chan <lchan@lchb.com>; Adam Zapala
> <AZapala@cpmlegal.com>; Elizabeth Castillo <ecastillo@cpmlegal.com>;
> Christian Ruano <CRuano@cpmlegal.com>
> Subject: Re: In re Telescopes Antitrust Litig. - Objection
>
> EXTERNAL Email
>
> Dear Mr. Boardman,
>
> Thanks for reaching out.
>
> I'm sorry for not replying earlier but my work obligations keep me
> rather busy and I haven't had time to get back to you until now.
>
> I can't say when I can be available over the coming days but I guess

> maybe if you provide me with your direct number I can try to give you
> a call when I have a minute.
>
> Or better yet maybe respond and let me know what you have in mind and
> whether you think some of my concerns are reasonable and can be
> addressed or not and we can narrow the focus of a conversation,
> hopefully.
>
> Elman Barnes
>
>
> On 2025-02-24 10:47, Tom Boardman wrote:
>> Mr. Barnes,
>>
>> We are in receipt of your objection to the settlement in _In__ re
>> Telescopes Antitrust Litig_. As counsel for the settlement class, we
>> would like to discuss your objections as soon as possible. Please let
>> us know times you are available to meet by phone/Zoom today (2/24)
>> through this Thursday (2/27).
>>
>> Best,
>>
>> Tom Boardman
>>
>> Tom Boardman [1] | Susman Godfrey LLP
>>
>> O: (212) 729-2069  C: (415) 298-4627
>>
>>
>>
>> Links:
>> ------
>> [1] https://www.susmangodfrey.com/attorneys/tom-boardman/



**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE TELESCOPES ANTITRUST LITIGATION** | **Case No. 5:20-cv-03639-EJD**<br><br>**CLASS ACTION**<br><br>**DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES** |

1

DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES

**4-ER-0588**

I, Angelique Dizon, declare and state as follows:

1.      I am a Senior Project Manager with Verita Global, LLC ("Verita") f/k/a KCC Class Action Services, LLC ("KCC") located at 1 McInnis Parkway, Suite 250, San Rafael, CA 94903. Pursuant to the Preliminary Approval Order dated September 16, 2024, the Court appointed Verita as the Settlement Administrator in connection with the proposed Settlement in the above-captioned Action. I have personal knowledge of the matters stated herein and, if called upon, could and would testify thereto.

## CLASS MEMBER LIST

2.      On April 26, 2024, Verita received from Class Counsel 13 data files containing a total of 422,924 records.

3.      Verita identified and removed a total of 282,447 records from the Class Member List. These records were removed as they were either a duplicative of other records (based on name and address) or had missing contact information. A total of 140,477 records remained in the Class Member List.

4.      Verita withheld 708 records from the mailing of the Settlement Notice but maintained them in the Class Member List.  These 708 records were withheld because they either had incomplete address or an invalid e-mail address.  This left 139,769 records in the Class Member List to whom Verita mailed and/or emailed the Settlement Notice of the proposed Settlement.

5.      Next, Verita caused the addresses in the Class Member List to be updated using the National Change of Address database ("NCOA") maintained by the U.S. Postal Service ("USPS"). A total of 15,353 addresses were found and updated via NCOA. Verita updated its proprietary database and prepared a data file for the mailing of the Settlement Notice by email and email.

## MAILING AND EMAILING OF THE SETTLEMENT NOTICE

6.      On December 13, 2024, Verita caused the Postcard Notice to be printed and mailed to the 84,661 names and mailing addresses in the Class Member List.  A true and correct copy of

2

DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES

the Postcard Notice is attached hereto as Exhibit A.

7. After mailing the Postcard Notice to the Class Members, as of the date of this declaration, Verita received 8,439 Postcard Notices returned by the USPS with undeliverable addresses. Through credit bureau and/or other public source databases, Verita performed address searches for these undeliverable Postcard Notices and found updated addresses for 3,326 Class Members. Verita promptly re-mailed Postcard Notices to the found new addresses.

8. Accordingly, as of the date of this declaration, Verita's records indicate that 76,222 of the 84,661 mailed Postcard Notices were successfully mailed to Class Members.

9. On December 13, 2024, Verita also e-mailed the Settlement Notice to 55,675 names with e-mail addresses available. The E-mail Notice was successfully delivered to 47,026 Class Members. A true and correct copy of the E-mail Notice is attached hereto as Exhibit B.

## PRESS RELEASE, PUBLICATION NOTICE, AND DIGITAL MEDIA CAMPAIGN

10. Verita caused a press release to be distributed via PR Newswire on December 13, 2024. The press release was distributed via PR Newswire's US1 National Newsline and included syndicated distribution via AP News. A true and correct copy of the press release is attached hereto as Exhibit C.

11. Verita also purchased a sponsored post published on December 13, 2024, via Sky & Telescope Facebook, a banner ad that appeared in the December 13, 2024 Sky & Telescope weekly newsletter, and 100,000 impressions that were distributed on Sky & Telescope Website (skyandtelescope.org). A total of 190,048 impressions were delivered, resulting in an additional 90,048 impressions at no extra charge. Confirmation of the publication notice as it appeared in sponsored post, newsletter, and on skyandtelescope.org is attached hereto as Exhibit D.

3

DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES

12.    In addition, Verita purchased 23,850,000 impressions to be distributed programmatically via various websites and mobile apps, as well as on Facebook, Instagram, Reddit and Google Search, from December 13, 2024, through February 10, 2025. The impressions were targeted at adults 18 years of age or older who have likely purchased telescopes, demonstrated an online interest in Celestron, telescopes, astronomy, stargazing, sky/star maps, astrophotography, astroimaging, telescope accessories, or astronomical accessories, and/or used stargazing apps and sky guides, where available. A total of 25,534,471 impressions were delivered, resulting in an additional 1,684,471 impressions at no extra charge. Confirmation of the digital media notices as they appeared on a variety of websites and on Facebook, Instagram, Reddit, and Google Search is attached hereto as Exhibit E.

13.    Verita estimates that the Notice Plan reached at least 80% of potential class members.

## SETTLEMENT WEBSITE

14.    On December 11 2024, Verita established a website [www.telescopesettlement.com]    dedicated to this proposed settlement to provide information to potential Class Members and to answer frequently asked questions.  The website URL was set forth in the Postcard Notice, Email Notice, Long-Form Notice, and Claim Form. Visitors to the website can download copies of the Long-Form Notice, Claim Form, Settlement Agreement and other case-related documents.  Visitors can also submit claims online (assuming they had a claim number) and/or download a copy of the Claim Form to submit (if they did not have a claim number or simply wanted to submit a Claim Form by mail).  As of February 21, 2025, the website has received 2,182,469 visits.

## TELEPHONE HOTLINE AND EMAIL ADDRESS

4

DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES

**4-ER-0591**

15. Verita established and will continue to maintain a toll-free telephone number (1-833-419-3506) and an email address [admin@telescopesettlement.com] for potential Class Members to contact the Settlement Administrator to obtain information about the Settlement, and/or request a Long Form Notice and Claim Form. The telephone hotline became operational on December 11, 2024, and is accessible 24 hours a day, 7 days a week.

16. On February 19, 2025, Verita also established an additional telephone hotline (1-866-568-7713) for potential Class Members to contact the Settlement Administrator to request a claim number in the event that they want to file a claim online.

## **CLAIM FORMS**

17. Verita conducted a thorough and comprehensive analysis for fraud and misuse. Verita used a variety of proprietary methods to flag submissions as suspected fraud. Verita reviewed the claim data for patterns in submission material, for example, name, email address, and physical address data to support identifying unique individuals. Verita also employs various technical and metadata analyses to identify potentially fraudulent claims. Claims identified as potentially fraudulent are not automatically excluded; rather, they are evaluated further by Verita.

18. A review of potentially fraudulent claims such as this is common in cases where filing a claim does not require proof of purchase. In such cases, it is impossible to fully deter fraud and duplication without deterring people who are entitled to compensation from filing a claim. Accordingly, Verita has developed review processes to identify and eliminate fraud and duplication from claims filed. The comprehensive review completed by Verita is essential to identify potentially duplicative claims without excluding valid claims.

19. Verita has received 76,884 claims that have provisionally been cleared of fraud and misuse. This represents approximately 2% of the 4 million potential settlement class members.

5

20. Entities could always file claims by using the "First Name" or "Last Name" field of the claim form. Verita has added an additional "Name of Entity" field.

21. To date approximately 67 claims have been submitted by entities.

22. On February 27, 2025. Verita added a "Name of Entity" field to the online and paper claim forms.

23. All claims, whether submitted online or by mail, are subject to the same vetting process.

24. Verita has responded to 115 requests for a claim numbers and typically generates them once a week.

25. On February 19, 2025, Verita initiated a dedicated toll-free hotline potential claimants could call to have a claim number generated. Thus far, this hotline has been used to issue 115 claim numbers. The hotline language reads "If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one." It is featured on both the website's homepage and in the FAQs regarding how to make a claim.

26. Issuing paper checks to claimants who submit paper forms is Verita's preferred procedure for distributing settlement funds because, in Verita's experience, when claimants handwrite their Venmo or PayPal account information, unclear handwriting can render Verita unable to get the payment to the correct account.

27. While processing claims, none will be denied solely because a claimant lists a non-repealer state as the state of residence. If a non-repealer state is listed, Verita will follow up with the claimant to determine the state in which a purchase was made. To more efficiently gather this information, Verita added a "State in which purchase was made" line to the claim forms. For the

6

DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES

remaining claims period, all potential claimants will be asked for both their state of residence and state of purchase. If Verita has any questions about the purchase location of previously filed claims, they will contact claimants to confirm.

28.    While processing claims, none will be denied solely because a claimant lists a non-repealer state as the state of residence. If a non-repealer state is listed, Verita will follow up with the claimant to determine the state in which a purchase was made. To more efficiently gather this information, Verita, at counsel's direction, added a "State in which purchase was made" line to the claim forms.

### REPORT ON EXCLUSION REQUESTS RECEIVED TO DATE

29.    The Notice informs Class Members that any request for exclusion from the Settlement Class must be postmarked no later than February 13, 2025.  As of the date of this declaration, Verita has received 12 requests for exclusion.

### OBJECTIONS TO THE SETTLEMENT

30.    The receipt deadline for Class Members to object to the settlement was on February 13, 2025. The Notice informs Class Members to file objections with the Court. As of the date of this declaration, Verita has received 5 objections to the settlement.

### CONTACT WITH POTENTIAL CLASS MEMBERS

31.    On Friday, February 7, 2025 at 4:01PM, objector Elman Barnes submitted an inquiry to Verita regarding his "dissatisfaction with the way that the settlement website does not allow claimants that do not have a claim ID to file a claim online." Within eight minutes, Verita responded that it has received his complaint and forwarded to the relevant parties. One week later, on February 14, 2025, Verita issued Barnes a claim number, encouraged him to submit a claim, and provided a link to the settlement website. On February 15, 2025, Verita confirmed that Barnes filed

7

DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES

a claim online.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on February 28, 2025 at San Rafael, California.

_____
Angelique Dizon

8

DECLARATION OF ANGELIQUE DIZON RE: NOTICE PROCEDURES

# Exhibit A

## Court-Approved Legal Notice



This is an important notice about a class action lawsuit.

*Telescopes Antitrust Litigation*
Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172

<<Barcode>>
Postal Service: Please Do Not Mark Barcode

CEHI: ClaimID: «ClaimID»
«First1» «Last1»
«CO»
«Addr1» «Addr2»
«City», «St»  «Zip»
«Country»



VISIT THE SETTLEMENT WEBSITE BY SCANNING THE PROVIDED QR CODE

## CEHI

**4-ER-0597**

United States District Court
*In Re Telescopes Antitrust Litig. Indirect Purchaser Actions*
Case No. 5:20-cv-03639-EJD

Class Action Settlement
*Authorized by the U.S. District Court*



**Did you purchase a telescope from January 1, 2005 to September 6, 2023?**

**There is a $32,000,000 settlement of a lawsuit.**

**You may be entitled to money.**

**To be part of this settlement, you can respond by May 20, 2025.**

**You can visit www.telescopesettlement.com to learn more.**

**Key Things to Know:**

- This is an important legal document.

- If you take no action, any ruling from the court will apply to you, and you will not be able to sue Synta Tech. Corp. of Taiwan; Suzhou Synta Optical Tech. Co. Ltd.; Nantong Schmidt Opto-Electrical Tech. Co. Ltd.; Synta Canada Intl. Ent. Ltd.; Pacific Telescope Corp.; Olivon Mfg. Co. Ltd.; SW Tech. Corp.; Celestron Acquisition, LLC; Olivon, USA LLC; Dar Tson ("David") Shen; Joseph Lupica; Dave Anderson; Jean Shen; Sylvia Shen; Jack Chen; Laurence Huen; and Corey Lee about the same issues.

- If you have questions or need assistance, please call 1-833-419-3506.

- You can learn more at www.telescopesettlement.com or by scanning the QR code.

**4-ER-0598**

# Exhibit B

This is a Court-Approved Legal Notice about a Class Action Lawsuit.

# If you purchased a telescope from January 1, 2005 to September 6, 2023, you *may* be entitled to a payment from a $32 million class action settlement.

Dear <mark><<First1>> <<Last1>>,</mark>

| YOUR CLAIM ID | <mark><<ClaimID>></mark> |
|---|---|
| YOUR PIN | <mark><<PIN>></mark> |
| **USE THESE UNIQUE NUMBERS WHEN FILING YOUR CLAIM FORM** ||

Visit **www.telescopesettlement.com** to learn more or to file a Claim Form online.

**You have been identified as a potential member of a class action Lawsuit that could affect your rights, and you may be eligible to receive a payment from a settlement.**

A settlement has been proposed by the Indirect Purchaser Plaintiffs in a class action lawsuit against Synta Technology Corp. of Taiwan; Suzhou Synta Optical Technology Co. Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Canada International Enterprises Ltd.; Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.; SW Technology Corporation; Celestron Acquisition, LLC; Olivon, USA LLC; Dar Tson ("David") Shen; Joseph Lupica; Dave Anderson; Jean Shen; Sylvia Shen; Jack Chen; Laurence Huen; and Corey Lee ("Settling Defendants and Co-Conspirators"). The other, non-settling, defendants and co-conspirators are Ningbo Sunny Electronic Co. Ltd.; Sunny Optical Technology Co., Ltd.; Meade Instruments Corp.; Sunny Optics Inc.; Wenjun "Peter" Ni; and Wenjian Wang. The lawsuit claims defendants and co-conspirators (1) unlawfully divided the consumer telescopes market and fixed prices for consumer telescopes, and (2) unlawfully attempted to monopolize and conspired to monopolize the consumer telescope market in the United States. The settlement resolves the Indirect Purchaser Plaintiffs claims against the Settling Defendants and Co-Conspirators only.

**Who is included?**

**Records collected during the litigation indicate that you might be covered by the settlement.** The settlement includes all persons and entities in the Indirect Purchaser States who, from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from any entity other than a defendant) that any defendant or alleged co-conspirator manufactured ("settlement class members"). Indirect Purchaser States include Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

"Telescopes" refers to optical instruments that magnify and enhance the view of faraway objects, and does *not* include other optical instruments not marketed as telescopes, such as binoculars, siting scopes, microscopes, etc. Typically, such telescopes were branded Celestron, Orion, Skywatcher, Zhumell, or Meade.

**What does the settlement provide?**

**You have been identified as a potential member of a class action Lawsuit that could affect your rights, and you may be eligible to receive a payment from a settlement.** The Settling Defendants have agreed to create a $32,000,000 settlement fund to provide cash payments to settlement class members who submit a valid Claim Form.

**What are my options?**

You may (1) participate in the settlement and receive your portion of the settlement fund, (2) request to exclude yourself from the settlement, or (3) object to the settlement.

Participate in the Settlement. If you wish to participate in the settlement and receive your portion of the settlement fund, you must complete and submit a Claim Form by **May 20, 2025**. Claim Forms are available and may be filed online at www.telescopesettlement.com. You can also visit the website to have a paper Claim Form mailed to you.

> **CLICK HERE TO FILE YOUR CLAIM FORM**

Exclude Yourself from the Settlement. If you do not want to be legally bound by the settlement, you must exclude

**4-ER-0600**

yourself by **February 13, 2025**. Unless you exclude yourself from the settlement, you will not be able to sue the Settling Defendants and Co-Conspirators for any claim released by the Settlement Agreement. Instructions on how to exclude yourself from the settlement are available at www.telescopesettlement.com.

Object to the Settlement. If you wish to object to the settlement, you must file or mail a written objection with the Clerk of the Court. If you wish to appear at the Court hearing to determine the fairness of the settlement, you must notify the Court that you or your lawyer intend to appear at the Court's fairness hearing. Objections are due **February 13, 2025**. Instructions on how to object to the settlement are available at www.telescopesettlement.com.

**The Court's Fairness Hearing.**

The Court will hold a fairness hearing in this case (*In Re Telescopes Antitrust Litig. Indirect Purchaser Actions*, No. 5:20-cv-03639-EJD) on April 3, 2025, at 9:00 a.m. At this hearing, the Court will decide whether to approve: (1) the settlement; (2) Interim Co-Lead Counsel's request for up to a third of the settlement fund in attorneys' fees and expenses along with proportional interest that accumulates on the Settlement Fund; and (3) a $3,000 service award to each Named Plaintiff. You may appear at the hearing, but you do not have to. You also may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**WANT MORE INFORMATION?**

Visit www.telescopesettlement.com, email admin@telescopesettlement.com, call 1-833-419-3506, or write to *Telescopes Antitrust Litigation* Settlement Administrator, P.O. Box 301172, Los Angeles, CA 90030-1172.

# Exhibit C

# If you purchased a telescope from January 1, 2005 to September 6, 2023, you may be entitled to a payment from a $32 million class action settlement.

NEWS PROVIDED BY
**Cotchett, Pitre & McCarthy, LLP, Lieff Cabraser Heimann & Bernstein LLP, and Susman Godfrey L.L.P.** →
Dec 13, 2024, 08:00 ET

**Visit www.telescopesettlement.com to learn more or to file a Claim Form online**

SAN JOSE, Calif., Dec. 13, 2024 /PRNewswire/ -- A settlement has been proposed by the Indirect Purchaser Plaintiffs in a class action lawsuit against Synta Technology Corp. of Taiwan; Suzhou Synta Optical Technology Co. Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Canada International Enterprises Ltd.; Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.; SW Technology Corporation; Celestron Acquisition, LLC; Olivon, USA LLC; Dar Tson ("David") Shen; Joseph Lupica; Dave Anderson; Jean Shen; Sylvia Shen; Jack Chen; Laurence Huen; and Corey Lee ("Settling Defendants and Co-Conspirators"). The other, non-settling, defendants or co-conspirators are Ningbo Sunny Electronic Co. Ltd.; Sunny Optical Technology Co., Ltd.; Meade Instruments Corp.; Sunny Optics Inc.; Wenjun "Peter" Ni; and Wenjian Wang (collectively, "Non-Settling Defendants and Co-Conspirators"). The lawsuit claims defendants and co-conspirators (1) unlawfully divided the consumer telescopes market and fixed prices for consumer telescopes, and (2) unlawfully attempted to monopolize and conspired to monopolize the consumer telescope market in the United States. The settlement resolves the Indirect Purchaser Plaintiffs' claims against the Settling Defendants and Co-Conspirators only.

**Who is included?** The settlement includes all persons and entities in the Indirect Purchaser States who, from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from any entity other than a defendant) that any defendant or alleged co-conspirator manufactured ("Settlement Class Members"). "Indirect Purchaser States" include Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

"Telescopes" refers to optical instruments that magnify and enhance the view of faraway objects, and does not include other optical instruments not marketed as telescopes, such as binoculars, siting scopes, microscopes, etc. Typically, such telescopes were branded Celestron, Orion, Skywatcher, Zhumell, or Meade.

**What does the settlement provide?** The Settling Defendants have agreed to create a $32,000,000 settlement fund to provide cash payments to Settlement Class Members who submit a valid Claim Form.

**What are my options?** You may (1) participate in the settlement and receive your portion of the settlement fund, (2) request to exclude yourself from the settlement, or (3) object to the settlement.

<u>Participate in the Settlement</u>. If you wish to participate in the settlement and receive your portion of the settlement fund, you must complete and submit a Claim Form by May 20, 2025. Claim Forms are available and may be filed online at **www.telescopesettlement.com**. You can also visit the website to have a paper Claim Form mailed to you. A claim may be made regardless of whether you purchased a telescope manufactured by a Settling Defendant or a Non-Settling Defendant or Co-Conspirator.

<u>Exclude Yourself from the Settlement</u>.  If you do not want to be legally bound by the settlement, you must exclude yourself by February 13, 2025. Unless you exclude yourself from the settlement, you will not be able to bring your own lawsuit against the Settling Defendants and Co-Conspirators for any claim released by the settlement agreement. Instructions on how to exclude yourself from the settlement are available at **www.telescopesettlement.com**.

<u>Object to the Settlement</u>. If you wish to object to the settlement, you must file or mail a written objection to the Clerk of the Court. If you wish to appear at the Court hearing to determine the fairness of the settlement, you must notify the Court that you or your lawyer intend to appear at the Court's fairness hearing. Objections must be filed or postmarked by February 13, 2025. Instructions on how to object to the settlement are available at **www.telescopesettlement.com**.

**The Court's Fairness Hearing.** The Court will hold a fairness hearing in this case (*In Re Telescopes Antitrust Litig. Indirect Purchaser Actions*, No. 5:20-cv-03639-EJD) on April 3, 2025, at 9:00 a.m. At this hearing, the Court will decide whether to approve: (1) the settlement; (2) Interim Co-Lead Counsel's request for up to $10.66 million in attorneys' fees along with proportional interest that accumulates on the settlement fund; (3) Interim Co-Lead Counsel's request for reimbursement of litigation expenses not to exceed $1.5 million; and (3) a $3,000 service award for each named class representative. You may appear at the hearing, but you do not have to. You also may hire your own attorney, at your own expense, to appear or speak for you at the hearing.

**Want more information?** Visit **www.telescopesettlement.com**, email **admin@telescopesettlement.com**, call 1-833-419-3506 or write to *Telescopes Antitrust Litigation* Settlement Administrator, P.O. Box 301172, Los Angeles, CA 90030-1172.

SOURCE Cotchett, Pitre & McCarthy, LLP, Lieff Cabraser Heimann & Bernstein LLP, and Susman Godfrey L.L.P.

# Exhibit D

Having trouble viewing this email? {Click here to read it on the Web.}

Read news from the world of astronomy for the week of December 13, 2024.

# SKY&TELESCOPE
## WEEKLY UPDATE

**Subscribe to Sky & Telescope**

This week in the world of astronomy, explore an the unexpectedly crowded asteroid belt. Plus, watch the Geminid Meteor Shower despite the bright Moon. And discover a fluffy, shrinking exoplanet similar to Neptune.



## JWST Shows Unexpectedly Crowded Asteroid Belt

A new view of archival Webb telescope data reveals small asteroids in the main asteroid belt are more numerous than we thought.

**Read More**



## The Webb Telescope Reveals a "Featherweight Giant" Planet

When JWST looked at what was supposed to be a hot Jupiter, it found something else instead: a fluffy, shrinking planet that's more like Neptune.

**Read More**




**If you purchased a telescope from January 1, 2005 to September 6, 2023, you *may* be entitled to a payment from a $32 million class action settlement.**

LEARN MORE

TelescopeSettlement.com

## Observing Highlights



### This Week's Sky at a Glance, December 13 – 22

The Moon, a day from full, shines above Jupiter and Aldebaran at nightfall and lower left of the Pleiades. As the evening grows late, this whole arrangement climbs higher and rotates clockwise. By about 11 p.m. the Pleiades will be right of the Moon.

**Read More**



### Don't Let the Bright Moon Ruin Your Geminids

It's a tough year for the Geminids. But that doesn't mean you have to hang up your coat and retreat indoors.

**Read More**



### December Podcast: Jupiter

It's going to be a fun month for planet-watching, and you can count on the month's Sky Tour episode to tell you where and when to catch the five "wandering stars" that you can see by eye.
Presented by: **Celestron**.

**Read More**

## Community



### Winter Stargazing: A Journey Through the Night Sky

On December 20th at 6:30 PM, ET, Hamptons Observatory's Senior Educator, William Francis Taylor, MSc, will present a free, hybrid lecture.

**Read More**




### Annals of the Deep Sky Volume 11

We've added a new star to our cluster! Volume 11 of Willmann-Bell's beloved Annals of the Deep Sky series is now available on Shop@Sky!

**Read More**



### Discover It All With Nautilus – Free Newsletter

Nautilus dives headfirst into a breadth of topics from astronomy to sociology, exploring the connection between science, and culture through expert storytelling. Discover it all when you sign up for the free newsletter.

*This message is a from a trusted* S&T *partner. It is not affiliated with* S&T.

**Read More**

 

**GIFT SUBSCRIPTIONS**
The special gift for that special someone
It's easy click or call 800-253-0245

**Like what you see? Read the digital issue of Sky & Telescope!**



Sky & Telescope | American Astronomical Society | Privacy Policy

American Astronomical Society | 1667 K Street NW Suite 800 | Washington, DC 20006 US

Unsubscribe | Update Profile | Constant Contact Data Notice

Having trouble viewing this email? {Click here to read it on the Web.}

Read news from the world of astronomy for the week of January 3, 2025.

# SKY&TELESCOPE
## WEEKLY UPDATE

**Subscribe to Sky & Telescope**

This week in the world of astronomy, keep up to date on this year's best meteor showers and two lunar eclipses. Plus, don't miss out on watching the Moon occult Saturn if you live in Europe.



### The Best Meteor Showers in 2025

You'll fight a bright Moon to watch August's beloved Perseid meteor shower in 2025. But it should be an excellent year for December's strong Geminid shower.

**Read More**

If you purchased a telescope from January 1, 2005 to September 6, 2023, you *may* be entitled to a payment from a $32 million class action settlement.



LEARN MORE



TelescopeSettlement.com

## Observing Highlights



## This Week's Sky at a Glance, January 3 – 12

Once again the Moon comes around to shine near Venus during and after dusk. These are the two brightest celestial objects after the Sun. They'll be 3° apart at the end of twilight from the East Coast, 4° or 5° apart at dusk on the West Coast.

**Read More**



## Watch Quadrantid Meteors Fly and the Moon Occult Saturn

The annual Quadrantid meteor shower kicks off the new year under moonless skies. European observers will see a Saturn occultation.

**Read More**



## Solar and Lunar Eclipses in 2025

Although no total solar eclipses occur this year, skywatchers can look forward to two total lunar eclipses — including one that will be visible across North America.

**Read More**



## January Podcast: Mars Meets the Moon

Every January millions of us resolve to do something different or better in the coming year. So make a resolution to do more stargazing this coming year!
Presented by: **Celestron**.

**Read More**

## Community



## A Journey to the Cosmic Web

J. Richard Gott, will tell how his high school science project on spongelike polyhedra led him to a new understanding of the large-scale structure of the universe.

**Read More**



## Donate Now for Metal Asteroid Research

Support a greener future with sustainable asteroid mining. Make a tax-deductible donation to the Metal Asteroid Research Fund at The Miami Foundation.

*This message is from Light Bridges, S.L. an advertising partner of* Sky & Telescope.

**Read More**



Like what you see? Read the digital issue of Sky & Telescope!

Sky & Telescope | American Astronomical Society | Privacy Policy

American Astronomical Society | 1667 K Street NW Suite 800 | Washington, DC 20006 US

Unsubscribe | Update Profile | Constant Contact Data Notice

# Exhibit E

# Digital Media PoP

*In Re Telescopes Antitrust Litigation*

**verita**

# GoneOutdoors.com | 728x90



 
**4-ER-0616**

# MoonConnection.com | 728x90



    veritaglobal.com

**4-ER-0617**

# ScienceAlert.com | 300x250



 
**4-ER-0618**

# SkyAndTelescope.org | 300x600



**4-ER-0619**

# Time.com | 300x250



veritaglobal.com

6

**4-ER-0620**

# Weather.com | 300x600





veritaglobal.com

7

4-ER-0621

# Google Search | Text Ad





**4-ER-0622**

# Facebook Feed | Desktop



  veritaglobal.com

9

**4-ER-0623**

# Facebook Feed | Mobile



 veritaglobal.com

10

**4-ER-0624**

# Facebook Feed | Stories



  veritaglobal.com

11

**4-ER-0625**

# Sponsored Post – Facebook | Sky & Telescope





veritaglobal.com

12

**4-ER-0626**

# Sponsored Post – X | Sky & Telescope





**4-ER-0627**

# Instagram Feed | Desktop



 veritaglobal.com

14

**4-ER-0628**

# Instagram Feed | Mobile





veritaglobal.com

15

4-ER-0629

# |Instagram Feed | Stories





veritaglobal.com

16

**4-ER-0630**

# Reddit | Promoted Post



 
4-ER-0631

# Thank you

Settlement Administration | Legal Notification

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | Case No. 5:20-cv-03639-EJD |
| THIS DOCUMENT RELATES TO:<br><br>Indirect Purchaser Actions | **[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT** |

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0633**

The Court previously granted Indirect Purchaser Plaintiffs' ("IPPs") Motion for Preliminary Approval of Class Action Settlement on November 4, 2023. ECF No. 397. On February 28, 2025, IPPs filed their Motion for Final Approval of Proposed Class Action Settlement (Mot. for Final Approval"). ECF No. ___. Four *pro se* objectors and two represented by counsel for the Direct Purchaser Plaintiff class oppose approval of the Settlement. The Court held a Fairness Hearing, at which all parties were heard on April 3, 2025.

Having considered the motion briefing, the terms of the Settlement, the objections and response thereto, the arguments of counsel, and the other matters on file in this action, the Court **GRANTS** the Motion for Final Approval. The Court finds the Settlement to be fair, adequate, and reasonable. The provisional appointments of the Class Representatives and Settlement Class Counsel are confirmed.

## I.    BACKGROUND

In light of this case's procedural posture, the Court will not reiterate the entirety of the lengthy factual background. This case is an antitrust class action lawsuit against the following entities and individuals: Synta Technology Corp. of Taiwan (a.k.a. Synta Technology Corp. and Good Advance Industries Ltd.); Suzhou Synta Optical Technology Co., Ltd.; Nantong Schmidt Opto-Electrical Technology Co. Ltd.; Synta Canada International Enterprises Ltd.; Pacific Telescope Corp.; Olivon Manufacturing Co. Ltd.; SW Technology Corporation; Celestron Acquisition, LLC and Olivon USA, LLC (collectively, "Synta Defendants" or "Settling Defendants") and related individuals; Defendant Ningbo Sunny Electronic Co. Ltd.; and Co-Conspirators Sunny Optical Technology Co., Ltd.; Meade Instruments Corp.; Sunny Optics Inc.; Wenjun "Peter" Ni; and Wenjian Wang. IPPs allege that Synta Defendants and related individuals conspired to unlawfully fix or stabilize prices for consumer Telescopes. IPPs claim they were harmed by paying more than they would have in the absence of Defendants' alleged conduct.

The parties reached the Settlement after two full-day mediation sessions (conducted over a year apart) with an experienced mediator, the Honorable Suzanne Segal, a former Magistrate Judge

**4-ER-0634**

of the Central District of California. ECF No. 398-1 ¶53. The parties agreed to settle on September 7, 2023, when both sides accepted Judge Segal's mediator's proposal. *Id*.

The parties then memorialized the Settlement and moved for preliminary approval on September 16, 2024, which this Court granted on November 4, 2024, after a hearing. ECF Nos. 398, 393, 397. The Court approved the program for disseminating notice to IPP Settlement Class Members as set forth in the preliminary approval motion. ECF No. 398. The Court appointed IPPs Madeline Bekielewski, Thomas Berta, Carey Briggs, Vincent Catanzaro, David Dick, Austin Griffith, Donnie Houston, Bentaro Huset, Greg Kendall, David Kerber, Deborah Lemar, Doug Lundy, John Maurice, Timothy McQuaid, Philip Moore, Brian Murphy, Herbert Nelson, Scott Plummer, Michael Price, David Quaglietta, Greg Ross, Ronald Troillett, Robert Welsh, Tony DiMambro, Jason Glydewell, Leon Greenberg, Michael Liskow, Sigurd Murphy, Jim Riley, Keith Uehara, Steven Zellers, Sarah Day Brewer, Thien Ngo, Jesse Smith, and Arthur Sines ("Class Representatives") as representatives for the Class. ECF No. 397. The Court also appointed Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey L.L.P., as counsel of the Settlement Class ("Settlement Class Counsel"). *Id*.

## II.  SUMMARY OF SETTLEMENT TERMS

Under the Settlement, the Class is defined as:

> all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0635**

ECF No. 390 § 1(e) ("IPP Settlement Class").[1] Defendants agreed to a non-reversionary $32,000,000 Settlement Fund to cover all costs associated with the Notice Program, monetary benefits to members of the Settlement Class, incentive awards for the Class Representatives, and Settlement Class Counsel's attorneys' fees, costs, and expenses. The Settlement represents a fair resolution of the claims asserted on behalf of IPPs in this Action and the release fully and finally resolves all claims. Defendants and IPP Settlement Class Members shall be bound by the Settlement, including the Release provisions set forth in Sections 1(w) and 10 of the Settlement Agreement, which is incorporated by reference herein, and by this Order and the Final Judgment.

## III.   NOTICE AND CLAIMS ADMINISTRATION

The Court appointed Verita to issue notices and serve as claims administrator for the Settlement. ECF No. 397. On December 13, 2024, Verita began the Court-approved notice plan. First, it caused the postcard notice to be printed and mailed to the 84,661 names and mailing addresses. After mailing the Postcard Notices to the IPP Class Members, Verita received 8,439 Postcard Notices returned by the USPS with undeliverable addresses. Through credit bureau and/or other public source databases, Verita performed address searches for these undeliverable Postcard Notices and was able to find updated addresses for 3,326 IPP Class Members.  Verita re-mailed Postcard Notices to the updated addresses. 76,222 of the 84,661 mailed Postcard Notices were successfully mailed to potential IPP Class Members.

On December 13, 2024, Verita also e-mailed the Notice to the 55,675 names where a valid e-mail address was available. The E-mail Notice was delivered to 47,026 IPP Class Members. In

---

[1] Indirect Purchaser States are defined in the Settlement as Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

addition, Amazon facilitated direct notice to its customers that purchased Telescopes using Amazon's own messaging service, issuing over 50,000 direct email notices.

Second, Verita implemented a publication notice program to supplement direct notice. Verita caused a press release to be distributed via PR Newswire on December 13, 2024. The press release was distributed via PR Newswire's US1 National Newsline and included syndicated distribution via AP News. Verita also purchased a sponsored post to be published on December 13, 2024, via Sky & Telescope Facebook, a banner ad to appear in the December 13, 2024, Sky & Telescope weekly newsletter, and 100,000 impressions to be distributed on Sky & Telescope Website (skyandtelescope.org). A total of 190,048 impressions were delivered.

In addition, Verita purchased 23,850,000 impressions to be distributed programmatically via various websites and mobile apps, as well as on Facebook, Instagram, Reddit, and Google Search, from December 13, 2024, through February 10, 2025. The impressions were targeted at adults 18 years of age or older who have likely purchased telescopes, demonstrated an online interest in Celestron, telescopes, astronomy, stargazing, sky/star maps, astrophotography, astroimaging, telescope accessories, astronomical accessories, and/or used stargazing apps and sky guides, where available. A total of 25,534,471 impressions were delivered.

Third, IPPs launched a case-specific settlement website. On December 11, 2024, Verita established a website (www.telescopesettlement.com) dedicated to the proposed Settlement to provide information to potential IPP Class Members and to answer frequently asked questions. The website URL was set forth in the Postcard Notice, Email Notice, Long-Form Notice, and Claim Form. Visitors to the website can download copies of the Long-Form Notice, Claim Form, Settlement Agreement, and other case-related documents. Visitors can also submit claims online and/or download a copy of the claim form.

Verita also established and will continue to maintain a toll-free telephone number (1-833-419-3506) and an email address (admin@telescopesettlement.com) for potential IPP Class Members to contact the Settlement Administrator to obtain information about the Settlement, and/or request a Long Form Notice and Claim Form. The telephone hotline became operational on

4

December 11, 2024, and is accessible 24 hours a day, 7 days a week. On February 19, 2025, Verita also established an additional telephone hotline (1-866-568-7713) for potential IPP Class Members to contact the Settlement Administrator to request a claim number in the event that they want to file a claim online and need to have a claim number generated.

The notice experts at Verita calculate that the proposed notice plan reached over 80% of the estimated 4 million IPP Settlement Class Members. Verita received over a million claims and thoroughly vetted these claims for fraud and misuse.

The Court-ordered deadline to opt-out or object passed on February 13, 2025, but the claims deadline does not run until May 20, 2025. The claims submitted thus far represent up to _____% of the estimated 4 million IPP Settlement Class Members. The twelve opt-outs and five objections represent a *de minimis*, less than a fraction of one percent, number of IPP Settlement Class Members.

## IV.  LEGAL STANDARD FOR FINAL APPROVAL

At final approval, the Court must first conduct a "rigorous" analysis to confirm that the requirements for class certification under Rule 23(a) and 23(b)(3) are met. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619–22 (1997); *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (citations omitted). A court may then approve a proposed class action settlement only "after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). To assess the fairness of a class action settlement, courts to evaluate whether:

> (A) the class representatives and class counsel have adequately represented the class;
>
> (B) the proposal was negotiated at arm's length;
>
> (C) the relief provided for the class is adequate, taking into account:
>
>> (i) the costs, risks, and delay of trial and appeal;
>>
>> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
>>
>> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>>
>> (iv) any agreement required to be identified under Rule 23(e)(3); and

5

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2); *see also Briseno v. Henderson*, 998 F.3d 1014, 1025 (9th Cir. 2021) (holding that the Ninth Circuit's eight-factors "fall within the ambit of the revised Rule 23(e)."); *Churchill Village, L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).

Furthermore, class settlements reached prior to formal class certification require a "heightened fairness inquiry." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019). When reviewing such a pre-certification settlement, the district court must not only explore the *Churchill* factors but also "look[ ] for and scrutinize[ ] any subtle signs that class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Id*. at 1043 (internal quotation marks omitted).

## V.    DISCUSSION

### A.    The IPP Settlement Class Merits Certification

Under Rule 23(a), all class actions must satisfy the following prerequisites: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. Fed. R. Civ. P. 23(a). In addition, Class Representatives must show that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). The Court affirms the conditional class certification in the Court's preliminary approval order per the prerequisites in Rule 23(a)(1)-(4). *See* ECF No. 397. No settlement class member has objected to settlement class certification.

*Numerosity*. The Settlement Class satisfies Rule 23(a)(1) because it includes millions of IPP Settlement Class Members, making it so numerous that joinder of all members is impracticable. *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("The prerequisite of numerosity is discharged if 'the class is so large that joinder of all members is impracticable.'") (quoting Fed. R. Civ. P. 23(a)(1)).

*Commonality*. Rule 23(a)(2) commonality requires "questions of fact or law common to the class," though "[e]ven single common question of law or fact that resolves a central issue will be

sufficient to satisfy this mandatory requirement." *Castillo v. Bank of Am., NA*, 980 F.3d 723, 728 (9th Cir. 2020). "What matters to class certification . . . is not the raising of common 'questions'— even in droves—but rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The focus of this action—Defendants' alleged conspiracy to raise, fix, maintain or stabilize the prices, rig bids, and allocate the market and customers in the United States of Telescopes as well as their unlawful monopolistic conduct—is common to all class members.

*Typicality*. Next, Rule 23(a)(3) requires that the plaintiff show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992) (internal quotation marks and citation omitted). The Court finds that the Class Representatives are typical of the IPP Settlement Class they seek to represent because they purchased consumer Telescopes and paid supracompetitive prices caused by Defendants' conspiracy.

*Adequacy of Representation*. With respect to Rule 23(a)(4), the Court finds the representative parties and Settlement Class Counsel have fairly and adequately represented the interests of the Class. No conflicts of interest appear as between Class Representatives and the members of the Settlement Class, nor is there any evidence that Settlement Class Counsel have any conflicts of interests with IPP Settlement Class Members. Settlement Class Counsel have substantial experience prosecuting antitrust class actions. Class Representatives are equally interested in demonstrating Defendants' alleged violations, and Class Representatives and Settlement Class Counsel have litigated this Action vigorously on behalf of the IPP Settlement Class.

*Predominance*. As to Rule 23(b)(3), the Court finds that common questions predominate and that the class action mechanism is a superior process for this litigation. Common questions of law and fact predominate over any questions affecting individuals here because every IPP

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0640**

Settlement Class Member has been subjected to the same alleged conduct which caused the same type of harm. The class action mechanism is also superior here given the small amount in dispute for individual class members in comparison to the cost of individual litigation. *Just Film, Inc. v. Buono*, 847 F.3d 1108, 1123 (9th Cir. 2017). The alternatives to class certification—approximately 4 million separate, individual, and time-consuming proceedings, or a complete abandonment of claims by a majority of class members—are not preferable.

*Superiority*. To satisfy the superiority requirement it must be shown that a class action is the "most efficient and effective means of resolving the controversy . . . [w]here recovery on an individual basis would be dwarfed by the cost of litigating on an individual basis, this factor weighs in favor of class certification." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quotation marks and citation omitted). The class action mechanism is superior for resolving this matter given the "the individual remedy for each Class Member is relatively small, making the expense and burden of continued individual litigation economically and procedurally impracticable." *Noll v. eBay, Inc.*, 309 F.R.D. 593, 603 (N.D. Cal. 2015). In these situations, a "class action mechanism is superior to individual actions in consumer cases with thousands of members . . . in which the potential recovery is too slight to support individual suits, but injury is substantial in the aggregate.'" *Id*.

Based on the foregoing, the Court finds that the IPP Settlement Class satisfies the prerequisites of Rule 23.

### 1. Adequate Notice Was Provided

A court must "direct notice [of a proposed class settlement] in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). The notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Apple*, 50 F.4th at 779. However, "neither Rule 23 nor the Due Process Clause requires actual notice to each individual class member." *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1121, 1128 (9th Cir. 2017).

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0641**

As detailed above, the Notice Plan was the best notice practicable and reasonably calculated to apprise IPP Settlement Class Members of the Settlement and their rights to object or exclude themselves pursuant to Rule 23(e)(1).

### 2.    The Settlement Is Fair and Reasonable

#### a.    The Settlement Is the Result of Arm's Length Negotiations by Experienced Counsel

Under Rule 23(e)(2), courts determine whether the class was adequately represented by analyzing whether a settlement was negotiated at arm's length. To negotiate a fair and reasonable settlement, "the parties [must] have sufficient information to make an informed decision about settlement." *Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998).

After years of litigation and extensive discovery, counsel for IPPs and Settling Defendants finally reached an agreement to resolve this matter after two full-day mediations with an experienced and well-respected mediator, the Honorable Suzanne Segal, a former Magistrate Judge of the Central District of California. The parties agreed to settle only after both sides accepted Judge Segal's mediator's proposal following protracted negotiations.

The Settlement bears no signs of collusion among the parties. The Ninth Circuit has identified three indicators of potential collusion in the settlement negotiation process: (i) when class counsel receives a disproportionate distribution of the settlement proceeds; (ii) when the parties negotiate a "clear sailing" arrangement providing for the independent payment of attorney's fees; and (iii) when the parties arrange for a reversion of unused funds to defendants. *See In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946–48 (9th Cir. 2011). Here, none of those hallmarks of collusion are present.

Judge Segal's involvement and oversight are a factor in favor of finding fairness and that there was no collusion between the parties. *See Bluetooth*, 654 F.3d at 948 (participation of mediator is not dispositive but is "a factor weighing in favor of a finding of non-collusiveness."); *In re MyFord Touch Consumer Litig.*, No. 13-cv-03072, 2019 WL 1411510, at *8 (N.D. Cal. Mar. 28, 2019) ("[h]ere, the parties reached settlement under the supervision of Judge Kim; indeed, the

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0642**

Settlement Agreement is based on Judge Kim's Mediator's Proposal. Thus, the settlement proposal is the product of arm's-length bargaining.") (citation omitted).

### 3.    The Settlement Agreement Is a Fair and Adequate Result for the Class.

The Court now considers: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of the proposed distribution plan; (iii) the terms of any proposed award of attorney's fees; and (iv) any agreement required to be identified under Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(2)(C).

### a.    The Costs, Risks, and Delays of Further Litigation

The Settlement provides substantial monetary relief—a $32 million non-reversionary fund. The parties reached this Settlement while Defendants' renewed motion to dismiss was still pending, and IPPs were preparing expert reports. "[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial." *In re MacBook Keyboard Litig.*, No. 5:18-cv-02813, 2023 WL 3688452, at *9 (N.D. Cal. May 25, 2023).

The IPPs' damages expert calculated that class damages in the range of $29 million to $165 million. The $32 million Settlement fund lies within the IPPs' expert's damages estimate and represents between approximately 19% to 110% of the preliminary total estimate of damages at trial. The IPPs' recovery is consistent with recoveries approved in this District. *See MacBook Keyboard*, 2023 WL 3688452, at *9 (finding that a settlement amount was satisfactory because it represented "approximately 9% to 28% of the total estimated damages *at trial*"); *Fleming v. Impax Lab'ys Inc.*, No. 16-CV-06557, 2021 WL 5447008, at *10 (N.D. Cal. Nov. 22, 2021) (settlement recovery representing 12.5% of total recoverable damages is "in a range consistent with the median settlement recovery in class actions"); *Deaver v. Compass Bank*, No. 13-cv-00222, 2015 WL 8526982, at *7 (N.D. Cal. Dec. 11, 2015) (finding a settlement that equaled "10.7 percent of the total potential liability exposure, before any deductions for fees, costs, or incentive awards" was "fair and reasonable"); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1042 (N.D. Cal. 2008)

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

(approving settlement accounting for only "9% of the maximum potential recovery").

Given the procedural posture of the litigation, many risks remained that could have resulted in no or significantly less relief for the IPP Settlement Class. Even if IPPs were successful at each stage of litigation, relief for the class could have been further delayed by appeals. *See, e.g.*, *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 118 (2d Cir. 2005) ("Indeed, the history of antitrust litigation is replete with cases in which antitrust plaintiffs succeeded at trial on liability, but recovered no damages, or only negligible damages, at trial, or on appeal.").

The Settlement reflects a fair result considering the potential trial recovery, the numerous dispositive risks, the costs of continuing litigation, and the delay in payment to the class. Here, further litigation poses particular risks and challenges given the complex and international nature of IPPs' claims. *See In re Auto. Refinishing Paint Antitrust Litig.*, 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) (recognizing that antitrust cases carry greater risks than other class actions because they are "arguably the most complex action to prosecute.").

### b.      Distribution

The Court approves IPPs' plan to distribute the proceeds of the settlement fund on a *pro rata* basis to settlement class members in the enumerated Indirect Purchaser States, as reflected in the Settlement Agreement. The Court also approves IPPs' plan to distribute the settlement funds via electronic transfer (e.g., Venmo, PayPal, etc.) or physical check. Funds are to be paid after calculating Settlement Class Members' *pro rata* share of the Settlement Fund based on the aggregate valid claims submitted.

### c.      Attorneys' Fees

The Court will issue a separate order on IPPs' Attorneys' Fees and Costs Motion.

### B.      The Plan of Allocation Treats Class Members Equitably.

As discussed above, IPPs' *pro rata* plan of allocation is approved. A *pro rata* allocation treats all IPP Settlement Class Members fairly because their recovery is tied to the volume and cost of their purchases, the number of other qualified IPP Settlement Class Members making claims against the Settlement Fund, and the size of the overall fund. *Pro rata* distribution is a reasonable

and fair way to compensate classes, especially in antitrust class actions. *See Lithium Ion Batteries,* 2020 WL 7264559, at *7 (approving *pro rata* plan of distribution); *In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. 14-cv-2058, 2017 WL 2481782, at *5 (N.D. Cal. June 8, 2017) (approving settlement distribution plan that "fairly treats class members by awarding a pro rata share to the class members based on the extent of their injuries.") (quotation omitted); *In re High-Tech Employee Antitrust Litig.*, No. 11–cv–02509, 2015 WL 5159441, at *8 (N.D. Cal. Sept. 2, 2015) (approving pro rata distribution); *Four in One Co. v. S.K. Foods, L.P.*, No. 08–cv–3017, 2014 WL 4078232, at *15 (E.D. Cal. Aug. 14, 2014) (approving "plan of allocation providing for a pro rata distribution of the net settlement fund based on verified claimants' volume of qualifying purchases" as "fair, adequate, and reasonable").

The proposed plan of allocation is thus "fair, adequate, and reasonable" and merits approval.

### C.    IPP Settlement Class Members' Positive Reaction to the Settlement Further Supports Approval.

The *de minimis* number of opt-outs and objections further support approval of the Settlement. Only twelve elected to opt-out and only five objected to the Settlement. Such a result weighs in favor of approval. *See Cmty. Res. for Indep. Living v. Mobility Works of California*, *LLC*, 533 F. Supp. 3d 881, 889 (N.D. Cal. 2020) ("The absence of a negative reaction weighs in favor of approval.") (quotation omitted); *In re Nexus 6P Prod. Liab. Litig.*, No. 17-cv-02185, 2019 WL 6622842 at *10 (N.D. Cal. Nov. 12, 2019) (granting approval and holding that zero objections and 31 opt-outs in a class of approximately 511,000 "confirms that the settlement is fair and reasonable."); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.").

IPP Settlement Class Members' positive reaction to the Settlement evinces the success of the notice plan and weighs in favor of final approval.

## VI.    REVERSIONS AND *CY PRES*

There is no reversion of unused funds to the Defendants. Should a balance remain after distribution to the IPP Settlement Class (whether by reason of tax refunds, uncashed checks, or

12

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

otherwise), Settlement Class Counsel may redistribute such Settlement funds to IPP Settlement Class Members that cashed their checks, if economically feasible to do so. *See In re Google Location Hist. Litig.*, No. 18-cv-05062, 2024 WL 1975462, at *7 (N.D. Cal. May 3, 2024) (approving *cy pres* settlement and stating that "[t]he Ninth Circuit permits a *cy pres* distribution in circumstances where the settlement fund is 'non-distributable'"). If unused Settlement funds are not economically feasible to redistribute, Settlement Class Counsel may donate the funds to Stellar Dreams, a program directed by Science Haven, a 501(c)(3) non-profit, subject to the Court's approval.  Stellar Dreams seeks "to close the equity gap in science, particularly astronomy, by giving 100 telescopes, astronomy education, and citizen science opportunities to students in grades 5-12, who come from underrepresented backgrounds in science and astronomy."  *See* https://www.thesciencehaven.org/stellardreams (last visited February 27, 2025).

The Court finds a *cy pres* distribution of a remainder of funds appropriate should it become economically unfeasible to distribute such funds to IPP Settlement Class Members. If *cy pres* is warranted, Stellar Dreams is a proper recipient.

**VII.    OBJECTIONS**

Out of millions of class members, only five objected to the Settlement, many of whom, as further detailed, are not in fact class members: Jason Steele and Pioneer Cycling & Fitness (represented by counsel for Direct Purchaser Plaintiffs), National Woodlands Preservation, Inc., Pat Zhen, and Elman Barnes (collectively, "the Objectors"). The Court finds each objection meritless or procedurally improper because the Objectors are either not members of the Settlement Class or have failed to carry their burden to show that any purported deficiencies render the Settlement or Notice Plan inconsistent with Rule 23 and its governing case law. *See In re Linkedin User Priv. Litig.*, 309 F.R.D. 573, 592 (N.D. Cal. 2015). (approving settlement over objections and stating that "objectors to a class action settlement bear the burden of proving any assertions they raise challenging the reasonableness of a class action settlement.") (citations omitted).

IPPs discuss each objection below.

## A.   Direct Purchaser Plaintiffs' "Conditional Objectors"

DPPs put forth two "Conditional Objectors": Jason Steele and Pioneer Cycling & Fitness LLP ("Pioneer"). ECF No. 400 at 3. For **Pioneer**, DPPs fail to show that Pioneer is a member of the IPP Settlement Class, claiming only that it made "approximately $15,000 worth of telescopes and telescope accessories directly from Celestron." *Id*. Because Pioneer only made purchases directly from one of the Defendants, Celestron, it is not a member of the IPP Settlement Class for indirect purchasers and does not have standing to object. *See, e.g.*, *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 229 F. Supp. 3d 1052, 1071 (N.D. Cal. 2017), *enforcement granted*, 2017 WL 914066 (N.D. Cal. Mar. 6, 2017) ("[Objector] is not a Class Member, and the Court need not consider its objection."); *San Francisco NAACP v. San Francisco Unified Sch. Dist.*, 59 F. Supp. 2d 1021, 1032 (N.D. Cal. 1999) ("[N]onclass members have no standing to object to the settlement of a class action.").

**Jason Steele** made direct and indirect purchases of telescopes[2] between 2009 and 2012. ECF No. 400 at 3. But all of Steele's objections are based on the interests of the DPP class, a class this Court expressly found him to be unfit to represent. *See* DPP Docket, ECF No. 596 at 2 (order stating that "Steele is an individual astronomy enthusiast residing in Texas" and finding "that Steele's interests are misaligned with the class, and his ultimate concern with functionality makes him an inadequate class representative.") DPPs do not argue that the IPP Settlement is unfair or unreasonable to its class members, that Settlement Counsel anything less than zealously represented the Settlement Class, or that there was anything infirm about the Notice Plan or claims

---

[2] DPPs also include purchases of telescope accessories, but accessories are not included in the IPP Settlement Class. *See* ECF No. 397 at 3 (preliminarily certifying the Settlement Class as "all persons and entities in the Indirect Purchaser States who, during the period from January 1, 2005 to September 6, 2023, purchased one or more *Telescopes* from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured.") (emphasis added).

14

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

administration. Instead, counsel for DPPs, representing a wholly separate class and case, request that the Court "not approve the proposed settlement unless and until Defendants disclose information sufficient to prove that they have and will maintain sufficient assets in the United States to both pay the proposed settlement amount to the IPPs and to satisfy an eventual judgment or settlement with the DPPs." ECF No. 400 at 11; *see also Id.* at 5 (concluding that absent the requested relief "it is impossible to determine whether the settlement is fair and reasonable ***to the DPP Class***." *Id*. (emphasis added). But such a demand for discovery by "Conditional Objectors" claiming to advocate for members of a separate class in separate litigation does not relate to whether IPPs' Settlement should be approved.[3]

Because Steele seeks to only advocate from the rights of the DPP class and do not relate to the fairness or adequacy of the IPP Settlement, his objections are overruled.

### B.   National Woodlands Preservation, Inc. ("Woodlands")

Woodlands' objects to the Settlement on the grounds that it believes the claims and distribution process is "defective with respect to non-individual entities" because "[t]here is no place to lodge a business name." ECF No. 401 at 2. The class definition, published on the settlement website, in the Settlement Agreement, in the Preliminary Approval Order, and in all settlement notice materials issued to potential IPP Settlement Class Members made clear that "all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1,

---

[3] The very issues DPPs raise as an objection here are fully briefed and taken under submission on the DPP docket. *See* Mot. for Financial Assurance & Asset Information, DPP Docket ECF Nos. 656. 658, 651, 668, 696, 701, 702, 703, 704. That docket is the proper venue for resolving DPPs' issues, not the IPP docket wherein DPPs seek discovery via objection to a settlement for a wholly separate class. *See In re Apple Inc. Device Performance Litig.*, No. 18-md-02827, 2021 WL 1022867, at *20 (N.D. Cal., 2021) (ruling that "to the extent that [the objector] seeks something more akin to discovery, he is not entitled to it.")

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0648**

2005 to September 6, 2023 purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured" may submit claims. *See* ECF Nos. 390-1, 391-1, 391-3. Entities were able to file a claim by putting its name into the "First Name" or "Last Name."

Although entity claimants appear to have understood that they could file a claim based on the fields in the paper and online Claim Forms, at Settlement Class Counsel's instruction, Verita updated the Claim Form to include an additional row for "Name of Entity."

Therefore, Woodlands' objections are overruled as moot.

### C.      Elman Barnes

Barnes objects on the grounds that: (1) the claims process discriminates against retail purchasers; (2) Verita and Settlement Class Counsel were not diligent enough in providing claim numbers; (3) the Settlement improperly includes a California Civil Code § 1542 waiver; and (4) the claim form improperly asks for state of residence.

### 1.      The Claims Process Treats All Potential Class Members Fairly

Barnes, after contacting Verita on February 7, 2025, was issued a claim number and made an online claim on February 15, 2025. Any person or entity that believed they purchased a subject Telescope could submit a claim, whether or not they have a claim number. Any claimant without a claim number could contact Verita to have one generated, allowing them to make an online claim.

Barnes objected because he believed he was treated unfairly because "must go through an onerous process" of filling out the form by hand and electing to receive a physical check. ECF No. 399 at 2-3. The Court disagrees that having to file a paper claim prejudices a potential claimant. As this Court weighed in approving IPPs' Notice Plan, courts routinely approve and order claims administration protocols that utilize physical claims and checks. For instance, *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 941 (9th Cir. 2015), the Ninth Circuit affirmed approval of a settlement where claimants "could submit a claim for a gift card via e-mail, the class action website, or regular mail" but could "submit a claim for cash by regular mail only, and had to include the last four digits of his or her Social Security Number." *See also In re Google Plus Profile Litig.*, No. 18-

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0649**

cv-06164, 2021 WL 242887, at *4 (N.D. Cal. Jan. 25, 2021) (approving settlement over objections regarding method of payment); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09–cv–01911, 2015 WL 428105, at *9 (N.D. Cal. Jan. 30, 2015) (approving settlement over objections regarding issues with online versus paper claim forms). All claims, regardless of how they are submitted, are treated equally by the claims administrator.

That Barnes or any other claimant had to fill out and mail a standard claim form and receive payment by check does not prejudice them or treat them unfairly.

### 2. Verita Diligently Provided Claim Numbers

Verita promptly issued claim numbers to potential class members who inquire, including Barnes, who then made an online claim. Throughout the claims process, Verita responded to ___ inquiries about claim numbers and provided them, typically responding within a week. Barnes himself received a claim number within a week by utilizing this simple process. The toll-free hotline to call for general inquiries is listed clearly on both the claim form and settlement website. Although this service was available to all since the beginning of the claims process, at counsel's direction, Verita added a new dedicated toll-free hotline specific to claim number requests. Language directing claimants to the hotline now features prominently on the settlement website.[4] That potential class members may have to communicate with the claims administrator to receive a claim number, is not legitimate grounds for an objection because it does not prejudice any class members. *See, e.g. In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 329–30 (approving settlement and overruling objections based on difficulties communicating with the settlement administrator and utilizing the claims website).

---

[4] The language reads "If you wish to file a claim online but have not received a claim code, please call 866 568 7713 to speak to the Settlement Administrator about generating one." It is featured on both the website's homepage and in the FAQs regarding how to make a claim.

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0650**

### a.   The Claim Number Protocol Protected Against Fraud Online

Potential IPP Settlement Class Members who submit claims online were required to have a claim number to protect against fraudulent claims. When the claims process opened on December 13, 2024, the online claims process was open to anyone, regardless of whether they had a claim number. On or around January 5, 2025, Verita detected a drastic increase in the number of claims filed per hour. This sudden influx of claims, combined with the absence of a requirement for claim numbers and other anomalies, raised concern about the potential for fraudulent activity. In response, Verita conducted a thorough and comprehensive analysis, focusing particularly on claims submitted during the spike. As detailed above, Verita identified over a million claims as potentially fraudulent based on its analysis. *Id*. The requirement of either a claim number for online claims or a paper claim for claims without claim numbers responded to the wave of fraudulent claims described above and effectively reduced claims that are likely fraudulent to the benefit of true IPP Settlement Class Members.[5]

### 3.   § 1542 Waivers are Commonplace

Barnes also objects to the Settlement's inclusion of a waiver under California Civil Code § 1542. ECF No. 399 at 5. But § 1542 waivers are not only commonplace in class action settlements, they are often a necessity.  For instance, the court in *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs., & Prods. Liab. Litig.*, No. 10-md-02151, 2013 WL 12327929, at *23 (C.D. Cal. July 24, 2013), discussed this issue in rejecting an objection to the 1542 waiver, citing a string of class cases approving settlements that include them.  It reasoned, "Class settlements often waive this protection, and such waivers are not generally viewed as an impediment

---

[5] Issuing paper checks to claimants who submitted paper forms is the procedure for distributing the Settlement Fund because, in Verita's experience, when claimants handwrite their Venmo or PayPal account information, unclear handwriting sometimes renders Verita unable to get the payment to the right account.

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0651**

to class settlement . . . the Court is dubious as to whether the class claims could be settled absent such a waiver.") *Id.*

Such waivers are uncontroversial in the class action context because, like all class settlements, the extent of any release is constrained by the identical factual predicate doctrine. *See, e.g., Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (applying the identical factual predicate doctrine to a class action settlement release); *Gallucci v. Boiron, Inc.*, No. 11-cv-2039, 2012 WL 5359485, at *11 (S.D. Cal. Oct.31, 2012) (finding "[a] majority of circuits, including the Ninth Circuit, uphold the release of claims that are based on the same factual predicate as the claims asserted in the complaint.") (citations omitted); *Miller v. Wellpoint Companies, Inc.*, No. 09-cv-5666, 2010 WL 11520703, at *3 (C.D. Cal. May 17, 2010) ("The release is not so broad as to extend beyond the "identical factual predicate" of this case, which the Ninth Circuit has held to be the appropriate outer scope of a class action release. Although there is an extended discussion in the Settlement Agreement itself regarding a waiver of Cal. Civ. Code § 1542, the release language itself—even its reference to unknown claims—does not suggest that class members are releasing more claims than would be permissible, and therefore does not seem to be problematic.") (citing *Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 748 (9th Cir. 2006) (applying the identical facture predicate doctrine to a settlement's release).

Because § 1542 waivers are routinely approved in class settlements, and like all class action releases, are limited by to the facts alleged, Barnes objection is overruled. *See Estorga v. Santa Clara Valley Transportation Auth.*, No. 16-cv-02668, 2020 WL 7319356, at *5 (N.D. Cal. Dec. 11, 2020) (approving settlement and holding that "waiving rights under Section 1542 of the California Civil Code is a common and accepted practice in this District").

### 4. Barnes' State of Residence Objections Are Incorrect and Moot

Barnes also objects because he believes that requesting a claimants' "'State of Residence' is not relevant." ECF No. 399 at 6. Indirect purchaser settlements regularly collect this information. *See Lithium Ion Batteries*, 2020 WL 7264559, at *12 (granting final approval of settlement that requested state of residence information). Here, all individuals and entities that indirectly purchased

one of the Defendants' telescopes were encouraged to submit a claim. Whether that claim will be valid depends on several factors, including the place of purchase, not simply legal residence, as analyzed by Verita and Settlement Class Counsel during the claims process. The Settlement does not limit claims to residents of *Illinois Brick* repealer states because it is defined as "all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured." ECF No. 390-1 at 3-4. The language "in the Indirect Purchaser States" means at the time of purchase. The settlement website makes this clear, stating that the Settlement "includes everyone who indirectly purchased one or more telescopes from January 1, 2005 to September 6, 2023, from a distributor/retailer that was manufactured by a defendant or alleged co-conspirator, ***while located*** in" an Indirect Purchaser State. ECF No. 399 at 7 (emphasis added).

In any event, the issue upon which Barnes mistakenly objects does not even theoretically affect him. As he details, he is both a resident of California and purchased his telescope in state and made an online claim. *Id.* at 1. While processing claims, none will be denied solely because a claimant lists a non-repealer state as the state of residence. If a non-repealer state is listed, Verita will follow up with the claimant to determine the state in which a purchase was made, to the extent it is different than the listed state of residence. To more efficiently gather this information, Verita, at counsel's direction, has added a "State in which purchase was made" line to the claim forms. For the remaining claims period, all potential claimants will be asked for both their state of residence and state of purchase.

For the reasons above, Barnes' objections are overruled or disregarded as moot.

20

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0653**

**D.     Pat Zhen**

Zhen is not a class member because he purchased a telescope in Puerto Rico, which is excluded from the settlement class.[6] *See* ECF No. 390-1 at 6. The definition of "Indirect Purchaser States" in the Settlement Agreement does not include Puerto Rico. Further, the release of claims is limited to class members who made purchases in Indirect Purchaser States only (which does not include Puerto Rico), so there is no possibility of harm to those who indirectly purchased subject telescopes in Puerto Rico because they are still free to bring their own claims, to the extent a court disagrees with the number of courts in this district that have found Puerto Rican indirect purchasers to lack standing to bring indirect claims. Zhen is therefore not a class member and lacks standing to object. None of his claims are being released by the settlement, and his arguments are therefore not considered.

Zhen's objections are overruled.

**E.     Mike Sussman**

Sussman objects for similar reasons to Barnes regarding having to file a paper claim and his objections are overruled for the reasons detailed above. Sussman also objects because he believes that the Court-approved notice plan did not provide adequate information regarding how and where to object. But all the information he demands is found in the Settlement website's FAQs. *See* "12. How do I submit an objection to the Settlement?" available at

---

[6] The Court notes that courts throughout the Ninth Circuit, this district, and the country, have held that Puerto Rico is not an *Illinois Brick* repealer jurisdiction. *See, e.g., Staley v. Gilead Scis., Inc.*, 446 F. Supp. 3d 578, 626 (N.D. Cal. 2020) (dismissing claims under the Puerto Rico Antitrust Act and holding that "Puerto Rico does not have an *Illinois Brick* repealer statute."); *In re Loestrin 24 FE Antitrust Litig.*, 410 F. Supp. 3d 352, 373 (D.R.I. 2019) ("join[ing] the majority of courts in concluding that the [indirect purchasers] do not have standing to bring antitrust claims under Puerto Rico law").

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0654**

https://www.telescopesettlement.com/frequently-asked-questions.aspx (last visited February 27, 2025). The FAQ answer provides detailed instructions of the who, what, when, and where of objecting to the Settlement. *Id*. Moreover, the Court-approved long form notice provides over nearly two pages of instructions regarding how to object. *See* ECF No. 391-4 at 7-8. Sussman's objection regarding the objection protocol is therefore overruled.

## VIII.    MISCELLANEOUS

Defense Counsel and Settlement Class Counsel are hereby authorized to utilize all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order or the Settlement Agreement.

This Order may be modified by the Court upon motion by either or both parties, for good cause shown.

## IX.    CONCLUSION

For all the reasons set forth above, the Court: (1) grants final approval of the Settlement; (2) confirms certification of the Settlement Class; (3) confirms Class Representatives as representatives for the certified Settlement Class; (4) confirms Settlement Class Counsel as counsel for the certified Settlement Class; (5) dismisses with prejudice all claims against Defendants; and (6) approves the proposed Plan of Allocation.

**IT IS SO ORDERED, ADJUDGED AND DECREED.**

Dated:_____

_____

Hon. Edward J. Davila
UNITED STATES DISTRICT JUDGE

[PROPOSED] ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT

**4-ER-0655**

Mike Sussman
23200 Camino del Mar #503
Boca Raton, FL  33433
mike.sussman@pm.me

**F I L E D**

February 13, 2024

**FEB 26 2025**

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

United States District Court
280 South 1st Street, Room 2112
San Jose, CA 95113

In re:  Telescopes Antitrust  5:20-cv-03639 EJD

To the Clerk:

I am writing as to the horrendous procedure that people have to go through to file objections and/or a claim in this case.  I believe this procedure will result in an extremely low number of objections and claimants.

As to objections, I am not sure of the proper procedure.  The website www.telescopesettlement.com simply says:  **If you want to opt out or object, you must do so by February 13, 2025.**  However, it gives no information where to send the objection, whether it goes to the claims administrator, class counsel, or the clerk.  If the Clerk, is it a form, a letter, a motion?  I assume the Clerk, so I had to go to the Court's website to get that address.  The FAQ page says:  **"If you are a member of the settlement class and do not opt out, you can object to the settlement if you do not like it.  The deadline to object is February 13, 2025."**  Again, no information on how to do an objection.  I am sure not many consumers will waste their time trying to navigate the cryptic maze of how to object.  The very minimum, the website should explain exactly what a person needs to do to let the Court know if they don't like this settlement.  At the very least, they should provide the address to send objections to.

My problem that led to the objection is about the method used to file claims, which is confusing and meant for little work to be done by the administrators of the class action.  If you received a claim number, you can file a claim online.  But I understand that only a select few have received these claim numbers.

Despite my purchasing a Celestron PowerSeeker 80AZS Telescope about 7 years ago via Target, I did not receive any claim number.

Therefore the website makes me do a paper claim form.  To get the paper claim to fill out, the website requires I enter my name and address.  The form then comes out in a PDF that I must print.  The printable PDF, despite giving the address and name, requires filling in that same information again (name and address).  For what?  To make it hard.  The name and address is already printed on it.  Then I must make an envelope and mail that form in.

Then the form asks what kind of payment I would like.  I can choose paper check or I can check a box that says, "If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com."

**4-ER-0656**

SUSSMAN
23200 CAMINO DEL MAR APT 502
BOCA RATON, FL 33433-7157

CLERK US DISTRICT COURT
280 S 1ST ST RM 2112
SAN JOSE CA 95113-3008

LGL5077A05A0AAA.049066.01.02.000000

I am perplexed as to how the second option can be accomplished considering that they did not provide me with a claim number and only gave a small group those numbers.

The question that must be asked is, "Is anyone really going to do this?" I am sure that despite I think 4,000,000 potential claimants, only a teeny tiny fraction is going to do all this circling around. After all, most people do not use postal mail.

If the settlement administrator is trying to avoid fraudulent claims, this is the easy way out. A better way would be to examine claims when multiple claimants share the same address (more claims than would be logical), limit electronic payments to one per Paypal address, one per Zelle address, one per Venmo, etc. (It doesn't make sense for a scammer to try to submit two claims to a single address, it'd be more easy to just submit a claim with multiple telescopes which could be looked at as well).

For that reason, I do not think the settlement should be approved unless Class Counsel takes the necessary steps to correct this absurd objections and claims process to make sure people who want to object can figure it out and those who want to file a claim can easily seek payment without the burden of sending in a form.

I would prefer an electronic payment. However, it refers me back to the website that stops me from filing a claim, so it is not possible. Everyone should receive the same options, such as an easy online form and a choice of payment methods.

Please make Class Counsel do their job and advocate for the class members. I know this CPM law firm thinks their advocacy ends upon receiving a settlement and at that time they just ignore problems claimants have or actually attack their claimants. I read a lot of bad things about how they mistreat people who complain. This shouldn't be. They need to focus their energy on fixing things, working with the claimants who have better ideas than they do, having better claims management software, etc.

Thank you for your time and help in making class actions great again.

Very truly yours,

Mike Sussman

Pat Zhen
PO Box 366047
San Juan PR  00936
legal@patzhen.com
(787) 523-8040

**FILED**

FEB 19 2025

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST        No. 5:20-cv-03639-EJD
LITIGATION

This Document Relates to:
Indirect Purchaser Actions

### OBJECTIONS TO THE SETTLEMENT

Objector Pat Zhen, a retail purchaser of a telescope covered by the class

action and a Citizen of Puerto Rico, objects to the settlement in that it

discriminates against indirect purchasers who made their purchases in Puerto

Rico by not providing a payment, but it appears to waive their rights (See

Settlement Agreement, definition of "class" not being limited to repealer states). [1]

---

[1] The "Class" or "Settlement Class" is defined as all persons and entities in the Indirect Purchaser States (as defined herein) who, during the period from January 1, 2005 to 27 September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all Persons who directly purchased Telescopes from Defendants but only for those direct purchases of Telescopes.

Puerto Rico is a repealer territory of the United States.[2] As the United States District Court for the District of Minnesota stated in *In re: Pork Antitrust Litigation,* 495 F.Supp.3d 753, 900-801 (D. Minn. 2020): "The Court agrees with the U.S. District Court for the District of Puerto Rico, which has twice concluded that the Supreme Court of Puerto Rico has rejected *Illinois Brick* and allows indirect purchasers to sue for damages under the PRAA. *Rivera-Muniz v. Horizon Lines*, Inc., 737 F. Supp. 2d 57, 61 (D.P.R. 2010) (citing *Pressure Vessels of P.R., Inc. v. Empire Gas de P.R.,* 137 D.P.R. 497, 509-18 (1994)); *Rivera-Muniz v. Horizon Lines, Inc.,* Civil No. 09-2081 (GAG), 2010 WL 3703737, at *2 (D.P.R. Sept. 13, 2010) (denying defendants' motion to certify a question to the Puerto Rico Supreme Court asking whether indirect purchasers may bring claims under the PRAA because, "[w]ithout citing *Illinois Brick* explicitly, the Puerto Rico Supreme Court rejected such limitations on standing for the purpose of private antitrust actions under PRAA").

The Northern District of California, in *In re Xyrem (Sodium Oxybate) Antitrust Litig.,* 555 F. Supp. 3d 829, 886-887 (N.D. Cal. 2021), reached the same conclusion and found that the Puerto Rico Supreme Court rejected *Illinois Brick.* Therefore, the Court allowed claims of damages for indirect purchasers. *See also , In re Zetia (Ezetimibe) Antitrust Litig.,* 400 F. Supp. 3d 418, 433 (E.D. Va. 2019) (holding same); *Sergeants Benevolent Ass'n Health & Welfare Fund v.*

---

[2] Section 258 of the Puerto Rico Antitrust Act ("PRAA"), P.R. Laws. Ann. tit. 10 §§ 257–276, is equivalent to a § 1 claim under the Sherman Act. See *Shell Co. (Puerto Rico) Ltd. v. Los Frailes ServStation, Inc.*, 551 F. Supp. 2d 127, 135 (D.P.R. 2007), aff'd, 605 F.3d 10 (1st Cir. 2010) ("Puerto Rico courts generally follow federal antitrust law when interpreting local antitrust laws[.]").

*Actavis, plc,* No. 15-CV-06549-CM, 2018 WL 7197233, at *23 (S.D.N.Y. Dec. 26, 2018).

This Court should give deference to the decisions of the District of Puerto Rico in interpreting Puerto Rico law. *In re: Xyrem,* 555 F.Supp at 887.

The settlement, waiving the claims of Puerto Ricans but not providing them a payment is against public policy as it violates the anti-discrimination Order of the Puerto Rican Department of Commerce, No. 2011-006. In addition, it denies Puerto Ricans due process since it waives their damage claims and binds them to a settlement where they receive nothing despite being a repealer territory.

Failing to include payment to Puerto Rico claimants but waiving their rights also violates Fed. R. Civ. Proc. 23(e)(D) as it does not treat Puerto Rican purchasers equitably relative to purchasers in other repealer areas. Class Counsel is not fairly and adequately representing the interests of Puerto Rican purchasers despite including them in the settlement class. Fed. R. Civ. Proc. 23(g)(4).

If Class Counsel is unwilling to represent class members from the United States repealer territory of Puerto Rico, it should not enter any settlement as to purchasers in Puerto Rico. *See In re Cathode Ray Tube Antitrust Litig.,* No. 07-CV-5944-JST, 2018 WL 11292347 (N.D. Cal. Nov. 8, 2018)(court recognizing error in approving release of claims while not providing compensation for residents in certain repealer states).[3]

_____

[3] The Court in the *CRT* case ultimately approved reducing the settlement by a certain percentage and dismissing the claims of the unrepresented repealer states so that residents of those states could file their own action. This reduced the prejudice caused by not providing compensation to members of those repealer states since they could sue. In this case, the Puerto Rico claims are

In the *In re: Cathode Ray Tube* case, the district court expressed concern about counsel's failure to advocate for the repealer states and held that it most probably was a conflict of interest.  Eventually, the district court appointed new counsel for those omitted repealer states.

This Court must protect persons who purchased their telescopes in Puerto Rico or had them shipped using a retailer such as Amazon to Puerto Rico.  Unless the parties agree to adopt the claims and provide payment to persons in the repealer Territory of Puerto Rico under the settlement, rejection of the settlement must occur.  Alternatively, this Court must completely remove the prejudice to Puerto Rico purchasers and allow them to bring their own antitrust action by not waiving their antitrust claims or finding that they are bound by the settlement agreement.

Respectfully submitted,

_____

Pat Zhen

_____

being settled without compensation causing extreme prejudice to the Objector and those similarly situated.

4-ER-0662

ZHEN
BOX 366047
SAN JUAN PR 00936

**RECEIVED**

FEB 19 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

SP 02        32627297

CLERK, US DISTRICT COURT
280 South 1st Street, RM 2112
San Jose CA 95113

4-ER-0663



PRESORTED
FIRST-CLASS MAIL
US POSTAGE PAID
MADISON WI
PERMIT NO 1480



118225613   58  1.4  LQQ-NF2  95113

**FILED**

FEB 14 2025 — URT

CLERK, U.S. DISTRICT COURT
NORTH DISTRICT OF CALIFORNIA
SAN JOSE OFFICE

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE: TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD

LITIGATION

This Document Relates to:

Indirect Purchaser Actions

### OBJECTIONS TO THE SETTLEMENT

National Woodlands Preservation, Inc., a West Virginia corporation, objects to proposed settlement pursuant to Federal Rule of Civil Procedure 23(e)(2)(C)(ii) because the "method of processing class-member claims" and the "proposed method of distributing relief to the class" appears defective with respect to non-individual entities.

Specifically, corporations, business entities, colleges, universities, educational institutions, government agencies, and similar

**4-ER-0665**

non-individuals purchased telescopes during the class period.[1]  However, neither the physical claim form nor the online claim form provides the ability of an entity to lodge a claim.  The form only allows individuals to file a claim.  There is no place to lodge a business name.

In addition, the settlement website uses verbiage that infers the settlement is open only to individuals.  It states, "Did **you** purchase a telescope from January 1, 2005 to September 6, 2023?"  "**You** need to make a desicion [sic] about the settlement. To make the best decision for **yourself**, read on."  This infers the settlement is open only to individuals.

Finally, no form of advertising was targeted to the types of institutions and businesses – primarily education and research entities – to provide them notice of the class action or allow them to understand that the class action is open to them and not just individuals.

Therefore, this Court must:  (1) Direct modification of the claim form to allow business claims; (2) Direct modification of the website to make it clear that entities can file claims; (3) Direct advertisement and media to businesses such as schools, astrology research centers, planetariums, etc.,

---

[1] During 2019 and 2020, National Woodlands Preservation Inc. purchased two telescopes that are subject to this class action.  The purchases were made from distributors of telescopes in West Virginia and not directly from a manufacturer.

and make it clear that institutional and entity claims are allowed; and (4)

Expand the deadline for businesses to file claims to provide the same

opportunities that businesses had.

Respectfully submitted,

K. Luna
Chief Executive Officer
National Woodlands Preservation Inc.
110 James Street
Hinton WV  25951

Powered by:
**verita**

File a

Home   Case Documents   Important Dates & Deadlines   Frequently Asked Questions   Contact Information

# Claim Form

*Required Fields

*First Name

*Last Name

*Current Address

Current Address Continued

*City

*Country

| UNITED STATES | ⌄ |

*State

| Select | ⌄ |

*Zip Code



**4-ER-0668**

*Telescopes Antitrust Litigation*
Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172

## CEHI



61102158701

CEHI-61102158701

k luna

110 james street

hinton, WV 25951

US

VISIT THE SETTLEMENT WEBSITE BY
SCANNING THE PROVIDED QR CODE

*In re Telescopes Antitrust Litigation Indirect
Purchaser Actions*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case No. 5:20-cv-03639-EJD

**Must Be Postmarked
No Later Than
May 20, 2025**

## Claim Form

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **May 20, 2025** AT
**www.telescopesettlement.com**, OR FILE BY MAIL POSTMARKED BY **May 20, 2025**.

Questions? Call 1-833-419-3506 or visit the website, **www.telescopesettlement.com.**

If you wish to receive any payment pursuant to the Settlement Agreement electronically,
please submit your claim online at www.telescopesettlement.com.

### CLASS MEMBER INFORMATION:

First Name            M.I.    Last Name

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City            State    ZIP Code

Email Address

—      —

Area Code    Telephone Number

*Failure to add your unique ClaimID, which can be found with your notice or by contacting the Settlement Administrator,
will result in denial of your claim. If you received a notice of this Settlement by U.S. mail, your unique ClaimID is on
the email or postcard. If you misplaced your notice, please contact the Settlement Administrator at* 1-833-419-3506 *or*
admin@telescopesettlement.com.





| FOR CLAIMS PROCESSING ONLY | OB | CB | DOC | RED |
|---|---|---|---|---|
| | | | LC | A |
| | | | REV | B |

**4-ER-0669**

## ELIGIBILITY:

1. Did you purchase one or more Telescopes branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell from a retailer or distributor from January 1, 2005 to September 6, 2023?

   Yes *(Proceed to Question 2)*      No *(You are not eligible to submit a claim)*

2. If you answered "Yes" to Question 1, please enter your purchase information below:

Make

Model

_____ / _____ / _____
Date of purchase

State of residence at time of purchase

$ _____ . _____
Amount

Name of retailer or distributor where Qualifying Telescope was purchased

**If you purchased more than one telescope, please fill out all the information listed in Question 2 for each purchase on the additional page found at Appendix A or submit your claim online at www.telescopesettlement.com.**

**You do not need to submit receipts or confirming documentation at this time, but counsel for the Settlement Class may require it if an issue arises regarding the validity of your claim.**

## PAYMENT SELECTION:

How would you like to receive your payment? Choose **one** of the following:

**I wish to receive any payment pursuant to the Settlement Agreement by check at the address in the Class Member Information section.**

## OR

**If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com.**

This information will be kept confidential by the Settlement Administrator.

## CERTIFICATION AND SIGNATURE:

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____    Dated (mm/dd/yyyy): _____

Print Name: _____



2

**4-ER-0670**

National Woodlands Preservation Inc
110 James Street
Hinton WV  25951

PROVIDENCE RI  028

11 FEB 2025 PM 4  L

RECEIVED

FEB 14 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN JOSE

Clerk
US District Court
280 South 1st Street, Room 2112
San Jose, CA 95113

95113-300837

INSPECTED BY

**4-ER-0671**

Elman Barnes
401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

**FILED**

FEB 1 2 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Objector

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

IN RE TELESCOPES ANTITRUST          No. 5:20-cv-03639-EJD
LITIGATION

This Document Relates to:
Indirect Purchaser Actions

## OBJECTIONS TO THE SETTLEMENT AND THE ADMINISTRATION THEREOF

Objector Elman Barnes (hereinafter "Objector") hereby states that he purchased an Orion telescope for approximately $250 at the Country Club Centre Walmart Supercenter in Sacramento in 2013 and is a member of the settlement class.

### I.    The Claims Process is Designed to Discourage Participation and Improperly Discriminates Against Retail Purchasers

Pursuant to Rule 23(e)(2)(C)(ii), this Court must review "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims."

Objector never received a mailed notification about the settlement nor otherwise received a claim number. The reason for this is obvious: Like many indirect purchasers shopping retail, the manufacturer would not know the name of the purchaser. Indeed, if Objector purchased the

item directly from a manufacturer, he would not be eligible for participation in the indirect settlement.[1]

Objector found out about the settlement online and visited the settlement website to find out more. Objector found that to enter a claim online he needed a **claim number**, which he does not possess since he is not one of the 4% of the potential class members on the Settlement Administrator's list of 166,875 purchasers. See https://veritaconnect.com/telescopesettlement/Claimant



Because Objector did not have a claim number, he selected the third option to download a personalized claim form. The claim form generated is attached hereto and incorporated herein by reference as Exhibit B. The claim form is a true and correct copy of the resulting claim form downloaded from the website.

The generated claim form states on Page 2, under the "Payment Selection" heading:

---

[1] The Settlement Administrator noted there are approximately 4,000,000 potential claimants and that 2,500,000 persons consist of Amazon.com purchasers. The Settlement Administrator stated that notice could be provided via Amazon, but it is unclear if the Amazon customers received the claims codes needed to file their claim online. Class Counsel should provide additional information in this regard. Furthermore, the Settlement Administrator maintains a class list of 166,875 records, about 4 percent of the potential claimants. Everyone else is prohibited from filing an online claim and must provide a paper claim via mail.

"If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com."

Objector *can't* submit his claim online because he does not have a claim number. Thus, the objector *can't* obtain a non-check form of payment.

This creates a situation where some class members who are contained on the small list of 166,875 class members are: (1) Provided an easy method to submit their claim; and (2) Are able to receive an easy form of payment such as electronic payment. For the other 96% of potential claimants like Objector, they must go through an onerous process.

Objector thus falls into the following subclass of class members: "Class members who purchased a telescope but do not appear on the list of 166,875 class members maintained by the settlement administrator."

Because of the favorable treatment provided to the 166,875 class members who received a claim number including an easy online form to fill out and different payment options, retail purchasers falling into Objector's sub-class are being discouraged from participation due to the onerous paper claims process and requirement to receive a paper check.

In addition, the 166,875 purchasers who received a claim number and the sub-class who did not necessarily means that the proposal does not treat "class members equitably relative to each other" in violation of Rule 23(e)(D). 96% of potential claimants fall into the paper-claim only group (unless the Amazon purchasers received actual claim numbers).

This also demonstrates that the named class members may "fairly and adequately protect the interests of the" 166,875 Class Members with claim numbers, but they clearly are not protecting the interests as to the Class Members who did not receive a claim number.

Indeed, by making onerous and difficult provisions as to persons who did not receive the claim number, Class Counsel is violating Rule 23(g)(4) by not adequately representing the interests of the class members, but only the 166,875 favored class members who received a claim number.

Certainly, forcing the normal retail buyer to submit a claim by paper and limiting them to receiving payment by paper check while other claimants received special and favored treatment, will discourage participation in this action by those forced to jump through hoops that the favored list of claimants do not have to.[2]

## II.    If the Favored List is Appropriate, Class Counsel and the Settlement Administrator Must be More Diligent in Providing Claim Numbers

As explained, the list of Class Members who can be identified include 166,875 persons of a potential 4,000,000 claimants. However, only the favored persons receive claim numbers enabling an online claim and an electronic payment.

This Court should require full disclosure and determine whether Class Counsel and the Settlement Administrator can proactively obtain additional names to provide claim numbers to so that maximum reach occurs. Indeed, there will be a large disproportionate participation rate as to the select group of claimants who received a claim number and those who purchased the item retail and are not contained on any preferred claimant list.

This Court must also explore whether the 1,500,000 Amazon purchasers received claim forms or whether they were simply directed to the website and forced to download a paper form, fill it out, and mail it in. If so, why could the Settlement Administrator not provide claim numbers to these identifiable individuals?

---

[2]

Furthermore, why could the Settlement Administrator not have obtained similar lists from websites such as Walmart.com (which allows third-party vendors to sell their items and Walmart is used only as a checkout), e-Bay.com (which allows vendors to sell new products), etc.

It is clear that having a list of 166,875 potential claimants, giving them claims numbers and electronic payment choices, and then forcing all of the rest of the claimants to download a paper form, fill it out, mail it in, and then receive a paper check is not adequate to achieve a fair response and large number of claims.

### III. The Settlement Improperly Contains a Waiver of Civil Code 1542 Provisions

Paragraph 13 of the Settlement Agreement states that to participate in the settlement, Class Members must waive California Civil Code § 1542. It is unreasonable to force consumers to voluntarily waive legal provisions that the legislature has bestowed upon them. Unknown claims should be excluded from the release provided by Class Members to the defendants.

There are then listed categories of causes of action that the settlement does not resolve such as product liability and personal injury claim, but the so-called "unknown" claims encompassed in the Section 1542 waiver is undefined and without any explanation.

California Civil Code 1542 provides that, "A general release does not extend to claims that the creditor or releasing party does not know or suspect to exist in his or her favor at the time of executing the release and that, if known by him or her, would have materially affected his or her settlement with the debtor or released party."

This statute exists to protect individuals from waiving rights they could not have known about. "Mere recital...that the protection of Civil Code, section 1542 is waived, or that the release covers unknown claims or unknown parties is not controlling." *Leaf v. City of San Mateo*, 104

Cal.App.3d 398, 411 (1980).

Neither Class Counsel nor the district court advised why the vast waiver of Section 1542 is appropriate in this case limited to antitrust matters, or even why it is needed. California courts have explained that the waiver requires analysis and is generally "not appropriate." California courts require authority and factual reasons why the case is an exception. *Israel-Curley v. California Fair Plan*, 126 Cal.App.4th 123, 129 (2005); *Salehi v. Surfside III Condominium Owners' Assn.*, 200 Cal.App.4th 1146, 1159–1161 (2011).

In this case, since the Class Action only resolves and relates to antitrust matters including unjust enrichment stemming from the antitrust claims, this Court must ask itself, "What purpose does the 1542 waiver of 'unknown' claims serve?"

For this reason, the settlement should be disallowed unless the waiver is removed.

## IV. The Claim Form Improperly Asks for the State of Residence

The paper claim form that claimants have to fill out asks the misleading question, "State of residence at time of purchase." This is to determine if the purchase qualified as one in a repealer state.

The "State of Residence" is not relevant. The relevant question is the state where the purchase occurred. As an example, a claimant "residing" in northern Pennsylvania does not live in a repealer state; however, if he made the purchase just over the border in New York state, the antitrust tort occurred in New York and his purchase would be eligible.

On the other hand, a person who is "residing" in New York, but purchased the item in Pennsylvania, would not be eligible.

4-ER-0677

The website uses the phrase that the settlement "includes everyone who indirectly purchased one or more telescopes from January 1, 2005 to September 6, 2023, from a distributor/retailer that was manufactured by a defendant or alleged co-conspirator, while located in [the relevant states]." This language is more accurate, because a person is located in the state where they made the purchase at the time of the purchase, but it is still confusing and ambiguous language because a person might consider themselves located in New York because they have an apartment there, but they are technically ineligible if they drove to Pennsylvania to make the purchase.

The danger of the claim form is that it discourages persons who are eligible not to file because they do not "reside" in a non-repealer state. The proper language on the claim form must be: "What state did you purchase the telescope in?" Or "Did you purchase the telescope while in one of the following states:  XXXXX."

It is imperative that this Court rectify the matter and require the claim form and settlement to specify that the eligible claimants are based on the place of purchase and/or where the consumer received the product, and **not** the place of residence as the claim form so wrongly demands certification of.

## V. This Court Should Appoint Counsel for the Sub-Classes

Lastly, it would appear that there is a reasonable possibility that, upon review of this objection, Settlement Administrator veritas might proceed to issue Objector with a claim number so that he can proceed to file his claim online, so as to moot his objection. While Objector would certainly appreciate being made able to file his claim online, Objector respectfully requests that the Court declare that Objector is part of a similarly situated sub-class of Class Members that were never provided with any claim number, and that Class Counsel be directed to direct

Settlement Administrator Veritas to make the necessary changes to the claims process overall so as not to violate Rule 23 and thereby create subclasses that are being treated unfairly as compared to the rest of the Class. Or if current Class Counsel is unwilling or unable to direct the Settlement Administrator in this regard, then separate counsel should be appointed for the sub class.

Respectfully submitted,

Elman Barnes

*Telescopes Antitrust Litigation*
Settlement Administrator
P.O. Box 301172
Los Angeles, CA 90030-1172

## CEHI


61101012701

CEHI-61101012701

Elman Barnes

1401 21st St STE R

Sacramento, CA 95811

US



**VISIT THE SETTLEMENT WEBSITE BY
SCANNING THE PROVIDED QR CODE**

*In re Telescopes Antitrust Litigation Indirect
Purchaser Actions*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Case No. 5:20-cv-03639-EJD
**Must Be Postmarked
No Later Than
May 20, 2025**

# Claim Form

COMPLETE AND SIGN THIS FORM AND FILE ONLINE NO LATER THAN **May 20, 2025** AT
**www.telescopesettlement.com**, OR FILE BY MAIL POSTMARKED BY **May 20, 2025**.

Questions? Call 1-833-419-3506 or visit the website, **www.telescopesettlement.com.**

If you wish to receive any payment pursuant to the Settlement Agreement electronically,
please submit your claim online at www.telescopesettlement.com.

## CLASS MEMBER INFORMATION:

First Name                                    M.I.    Last Name

ClaimID from Email or Postcard Notice (if you did not get a notice, leave this blank)

Primary Address

Primary Address Continued

City                                    State    ZIP Code

Email Address

Area Code    Telephone Number

*Failure to add your unique ClaimID, which can be found with your notice or by contacting the Settlement Administrator,
will result in denial of your claim. If you received a notice of this Settlement by U.S. mail, your unique ClaimID is on
the email or postcard. If you misplaced your notice, please contact the Settlement Administrator at 1-833-419-3506 or
admin@telescopesettlement.com.*


61101012701

| FOR CLAIMS PROCESSING ONLY | OB | CB | DOC | RED |
|---|---|---|---|---|
| | | | LC | A |
| | | | REV | B |

1

**4-ER-0680**

## ELIGIBILITY:

1. Did you purchase one or more Telescopes branded as Celestron, Meade, Orion, Sky-Watcher, or Zhumell from a retailer or distributor from January 1, 2005 to September 6, 2023?

   ○ Yes *(Proceed to Question 2)*   ○ No *(You are not eligible to submit a claim)*

2. If you answered "Yes" to Question 1, please enter your purchase information below:

Make

Model

___ / ___ / ___
Date of purchase

State of residence at time of purchase

$ ___ . ___
Amount

Name of retailer or distributor where Qualifying Telescope was purchased

**If you purchased more than one telescope, please fill out all the information listed in Question 2 for each purchase on the additional page found at Appendix A or submit your claim online at www.telescopesettlement.com.**

**You do not need to submit receipts or confirming documentation at this time, but counsel for the Settlement Class may require it if an issue arises regarding the validity of your claim.**

## PAYMENT SELECTION:

How would you like to receive your payment? Choose **one** of the following:

○ **I wish to receive any payment pursuant to the Settlement Agreement by check at the address in the Class Member Information section.**

**OR**

○ **If you wish to receive any payment pursuant to the Settlement Agreement electronically, please submit your claim online at www.telescopesettlement.com.**

This information will be kept confidential by the Settlement Administrator.

## CERTIFICATION AND SIGNATURE:

I declare under penalty of perjury under the laws of the United States of America that the information above is true and correct to the best of my knowledge and that I am authorized to submit this claim. I understand that my claim is subject to audit, review, and validation using all available information.

Signature: _____    Dated (mm/dd/yyyy): _____

Print Name: _____



61101012701

2

**4-ER-0681**

**Appendix A**



**THIS PAGE INTENTIONALLY LEFT BLANK.**



4

To the Clerk:


Please file the attached objection and add me to the docket so I can apply for ECF access for this case.

Thank you.


Elman Barnes
401 21st St STE R
Sacramento, CA 95811
elmanmethod@theachievementcoaches.com

**FILED**

FEB 12 2025

CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

Court, Clerk Of // Page 1 of 1

4-ER-0684

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION; MOTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**<br><br>**Dept.: Courtroom 4**<br>**Judge: Hon. Edward J. Davila**<br>**Date: April 3, 2025**<br>**Time: 9:00 AM** |

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

**4-ER-0686**

**NOTICE OF MOTION AND MOTION**

PLEASE TAKE NOTICE that on April 3, 2025 at 9:00 AM the Honorable Edward J. Davila will hear this Motion and the Motion for Final Approval of Settlement at the United States District Court of the Northern District of California, located in Courtroom 4, 280 South 1st Street, San Jose, California. Indirect Purchaser Plaintiffs ("IPPs") move the Court pursuant to Fed. R. Civ. P. 23(h) and 54(d) for an award of $10,666,667 in attorneys' fees (a third of the gross Settlement Fund[1]) along with proportional interest and reimbursement of $771,461 in litigation costs. IPPs also move the Court for a $3,000 service award for each of the 35 named class representatives.

The motion should be granted because (a) the $32 million settlement is an excellent result that amounts to as much as 110% recovery of possible damages; (b) the requested attorneys' fees are fair and reasonable considering Class Counsel's (defined *infra*) extensive and longstanding efforts litigating this international case on behalf of indirect purchasers; (c) the requested fees comport with Ninth Circuit case law regarding attorneys' fees in similar common fund litigation; (d) the requested costs were reasonably and necessarily incurred; and (e) the requested service awards for each of the 35 class representatives fairly compensate them for their time and effort spent on behalf of the classes and are below the presumptively reasonable $5,000 amount.

This motion is based on this Notice of Motion and Motion; the below Memorandum of Points and Authorities; the concurrently filed Joint Declaration of Kalpana Srinivasan, Lin Y. Chan, and Adam J. Zapala ("Joint Decl."); the Proposed Order; all pleadings, briefs, and orders on file in this action; and such other materials as the Court may wish to consider.

**STATEMENT OF ISSUES TO BE DECIDED**

1. Whether the Court should award a third ($10,666,667) of the $32 million non-reversionary common Settlement Fund to Class Counsel as attorneys' fees along with proportional interest;

2. Whether the Court should award $771,461 in unreimbursed costs that Class Counsel reasonably and necessarily incurred in furtherance of the litigation; and

---

[1] "Settlement Fund" refers to the $32 million common fund established by the settlement agreement.

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

**4-ER-0687**

3.  Whether the Court should award a service award of $3,000 to each of the 35 class representatives for their time and effort in pursuing this action.

**TABLE OF CONTENTS**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT BACKGROUND ........................................................................... 2

        A.      Investigation, Initial Filing, Consolidation, and Service on Foreign
                Defendants.......................................................................................... 2

        B.      Motions to Dismiss the Pleadings........................................................ 2

        C.      Discovery .............................................................................................. 3

        D.      Mediation and Settlement ................................................................. 13

        E.      Preliminary Approval, Notice, and Claims........................................ 14

III.    ARGUMENT .................................................................................................... 14

        A.      IPPs' Request for Attorneys' Fees is Fair and Reasonable.................. 14

                1) The Court Should Utilize a Percentage of the Common Fund Method...........14

                2) The Court Should Award a Third of the Fund as Attorneys' Fees.................15

                        i.      Class Counsel Achieved an Excellent Result for Indirect
                                Purchasers ................................................................... 16

                        ii.     Class Counsel Faced Massive and Unique Risks, Including
                                Financially, in Litigating This Case ............................... 17

                        iii.    Class Counsel Relied on Their Vast Experience and Skill to
                                Achieve the Settlement .................................................. 18

                        iv.     The Requested Fee Is in Line with Awards in Similar Cases ........ 19

        B.      A Lodestar Crosscheck Demonstrating a *Negative* Multiplier Supports the
                Requested Fee ...................................................................................... 21

        C.      The Court Should Grant Class Counsel's Request for Reimbursement of Litigation
                Costs...................................................................................................... 23

        D.      The Requested Service Awards Are Reasonable and Warranted .......................... 24

IV.     CONCLUSION.................................................................................................. 25

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Auto. Refinishing Paint Antitrust Litig.*,
617 F. Supp. 2d 336 (E.D. Pa. 2007) ................................................................. 17

*In re Auto. Refinishing Paint Antitrust Litig.*,
MDL No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) ................................... 20

*Barbosa v. Cargill Meat Solutions Corp.*,
297 F.R.D. 431 (E.D. Cal. 2013) ........................................................................ 19

*Barnes v. The Equinox Group, Inc.*,
No. C 10-3586-LB, 2013 WL 3988804 (N.D. Cal. Aug. 2, 2013) ....................... 15

*Bellinghausen v. Tractor Supply Co.*,
306 F.R.D. 245 (N.D. Cal. 2015) ........................................................................ 25

*In re Bluetooth Headset Prods. Liab. Litig.*,
54 F.3d 935 (9th Cir. 2011) ................................................................................. 21

*Bond v. Ferguson Enters., Inc.*,
No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879 (E.D. Cal. June 30, 2011) ...... 21

*In re Capacitors Antitrust Litig.*,
No. 17-md-02801, 2020 WL 13201507 (N.D. Cal. July 17, 2020) ....................... 21

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
No. C-07-5944 JST, 2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ....................... 16

*In re Cathode Ray Tubes (CRT) Antitrust Litig.*,
No. 07-cv-5944, 2016 WL 3648478 (N.D. Cal. July 7, 2016) .............................. 16

*Chun-Hoon v. McKee Foods Corp.*,
716 F. Supp. 2d 848 (N.D. Cal. 2010) ................................................................. 21

*Craft v. Cnty. of San Bernardino*,
624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................... 15

*In re Dairy Farmers of Am., Inc.*,
80 F. Supp. 3d 838 (N.D. Ill. 2015) .................................................................... 19

*In re DRAM Antitrust Litig.*,
No. 02-md-1486, 2013 WL 12387371 (N.D. Cal. Nov. 5, 2013) ......................... 21

*In re Facebook Internet Tracking Litig.*,
No. 12-md-02314, 2022 WL 16902426 (N.D. Cal. Nov. 10, 2022) ..................... 22

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

*Fleming v. Impax Labs. Inc.*,
   No. 16-cv-06557, 2022 WL 2789496 (N.D. Cal. July 15, 2022)....................................22, 23

*In re Flonase Antitrust Litig.*,
   951 F. Supp. 2d 739 (E.D. Pa. 2013) ................................................................ 20

*Fowler v. Wells Fargo Bank, N.A.*,
   No. 17-cv-02092, 2019 WL 330910 (N.D. Cal. Jan. 25, 2019)...............................22

*Garcia v. Schlumberger Lift Sols.*,
   No. 18-cv-01261, 2020 WL 6886383 (E.D. Cal. Nov. 24, 2020)...........................15

*Gutierrez v. Amplify Energy Corp.*,
   No. 21-01628, 2023 WL 6370233 (C.D. Cal. Sept. 14, 2023) ...............................22

*Harbour et al., Plaintiff, v. Cal. Health & Wellness Plan, et al.*,
   No. 21-cv-03322, 2024 WL 171192 (N.D. Cal. Jan. 16, 2024).............................25

*Hefler v. Wells Fargo & Co.*,
   No. 16-cv-05479, 2018 WL 6619983 (N.D. Cal. Dec. 18, 2018)....................22, 24

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ............................................................................... 16

*In re Heritage Bond Litig.*,
   No. 02–ml–1475, 2005 WL 1594403 (C.D. Cal. June 10, 2005) .....................19, 20

*In re High-Tech Emp. Antitrust Litig.*,
   No. 11-CV-02509-LHK, 2015 WL 5159441 (N.D. Cal. Sept. 2, 2015)................16

In re Online DVD-Rental Antitrust Litig.,
   779 F.3d 954 (9th Cir. 2015)...................................................................18

*In re Initial Pub. Offering Sec. Litig.*,
   671 F. Supp. 2d 467 (S.D.N.Y. 2009)...................................................... 20

*Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*,
   No. 16-cv-03698, 2018 WL 2183253 (N.D. Cal. May 11, 2018)..........................24

*Kendall v. Odonate Therapeutics, Inc.*,
   No. 20-cv-01828, 2022 WL 1997530 (S.D. Cal. June 6, 2022)..............................23

*Korean Air Lines Co. Antitrust Litig.*,
   No. 07-cv-05107, 2013 WL 7985367, (C.D. Cal. Dec. 23, 2013) .........................14

*In re LDK Solar Sec. Litig.*,
   No. 07–cv-5182, 2010 WL 3001384 (N.D. Cal. July 29, 2010)...........................17

*In re Lenovo Adware Litig.*,
   No. 15-md-02624, 2019 WL 1791420 (N.D. Cal. Apr. 24, 2019)..........................19

*In re Linerboard Antitrust Litig.*,
    296 F. Supp. 2d 568 (E.D. Pa. 2003) .................................................................. 17

*In re Linerboard Antitrust Litig.*,
    No. Civ. A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004) ......................... 17

*In re Lithium Ion Batteries Antitrust Litig.*,
    No. 13-md-02420, 2020 WL 7264559 (N.D. Cal. Dec. 10, 2020), *aff'd,* 2022
    WL 16959377 (9th Cir. Nov. 16, 2022)................................................................ 16

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017) ................................................................ 25

*In re MacBook Keyboard Litig.*,
    No. 18-cv-02813, 2023 WL 3688452 (N.D. Cal. May 25, 2023).......................... 22

*In re Med. X-Ray Film Antitrust Litig.*,
    No. 93-cv-5904, 1998 WL 661515 (E.D.N.Y. Aug. 7, 1998)................................ 20

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
    187 F.R.D. 465 (S.D.N.Y. 1998) .......................................................................... 18

*In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*,
    No. 13-md-02420, 2017 WL 6040065 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F.
    App'x 651 (9th Cir. 2019)..................................................................................... 16

*Nelson v. Avon Prods.*,
    No. 13-cv-02276, 2017 WL 733145 (N.D. Cal. Feb. 24, 2017) ........................... 20

*In re Omnivision Techs., Inc.*,
    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ................................................ 17, 18, 19, 23

*In re Pac. Enters. Secs. Litig.*,
    47 F.3d 373 (9th Cir. 1995)................................................................................... 20

*In re Portal Software, Inc. Sec. Litig.*,
    No. 03-cv-5138, 2007 WL 4171201 (N.D. Cal. Nov. 26, 2007) ........................... 22

*In re Potash Antitrust Litig.*,
    No. 08-cv-06910, 2013 WL 12470850 (N.D. Ill. June 12, 2013)........................... 20

*In re Prandin Direct Purchaser Antitrust Litig.*,
    No. 10-cv-12141, 2015 WL 1396473 (E.D. Mich. Jan. 20, 2015) ........................ 20

*Reed v. 1–800 Contacts, Inc.*,
    No. 12–cv–02359, 2014 WL 29011 (S.D. Cal. Jan. 2, 2014) ................................ 17

*Ridgeway v. Wal-Mart Stores, Inc.*,
    269 F. Supp. 3d. 975 (N.D. Cal. 2017) ................................................................. 25

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

*Rodriguez v. Nike Retail Services, Inc.*,
    2022 WL 254349 (N.D. Cal. 2022) ......................................................................... 20

*Rodriguez v. W. Publ'g Corp.*,
    563 F.3d 948 (9th Cir. 2009) .................................................................................... 24

*In re Se. Milk Antitrust Litig.*,
    No. 2:07-CV 208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ........................... 20

*Six Mexican Workers v. Ariz. Citrus Growers*,
    904 F.2d 1301 (9th Cir. 1990) .................................................................................. 14

*In re Static Random Access Memory (SRAM) Antitrust Litig.*,
    No. 07-md-1819 (N.D. Cal. Oct. 14, 2011), ECF No. 1407 ..................................... 20

*Syed v. M-I, L.L.C.*,
    No. 12-cv-01718, 2017 WL 3190341 (E.D. Cal., July 27, 2017) ............................. 20

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07–md-1827, 2013 WL 1365900 (N.D. Cal. Apr. 3, 2013) ............................... 17

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    No. 07-md-1827, 2013 WL 149692 (N.D. Cal. Jan. 14, 2013) ................................ 21

*Thieriot v. Celtic Ins.*,
    No. 10-cv-04462, 2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) ............................. 25

*Thomas v. MagnaChip Semiconductor Corp.*,
    No. 14-cv-01160, 2018 WL 2234598 (N.D. Cal. May 15, 2018) ............................. 24

*In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA)
    Litig.*,
    295 F.R.D. 438 (C.D. Cal. 2014) ............................................................................. 17

*In re Urethane Antitrust Litig.*,
    No. 04-cv-1616, 2016 WL 4060156 (D. Kan. July 29, 2016) ................................. 19

*Van Vranken v. Atl. Richfield Co.*,
    901 F. Supp. 294 (N.D. Cal. 1995) .......................................................................... 21

*In re Vitamins Antitrust Litig.*,
    MDL No. 1285, 2001 WL 34312839 (D.D.C. July 16, 2001) .................................. 20

*Vizcaino v. Microsoft Corp.*,
    290 F.3d 1043 (9th Cir. 2002) .................................................................................. 15

*In re Volkswagen "Clean Diesel" Marketing*,
    MDL No. 2175, 2017 WL 1047834 (N.D. Cal. Mar. 17, 2017) .............................. 22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
    396 F.3d 96 (2d Cir. 2005) ....................................................................................... 15

MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE
AWARDS

**Rules**

Fed. R. Civ. P. 23(h) and 54(d) ............................................................................... 2

Rule 23 ..................................................................................................................... 1

Rule 30(b)(1) ........................................................................................................... 4

Rule 30(b)(6) ........................................................................................................... 4

Rule 31 ..................................................................................................................... 4

Rule 33 ..................................................................................................................... 4

Rule 34 ..................................................................................................................... 4

Rule 36 ..................................................................................................................... 4

Rule 45 ................................................................................................................... 11

Rules 4(e) and 4(f)(3) .............................................................................................. 2

**Other Authorities**

*Manual for Complex Litigation*, §21.71 (4th ed. 2004) ...................................... 16

NEWBERG ON CLASS ACTIONS § 14.7 ............................................................ 21

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

After years of hard-fought litigation, Indirect Purchaser Plaintiffs ("IPPs") and Class Counsel[2] reached an agreement with Defendants[3] to resolve this matter in exchange for $32 million. This settlement represents an excellent result for the indirect purchasers and required considerable time, effort, and skill to achieve. IPPs respectfully move the Court for an award of $10,666,667 in attorneys' fees (along with proportional interest), reimbursement of $771,461in litigation costs, and a $3,000 service award for each of the 35 class representatives ($105,000 total).

Class Counsel assumed great risk taking on this challenging international cartel case on a pure contingency basis. Over the course of the litigation, Class Counsel dedicated 20,536 hours to pursuing relief on behalf of the IPP classes, resulting in $14,550,720 in lodestar through December 1, 2024. *See* Joint Declaration of Kalpana Srinivasan, Lin Y. Chan, and Adam J. Zapala ("Joint Decl."), filed concurrently. The $32 million is an outstanding result considering the facts and circumstances, including vigorous, often contentious litigation, unique challenges obtaining data from Defendants and numerous third parties, and significant risks from litigating against and collecting from foreign defendants.

Pursuant to Rule 23, the guiding case law, and the Northern District's Procedural Guidance for Class Action Settlements, IPPs respectfully request that this Court (1) grant an award of

---

[2] "Class Counsel" collectively refers to Cotchett, Pitre & McCarthy, LLP, Susman Godfrey LLP, and Lieff Cabraser Heimann & Bernstein, LLP, which serve as the Court-appointed Interim Co-Lead Counsel for the Proposed Indirect Purchaser Plaintiff Classes.

[3] "Defendants" collectively refer to Synta Technology Corp. of Taiwan, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corporation, Celestron Acquisition, LLC, Olivon USA, LLC, Dar Tson ("David") Shen, Joseph Lupica, and Dave Anderson.

- 1 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

$10,666,667 in attorneys' fees plus proportional interest; (2) approve reimbursement of $771,461 in litigations costs; and (3) issue a service award of $3,000 for each of the 35 Class Representatives.

## II. RELEVANT BACKGROUND[4]

### A. Investigation, Initial Filing, Consolidation, and Service on Foreign Defendants

After months of investigating and developing claims, including consultation with experts, the first IPP complaint was filed on June 16, 2020. Joint Decl. ¶1. Several other IPP complaints followed.[5] Following consolidation of the related cases and a September 17, 2020 hearing related to motions to appoint lead counsel, the Court appointed interim Class Counsel. ECF No. 91. Class Counsel subsequently filed a consolidated IPP class action complaint on October 19, 2020, and filed an amended consolidated complaint on November 6, 2020. ECF Nos. 105, 113.

On September 28, 2020, IPPs filed an opposed motion for an order authorizing alternative service on twelve foreign-based Defendants pursuant to Rules 4(e) and 4(f)(3). The Court granted IPPs' motion on December 2, 2020, thereby allowing all Defendants (as defined in this Motion) to proceed on the same case schedule. ECF No. 124.

### B. Motions to Dismiss the Pleadings

Class Counsel successfully defended against Defendants' motions to dismiss and strike. Defendants filed four separate motions to dismiss and two motions to strike IPPs' claims, resulting in the operative complaint's amendment four separate times. Joint Decl. ¶¶2-13. Across these motions, Defendants' arguments included: untimeliness, failure to state a federal or state claim, lack of personal jurisdiction, and failure to adequately allege claims of pre-2013 conduct. *Id*. at ¶¶7-13. The Court granted Defendants' motion to dismiss and strike in part, but it denied the motions as to the core of IPPs' allegations and allowed amendment as to IPPs' antitrust claims that pre-dated 2013. *Id*. On December 5, 2022, subject to a stipulation that Defendants' pending April

---

[4] Below is a streamlined narrative of Class Counsel's efforts. The Joint Decl. provides a more complete and detailed account.

[5] Additional IPP complaints were filed on July 17, 20, and 31, 2020, August 4, 2020, and September 2, 14, and 17, 2020.

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

**4-ER-0696**

28, 2022 motion to dismiss would apply to the amended complaint, IPPs filed their Fourth Amended Consolidated Class Action Complaint, including extensive allegations of pre-2013 alleged cartel conduct. ECF No. 300.

### C. Discovery

The parties proceeded apace to discovery. The parties vigorously contested discovery throughout this litigation, including through extensive motion practice, including motions regarding entry of protective, discovery, and scheduling orders, and at least fourteen discovery dispute briefs. Typically, motion practice on these issues followed weeks and months of meeting and conferring and resulted in numerous hearings before Magistrate Judge DeMarchi.

**Discovery Orders and Protocols.** Nearly every facet of this litigation was fiercely contested and required court intervention, including entry of discovery orders and protocols. From February 10, 2021 through March 24, 2021, the parties met and conferred, filed multiple briefs, and presented argument before Magistrate Judge DeMarchi on the ESI Order, Protective Order, and other discovery protocol orders. ECF Nos. 141, 150, 152, and 159.

**Written Discovery.** IPPs served at least 140 document requests and 18 interrogatories on Defendants. Joint Decl. ¶15. IPPs conducted extensive discovery negotiations with Defendants, including weekly meet-and-confers, on topics ranging from (1) production of documents and transactional data, (2) the identification of appropriate document custodians, (3) the use of search terms, (4) the completeness of discovery responses, and (5) deposition scheduling. *Id.* Additionally, IPPs reviewed and analyzed a significant portion of more than 3.9 million documents Defendants produced, as well as voluminous electronic transactional and cost data from Defendants and non-parties that would be crucial for class certification and damages modeling. *Id.* Because the millions of documents produced included many Chinese language documents, IPPs retained Chinese language specialists and purchased Chinese-English translation software for efficient document review and analysis. *Id.*

IPPs conducted similar extensive discovery efforts with non-parties, including issuing over 30 subpoenas to non-parties to obtain substantial structured data regarding these intermediaries' direct purchases of telescopes from Defendants and their sales to the IPPs. IPPs engaged in this

non-party discovery to demonstrate "pass through" and economic harm and identify settlement class members. *Id.*

**Depositions.** IPPs defended 23 class representative depositions, largely in person – a substantial number for a class case. *Id.* ¶17. Additionally, IPPs took depositions of Defendants' senior executives, including Celestron's CFO, Paul Roth, whose testimony helped IPPs to determine the availability of transactional data, and Celestron's CEO Corey Lee. The depositions also required obtaining certified translations of numerous documents. *Id.*

**Discovery Motion Practice Regarding Documents and Depositions.** The parties brought at least fourteen discovery disputes before Magistrate Judge DeMarchi. Joint Decl. ¶14; Almost all of these disputes followed weeks, if not months, of hotly contested meet and confer efforts resulting in numerous hearings. *Id.* The motions included, among other things, successfully compelling Defendants to (1) utilize IPPs' proposed search terms, (2) produce all non-privileged documents that hit on one or more of those search terms, (3) produce documents improperly withheld as privileged, (4) collect and produce transactional and cost data, (5) answer numerous interrogatories and other queries regarding Defendants' transactional data and the destruction of other potential data, and (6) schedule Defendants' depositions. *Id.* ¶18. These motions also entailed numerous letter briefs and hearings on general discovery scheduling matters.

*Discovery Coordination.* On April 30, 2021, the parties submitted a joint letter detailing their proposed coordinated discovery schedule and raising a dispute regarding the location of Rule 30(b)(6) depositions. ECF Nos. 171 & 171-1. The proposed stipulated discovery order detailed agreement on the discovery schedule generally, coordination of written discovery Rules 31, 33, 34, and 36, fact deposition under Rule 30(b)(1), translation of documents and depositions, remote depositions, and lime limits of depositions. ECF No. 171-1. On May 4, 2021, Magistrate Judge DeMarchi adopted IPPs' position that Rule 30(b)(6) depositions of party witnesses should presumptively occur in the Northern District and instructing the parties to submit an amended discovery proposal reflecting the court's order by May 10, 2021. ECF No. 172. Magistrate Judge DeMarchi approved the parties' amended stipulated order regarding discovery on May 11, 2021. ECF No. 174.

*Loss of Synta Tech and Suzhou Synta Documents.* The parties continued to meet and confer regarding search terms and custodians for document requests. On May 26, 2021, during a recorded meet-and-confer, counsel for the Defendants informed IPPs that Synta Technology Corp and Suzhou Synta Optical Technology Co. Ltd. destroyed or lost all custodial documents during the companies' dissolution in 2016. ECF No. 198. IPPs served a 30(b)(6) deposition notice regarding the document destruction on July 2, 2021. *Id*. On September 1, 2021, the parties filed a joint discovery letter brief regarding the 30(b)(6) deposition topics, timing, and location. *Id*. Plaintiffs filed two additional joint letter briefs on September 2, 2021. ECF Nos. 199 & 200. Specifically, IPPs sought to question Synta Tech and Suzhou Synta regarding employee Joyce Huang and the issues surrounding the destruction of documents. ECF No. 198. IPPs also proposed a protocol for the deposition to occur in compliance with Taiwan's COVID-19 quarantine requirements, but Defendants refused to agree to a set timeline. *Id*.

On September 13, 2021, the court issued an order allowing IPPs to take the 30(b)(6) deposition on the disputed topics. ECF No. 201. The order also urged the parties to be mindful of public health concerns but cautioned against using them as an excuse to delay the timely production of witnesses. *Id*. On December 2, 2021, IPPs requested via email that Defendants identify the individuals whom they intended to designate. ECF No. 237. Defendants refused to do so. *Id*. Plaintiffs filed a joint discovery letter on February 9, 2022, regarding Defendants' failure to identify the person or country of residence of the designated 30(b)(6) witness. *Id*. On February 16, 2022, Magistrate Judge DeMarchi issued an order requiring Plaintiffs to first notify Defendants of possible dates and whether the 30(b)(6) depositions would be in person or by Zoom and giving Defendants 14 days to identify witnesses and note any possible travel restrictions. ECF No. 239.

*Search Terms and Technology-Assisted Review ("TAR").* The parties filed a joint discovery letter brief regarding Defendants' use of TAR in violation of the ESI Order on September 13, 2021. ECF No. 202. From March 27 to August 4, 2021, the parties conducted at least fourteen meet-and-confers regarding search terms and custodians. ECF No. 202-6. Magistrate Judge DeMarchi issued an order after a hearing requiring the parties to further meet and confer on the issues and submit any remaining disputes concerning search terms, TAR, and related deadline extensions by October

- 5 -

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

26, 2021. ECF No. 209. On October 27, 2021, Magistrate Judge DeMarchi approved the parties' stipulated order regarding production of documents. ECF No. 220. The stipulated order required Defendants to run search terms without TAR and make a substantial document production by November 15, 2021 and complete transactional data production by December 1, 2021. *Id*. Additionally, the order provided phased substantial completion deadlines for various custodians. *Id*. All responsive non-privileged documents had to be produced by February 15, 2022. *Id*.

*Interrogatory Responses.* On March 21, 2022, the parties filed a joint discovery letter brief regarding Defendants' failure to properly respond to IPPs' interrogatory on Defendants' decision to discontinue business operations and destroy records. ECF No. 247. IPPs repeatedly tried in good faith to reach a sensible agreement with Defendants regarding their response before filing a letter brief. *Id*. On May 25, 2022, the court issued an order requiring Defendants to provide substantive responses to the interrogatory by June 8, 2022. ECF No. 262. Defendants eventually served a compliant response to IPPs' interrogatory subject to that order.

*Scheduling Order.* In an effort to streamline the litigation, on July 26, 2022, IPPs filed a motion for entry of a scheduling order. ECF No. 269. Discussions and meet-and-confers regarding case scheduling occurred regularly over the years of litigation, but without agreement on an omnibus schedule for case deadlines. *Id*. On June 2, 2022, IPPs proposed a case schedule to Defendants. *Id*. Defendants did not send a counterproposal and opposed setting any case deadlines until the Court ruled on the pending motion to dismiss. ECF No. 271. Prior to filing the motion, the parties met and conferred via Zoom on June 17, 2022 and exchanged numerous emails on scheduling issues to attempt to resolve the issue. *Id*. The Court issued a scheduling order, setting case deadlines through class certification on September 30, 2022. ECF No. 276.

*Chinese Search Terms.* On September 28, 2022, Magistrate Judge DeMarchi adopted the parties' stipulation regarding Chinese search terms, providing an iterative protocol for running the terms, producing relevant documents, and sharing certain costs. ECF No. 275.

*Deposition Location.* Issues regarding deposition locations and dates remained a point of contention throughout the litigation. The Court held a joint status conference on February 23, 2023, at which it ordered the parties to meet and confer regarding the timing and location of depositions.

- 6 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

On April 7, 2023, the Court issued an order specifying the locations for certain categories of witnesses. ECF No. 329. The parties filed a joint status report on July 31, 2023, detailing all outstanding requests to confirm deposition dates. ECF No. 358. On August 1, 2023, Magistrate Judge DeMarchi issued an order setting various deposition-related deadlines. ECF No. 361. The court also required the parties to confer to address travel arrangements that may have already been made to Taiwan and San Francisco. *Id*. On August 16, 2023, the parties filed a joint report updating the court on the status of deposition scheduling. ECF No. 369. The court issued an order holding that depositions with agreed dates would proceed as described unless all parties agreed to the change. ECF No. 377. The court instructed the parties to meet and confer to find new dates for four remaining unscheduled depositions. *Id*. On September 1, 2023, the parties filed a joint status report detailing agreement on new deposition dates and locations for the four remaining witnesses. ECF No. 380.

**Discovery Motion Practice Regarding Transactional Data**. Data discovery presented another pitched battleground throughout this litigation. Joint Decl. ¶¶31-46. On March 22, 2021, IPPs issued their first request for Defendants' transaction-level sales data, after which the court approved a stipulation ordering production of all such data before December 1, 2021. *See* ECF No. 277. On October 10, 2022, the parties filed a joint discovery letter brief regarding Defendants' failures to timely produce the requested transactional data. *Id*. Issues with Defendants' data included years of missing data for certain defendants, no data at all from one defendant, and massive data format issues with others. *Id*. The letter brief detailed the great lengths IPPs undertook to get Defendants to produce the requested data, including the numerous instances where Defendant promised to have a client representative attend a meet-and-confer, only to have Defendants cancel shortly before the scheduled meeting. *Id*. To resolve these issues, IPPs proposed a phased process in which Defendants would first answer five preliminary questions regarding their transactional data and provide a specific date by which they must complete the production. *Id*. IPPs also requested the court order that the parties all attend regular weekly meet-and-confers and monthly status conferences with the court until the resolution of all outstanding discovery matters. *Id*. Magistrate Judge DeMarchi issued an order the day after its November 8, 2022 hearing requiring

- 7 -

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

Defendants to (1) produce Celestron transactional data for the relevant period without filters, (2) produce samples of the physical bound records for Suzhou Synta, and (3) provide the requested information in writing regarding each defendants' data, all by November 30, 2022. ECF No. 293.

On April 4, 2023, Magistrate Judge DeMarchi held a hearing on DPPs' motion to enforce the court's discovery order regarding production of transactional data, at which IPPs participated. Magistrate Judge DeMarchi issued an order on April 5, 2023, reserving the question of whether sanctions should be imposed on Defendants, and requiring the parties to meet in-person no later than April 19, 2023, to discuss issues with Defendants' production of transactional data. ECF No. 325. The parties, along with technical and data experts, met and conferred in-person on May 9, 2023, in San Francisco. ECF No. 327. Prior to the meeting, IPPs sent Defendants a list of 25 transactional data questions to facilitate discussion and had an initial virtual meeting on April 24, 2023. On May 15, 2023, the parties filed a joint status report about production of Defendants' transactional data and progress made during the meet-and-confers. ECF No. 338. The joint status report detailed thirteen items Defendants agreed to produce and six additional issues on which Defendants promised to investigate further. *Id*. Defendants agreed to produce eleven of the thirteen items and respond to the six additional questions by May 26, 2023, subject to certain contingencies. *Id*. During the meetings, IPPs also raised concerns regarding production of sales and costs data from several Defendants other than Celestron. *Id*.

On June 7, 2023, Magistrate Judge DeMarchi issued an order requiring the parties to file a further joint status report regarding Defendants' production of transactional data. ECF No. 343. On June 14, 2023, the parties filed the requested status report. ECF No. 344. IPPs confirmed that Defendants provided satisfactory responses to their requests and that IPPs and Defendants met and conferred again with Defendants' data expert on June 12, 2023. *Id*. Defendants also confirmed that transactional data for all Defendants had been produced, but that it would supplement defendant Olivon's data "in order to better organize the previously produced" data. *Id*. Defendants made the supplemental Olivon data production on June 1, 2023. *Id*. In the joint report, IPPs stressed that, while no issues were ripe at the time, based on IPPs' analysis, additional transactional data likely existed for at least Nantong Schmidt related to cost data, sales data to entities other than Celestron

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

and Orion, and product descriptions. *Id*. The parties agreed to work together to provide IPPs with finality on the transactional data issue. *Id*. On June 15, 2023, Magistrate Judge DeMarchi issued an order requiring Defendants to "promptly complete their investigation of the additional data sources identified in the status report, and . . . promptly complete their production of the additional data that they indicate in the report they will produce to plaintiffs." ECF No. 346. On July 30, 2023, the parties filed a third joint status report regarding transactional data detailing disagreements about the fulsomeness of Defendants data production and responses to questions. ECF No. 347. The remaining open issues included SAP data and Atlas e-commerce data, Nantong Schmidt data, and whether Defendants general ledger constituted "transactional data" as defined by the requests for production. *Id*. On July 18, 2023, the court held a hearing and issued an order on Defendants' production of transactional data. ECF No. 350. The court required Defendants to complete their production of Nantong Schmidt cost data for all U.S. sales during the relevant time period, update their response to IPPs' interrogatory about the same, and identify by bates number Celestron's price component reports that could be used to calculate margins, all by July 21, 2023. *Id*.

On July 29, 2023, the parties filed another joint status report on Defendants' transactional data. ECF No. 355. IPPs again detailed Defendants' failure to make good on their court-ordered obligations regarding the Nantong Schmidt data, including supplementing their response to the interrogatory, and Celestron margin data. *Id*. On July 31, 2023, the court issued an order requiring Defendants to file a copy of their most recent supplemental response to IPPs' relevant interrogatory by 4:00PM that day. ECF No. 356. After holding another status conference, Magistrate Judge DeMarchi issued an order on August 1, 2023, requiring Defendants to: (1) make all the source material from which Nantong Schmidt prepared the summary of costs data available to plaintiffs for review by August 25, 2023; (2) supplement their response to IPPs' interrogatory to address the subparts by August 14, 2023; (3) by August 4, 2023, produce samples of Celestron's general ledger; or (4) identify documents from which margins could be obtained by August 10, 2023. ECF No. 362.

**Further Productions and Deposition of Celestron CFO Paul Roth.** Over the following weeks, Defendants made further productions as required and made a witness available to answer

- 9 -

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

questions about the data. IPPs deposed Celestron's CFO, Paul Roth, on August 7 & 8, 2023. Joint Decl. ¶44. On August 16, 2023, the parties submitted another joint status report. ECF No. 370. At his deposition, Mr. Roth testified that Celestron had provided all of its transactional data, including the competent parts at issue, to counsel for the Defendants. *Id*. IPPs, however, could not question Mr. Roth about much of the general ledger data, because Defendants did not produce it until *after* the deposition. *Id.* Defendants also refused to provide Celestron's IT expert for a meeting with IPPs' data experts. *Id*. Consequently, IPPs requested that the court order Defendants to identify or produce all the requested data regarding profit margins and to confirm that they are not withholding any further ledger or subledger transaction data. IPPs also raised continuing deficiencies regarding Nantong Schmidt cost data. *Id*.

**Orders Regarding Source Material for Transactional Data.**  The court issued a further order on transactional data on August 17, 2023, again demanding that Defendants (1) make the source material from which defendant Nantong Schmidt prepared the summary of cost data available for review and (2) lodge the transcripts from Mr. Roth's deposition, highlighted to illustrate the points on which the parties disagreed. ECF No. 372. On August 29, 2023, after a hearing, the court ordered Defendants to (1) explain what the 208 manually-prepared data spreadsheets for Nantong Schmidt contained, (2) identify by bates number Celestron's relevant ledger data, and (3) provide an employee knowledgeable in the data for questioning. In the alternative, the court ordered Defendants to provide another witness for deposition due to their failure to produce the data before Mr. Roth's deposition. ECF No. 378. IPPs did not participate in further disputes regarding transactional data after reaching an agreement in principle to resolve the case with Defendants on September 7, 2023. Joint Decl. ¶45.

**Motion Practice Regarding Privilege Issues**. IPPs also engaged in extensive motion practice regarding Defendants' privilege claims. *Id*. On October 28, 2022, the parties filed two joint discovery letter briefs regarding documents withheld by Defendants as privileged and other issues related to Defendants' privilege logs. ECF Nos. 287 & 288. Specifically, IPPs argued that Defendants improperly withheld several categories of documents. ECF No. 287. IPPs also argued that Defendants needed to supplement their privilege logs to provide certain categories of

information. ECF No. 288. Prior to filing the joint brief, the parties met and conferred over the course of six months at least four separate times via Zoom and exchanged emails at least ten times on the issues. *Id*. Magistrate Judge DeMarchi issued an order on November 29, 2022, granting and denying in part IPPs' requested relief. ECF No. 297. The court required Defendants to remove all tax documents from their privilege log, as well as amend the log to make clearer the nature of documents withheld and the recipients of the documents and submit certain documents of in camera review. *Id*.

On March 1, 2023, IPPs filed a motion to compel the production of documents Defendants continued to withhold as privileged (which violated the November 29, 2022 order). ECF No. 305. The court issued an order on April 25, 2023, requiring Defendants submit documents for in camera review. ECF No. 332. On April 28, 2023, Defendants submitted the requested documents for review. ECF No. 333. The court issued another order on July 20, 2023, requiring Defendants to file an amended privilege log only covering the 37 documents submitted for review. ECF No. 353.

**Motion Practice Regarding Non-Party Discovery.** IPPs conducted extensive non-party discovery for information and transactional data regarding the retail telescope market. Starting in the summer of 2021, IPPs issued at least 30 Rule 45 subpoenas to retailers that sold commercial telescopes to potential class members. Joint Decl. ¶49.

Resolving objections to some of the subpoenas required court intervention following multiple meet-and-confers, untimely objections, and, in the case of third-party Orange County Telescope ("OCT"), a proposed compromise that IPPs limit the scope of the subpoena by agreeing to cut the time period, the products for requested data, and other compromises regarding data format. *Id*. ¶50. OCT, however, refused the compromise. *Id*. Left with no choice, on January 4, 2022, IPPs filed a joint letter brief to compel OCT to produce its transactional data reflecting purchases of telescopes and accessories from Defendants and Co-Conspirators and retail sales of such products. ECF No. 227. The court held a hearing on the motion on January 25, 2022 (ECF No. 232) and issued an order the same day granting the motion to compel, limited to data "readily accessible in electronic form," detailing telescopes and accessories sold by Defendants and Co-Conspirators, dating back to January 1, 2003 or whatever date data became available. ECF No. 235.

- 11 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

The subpoena on non-party Levenhuk, Inc., a manufacturer customer of the Defendant also required motion practice. On March 7, 2023, IPPs and Defendants filed a joint discovery letter brief regarding the subpoena. ECF No. 307. Defendants moved to quash the subpoena, or in the alternative limit its scope. *Id*. IPPs argued that they needed Levenhuk's data to conduct overcharge pass-through analysis. *Id*. On March 7, 2023, Magistrate Judge DeMarchi issued an order denying Defendants' motion because they failed to identify "any personal right or privilege that is implicated by IPPs' document subpoena" and that the subpoena did not violate any of the court's prior orders regarding the geographic scope of discovery. *Id*.

In total, IPPs collected transactional sales data from 25 non-party entities, including large telescope retailers like Amazon and Cloud Break Optics, and small telescope retailers like Adorama and Costco. IPPs' experts used this data to conduct pass-through and damages analysis, and the data now facilitates the notice and claims process. Joint Decl. ¶52.

**Expert Work.** IPPs retained Dr. Russell Mangum, the Executive Vice President at Cirque Analytics, as an expert to research and calculate class-wide damage models. This retention required researching and developing alternative models due to Defendants' unwillingness to provide transactional data and revising those models once Defendants did produce transactional data. *Id.* ¶¶70-71. Additionally, Dr. Mangum analyzed third party retail transactional data obtained by counsel through discovery. After Defendants produced some data in 2023, IPPs' economist and his associates conducted multiple regressions and other analyses to support class certification, liability, and damages. *Id*.; ECF No. 339. Dr. Mangum and his associates were preparing their expert reports when the parties reached the agreement to settle the case. *Id*.

Further, Dr. Mangum analyzed the relevant commerce based on sales data provided through discovery from Celestron, Orion, and Meade. *Id*. His sales estimates of Telescopes to IPPs between January 1, 2005, and September 6, 2024, totaled approximately $636 million. *Id*. Dr. Mangum calculated class wide damages based on overcharges estimated from multiple regression analyses, informed by thorough literature review, and from studying the court-approved methods of Dr. Douglas Zona from the *Orion* litigation. *Id*. In sum, Dr. Mangum calculated that damages for the IPP Class amounted to approximately $29 million to $32 million (based on an overcharge of 5%

- 12 -

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

and the pass-through rate of between 90% and 100%), and could have been as high as $165 million (based on an overcharge of 26% and pass-through rate of 100%). *Id.*

IPPs also hired University of Arizona Optical Sciences Professor Dr. Richard Youngworth, a telescope industry expert with a Ph.D. from the University of Rochester and manufacturing experience as an engineer and research associate at Ball Aerospace & Technologies Corp. and Eastman Kodak, respectively. *Id.* ¶72. At the time of the mediation and settlement, Dr. Youngworth was researching and drafting an expert report detailing the manufacturing process of various consumer telescopes and offering an opinion on the ability of manufacturing Defendants to produce each other's telescopes. *Id.*

Due to Class Counsel's discovery efforts and expert work, IPPs were well positioned to negotiate the Settlement.

**D.  Mediation and Settlement**

The parties reached the Settlement Agreement after months of contentious arm's-length negotiations, including bilateral and mediated proceedings and discussions. Joint Decl. ¶53. After years of litigation and extensive discovery described above, counsel for the parties convened multiple times over several months in 2023 to arrive at settlement terms. *Id.* Ultimately, it took two full-day mediation sessions (conducted over a year apart) with an experienced mediator, the Honorable Suzanne Segal, a former Magistrate Judge of the Central District of California, to broker the deal. *Id.* The parties agreed to settle on September 7, 2023, when both sides accepted Judge Segal's mediator's proposal. *Id.*

On September 8, 2023, IPPs filed a Notice of Settlement and requested the Court suspend all pending deadlines and discovery while the parties finalized and executed the Settlement Agreement, which the Court granted on September 19, 2023. ECF Nos. 384 & 356. The parties worked diligently to draft and execute the Settlement Agreement after reaching the agreement in principle. *Id.* ¶55. Ironing out the specifics of the Settlement Agreement was complex, covering the interplay between several corporate families across multiple continents. *Id.* Aside from the monetary consideration that had already been agreed to in principle, there were several additional provisions in the long-form agreement that were contested and took substantial time and effort to

- 13 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

work through. On August 31, 2024, IPPs and Defendants executed the final Settlement Agreement. Joint Decl. ¶56.

### E. Preliminary Approval, Notice, and Claims

On September 16, 2024, IPPs filed a motion for Preliminary Approval of Settlement and Issuance of Notice, along with accompanying attorney and claims administrator declarations. ECF Nos. 389, 390, & 391. The Court heard the motion on October 31, 2024. ECF No. 393. On November 4, 2024, it issued an order granting preliminary approval, authorizing the issuance of the notice program, approving Verita as the claims administrator, and setting a schedule for final approval, a fairness hearing, and motions for attorneys' fees and costs. ECF No. 397.

In advance of the final approval hearing, IPPs will provide the Court with a detailed accounting of the notice and claims program.

### III. ARGUMENT

### A. IPPs' Request for Attorneys' Fees is Fair and Reasonable

For over four and a half years, Class Counsel litigated on behalf of telescope consumers against an anticompetitive global cartel on a pure contingency basis without any guarantee of payment. In the face of that risk, Class Counsel recovered $32 million from the Defendants to create a common Settlement Fund. The requested $10,666,667 for attorneys' fees equals one third of the Settlement Fund, compared to Counsel's $14,550,720 in unreimbursed lodestar, equaling a *negative* multiplier of .73. The request is fair and reasonable and should be granted because it satisfies all the Ninth Circuit's standards for such an outstanding result and effort.

### 1) The Court Should Utilize a Percentage of the Common Fund Method

It is well-settled in the Ninth Circuit that attorneys may be paid reasonable fees as a percentage of a common fund established by a class-wide settlement. *See Six Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) (holding that "a reasonable fee under the common fund doctrine is calculated as a percentage of the recovery"); *Korean Air Lines Co. Antitrust Litig.*, No. 07-cv-05107, 2013 WL 7985367, at *1 (C.D. Cal. Dec. 23, 2013) (awarding attorneys' fees and recognizing that "use of the percentage-of-the-fund method in common-fund cases is the prevailing practice in the Ninth Circuit"). Awarding attorneys' fees as a percentage of

- 14 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

the common fund aligns the interests of class counsel with the interests of the class, incentivizing counsel to seek as much compensation for the class as possible. *See Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1113, 1123 (C.D. Cal. 2008) (awarding attorneys' fees based on percentage of a common fund and noting that "[t]his method aligns the interests of counsel and the class by allowing class counsel to directly benefit from increasing the size of the class fund.); *see also Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (utilizing percentage of a common fund and noting that doing so "directly aligns the interests of the class and its counsel and provides a powerful incentive for the efficient prosecution and early resolution of litigation").

Because the Settlement is a non-reversionary $32 million common fund, the benefit to the class is clear and easily quantifiable. Calculating Class Counsel's fee as a percentage of that fund therefore represents a fair and straightforward way to compensate counsel for their time and effort litigating the case. *See, e.g.*, *Barnes v. The Equinox Group, Inc.*, No. C 10-3586-LB, 2013 WL 3988804, at *3 (N.D. Cal. Aug. 2, 2013) (awarding a percentage of the fund and holding that "[t]he percentage-of-the-fund method is appropriate where—as here—the amount of the settlement is fixed without any reversionary payment to the defendant").

### 2) The Court Should Award a Third of the Fund as Attorneys' Fees

"The typical range of acceptable attorneys' fees in the Ninth Circuit is 20% to 33-1/3% of the total settlement value, with 25% considered the benchmark." *Garcia v. Schlumberger Lift Sols.*, No. 18-cv-01261, 2020 WL 6886383, at *13 (E.D. Cal. Nov. 24, 2020), *report & recommendation adopted*, 2020 WL 7364769 (E.D. Cal. Dec. 15, 2020). In the Ninth Circuit, courts evaluate the reasonableness of requests for attorneys' fees under four factors:

(1) the results achieved;

(2) the effort, experience, and skill of counsel;

(3) the riskiness of the case and the financial burden shouldered by

counsel on a contingency basis; and

(4) awards made in similar cases.

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048-50 (9th Cir. 2002). All four factors weigh in favor of granting Class Counsel's request.

- 15 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

4-ER-0709

i.    Class Counsel Achieved an Excellent Result for Indirect Purchasers

In assessing the reasonableness of a request for attorneys' fees, "the most critical factor is the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Manual for Complex Litigation*, §21.71, p. 336 (4th ed. 2004) ("Compensating counsel for the actual benefits conferred on the class members is the basis for awarding attorney fees. The fundamental focus is the result actually achieved for class members.") (quotation omitted). The degree of success is particularly important where, as here, counsel request a fee above 25%. *See In re Cathode Ray Tube (CRT) Antitrust Litig.*, No. C-07-5944 JST, 2016 WL 4126533, at *4 (N.D. Cal. Aug. 3, 2016) ("The most important factor is the results achieved for the class. Outstanding results merit a higher fee."). Here, the degree of recovery merits the requested upward departure, as does Class Counsel's extensive work in the case and resulting negative multiplier.

The Settlement provides direct cash relief for class members who purchased qualifying consumer telescopes during the relevant time period. Furthermore, the $32 million settlement fund represents up to *110%* of IPPs' possible recoverable damages. Joint Decl. ¶71. A review of approved class action settlements shows that a settlement with a ceiling even approaching 100% recovery is extraordinary and rare. *See, e.g.*, *In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (granting final approval of the settlement representing 11.7% of damages and describing the result for the class as "excellent"); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 13-md-02420, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (approving a settlement and stating that 50% of single damages is "a result almost never achieved in large, complex antitrust cases"); *In re Cathode Ray Tubes (CRT) Antitrust Litig.*, No. 07-cv-5944, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) (stating that a settlement representing 20% of potential single damages "is without question a good recovery and firmly in line with the recovery in other cases" and citing a law review article finding that "median average settlement recovery among a survey of 71 settled cartel cases was 37% of single damages recovery, the weighted mean . . . 19% of single damages recovery"); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal.

- 16 -

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

Sept. 2, 2015) (granting final approval of the settlement and stating that the "total settlements achieved in this action exceed 14 percent of Plaintiffs' proposed single damages estimate, a damages estimate Defendants were prepared to vigorously contest" and further noting that "[d]istrict courts in the Ninth Circuit routinely approve settlements with much larger differences between the settlement amount and estimated damages"); *In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453–54 (C.D. Cal. 2014) (granting final approval of settlement representing only 3% of possible recovery); *Reed v. 1–800 Contacts, Inc.*, No. 12–cv–02359, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval of settlement represented 1.7% of possible recovery); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07–md-1827, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013) (referring to plaintiffs' settlement of "approximately 50% of the potential recovery" as "exceptional"); *In re LDK Solar Sec. Litig.*, No. 07–cv-5182, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval settlement that was 5% of possible damages); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (gathering cases where courts approved settlements achieving single-digit percentages of potential recoveries).

By every objective metric, the Settlement is exceptional and merits the requested fee. Class Counsel's achievement is particularly notable given difficulties and risks they faced in litigating this international cartel against skilled and zealous opposing counsel.

ii.  Class Counsel Faced Massive and Unique Risks, Including Financially, in Litigating This Case

Litigation risks bear on the reasonableness of a requested attorneys' fee. *See In re Omnivision Techs., Inc*., 559 F. Supp. 2d 1036, 1046–47 (N.D. Cal. 2008) (granting requested attorneys' fees and holding that "[t]he risk that further litigation might result in Plaintiffs not recovering at all, particularly a case involving complicated legal issues, is a significant factor in the award of fees"). Antitrust class actions such as this one carry a recognized level of *increased* risk. *See In re Linerboard Antitrust Litig*., No. Civ. A. 98-5055, 2004 WL 1221350, at *10 (E.D. Pa. June 2, 2004) ("antitrust class action is arguably the most complex action to prosecute"); *In re Auto. Refinishing Paint Antitrust Litig*., 617 F. Supp. 2d 336, 341 (E.D. Pa. 2007) (stating that an

- 17 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

"antitrust class action is arguably the most complex action to prosecute" and that "[t]he legal and factual issues involved are always numerous and uncertain in outcome"); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 475 (S.D.N.Y. 1998) ("Antitrust litigation in general, and class action litigation in particular, is unpredictable.").

Class Counsel faced and accepted unique and substantial risks that warrant the requested upward departure. Here, Class Counsel assumed more than the common risks that any dispositive motion (motion to dismiss, class certification, or summary judgment) or trial could have resulted in the court or jury finding against them; Class Counsel faced those risks against foreign Defendants on whom, even if IPPs succeeded all the way through trial, collecting a judgment would have been extremely difficult or impossible.

In the Ninth Circuit, courts also consider whether counsel assumed further risk by taking a case on a contingency basis. *See Online DVD*, 779 F.3d at 954-55 & n.14. Class Counsel litigated this case on a purely contingent basis and advanced all necessary costs with no assurance of ever being paid, or even reimbursed their hard costs. Joint Decl. ¶64. "The importance of assuring adequate representation for plaintiffs who could not otherwise afford competent attorneys justifies providing those attorneys who do accept matters on a contingent-fee basis a larger fee than if they were billing by the hour or on a flat fee." *Omnivision*, 559 F. Supp. 2d at 1047. The risk of nonpayment in contingent matters is further heightened here because of the risks of collecting a judgment against foreign defendants.

The significant and unique risks Class Counsel assumed in litigating this case support the reasonableness of the request for an award of attorneys' fees and this factor therefore strongly weighs in favor of the request.

        iii.   <u>Class Counsel Relied on Their Vast Experience and Skill to Achieve the Settlement</u>

Each firm appointed as Class Counsel brought decades of antitrust experience litigating sprawling international cartels to bear on this case. *Id*. 65; *see also* Amended Motion to Appoint Lead Plaintiff and Lead Counsel, ECF No. 38, attachments 1-10 (declarations and firm resumes describing antitrust experience). This experience was crucial to the success of this settlement. *See*

- 18 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

*generally* Joint Decl.; *Omnivision*, 559 F. Supp. 2d at 1047 ("The prosecution and management of a complex national class action requires unique legal skills and abilities.").

Achieving this settlement took significant work and skill and would not have been achieved by attorneys without the background in international antitrust litigation that Class Counsel possess. Over the years of extremely active litigation, Class Counsel encountered vigorous defenses, numerous motions to dismiss raising complex and novel legal issues while aggressively pursuing discovery. Class Counsel reviewed and analyzed millions of Defendants' internal documents, including thousands that had to be translated from foreign languages. Joint Decl. ¶16. These efforts gave Class Counsel the leverage to achieve this recovery for the Class. *See Barbosa v. Cargill Meat Solutions Corp.*, 297 F.R.D. 431, 449 (E.D. Cal. 2013) (class counsel's use of "specialized skill" in the particular area of law was an asset to class members and weighed in favor of the fee request); *Omnivision*, 559 F. Supp. 2d at 1047 (plaintiff's case withstood a motion to dismiss, "despite other weaknesses, is some testament to Lead Counsel's skill" and that "[t]his factor also supports the requested fee"); *In re Heritage Bond Litig.*, No. 02–ml–1475, 2005 WL 1594403, at *19 (C.D. Cal. June 10, 2005) (holding that fact investigation, detailed complaints, extensive motion practice, and review of numerous documents, weigh in favor of the fee request); *In re Lenovo Adware Litig.*, No. 15-md-02624, 2019 WL 1791420, at *8 (N.D. Cal. Apr. 24, 2019) (citing fact the case was "actively litigated for the past four years, and required complex legal and factual research and analysis by Class Counsel" as a reason for granting the fee request).

Class Counsel's skills, honed over decades of experience litigating global antirust cartel cases, are another factor in favor of granting the request for attorneys' fees.

iv.    The Requested Fee Is in Line with Awards in Similar Cases

Courts regularly award a third of a gross settlement fund as attorneys' fees in antitrust class actions, including in this District. *See, e.g.*, *In re Urethane Antitrust Litig.*, No. 04-cv-1616, 2016 WL 4060156, at *8 (D. Kan. July 29, 2016) (awarding 33.33% fee on $835 million settlement; "Counsel's expert has identified 34 megafund cases with settlements of at least $100 million in which the court awarded fees of 30 percent or higher.") *In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 862 (N.D. Ill. 2015) (awarding class counsel "one-third of the $46 million common

fund ($15,333,333.33) with interest at the same rate paid on the Settlement Fund"); *In re Prandin Direct Purchaser Antitrust Litig.*, No. 10-cv-12141, 2015 WL 1396473, at *5 (E.D. Mich. Jan. 20, 2015) (awarding attorneys' fees of one-third for a $19 million settlement fund); *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *3 (E.D. Tenn. May 17, 2013) (awarding one-third in attorneys' fees on a $158 million settlement fund and holding that "the percentage requested is certainly within the range of fees often awarded in common fund cases . . . nationwide"); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 751 (E.D. Pa. 2013) (approving a "thirty-three and a third percent of the common fund, for a total of $50,000,000.00, in attorneys' fees"); *In re Potash Antitrust Litig.*, No. 08-cv-06910, 2013 WL 12470850, at *1 (N.D. Ill. June 12, 2013) (granting an award of one-third of the $90 million settlement fund as "reasonable and warranted"); *In re Static Random Access Memory (SRAM) Antitrust Litig.*, No. 07-md-1819 (N.D. Cal. Oct. 14, 2011), ECF No. 1407 (awarding 33% in attorneys' fees for an IPP settlement); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *8 (E.D. Pa. Jan. 3, 2008) (awarding 33.33% in attorneys' fees with accrued interest on a $39 million common fund settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.3% fee on $510 million settlement fund); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding 34% of the $359,438,032 common fund as attorneys' fees); *In re Med. X-Ray Film Antitrust Litig.*, No. 93-cv-5904, 1998 WL 661515, at *7 (E.D.N.Y. Aug. 7, 1998) (approving a request for 33.33% in attorneys' fees from a $39 million common fund as "reasonable and is well within the range accepted").

The same is true of attorneys' fees awards in the non-antitrust context throughout the Ninth Circuit. *See, e.g.*, *In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common settlement fund because of complexity and risk); *Rodriguez v. Nike Retail Services, Inc.*, 2022 WL 254349, at *6 (N.D. Cal. 2022) (approving attorneys' fees, which are 33% of the gross settlement fund and a 1.7 lodestar multiplier); *Nelson v. Avon Prods.*, No. 13-cv-02276, 2017 WL 733145, at *6 (N.D. Cal. Feb. 24, 2017) (awarding 33.3% and collecting cases awarding 30% or more); *Syed v. M-I, L.L.C.*, No. 12-cv-01718, 2017 WL 3190341, at *7 (E.D. Cal., July 27, 2017) (attorney's fees of $2,333,333.33 equal to one-third of gross settlement); *Heritage Bond*

- 20 -

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

*Litig.*, 2005 WL 1594403, at \*19 (granting 33.33% of common fund as the attorneys' fees for a $27,783,000 settlement).

Because attorneys' fees representing a third of the gross common fund are routinely granted for settlements of similar size in cases of similar complexity and scope, this factor weighs in favor of granting Class Counsel's motion.

### B. A Lodestar Crosscheck Demonstrating a *Negative* Multiplier Supports the Requested Fee

The purpose of using a lodestar cross-check is to assess whether counsel will receive a windfall compared to the amount of time actually devoted to litigating the case. *See In re Bluetooth Headset Prods. Liab. Litig.*, 54 F.3d 935, 945 (9th Cir. 2011) (lodestar cross-check "can confirm that a percentage of recovery amount does not award counsel an exorbitant hourly rate") (quotation omitted). Where a lodestar is merely being used as a cross-check, the court "may use a rough calculation of the lodestar." *Bond v. Ferguson Enters., Inc.*, No. 1:09-cv-1662 OWW MJS, 2011 WL 2648879, at \*12 (E.D. Cal. June 30, 2011) (quotation omitted).

Courts in the Ninth Circuit generally find "[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 298 (N.D. Cal. 1995); *see also* 4 NEWBERG ON CLASS ACTIONS § 14.7 (stating courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"). A cross-check resulting in a negative multiplier weighs even heavier in favor of a requested fee's reasonableness. *See In re Capacitors Antitrust Litig.*, No. 17-md-02801, 2020 WL 13201507, at \*1 (N.D. Cal. July 17, 2020) (granting requested attorneys' fees and holding that the negative lodestar multiplier "further supports the reasonableness of the attorneys' fees request"); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07-md-1827, 2013 WL 149692, at \*1 (N.D. Cal. Jan. 14, 2013) (citing the negative .86 multiplier as confirmation that the amount of attorneys' fees requested was fair and reasonable); *In re DRAM Antitrust Litig.*, No. 02-md-1486, 2013 WL 12387371, at \*12-13 (N.D. Cal. Nov. 5, 2013) (observing that a negative multiplier "is virtually sufficient to satisfy the cross-check requirement"); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 853–54 (N.D.

Cal. 2010) (granting attorneys' fees and stating that a "resulting multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel"); *In re Portal Software, Inc. Sec. Litig.*, No. 03-cv-5138, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (granting requested attorneys' fees and holding that a "negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel").

In determining the reasonableness of counsel's hourly rates, courts look to "the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Fowler v. Wells Fargo Bank, N.A.*, No. 17-cv-02092, 2019 WL 330910, at *6 (N.D. Cal. Jan. 25, 2019). Class Counsel's hourly rates are well within the range of rates approved in other class action fee awards. *Compare* Joint Decl. Exs. A-C *with In re MacBook Keyboard Litig.*, No. 18-cv-02813, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving a $863 blended rate); *In re Facebook Internet Tracking Litig.*, No. 12-md-02314, 2022 WL 16902426, at *12 (N.D. Cal. Nov. 10, 2022) (finding hourly rates up to $1,200 "reasonable and commensurate with those charged by attorneys with similar experience in the market"); *Fleming v. Impax Labs. Inc.*, No. 16-cv-06557, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding rates of $760 to $1,325 for partners to be reasonable); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates up to $1,250 for "partners or senior counsel," $650 for associates, and $350 for paralegals reasonable); *In re Volkswagen "Clean Diesel" Marketing*, MDL No. 2175, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding rates up to $1,600 for partners, $790 for associates, and $490 for paralegals reasonable). Courts have also specifically found Lieff Cabraser's hourly rates "consistent with market rates in their area." *Gutierrez v. Amplify Energy Corp.*, No. 21-01628, 2023 WL 6370233, at *7 (C.D. Cal. Sept. 14, 2023). If the requested fee of $10,666,667 is awarded, the blended hourly rate for all work performed by lawyers and staff litigating this case will be $443.52.

Here, Class Counsel and its staff spent 20,536 hours through December 1, 2024 litigating this case, demonstrating both the persistence of opposing counsel and the complexity of this case. Each firm exercised billing judgment and carefully reviewed their time as it was submitted to reduce

inefficient or duplicative entries. Joint Decl. ¶¶61-62. The reported lodestar does not include any time of attorneys or staff who billed fewer than 20 hours. *Id*. Class Counsel excluded all staff and attorney time devoted to the present motion for attorneys' fees, costs, and services awards. Joint Decl. ¶61. Consistent with the Northern District of California's Guidance, Class Counsel submitted summaries of the number of hours spent on various categories of activities related to the action by each biller, together with hourly billing rate information. *Id*. Exs. A-C. Applying Class Counsel's current billing rates results in $ $14,550,720 of lodestar and a blended average $709 rate for all counsel and staff. *Id*. If the Court grants the requested $10,666,667 in fees, it will result in a .73 negative multiplier.

Courts in the Ninth Circuit have granted attorneys' fees representing similar percentages of the common fund on multipliers more than triple what the crosscheck calculates here. *See, e.g.*, *Fleming v. Impax Lab'ys Inc*., No. 16-cv-06557, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (awarding 30% in attorneys' fees on a $33 million common fund and noting that 2.6 lodestar multiplier confirmed reasonableness of the request); *Kendall v. Odonate Therapeutics, Inc.*, No. 20-cv-01828, 2022 WL 1997530, at *7 (S.D. Cal. June 6, 2022) (33.3% fee representing a 2.36 multiplier was reasonable for a $12.8 million settlement).

Because the requested attorneys' fees result in a negative multiplier, the rates changed by Class Counsel are within the range of others recently approved, and the resulting hourly rate is reasonable, this factor also weighs in favor of granting Class Counsel's requested fees.

**C.  The Court Should Grant Class Counsel's Request for Reimbursement of Litigation Costs**

Since June 2020, Class Counsel have advanced all costs required litigating this case without any guarantee of repayment. Joint Decl. ¶69. Courts typically reimburse counsel from the settlement fund for costs reasonably incurred for the benefit of the class. *See In re Omnivision*, 559 F. Supp. 2d at 1048 (reimbursing all requests litigation costs and holding that "[a]ttorneys may recover their reasonable expenses that would typically be billed to paying clients in non-contingency matters"). Costs regularly deemed to be reasonable include, but are not limited to, "photocopying, printing, postage, court costs, research on online databases, experts and consultants,

and reasonable travel expenses." *Thomas v. MagnaChip Semiconductor Corp.*, No. 14-cv-01160, 2018 WL 2234598, at \*4 (N.D. Cal. May 15, 2018).

All Class Counsel's costs submitted with this motion were necessary to litigate this case. Joint Decl. ¶69. As noted in the Joint Decl., the most significant costs are expert witness fees, court reporting services, translation services, and electronic document review hosting, without which the Settlement would not have been possible. *Id.* (itemized expense chart); *see also Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 6619983, at \*16 (N.D. Cal. Dec. 18, 2018) (Courts in this District typically require "an itemized list of their expenses by category, listing the total amount advanced for each category, allowing the Court to assess whether the expenses are reasonable."). Here, all reasonable costs Class Counsel advanced total $771,461, representing just 2.4% of the gross Settlement Fund.

Because all the requested costs were reasonable and necessary to achieve the Settlement, the motion should be granted.

### D. The Requested Service Awards Are Reasonable and Warranted

The Court should also grant the requested $3,000 service award for each of the 35 Class Representatives. Service awards are "intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (citations omitted). In determining the amount for a service payment, courts typically consider "the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions . . . and the amount of time and effort the plaintiff expended in pursuing the litigation." *Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-cv-03698, 2018 WL 2183253, at \*8 (N.D. Cal. May 11, 2018) (cleaned up and citation omitted).

Each Class Representative was an active participant in the litigation. Joint Decl. ¶73. Class representatives assisted in many aspects of the litigation, including agreeing to serve as named Plaintiffs and undertaking the responsibilities that come with the role; reviewing and approving pleadings, briefs, and other court documents; staying in close contact with counsel throughout the

- 24 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

litigation to monitor progress; preserving and diligently searching for documents and other sources of information relevant to their claims; meeting with counsel to prepare IPPs' extensive discovery responses, preparing and sitting for depositions, and carefully reviewing, considering, and approving the final Settlement Agreement. Joint Decl. ¶73.

This settlement likely presents the only opportunity for Class Representative service awards. The requested $3,000 service awards compensate Class Representatives for the substantial time and effort they spent on behalf of the class participating in the litigation, preparing and sitting for depositions, and searching for and collecting documents. This amount is reasonable considering the excellent result achieved through this settlement and because the amount requested is "under the presumptively reasonable amount of $5,000 and [is] consistent with precedent." *Harbour et al., Plaintiff, v. Cal. Health & Wellness Plan, et al.*, No. 21-cv-03322, 2024 WL 171192, at *9 (N.D. Cal. Jan. 16, 2024); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (granting a $15,000 service award and observing that a "$5,000 payment is presumptively reasonable," and awards in the Ninth Circuit "typically range from $2,000 to $10,000").

The requested total of $105,000 in service awards for the 35 Class Representatives is also reasonable because, at only 0.3%, it represents a *de minimis* amount of the $32 million gross Settlement Fund. *See Thieriot v. Celtic Ins.*, No. 10-cv-04462, 2011 WL 1522385, at *7–8 (N.D. Cal. Apr. 21, 2011) (approving service awards totaling 1.8% of gross settlement fund); *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d. 975, 1002 (N.D. Cal. 2017) (granting service awards that combined for 0.22% of $60 million settlement ($15,000 for each of 9 class representatives); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1299 (S.D. Cal. 2017) (awarding $15,000 for each of 5 class representatives and 0.3% of $25 million settlement fund).

The requested service awards are reasonable, warranted, below the suggested benchmark, and should be granted.

## IV.    CONCLUSION

For all the reasons set forth above, Class Counsel respectfully request that the Court (1) grant an award of $10,666,667 in attorneys' fees; (2) approve reimbursement of $771,461 in litigations costs; and (3) issue services awards of $3,000 for each of the 35 Class Representatives.

**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS**

Dated:  January 9, 2025

Respectfully Submitted,


 /s/ Kalpana Srinivasan____
Kalpana Srinivasan (SBN 237460)
Marc M. Seltzer (SBN 54534)
Steven Sklaver (SBN 237612)
Michael Gervais (SBN 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Phone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (*pro hac vice*)
Texas SBN 24102452
**SUSMAN GODFREY L.L.P.**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

Thomas K. Boardman (SBN 276313)
**SUSMAN GODFREY L.L.P.**
One Manhattan West, 50th Floor
New York, New York 10001
Phone: 212-336-8330
tboardman@susmangodfrey.com

/s/ *Lin Y. Chan*_____
Lin Y. Chan (SBN 255027)
Eric B. Fastiff (SBN 182260)
Reilly T. Stoler (SBN 310761)
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008
lchan@lchb.com
efastiff@lchb.com
rstoler@lchb.com

- 26 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE
AWARDS**

**4-ER-0720**

*/s/ Adam J. Zapala*
Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
Christian S. Ruano (SBN 352012)
**COTCHETT, PITRE &
McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com
cruano@cpmlegal.com

*Settlement Class Counsel for the
Indirect Purchaser Plaintiffs*

- 27 -
**MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE
AWARDS**

**4-ER-0721**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Settlement Class Counsel for the Indirect Purchaser Plaintiffs*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| THIS DOCUMENT RELATES TO:<br><br>All Indirect Purchaser Actions | **JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.  APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS**<br><br>**Dept.:    Courtroom 4**<br>**Judge:    Hon. Edward J. Davila**<br>**Date:     April 3, 2025**<br>**Time:     9:00 AM** |

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.  APALA IN SUPPORT OF INDIRECT
PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE
AWARDS

4-ER-0722

We, Kalpana Srinivasan, Lin Y. Chan, and Adam J. Zapala declare as follows:

I, Kalpana Srinivasan, am an attorney at Susman Godfrey L.L.P., one of the three firms appointed as Settlement Class Counsel ("Class Counsel") for Indirect Purchaser Plaintiffs ("IPPs") in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

I, Lin Y. Chan, am an attorney at Lieff Cabraser Heimann & Bernstein, LLP, one of the three firms appointed as Class Counsel for IPPs in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

I, Adam J. Zapala, am an attorney at Cotchett, Pitre & McCarthy, LLP, one of the three firms appointed as Class Counsel for IPPs in the above-captioned proceeding. I am a member of the State Bar of California and am admitted to practice before this Court. I make this declaration based on my own personal knowledge. If called upon to testify, I could and would testify competently to the truth of the matters stated herein.

We submit this declaration in support of IPPs' Motion to for Award of Attorneys' Fees, Reimbursement of Expenses, and Service Awards ("Motion") in the above-captioned matter.

During the litigation, Class Counsel performed an extraordinary amount of work, described in detail below.

I.    **DESCRIPTION OF WORK PERFORMED**

a.  **Initial Pleadings and Leadership**

1.    Prior to filing, Class Counsel conducted an extensive investigation, including consultation with experts and market participants.

2.    Class Counsel filed the first IPP complaints between June 17 and 20, 2020 in the Northern District of California. *See Murphy, et al. v. Celestron Acquisition LLC, et al.*, No. 5:20-cv-04049 (N.D. Cal. June 17, 2020); *Brewer, et al v. Celestron Acquisition, LLC et al.*, No. 5:20-

cv-04823 (N.D. Cal. July 17, 2020); *Goldblatt v. Shen et al.*, No. 3:20-cv-04860 (N.D. Cal. July 20, 2020).

3.    In the following months, additional IPP complaints were filed. *See Kaufman v. Celestron Acquisition, LLC et al*, No. 5:20-cv-05285 (N.D. Cal. July 31, 2020); *Griffith et al v. Shen et al*, No. 5:20-cv-05400 (N.D. Cal. Aug. 4, 2020); *Price et al v. Shen et al*, No. 20-cv-06216 (N.D. Cal. Sept. 2, 2020); *Moore et al v. Celestron Acquisition, LLC et al*, No. 20-cv-06435 (N.D. Cal. Sept. 14, 2020); and *Riley v. Celestron Acquisition, LLC et al*, No. 20-cv-06527 (N.D. Cal. Sept. 17, 2020).

4.    The first motion to appoint lead counsel was filed on July 21, 2020. ECF No. 30. On August 17, 2020, the Court granted the motion to consolidate all currently pending cases under one master docket and urged all parties "to proceed on a coordinated basis going forward to secure the just, speedy, and inexpensive determination of every action and proceeding' pursuant to Rule 1." ECF No. 55. This Court considered competing motions for lead counsel on September 17, 2020 via Zoom, during which the Court appointed Settlement Class Counsel to lead the IPP action as Interim Co-Lead Counsel. ECF No. 91. The Court then confirmed the appointment of Interim Co-Lead Counsel in its September 18, 2020 order. ECF No. 95.

5.    On September 28, 2020, IPPs moved for an order authorizing alternative service on twelve foreign-based Defendants pursuant to Rules 4(e) and 4(f)(3), which these defendants opposed. The Court granted IPPs' motion on December 2, 2020, thereby allowing all defendants (as defined in this Motion) to proceed on the same case schedule. ECF No. 124.

6.    To streamline the litigation, Settlement Class Counsel consolidated the pending IPP complaints into a single amended pleading and filed a Consolidated Class Action Complaint on October 19, 2020. ECF No. 105. To avoid certain issues related to service, the parties stipulated to allow IPPs to submit an Amended Consolidated Class Action Complaint (filed on November 6, 2020). ECF No. 113.

**b.  Motions to Dismiss and Transfer**

7.    Defendants filed motions to dismiss the Direct Purchaser Plaintiffs' ("DPPs" and collectively with IPPs, "Plaintiffs") complaint and to transfer it to the Central District of California

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0724

on June 30, 2020. ECF Nos. 15 & 16. On July 14, 2020, IPPs filed a motion to intervene and file oppositions to both motions. ECF No. 22. IPPs' motion to intervene contained detailed arguments opposing the motions. However, DPPs' filing of their Amended Complaint on July 21, 2020 mooted the pending motion. ECF No. 31. Defendants opposed IPPs' motion to intervene as to the transfer motion on July 28, 2020. ECF No. 33. On September 10, 2020, the Court granted IPPs' motion to intervene and denied the motion to transfer. ECF No. 82.

8. **First Motion.** U.S.-based Defendants filed a motion to strike certain allegations and the first motion to dismiss the operative complaint on three grounds: untimeliness, failure to state valid federal and state claims, and failure to state a claim on November 16, 2020. *See* ECF Nos. 115 & 116; ECF Nos. 129 & 130 (IPP opposition); ECF Nos. 131 & 132 (reply). On January 20, 2021, after the Court authorized Rules 4(e) and 4(f)(3) service (*see supra*), foreign-based Defendants filed a motion to dismiss on identical grounds (ECF No. 134). ECF No. 140 (IPP opposition); ECF No. 147 (Defendants' reply).

9. **Second Motion.** In parallel, Defendant Synta Canada filed a motion to dismiss for failure to state a claim and lack of personal jurisdiction on January 20, 2021. ECF No. 135. This motion was not decided; the Court entered the parties' joint stipulation permitting IPPs to conduct limited jurisdictional discovery, including a Rule 30(b)(6) deposition, requests for production of documents, and interrogatories, on February 5, 2021. ECF No. 139. On March 25, 2021, two weeks before the date of the Rule 30(b)(6) deposition, Synta Canada filed a notice withdrawing its motion to dismiss only as to the arguments regarding lack of personal jurisdiction. ECF No. 160. On May 17, 2021, IPPs filed their opposition to Synta Canada's remaining motion to dismiss arguments. ECF No. 175.

10. The Court took all the above motions under advisement without oral argument and on June 2, 2021, issued an order granting in part but denying in bulk each of the motions. ECF No. 177. Subject to the order and several stipulations, IPPs filed the Second Amended Consolidated Class Action Complaint on August 31, 2021. ECF No. 197.

11. **Third Motion.** On October 12, 2021, Defendants filed a motion to dismiss the newly amended complaint on the grounds of statute of limitations and failure to state a claim,

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0725

specifically challenging all allegations related to conduct that occurred prior to 2013. ECF No. 215. Defendants, on the same day, also filed a motion to strike certain paragraphs of the Second Amended Consolidated Class Action Complaint. ECF No. 216; ECF Nos. 224 & 225 (IPPs' opposition). Defendants filed replies in support of their motions on January 10, 2022. ECF Nos. 229 & 230 (reply).

12.    On March 15, 2022, IPPs moved for leave to file a Third Amended Complaint to add new allegations based on Defendants' recently produced documents. ECF No. 244. On March 18, 2022, the Court granted IPPs' motion and terminated the pending motions as moot. ECF No. 246. IPPs filed the Third Amended Consolidated Class Action Complaint on March 25, 2022, which included substantial, additional allegations of anticompetitive conduct pre-2013. ECF No. 251.

13.    **Fourth Motion.** On April 28, 2022, Defendants again moved to dismiss IPPs' complaint. ECF No. 261; ECF No. 263 (IPPs' Opposition); ECF No. 268 (Defendants' reply). The Court issued an order taking the pending motion to dismiss under advisement without oral argument on November 1, 2022. ECF No. 291. On December 5, 2022, subject to a stipulation with Defendants that left the April 28, 2022 motion pending, IPPs filed the Fourth Amended Consolidated Class Action Complaint to add an additional putative Class Representative. ECF No. 300.

c.  **Discovery**

14.    The parties vigorously contested discovery in this litigation. The parties engaged in extensive motion practice, including motions regarding entry of protective, discovery, and scheduling orders, and at least fourteen discovery dispute briefs. Motion practice on these issues typically followed weeks or months of meeting and conferring between the parties, sometimes involving consultants.

15.    IPPs served their original written requests for discovery in August 2020. Plaintiffs served on Defendants at least 140 document requests and 18 interrogatories. IPPs also issued over 30 subpoenas to non-parties and obtained substantial structured data regarding these intermediaries' direct purchases of telescopes from the Defendants and their sales to the IPPs.  IPPs engaged in this non-party discovery to demonstrate "pass through" and economic harm and identify settlement

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0726

class members. IPPs conducted extensive discovery negotiations with Defendants, including weekly meet-and-confers, on topics ranging from (1) production of documents and transactional data, (2) the identification of appropriate document custodians, (3) the use of search terms, (4) the completeness of discovery responses, and (5) deposition scheduling. IPPs conducted similar extensive discovery efforts with non-parties to obtain pass-through data critical to the case and IPP class member data helpful for settlement administration.

16.     IPPs also reviewed a significant portion of more than 3.9 million documents Defendants produced, and voluminous electronic transactional and cost data from Defendants and non-parties. Because the millions of documents produced included many Chinese language documents, IPPs retained Chinese language specialists and purchased Chinese-English translation software for efficient document review and analysis.

17.     IPPs defended 23 class representative depositions, largely in person – a substantial number for a class case. Additionally, IPPs took depositions of Defendants' senior executives, including Celestron's CFO, Paul Roth, whose testimony helped IPPs to determine the availability of transactional data, and Celestron's CEO Corey Lee, as detailed further below. The depositions required obtaining certified translations of numerous documents.

18.     Contested discovery issues between the parties that necessitated motion practice included, but were not limited to: (1) search terms, (2) production of relevant and non-privileged documents, (3) production of documents improperly withheld as privileged, (4) collection and production of transactional and costs data, (5) proper responses to interrogatories, and (6) deposition scheduling.

ii.   Discovery Orders

19.     On February 10, 2021, the parties submitted a joint letter brief regarding entry of a protective order. ECF No. 141. The disputes concerned whether a non-producing party could designate as confidential documents produced by another party and the ability of Class Representatives to access documents designated as highly confidential or attorneys' eyes only. *Id.* Prior to filing the joint letter, the parties met and conferred on the disputed topics and the protective order generally on January 25 and February 3, 2021. *Id.*

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0727

20. The parties presented argument before Magistrate Judge DeMarchi on March 2, 2021. ECF No. 150. The court issued an order the same day, modifying the proposed protective order as agreed to during the hearing as to designations of documents produced by other parties and accepting Defendants' proposed modifications regarding documents designated as highly confidential or attorneys' eyes only. ECF No. 152.

21. On March 24, 2021, after multiple meet-and-confers with DPPs and Defendants, all parties filed a joint stipulation regarding discovery. ECF No. 159. The stipulation covered protocols for translation of documents and at depositions, for depositions taken remotely, email service, and a protocol for modifications to time limits for depositions. *Id.*

ii. Documents and Depositions

22. **Discovery Coordination.** On April 5, 2021, the parties filed two separate joint letters regarding discovery issues. ECF Nos. 161 & 162. One letter addressed general issues regarding coordination of discovery. ECF No. 162. The other letter addressed deposition notices served unilaterally by DPPs. ECF No. 161. In the letters, and throughout the litigation, IPPs emphasized their commitment to working collaboratively to coordinate discovery schedules. Prior to filing the letters, the parties met and conferred on March 31, 2021. *Id.* On April 13, 2021, Magistrate Judge DeMarchi held a hearing via Zoom and issued an order requiring the parties to confer further and submit a coordinated discovery plan by April 23, 2021. ECF Nos. 164 & 165. The court ordered, on April 20, 2021, that DPPs' depositions be withdrawn and again instructed the parties to coordinate on all aspects of discovery. ECF No. 168.

23. On April 22, 2021, the parties filed a request for an additional week to meet and confer on the coordinated discovery schedule (ECF No. 169), which the court granted (ECF No. 170). The parties submitted a joint letter on April 30, 2021, detailing their proposed coordinated discovery schedule and raising a dispute regarding the location of Rule 30(b)(6) depositions. ECF Nos. 171 & 171-1. Based on efficiency concerns, Plaintiffs argued that 30(b)(6) deposition should presumptively take place within the Northern District of California. *Id.* Defendants argued that the parties should meet and confer regarding location no less than 21 days before the scheduled deposition date. *Id.* Prior to filing the proposed discovery schedule, the parties met and conferred

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0728

regarding the proposal on April 26 and 27, 2021. ECF No. 171. The proposed stipulated discovery order detailed agreement on the discovery schedule generally, coordination of written discovery Rules 31, 33, 34, and 36, a fact deposition under Rule 30(b)(1), translation of documents and depositions, remote depositions, and time limits of depositions. ECF No. 171-1. On May 4, 2021, Magistrate Judge DeMarchi issued an order stating that Rule 30(b)(6) depositions of party witnesses would presumptively occur in the Northern District and instructing the parties to submit an amended discovery proposal reflecting the court's order by May 10, 2021. ECF No. 172. On May 11, 2021, the court approved the parties amend stipulated order regarding discovery. ECF No. 174.

24.    **Destruction of Synta Tech and Suzhou Synta Documents.** The parties continued to meet and confer regarding search terms and custodians for document requests. During this phase, the parties requested and received multiple extensions of various discovery related deadlines. ECF Nos. 179, 186, & 190. On May 26, 2021, during a recorded meet-and-confer, counsel for the Defendants informed Plaintiffs that Synta Technology Corp and Suzhou Synta Optical Technology Co. Ltd. destroyed or lost all custodial documents during the companies' dissolution in 2016. ECF No. 198. Plaintiffs served a 30(b)(6) deposition notice regarding the document destruction on July 2, 2021. *Id*. On September 1, 2021, the parties filed a joint discovery letter brief regarding the 30(b)(6) deposition topics, timing, and location. *Id*. Plaintiffs filed two additional joint letter briefs on September 2, 2021. ECF Nos. 199 & 200. Specifically, Plaintiffs sought to question Synta Tech and Suzhou Synta regarding employee Joyce Huang and the issues surrounding the destruction of documents. ECF No. 198. IPPs also proposed a protocol for the deposition to occur in compliance with Taiwan's COVID-19 quarantine requirements, but Defendants refused to agree to a set timeline. *Id*.

25.    On September 13, 2021, Magistrate Judge DeMarchi issued an order allowing Plaintiffs to take the 30(b)(6) deposition on the disputed topics. ECF No. 201. The order also urged the parties to be mindful of public health concerns but cautioned against using them as an excuse to delay the timely production of witnesses. *Id*. On December 2, 2021, Plaintiffs requested via email that Defendants identify the individuals whom they intended to designate. ECF No. 237.

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J. APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0729

Defendants refused to do so. *Id.* Plaintiffs filed a joint discovery letter on February 9, 2022, regarding Defendants' failure to identify the person or country of residence of the designated 30(b)(6) witness. *Id.* On February 16, 2022, the Magistrate Judge DeMarchi issued an order requiring Plaintiffs to first notify Defendants of possible dates and whether the 30(b)(6) depositions would be in person or by Zoom and giving Defendants 14 days to identify witnesses and note any possible travel restrictions. ECF No. 239.

26. **Unauthorized Use of Technology-Assisted Review.** The parties field a joint discovery letter brief regarding Defendants' use of technology-assisted-review ("TAR") in violation of the ESI Order on September 13, 2021. ECF No. 202. From March 27 to August 4, 2021, the parties conducted at least fourteen meet-and-confers regarding search terms and custodians. ECF No. 202-6. Defendants had only produced 53 pages of documents as of the letter brief's filing, despite written discovery pending for over eleven months and the deadline for substantial completion less than a month away. ECF No. 202. After a hearing, Magistrate Judge DeMarchi issued an order requiring the parties to further meet-and-confer on the issues and submit any remaining disputes concerning search terms, TAR, and related deadline extensions by October 26, 2021. ECF No. 209. On October 27, 2021, Magistrate Judge DeMarchi approved the parties' stipulated order regarding production of documents. ECF No. 220. The stipulated order required Defendants to run search terms without TAR and make a substantial document production by November 15, 2021 and complete transactional data production by December 1, 2021. *Id.* Additionally, the order provided phased substantial completion deadlines to produce documents by various custodians. *Id.* All responsive non-privileged documents had to be produced by February 15, 2022. *Id.*

27. **Motion to Compel Interrogatory Response.** On March 21, 2022, the parties filed a joint discovery letter brief regarding Defendants' failure to properly respond to Plaintiffs' interrogatory on Defendants' decision to discontinue business operations and destroy records. ECF No. 247. Plaintiffs repeatedly tried in good faith to reach a sensible agreement with Defendants regarding their response before filing a letter brief. *Id.* On February 11, 2022, Plaintiffs offered to agree to an extension to respond to the interrogatory provided Defendants would fully respond and

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0730

not simply object, but Defendants refused. *Id*. Defendants served only objections to the interrogatory on February 17, 2022. *Id*. After a further meet-and-confer on the issue on February 28, 2022, Defendants again refused to fulsomely respond to the interrogatory, but suggested they would further discuss the issue internally and respond by March 4, 2022. *Id*. Plaintiffs received no response and instead Defendants pivoted to an argument regarding duplicative discovery. *Id*. On May 25, 2022, Magistrate Judge DeMarchi issued an order requiring Defendants to provide substantive responses to the interrogatory by June 8, 2022. ECF No. 262.

28.    **Scheduling Order.**  In an effort to streamline the litigation, on July 26, 2022, IPPs filed a motion for entry of a scheduling order. ECF No. 269. Discussions and meet-and-confers regarding case scheduling occurred regularly over the years of litigation, but without agreement on an omnibus schedule for case deadlines. *Id*. On June 2, 2022, IPPs proposed a case schedule to Defendants. *Id*. Despite IPPs' repeatedly following up and receiving assurances from Defendants that they would provide comments and edits, Defendants never sent the promised counterproposals. *Id*. IPPs' motion provided suggested case deadlines through summary judgment briefing. *Id*.  By contrast, Defendants opposed setting any case deadlines until the Court ruled on the pending motion to dismiss. ECF No. 271. The parties met and conferred via Zoom on June 17, 2022 and exchanged numerous emails on scheduling issues in an effort to avoid the need for judicial intervention. *Id*. These efforts did not resolve the outstanding issues, and, on August 16, 2022, IPPs filed a reply to their motion, urging the Court to avoid delay in setting a case schedule. ECF No. 272. The Court granted IPPs' request and issued a scheduling order on September 30, 2022, setting case deadlines through class certification. ECF No. 276.

29.    **Chinese Search Terms.**  On September 28, 2022, the court adopted the parties' stipulation regarding Chinese search terms, providing an iterative protocol for running the terms, producing relevant documents, and sharing certain costs. ECF No. 275.

30.    **Deposition Scheduling.**  Issues regarding deposition locations and dates continued to be an issue throughout the litigation. The Court held a joint status conference on February 23, 2023, at which it ordered the parties to meet and confer regarding the timing and location of depositions. On March 8, 2023, the parties filed a joint status report detailing their continuing

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0731

disagreements. ECF No. 309. IPPs stated that after much debate and negotiation, Defendants had agreed to the following: (1) depositions could be conducted in person or via remote means, at the election of the requesting party; (2) Defendants would make their four witnesses residing in Asia available for depositions in Taiwan, with the rest of Defendants foreign witnesses made available in the Northern District; and (3) all Defendants' United States-based witnesses, and the named plaintiffs, would be deposed close to where they live. *Id*. IPPs also submitted proposed dates for all of the named plaintiffs and argued that Defendants' depositions should be sequenced in a manner to ensure that plaintiffs had custodial documents before taking the depositions. *Id*. On April 7, 2023, the Court issued an order that: (1) Defendants' Canadian witnesses would be deposed in the Northern District; (2) Defendants' witnesses located in Asia would be deposed in Taiwan with depositions scheduled so that they could all be taken in a single trip; and (3) Plaintiffs' United States-based witnesses would be deposed remotely or in location close to where they live. ECF No. 329. At the Court's request, the parties filed a joint status report on July 31, 2023, detailing the outstanding requests for deposition dates. ECF No. 358. The Court issued an order on August 1, 2023, setting deadlines for: (1) notices of Rule 30(b)(6) depositions and their topics to be served; (2) reasonable estimates of the amount of time needed for 30(b)(6) and 30(b)(1) testimony; and (3) providing available dates for depositions. ECF No. 361. Additionally, the Court required the parties to confer to account for previously-made travel arrangements to Taiwan and San Francisco. *Id*. The parties, consistent with these proceedings, filed a joint report updating the court on the status of deposition scheduling on August 16, 2023. ECF No. 369. On August 24, 2023, the parties filed yet another joint report, updating the Court about agreed deposition dates and depositions without agreed dates. ECF No. 374. The Court issued an order holding that depositions with agreed dates must proceed as described unless *all parties* agreed to change them. ECF No. 377. The Court, as to four remaining witnesses for whom DPPs had a scheduling conflict, instructed the parties to meet and confer to find new deposition dates. *Id*. On September 1, 2023, the parties filed a joint status report stating that they had come to agreement on new deposition dates and locations for those four witnesses. ECF No. 380.

i.  Transactional Data

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0732

31.    Data discovery presented another pitched battleground throughout this litigation. On March 22, 2021, IPPs issued their first request for Defendants' transaction-level sales data, after which the court approved a stipulation ordering production of all such data before December 1, 2021. *See* ECF No. 277. On October 11, 2022, the parties filed a joint discovery letter brief regarding Defendants' failures to timely produce the requested transactional data. *Id.* Issues with Defendants' data included years of missing data for certain defendants, no data at all from one defendant, and massive data format issues with others. *Id.* The letter brief detailed the great lengths Plaintiffs undertook to get Defendants to produce the requested data, including the numerous instances where Defendant promised to have a client representative attend a meet-and-confer, only to have Defendants cancel shortly before the scheduled meeting. *Id.* To resolve these issues, Plaintiffs proposed a phased process under which Defendants would first answer five preliminary questions regarding their transactional data and requested a date certain by which they must complete the production. *Id.* Plaintiffs also requested the court order that the parties all attend regular weekly meet-and-confers and monthly status conferences with the court until the resolution of all outstanding discovery matters. *Id.* After a hearing on November 8, 2022, the Court issued an order the next day requiring Defendants to produce Celestron transactional data for the relevant period without filters, produce samples of the physical bound records for Suzhou Synta, and provide the requested information in writing regarding each defendants' data, all by November 30, 2022. ECF No. 293.

32.    **Order re Special Master and Transactional Data Meet-and-Confers.**    On November 9, 2022, Magistrate Judge DeMarchi issued a second order inquiring about the appointment of a special master to oversee discovery and requesting the parties meet and confer to agree on a day and time for weekly meet-and-confers regarding discovery disputes. ECF No. 294. The parties filed a response on November 21, 2022, with IPPs detailing their previous efforts to attain the requested transactional data:

> Between March and August 2022, the parties exchanged more than two dozen letters and emails about Defendants' production of transactional data. Between July 5 and August 5, Plaintiffs sent no fewer than 10 communications to Defendants (mostly without a response) about the issue and requested to meet and confer. In

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

August alone, once Defendants agreed to meet and confer about this issue, Defendants proposed that a client representative join them for a meet and confer with Plaintiffs on August 10, 15, 22, and 31—only to inform Plaintiffs each time that the client representative was unavailable, sometimes shortly before the scheduled call. During the parties' call on August 31, 2022, Defendants disclosed for the first time that they had produced data with filters applied and that instead of answering Plaintiffs' questions, they would simply reproduce the data without filters. But Defendants never did what they promised despite repeated requests from Plaintiffs, and repeatedly delayed briefing the issue to the Court.

ECF No. 296.

33.    On November 30, 2022, the court issued an order declining to appoint a special master. ECF No. 298.

34.    **Hearing re Production of Transactional Data.**  On April 5, 2023, Magistrate Judge DeMarchi held a hearing on DPPs' motion to enforce the court's discovery order regarding production of transactional data, at which IPPs participated. The court issued an order on April 5, 2023, reserving the question of whether to impose sanctions on Defendants, and requiring the parties to meet in person no later than April 19, 2023 to discuss issues with Defendants' production of transactional data. ECF No. 325.

35.    **Further Meet-and-Confers re Transactional Data.**  After a postponement of the meeting due to COVID-19 exposure, the parties, along with technical and data experts, met and conferred in person on May 9, 2023, in San Francisco. ECF No. 327. Plaintiffs sent Defendants a list of 25 transactional data questions prior to the meeting to facilitate discussion and had an initial virtual meeting on April 24, 2023. On May 15, 2023, the parties filed a joint status report about production of Defendants' transactional data and progress made during the meet-and-confers. ECF No. 338. The joint status report detailed thirteen items Defendants agreed to produce and six additional issues on which Defendants promised to investigate further. *Id*. Defendants agreed to produce eleven of the thirteen items and respond to the six additional questions by May 26, 2023, subject to certain contingencies. *Id*. During the meetings, Plaintiffs also raised concerns regarding production of sales and costs data from defendants other than Celestron, including defendants Pacific Telescope, Olivon, Olivon USA, and Nantong Schmidt. *Id*.

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0734

36. On June 7, 2023, the court issued an order requiring the parties to file a further joint status report regarding defendants' production of transactional data. ECF No. 343.

37. On June 14, 2023, the parties filed the requested status report. ECF No. 344. IPPs confirmed that Defendants provided satisfactory responses to their requests and that IPPs and Defendants met and conferred again with Defendants' data expert on June 12, 2023. *Id.* Defendants also confirmed that transactional data for all defendants had been produced, but that it would supplement defendant Olivon's data "in order to better organize the previously produced" data. *Id.* Defendants made the supplemental Olivon data production on June 1, 2023. *Id.* In the joint report, IPPs stressed to the court that, while no issues were ripe at the time, based on IPPs' analysis, additional transactional data likely existed for at least Nantong Schmidt related to cost data, sales data to entities other than Celestron and Orion, and product descriptions. *Id.* The parties agreed to work together to provided IPPs with finality on the transactional data issue. *Id.*

38. **Additional Sources of Transactional Data.** On June 15, 2023, the court issued an order requiring Defendants to "promptly complete their investigation of the additional data sources identified in the status report, and must promptly complete their production of the additional data that they indicate in the report they will produce to plaintiffs." ECF No. 346.

39. On July 30, 2023, the parties filed a third joint status report regarding transactional data detailing that the parties still had disagreements about the fulsomeness of Defendants data production and responses to questions. ECF No. 347. The remaining open issues included SAP data and Atlas e-commerce data, Nantong Schmidt data, and whether Defendants general ledger constituted "transactional data" as defined by the requests for production. *Id.*

40. On July 18, 2023, the court held a hearing and issued an order on Defendants' production of transactional data. ECF No. 350. The court required Defendants to complete their production of Nantong Schmidt cost data for all U.S. sales during the relevant time period, update their response to IPPs' interrogatory about the same, and identify by bates number Celestron's price component reports that could be used to calculate margins, all by July 21, 2023. *Id.*

41. On July 29, 2023, the parties filed another joint status report on Defendants' transactional data. ECF No. 355. IPPs again detailed Defendants' failure to make good on their

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0735

court-ordered obligations regarding the Nantong Schmidt data, including supplementing their response to the interrogatory, and Celestron margin data. *Id.*

42. On July 31, 2023, the court issued an order requiring Defendants to file a copy of their most recent supplemental response to IPPs' relevant interrogatory by 4:00PM that day. ECF No. 356.

43. After holding another status conference on transactional data, the court issued an order on August 1, 2023, requiring Defendants to: (1) make all the source material from which Nantong Schmidt prepared the summary of costs data available to plaintiffs for review by August 25, 2023; (2) supplement their response to IPPs' interrogatory to address all its subparts by August 14, 2023; (3) by August 4, 2023, produce samples of Celestron's general ledger; or (4) identify documents from which margins could be obtained by August 10, 2023. ECF No. 362.

44. **Further Productions and Deposition of Celestron CFO Paul Roth.** Over the next weeks, Defendants made further productions as required and a witness available to answer questions about the data and on August 7 & 8, 2023, Plaintiffs deposed Celestron's CFO, Paul Roth. On August 16, 2023, the parties submitted another joint status report. ECF No. 370. At his deposition, Mr. Roth testified that Celestron had provided all of its transactional data, including the competent parts at issue, to counsel for the Defendants. *Id.* Plaintiffs, however, could not question Mr. Roth about much of the general ledger data, because Defendants did not produce it until *after* the deposition. *Id.* On August 11, 2023, Plaintiffs asked Defendants to confirm whether they produced information identified by Mr. Roth, and, if so, to identify it by bates number. *Id.* On the due date of the joint status report, Defendants produced still more account identifying information linking accounts to the Celestron general ledger. *Id.* Defendants also refused to provide Celestron's IT expert for a meeting with plaintiffs' data experts to streamline the efforts. *Id.* Consequently, IPPs requested that the court order Defendants to identify or produce all the repeatedly requested data regarding profit margins, and to confirm that they are not withholding any further ledger or subledger transaction data. *Id.* Plaintiffs also raised continuing deficiencies with Defendants' responses and productions regarding Nantong Schmidt cost data. *Id.*

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0736

45.    **Orders re Source Material for Transactional Data.** The court issued a further order on transactional data on August 17, 2023, again demanding that Defendants (1) make the source material from which defendant Nantong Schmidt prepared the summary of cost data available for review and (2) lodge the transcripts from Mr. Roth's deposition, highlighted to illustrate the points on which the parties disagreed. ECF No. 372. On August 29, 2023, after a hearing on the issue on the same day, the court ordered Defendants to (1) explain what the 208 manually-prepared data spreadsheets for Nantong Schmidt contained, (2) identify by bates number Celestron's relevant ledger data, and (3) provide an employee knowledgeable in the data for questioning, or other put up another witness for a deposition because Defendants failed to produce the data before Mr. Roth's. ECF No. 378.

46.    IPPs did not participate in any further disputes regarding transactional data after reaching an agreement in principle with Defendants to settle the case on September 7, 2023.

ii.    Privilege Issues

47.    IPPs also relied on motion practice regarding Defendants' privilege claims. On October 28, 2022, the parties filed two joint discovery letter briefs regarding documents withheld by Defendants as privileged and other issues related to Defendants' privilege logs. ECF Nos. 287 & 288. Specifically, Plaintiffs argued that Defendants improperly withheld and needed to produce the following categories of documents: (1) third-party communications and documents withheld on the basis of attorney-client privilege; (2) communications and documents withheld on the basis of "tax privilege"; (3) communications and documents subject to Defendants' clawback demands; and (4) attachments to attorney-client emails withheld on the basis of attorney client privilege. ECF No. 287. Plaintiffs also argued that Defendants need to supplement their privilege logs to provide certain categories of information, including: (1) author and recipients of the communication or document being withheld; (2) the names of the attorneys that provided the alleged legal advice or work product in the document being withheld, and the entities or persons that those attorneys represented; and (3) the subject matter addressed in the communication or document being withheld. ECF No. 288. Prior to filing the joint brief, the parties met and conferred over the course of six months at least four separate times via Zoom and exchanged emails at least ten times on the

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0737

issues. *Id.* The court issued an order on November 29, 2022, granting and denying in part Plaintiffs' requested relief. ECF No. 297. The court required Defendants to remove all tax documents from their privilege log, as well as amend the log to make clearer the nature of documents withheld and the recipients of the documents and submit certain documents of in camera review. *Id.*

48.    On March 1, 2023, Plaintiffs filed a motion to compel the production of documents Defendants continued to withhold as privileged, in violation to the court's November 29, 2022 order, including "improperly withheld Third-Party Communications and Attachments . . . ." ECF No. 305. Defendants opposed the motion on March 15, 2023 (subject to a stipulation to extend the deadline to respond) (ECF No. 322), and Plaintiffs filed a reply on March 30, 2023. ECF No. 323. The court issued an order on April 25, 2023, requiring Defendants submit documents for in camera review. ECF No. 332. On April 28, 2023, Defendants complied with the court's order and submitted the requested documents for review. ECF No. 333. The court issued another order on July 20, 2023, requiring Defendants to file an amended privilege log only covering the 37 documents submitted for review. ECF No. 353.

### iii.    Non-Party Discovery

49.    IPPs conducted expansive non-party discovery for information and transactional data regarding the retail telescope market. Starting in the summer of 2021, IPPs issued at least 30 Rule 45 subpoenas to retailers that sold commercial telescopes to potential class members.

50.    Resolving objections to some of the subpoenas required court intervention. On January 4, 2022, IPPs filed a joint letter brief to compel Orange Count Telescope ("OCT") to produce its transactional data reflecting purchases of telescopes and accessories from Defendants and Co-Conspirators and retail sales of such products. ECF No. 227. During the pendency of the subpoena, IPPs and OCT met and conferred on August 19, 2021 to discuss the data in OCT's possession. *Id.* OCT served untimely objections on August 27, 2021 and informed IPPs that it could not meet and confer again until October 5, 2021. *Id.* Following the October 5, 2021 meet-and-confer, IPPs proposed to limit the scope of the subpoena by agreeing to cut the time period, the products for requested data, and other compromises regarding data format. *Id.* OCT, however, refused to budge on their original objections, forcing IPPs to file the motion to compel. *Id.*

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0738

Following a January 25, 2022 hearing on the motion (ECF No. 232), the court issued an order that day compelling production of limited to data "readily accessible in electronic form" that showed telescopes and accessories sold by Defendants and Co-Conspirators, dating back to January 1, 2003 or whatever date data became available. ECF No. 235. OCT and IPPs exchanged emails over the following weeks regarding the state of OCT's data. ECF No. 238 (Feb. 15, 2022 joint letter). OCT indicated that it did not maintain structured electronic data at all and that it would have to recreate it by hand. *Id.* By order February 16, 2022, the court required OCT to provide a sworn declaration regarding OCT's data by February 28, 2022. ECF No. 241.

51.     IPPs served a subpoena on non-party Levenhuk, Inc., a manufacturer customer of the Defendants in early February 2023. On March 7, 2023, IPPs and Defendants filed a joint discovery letter brief regarding the subpoena. ECF No. 307. Defendants moved to quash the subpoena, or in the alternative limit its scope. *Id.* IPPs argued that they needed Levenhuk's data to conduct overcharge pass-through analysis. *Id.* On March 7, 2023, the court issued an order denying Defendants' motion because they failed to identify "any personal right or privilege that is implicated by IPPs' document subpoena" and that the subpoena did not violate any of the court's prior orders regarding the geographic scope of discovery. *Id.*

52.     In total, IPPs collected transactional sales data from 25 non-party entities, including large telescope retailers like Amazon and Cloud Break Optics, and small telescope retailers like Adorama and Costco. IPPs' experts used this data to conduct pass-through and damages analysis, and the data now facilitates the notice and claims process.

### d.  Settlement Negotiations and Mediation

53.     The parties reached the Settlement Agreement after months of contentious arm's-length negotiations, including bilateral discussions and multiple mediation sessions overseen by Hon. Suzanne Segal, a former Magistrate Judge of the Central District of California. The first mediation occurred on July 20, 2021, without reaching a resolution. After a second mediation on September 6, 2023, the parties accepted Judge Segal's mediator's proposal and executed an agreement in principle to resolve the matter on September 7, 2023. The parties worked diligently to draft and execute the Settlement Agreement After reaching the agreement in principle.

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0739

54.    On September 8, 2023, IPPs filed a notice of settlement and scheduling stipulation, requesting that the Court stay all deadlines and discovery in the IPP action, which the Court granted on September 19, 2023. ECF Nos. 384 & 386.

55.    The parties worked diligently during the stay to address various complicated and sensitive issues particular to these defendants while finalizing the terms and language of the Settlement Agreement. Ironing out the specifics of the Settlement Agreement was complex, covering the interplay between several corporate families across multiple continents. Aside from the monetary consideration that had already been agreed to in principle, there were several additional provisions in the long-form agreement that were contested and took substantial time and effort to work through.

56.    On August 31, 2024, the parties executed the Settlement Agreement.

57.    The Settlement Agreement does not release claims regarding named Defendant Ningbo Sunny or any of its officers, affiliates or related entities in their capacity acting on behalf of Ningbo Sunny.

## II.    Preliminary Approval and Notice

58.    On September 16, 2024, IPPs filed a motion for Preliminary Approval of Settlement and Issuance of Notice, along with accompanying attorney and claims administrator declarations. ECF Nos. 389, 390, & 391. The Court held a hearing on the motion on October 31, 2024 (ECF No. 393), and on November 4, 2024, issued an order granting preliminary approval, authorizing the issuance of the notice program, approving Verita as the claims administrator, and setting a schedule for final approval, a fairness hearing, and motions for attorneys' fees and costs. ECF No. 397.

59.    Verita issued the notice as ordered on December 13, 2024.

## III.    Lodestar

60.    As of December 1, 2024, Class Counsel and their staff dedicated over 24,055 hours and $14,550,720 in lodestar to litigating this case as of the filling of this motion, resulting in a blended average for counsel and staff of $709 at current rates. The requested fee of $10,666,667 therefore represents a .73 negative multiplier.

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

4-ER-0740

61.    Class Counsel excluded reported time in the exercise of billing discretion. First, this reported lodestar data does not include any time of attorneys who fewer than 20 hours. All staff and attorney time devoted to the present motion for attorneys' fees, costs, and services awards has also been excluded. By the time of final approval hearing on April 3, 2025, Class Counsel's reasonable lodestar will have increased due to the time spent briefing and arguing final approval.

62.    Each firm carefully reviewed their time at the time of submission to reduce inefficient or duplicative entries.

63.    As discussed above, Class Counsel worked efficiently to litigate this difficult, complex, and contentious international case to minimize duplicative work and achieve the best possible result for the class. Attorneys and staff employed by Class Counsel performed all of the work for which Class Counsel seek fees.

64.    For over four years, Class Counsel litigated this case on a pure contingency basis and advanced all professional time and necessary litigation expenses. Class Counsel assumed tremendous risk litigating against a largely foreign cartel that may have proven difficult against which to collect any judgment.

65.    As detailed in the motion to appoint lead counsel, each of the Class Counsel firms have vast experience gathered over decades of litigating antitrust class action, which each firm brought to bear in achieving this excellent result for the Class. *See also* Amended Motion to Appoint Lead Plaintiff and Lead Counsel, ECF No. 38, attachments 1-10 (declarations and firm resumes detailing antitrust experience).

66.    A table detailing Susman Godfrey LLP's time is attached here as Exhibit A.

67.    A table detailing Lieff, Cabraser, Heimann & Bernstein LLP's time is attached here as Exhibit B.

68.    A table detailing Cotchett, Pitre & McCarthy LLP's time is attached here as Exhibit C.

IV.    **Unreimbursed Costs and Litigation Expenses**

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0741

69. As of the filing of this Motion, IPPs' current unreimbursed litigation costs are $771,461. Based on Class Counsel's decades of experience, all costs and litigation expenses were necessary to effectively litigate this case. These costs include:

- $574,135 for expert and consultant costs;
- $99,417 for document review platform hosting costs;
- $15,103 for document translation costs;
- $37,644 for court reporter and other deposition-related costs;
- $9,816 for travel costs;
- $8,500 for mediation costs; and
- $26,846 for other miscellaneous costs, including, court filing fees, mail, legal research, bank fees and process service.

## V.    **Expert Analysis**

70. IPPs retained Dr. Russell Mangum, the Executive Vice President at Cirque Analytics, as an expert to research and calculate class-wide damage models. This retention required researching and developing alternative models due to Defendants' unwillingness to provide transactional data and revising those models once Defendants did produce transactional data. Additionally, Dr. Mangum analyzed third party retail transactional data obtained by counsel through discovery. Dr. Mangum and his associates were preparing their expert reports when the parties reached the agreement to settle the case. After Defendants produced some of this data in 2023, Plaintiffs' economist and his associates conducted multiple regressions and other analyses to support class certification, liability, and damages.

71. Further, Dr. Mangum evaluated the relevant commerce based on sales data provided through discovery from Celestron, Orion, and Meade. His sales estimates of Telescopes to IPPs between January 1, 2005, and September 6, 2024, totaled approximately $636 million. Based on evaluation of third-party transaction data, Dr. Mangum calculated that the size of the damages class as approximately 4 million customers. Dr. Mangum calculated class wide damages based on overcharges estimated from multiple regression analyses, informed by thorough literature review, and from studying the court-approved methods of Dr. Douglas Zona from the *Orion* litigation. In

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0742

sum, Dr. Mangum calculated that damages for the IPP Class amounted to approximately $29 million to $32 million (based on an overcharge of five percent and the pass-through rate of between 90 percent and 100 percent), and could have been as high as $165 million (based on an overcharge of 26 percent and pass-through rate of 100 percent).

72.    IPPs also hired Dr. Richard Youngworth, a telescope industry expert with a Ph.D. from the University of Rochester and manufacturing experience as an engineer and research associate at Ball Aerospace & Technologies Corp. and Eastman Kodak, respectively. At the time of the mediation and settlement, Dr. Youngworth was researching and drafting an expert report detailing the manufacturing process of various consumer telescopes and offering an opinion on the ability of manufacturing defendants to produce each other's telescopes.

## VI.    Class Representatives

73.    The class representatives took an active role in this litigation and provided exemplary representation on behalf of the class. Class representatives assisted in many aspects of the litigation, including agreeing to serve as named Plaintiffs and undertaking the responsibilities that come with the role; reviewing and approving pleadings, briefs, and other court documents; staying in close contact with counsel throughout the litigation to monitor progress; preserving and diligently searching for documents and other sources of information relevant to their claims; meeting with counsel to prepare IPPs' extensive discovery responses, preparing and sitting for depositions, and carefully reviewing, considering, and approving the final Settlement Agreement.

## VII.    Conclusion

74.    We declare under the penalty of perjury that the foregoing is true and correct. Executed on this 9th day of January 2025, by Kalpana Srinivasan in Los Angeles, California; Adam J. Zapala in Burlingame, California; and Lin Y. Chan in San Francisco, California.

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.    APALA IN SUPPORT OF INDIRECT
PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE
AWARDS

4-ER-0743

_____
Kalpana Srinivasan
**SUSMAN GODFREY L.L.P.**

_____
Lin Y. Chan
**LIEFF CABRASER HEIMANN &
BERNSTEIN LLP**

_____
Adam Zapala (Jan 9, 2025 19:39 EST)
Adam J. Zapala
**COTCHETT, PITRE &
McCARTHY, LLP**

*Settlement Class Counsel for the
Indirect Purchaser Plaintiffs*

JOINT DECLARATION OF KALPANA SRINIVASAN, LIN Y. CHAN, AND ADAM J.   APALA IN SUPPORT OF INDIRECT
PURCHASER PLAINTIFFS' MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE
AWARDS

4-ER-0744

# EXHIBIT A

Case 5:20-cv-03639-EJD    Document 398-1    Filed 01/09/25    Page 25 of 29

*IN RE TELESCOPES ANTITRUST LITIGATION*

| Firm Name: | SUSMAN GODFREY, LLP | | Reporting Period: | Inception Through 11/30/2024 |
|---|---|---|---|---|

**Categories:**

1. Investigations; factual research
2. Draft discovery requests
3. Draft discovery answers/responses
4. Take depositions
5. Defend depositions
6. Discovery meet and confer
7. Document review
8. Draft pleadings, briefs and pretrial motions
9. Read/review pleadings, briefs, discovery, transcripts, etc.
10. Class certification/experts
11. Litigation strategy, analysis and case management
12. Settlement negotiations
13. Trial and trial preparation
14. Court appearance and preparation

**TITLE:**
(P) Partner
(A) Associate
(OC) Of Cousel
(SA) Staff Attorney
(PL) Paralegal

| ATTORNEYS (P, A, OC, SA) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Thomas Boardman (OC) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 9.30 | 0.80 | 95.60 | 48.80 | 56.30 | 46.30 | 7.80 | 0.00 | 0.00 | 264.90 | $850.00 | $225,165.00 |
| Michael Gervais (P) | 56.50 | 0.00 | 0.00 | 8.00 | 0.00 | 38.80 | 1.30 | 98.00 | 167.20 | 3.50 | 72.60 | 14.00 | 0.00 | 2.30 | 462.20 | $850.00 | $392,870.00 |
| Alejandra Salinas (A, P) | 176.90 | 23.20 | 14.90 | 0.00 | 12.80 | 105.90 | 427.50 | 559.40 | 36.3 | 39.30 | 173.10 | 5.10 | 0.00 | 108.50 | 1,682.90 | $850.00 | $1,430,465.00 |
| Marc Seltzer (P) | 4.10 | 0.00 | 0.00 | 0.00 | 0.00 | 0.60 | 0.00 | 27.00 | 37.50 | 13.00 | 19.40 | 17.10 | 0.00 | 0.00 | 118.70 | $2,200.00 | $261,140.00 |
| Kalpana Srinivasan (P) | 9.70 | 0.00 | 0.00 | 0.00 | 0.00 | 22.70 | 0.00 | 8.20 | 73.30 | 9.20 | 125.5 | 99.70 | 0.00 | 14.50 | 362.80 | $1,700.00 | $616,760.00 |
| Brenda Adimora (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 502.60 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 502.60 | $350.00 | $175,910.00 |
| Richard Friedl (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,082.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,082.00 | $400.00 | $432,800.00 |
| Alex Kaminsky (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 91.1 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 91.10 | $375.00 | $34,162.50 |
| Nicolas Lopez (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 292.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 292.50 | $350.00 | $102,375.00 |
| Carrie Roberts (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 22.50 | $275.00 | $6,187.50 |
| Robin Weinburgh (SA) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 230.50 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 230.50 | $425.00 | $97,962.50 |
| **SUB-TOTAL** | **247.20** | **23.20** | **14.90** | **8.00** | **12.80** | **177.30** | **2,650.80** | **788.20** | **363.10** | **121.30** | **436.90** | **143.70** | **0.00** | **125.30** | **5,112.70** | | **$3,775,797.50** |

| NON-ATTORNEYS (PL) | | | | | | | | | | | | | | | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Simon DeGeorges (PL) | | | | | | | | | | | 117.00 | | | | 117.00 | $400.00 | $46,800.00 |
| Nic Gamiz (PL) | | | | | | | | | | | 22.70 | | | | 22.70 | $250.00 | $5,675.00 |
| **SUB-TOTAL** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **0.00** | **139.70** | **0.00** | **0.00** | **0.00** | **139.70** | | **$52,475.00** |

| **GRAND TOTAL:** | **247.20** | **23.20** | **14.90** | **8.00** | **12.80** | **177.30** | **2650.80** | **788.20** | **363.10** | **121.30** | **576.60** | **143.70** | **0.00** | **125.30** | **5,252.40** | | **$3,828,272.50** |

**4-ER-0746**

# <u>EXHIBIT B</u>

Case 5:20-cv-03639-EJD     Document 398-1     Filed 01/09/25     Page 27 of 29

*IN RE TELESCOPES ANTITRUST LITIGATION*

**Firm Name:**     **LIEFF CABRASER HEIMANN & BERNSTEIN, LLP**        **Reporting Period:**      **Inception Through 11/30/2024**

**Categories:**

| | |
|---|---|
| 1. Investigations; factual research | 9. Read/review pleadings, briefs, discovery, transcripts, etc. |
| 2. Draft discovery requests | 10. Class certification/experts |
| 3. Draft discovery answers/responses | 11. Litigation strategy, analysis and case management |
| 4. Take depositions | |
| 5. Defend depositions | 12. Settlement negotiations |
| 6. Discovery meet and confer | 13. Trial and trial preparation |
| 7. Document review | 14. Court appearance and preparation |
| 8. Draft pleadings, briefs and pretrial motions | |

| Name | Title | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | Cum. Hrs | Rate | Cum. Lodestar |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| LIN CHAN | PARTNER | 11.40 | 20.50 | 12.30 | 111.60 | 21.20 | 146.50 | 1.20 | 302.30 | 33.90 | 48.90 | 639.60 | 87.70 | 2.80 | 124.20 | 1,564.10 | $895.00 | $ 1,399,869.50 |
| ERIC FASTIFF | PARTNER | 0 | 0.60 | 4.10 | 0 | 0 | 0.30 | 0 | 20.40 | 3.40 | 9.60 | 19.20 | 7.70 | 0 | 5.20 | 70.50 | $1,210.00 | $ 85,305.00 |
| REILLY STOLER | PARTNER | 1.40 | 5.50 | 0 | 0 | 0 | 2.30 | 0 | 54.00 | 3.70 | 0 | 48.00 | 0 | 0 | 8.70 | 123.60 | $755.00 | $ 93,318.00 |
| ABRAHAM BARKHORDAR | ASSOCIATE | 49.50 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 50.20 | 0 | 0 | 0 | 99.70 | $370.00 | $ 36,889.00 |
| DANNA ELMASRY | ASSOCIATE | 0 | 0 | 0.70 | 0 | 0 | 0 | 0 | 37.10 | 3.00 | 0 | 0 | 0 | 0 | 0 | 40.80 | $470.00 | $ 19,176.00 |
| JON FOUGNER | ASSOCIATE | 33.30 | 125.00 | 147.30 | 30.40 | 1.20 | 125.80 | 77.30 | 343.90 | 139.20 | 34.30 | 372.10 | 0 | 4.10 | 23.40 | 1,457.30 | $615.00 | $ 896,239.50 |
| JAMES HERD | ASSOCIATE | 33.00 | 0 | 0 | 0 | 0 | 0 | 2,919.40 | 0 | 0 | 0 | 58.60 | 0 | 0 | 0 | 3,011.00 | $525.00 | $ 1,580,775.00 |
| CATHERINE HUMPHREVILLE | ASSOCIATE | 16.00 | 0.10 | 0 | 0 | 0 | 19.40 | 21.80 | 11.40 | 6.60 | 8.70 | 262.40 | 0 | 0 | 0 | 346.40 | $560.00 | $ 193,984.00 |
| KAREN JONES | ASSOCIATE | 0 | 0 | 0 | 0 | 0 | 0 | 2,209.50 | 0 | 20.50 | 0 | 0 | 0 | 0 | 0 | 2,230.00 | $525.00 | $ 1,170,750.00 |
| CELENA NELSON | ASSOCIATE | 0 | 20.00 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 20.00 | $500.00 | $ 10,000.00 |
| DEVIN WILLIAMS | ASSOCIATE | 4.00 | 2.60 | 0 | 16.60 | 21.90 | 49.30 | 14.30 | 12.70 | 19.10 | 5.30 | 234.20 | 1.60 | 0 | 0 | 381.60 | $530.00 | $ 202,248.00 |
| RICHARD ANTHONY | PARALEGAL | 0 | 0 | 0 | 0 | 0 | 0.60 | 126.60 | 0 | 0.20 | 0.40 | 7.90 | 0 | 0 | 0 | 135.70 | $535.00 | $ 72,599.50 |
| NIKKI BELUSHKO BARROWS | PARALEGAL | 3.20 | 1.80 | 0 | 0 | 0 | 0.60 | 11.50 | 4.80 | 5.60 | 0.90 | 0.50 | 0 | 0 | 0 | 28.90 | $535.00 | $ 15,461.50 |
| MARGIE CALANGIAN | PARALEGAL | 0 | 1.80 | 1.00 | 0 | 0 | 0 | 0 | 0 | 16.90 | 0 | 368.80 | 1.00 | 0 | 0 | 389.50 | $535.00 | $ 208,382.50 |
| ANTHONY GRANT | PARALEGAL | 0 | 2.30 | 1.10 | 0 | 0 | 11.50 | 179.50 | 0 | 0 | 0 | 4.40 | 0 | 0 | 0 | 198.80 | $535.00 | $ 106,358.00 |
| FAWAD RAHIMI | PARALEGAL | 0 | 0 | 0 | 0 | 0 | 0 | 0.80 | 3.80 | 0 | 0 | 163.90 | 0 | 0 | 0 | 168.50 | $535.00 | $ 90,147.50 |
| OMAR RIVERA | PARALEGAL | 4.00 | 0 | 24.50 | 0 | 0 | 0 | 25.50 | 0 | 0 | 0 | 128.00 | 0 | 0 | 0 | 182.00 | $385.00 | $ 70,070.00 |
| DIVYA SUNDAR | PARALEGAL | 105.70 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 0 | 105.70 | $535.00 | $ 56,549.50 |
| MUNA TEXIER | PARALEGAL | 0 | 0 | 0 | 1.10 | 0 | 1.10 | 71.10 | 0 | 0 | 0 | 0.70 | 0 | 0 | 0 | 74.00 | $535.00 | $ 39,590.00 |
| BRIAN TROXEL | PARALEGAL | 0.40 | 2.40 | 15.50 | 87.90 | 15.00 | 5.00 | 33.20 | 49.60 | 56.20 | 6.80 | 359.20 | 0 | 0 | 12.00 | 643.20 | $510.00 | $ 328,032.00 |
| **TOTALS:** | | **287.10** | **182.60** | **209.50** | **250.60** | **59.30** | **362.80** | **5,702.80** | **841.90** | **312.40** | **115.40** | **2,727.20** | **98.00** | **6.90** | **173.50** | **7,780.90** | | **$ 6,708,745.00** |

**4-ER-0748**

# EXHIBIT C

Case 5:20-cv-03639-EJD    Document 398-1    Filed 01/09/25    Page 29 of 29

*IN RE TELESCOPES ANTITRUST LITIGATION*
*TIME REPORT  - (To be submitted on the 15th of every month)*

**Firm Name:** COTCHETT, PITRE & McCARTHY, LLP    **Reporting Period:** Inception Through 11/30/2024

**Categories:**

1. Investigations; factual research
2. Draft discovery requests
3. Draft discovery answers/responses
4. Take depositions
5. Defend depositions
6. Discovery meet and confer
7. Document review
8. Draft pleadings, briefs and pretrial motions
9. Read/review pleadings, briefs, discovery, transcripts, etc.
10. Class certification/experts
11. Litigation strategy, analysis and case management
12. Settlement negotiations
13. Trial and trial preparation
14. Court appearance and preparation

**TITLE:**
(P) Partner
(A) Associate
(LC) Law Clerk
(SPL) Senior Paralegal
(PL) Paralegal

| ATTORNEYS (P, A) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Joseph Cotchett (P) | 2.80 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 32.60 | 0.00 | 0.00 | 0.00 | 35.40 | $950.00 | $33,630.00 |
| Adam Zapala (P) | 25.80 | 6.90 | 7.30 | 0.00 | 0.00 | 0.00 | 0.00 | 54.20 | 322.90 | 3.60 | 42.8 | 285.60 | 0.00 | 53.00 | 802.10 | $850.00 | $681,785.00 |
| Elizabeth Castillo (P) | 43.40 | 40.40 | 78.10 | 49.50 | 33.20 | 487.90 | 0.50 | 141.40 | 192.5 | | 238.00 | 32.80 | 0.00 | 31.60 | 1,369.30 | $775.00 | $1,061,207.50 |
| James Dallal (A) | 78.80 | 4.5 | 0.40 | 79.00 | 35.50 | 295.10 | 35.90 | 243.00 | 7.50 | 11.10 | 159.50 | 53.40 | 0.00 | 57.70 | 1,061.40 | $600.00 | $636,840.00 |
| Tom Chen (A) | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,684.70 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 1,684.70 | $425.00 | $715,997.50 |
| Reid Gaa (A) | 66 | 73.40 | 24.60 | 0.00 | 0.00 | 105.90 | 0.00 | 65.00 | 192.70 | 0.00 | 274.90 | 37.30 | 0.00 | 2.00 | 841.80 | $425.00 | $357,765.00 |
| **SUB-TOTAL** | **216.80** | **125.20** | **110.40** | **128.50** | **68.70** | **888.90** | **1,721.10** | **503.60** | **715.60** | **14.70** | **747.80** | **409.10** | **0.00** | **144.30** | **5,794.70** | | **$3,487,225.00** |

| NON-ATTORNEYS (LC, SPL, PL) | 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | CUMULATIVE HOURS | HOURLY RATE | CUMULATIVE LODESTAR |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Jaclyn Verducci (PL) | 93.50 | 11.00 | 16.10 | 64.70 | 11.90 | 53.90 | 38.20 | 6.60 | 205.80 | 2.50 | 26.70 | 15.60 | 0.00 | 4.00 | 550.50 | $325.00 | $178,912.50 |
| Michael Caylao (PL) | 89.3 | 71.50 | 61.80 | 11.50 | 11.60 | 87.10 | 3.00 | 73.30 | 170.00 | 0.00 | 114.90 | 8.20 | 0.00 | 7.50 | 709.70 | $325.00 | $230,652.50 |
| Alexandra Delavan (PL) | 4.00 | 0.00 | 0.00 | 0.00 | 0.00 | 2.30 | 15.70 | 2.10 | 243.60 | 0.20 | 28.30 | 1.00 | 0.00 | 0.00 | 297.20 | $275.00 | $81,730.00 |
| Samantha Fong (PL) | 52.90 | 0.00 | 2.00 | 0.00 | 0.00 | 0.00 | 1.00 | 1.60 | 4.80 | 0.00 | 20.30 | 0.00 | 0.00 | 0.00 | 82.60 | $275.00 | $22,715.00 |
| Xinyu Qiang (LC) | 0.00 | 0.00 | 5.10 | 0.00 | 4.60 | 0.00 | 0.00 | 0.00 | 0.00 | | 15.10 | 0.00 | 0.00 | 0.00 | 24.80 | $200.00 | $4,960.00 |
| Rebecca Harteker (LC) | 4.40 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.50 | 2.20 | 35.80 | 0.00 | 0.00 | 0.00 | 42.90 | $175.00 | $7,507.50 |
| **SUB-TOTAL** | **244.10** | **82.50** | **85.00** | **76.20** | **28.10** | **143.30** | **58.40** | **83.60** | **624.20** | **4.90** | **241.10** | **24.80** | **0.00** | **11.50** | **1,707.70** | | **$526,477.50** |
| **GRAND TOTAL:** | **460.90** | **207.70** | **195.40** | **204.70** | **96.80** | **1032.20** | **1779.50** | **587.20** | **1339.80** | **19.60** | **988.90** | **433.90** | **0.00** | **155.80** | **7,502.40** | | **$4,013,702.50** |

4-ER-0750

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| THIS DOCUMENT RELATES TO: <br><br> All Indirect Purchaser Actions | **PROPOSED  ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS** <br><br> **Judge: Hon. Edward J. Davila** |

PROPOSED  ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

4-ER-0751

Indirect Purchaser Plaintiffs' ("IPPs") Notice of Motion and Motion for Award of Attorneys' Fees, Reimbursement of Costs, and Service Awards was heard before this Court on March 16, 2023. The Court, having considered the briefing and materials submitted in support of the motion, the briefing and materials submitted in support of IPPs' Motion for Preliminary Approval and Motion for Final Approval, the relevant legal authorities, the record in this action, and the arguments presented at the fairness hearing, and having determined the fairness and reasonableness of the award of attorneys' fees, expenses, and service awards requested, hereby ORDERS as follows:

1.    The Court has jurisdiction to enter this Order and over the subject matter and all parties to the action, including IPPs, Defendants,[1] and all Class Members.

2.    IPPs' Motion seeks an award of attorneys' fees in the amount of $10,666,667 plus proportional interest, which is a third of the $32,000,000 non-reversionary common settlement fund. Settlement Class Counsel[2] also request reimbursement of their unreimbursed litigation costs of $771,461and service awards of $3,000 for each of the 35 Class Representatives.

3.    Where Class Counsel's efforts created a common fund, the doctrine of unjust enrichment entitles them to reasonable attorneys' fees from the fund. *See Staton v. Boeing* Co., 327 F.3d 938, 967 (9th Cir. 2003) ("the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees"); *Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980). Courts in the Ninth Circuit have discretion in a common fund case to choose either the percentage-of-the-fund or lodestar method to determine reasonable attorneys'

[1] Synta Technology Corp. of Taiwan, Suzhou Synta Optical Technology Co., Ltd., Nantong Schmidt Opto-Electrical Technology Co. Ltd., Synta Canada International Enterprises Ltd., Pacific Telescope Corp., Olivon Manufacturing Co. Ltd., SW Technology Corporation, Celestron Acquisition, LLC, Olivon USA, LLC, Dar Tson ("David") Shen, Joseph Lupica, Dave Anderson.

[2] Cotchett, Pitre & McCarthy, LLP, Susman Godfrey LLP, and Lieff Cabraser Heimann & Bernstein, LLP ("Class Counsel").

- 2 -

PROPOSED ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF COSTS, AND SERVICE AWARDS

fees. *See Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1047 (9th Cir. 2002). "Using either method, the ultimate inquiry is whether the end result is reasonable." *In re Capacitors Antitrust Litig.*, No. 17-md-02801, 2018 WL 4790575, at *2 (N.D. Cal. Sept. 21, 2018). The percentage method is preferred when there is a common fund for the benefit of the class. *See Roe v. SFBSC Mgmt., LLC*, No. 14-cv-03616, 2022 WL 17330847, at *19 (N.D. Cal. Nov. 29, 2022). Class Counsel seek fees under the "common fund" method, and the Court finds it is the appropriate method for determining a reasonable fee award as there is a fixed common fund of $32 million. *See Destefano v. Zynga, Inc.*, No. 12-cv-04007, 2016 WL 537946, at *17 (N.D. Cal. Feb. 11, 2016).

4.    In applying the percentage of the fund method, the Ninth Circuit has established 25% as a benchmark percentage, which may be adjusted depending on the circumstances of a case. *See Vizcaino*, 290 F.3d at 1047. To assess whether a requested fee percentage is reasonable, courts consider: "(1) the result achieved; (2) the risk involved in the litigation; (3) the skill required by and quality of work performed by counsel; (4) the contingent nature of the fee; and, (5) awards made in similar cases." *Id.* at 1048-50. Each of these factors weighs in favor of an upward adjustment from the benchmark in this case to a third of the fund, which is within the usual range in common fund cases with exemplary results. *Id.* at 1047.

5.    The $32 million common fund is an excellent result under difficult and risky circumstances. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) (noting "the most critical factor is the degree of success obtained"). The Settlement provides direct cash relief for class members who purchased qualifying consumer telescopes during the relevant time period. The $32 million settlement fund represents up to 110% of IPPs' possible recoverable damages. A review of approved class action settlements shows that a settlement with a ceiling even approaching 100% recovery is extraordinary and rare. *See, e.g., In re Lithium Ion Batteries Antitrust Litig.*, No. 13-md-02420, 2020 WL 7264559, at *20 (N.D. Cal. Dec. 10, 2020), *aff'd*, 2022 WL 16959377 (9th Cir. Nov. 16, 2022) (granting final approval of the settlement representing 11.7% of damages and describing the result for the class as "excellent"); *In re Nat'l Collegiate Athletic Ass'n Athletic Grant-in-Aid Cap Antitrust Litig.*, No. 14-md-2541, 2017 WL 6040065, at *7 (N.D. Cal. Dec. 6, 2017), *aff'd*, 768 F. App'x 651 (9th Cir. 2019) (approving a settlement and stating that 50% of

- 3 -

PROPOSED ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

single damages is "a result almost never achieved in large, complex antitrust cases"); *In re Cathode Ray Tubes (CRT) Antitrust Litig.*, MDL No. 1917, 2016 WL 3648478, at *7 (N.D. Cal. July 7, 2016) (stating that a settlement representing 20% of potential single damages "is without question a good recovery and firmly in line with the recovery in other cases" and citing a law review article finding that "median average settlement recovery among a survey of 71 settled cartel cases was 37% of single damages recovery, the weighted mean . . . 19% of single damages recovery"); *In re High-Tech Emp. Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5159441, at *4 (N.D. Cal. Sept. 2, 2015) (granting final approval of the settlement and stating that the "total settlements achieved in this action exceed 14 percent of Plaintiffs' proposed single damages estimate, a damages estimate Defendants were prepared to vigorously contest" and further noting that "[d]istrict courts in the Ninth Circuit routinely approve settlements with much larger differences between the settlement amount and estimated damages"); *In re Toys R Us–Del., Inc.–Fair & Accurate Credit Transactions Act (FACTA) Litig.*, 295 F.R.D. 438, 453–54 (C.D. Cal. 2014) (granting final approval of settlement representing only 3% of possible recovery); *Reed v. 1–800 Contacts, Inc.*, No. 12–cv–02359, 2014 WL 29011, at *6 (S.D. Cal. Jan. 2, 2014) (granting final approval of settlement represented 1.7% of possible recovery); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. 07–md–1827, 2013 WL 1365900, at *7 (N.D. Cal. Apr. 3, 2013) (referring to plaintiffs' settlement of "approximately 50% of the potential recovery" as "exceptional"); *In re LDK Solar Sec. Litig.*, No. 07–cv–5182, 2010 WL 3001384, at *2 (N.D. Cal. July 29, 2010) (granting final approval settlement that was 5% of possible damages); *In re Linerboard Antitrust Litig.*, 296 F. Supp. 2d 568, 581 & n.5 (E.D. Pa. 2003) (gathering cases where courts approved settlements achieving single-digit percentages of potential recoveries).

6.    The substantial risk Class Counsel took on in litigation and the high level of skill required to achieve a successful result also support an upward adjustment. *See Durham v. Sachs Elec. Co.*, No. 18-cv-04506, 2022 WL 2307202, at *8 (N.D. Cal. June 27, 2022) (approving upward adjustment based on factors including the risk and difficulty of the case). The settlement was reached after more than four years of complex and hard-fought litigation. Defendants vigorously defended their position throughout, filing multiple motions to dismiss and strike and zealously

PROPOSED  ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

participating in over a dozen contested discovery motions. *See AdTrader, Inc. v. Google LLC*, No. 17-cv-07082, 2022 WL 16579324, at *7 (N.D. Cal. Nov. 1, 2022) (33% fee award justified by "substantial risk" and results); *Martinelli v. Johnson & Johnson*, No. 15-cv-01733, 2022 WL 4123874, at *9 (E.D. Cal. Sept. 9, 2022) (33.3% award justified based on contingent risk assumed by counsel in case involving "extensive discovery" and "contested motion practice").

7. Class Counsel's lengthy representation was risky and carried out on an entirely contingent basis. *See Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 261 (N.D. Cal. 2015) ("When counsel takes cases on a contingency fee basis, and litigation is protracted, the risk of non-payment . . . justifies a significant fee award."). Class Counsel was opposed throughout by aggressive counsel for Defendants, resulting in substantial and difficult litigation, discovery, and settlement negotiations. *See Andrews v. Plains All Am. Pipeline L.P.*, No. 15-cv-4113, 2022 WL 4453864, at *3 (C.D. Cal. Sept. 20, 2022) ("Class Counsel's ability to get the case this far along evinces their high quality of work.").

8. The requested fee of a third of the gross settlement fund is on par with similar complex antirust cases. *See, e.g., In re Dairy Farmers of Am., Inc.*, 80 F. Supp. 3d 838, 862 (N.D. Ill. 2015) (awarding class counsel "one-third of the $46 million common fund ($15,333,333.33) with interest at the same rate paid on the Settlement Fund"); *In re Flonase Antitrust Litig.*, 951 F. Supp. 2d 739, 751 (E.D. Pa. 2013) (approving a "thirty-three and a third percent of the common fund, for a total of $50,000,000.00, in attorneys' fees"); *In re Potash Antitrust Litig.*, No. 08-cv-06910, 2013 WL 12470850, at *1 (N.D. Ill. June 12, 2013) (granting an award of one-third of the $90 million settlement fund as "reasonable and warranted"); *In re Auto. Refinishing Paint Antitrust Litig.*, MDL No. 1426, 2008 WL 63269, at *8 (E.D. Pa. Jan. 3, 2008) (awarding 33.33% in attorneys' fees with accrued interest on a $39 million common fund settlement); *In re Initial Pub. Offering Sec. Litig.*, 671 F. Supp. 2d 467, 516 (S.D.N.Y. 2009) (awarding 33.3% fee on $510 million settlement fund); *In re Vitamins Antitrust Litig.*, MDL No. 1285, 2001 WL 34312839, at *10 (D.D.C. July 16, 2001) (awarding 34% of the $359,438,032 common fund as attorneys' fees). The same is true of attorneys' fees awards in the non-antitrust context. *See, e.g., In re Pac. Enters. Secs. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995) (awarding 33% of $12 million common settlement

- 5 -

PROPOSED ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

fund); *Nelson v. Avon Prods.*, No. 13-cv-02276, 2017 WL 733145, at *6 (N.D. Cal. Feb. 24, 2017) (awarding 33.3% and collecting cases awarding 30% or more); *Syed v. M-I, L.L.C.*, No. 12-cv-01718, 2017 WL 3190341, at *7 (E.D. Cal. July 27, 2017) (attorney's fees of $2,333,333.33 equal to one-third of gross settlement); *Heritage Bond*, 2005 WL 1594403, at *19 (granting 33.33% of common fund as the attorneys' fees for a $27,783,000 settlement).

9.    The Court has confirmed the reasonableness of the fee request by conducting a lodestar cross-check, which shows that the requested fee will result in negative multiplier. Courts in the Ninth Circuit generally find "[m]ultipliers in the 3–4 range are common in lodestar awards for lengthy and complex class action litigation." Van Vranken v. Atl. Richfield Co., 901 F. Supp. 294, 298 (N.D. Cal. 1995); see also 4 NEWBERG ON CLASS ACTIONS § 14.7 (stating courts typically approve percentage awards based on lodestar cross-checks of 1.9 to 5.1 or even higher, and "the multiplier of 1.9 is comparable to multipliers used by the courts"). A cross-check resulting in a negative multiplier weighs even heavier in favor of a requested fee's reasonableness. See In re Capacitors Antitrust Litig., No. 17-md-02801, 2020 WL 13201507, at *1 (N.D. Cal. July 17, 2020) (granting requested attorneys' fees and holding that the negative lodestar multiplier "further supports the reasonableness of the attorneys' fees request"); In re TFT-LCD (Flat Panel) Antitrust Litig., No. 07-md-1827, 2013 WL 149692, at *1 (N.D. Cal. Jan. 14, 2013) (citing the negative multiplier of 0.86 as confirmation that the amount of attorneys' fees requested was fair and reasonable); In re DRAM Antitrust Litig., No. 02-md-1486, 2013 WL 12387371, at *12-13 (N.D. Cal. Nov. 5, 2013) (observing that a negative multiplier "is virtually sufficient to satisfy the cross-check requirement"); Chun-Hoon v. McKee Foods Corp., 716 F. Supp. 2d 848, 853–54 (N.D. Cal. 2010) (granting attorneys' fees and stating that a "resulting multiplier of less than one, (sometimes called a negative multiplier) suggests that the negotiated fee award is a reasonable and fair valuation of the services rendered to the class by class counsel"); In re Portal Software, Inc. Sec. Litig., No. 03-cv-5138, 2007 WL 4171201, at *16 (N.D. Cal. Nov. 26, 2007) (granting requested attorneys' fees and holding that a "negative multiplier suggests that the percentage-based amount is reasonable and fair based on the time and effort expended by class counsel").

10.    The Court finds the hourly rates of Class Counsel to be reasonable and within the

- 6 -

PROPOSED ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

4-ER-0756

market rates for this district for counsel of comparable expertise. *See, e.g., In re MacBook Keyboard Litig.*, No. 18-cv-02813, 2023 WL 3688452, at *15 (N.D. Cal. May 25, 2023) (approving a $863 blended rate); *In re Facebook Internet Tracking Litig.*, No. 12-md-02314, 2022 WL 16902426, at *12 (N.D. Cal. Nov. 10, 2022) (finding hourly rates up to $1,200 "reasonable and commensurate with those charged by attorneys with similar experience in the market"); *Fleming v. Impax Labs. Inc.*, No. 16-cv-06557, 2022 WL 2789496, at *9 (N.D. Cal. July 15, 2022) (finding rates of $760 to $1,325 for partners to be reasonable); *Hefler v. Wells Fargo & Co.*, No. 16-cv-05479, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates up to $1,250 for "partners or senior counsel," $650 for associates, and $350 for paralegals reasonable); *In re Volkswagen "Clean Diesel" Marketing*, MDL No. 2175, 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017) (finding rates up to $1,600 for partners, $790 for associates, and $490 for paralegals reasonable). The Court further finds the number of hours expended reasonable based on the work performed in the case as set forth in the joint declaration of Class Counsel, the necessity and reasonableness of that work to achieving the excellent result, and the novelty and complexity of this litigation.

11.    For the foregoing reasons, the Court concludes that Class Counsel are entitled to a fee award in the amount of $10,666,667, plus proportional interest, or a third of the $32,000,000 non-reversionary settlement fund.

12.    The Court further finds that the Class Counsel have incurred $771,461 in reasonable costs and expenses in this matter. These costs and expenses were reasonably incurred in the ordinary course of prosecuting this case and were necessary given the complex nature of this matter and because Defendants contested liability from the outset of the case. Accordingly, the Court orders these litigation expenses reimbursed from the fund. *See Floyd v. First Data Merch. Servs. LLC*, No. 20-cv-02162, 2022 WL 6173122, at *6 (N.D. Cal. Oct. 7, 2022) ("Class counsel is entitled to reimbursement of reasonable out-of-pocket expenses.").

13.    The Court also approves a service award of $3,000 to each of the 35 Class Representatives in this matter. These awards are proportional to the recoveries for absent class members under the settlement. The awards are supported by the record in this case and the joint declaration of Class Counsel. The payment is further justified by the time and effort spent by the

PROPOSED  ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E PENSES, AND SERVICE AWARDS

class representatives on this matter on behalf of the Class; the duration of this matter; and the other factors set forth in the supporting declaration, as well as the results achieved in the case. *See, e.g., Harbour et al., Plaintiff, v. Cal. Health & Wellness Plan, et al.*, No. 21-cv-03322, 2024 WL 171192, at *9 (N.D. Cal. Jan. 16, 2024); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 266 (N.D. Cal. 2015) (granting a $15,000 service award and observing that a "$5,000 payment is presumptively reasonable," and awards in the Ninth Circuit "typically range from $2,000 to $10,000").

14.    The requested total of $105,000 in service awards for the 35 Class Representatives is also reasonable because, at only 0.3%, it represents a *de minimis* amount of the $32 million gross Settlement Fund. *See Thieriot v. Celtic Ins.*, No. 10-cv-04462, 2011 WL 1522385, at *7–8 (N.D. Cal. Apr. 21, 2011) (approving service awards totaling 1.8% of gross settlement fund); *Ridgeway v. Wal-Mart Stores, Inc.*, 269 F. Supp. 3d. 975, 1002 (N.D. Cal. 2017) (granting service awards that combined for 0.22% of $60 million settlement ($15,000 for each of 9 class representatives); *Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1299 (S.D. Cal. 2017) (awarding $15,000 for each of 5 class representatives and 0.3% of $25 million settlement fund).

        **IT IS SO ORDERED**.


        DATED:



                            **HON. EDWARD J. DAVILA**
                            **UNITED STATES DISTRICT JUDGE**

- 8 -
PROPOSED  ORDER GRANTING INDIRECT PURCHASER PLAINTIFFS' NOTICE OF MOTION AND MOTION
FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF E  PENSES, AND SERVICE AWARDS

**UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| **IN RE TELESCOPES ANTITRUST LITIGATION** | **Case No. 5:20-cv-03639-EJD** |
| **This Document Relates to:**<br><br>**Indirect Purchaser Actions** | [PROPOSED] **ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND ISSUING NOTICE** |

[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD

3046536.4

**4-ER-0759**

WHEREAS, Interim Co-Lead Counsel and Plaintiffs Madeline Bekielewski,[1] Thomas Berta, Carey Briggs, Vincent Catanzaro, David Dick, Austin Griffith, Donnie Houston, Bentaro Huset, Greg Kendall, David Kerber, Deborah Lemar, Doug Lundy, John Maurice, Timothy McQuaid, Philip Moore, Brian Murphy, Herbert Nelson, Scott Plummer, Michael Price, David Quaglietta, Greg Ross, Ronald Troillett, Robert Welsh, Tony DiMambro, Jason Glydewell, Leon Greenberg, Michael Liskow, Sigurd Murphy, Jim Riley, Keith Uehara, Steven Zellers, Sarah Day Brewer, Thien Ngo, Jesse Smith, and Arthur Sines ("Plaintiffs") have applied for an order preliminarily approving the terms and conditions of the Settlement as set forth in the Settlement Agreement, which is attached as Exhibit A to the Declaration of Alejandra C. Salinas ("Salinas Declaration");

WHEREAS, the Settlement requires, among other things, that all Released Claims against Released Parties be settled and compromised;

WHEREAS, this Court has considered the Settlement Agreement, the Motion for Preliminary Approval of Class Action Settlement and Issuance of Notice, and all papers filed in support of the Motion and the entire docket in this matter; and

WHEREAS, this Court preliminarily finds, for the purpose of settlement only, that the Settlement Class meets all the prerequisites of Federal Rule of Civil Procedure 23 for class certification, including numerosity, commonality, typicality, predominance of common issues, superiority, and that the Plaintiffs and Lead Counsel are adequate representatives of the Settlement Class;

NOW THEREFORE, good cause appearing and pursuant to Federal Rule of Civil Procedure 23, it is hereby ORDERED that:

---

[1] Richard Bekielewski was an original class representative, but he passed away during the pendency of the litigation. His wife, Madeline Bekielewski, has taken over his estate and claims.

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD**                2
3046536.4

1. The capitalized terms used herein shall have the meanings set forth in the Settlement Agreement.

**Preliminary Certification of Settlement Class for Purpose of Settlement Only**

2. The Settlement is hereby preliminarily approved as fair, reasonable, and adequate such that notice thereof should be given to members of the Settlement Class. Under Federal Rule of Civil Procedure 23(b)(3), the Settlement Class, as set forth in the Settlement Agreement and defined as follows, is preliminarily certified for the purpose of settlement only:

> all persons and entities in the Indirect Purchaser States[2] who, during the period from January 1, 2005 to September 6, 2023, purchased one or more Telescopes from a distributor (or from an entity other than a Defendant) that a Defendant or alleged co-conspirator manufactured.

3. Excluded from the Class are Defendants; their parent companies, subsidiaries and Affiliates; any co-conspirators; Defendants' attorneys in this Action; federal government entities and instrumentalities, states and their subdivisions; all judges assigned to this Action; all jurors in this Action; and all directly purchased Telescopes from Defendants. The Settlement Class also excludes members who timely exercised their right to exclude themselves pursuant to the procedures described in the Notice.

4. Specifically, the Court preliminary approves the Settlement as set forth in the Settlement Agreement, including the releases contained therein, and the proposed plan of allocation and distribution described in Exhibit A to the Salinas Declaration, because the Court

---

[2] "Indirect Purchaser States" means Arizona, Arkansas, California, Connecticut, District of Columbia, Florida, Hawaii, Illinois, Iowa, Kansas, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Hampshire, New Mexico, New York, North Carolina, North Dakota, Oregon, Rhode Island, South Carolina, South Dakota, Tennessee, Utah, Vermont, West Virginia, and Wisconsin.

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD**    3
3046536.4

will likely be able to find that the Settlement is fair, reasonable and adequate after considering the Rule 23(e)(2)(A)–(D) factors and governing case law.

5.    If the Settlement Agreement is not finally approved by this Court, or if such final approval is reversed or materially modified on appeal by any court, this Order (including but not limited to the certification of the class) shall be vacated, null and void, and of no force or effect, and Defendants and Plaintiffs shall be entitled to make any arguments for or against certification for litigation purposes.

6.    Interim Co-Lead Counsel, Cotchett, Pitre & McCarthy, LLP; Lieff Cabraser Heimann & Bernstein, LLP; and Susman Godfrey L.L.P., and the Plaintiffs are appointed as representatives and counsel of the Settlement Class.

## Notice to the Settlement Class

7.    Interim Co-Lead Counsel has provided the Court with information sufficient to enable it to determine whether to give notice of the proposed settlement to the Class pursuant to Rule 23(e)(1)(A). The Court approves the Notice Plan and attendant documents and forms, which are attached to the Verita Declaration as Exhibits A-E, and finds that their dissemination substantially in the manner and form set forth in the Motion meets the requirements of Federal Rule of Civil Procedure 23 and due process, constitutes the best notice practicable under the circumstances, and is reasonably calculated, under the circumstances, to apprise members of the Settlement Class of the pendency of the Actions, the effect of the proposed Settlement (including the releases contained therein), the anticipated Motion for a Fee and Expense Award and for Service Awards, and their rights to participate in, opt out of, or object to any aspect of the proposed Settlement.

8.    By November 11, 2024 [no later than ten (10) days after the issuance of this Order], Defendants shall cause to be paid into the Escrow Account $1,000,000 to cover the administrative costs associated with Notice.

[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD                4
3046536.4

9. By November 1, 2025 [no later than twelve (12) months after the issuance of this Order], Defendants shall cause to be paid into the Escrow Account another $1,000,000 (for a total of $2,000,000).

10. By May 1, 2026 [no later than eighteen (18) months after the issuance of this Order] and as detailed in Paragraph 15 of the Settlement Agreement, Defendants shall pay the entire remaining Settlement funds into the Escrow Account.

11. Verita shall provide Notice consistent with the Notice Plan outlined in the Motion and Verita Declaration, and Notice shall be disseminated to Settlement Class Members by the Notice Date of December 13, 2024 [42 days after the issuance of this Order]. Verita is authorized to utilize funds from the Settlement Fund for these purposes.

**Settlement Administration**

12. The Court appoints Verita Global, LLC as the notice and claims administrator. Verita shall supervise and administer the notice procedures, establish and operate the settlement website, administer the claims processes, distribute payments according to the processes and criteria set forth in the Settlement Agreement, and perform any other duties that are reasonably necessary and/or provided for in the Settlement Agreement. Funds required to pay Verita may be paid from the Settlement Fund as they become due as set forth in the Settlement Agreement.

13. Counsel may pay Verita up to $450,500 from the Settlement Fund to effectuate the notice plan and claims administration. Any notice and claims costs above $450,500 may only be paid from the Settlement Fund subject to further application and Court approval.

14. The Settlement Administrator shall act in compliance with the Amended Stipulated Protective Order, ECF No. 158, including, but not limited to, making all necessary efforts and precautions to ensure the security and privacy of Settlement Class Member information and protect it from loss, misuse, unauthorized access and disclosure, and to protect against any reasonably anticipated threats or hazards to the security of Settlement Class Member information; not using the information provided by Defendants or Settlement Class Counsel in

[PROPOSED] **ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD**    5
3046536.4

connection with the Settlement or this Notice Plan for any purposes other than providing notice or conducting claims administration; and not sharing Settlement Class Member information with any third parties without advance consent from the parties.

15. Settlement Class Members who wish to make a Claim must do so by submitting a Claim Form starting on December 13, 2024 [Notice Date] and no later than May 20, 2025 [200 days from the Preliminary Approval Order and 158 days after the Notice Date]. The Settlement Administrator shall determine the eligibility of Claims submitted and allocate the Settlement Funds in accordance with the Settlement Agreement, subject to review and insight from Interim Co-Lead Counsel.

16. Settlement Class Members who wish to object to the Settlement must object in writing and: (1) clearly identify the case name and number; (2) your full name, current address, email address, and telephone number; (3) proof of membership in the settlement class; (4) the reasons why you object to the settlement, including any documents supporting your objection; (5) if you have retained an attorney, (a) the full name, current address, telephone number, and email address of your attorney; (b) the state bar(s) to which your attorney is admitted; and (c) a list of all other class actions you or your attorney has been involved in making objections over the last 10 years (whether or not you or your attorney appeared in the matter); (6) a statement indicating whether you or your attorney intend to appear at the fairness hearing; and (7) your signature or the signature of your attorney.

17. Objections must be filed with the Court or post-marked by February 13, 2025 [no later than 104 days from the Preliminary Approval Order and 62 days from the Notice Date], to the Court at the following address: Clerk of the Court, United States District Court for the Northern District of California, 280 South 1st Street, Room 2112, San Jose, California 95113.

18. Any Settlement Class Member who seeks to be excluded from the Settlement Class must submit a request for exclusion, sending written request, which must be postmarked by February 13, 2025 [no later than 104 days from the Preliminary Approval Order and 62 days

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD**          6

3046536.4

from the Notice Date]. A request to opt-out must be timely sent by U.S. mail to the Settlement Administrator, requesting exclusion, providing their name, address, a signature, the name and number of the Action, and a clear and explicit statement that they wish to be excluded from the Settlement. The date of the postmark on the envelope containing the written request to opt-out shall be the exclusive means used to determine whether a request to opt-out has been timely submitted. In the event a postmark is illegible, the date of mailing shall be deemed to be three (3) days prior to the date that the Settlement Administrator received a copy of the request to opt-out of the Settlement. The Settlement Class Member must pay for postage. Any member of the Settlement Class who does not file a valid and timely request for exclusion shall be bound by the final judgment dismissing the Actions on the merits with prejudice.

## Fairness Hearing

19.    The Fairness Hearing shall be held by the Court on Thursday, April 3, 2025 [no later than 154 days from preliminary approval], to determine whether the requirements for certification of the Settlement Class have been met; whether the proposed settlement of the Actions on the terms set forth in the Settlement should be approved as fair, reasonable, adequate, and in the best interests of the Settlement Class Members; whether Interim Co-Lead Counsel's motion or application for Fees and Expense Award and application for the Service Awards should be approved; and whether final judgment approving the Settlement and dismissing the Actions on the merits with prejudice against the Named Plaintiffs and all other Settlement Class Members should be entered. The date and time of the Fairness Hearing may, without further direct notice to the Settlement Class Members (except those who have filed timely and valid objections and requested to speak at the Final Fairness Hearing), be changed, continued or adjourned by order of the Court.

[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD                    7
3046536.4

20.     The Fairness Hearing will take place at:

**U. S. District Court of the Northern District of California**
**Robert F. Peckham Federal Building & Courthouse**
**Courtroom 4, 280 South 1st Street**
**San Jose, California 95113**

21.     Any Objector who timely submits an Objection has the option to appear and request to be heard at the Fairness Hearing, either in person or through the Objector's counsel. Any Objector wishing to appear and be heard at the Final Fairness Hearing must include a Notice of Intention to Appear in the body of the Objector's Objection. Objectors who fail to submit or include such timely Notice of Intention to Appear may not speak at the Final Fairness Hearing without permission of the Court.

22.     By January 9, 2025 [no later than 69 days after the Preliminary Approval Order and 35 days before the objection and opt-out deadline], Interim Co-Lead Counsel shall file all papers in support of any Motion for a Fee and Expense Award and/or for Service Awards, and shall serve copies of such papers upon Defense Counsel and upon any objectors who have validly complied this Order.

23.     By February 28, 2025 [no later than 119 days after the Preliminary Approval Order and fifteen (15) days after the objection and opt-out deadline], Interim Co-Lead Counsel and Plaintiffs shall file all papers in support of the application for the Final Approval of Settlement and Final Judgment.

24.     Interim Co-Lead Counsel's Motion or Application for a Fee and Expense Award and for Service Awards will be considered separately from the fairness, reasonableness, and adequacy of the Settlement. Any appeal from any order relating solely to Settlement Class Counsel's Motion for a Fee and Expense Award, and/or for Service Awards, or any reversal or modification of any such order, shall not operate to terminate, vacate, or cancel the Settlement.

[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION
SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD                8
3046536.4

**Miscellaneous**

25.    No later than ten (10) days after the Motion for Preliminary Approval of the Settlement has been filed with the Court, Defendants will serve the Class Action Fairness Act ("CAFA") Notice on the Attorney General of the United States and the state attorneys general as required by 28 U.S.C. § 1715(b). Thereafter, Defendants will serve any supplemental CAFA Notice as appropriate.

26.    Defense Counsel and Interim Co-Lead Counsel are hereby authorized to utilize all reasonable procedures in connection with the administration of the Settlement which are not materially inconsistent with either this Order or the Settlement Agreement.

27.    This Order may be modified by the Court upon motion by either or both parties, for good cause shown.

**IT IS SO ORDERED, ADJUDGED AND DECREED.**

Dated: ___November 4_____, 2024.

_____
Hon. Edward J. Davila
UNITED STATES DISTRICT JUDGE

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT AND ISSUING NOTICE; Case No. 5:20-cv-03639-EJD**          9

3046536.4

**4-ER-0767**

1

UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

IN RE TELESCOPES ANTITRUST
LITIGATION                            CASE NO.  CV-20-03639 EJD

_____    SAN JOSE, CALIFORNIA
THIS DOCUMENT RELATES TO:
ALL INDIRECT PURCHASER ACTIONS    OCTOBER 31, 2024

                                  PAGES 1 - 27


                       TRANSCRIPT OF PROCEEDINGS
                BEFORE THE HONORABLE EDWARD J. DAVILA
                    UNITED STATES DISTRICT JUDGE

A-P-P-E-A-R-A-N-C-E-S

FOR THE PLAINTIFFS:    COTCHETT PITRE & MCCARTHY LLP
                       BY:  ADAM J. ZAPALA
                       840 MALCOLM ROAD, SUITE 200
                       BURLINGAME, CALIFORNIA 94010


FOR THE DEFENDANT      FROST LLP
TELEPHONICALLY:        BY:  CHRISTOPHER L. FROST
                       10960 WILSHIRE BOULEVARD, SUITE 2100
                       LOS ANGELES, CALIFORNIA 90024

                       FROST LLP
                       BY:  JOSHUA STAMBAUGH
                       10960 WILSHIRE BOULEVARD, SUITE 2100
                       LOS ANGELES, CALIFORNIA 90024

            (APPEARANCES CONTINUED ON THE NEXT PAGE.)


OFFICIAL COURT REPORTER:    IRENE L. RODRIGUEZ, CSR, RMR, CRR
                            CERTIFICATE NUMBER 8074


        PROCEEDINGS RECORDED BY MECHANICAL STENOGRAPHY,
    TRANSCRIPT PRODUCED WITH COMPUTER.

**4-ER-0768**

2

A P P E A R A N C E S:  (CONT'D)

ALSO PRESENT:                    BRAUNHAGEY & BORDEN LLP
                                 BY:  MATTHEW B. BORDEN
                                 747 FRONT STREET, 4TH FLOOR
                                 SAN FRANCISCO, CALIFORNIA 94111

SAN JOSE, CALIFORNIA                    OCTOBER 31, 2024

P R O C E E D I N G S

(COURT CONVENED AT 9:19 A.M.)

THE COURT:  THANK YOU.  PLEASE BE SEATED.  LET'S CALL OUR MORNING MATTER, OUR 9:00 O'CLOCK MATTER.  IT'S NOW, THE RECORD SHOULD REFLECT, IT'S 9:20 PACIFIC STANDARD TIME.

LET'S CALL 20-3639, HIGHTOWER VERSUS CELESTRON.

MAY I HAVE THE APPEARANCE OF THE PARTIES, PLEASE.

MR. ZAPALA:  THANK YOU, YOUR HONOR.

MAY I APPROACH?

THE COURT:  YES.

MR. ZAPALA:  GOOD MORNING, YOUR HONOR.

ADAM ZAPALA FROM COTCHETT PITRE & MCCARTHY FOR THE INDIRECT PURCHASER PLAINTIFFS.

THE COURT:  THANK YOU.  GOOD MORNING.

MR. ZAPALA:  GOOD MORNING.

THE COURT:  AND I SEE THE DEFENDANT'S CHAIR EMPTY.  IS ANYONE HERE FOR DEFENDANT?

MR. FROST:  THANK YOU, YOUR HONOR.  GOOD MORNING.  THIS IS CHRISTOPHER FROST OF FROST LLP ON BEHALF OF THE DEFENDANTS.  MY SINCERE APOLOGIES THAT WE HAVE TO APPEAR BY TELEPHONE TODAY.

THE COURT:  THANK YOU, MR. FROST.  THANK YOU FOR JOINING.

4

I THINK YOUR ASSOCIATE, JOSHUA STAMBAUGH, WAS ASSIGNED TO APPEAR. WE RECEIVED A MESSAGE JUST BEFORE 9:00 O'CLOCK, SOMETHING ABOUT A FLIGHT DELAY, AND THEN IN A SUBSEQUENT REQUEST, THAT IN MR. STAMBAUGH'S OPINION THE MATTER MIGHT BE RESOLVED BY US PASSING THE MATTER AND CALLING IT LAST ON OUR CALENDAR.

I REALLY APPRECIATE HIS DESIRE TO HELP ME MANAGE MY CALENDAR, BUT I WOULD PREFER TO CALL THE MATTER NOW IF THAT'S ALL RIGHT WITH YOU, SIR, AND MR. STAMBAUGH?

MR. FROST: YES, OF COURSE. WE APPRECIATE YOUR INDULGENCE. MY APOLOGIES AGAIN.

THE COURT: WELL, THANK YOU. LET'S GET TO THE BUSINESS AT HAND. THIS IS A MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT, AND I DID RECEIVE THE DOCUMENTS REGARDING SETTLEMENT.

LET ME, LET ME TURN THEN TO MR. ZAPALA. WHY SHOULD THE COURT GRANT PRELIMINARY APPROVAL HERE?

MR. ZAPALA: THANK YOU, YOUR HONOR.

ADAM ZAPALA AGAIN FOR THE INDIRECT PURCHASER PLAINTIFFS.

WE'RE PLEASED TO PRESENT THIS SETTLEMENT. WE THINK IT'S AN EXCELLENT RESULT FOR THE INDIRECT PURCHASER CLASS.

THIS SETTLEMENT INCLUDES $32 MILLION IN REMUNERATION FOR CLASS MEMBERS, WHICH WE BELIEVE IS AN EXCELLENT RECOVERY BOTH IN LIGHT OF THE FACTS AND CIRCUMSTANCES OF THIS CASE BUT ALSO OBVIOUSLY THE EXPERIENCE OF EXPERIENCED CLASS COUNSEL IN

ANTITRUST CASES.

THE FIRST THING I WILL TALK ABOUT IS SORT OF THE PROCEDURAL FAIRNESS OF THE SETTLEMENT AND THE FACTORS THAT COURTS IN THE NINTH CIRCUIT LOOK AT AT PRELIMINARY APPROVAL AND WHAT IS NOW UNDER RULE 23 A MOTION TO DIRECT NOTICE TO THE CLASS.

FIRST, THIS WAS NOT A FILE AND SETTLE KIND OF CASE AS IS OBVIOUS FROM THE MANY ENTRIES IN YOUR DOCKET. THERE'S BEEN EXTENSIVE LITIGATION IN YOUR CASE, EXTENSIVE DISCOVERY, MOTIONS PRACTICE, MOTIONS TO COMPEL. AND WHAT THAT MEANS IS THAT THE PARTIES WERE FULLY INFORMED ABOUT THE STRENGTHS AND WEAKNESSES OF THE CASE WHEN THEY NEGOTIATED THE SETTLEMENT. SO THAT'S ONE ISSUE TO LOOK AT IN TERMS OF PROCEDURAL FAIRNESS, THE AMOUNT OF LITIGATION THAT OCCURRED. AND OBVIOUSLY, I THINK WE PUT IT IN OUR PAPERS, BUT THE INDIRECT PURCHASER PLAINTIFFS EXPENDED IN LODESTAR ABOUT $11 MILLION. SO IN TERMS OF TIME WORKED ON THE CASE, IT'S BEEN EXTENSIVE. YOUR HONOR HAS RULED ON A NUMBER OF PLEADING CHALLENGES.

IN ADDITION, THE SETTLEMENT PROCESS WAS OVERSEEN BY A NATIONALLY RENOWNED MEDIATOR, A FORMER MAGISTRATE JUDGE OF THE CENTRAL DISTRICT, JUDGE SEGAL, AND THERE WERE PROTRACTED NEGOTIATIONS.

THIS WAS, AGAIN, NOT A FILE AND SETTLE SORT OF CASE. THERE WAS AN INITIAL MEDIATION TWO YEARS AGO THAT WAS UNSUCCESSFUL, ANOTHER MEDIATION OCCURRING A YEAR AFTER THAT

THAT RESULTED IN A MEDIATOR'S PROPOSAL THAT BOTH SIDES EXPECTED. SO THE ENTIRE MEDIATION PROCESS HAS BEEN OVERSEEN BY A FORMER FEDERAL JUDGE.

AND THEN IN ADDITION TO THAT, IN TERMS OF THE TERMS OF THE SETTLEMENT, THERE'S NO SIGNS OF COLLUSION, THERE'S NO CLEAR SAILING PROVISIONS OR ANYTHING LIKE THAT. THERE'S NO REVERSION TO THE DEFENDANT. SO A $32 MILLION DEAL, NONE OF THAT REVERTS TO THE DEFENDANT.

SO IN TERMS OF PROCEDURAL FAIRNESS, WE BELIEVE ALL OF THE SIGNS POINT TOWARDS APPROVAL. THE NEGOTIATIONS WERE ARM'S LENGTH. AGAIN, THERE WERE 3.9 MILLION DOCUMENTS PRODUCED IN THIS CASE, AND MANY OF THOSE HAVE BEEN REVIEWED AT THE TIME OF SETTLEMENT.

IN TERMS OF SUBSTANTIVE FAIRNESS, OF COURSE, AGAIN, 32 MILLION IS REAL MONEY. THIS IS AN INDIRECT PURCHASER CASE. THEY'RE NOTORIOUSLY DIFFICULT AND COMPLEX AND OFTEN RESULTS IN ZERO RECOVERY FOR THE CLASS, EITHER BECAUSE OF CLASS CERTIFICATION DENIAL OR OTHER COMPLEXITIES THAT ARISE IN THE CONTEXT OF COMPLEX LITIGATION.

IT'S BEEN CASE LAW FOR -- SORT OF BEDROCK CASE LAW IN THE NINTH CIRCUIT THAT SETTLEMENTS ARE FAVORED IN ANTITRUST CLASS ACTIONS, AND THAT'S WHAT THIS IS.

THE VOLUME OF COMMERCE IN THIS CASE HAS BEEN CALCULATED BY OUR EXPERTS AT A LITTLE OVER 600 MILLION. SO WHAT THAT MEANS IS DURING THE CLASS PERIOD THERE WERE 600 MILLION IN SALES IN

TELESCOPES IN THE INDIRECT CASES. SO IF YOU LOOK AT THE 32 MILLION, YOU'RE TALKING ABOUT A 5 PERCENT OVERCHARGE, AND THAT COMES OUT TO 32 MILLION, WHICH IS EXACTLY WHAT THE RECOVERY IS.

SO, AGAIN, IN TERMS OF THE AMOUNT OF MONEY GOING TO THE CLASS, WE THINK IT'S MORE THAN FAIR AND ADEQUATE. AND AGAIN, IT'S SUPPORTED BY SOPHISTICATED COUNSEL. THESE ARE THE ONLY KIND OF CASES THAT I DO. I KNOW THAT'S TRUE OF MY COLLEAGUES AS WELL, MS. SRINIVASAN FROM SUSMAN GODFREY AND MS. CHAN FROM LIEFF, CABRASER, HEIMANN & BERNSTEIN.

SO THESE FIRMS AND THE ATTORNEYS WORKING ON THE CASE ARE REALLY EXPERIENCED ANTITRUST COUNSEL, AND, AGAIN, THEIR RECOMMENDATION THAT THE COURT APPROVE IT CARRIES WEIGHT GIVEN THAT KIND OF EXPERIENCE.

IN ADDITION TO SORT OF ALL OF THE SIGNS ABOUT THE FAIRNESS OF THE SETTLEMENT, WE BELIEVE WE HAVE PROMULGATED OR SET FORTH A MULTI LAYERED NOTICE PLAN TO REACH NOTICE TO THE CLASS. THAT INCLUDES INDIVIDUAL NOTICE BOTH BY EMAIL AND U.S. MAIL, ALSO EARNED AND UNEARNED MEDIA AND TARGETED ADVERTISING ON SOCIAL MEDIA TO INFORM THOSE CLASS MEMBERS WHO MAYBE DIDN'T RECEIVE INDIVIDUAL NOTICE ABOUT THEIR RIGHTS.

ALL OF THAT INFORMATION IN TERMS OF THE NOTICE PROGRAM CAN BE FOUND IN THE DECLARATION OF CARLA PEAK, WHICH WAS SUBMITTED ALONG WITH THE MATERIALS. AGAIN, WE SUBMIT THAT THAT NOTICE PLAN IS BOTH CONSISTENT WITH RULE 23 AND DUE PROCESS.

AND THEN FINALLY, WE'VE SET FORTH A SORT OF SCHEDULE KEYED OFF OF THE DATE THAT IN THE EVENT THAT THE COURT FINDS THE SETTLEMENT WORTHY OF PRELIMINARY APPROVAL, WE'VE SET FORTH A SCHEDULE FOR SORT OF NOTICE AND OBJECTIONS, EXCLUSIONS, AND THEN ULTIMATELY THE FINAL APPROVAL HEARING.

I'M HAPPY TO ANSWER ANY QUESTIONS THAT THE COURT MAY HAVE ABOUT THE SETTLEMENT.

THE COURT: THANK YOU. THANK YOU VERY MUCH.

INITIALLY, MR. FROST, ANY COMMENTS THAT YOU WOULD LIKE TO MAKE INITIALLY BEFORE I ASK A FEW QUESTIONS?

MR. FROST: NONE, YOUR HONOR. THANK YOU. I THINK MR. ZAPALA DID A FINE JOB OF EXPLAINING THE SORT OF UPS AND DOWNS OF THE SETTLEMENT AND HOW WE GOT THERE.

THE COURT: OKAY. THANK YOU.

I'M JUST CURIOUS, MY FIRST QUESTION IS JUST ABOUT DO YOU HAVE ANY EXPECTATION OF WHAT EACH CONSUMER MIGHT RECEIVE? AND I KNOW IT'S DEPENDENT ON CLAIM NUMBERS AND THOSE THINGS.

MR. ZAPALA: YEAH.

THE COURT: I THINK YOUR PAPERS SUGGEST THAT YOU'RE GOING TO BE ABLE TO REACH 80 PERCENT OF PURCHASERS, IS THAT --

MR. ZAPALA: WITH THE NOTICE PROGRAM, WITH THE NOTICE PROGRAM.

THE COURT: RIGHT.

MR. ZAPALA: YEAH, THAT'S THE SUGGESTION IN TERMS OF -- THAT'S WHAT NOTICE PROVIDERS SHOOT FOR IN TERMS OF WHEN

THEY'RE CRAFTING A NOTICE PROGRAM, THEY SHOOT FOR A REACH OF 80 PERCENT. IT'S CALLED A REACH. IT'S SORT OF A TERM THAT IS USED IN MEDIA AND ADVERTISING. THERE'S A COMPLICATED CALCULATION THAT GOES INTO IT, BUT VERITA, WHICH IS THE NOTICE PROVIDER, DID OPINE THAT THE NOTICE PROGRAM WOULD REACH 80 PERCENT OF THOSE CLASS MEMBERS.

THE COURT: OKAY.

MR. ZAPALA: BOTH THROUGH -- AGAIN, WE DON'T HAVE -- WE HAVE EMAIL AND MAILING ADDRESSES FOR SOME PORTION OF THE CLASS, BUT IT'S NOT THE ENTIRE CLASS. WE ESTIMATE THE CLASS TO BE LARGER THAN THAT. AND THAT'S WHERE THE MEDIA PROGRAM COMES IN TO TRY TO REACH THOSE EXTRA CLASS MEMBERS.

THAT SAID, WE DO HAVE -- AGAIN, WE ESTIMATE THE CLASS TO BE AROUND 4 MILLION. WE HAVE SOMETHING LIKE 2.5 MILLION RECORDS GIVEN A LOT OF THESE PURCHASES OCCUR OVER AMAZON. SO COMPARED TO MANY OF MY CASES, WE ACTUALLY HAVE A LOT OF CONTACT INFORMATION, UNLIKE A LOT OF INDIRECT PURCHASER CASES.

IN TERMS OF YOUR QUESTION ABOUT HOW MUCH EACH CONSUMER WILL TAKE, AGAIN, IT VERY MUCH DEPENDS ON THE CLAIMS RATE. WE'RE GOING TO DO EVERYTHING WE CAN TO MAKE SURE THAT CLAIMS RATE IS AS HIGH AS POSSIBLE. UNFORTUNATELY, INDIRECT PURCHASER CASES ARE PLAGUED BY LOW CLAIMS RATES, AND ONE OF THE REASONS IS THAT IT'S THE NATURE OF CLASS ACTIONS. SOME PEOPLE HAVE LESS IN PURCHASERS, AND, THEREFORE, DON'T TAKE THE TIME TO SEND IN THE CLAIM FORM. BUT AGAIN, WE'RE TRYING TO MAKE THAT

PROCESS AS EASY AS POSSIBLE.

IT'S DIFFICULT IN INDIRECT PURCHASERS CASES BECAUSE THE DATA THAT YOU GET FROM THE DEFENDANT IS NOT IN PRIVITY WITH YOUR CLIENTS. YOU HAVE TO GET IT FROM THIRD PARTIES, WHICH WE'VE DONE.

ONE OF THE THINGS I'M DOING IN INDIRECT PURCHASER CASES THAT I THINK IS REAL BENEFIT TO THE CLASS AND TO GET THE CLAIMS UP IS WE'RE USING THAT INTERMEDIARY DATA THAT WE RECEIVE. USUALLY IT'S NOT 100 PERCENT BECAUSE, YOU KNOW, WE MAY NOT HAVE SUBPOENAED FROM ALL OF THE DISTRIBUTORS. THERE MAY BE CERTAIN TIME PERIODS THAT DISTRIBUTORS DON'T HAVE THAT DATA FOR PART OF YOUR CLASS PERIOD.

SO IT'S ALWAYS UNDER -- IT DOESN'T COVER THE ENTIRE CLASS, BUT WHAT WE'VE ENDED UP DOING AND WHAT WE'RE DOING IN THIS CASE IS WE'RE GOING TO FILL IN THE CLAIM FORMS WITH DATA THAT WE HAVE. AND CLASS MEMBERS COULD SIGN THAT CLAIM FORM WITHOUT DOING ALMOST ANYTHING ELSE, YOU KNOW, PROVIDING PURCHASE RECORDS OR ANYTHING LIKE THAT.

WE THINK THAT'S A REAL BENEFIT. WE'VE NOTICED IN OUR CASES WHERE WE'VE DONE THAT AND GET MUCH HIGHER CLAIMS RATE, AND WE REDUCE THE BARRIERS FOR PEOPLE PARTICIPATING IN THE SETTLEMENT. WE HAVE EVERY INTENTION OF DOING THAT HERE. IT'S PART OF OUR PLAN.

IN TERMS OF THE DISTRIBUTION PLAN, IT IS PRO RATA. SO A CLASS MEMBER'S SHARE OF THE SETTLEMENT WILL DEPEND ON, A, HOW

MANY PURCHASES THEY HAD IN TELESCOPES, ONE OR MORE; AND THEN ALSO WHAT PERCENTAGE THOSE PURCHASES MAKE UP OF EVERYONE CLAIMING. SO IT'S KIND OF DEPENDENT ON TWO THINGS: HOW MANY PURCHASES THEY HAD AND THEN HOW MANY PEOPLE END UP CLAIMING. AND THEN THEIR TAKE WOULD BE WHATEVER PERCENTAGE OF THEIR PURCHASES.

THE COURT: SURE. SO DID I READ SOMETHING THAT SAID THAT YOU ANTICIPATE 2 TO 3 PERCENT?

MR. ZAPALA: THAT'S -- I MEAN, THE STUDIES SUGGEST THAT THAT IS WHAT CLAIMS RATES ARE IN SORT OF SIMILAR CASES, SO WE SET THAT OUT.

WE HAVE EVERY INTENTION OF BEATING THAT. I THINK WE WILL. I DO THINK RECENT CLAIMS RATES ARE DOING BETTER. WE HAVE MORE ELECTRONIC MEANS NOW TO REACH CLASS MEMBERS. YOU KNOW, WE'RE USING MORE INNOVATIVE TECHNIQUES TO REACH CLASS MEMBERS ASIDE FROM JUST SNAIL MAIL, WHICH, FRANKLY, NOBODY READS ANYMORE AND I THINK WAS A LOT OF THE WAYS MAYBE 20 YEARS AGO PEOPLE WERE TRYING TO REACH CLASS MEMBERS, WHICH IS NOT VERY EFFECTIVE.

SO SOME OF THE STUDIES ARE BASED ON THAT REGIME AND THE REGIME HAS VERY MUCH CHANGED.

IN ADDITION TO THAT, IN TERMS OF DISTRIBUTION, WE DO INTEND ON DOING ELECTRONIC PAYMENTS WHERE WE CAN, AND, AGAIN, WE FIND THAT THAT INCREASES THE CLAIMS RATE AS WELL. SOMETIMES, BELIEVE IT OR NOT, WE SEND OUT CHECKS TO PEOPLE AND THEY DON'T GET CASHED.

THE COURT: I DO BELIEVE IT. PEOPLE RECEIVE SOMETHING, AND THEY DON'T KNOW WHAT A CHECK IS.

MR. ZAPALA: RIGHT.

THE COURT: SO IS THE CONSUMER TO RECEIVE THEN BASED ON THE NUMBER OF RESPONSES, AND THERE'S A $32 MILLION, YOU'RE RESERVING AND ASKING THAT THE COURT RESERVE 33 PERCENT FOR ATTORNEYS' FEES AND COSTS?

MR. ZAPALA: WE ARE. WE HAVEN'T -- NOW, THAT'S WHAT WE INTEND ON PUTTING IN THE NOTICE, YOUR HONOR, AND THAT'S JUST A CEILING. IT MAY BE THE CASE THAT WE COME IN AND ASK FOR LESS THAN THAT. IT MAY BE THE CASE THAT WE COME IN AND ASK FOR THAT AND YOU AWARD LESS THAN THAT.

BUT WE LIKE TO PUT IN THE HIGH END NUMBER IN THE NOTICE SO THAT NOBODY COULD BE PREJUDICED, RIGHT? YOU CERTAINLY CAN'T PUT IN 25 PERCENT AND THEN COME IN AND ASK FOR 33 PERCENT.

THE COURT: SURE.

MR. ZAPALA: SO WE PUT IN THE 33 AND A THIRD. WE HAVEN'T LANDED ON THAT YET. IT IS CONSISTENT WITH WHAT OUR LODESTAR IS IN THE CASE IN TERMS OF A LODESTAR CROSS-CHECK, BUT OBVIOUSLY THAT WILL BE A FEE MOTION THAT WE'LL FILE WELL IN ADVANCE OF THE OPT OUT AND OBJECTION DEADLINE, AND THEN THAT'S SUBJECT TO YOUR HONOR'S DISCRETION AND NINTH CIRCUIT CASE LAW AT FINAL APPROVAL.

THE COURT: OF COURSE. AND SO TELL ME WHAT THE -- I'M ASKING YOU TO DO THE MATH -- IF IT'S A 2 PERCENT OR A

13

3 PERCENT, CAN WE SAY A CONSUMER MIGHT RECEIVE?

MR. ZAPALA: OH, IN TERMS OF THE -- WHEW.

THE COURT: YOU NEED TO GET YOUR PHONE OUT.

MR. ZAPALA: YEAH, REALLY.

WELL, IF WE TOOK THE -- SO THERE'S 4 MILLION CLASS MEMBERS, JUST APPROXIMATELY. NOW, AGAIN, THAT'S AN ESTIMATE. IT COULD BE WRONG.

BUT, YOU KNOW, IF YOU TOOK 32 MILLION DIVIDED BY 4, YOU COULD COME UP WITH A NET OF OR SORT OF A GROSS, THAT WOULD BE THE INDIVIDUAL TAKE.

AGAIN, IF WE WENT AND IF WE TOOK FEES OF 10 MILLION, YOU'D BE TALKING ABOUT A $22 MILLION NET SETTLEMENT FUND, AND I'M NOT SURE WHAT THAT COMES OUT TO.

THE COURT: MR. BORDEN IS CALCULATING IT FOR YOU RIGHT NOW.

MR. ZAPALA: BUT, AGAIN, I MEAN, ROUGHLY, WE'RE TALKING ABOUT A 5 PERCENT OVERCHARGE ON, YOU KNOW, THESE PURCHASES AND THEN, OF COURSE, YOU'VE GOT FEES AND COSTS.

I THINK I PUT MY PHONE AWAY AND TURNED IT OFF.

THE COURT: I'M JUST -- I'M NOT GOING TO HOLD YOU TO THIS FIGURE, BUT I THINK -- I'M JUST CURIOUS WHAT YOUR INITIAL FIRST PASS THOUGHTS ARE.

MR. ZAPALA: YEAH. AND THAT WOULD BE WITH THE ENTIRE CLASS PARTICIPATING, OBVIOUSLY.

THE COURT: SURE.

MR. ZAPALA:  AND THAT'S NOT GOING TO HAPPEN.

THE COURT:  NO, NO.

MR. ZAPALA:  SO THE PRO RATA TAKE OBVIOUSLY GOES UP FROM THERE.

THE COURT:  RIGHT.  BUT IF YOU'VE GOT -- IF YOU HAVE 3 PERCENT --

MR. BORDEN HAS DONE THE MATH, HAVE YOU, MR. BORDEN?

MR. BORDEN:  I DIDN'T QUITE HEAR ALL OF IT.

MR. ZAPALA:  I CAN DO IT, YOUR HONOR.

THE COURT:  SURE.  GO AHEAD.

(PAUSE IN PROCEEDINGS.)

THE COURT:  YOUR PHONE IS SMOKING THERE, MR. ZAPALA.

MR. ZAPALA:  I'M PUTTING IT TO THE TEST, YEAH.

(PAUSE IN PROCEEDINGS.)

MR. ZAPALA:  I'LL JUST WALK THROUGH THE CALCULATION THAT I DID, AND HOPEFULLY I DID MY MATH RIGHT AND MY HIGH SCHOOL MATH TEACHERS COULD BE PROUD.

I TOOK A NET SETTLEMENT AMOUNT OF I WILL CALL IT 22 MILLION AND SAY 10 MILLION COME OUT FOR COSTS AND FEES, AND THEN DIVIDED IT BY 120,000, WHICH IS 3 PERCENT OF 4 MILLION, I BELIEVE, AND THAT COMES OUT TO $183.

THE COURT:  OKAY.

MR. ZAPALA:  SO THAT WOULD BE THE PRO RATA TAKE IF THOSE METRICS HOLD UP.

THE COURT:  SURE.  SURE.  AND FLUCTUATING FROM THAT

IT COULD GO UP, IT COULD GO DOWN.

MR. ZAPALA: IF MORE PEOPLE PARTICIPATE, OBVIOUSLY THAT NUMBER WOULD GO DOWN.

THE COURT: AND IT'S NOT DEPENDENT ON THE MODEL OF TELESCOPE THAT THEY PURCHASED, IS IT? IF SOMEONE PURCHASED A HIGHER END TELESCOPE --

MR. ZAPALA: WELL, IT IS IN SO FAR AS THE 5 PERCENT -- THE PERCENTAGE IS APPLIED TO A HIGHER NUMBER, SO THE OVERCHARGE -- SO, FOR EXAMPLE, YOU KNOW A 5 PERCENT OVERCHARGE ON A $100 TELESCOPE WOULD BE $5, AND A 5 PERCENT OVERCHARGE ON A TELESCOPE THAT IS $1,000 IS MORE THAN THAT.

SO IT IS SOMEWHAT DEPENDENT BECAUSE SOMEONE WHO HAD $1,000 PURCHASE HAS A HIGHER PERCENTAGE OF THE PURCHASE TOTAL THAN THE $100 PERSON IF THAT MAKES SENSE.

THE COURT: SO THAT'S ANOTHER METRIC THAT HAS TO BE MET.

MR. ZAPALA: BECAUSE IT'S PRO RATA.

THE COURT: SO THE $183 SOUNDS LIKE A GREAT NUMBER, BUT SOMEONE WHO BOUGHT AN ENTRY LEVEL TELESCOPE FOR $150 IS UNLIKELY TO GET THAT.

IS THAT FAIR?

MR. ZAPALA: I THINK THAT'S FAIR. AGAIN, I MEAN, THE INDIVIDUAL CLAIMANT WILL TAKE WHATEVER THEIR CORRESPONDING PERCENTAGE IS OF THE DENOMINATOR. SO TO THE EXTENT THAT THEIR PURCHASE MADE UP 1 PERCENT OF THE CLAIMING PURCHASES, THEY

WOULD GET 1 PERCENT OF THE NET SETTLEMENT FUND.

THE COURT: OKAY.

MR. ZAPALA: THAT'S THE NATURE OF A PRO RATA DISTRIBUTION.

THE COURT: SURE.

MR. ZAPALA: AND I WILL SAY, AND I THINK WE SET FORTH IN OUR PAPERS, BUT THAT'S THE STANDARD DISTRIBUTION SCHEME IN AN ANTITRUST CASE. AND I HAVE DONE LOTS OF THEM IN MY CAREER, AND I CAN'T THINK OF A SINGLE DISTRIBUTION MECHANISM WHERE WE HAVE NOT DONE IT IN THIS MANNER.

THE COURT: SURE. AND LET'S TALK ABOUT THE NOTICE THEN.

MR. ZAPALA: SURE.

THE COURT: IN THE CASES THAT YOU'VE DONE, DO YOU EVER NOTIFY THE CONSUMERS ABOUT WHAT PRO RATA MEANS TO THE DETAIL THAT WE JUST DID?

MR. ZAPALA: IT'S SET FORTH IN THE LONG FORM NOTICE, AND I HAVE NEVER -- IT'S ALWAYS BEEN SET FORTH, FRANKLY, IN THE MANNER THAT WE SET IT FORTH IN THIS NOTICE.

THE COURT: RIGHT.

MR. ZAPALA: IF YOU WOULD LIKE US TO DESCRIBE IT MORE, WE CAN CERTAINLY DO THAT.

THE COURT: THIS IS A WORK IN PROGRESS, "THIS" BEING NOTICE TO THE CLASS. AS YOU SAY, SOCIAL MAILS CHANGE. AND DO PEOPLE READ SNAIL MAIL ANYMORE? I HOPE THEY DO. WE WANT TO

KEEP THE POST OFFICE GOING. THAT'S IMPORTANT.

BUT PEOPLE SHIFT TO ELECTRONIC COMMUNICATIONS, AND THEN WE HAVE TO SHIFT OUR MESSAGING TO THEM BECAUSE WE KNOW PEOPLE SPEND, WHAT, 1.2 SECONDS ON AN EMAIL LOOKING AT THE HEADER, AND IT'S EASIER TO HIT DELETE THAN IT IS TO OPEN IT AND READ IT, SO WE WANT TO CAPTURE AS MANY --

MR. ZAPALA: RIGHT. AND THAT'S WHY I REALLY THINK THE MULTI LAYERED APPROACH IS THE BEST WAY TO GO. BECAUSE IF YOU JUST GO SNAIL MAIL, AND YOU'RE GIVING THEM ONE CHANCE, AND IF YOU GO SNAIL MAIL AND MEDIA, YOU'RE INCREASING THE LIKELIHOOD THAT YOU'LL CATCH THEIR ATTENTION.

THE COURT: SURE. OKAY. SO LET'S -- LET ME -- LET'S SEE. I DID HAVE SOME QUESTIONS ABOUT -- LET'S GO TO THE CLAIM FORM FIRST.

MR. ZAPALA: SURE.

THE COURT: THAT'S EXHIBIT E I THINK.

MR. ZAPALA: YES.

THE COURT: AND ON THE CLAIM FORM, I THINK IT'S PAGE 1 IS WHAT I'M LOOKING AT, ON THE BOTTOM IT SAYS -- AND THERE'S CLAIM FORM, CLASS MEMBER INFORMATION. THIS IS WHAT THE CONSUMER WOULD FILL OUT --

MR. ZAPALA: CORRECT.

THE COURT: -- INITIALLY. AND THIS IS GOING TO BE DONE EITHER ON AN EMAIL FORM OR RETURN BY A SNAIL MAIL?

MR. ZAPALA: YES, THIS CAN BE DONE -- SO THIS WILL

BE DOWNLOADED FROM THE WEBSITE SO CONSUMERS WILL GET A NOTICE.

IF THEY'RE GETTING A MAILED NOTICE, THEY WILL GET THE CLAIM FORM.  IF THEY'RE GETTING AN EMAILED NOTICE BECAUSE WE DON'T HAVE A RESIDENTIAL ADDRESS --

THE COURT:  RIGHT.

MR. ZAPALA:  -- THEY CAN USE THAT NOTICE TO GO ON THE WEBSITE AND DOWNLOAD THE CLAIM FORM AND DO IT ELECTRONICALLY.

THE COURT:  OKAY.  GREAT.

MR. ZAPALA:  AND THAT'S AVAILABLE TO ANYONE, INCLUDING PEOPLE WHO ONLY RECEIVE THE NOTICE BY MAIL.  ANYONE CAN SUBMIT ELECTRONICALLY OR REQUEST A PAPER COPY.

THE COURT:  OKAY.  SO ON THIS FORM I LOOKED BELOW THE CLASS MEMBER INFORMATION, THIS IS THE INITIAL FORM THAT THEY SAY, YES, I'D LIKE TO BE PART OF THIS CLASS OR THE CLAIM FORM THEY HAVE TO FILL OUT.

THE LANGUAGE BELOW IN ITALICS SAYS, "FAILURE TO ADD YOUR UNIQUE CLAIM I.D."  AND IF I'M A CONSUMER, I LOOK AT THIS AND I THINK, OH, DEAR, WHERE IS MY UNIQUE CLAIM I.D.?

MR. ZAPALA:  THAT'S ON THE NOTICE ITSELF.

THE COURT:  OKAY.

MR. ZAPALA:  SO WHEN THEY RECEIVE NOTICE OF THE SETTLEMENT, EACH NOTICE WILL HAVE A UNIQUE IDENTIFIER ON IT, AND THEY JUST NEED TO INCLUDE THAT IN THE CLAIM FORM.

THE COURT:  OKAY.

MR. ZAPALA: AND AGAIN, THAT LANGUAGE SOUNDS HARSH IN A WAY, BUT THEY CAN CONTACT THE CLAIMS ADMINISTRATOR TO GET THAT IF THEY LOSE IT. IT'S NOT ALL IS LOST. WE DO EVENTUALLY NEED TO GET IT. AND THE CLAIMS ADMINISTRATOR --

THE COURT: HERE'S MY SUGGESTION, SHOULD WE -- "FAILURE TO ADD YOUR UNIQUE CLAIM I.D.," AND THEN IN PARENTHESIS, "FOUND ON YOUR NOTICE," OR SOMETHING LIKE THAT?

MR. ZAPALA: SURE.

THE COURT: OR "SEE NOTICE," SOMETHING LIKE THAT. AND THEN FLIPPING TO PAGE 2, PAYMENT SELECTION.

MR. ZAPALA: YES.

THE COURT: AND, YOU KNOW, OF COURSE -- PARDON ME. AND I LOOK AT THAT AND I THINK DOES THAT MEAN I HAVE TO PAY OR DOES THAT MEAN HOW I'M GOING TO RECEIVE?

SO SHOULD WE SAY, "HOW WOULD YOU LIKE TO RECEIVE YOUR PAYMENT," OR SOMETHING LIKE THAT?

MR. ZAPALA: ABSOLUTELY.

THE COURT: AND THEN THEY UNDERSTAND, I THINK. PARDON ME FOR -- YOU KNOW, I DON'T MEAN TO SAY I'M DUMBING THIS DOWN, BUT I WANTED TO MAKE IT ACCESSIBLE FOR EVERYBODY.

MR. ZAPALA: YOUR HONOR, NOT AT ALL. I THINK THIS IS A VERY USEFUL EXERCISE. CLAIMS ADMINISTRATORS AND CLASS COUNSEL GET INTO THESE RHYTHMS AND CERTAIN WAYS THAT THEY DO THINGS, AND IT'S USEFUL TO HAVE THAT DISRUPTED IN A LOT OF WAYS.

THE COURT: I JUST HAD A PASSING QUESTION ABOUT THIS AS WELL. THIS INFORMATION THAT IS OBTAINED HERE, IS THIS CONFIDENTIAL, THE PAYPAL, THE ZELLE, AND THE VENMO, ALL OF THOSE NUMBERS AND ALL OF THAT, IS THAT CONFIDENTIAL TO --

MR. ZAPALA: WELL, WE HAVE EVERY INTENTION OF KEEPING IT CONFIDENTIAL. WHETHER IT'S CONSIDERED CONFIDENTIAL IN SOME LIKE MACRO SENSE, I DON'T KNOW. IT'S JUST AN ACCOUNT NUMBER.

THE COURT: YES.

MR. ZAPALA: BUT OUR CLAIMS ADMINISTRATOR HAS EXTENSIVE CONFIDENTIALITY PROTECTIONS AS ANY ENTITY DOES NOWADAYS THAT HAS TO PROTECT DATA.

SO THIS ISN'T GOING TO BE SHARED -- THIS IS NOT SHARED WITH ANYONE OTHER THAN THE CLAIMS ADMINISTRATOR AND THE CLASS MEMBER, UNLESS THE CLASS MEMBER DISCLOSES IT TO SOMEBODY ELSE.

THE COURT: SHOULD YOU TELL THEM THAT OR IS THAT NECESSARY?

MR. ZAPALA: SURE. WE CAN PUT SOMETHING IN THERE THAT SAYS, YOU KNOW, THE CLAIMS ADMINISTRATOR WILL KEEP THIS INFORMATION CONFIDENTIAL.

THE COURT: SOMETHING LIKE THAT. OF COURSE THAT CREATES -- I'LL SEE IN ABOUT ANOTHER YEAR AND A HALF -- SOME BREACH OF LAWSUITS FROM THE CLAIMS ADMINISTRATOR, RIGHT?

MR. ZAPALA: WHICH JUST HAPPENED, BELIEVE IT OR NOT. WE HAD A DATA BREACH. NOT OUR CLAIMS ADMINISTRATOR,

21

THANKFULLY, BUT A CLAIMS ADMINISTRATOR HAS HAD A DATA BREACH.

THE COURT: RIGHT. OKAY. THAT WAS A QUESTION THAT I HAVE.

MR. ZAPALA: SURE. I'VE NOTED IT, AND WE'LL MAKE THAT CHANGE, YOUR HONOR.

THE COURT: LET'S SEE. THE OTHER QUESTION I HAD, DO WE NEED TO DO ANY LANGUAGE ISSUES IN ANY OF THESE FORMS OR NOTICES?

MR. ZAPALA: THE NOTICES ARE PROVIDED -- WE DON'T SEND THEM OUT IN THE FIRST LANGUAGE, BUT THEY ARE AVAILABLE ON THE WEBSITE IN DIFFERENT LANGUAGES. AND WE INTEND TO DO THAT IN SPANISH -- AND I THINK JUST SPANISH.

THE COURT: OKAY. LET'S SEE. THE EMAIL NOTICE IS IN EXHIBIT B, I BELIEVE, IT'S 391-2B.

MR. ZAPALA: I THINK EXHIBIT B AT LEAST I THINK IS THE POSTCARD NOTICE, BUT THEY'RE FUNCTIONALLY VERY SIMILAR.

THE COURT: YES, THEY ARE THE SAME, RIGHT.

MR. ZAPALA: AND EXHIBIT A IS THE EMAIL NOTICE.

THE COURT: GOT IT. YES. THANK YOU.

I'M LOOKING AT EXHIBIT A, THE EMAIL NOTICE, AND THERE'S A LOT OF LANGUAGE THERE.

MR. ZAPALA: UH-HUH.

THE COURT: HOW DO WE KEEP SOMEONE'S ATTENTION?

MR. ZAPALA: NUMBER ONE, I WILL SAY THAT VERITA HAS OPINED IN THEIR DECLARATION THAT THIS DOES COMPLY WITH THE

PLAIN LANGUAGE REQUIREMENT.

THE COURT: YES.

MR. ZAPALA: IT'S A BALANCING ACT, RIGHT?

ON THE ONE HAND RULE 23 REQUIRES THAT YOU DISCLOSE CERTAIN INFORMATION TO CLASS MEMBERS, ON THE OTHER YOU WANT TO KEEP IT SIMPLE AND READABLE. THIS IS THE BEST BALANCE THAT WE HAVE COME UP WITH IN TERMS OF INFORMING THE CLASS MEMBERS OF THE INFORMATION THAT THEY NEED TO KNOW ABOUT THE SETTLEMENT, AND THAT'S REQUIRED BY RULE 23, FRANKLY.

IT'S ALWAYS A BALANCE, AND WE'RE HAPPY TO TAKE SUGGESTIONS. BUT I THINK I WILL SAY IN TERMS OF MY EXPERIENCE, THIS IS VERY SIMILAR IN NATURE TO THE SHORT FORM NOTICES THAT ARE OFTEN APPROVED BY DISTRICT COURTS.

THE COURT: AND I GUESS WHAT REALLY POPULATES THIS NOTICE IS THE PARTIES, DOESN'T IT?

MR. ZAPALA: EXACTLY, YEAH. I SUSPECT THAT CLASS MEMBERS WILL GLOSS OVER THAT INFORMATION TO SOME DEGREE, RIGHT? I DON'T KNOW THAT THEY'LL READ SYNTA CANADA INTERNATIONALLY SUPER CLOSELY, BUT I THINK THEY'LL GET A SENSE OF WHO THE PARTIES ARE.

ONE OF THE THINGS THAT ALSO TAKES UP A LOT OF SPACE IS THE LISTING OF THE INDIRECT PURCHASER STATES, WHICH IS IMPORTANT OBVIOUSLY FOR CLASS MEMBERS TO KNOW BECAUSE IF THEY KNOW, FOR EXAMPLE, WELL, GEE, I ACTUALLY BOUGHT MY TELESCOPE IN TEXAS, RIGHT, I SOMEHOW GOT THIS NOTICE. THAT'S IMPORTANT FOR THEM TO

KNOW BECAUSE THEY WOULD KNOW ACTUALLY, A, THEY'RE NOT PART OF THE CLASS ACTUALLY, BUT, B, THEY WOULDN'T BE ENTITLED TO PARTICIPATE IN THE SETTLEMENT.

SO AGAIN, IT KIND OF MAKES IT LONGER, BUT IT'S NECESSARY INFORMATION FOR CLASS MEMBERS.

THE COURT: MAY I SUGGEST UNDER THE "WHO IS INCLUDED," AND THEN THAT FIRST SENTENCE, MAYBE -- COULD WE BOLD THAT?

MR. ZAPALA: YES. SURE.

THE COURT: "RECORDS COLLECTED DURING THE LITIGATION INDICATE THAT YOU MIGHT BE COVERED BY THE SETTLEMENT."

MR. ZAPALA: UH-HUH. BOLD THAT LANGUAGE?

THE COURT: YES, I THINK SO. THAT WOULD CAPTURE SOMEONE'S ATTENTION, I THINK.

AND THESE NOTICES ARE TRYING TO -- PARDON ME, THAT'S THE HOOK TO GET SOMEBODY TO COMPLETE THE APPLICATION.

WHAT DOES THE SETTLEMENT PROVIDE? IF AGREED TO, CREATE 32 MILLION SETTLEMENT FUND TO PROVIDE CASH PAYMENTS TO CLASS MEMBERS WHO SUBMIT A VALID CLAIM FORM.

MAYBE -- CAN WE PUT -- YOU TELL ME, TOO -- "YOU HAVE BEEN IDENTIFIED AS A POTENTIAL," IN BOLD OR SOMETHING?

MR. ZAPALA: IN THE FIRST PARAGRAPH?

THE COURT: WELL, SHOULD WE PUT THAT IN, "WHAT DOES THE SETTLEMENT PROVIDE?" CATEGORY ALSO.

MR. ZAPALA: YOU WANT TO PUT THAT UNDER "WHO IS

24

INCLUDED?"

THE COURT: "WHAT THE SETTLEMENT PROVIDES."

MR. ZAPALA: GOT IT.

THE COURT: MY SENSE IS THAT IF YOU ATTACH THE POSSIBILITY THAT THEY ARE A PLAINTIFF, A VALID CLAIMANT NEXT TO THE $32 MILLION, THAT PROBABLY GETS SOME ATTENTION.

MR. ZAPALA: GOT IT. WE'LL MAKE THAT CHANGE, YOUR HONOR. THANK YOU.

THE COURT: JUST OWING TO HUMAN NATURE.

MR. ZAPALA: YEAH.

THE COURT: THOSE WERE REALLY THE ONLY SUGGESTIONS THAT I HAD.

THE OPT-OUT TIME PERIOD AND THE TIME TO OBJECT.

MR. ZAPALA: YES, THAT'S SET FORTH IN OUR MOTION ON PAGE 24 WHICH WOULD BE CUED OFF OF 104 DAYS. I KNOW IT SOUNDS LIKE A STRANGE NUMBER, BUT 104 DAYS FROM THE PRELIMINARY APPROVAL ORDER, WHICH IS REALLY ROUGHLY TWO MONTHS FROM WHEN THIS GOES OUT. WE WANT TO HAVE ENOUGH TIME THAT NOTICE GOES OUT. YOU KNOW, YOU'LL WANT AN OBJECTION EXCLUSION DEADLINE TO WHEN NOTICE WENT OUT BECAUSE IT DOESN'T GIVE PEOPLE ENOUGH TIME TO CONSIDER WHEN THEIR OPTIONS ARE. SO NOTICE GOES OUT AND THERE'S A TWO-MONTH PERIOD, A LITTLE OVER A TWO-MONTH PERIOD FOR PEOPLE TO CONSIDER THE SETTLEMENT, CONSIDER WHETHER THEY WANT TO REMAIN PART OF THE SETTLEMENT, AND CONSIDER WHETHER THEY WANT TO OBJECT OR OPT OUT.

25

OBVIOUSLY IN THE INTERIM, THE MOTION FOR ATTORNEYS' FEES WILL BE FILED BEFORE THAT SO THEY CAN SEE THAT AS WELL AND DETERMINE WHETHER THEY WANT TO OBJECT TO THAT.

THE COURT: OKAY.

MR. ZAPALA: CONSISTENT WITH THE PROCEDURAL GUIDANCE ON CLASS ACTION SETTLEMENTS IN THE NORTHERN DISTRICT.

THE COURT: GREAT. WELL, THOSE WERE THE ONLY QUESTIONS THAT I HAD.

MR. FROST, ANYTHING YOU WOULD LIKE TO ADD, SIR?

MR. FROST: NO, YOUR HONOR, NOTHING FROM DEFENDANTS.

THE COURT: OKAY. THANK YOU. ANYTHING FURTHER, MR. ZAPALA?

MR. ZAPALA: NO, YOUR HONOR. I'M HAPPY TO ANSWER ANY QUESTIONS, BUT, AGAIN, I'M VERY PLEASED THAT WE CAN BRING THIS LITIGATION TO A CLOSE AND TRY TO GET MONEY TO THE CLASS MEMBERS.

THE COURT: GREAT. OKAY. WELL, THANK YOU. THANKS FOR WALKING ME THROUGH THIS AND ANSWERING MY QUESTIONS.

I DO FIND THAT RULE 23 FACTORS HAVE BEEN MET HERE FOR PRELIMINARY APPROVAL. THIS DOES APPEAR TO BE AN APPROPRIATE SETTLEMENT. IT'S AN ARM'S LENGTH NEGOTIATION. AS COUNSEL SAID, THERE WERE SUBSTANTIAL MOTION PRACTICE, DISCOVERY PRACTICE IN FRONT OF THE MAGISTRATE JUDGE, AND THE SETTLEMENT DID ARISE FROM CONSIDERABLE TIME SPENT WITH A MAGISTRATE JUDGE. SO I WILL GRANT PRELIMINARY APPROVAL OF THE SETTLEMENT.

26

WHAT DATE SHOULD WE SET THEN FOR FINAL?

MR. ZAPALA: IF I MAY SUGGEST, YOUR HONOR, BECAUSE THE DATES ARE KEYED OFF OF YOUR PRELIMINARY APPROVAL ORDER, WE COULD SUBMIT A NEW PROPOSED ORDER THAT FIXES THOSE DATES --

THE COURT: SURE.

MR. ZAPALA: -- ASSUMING THAT THE PRELIMINARY APPROVAL ORDER IS ENTERED SORT OF THE SAME DAY, OR WHATEVER. SO WE CAN DO THAT THROUGH YOUR WORK PORTAL, IF THAT'S EASIER FOR YOU?

THE COURT: THAT'S FINE. IF YOU WANT TO SUBMIT SOMETHING OR PREPARE A FORM AND SUBMIT IT, AND THEN WE'LL SIGN IT, AND THEN THE DATES WILL BE FLOWING APPROPRIATELY.

MR. ZAPALA: WE'LL DO THAT. THANK YOU.

AND I THINK WE INCLUDED A PROPOSED ORDER, AND WHAT I'LL DO IS TAKE THAT PROPOSED ORDER AND PUT THE FIXED DATES ON THERE BASED ON TODAY'S DATE.

THE COURT: AND WE'LL CALENDAR IT ON A DATE THAT IS APPROPRIATE FOR OUR CALENDARS AS WELL THAT IS AS CLOSE AS POSSIBLE TO THE TARGET DATE.

MR. ZAPALA: RIGHT. I THINK WE HAD SET FORTH, AND I'M NOT SURE WHAT THAT WOULD BE, BUT 154 DAYS FROM TODAY WOULD BE THE FINAL APPROVAL HEARING.

SO I'M NOT SURE WHAT THAT IS, AND I DON'T KNOW IF THAT'S CONVENIENT FOR THE COURT, BUT WE'LL PUT THAT IN THE PROPOSED ORDER.

27

THE COURT: THAT'S GREAT.

MR. ZAPALA, I JUST WANT TO THANK YOU AND YOUR TEAM, AND, MR. FROST, YOU AND YOUR TEAM FOR REACHING THIS SETTLEMENT.

JUST, MR. ZAPALA, IF YOU COULD OFFER YOUR ASSISTANCE IN SETTLING ANY OTHER TELESCOPE CASES, WE WOULD BE GRATEFUL.

MR. ZAPALA: YOUR HONOR, I WOULD BE MORE THAN HAPPY TO DO THAT ONCE WE REACH FINAL APPROVAL, I CAN TURN MYSELF INTO A MEDIATOR AND DO WHATEVER YOU NEED. I'D BE HAPPY TO WORK FOR FREE ON THAT.

THE COURT: I DON'T KNOW. IN THE UNIVERSE OF TELESCOPE CASES AND LITIGATION THERE MIGHT BE SOME OTHER STRAY COMMENT FLOATING OUT THERE THAT COULD BENEFIT FROM SOME SUBSTANTIAL GRAVITY.

MR. ZAPALA: I'M READY AND WILLING AND READY TO ROLL UP MY SLEEVES, YOUR HONOR.

THE COURT: GREAT. THANK YOU. SEE YOU SOON. THANK YOU.

(COURT CONCLUDED AT 9:50 A.M.)

CERTIFICATE OF REPORTER

I, THE UNDERSIGNED OFFICIAL COURT REPORTER OF THE

UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF

CALIFORNIA, 280 SOUTH FIRST STREET, SAN JOSE, CALIFORNIA, DO

HEREBY CERTIFY:

THAT THE FOREGOING TRANSCRIPT, CERTIFICATE INCLUSIVE, IS

A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE

ABOVE-ENTITLED MATTER.

_____

IRENE RODRIGUEZ, CSR, RMR, CRR
CERTIFICATE NUMBER 8074


DATED:  NOVEMBER 1, 2024

UNITED STATES COURT REPORTERS

**4-ER-0795**

Adam J. Zapala (SBN 245748)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, CA 94010
Telephone: (650) 697-6000
azapala@cpmlegal.com

Kalpana Srinivasan (SBN 237460)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: (310) 789-3100
ksrinivasan@susmangodfrey.com

Lin Y. Chan (SBN 255027)
**LIEFF CABRASER HEIMANN & BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, CA 94111
Telephone: (415) 956-1000
lchan@lchb.com

*Interim Co-Lead Counsel for the Indirect Purchaser Plaintiffs*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE: TELESCOPES ANTITRUST LITIGATION | **Case No. 5:20-cv-03639-EJD** |
| | **INDIRECT PURCHASER PLAINTIFFS' NOTICE OF NON-OPPOSITION TO MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE** |
| THIS DOCUMENT RELATES TO: | |
| All Indirect Purchaser Actions | **Date:** October 31, 2024 |
| | **Time:** 9:00 a,m, |
| | **Place:** Courtroom 4, 5th Floor |
| | **Judge:** Hon. Edward J. Davilla |

Case No. 5:20-cv-03639-EJD

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF NON-OPPOSITION TO MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE

**4-ER-0796**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT**, on September 16, 2024, Indirect Purchaser Plaintiffs ("IPPs") filed their Notice of Motion and Motion for Preliminary Approval of Settlement and Issuance of Notice (the "Motion"). Responses were due September 30, 2024, and IPPs' reply was due October 7, 2024. No responses or oppositions have been filed or otherwise received by Interim Class Counsel for IPPs. Accordingly, IPPs file this Notice of Non-Opposition and respectfully submit that for the reasons stated in the Motion and supporting papers, IPPs' Motion should be granted.

Therefore, IPPs respectfully request that the Court (1) find it will likely approve the Settlement; (2) find it will likely certify the settlement class; (3) direct notice to the settlement class after finding that the forms and notice plan comply with Rule 23 and due process; (4) appoint the Class Representatives as representatives for the settlement class; (5) appoint Interim Co-Lead Class Counsel as counsel for the settlement class; (6) authorize retention of Verita as notice and claims administrator; and (7) set a schedule for Final Approval and related dates; and any motions for attorneys' fees, costs, and service awards, and schedule a Final Approval Hearing. IPPs will be prepared to address any issues that the Court wishes to raise on the noticed hearing date of October 31, 2024.

Dated: October 18, 2024

Respectfully Submitted,

/s/ Adam J. Zapala

Adam J. Zapala (SBN 245748)
Elizabeth T. Castillo (SBN 280502)
**COTCHETT, PITRE & McCARTHY, LLP**
840 Malcolm Road
Burlingame, California 94010
Telephone: (650) 697-6000
Facsimile: (650) 697-0577
azapala@cpmlegal.com
ecastillo@cpmlegal.com

1                                                                Case No. 5:20-cv-03639-EJD

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF NON-OPPOSITION TO MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE

**4-ER-0797**

*/s/ Kalpana Srinivasan*
Kalpana Srinivasan (Bar No. 237460)
Marc M. Seltzer (Bar No. 54534)
Steven Sklaver (Bar No.237612)
Michael Gervais (Bar No. 330731)
**SUSMAN GODFREY L.L.P.**
1900 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
Telephone: 310-789-3100
ksrinivasan@susmangodfrey.com
mseltzer@susmangodfrey.com
ssklaver@susmangodfrey.com
mgervais@susmangodfrey.com

Alejandra C. Salinas (pro hac vice)
Texas SBN 24102452
**SUSMAN GODFREY LLP**
1000 Louisiana Street, Suite 5100
Houston, Texas 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
asalinas@susmangodfrey.com

/s/ *Lin Y. Chan*
Eric B. Fastiff (SBN 182260)
efastiff@lchb.com
Lin Y. Chan (SBN 255027)
lchan@lchb.com
Devin X. Williams (SBN 347577)
dwilliams@lchb.com
**LIEFF CABRASER HEIMANN &
 BERNSTEIN LLP**
275 Battery Street, 29th Floor
San Francisco, California 94111
Telephone: (415) 956-1000
Facsimile: (415) 956-1008

*Interim Co-Lead Counsel for the Indirect Purchaser
Plaintiffs*

INDIRECT PURCHASER PLAINTIFFS' NOTICE OF NON-OPPOSITION TO MOTION FOR PRELIMINARY
APPROVAL OF SETTLEMENT AND ISSUANCE OF NOTICE

**4-ER-0798**